**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-2989-MDL-ALTONAGA/Torres**

IN RE: JANUARY 2021 SHORT SQUEEZE
TRADING LITIGATION

**This Document Relates to: All Actions Involving Federal Securities Laws**

**MOTION AND MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
PLAINTIFFS ERIC QUAT, AARON FASSINGER, MIKE ROSS, IGOR
KRAVCHENKO, MICHAEL MCFADDEN AND TENZIN WOISER TO APPOINT
LEAD PLAINTIFFS AND APPROVE THEIR SELECTION OF LEAD COUNSEL**

# TABLE OF CONTENTS

**PAGE(S)**

MOTION ............................................................................................................................... 1

MEMORANDUM OF LAW ................................................................................................. 1

I.      INTRODUCTION ...................................................................................................... 1

II.     BACKGROUND ........................................................................................................ 2

III.    ARGUMENT .............................................................................................................. 4

        A.    Plaintiffs Should Be Appointed Lead Plaintiffs Under The PSLRA ................... 4

             1.    Plaintiffs Filed A Complaint ...................................................................... 5

             2.    Plaintiffs Have The Largest Financial Interest .......................................... 5

             3.    Plaintiffs Satisfy The Requirements of Rule 23 ....................................... 7

                  a.    Typicality ........................................................................................ 8

                  b.    Adequacy ......................................................................................... 8

        B.    Plaintiffs' Counsel Should Be Appointed Lead Counsel.................................... 9

IV.    CONCLUSION ........................................................................................................ 11

## TABLE OF AUTHORITIES

PAGE(S)

CASES

*Campos v. ChoicePoint,Inc.*,
   237 F.R.D. 478 (N.D. Ga. 2006)........................................................................................ 8

*Cohen v. U.S. Dist. Court for N. Dist. of California*,
   586 F.3d 703 (9th Cir. 2009) ................................................................................. 9, 10, 11

*Fischler v. AMSouth Bancorporation*,
   1997 WL 118429 (M.D. Fla. Feb. 6, 1997) ........................................................................ 7, 8

*Garcia v. Kashi Co.*,
   43 F. Supp. 3d 1359 (S.D. Fla. 2014) ................................................................................ 6

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
   258 F.R.D. 260 (S.D.N.Y. 2009) ...................................................................................... 5

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001).............................................................................................. 7

*In re Fuwei Films Sec. Litig.*,
   247 F.R.D. 432 (S.D.N.Y. 2008) ...................................................................................... 7

*Inchen Huang v. Depomed, Inc.*,
   289 F. Supp. 3d 1050 (N.D. Cal. 2017) ............................................................................ 9

*McDermid v. Inovio Pharm., Inc.*,
   467 F. Supp. 3d 270 (E.D. Pa. 2020) ................................................................................ 7

*Newman v. Eagle Bldg. Techs.*,
   209 F.R.D. 499 (S.D. Fla. 2002)....................................................................................... 5, 6

*Piazza v. Ebsco Indus., Inc.*,
   273 F.3d 1341 (11th Cir. 2001) ........................................................................................ 8

*Plymouth Cty. Ret. Sys. v. Carter's, Inc.*,
   2009 WL 692141 (N.D. Ga. Mar. 13, 2009)..................................................................... 8

*Sheet Metal Workers Loc. 28 Pension Fund v. Off. Depot, Inc.*,
   2008 WL 1943955 (S.D. Fla. May 2, 2008) ..................................................................... 6

STATUES

15 U.S.C. § 78(j)(b) ............................................................................................................... 4

15 U.S.C. § 78u-4 ................................................................................................. 1

15 U.S.C. § 78u-4(a)(3)(B)(iii) ............................................................................ 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(aa) ..................................................................... 5

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I) ....................................................................... 6

15 U.S.C. § 78u-4(a)(3)(B)(v) ............................................................................ 9

**RULES**

Rule 23 of the Federal Rules of Civil Procedure ........................................... 2, 5, 7, 8

## MOTION

PLEASE TAKE NOTICE that pursuant to 15 U.S.C. § 78u-4, Plaintiffs Eric Quat, Aaron Fassinger, Mike Ross, Igor Kravchenko, Michael McFadden and Tenzin Woiser (collectively "Plaintiffs") will move, before the Honorable Cecilia M. Altonaga, United States District Judge for the United States District Court, Southern District of Florida, at Wilkie D. Ferguson, Jr. United States Courthouse, 400 North Miami Avenue Room 12-2, Miami, Florida 33128, on a date and at a time designated by the Court, for an Order appointing Plaintiffs as Lead Plaintiffs in the present action and appointing their counsel, Bursor & Fisher, P.A., as Lead Counsel in the present matter. This Motion is supported by the accompanying Memorandum of Law in Support of the Motion of Plaintiffs Eric Quat, Aaron Fassinger, Mike Ross, Igor Kravchenko, Michael McFadden and Tenzin Woiser to Appoint Lead Plaintiffs and Approve Their Selection of Lead Counsel and accompanying exhibits, the declaration of Sarah N. Westcot, and the certifications of Plaintiffs submitted herewith.

## MEMORANDUM OF LAW

### I.  INTRODUCTION

Plaintiffs Eric Quat, Aaron Fassinger, Mike Ross, Igor Kravchenko, Michael McFadden, and Tenzin Woiser (collectively "Plaintiffs") hereby move for appointment as Lead Plaintiffs in these consolidated actions against Robinhood Financial, LLC ("Robinhood Financial"), Robinhood Securities, LLC ("Robinhood Securities"), and Robinhood Markets, Inc. ("Robinhood Markets") (collectively, "Robinhood" or "Defendants") for prohibiting their customers from buying multiple publicly traded stocks, including but not limited to GameStop ("GME"), AMC Entertainment ("AMC"), American Airlines ("AAL"), Nokia ("NOK"), BlackBerry Limited ("BB"), Bed Bath & Beyond ("BBBY"), Express ("EXPR"), Koss Corporation ("KOSS"), Naked

Brand Group ("NAKD"), Sundial Growers, Inc. ("SNDL"), Tootsie Roll Industries ("TR"), and Trivago NV ("TRVG") (collectively, the "Stocks"), during an unprecedented rise in valuation of the aforementioned Stocks.  Because Plaintiffs filed a complaint alleging that Defendants engaged in market manipulation in violation of federal securities laws, each have the largest financial stake with respect to the individual Stocks they purchased, and because Plaintiffs otherwise *prima facie* satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, their motion should be granted.

## II.    BACKGROUND

These consolidated matters against Robinhood arise due to Robinhood's market-manipulative conduct in outright restricting or substantially limiting open market trading of the Stocks on its platform.  In short, these Stocks were heavily shorted by various hedge funds and institutional investors.  Because of the unusually high amount of shorted stock, an organized group of retail investors effectuated a short squeeze as to the Stocks, many of whom used the Robinhood platform.  The short-squeeze strategy largely consisted of purchasing as many outstanding shares of the Stocks as possible, combined with purchasing call options "out of the money."  As the Stocks rose in value due to the increased purchasing of shares, the increasing Stock valuation moved the share price closer to the strike price of the call options (closer to being "in the money").  Faced with rapidly increasing share prices (and greater and greater losses for those holding short positions), persons or entities shorting the Stocks began to close their short positions to mitigate loss, which had the effect of further increasing the share price.  Faced with the prospect of delivery on the out of the money call options, market makers were pressured to hedge by purchasing the Stocks should delivery be required, which further drove up the Stocks' price.  This feedback loop put tremendous pressure on Robinhood, which was required to post increasingly high amounts of

2

collateral as required by its regulator.  Faced with this mounting pressure, and indeed a threat to its very existence, Robinhood intentionally interfered with the otherwise free market and heavily restricted, if not completely eliminated, purchasing any additional shares of the Stocks and allowed only selling or closing of positions.  This had the effect of deflating the short squeeze, as the artificial conditions created by Robinhood prevented further buying but freed up shares to be used to replenish its inventory.  In short, Robinhood chose its own interests before its customers' interests, and violated federal securities laws as the means of doing so.

Specifically, on or about January 11, 2021, stocks in GME, AMC, and NOK, among others, began to rise.  However, on or around January 27, 2021, these Stocks were no longer available for purchase by retail investors on Defendants' platforms.  For example, on Robinhood, the Stocks featured an icon that read, "This stock is not supported on Robinhood":



By prohibiting the purchase of the Stocks, Defendants denied their customers the ability to

purchase shares of Stocks rapidly rising in valuation, and through their market-manipulative actions caused a steep decline in the value of the Stocks.

Robinhood knew that its manipulative conduct was to the detriment of its customers. Robinhood's CEO, Vlad Tenev, stated publicly in an interview with Elon Musk that "as a clearing broker, and this is where Robinhood Securities comes in, we have to put up money to the NSCC [National Securities Clearing Corporation]," and that the NSCC gave Robinhood a file requesting deposit of $3 billion dollars, later lowered to $1.4 billion through negotiations, and again reduced to $700 million, which Robinhood paid.  Elon Musk then asked Mr. Tenev "[i]s anyone holding you hostage right now?"  To which Mr. Tenev answered "no."  In discussing the decision to have position closing only, Mr. Tenev said "**we knew this was a bad outcome for customers**."[1]

As a result of Robinhood's conduct, Plaintiffs filed a Complaint captioned *Quat, et al. v. Robinhood Financial, LLC*, Case No. 1:21-cv-21404 (S.D. Fl.) alleging violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(j)(b), and Rule 10b-5 promulgated thereunder by the SEC.  Pursuant to the PSLRA, Plaintiffs filed certifications with their Complaint attesting, among other things, that they are willing to serve as representative parties on behalf of the Class and setting forth the financial losses suffered by them as a result of Robinhood's conduct. The certifications are attached hereto as Exhibit A.

## III.   ARGUMENT

### A.  Plaintiffs Should Be Appointed Lead Plaintiffs Under The PSLRA

The PSLRA "requires the court to appoint a 'lead plaintiff' in private securities class actions who is 'the member or members of the purported plaintiff class that the court determines

---

[1]https://www.realclearpolitics.com/video/2021/02/01/elon_musk_interviews_robinhood_ceo_vlad_tenev_on_stock_tradigin_restrictions_on_clubhouse_app.html (last visited 2/2/21).

to be most capable of adequately representing the interests of class members.'" *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 268 (S.D.N.Y. 2009).  15 U.S.C. § 78u-4(a)(3)(B)(iii) states, in pertinent part:

> Subject to subclause (II), for purposes of clause (i), the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—
>
> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

Here, Plaintiffs satisfy each of these factors.

### 1. Plaintiffs Filed A Complaint

As noted above, Plaintiffs filed a Complaint in the Southern District of Florida with regard to this matter.  *See* Complaint (ECF No. 1), *Quat, et al. v. Robinhood Financial, LLC*, Case No. 1:21-cv-21404 (S.D. Fl.).  Along with their Complaint, each Plaintiff filed a certification, in accordance with the PSLRA, certifying that they are willing to serve as Lead Plaintiffs in this action and are willing to assume the duties as representative Plaintiffs.  *See* Ex. A.  As such, Plaintiffs satisfy 15 U.S.C. § 78u-4(a)(3)(B)(iii)(aa).

### 2. Plaintiffs Have The Largest Financial Interest

"The most important factor in determining the lead plaintiff is the amount of financial interest claimed." *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 502 (S.D. Fla. 2002).  In this District, it is well settled that individual plaintiffs may aggregate their losses into a group to show the largest financial interest. *See id.* at 503 ("The idea that plaintiffs may aggregate their losses

into a group to show the largest financial interest derives from the language of the PSLRA which states that the most adequate plaintiff is the 'person or group of persons.'") (quoting 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)); *id.* at 503-04 ("This Court adopts the reasoning of the Third Circuit and finds that aggregation is acceptable for the purposes of lead plaintiff in private securities litigation."). "In determining the largest financial interest, courts consider: (1) the number of shares purchased during the class period; (2) the amount of the investment, and (3) the 'alleged losses.'" *Sheet Metal Workers Loc. 28 Pension Fund v. Off. Depot, Inc.*, 2008 WL 1943955, at *2 (S.D. Fla. May 2, 2008).

Here, there is no question that Plaintiffs, individually and in the aggregate, have suffered the largest financial loss. This case is somewhat unique in that there are several Stocks at issue, not just one. This group of Plaintiffs represents a broad spectrum of the Stocks, making them particularly qualified to serve as Lead Plaintiffs.[2] A list of the Stocks purchased by each Plaintiff is set forth below,[3] as well as in the certifications attached hereto as Exhibit A.

| Plaintiff Name | Stocks Purchased Through Robinhood and Number of Shares Held At The Time Of Robinhood's Manipulative Conduct |
| --- | --- |
| Tenzin Woiser | NOK (648 Shares) |
| Mike Ross | BBBY (22 Shares) |
| Michael McFadden | AMC (42.823663 Shares)<br>SNDL (100 Shares) |
| Eric Quat | SNDL (309 Shares)<br>NOK (75 Shares)<br>AMC (50 Shares) |
| Aaron Fassinger | NAKD (149 Shares) |
| Igor Kravchenko | GME (150 Shares) |

---

[2] On the contrary, a solitary lead plaintiff who purchased only one or a few of the Stocks at issue may raise standing concerns at class certification as to the Stocks at issue not purchased by the representative Plaintiff. *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1395 (S.D. Fla. 2014) *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1395 (S.D. Fla. 2014) ("Plaintiffs' lack standing to assert claims regarding products they did not purchase . . .")

[3] This share count reflects the number of shares purchased on or before January 28, 2021, in accordance with the class definition set forth in the Complaint. Complaint ¶ 68.

Plaintiffs were injured by the combination of 1) selling shares at a loss on or after 1/28/21 and 2) losing the value of shares still held as a result of Robinhood's manipulative conduct. Individually and aggregated, Plaintiffs have suffered the largest financial loss as a result of Defendant's conduct.

### 3. Plaintiffs Satisfy The Requirements of Rule 23

Plaintiffs also satisfy the requirements of Rule 23. At this juncture, namely at the stage of appointing a lead plaintiff or plaintiffs, only a *prima facie* showing is required. *See, e.g., McDermid v. Inovio Pharm., Inc.*, 467 F. Supp. 3d 270, 277 (E.D. Pa. 2020) ("The Inovio Group makes a *prima facie* showing of typicality"); *In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001) (requiring that the Rule 23 factors be "preliminarily satisfied" at the appointment of lead plaintiff stage); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 439 (S.D.N.Y. 2008) ("At this point, a prospective lead plaintiff need only make a preliminary, *prima facie* showing that his or her claims satisfy the requirements of Rule 23."). As one Florida federal court explained:

> A wide-ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class certification. This inquiry, therefore, focuses on the qualities of the class representatives enumerated in 23(a)(3) and 23(a)(4), that is, typicality and adequacy. Fed. Rule Civ. P. 23. The language of the Act envisions this delineation, which directs attention to "unique defenses" that may apply to a presumptive "most adequate" plaintiff and whether that plaintiff will "adequately represent" the class. The analysis inevitably comes down to the one question of whether Movant will fairly and adequately represent the interests of the class. The Court must determine whether Movant is entitled to the presumption, whether Plaintiff has rebutted that presumption, or whether Plaintiff demonstrated a reasonable basis for taking discovery.

*Fischler v. AMSouth Bancorporation*, 1997 WL 118429, at *2 (M.D. Fla. Feb. 6, 1997).

As to adequacy, "[t]he determination of fair and adequate representation rests on two bases:

common interests between representative and the class and a willingness and ability to vigorously prosecute the action." *Id.* at *3. Here, proposed Lead Plaintiffs satisfy both typicality and adequacy.

### a. Typicality

"Under Rule 23, typicality is present when the lead plaintiff's claims arise from the same series of events and are based on the same legal theories as the claims of other class members." *Plymouth Cty. Ret. Sys. v. Carter's, Inc.*, 2009 WL 692141, at *2 (N.D. Ga. Mar. 13, 2009). "Claims need not be identical to be typical." *Id.*

Here, Plaintiffs' claims are typical of those of the other class members because all class members bring claims under federal securities laws; specifically, Robinhood's market-manipulative conduct effected all class members identically. There are no defenses relevant to these proposed Lead Plaintiffs that are unique to Lead Plaintiffs. Further, Lead Plaintiffs' interests are not in conflict with the interests of any other class member. *Id.* at *3 ("Plaintiff can adequately represent a class of investors because it has no interests that conflict with other class members . . .").

### b. Adequacy

Rule 23's adequacy requirement "means that the class representative has common interests with unnamed class members and will vigorously prosecute the interests of the class through qualified counsel." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001). "In evaluating the adequacy factor, the Court follows the general principle that adequacy of representation is primarily based on the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the class and whether plaintiffs have interests antagonistic to those of the rest of the class." *Campos v. ChoicePoint, Inc.*, 237 F.R.D.

478, 487 (N.D. Ga. 2006) (citation omitted).

Here, Plaintiffs have every intention of vigorously litigating the claims on behalf of the class.  Indeed, Plaintiffs have certified that they are willing to serve as representative plaintiffs, including attending deposition and trial.  *See* Ex. A.  Further, Plaintiffs have retained counsel highly qualified in complex class action litigation who intend to devote the necessary time and resources to this litigation, as set forth below.  Indeed, Plaintiffs' counsel, Bursor & Fisher, was recently approved as lead counsel in another securities action against Robinhood by Judge Yvonne Gonzalez Rogers in the Northern District of California.  *See* 4/12/21 Order (ECF No. 55), *Kwon v. Robinhood Financial LLC et al*, Case No. 4:20-cv-09328-YGR (N.D. Cal).[4]  Neither proposed Lead Plaintiffs or Proposed Lead Counsel have any interests that are antagonistic to the interests of the rest of the class.

### B.  Plaintiffs' Counsel Should Be Appointed Lead Counsel

Pursuant to the PSLRA, the lead plaintiff has authority to select lead counsel.  15 U.S.C. § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.").  "So long as the lead plaintiff has made 'a reasonable choice of counsel, the district court should generally defer to that choice.'"  *Inchen Huang v. Depomed, Inc.*, 289 F. Supp. 3d 1050, 1055 (N.D. Cal. 2017) (quoting *Cohen v. U.S. Dist. Court for N. Dist. of California*, 586 F.3d 703, 712 (9th Cir. 2009)).

Here, proposed Lead Counsel has substantial experience handling class actions and other complex litigation, including successful experience litigating, settling, and, where necessary, trying certified class action cases.  Bursor & Fisher lawyers have been court-appointed counsel or

---

[4] The Order is attached to the Declaration of Sarah N. Westcot ("Westcot Dec.") as Exhibit B. *See* Westcot Dec. ¶ 8.

interim class counsel in more than 30 class actions.  *See* Westcot Dec., ¶ 6, and firm resume attached thereto as Exhibit A.  Bursor & Fisher has also proven that it can – and will – take cases to trial if necessary, having won multi-million-dollar verdicts or recoveries in six of six civil jury trials in consumer class action cases since 2008.  Westcot Dec., at ¶ 5.  Bursor & Fisher's most recent class action trial victory came in May 2019 in *Perez v. Rash Curtis & Associates*, Case No. 16-cv-03396-YGR (N.D. Cal.), in which Bursor & Fisher served as lead trial counsel and won a $267 million jury verdict against a debt collector found to have violated the Telephone Consumer Protection Act.  *Id.*  Also, while serving as lead trial counsel in *Thomas v. Global Vision Products, Inc.*, Bursor & Fisher obtained a $50 million jury verdict in favor of the plaintiff and class on a CLRA claim. *Id.* In another example, *Ayyad v. Sprint Spectrum, L.P.*, Bursor & Fisher obtained a $299 million trial verdict for a class of Sprint customers.  *Id.*  Bursor & Fisher also has substantial experience in multidistrict litigation, including holding plaintiffs' leadership positions in *In re Zantac (Ranitidine) Products Liability Litigation*, Case No. 9:20-md-02924 (S.D. Fl.) (Rosenberg, J.) (S. Westcot appointed to Plaintiffs' Steering Committee),  *In re Valsartan Losartan and Irbesartan Products Liability Litigation*, Case No. 1:19-md-02875 (D.N.J.) (Plaintiffs' Steering Committee), *American Medical Collection Agency, Inc., Customer Data Security Breach Litigation*, Case No. 2:19-md-02904 (D.N.J.) (Bankruptcy Liaison Counsel).  Finally, Bursor & Fisher has an active securities practice, and is presently litigating matters involving federal securities laws, including matters against Robinhood.  *See Kwon v. Robinhood Financial LLC et al,* Case No. 4:20-cv-09328-YGR (N.D. Cal) (appointed co-lead counsel).

Bursor & Fisher also has the resources to devote to this litigation.  Bursor & Fisher is a well-established, successful law firm that has the resources and personnel necessary to pursue a case of this magnitude, as they have demonstrated in numerous similar large-scale class actions.

10

Bursor & Fisher has already demonstrated the will and ability to commit the necessary resources to assure a strong and well-supported case on behalf of members of the proposed class. The firm's resources are not merely financial, but also include substantial expertise and work-product as discussed above, which were developed in other similar cases that will benefit Plaintiffs and the putative class.  Other courts have opined on the resources and commitment of Bursor & Fisher in representing clients in class action cases. For instance, Judge Morrison C. England, Jr. of the Eastern District of California appointed Bursor & Fisher as interim class counsel in *Melgar v. Zicam*, LLC, No. 2:14-cv-00160-MCE-AC (E.D. Cal. Oct. 29, 2014).  Westcot Decl., ¶ 10; Exhibit C to Westcot Decl., Oct. 29, 2014 Order in *Melgar v. Zicam*, LLC, No. 2:14-cv-00160-MCE-AC, ECF No. 21. Judge England's order noted that Bursor & Fisher "has extensive experience representing plaintiffs in large class actions, both in negotiating settlements and litigating through trial." *Id*. Judge England further commented that "Bursor & Fisher is a well-established, reputable firm that is up to handling the challenges of this litigation and is capable of committing the requisite resources to doing so. The Court is confident that Bursor & Fisher will fairly and adequately represent the interests of the class." *Id.* (citation omitted).

Given proposed Lead Counsel's qualifications, this Court should approve proposed Lead Plaintiffs' choice of counsel.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion to appoint them as Lead Plaintiffs and approve their selection of Lead Counsel.

[signature block on following page]

11

Dated: April 14, 2021               Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   */s/ Sarah N. Westcot*
       Sarah N. Westcot

Sarah N. Westcot (FBN:  1018272)
Rachel Miller (FBN:  119778)
Stephen Beck (FBN: 1010183)
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
Email: swestcot@bursor.com
       rmiller@bursor.com
       sbeck@bursor.com

*Attorneys for Plaintiffs*

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(3)

Pursuant to Local Rule 7.1(A)(3), counsel for movants have conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.  Counsel for Plaintiff Cody Todd has advised that Mr. Todd opposes the motion.  Counsel for Robinhood advised that Robinhood takes no position on the motion.

By:     */s/ Sarah N. Westcot*
Sarah N. Westcot


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 14, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day to all counsel of record in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:     */s/ Sarah N. Westcot*
Sarah N. Westcot

13