UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-2989-MDL-ALTONAGA/Torres

In re:

**JANUARY 2021 SHORT SQUEEZE
TRADING LITIGATION**

_____/

This Document Relates to All Actions

## APPLICATION OF GABRIEL A. ASSAAD FOR LEAD COUNSEL AND A PROPOSAL FOR A LEADERSHIP STRUCTURE

To the Honorable Judge Cecilia M. Altonaga:

I respectfully submit this application for leadership Lead Counsel in the January 2021 Short Squeeze Litigation. I am the attorney in case number 1:21-cv-21338-CMA, Ross et al v. Robinhood Financial, LLC et al, which was filed on January 29, 2021 and I believe to be the first case to allege a violation of the Sherman Act.

My application for leadership is not only based on my experience in class actions and multidistrict litigation ("MDL") but is also a detailed proposal for a leadership structure that is based on experience, diversity, inclusion, and mentorship. It is my belief that all are required and can easily be incorporated with the group of Plaintiffs' attorneys currently involved.

My application is divided into three parts. First, to provide a brief background of the case, its complexity, and the need for a sophisticated leadership structure. Second, to provide a proposed leadership structure that fully staffs the MDL to adequately and efficiently litigate the many claims that have been alleged in the numerous lawsuits. Finally, based on the proposed leadership structure, to identify my experience, knowledge, and skills warranting my selection as one of the lead counsel.[1]

My goal in this application is to propose a leadership structure that comports to the above and submit my application for a specific position. There is no dispute that the pool of attorneys to select from are experienced and well qualified. Since the attorneys have not had a consensus

---

[1] As will be discussed below, I have been involved in numerous MDL litigation involving medical devices in the past 6 years. During my tenure, I have worked hard to include the younger attorneys and inexperienced attorneys to be involved in meaningful work (work besides document review) and always promoted inclusion rather exclusion. I will be the first to admit that there are others seeking leadership that have more experience than myself in antitrust and these type of class actions. However, as will be seen in my proposed leadership structure, my goal as being co-lead and chair of the common benefit committee is to implement the tenets of inclusion, diversity, mentorship, and distribution of common benefit work.

1

on leadership nor any leadership structure, the Court now has the task of the appointment of leadership. [Dkt. 209, April 19, 2021 Order].

## I.   SUMMARY

This MDL is an unquestionably a very complex MDL.  As discussed in the initial status conference, there is a consensus that the MDL (absent the securities claims) should be broken into three tranches – Broker-Dealer; Antitrust; and Common Law.   There are numerous claims and over thirty Defendants represented by some of the premier firms in the country.  Therefore, a large leadership structure would be appropriate to adequately represent the potentially millions of class plaintiffs in this MDL.  As a comparison, Judge Rodgers in the Northern District of Florida appointed fifty-five lawyers to leadership in a case that only had one defendant and did not have nearly as many people affected as in this case. (Exhibit 1, Combat Arms Product Liability Litigation).

Due to the size of this MDL and my goal to focus on experience, diversity, inclusion, and mentorship, I propose leadership structure of 57 attorneys.  As will be discussed in detail below, the structure is inclusive of both experienced and young attorneys, diverse (both geographically and characteristically), and allow for mentorship.  The proposed structured is designed to allow accomplished attorneys in their respective fields to mentor younger diverse attorneys.   It ensures that the MDL litigation will not be dominated by a few firms that will take all the work and distribute it only amongst themselves.

The unique and attractive characteristic of my proposed leadership structure is the position I seek as a lead counsel.  I seek to be one of the lead counsel that will also be the chair of the common benefit committee which will be responsible with the overseeing of the distribution of work ensuring all members of leadership be provided fair opportunity to participate in the case development.  As this Court is aware, there are many MDLs in which the lead counsel and executive committee will have numerous attorneys from their office working on the case and members of the steering committee or other committees are not being provided any opportunities to work.

There is enormous interest in this litigation from many attorneys who not just want to be involved but want to provide meaningful work[2].  The chair of the common benefit committee oversees the common benefit hours and will ensure that all members of leadership will have the opportunity to meaningfully participate in this MDL.

## II.   BACKGROUND

This is a big and important case in which tens of millions of individuals have been affected by the actions of the Defendants.  The Short Squeeze Actions each allege a conspiracy among some or all brokerages, hedge funds, and clearing houses to manipulate the prices of GameStop Corp. (GME), AMC Entertainment Holdings Inc. (AMC), American Airlines Group Inc. (AAL), Bed Bath & Beyond Inc. (BBBY), BlackBerry Ltd. (BB), Express, Inc. (EXPR), Koss Corporation (KOSS), Naked Brand Group Ltd. (NAKD), Nokia Corp. (NOK), Sundial

---

[2] The initial status conference of April 19, 2021 in which numerous attorneys appeared before this Court is indicative of the interest of many attorneys to be involved.

Growers Inc. (SNDL), Tootsie Roll Industries, Inc. (TR), or Trivago N.V. (TRVG) (collectively, the "Relevant Securities") from one or more of the Defendants between January 1, 2021 through and until the anticompetitive effects of Defendants' unlawful conduct ceases.  Although the Defendants[3], which are more than twenty-five that have been named in multiple lawsuits, deny any liability in this case, if the Court denies the anticipated FRCP 12 motions, discovery in each of the tranches will be extensive.

This MDL involves claims against all or nearly all the Defendants and challenge essentially the same unlawful conduct related to the restriction of trading in the Relevant Securities occurring on or around January 28, 2021. The causes of action include claims for damages under Section 1 of the Sherman Act, 15 U.S.C. § 1, common law claims, state antitrust claims, and seek similar relief in the form of damages and an injunctive relief.

Due to the nature of multiple defendants, it is likely that there will be a plethora of discovery issues that will be raised in each of the tranches and by each of the Defendants.  There will potentially be multiple trials due to the federal claims as well as the state common law claims and antitrust claims.  The complexity of this case and the fact that there are many Defendants will require a large leadership structure and funding in the millions of dollars.  As an example, the 3M Combat Arms Product Liability Litigation which is against one Defendant has already collected $5.8 million from the members of leadership.  The case before this Court contains over 30 Defendants that are represented by the largest law firms in the country.  The law firms will likely be staffing this case with dozens of attorneys, if not hundreds, thus requiring a Plaintiffs leadership structure to be large and well-funded.

While others may oppose a large leadership structure[4], I see the benefit of utilizing this case to incorporate the general trend in MDLs to have a leadership structure that is racially and gender diverse, having both experienced and young attorneys, to be geographically diverse, and to be promote mentorship by providing an opportunity for young attorneys to argue motions and take depositions.  The leadership structure proposed below maximizes the cases' demands, while minimizing unnecessary bureaucracy.

The leadership structure in which I propose with the oversight of the Common Benefit Committee will be responsible to the Court for ensuring that no member appointed by the Court

---

[3] Ally Financial Inc.; Alpaca Securities LLC; Cash App Investing LLC; Square Inc.; Dough LLC; Morgan Stanley Smith Barney LLC; E*Trade Securities LLC; E*Trade Financial Corporation; E*Trade Financial Holdings, LLC; eToro USA Securities, Inc.; Freetrade, Ltd.; Interactive Brokers LLC; M1 Finance, LLC; Open To The Public Investing, Inc.; Robinhood Financial, LLC; Robinhood Markets, Inc.; Robinhood Securities, LLC; Ig Group Holdings PLC; Tastyworks, Inc.; TD Ameritrade, Inc.; The Charles Schwab Corporation; Charles Schwab & Co. Inc.; FF Trade Republic Growth, LLC; Trading 212 Ltd.; Trading 212 UK Ltd.; Webull Financial LLC; Fumi Holdings, Inc.; Stash Financial, Inc.; Barclays Bank PLC; Citadel Enterprise Americas, LLC; Citadel Securities LLC; Melvin Capital Management LP; Sequoia Capital Operations LLC; Apex Clearing Corporation; and The Depository Trust & Clearing Corporation, (together, the "Defendants").

[4] To date, I am only aware of general proposals of a leadership structure that includes co-lead counsel and several executive committee members.  As a result, and after some considerable thought, I chose to seek a co-lead position and propose this leadership structure to include the many attorneys that are seeking to participate in this litigation and to be appointed Co-Lead to take on the role of promoting inclusion among the leadership.

is prevented from performing common benefit work. In addition, by having a large leadership, the Court will be able to appoint leadership that is based on experience, diversity, inclusion, and mentorship without compromising the litigation.

### III. PROPOSED LEADERSHIP STRUCTURE

To incorporate the common objective to have a leadership structure that includes attorneys with experience, that is diverse, inclusive, and provides mentorship, I propose a structure with 57 members which include 7 Co-Leads, 13 Executive Members, and 37 Members on the Plaintiffs Steering Committee ("PSC"). This leadership model is based on the model Judge Rodgers implemented in the Combat Arms Product Liability Litigation. As a result of the large leadership structure, in less than 2 years from the appointment of leadership, the Combat Arms litigation has completed discovery and is currently in trial on the first Bellwether case. In my view, the leadership in the 3M Combat Arms MDL which consists of 55 attorneys has been efficient because of its large size and organization. (Exhibit 1, 3M Combat Arms Leadership Structure).

In brief, since each tranche is in of itself a separate large case, the leadership structure needs to ensure that each tranche is well equipped to litigate this case. As outlined below, the Court will notice that each tranche has a similar structure, however, certain committees, such as ESI/Discovery and State/Arbitration Liaison are independent due to the nature that these areas encompass all tranches. In addition, with respect to the duties of each of the members, I have utilized Judge Rodgers Case Management Order No. 4 to provide guidance. (Exhibit 2, 3M Combat Arms CMO 4).

- **Seven (7) Lead Counsel Members**
    - 2 Lead Counsel for Common Law tranche
    - 2 Lead Counsel for the Antitrust tranche
    - 2 Lead Counsel for the Broker-Dealer tranche
    - 1 Lead Counsel which Chairs the Common Benefit Committee and is also a Lead Counsel of each tranche

The Lead Counsel for each tranche will collaboratively lead and coordinate the activities of all plaintiffs' attorneys in this litigation for their particular tranche and, in consultation with the Executive Committee for their tranche, make all decisions—strategic, procedural, and/or substantive—on behalf of all plaintiffs. The responsibilities for the Lead Counsel that also chairs the Common Benefit Committee will be discussed below. In addition, the Lead Counsel will oversee the entire litigation to avoid duplication among the several tranches.

One Lead Counsel of each tranche appointed by the Court will be an attorney with less than 15 years of experience.[5] The Court will have an opportunity to appoint a diverse group of Lead Counsel (women and minorities) because of its size.

Lead Counsel will have the following duties:

---

[5] I support Natalia Salas as one of the Lead Counsel. Ms. Salas has shown strong leadership throughout this process and has characteristics and experience to perform the duties of a lead counsel.

1. Serve as spokesperson during these coordinated pretrial proceedings in response to any inquiries by the Court or opposing counsel.

2. Make or submit any oral or written motions to the Court on behalf of the plaintiffs, as well as oppose, when necessary, any motions submitted by the Defendants involving matters within the Lead Counsel's sphere of responsibilities.

3. Negotiate and enter into stipulations with the Defendants regarding the litigation. All stipulations entered into by Lead Counsel, except for strictly administrative details such as scheduling, must be submitted for Court approval and will not be binding until the Court has ratified the stipulation.

4. Chair the Executive Committee.

5. Convene meetings of the Executive Committee for the purpose of proposing joint action and discussing and resolving matters of common concern.

6. Coordinate discovery on behalf of the plaintiffs, consistent with the requirements of Fed. R. Civ. P. 26, and in conjunction with the Steering Committee and the Joint Discovery/ESI Committee.

7. Consult with and employ expert witnesses in conjunction with the Expert Committee.

8. Delegate specific tasks to other counsel or designated committees, in a manner that ensures that the plaintiffs' pretrial preparation is conducted effectively, efficiently, and economically. Monitor the activities of co-counsel to ensure that schedules are met, and unnecessary expenditures of time and funds are avoided.

9. Attend status and case management conferences, including preconference meetings with the Court and opposing counsel.

10. Ensure that court orders are followed, schedules are met, discovery is conducted consistent with the requirements of Fed. R. Civ. P. 26, unnecessary expenditures of time and funds are avoided, and any negotiations are reasonably efficient and productive.

11. Perform any task necessary to carry out the functions of Lead Counsel to properly coordinate the plaintiffs' pretrial activities.

12. Perform any other functions as may be expressly authorized and/or required by this Court.

- **Four (4) Common Benefit Committee Members**
    - Each tranche will have one designated Common Benefit Committee member which will also be members of the Plaintiffs Steering Committee
    - The Lead Counsel appointed as Chair the Common Benefit Committee will be the fourth member to coordinate among the tranches.

5

The purpose of the Common Benefit Committee is two-fold. First and foremost, to oversee that the common benefit work is distributed among all the appointed leadership members in this MDL. There are many qualified attorneys involved in this litigation that want to participate in this litigation, the Common Benefit Committee will ensure that all those that want to participate get meaningful work. In addition, the Chair of this Committee will also update the Court either monthly or quarterly with the progress of distributing the common benefit work among the appointed members. The second function of this committee is to ensure that time and expenses are reported accurately, and that work is performed in an efficient manner.

- **Three (3) Liaison Counsel Members**
    - Each tranche will contain one Liaison Counsel which will also be members of the Executive Committee

Liaison Counsel will be responsible for maintaining and distributing an up-to-date, comprehensive service list of all plaintiffs' attorneys involved in this MDL and promptly advise the Court of any changes; serve as the point of contact between the Court and the plaintiffs' leadership; ensure that all Orders entered by this Court and all papers filed by the defendants are timely distributed to all plaintiffs' attorneys in the MDL; receive and distribute to plaintiffs' counsel, as appropriate, correspondence and pleadings not filed through CM/ECF; maintain adequate files of all pretrial matters, including establishing and maintaining a document or exhibit depository, and, under reasonable terms and conditions, have those documents available for examination by all plaintiffs and/or their attorneys; attend status and case management conferences, including preconference meetings with the Court and opposing counsel; assist Lead Counsel and the Court in promoting a just and efficient MDL; and, perform any other functions as may be expressly authorized and/or required by this Court.

- **Thirteen (13) Executive Committee Members**
    - Each tranche will contain three Executive Committee Members specific to that tranche
    - Chair of the Joint ESI/Discovery will also be an Executive Committee Member for each tranche to assist in coordinating ESI/Discovery across all tranches
    - The Liaison Counsel for each tranche will also be a member of the Executive Committee

The members of the Executive Committee will coordinate and oversee the activities of plaintiffs' counsel during these consolidated pretrial proceedings, as well as monitor and ensure that work conducted by plaintiffs' counsel is reasonably necessary and avoids unnecessary costs and duplication of effort; determine (after consultation with the Steering Committee and other plaintiffs' counsel, as appropriate) the plaintiffs' position on all matters arising during pretrial proceedings; coordinate the selection and management of any common issue and/or bellwether discovery and trials; schedule meetings of counsel for plaintiffs, committees, and subcommittees for any appropriate purpose, including coordinating responses to questions of other parties or of the Court. Maintain minutes or transcripts of these meetings; maintain adequate time and disbursement records covering common benefit work of designated counsel and establish guidelines, for approval by the Court, as to the keeping of time records and expenses; and perform any other task deemed necessary and proper for the Executive Committee to accomplish its responsibilities as defined by the Court's orders.

- **Fifteen (15) Discovery Committee Members**
    - Each tranche will contain three Discovery Committee Members which will also be members of the Plaintiffs Steering Committee
    - A member of the Executive Committee of each tranche will also be appointed co-chair the Discovery Committee for the corresponding tranche
    - A member of the Lead Counsel of each tranche will also be appointed co-chair of the Discovery Committee for the corresponding tranche

The Discovery Committee will coordinate and conduct discovery for this litigation with the defendants' representatives. The main criteria for membership on the Discovery Committee will be: (a) willingness and availability to commit to a long-term, time-consuming project; (b) ability to work cooperatively with others; and (c) professional experience in complex litigation. At the request and under the supervision of the Executive Committee, the Discovery Committee will have the following responsibilities:

1. Initiate, coordinate, and conduct all pretrial discovery on behalf and for the benefit of all plaintiffs in the actions consolidated in this MDL.

2. Develop and propose schedules for the initiation, conduct, and completion of all discovery on behalf of all plaintiffs, together with the Joint Discovery/ESI Committee.

3. Cause to be issued the necessary discovery requests, motions, and subpoenas pertaining to any witnesses and documents needed to properly prepare for the pretrial discovery of relevant issues found in the pleadings of this litigation.

4. Schedule meetings of counsel for plaintiffs for any appropriate purpose, including coordinating responses to questions of other parties or of the Court. Maintain minutes or transcripts of these meetings.

5. Perform any other task deemed necessary and proper for the Discovery Committee to accomplish its responsibilities as defined by the Court's orders.

- **Twelve (12) Expert Committee Members**
    - Each tranche will contain three Expert Committee Members which will also be members of the Plaintiffs Steering Committee
    - A member of the Executive Committee of each tranche will also be appointed chair the Expert Committee for the corresponding tranche

The Expert Committee, in consultation with Co-Lead Counsel and Executive Committee for the corresponding tranche, be responsible for the retentions and selection of experts for each particular tranche.

- **Nine (9) Law & Briefing Committee Members**
    - Each tranche will contain two Law & briefing Committee Members which will be members of the Plaintiffs Steering Committee
    - A member of the Executive Committee of each tranche will also be appointed to chair the Law & Briefing Committee for the corresponding tranche

The Law and Briefing Committee will—in consultation with Lead Counsel, Liaison Counsel, and the Executive and Steering Committees—plan, research and prepare the plaintiffs' pleadings, motions, responsive briefs, proposed orders, and other written materials during this litigation. Attorneys with exceptional legal writing skills and/or previous clerkships are preferred.

- **Six (6) Joint Settlement Committee Members**
  - Each tranche will contain Two Settlement Committee Members which will be members of the Plaintiffs Steering Committee

The Joint Settlement Committee will be responsible for working collaboratively and cooperatively to explore, develop, and pursue settlement options pertaining to any claim in any case filed in this litigation, as well as to identify any factual or legal issues that may impede the settlement of any case(s). Each tranche will have two members and each Defendant will have 2 members to pursue the goals outlined in this paragraph.

- **Four (4) Joint ESI/Discovery Committee Members**
  - Each tranche will contain one ESI/Discovery Committee Member which will be members of the Plaintiffs Steering Committee
  - The appointed ESI Executive Committee member will chair this committee which will be part of the Plaintiffs' Executive Committee as stated above.

The Joint Discovery/ESI Committee will be responsible for developing and proposing to the Court schedules for the initiation, conduct, and completion of discovery under a framework to be established by the Court. This Committee will also develop a meaningful ESI Protocol for the litigation and coordinate all other discovery during the course of these consolidated pretrial proceedings.

This committee will work with the plaintiffs' data management firm to manage the receipt, production, organization, and review of ESI. Attorneys with specialized knowledge of, or experience with, information and database management systems, electronic discovery, predictive coding/technology-assisted review (TAR), privilege and confidentiality protocols, and the legal frameworks applicable to these matters are preferred.

The Court will also designate ESI/Discovery Members for each Defendant to pursue the goals outlined in this section.

- **State/Arbitration Cases Liaison (PSC Member)**

The purpose of the position updates the Court of any state cases and/or arbitrations. In addition, this PSC member will coordinate between the attorneys representing state cases or are involved in arbitration and the Court to avoid inefficient and duplicative discovery which includes depositions and discovery requests.[6]

---

[6] There are numerous firms with many individual clients that may pursue individual arbitration under The Financial Industry Regulatory Authority (FINRA) and arbitration agreements between the consumer and the broker-dealer.

## IV.  EXPERIENCE

I am a first generation Egyptian and the first of my family to attend law school.  I am from Texas[7].  I have a Mechanical Engineering degree from the University of Florida and a law degree from Vanderbilt University Law School.  My resume its attached to this application.  (Exhibit 3, Resume).

I have been appointed to numerous committees in federal MDLs and state consolidations.  I have also been appointed as a lead counsel in a state consolidation in Massachusetts.   In addition, I have experience in the appellate courts in which recently I was involved in an MDL appeal in the Eight Circuit Court of Appeals.  I have also argued cases in front of the District of Columbia Court of Appeals and the Supreme Court of Virginia.  My firm, McDonald Worley, handles a broad spectrum of cases and is well funded to support this litigation.

In my almost 20 years of practice, I have taken hundreds of depositions of fact witnesses, experts, and corporate designees.  I have been involved in many trials including a federal MDL Bellwether trial.  I have had many positions in MDLs which include co-lead counsel, discovery committee, appeal committee, law and briefing committee, and expert committee.

I am very familiar with complex litigation and have been involved with ESI and discovery.  I am familiar with the numerous platforms available in these types of litigation to facilitate the process such as using and ESI expert, case management platforms, document management platforms, and common benefit platforms.  Due to the complexity of this case, all will be needed and early on.

I believe I should be appointed Lead Counsel because I will pursue the important tenets of leadership described above.  With almost 20 years of experience, I am an experienced attorney but also remember what is like to be a young attorney who is hungry to learn.  I have only been involved in MDLs for approximately 6 years and understand the difficulty it is to obtain meaningful work as an attorney new to the process.  I strongly believe that every attorney has something to contribute if they wish and if I am appointed as one of the Lead Counsels and Chair of the Common Benefit Committee, I will do my best to make that happen.[8]  I will be the voice for anyone that wants to participate, both in leadership and outside leadership.[9]

---

[7] Based on initial proposals, the attorneys that seek leadership are from California, New York, and California.  Texas, which likely contains many potential class members, should be represented as well in leadership.

[8] Even if this Court does not adopt a common benefit committee, if I am appointed as one of the Lead Counsel, I will still promote the goal of inclusion in this MDL.

[9] Due to the nature of these cases being class actions, many firms that have filed class action complaints may have complaints that become moot as a result of this MDL.  The only avenue to reap what they have sowed would be through common benefit work on this case.

## V. CONCLUSION

This is a complex litigation with many moving parts, Defendants, and tranches. The purpose of my application is to identify to the Court the complexity of this case, its size, and my ultimate goal that this case should be staffed with numerous attorneys from different backgrounds, experience, geographical areas, and to provide an avenue for the less experienced attorneys to be involved and mentored by the well qualified and experienced attorneys that will be appointed in this case. My hope is that I have laid out a framework for a leadership structure that meets these goals that I believe to be important to this Court and to the legal bar in general.

The proposed leadership structure is not perfect, but I hope I have laid out a shell that will assist the Court in its difficult task of appointing leadership and committees. I also suggest that since there has been confusion on the whether the deadline for applications was for just lead counsel or for all leadership positions, that the Court issue a new deadline for applications for specific leadership positions identified in this proposal or what the Court has determined to be the final leadership structure. (See Exhibit 2, 3M Combat Arms CMO 4 - Application).

I have been involved in numerous MDLs, I received a lot of work in some and no work in others. I believe my experience can benefit the MDL in that I will work extensively to make this an MDL of inclusion rather than one of exclusion. Every member of leadership will be able to participate in common benefit work and will have the common benefit committee to ensure that if an attorney wants to work, they will be able to. My proposed leadership plan avoids situations in which a law firm is providing most of the common benefit hours and others on the leadership committee are starving for the opportunity to work.

Finally, my proposed leadership structure defines the roles and that the responsibilities of each of the members are intertwined with each other so that all will be involved in a meaningful way. As an example, the two chairs of the discovery committee are taken from Lead Counsel and the Executive Committee and will ensure communication between the PSC, the Executive Committee and Lead Counsel.

I look forward to the litigation of this case and would be honored to be selected as one of the Lead Counsel and Chair of the Common Benefit Committee. If this Court has any questions or comments, I would be happy to address them.

Respectfully submitted,

By: */s/ Gabriel A. Assaad*
Gabriel A. Assaad
Texas Bar No. 24076189
gassaad@mcdonaldworley.com
McDonald Worley, PC
1770 St. James St., Suite 100
Houston, TX 77056
(713) 523-5500 – telephone
(713) 523-5501 – facsimile