**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-2989-MDL-ALTONAGA/Torres**

In re:

**JANUARY 2021 SHORT SQUEEZE**
**TRADING LITIGATION**

**THIS DOCUMENT RELATES TO**
**ALL ACTIONS.**
_____/

**APPLICATION OF DENNIS S. ELLIS OF BROWNE GEORGE ROSS O'BRIEN**
**ANNAGUEY & ELLIS LLP TO BE APPOINTED AS CO-LEAD INTERIM CLASS**
**COUNSEL**

Browne George Ross O'Brien Annaguey & Ellis LLP ("BGR"), by and through its partner Dennis S. Ellis, counsel for Robert Days in *Days v. Robinhood Markets, Inc.*, No. 1:21-cv-21310-CMA, hereby applies for Mr. Ellis to be appointed as co-lead interim class counsel, as part of the proposed leadership slate set forth herein.

**PRELIMINARY STATEMENT**

Retail traders captured the attention of the nation in January of this year, investing in heavily-shorted securities like GameStop, and causing a "short squeeze" such that the institutional investors holding the short interests lost significant amounts of money to the benefit of the retail traders. The everyday Americans beat Wall Street. Unfortunately, purchase restrictions were then imposed on retail traders, but not institutional investors, causing the retail traders' investments in the relevant securities to plummet to the tune of billions of dollars.

BGR is proud to be part of a proposed leadership slate that will represent the interests of those everyday American retail traders. BGR is also proud that the proposed leadership slate is not only imminently qualified, but reflects the diversity of the putative classes with regard to

1

race, gender, geography, and age. BGR understands that this proposed leadership slate enjoys the on-the-record support of no less than 29 law firms representing plaintiffs in cases consolidated here, a strong majority, and for that support, BGR is grateful.[1]

Heading BGR's team is name partner Dennis S. Ellis. Prior to joining BGR, Mr. Ellis enjoyed a sophisticated litigation practice at international law firm Paul Hastings LLP for more than 24 years, where he served as Global Chair of Complex Litigation and Arbitration. While Mr. Ellis is well-known for representing international celebrities and his consumer class action defense practice, he also has a notable track record of success on the plaintiff side. Examples include obtaining the largest known judgment on behalf of a Chinese firm in a U.S. court, in excess of $2.8 billion, and a $97.2 million jury verdict for claims related to an alleged failure to disclose material information in an investment solicitation. Mr. Ellis leads an accomplished group of BGR attorneys ready to devote significant resources on behalf of the putative classes in this case.

Joining Mr. Ellis and BGR would be the Ferraro Law Firm, headed by partner Natalia Salas, who would act as co-lead counsel with Mr. Ellis in focusing on the state law contract- and tort-based claims brought against trading platforms like Robinhood. Primary responsibility for the antitrust claims would be with Hach Rose Schirripa & Cheverie, LLP through partner Frank Schirripa. Ms. Salas's and Mr. Schirripa's own applications will speak to their noteworthy qualifications, but BGR is proud to support their proposed leadership roles in this case.

---

[1] Because a significant group of counsel have remained neutral publicly, this figure actually understates support for the slate including BGR. BGR and its proposed leadership partners have communicated with counsel for all 50 cases, and have only been informed that counsel for two cases supports a competing slate, and one member of that previously-proposed competing slate withdrew its candidacy this morning.

## BACKGROUND

On April 1, 2021, the Judicial Panel on Multidistrict Litigation transferred the *In re: January 2021 Short Squeeze Trading Litigation* MDL to the Southern District of Florida, before Your Honor. Dkt. No. 1. On April 19, 2021, the Court held its Initial Conference, at which, among other things, the parties and the Court discussed the process upon which lead counsel would be appointed. Dkt. No. 202.

Later the same day, the Court entered an Order, requiring that, if parties were unable to reach an agreement concerning lead counsel, applications be submitted for the Court's consideration on April 26, 2021. Dkt. No. 209. The parties engaged in numerous discussions concerning lead counsel, and while the leadership slate proposed by BGR herein garnered a strong majority of support (*see* Ellis Decl, Exh. G), because there was not unanimous consent, BGR now submits its application for a lead counsel appointment.

## ARGUMENT

When appointing class counsel, pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, the Court must consider four factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]" Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" *Id.* at 23(g)(1)(B). BGR and Mr. Ellis satisfy these requirements entirely.[2]

---

[2] These standards apply "equally to the appointment of interim lead counsel before certification." *In re Disposable Contact Lens Antitrust Litig.*, No. 3:15-md-2626-J-20JRK, 2015 WL 10818781,

### A. **BGR did significant work developing the claims in this action.**

BGR filed one of the first lawsuits against Robinhood in the nation on January 28, 2021. *See Days v. Robinhood Markets, Inc.*, No. 1:21-cv-21310-CMA, Dkt. No. 1. However, unlike many other counsel seeking leadership appointments, BGR did not simply rest on its laurels with having an early-filed complaint. BGR continued to consider facts as they came to light, including Robinhood's arguments in opposition to a preliminary injunction motion in the Central District of California, and its CEO's Congressional testimony. Thus, while many of the other complaints rely largely on early news reports, BGR's complaint takes Robinhood's defense that it was forced to restrict trading based upon increased clearinghouse deposit requirements head-on, and explains why Robinhood is nonetheless liable. *Id.* at Dkt. No. 23, ¶¶ 29–37, 43–56, 102–17. These legal arguments will be front and center in this litigation, and BGR developed them.

Moreover, BGR took the lead in addressing the structure in which these consolidated actions should proceed. That is, in response to the transfer motion filed by The Joseph Saveri Law Firm, which incorrectly argued that each of the cases "assert the similar causes of action— including claims for damages under Section 1 of the Sherman Act, 15 U.S.C. § 1" (MDL Docket, Dkt. No. 1-1, 3), BGR made clear that antitrust claims must be litigated on a separate track from the type of state law contract- and tort-based claims brought by BGR client Mr. Days. MDL Docket, Dkt. No. 144, 3–5. While The Joseph Saveri Law Firm lost the transfer motion, resulting in the MDL being sent to the Southern District of Florida as opposed to the Northern District of California, BGR's argument that the antitrust claims and state law contract- and tort-based

---

at *1 (M.D. Fla. Oct. 7, 2015); *see also, e.g., Bowers v. Sioux Honey Coop. Ass'n*, No. 12-21034-Civ-COOKE/Turnoff, 2012 WL 12865846, at *2 (S.D. Fla. Dec. 14, 2012).

4

claims must be litigated on separate tracks caught hold; now universally accepted by the plaintiffs and defendants.

### B. BGR has remarkable experience handling class actions and complex litigation.

Again, prior to joining BGR, where he is now a name partner, Mr. Ellis served as Paul Hastings LLP's Global Chair of Complex Litigation and Arbitration, working at the firm for more than 24 years. While Mr. Ellis has a thriving defense-side class action practice—representing clients like L'Oreal and PG&E—he has proven himself just as effective on the other side of the "v.". For example, Mr. Ellis has the distinction of being the lead attorney that obtained what is believed to be the largest judgment ever obtained by a Chinese firm in a U.S. court—in excess of $2.8 billion. Mr. Ellis was also part of a trial team that obtained a $97.2 million jury verdict on behalf of their client in a lawsuit involving claims of unfair competition and other related claims regarding the alleged failure to disclose material information in an investment solicitation. *See* Ellis Decl., Exh. C.

Mr. Ellis is joined by several of his partners at BGR, bringing a wealth of experience to this case, specifically Katherine F. Murray, Carl Alan Roth, and Matthew L. Venezia. Ms. Murray practiced with Mr. Ellis at Paul Hastings LLP for nearly 20 years before the two joined BGR, the duo having been counsel of record in at least 20 class actions, and brings significant class action and complex commercial litigation experience to the team. Similarly, Mr. Roth spent more than 20 years at Skadden, Arps, Slate, Meagher & Flom LLP prior to joining BGR, and has extensive experience in the areas of class actions, securities litigation, and antitrust litigation. Lastly, Mr. Venezia is a younger, millennial partner at BGR who has taken on much of the day-to-day responsibility for managing this case, including drafting the complaint. Mr. Venezia has a

burgeoning record of success in complex litigation against many of the country's top firms. Ellis Decl., Exhs. D–F.

### C. BGR is well-acquainted with the applicable law.

BGR's knowledge of the law related to class action practice is indisputable, Mr. Ellis and his partners having practiced in the class action area for decades at some of the largest law firms in the country before joining BGR, and maintaining similar practices to the present. BGR's attorneys are primarily located in California and practice extensively within the state, and have thus gained significant understanding and knowledge of the California substantive law that will be at issue in this case. (Robinhood's user agreement provides that "This Agreement and all transactions made in My Account shall be governed by the laws of the State of California[.]") Indeed, BGR "literally [has] written the book on business litigation in California (an attorney guide published by the Continuing Education of the Bar), which we update annually to reflect legal developments in Unfair Competition, . . . Antitrust, . . . Business Torts, . . . and Unfair Competition on the Internet." Ellis Decl., Exh. A.

### D. BGR is prepared to commit significant resources to this litigation.

BGR is an approximately 50-attorney litigation boutique firm, with significant resources, that regularly represents clients in high-stakes contingency cases, and is capitalized to do so. That BGR is heavily invested in this case is evidenced by its staffing of this matter, with at least four partners committed to litigating this matter, supported by BGR's highly qualified associates, and additional attorneys available should they be required. Ellis Decl., ¶¶2–8.

### E. **BGR and its proposed leadership slate represent the diversity of the putative classes.**

It is important that lead counsel reflect the diversity of the putative classes they seek to represent, as explained in the Duke Standards:

> In selecting a selection mechanism and in turn appointing a leadership team, courts should be mindful of the benefits of diversity of all types. In particular, the strong repeat player dynamic that has historically existed reduces fresh outlooks and innovative ideas, and increases pressure to go along with the group and conform, all of which may negatively impact the plaintiffs whose cases are being pursued in the MDL.

Bolch Judicial Institute, Duke Law School, GUIDELINES AND BEST PRACTICES FOR LARGE AND MASS-TORT MDLS (2d ed. 2018), p. 37. In another case against Robinhood in the Northern District of California, Judge Donato echoed these sentiments:

> The Court is concerned about a lack of diversity in the proposed lead counsel. For example, all four of the proposed lead counsel are men, which is also true for the proposed seven lawyers for the "executive committee" and liaison counsel. In addition, the proposed counsel appear to be lawyers and law firms that have enjoyed a number of leadership appointments in other cases. While this experience is likely to benefit the putative class, it highlights the "repeat player" problem in class counsel appointments that has burdened class action litigation and MDL proceedings. Counsel with significant prior appointments are by no means disqualified from consideration here, but leadership roles should be made available to newer and less experienced lawyers, and the attorneys running this litigation should reflect the diversity of the proposed national class. Consequently, the Court denies the interim counsel request. Plaintiffs may renew the request in a manner that addresses the Court's concerns.

*In re Robinhood Outage Litig.*, No. 20-cv-01626-JD, 2020 WL 7330596, at *2 (N.D. Cal. July 14, 2020).

BGR made clear from day one in its discussions with other parties that diversity is an important factor that must be considered in the selection of leadership, and is proud to present

7

proposed leadership that is not only imminently qualified to represent the putative classes, but also diverse, including both minority and female counsel at the top-line leadership level. BGR is committed to appointing an executive committee that similarly reflects the diversity of the putative classes.

## PROPOSED LEADERSHIP STRUCTURE

BGR, and the other members of its proposed leadership slate, propose that the Court appoint three co-leads, Mr. Ellis of BGR, Ms. Salas of the Ferraro Law Firm, and Mr. Schirripa of Hach Rose Schirripa & Cheverie, LLP. Mr. Ellis and Ms. Salas would preside over the state law contract- and tort-based claims, whereas Mr. Schirripa would preside over the antitrust claims. This leadership group would be supported by an executive committee consisting of 10–12 members, to be selected by the co-lead counsel after their appointment.[3]

BGR is committed to appointing a diverse executive committee, consistent with the diversity it sought at the lead counsel level. While BGR believes the executive committee should be finalized after the Court appoints leads, the following counsel has BGR's strong support for such roles:

---

[3] BGR understands that Joseph Saveri from The Joseph Saveri Law Firm will apply for the lead counsel role presiding over the antitrust claims. While BGR proposes an alternative in Mr. Schirripa, it is not opposed to Mr. Saveri's candidacy, and BGR does not seek any role in prosecuting the antitrust claims, having brought no such complaint. BGR understands that Mr. Schirripa is not opposed to a leadership structure that would include a significant role for Mr. Saveri, even being willing to serve in a co-chair type of position with Mr. Saveri should it best serve the interests of the class.

| | |
|---|---|
| Maurice Pessah<br>Pessah Law Group<br>661 N Harper Ave, Suite 208 West<br>Hollywood, CA 90048 | Kristi Stahnke McGregor<br>Evangelista Worley LLC<br>500 Sugar Mill Road, Bldg. A, Suite 245<br>Atlanta, GA 30350 |
| Matthew L. Venezia<br>Browne George Ross O'Brien Annaguey & Ellis LLP<br>2121 Avenue of the Stars, Suite 2800<br>Los Angeles, California 90067 | Sean Burstyn<br>Burstyn Law Firm PLLC<br>355 Lexington Avenue, Floor 8<br>New York, NY 10017 |

## CONCLUSION

For the reasons set forth above, BGR respectfully requests that the Court appoint Mr. Ellis as co-lead counsel, to be joined by Ms. Salas and Mr. Schirripa.

Dated: April 26, 2021

> */s/ Dennis. S. Ellis*
> **DENNIS S. ELLIS**
> **KATHERINE F. MURRAY**
> **CARL ALAN ROTH**
> **MATTHEW L. VENEZIA**
> **BROWN GEORGE ROSS**
> **O'BRIEN ANNAGUEY & ELLIS LLP**
> 2121 Avenue of the Stars, Suite 2800
> Los Angeles, California 90067
> Telephone:   (310) 274-7100
> Facsimile:   (310) 275-5697
>
> Attorneys for Plaintiff Robert Days