# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-2989-MDL-ALTONAGA/Torres

In re:

**JANUARY 2021 SHORT SQUEEZE**
**TRADING LITIGATION**
_____/

This Document Relates to All Actions

## JEFFREY A. KLAFTER'S APPLICATION FOR APPOINTMENT AS AN INTERIM LEAD COUNSEL

### I. INTRODUCTION

Plaintiffs Patryk Krasowski and Nick Parker ("Plaintiffs")[1] respectfully submit this application to appoint Jeffrey A. Klafter of Klafter Lesser LLP ("Applicant") as an Interim Lead Counsel in this MDL, with primary responsibility for handling the Robinhood Tranche.[2] The Robinhood Tranche is one of the three tranches (or buckets) discussed during the April 19, 2021 Initial Status Conference. The three tranches are: (1) All Antitrust claims against all Defendants; (2) All State Law claims against the Robinhood entities and other Robinhood related defendants; and (3) All State Law claims against the other broker defendants (TD Ameritrade, Schwab, E-Trade, WeBull) and other related defendants.[3] These tranches make logical sense as the Antitrust claims asserted in a number of complaints involve require the pleading of a conspiracy among many parties that are not parties in the broker-centric State Law complaints and involve

---

[1] These are the plaintiffs in *Krasowski, et al. v. Robinhood Financial LLC*, 21-cv-758 (N.D. Cal.).

[2] Applicant uses the word "primary" as all Court appointed Interim Lead Counsels will need to collaborate on a number of issues to ensure they are not taking inconsistent positions or duplicating efforts.

[3] There is also a fourth tranche (Securities Law claims), but recognizing that such claims are governed by the PSLRA, (ECF No. 209), this Application only concerns the non-federal securities claims in this MDL.

discrete legal issues. Having separate tranches for the Robinhood defendants and the other broker defendants is also necessitated because the majority of cases filed in this MDL only assert State Law claims against the Robinhood defendants and certain related parties, such as Citadel and Melvin Capital and because the State Law claims against the other brokers will also involve certain discrete issues. There was general agreement on the part of Plaintiffs and Defendants as to these three tranches and that there should be separate leadership for each tranche but also communication between the leadership of the three tranches to promote efficiencies. *See* Transcript of April 19, 2021 Initial Conference at 8-17.[4]

As set forth in the Klafter Lesser LLP Firm Resume attached as Exhibit A to the Declaration of Mr. Klafter filed separately ("Klafter Decl."), Mr. Klafter brings to this complex and multifaceted MDL decades of years of experience in being lead or co-lead of numerous class actions including those in which breach of fiduciary duty and breach of contract claims were the focal point and has also successfully prosecuted a class action against a client of Cravath Swaine & Moore – Robinhood's counsel in this MDL. *See* Point II(B)(2), below. This is significant as the principal claims that will be asserted against the Robinhood entities will include breach of fiduciary duty, breach of contract claims and aiding and abetting related claims.[5]

The appointment of Interim Lead Counsel sought by this application will provide the greatest benefit to the class of Robinhood investors whose holdings plummeted in value due to

---

[4] If any other applicant maintains that the Robinhood and Other Broker Tranches should be combined, and if the Court were to agree, Applicant requests that he be appointed Interim Lead Counsel with primary responsibility over both Tranches.

[5] Due to the complexity of the issues presented by this MDL that will be included in the Robinhood Tranche, if appointed as an Interim Lead Counsel, Mr. Klafter will propose, for the Court's approval, a Steering Committee for this tranche consisting of a relatively small and efficient number of attorneys. Mr. Klafter's goal will be to recommend attorneys to serve on this Robinhood Tranche Steering Committee who will have relevant experience and for the Committee to be as diverse as is possible.

Robinhood's wrongful shutting off of any purchases in numerous securities. They deserve the most capable leadership; not those who view this litigation as a means to get their first experience in prosecuting a complex class action. Application of the Federal Rule of Civil Procedure 23(g) factors, which are also embodied in the *Manual for Complex Litigation (Fourth)* § 21.11 (2004) ("*MCL*"), further demonstrate why this Court should approve Mr. Klafter Interim Lead Counsel.

## II. APPOINTING MR. KLAFTER AS AN INTERIM LEAD COUNSEL IS IN THE BEST INTEREST OF THE CLASSES

### A. Legal Standard for Appointment of Interim Lead Counsel

In appointing lead counsel to represent a putative class, Courts must consider the factors established in Federal Rule of Civil Procedure 23(g). Fed. R. Civ. P. 23(g)(3). The same standards govern appointment of interim lead counsel. *See MCL* § 21.11 (2004) (contemplating interim class counsel appointments where litigation involves multiple overlapping and duplicative class actions); *In re: Farm-Raised Salmon and Salmon Products Antitrust Litigation*, 19-21551-CIV-ALTONAGA, ECF No. 97 at 1 (S.D. Fla. June 3, 2019). These factors are: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A); *MCL* § 21.271.

### B. Jeffrey A. Klafter Satisfies the Rule 23(g) Factors

1. Rule 23(g)(1)(A)(i) and (iv) – Identifying or Investigating Potential Claims in the Action and Committing Resources to Represent the Class

Mr. Klafter began diligently investigating and identifying potential claims as soon as he and his firm, Klafter Lesser LLP, were contacted by numerous Robinhood customers who complained of Robinhood's restriction on purchases of a number of securities including GameStop and AMC. Mr. Klafter then spoke with dozens of such customers and analyzed

3

numerous screen shots evidencing Robinhood's block on further purchases of these and other stocks and further analyzed the significant decline in the value of the holdings of these customers coinciding with Robinhood's refusal to allow any purchases of these stocks and exercises of call options on such stocks as well.  Mr. Klafter then gathered and analyzed extensive information concerning the purported role of Citadel and Melvin Capital in Robinhood's decision to block purchases in these stocks and then, after being retained by two impacted Robinhood customers, researched the applicable law to determine what claims could reasonably be asserted, and prepared, with the assistance of his associate, Mr. Amir Alimehri, a detailed complaint for filing. Notably, unlike many of the complaints filed that are a part of this MDL, the suit filed by Klafter Lesser LLP devoted careful attention to defining a class of individuals who suffered an identifiable harm, rather than seeking to proceed with a class defined solely as those who could not purchase the restricted stocks, as many other cases did.  *See* Klafter Decl. ¶¶ 3-4 and Exhibits B and C.

Since the commencement of *Krasowski, et al. v. Robinhood Financial LLC*, Mr. Klafter and his firm have continued to dedicate significant resources to field further inquiries from, and gather facts from, many additional Robinhood customers and from the hearings the House Financial Services Committee held concerning Robinhood's block on purchases.  Klafter Decl. ¶ 7.  Mr. Klafter also developed a strong working relationship with Mr. Saveri, who Applicant understands is also seeking an Interim Lead Counsel appointment given his significant antitrust experience.. The organization of the Agenda Item presentations during the Initial Conference was a testament to those efforts.  Applicant's appointment as an Interim Lead counsel will assure a collaborative effort with the other Court appointed Interim Lead Counsel and other counsel for the benefit of all members of the classes.

4

As an Interim Lead Counsel, Klafter Lesser LLP is committed to devoting significant resources to the prosecution of this litigation and will self-fund its share of the considerable costs of prosecuting an MDL such as this without the assistance of any litigation funders. Klafter Decl. ¶ 6. Mr. Klafter has had experiences on large class actions and, as a result, understands the types and volumes of resources needed in a litigation like the instant one. Klafter Decl. ¶ 5 (discussing complex antitrust against Barclays in which Mr. Klafter was co-lead counsel and just under $2 million in expenses were incurred). Mr. Klafter is therefore well-equipped to command and allocate the resources necessary to effectively and efficiently oversee the prosecution of this MDL.

> 2. Rule 23(g)(1)(A)(ii) and (iii) – Experience Handling Class Actions, Other Complex Litigation, and the Types of Claims Asserted Here, As Well As Knowledge of the Applicable Law

Mr. Klafter and his firm have extensive experience prosecuting class actions, either as sole lead class counsel or as co-lead class counsel. Mr. Klafter began his legal career with the Antitrust Division of the United States Department of Justice. After spending two years with the DOJ, Mr. Klafter entered private practice. From 1988 until mid-2003, Mr. Klafter was a partner at a leading class action firm, Bernstein Litowitz Berger & Grossmann LLP. Early in his career, Mr. Klafter was one of the principal lawyers responsible for the prosecution of over 100 defendants to recoup the losses suffered by the purchasers of municipal bonds issued by the Washington Public Power Supply System when it defaulted on those bonds. That litigation resulted in the recovery of approximately $800 million, the largest securities fraud class action settlement at the time, but was not fully resolved until after three months of trial. Since then, among the many cases he has led, were, as sole lead counsel, the *Independent Energy* class action, in which $48 million was recovered for investors; as co-lead counsel, the *DaimlerChrysler AG Securities* class action, in which $300 million was recovered for investors; as co-lead counsel, the *IBM Securities Litigation* class action, in which $20 million was recovered for investors; (IBM was

5

represented by Cravath Swaine & Moore) and as co-lead counsel in the *Merced Irrigation District v. Barclays Bank PLC* class action $29 million was recovered for damaged energy traders. He has also served as special counsel to lead counsel in the *In re Ahold N.V. Securities & ERISA* class action in which $1.1 billion was recovered on behalf of the class.

Most pertinent to this MDL, Mr. Klafter has also served or is currently serving as sole lead or co-lead counsel for a number of class actions in which breach of fiduciary duty and breach of contract claims were or are the focal point. These include:

- IMH Secured Loan Fund (breach of fiduciary duty class action claims on behalf of investors in IMH Senior Loan Fund whose managers reorganized the Fund for their own benefit to the detriment to the investors) (co-lead counsel) ($1.345 million cash, $30 million security offerings, and corporate governance settlement)).

- Living Independent Group (breach of fiduciary duty class action claims on behalf of common shareholders in Living Independent Group, Inc. who did not receive any share of the General Electric Co.'s purchase price of the company (lead counsel) ($3 million settlement)).

- General Atlantic (breach of fiduciary claims on behalf of Post-Confirmation Committee for causing the company's bankruptcy) (sole counsel appointed by the Committee comprised of significant healthcare companies) (settlement amount is confidential).

- Spirit Airlines (breach of contract class action on behalf of passengers who were compelled to pay fees above the fare price to bring a carry-on on the plane) (co-lead counsel) (ongoing).

- Ohio State University (breach of contract class claims on behalf of students for partial refund of fees charged for the Spring and Summer 2020 semesters due to COVID closures) (co-lead counsel) (ongoing).

- University of Pittsburgh ((breach of contract class claims on behalf of students for partial refund of tuition and fees charged for the Spring 2020 semester due to COVID closures) (co-lead counsel) (ongoing).

### III. The Alternative Proposed Leadership Is Not in The Best Interest of the Class

Natalia Salas of the Ferraro Law Firm previously proposed a leadership structure including herself, Dennis Ellis of the Browne George Ross firm, and Frank Schirripa of the Hach

6

Rose Schirripa & Cheverie firm, ("Alternative Slate") and a 10–12-person Executive Committee. She did not indicate, however, who would be leading each tranche, although Mr. Schirripa's background is in antitrust. The appointment of Ms. Salas or Mr. Ellis as an Interim Lead with primary responsibility for the Robinhood Tranche (or any tranche) would not be in the best interest of the Robinhood class in this MDL for numerous reasons.[6]

While Applicant is mindful of, and very much agrees with, the Court's expressed interest in prior cases in promoting diversity and inclusion in MDL and other complex class action leadership, that admirable goal should not result in the appointment of a leader who lacks any material experience in prosecuting class actions or who has spent their legal career opposing class actions. Entrusting someone who lacks this basic experience to lead any tranche of this MDL could truly be prejudicial to all the plaintiffs in the MDL, and the classes they seek to represent, due to the inter-related nature of many of the claims. The Class members here are entitled to have lawyers with significant experienced in litigating complex class actions from start to finish in charge of these class claims. That is why Courts employ the Rule 23(g)/*MCL* § 21.11 factors, which favor experience, in appointing Interim Lead Counsel.[7]

---

[6] To the extent the Alternative Slate claims support or its supporters file statements of support, this Court should consider whether these supporters have any class action experience and question whether any promises or side-deals were made for such support. *See* MCL § 10.224. To the extent any statements are submitted recommending this Court appoint Applicant, Applicant expects that they will come from experienced class action attorneys who know the value of having experienced counsel leading this MDL. No promises of compensation or work have been made to anyone by Applicant. Klafter Decl. ¶ 10.

[7] Applicant believes that Ms. Salas, in her application, may challenge Mr. Klafter's appointment as Interim Lead Counsel on the grounds that his firm presently consists of all male lawyers. The Klafter Lesser firm has always promoted diversity and inclusion. Just last summer, nearly half the attorneys were women and it had a female partner since 2010. Additionally, Mr. Alimehri is of diverse backgrounds and is an active participant in diversity and inclusion efforts in the legal profession (including serving in a court-appointed role for such efforts). The firm is now in the process of rebuilding a diverse group of attorneys. Klafter Decl. ¶ 9.

Mr. Ellis' class action experience is limited to moving to dismiss class actions and opposing the certification of classes. *See, e.g.,* Ellis firm website bio ("Consumer Class Action Defense: Mr. Ellis has a thriving practice representing consumer packaged goods companies across the country. He has successfully defended such cases by obtaining motions to dismiss at the pleading stage and denial of motions for class certification."); *see also Guido v. L'Oreal, USA, Inc.*, 2013 U.S. Dist. LEXIS 94031 (C.D. Cal. July 1, 2013) (Mr. Ellis is lead lawyer for the defendant which opposed class certification). Someone who has made a career out of representing defendants in opposing class certification should not be given leadership over the Robinhood Tranche or indeed any tranche.[8]

Ms. Salas has even less class action experience, and thus also is not qualified under Rule 23(g)/*MCL* § 21.11 to be appointed an interim lead counsel in this MDL. The only class action experience Ms. Salas has (representing a plaintiff) to date is as the most junior lawyer from the Ferraro firm in *Byrd, et al v. McDonald's USA, LLC, et al*, 20-CV-6447 (N.D. Ill.), which was only just filed in October 2020, and is now subject to a motion to dismiss. Klafter Decl. ¶ 7. Further, the race discrimination claims in that case are of no relevance to the claims in this MDL. The only other litigation experience of Ms. Salas, who only joined the Ferraro firm last June, have had nothing to do with class actions except for two cases, one of which Ms. Salas simply represented what appears to be a non-party in opposing a motion to compel compliance with a discovery subpoena and the other as a non-partner with Foley & Lardner for a client who was a <u>defendant</u> in a products liability class action. *See* Klafter Decl. ¶ 8. The remaining cases Ms.

---

[8] Positions taken in briefs opposing class certification could be used against the class and Defendants could challenge his adequacy to represent the class in opposition to a class certification motion. In addition, Mr. Ellis has had no involvement in this MDL to date. Another attorney, Matthew Venezia, has been the only attorney from Mr. Ellis's firm who has been involved in this litigation since its inception.

Salas has been a counsel in are either Americans with Disabilities Act cases or business-to-business and intellectual property disputes.

Further bearing on Ms. Salas' inadequacy to serve as an interim lead counsel over this MDL is the complaint the Ferraro firm filed for the *Juncadella* plaintiffs. That complaint, attached as Exhibit B to the Klafter Declaration, irresponsibly brought claims on behalf of a class of "All Robinhood customers within the United States." (*Juncadella* Compl. ¶ 67). This proposed class is totally divorced from the wrongdoing at issue in this MDL. Further, this complaint provides not a single detail as to how any of the plaintiffs named in it were harmed. This is significant as the only claim of these plaintiffs appear to be pursuing as a class is that they and other class members "were not able to execute trades in any of the restricted stocks." (*Juncadella* Compl. ¶ 68).[9] There is therefore a substantial question as to whether any of the *Juncadella* plaintiffs have standing to pursue claims in this MDL. This is because it cannot be proven whether the plaintiff (or class member) would have made money or lost money if they were able to purchase any of the restricted shares. Indeed, the only court to be faced with a bare inability to purchase claim against Robinhood concluded it was speculative and that the plaintiffs so alleging did not have standing. *See Cobos v. Robinhood Fin. LLC*, No. 2:21-cv-00843-VAP-MRWx, 2021 U.S. Dist. LEXIS 54562, at *6, 9 (C.D. Cal. Feb. 10, 2021).[10] No lead counsel should be appointed when every client they represent is under a "standing" cloud. Under the leadership of

---

[9] Curiously, the *Juncadella* Complaint also alleges that each plaintiff "owns or owned stock within the Restricted Basket during the Class period," (*Juncadella* Compl. ¶¶ 27-42), but the Complaint nowhere defines what the "Class Period" is, further underscoring a lack of care in drafting the complaint.

[10] In marked contrast, the *Krasowski* Complaint provides details regarding each plaintiff and demonstrates how defendants' actions precluding purchases of the securities at issue that led to a cratering of the prices of those securities damaged the securities they already held. (*See* Klafter Decl. Ex. C, *Krasowski* Compl., ¶¶ 2-3, 28).

9

proposed Interim Lead Counsel with primary responsibility for the Robinhood Tranche, the class will be limited to those that can show they were damaged by the depression of the price of the stocks at issue caused by Robinhood's wrongdoing and therefore have standing.  This crucial pleading deficiency only underscores Ms. Salas's and the Ferraro firm's inexperience with any type of class action, which is also evident from the Ferraro firm's own website, which focuses on the personal injury nature of the firm's practice. [11]

As a result of the foregoing, it should be clear that neither the Ferraro firm nor Ms. Salas can be entrusted with as a lead counsel over any aspect of this MDL.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court appoint Mr. Klafter as Interim Lead Counsel with primary responsibility for the Robinhood Tranche.

**DATED:  April 26, 2021**               Respectfully submitted,

**KLAFTER LESSER LLP**

/s/Jeffrey A. Klafter
Jeffrey A. Klafter
Amir Alimehri
2 International Drive, Suite 350
Rye Brook, NY 10573
Telephone: (914) 934-9200
Email: jak@klafterlesser.com
amir.alimehri@klafterlesser.com

---

[11] Applicant expects Ms. Salas' application to emphasize that she will have Mr. James L. Ferraro (head of the Ferraro firm) to guide her.  A lead counsel appointment, however, is personal to the attorney.  *See MCL* § 22.62 ("Where several counsel are competing to be lead counsel or to serve on a key liaison committee, the court should establish a procedure for *attorneys to present their qualifications*, including *their experience* in managing complex litigation and knowledge of the subject matter, their efforts in researching and investigating the claims before the court, and the resources that they can contribute to the litigation." (emphases added)).  Thus, while an applicant may utilize the resources of their firm, the applicant must personally have the requisite experience to lead the case.  Underscoring Ms. Salas' lack of experience, Mr. Ferraro himself, on the signature block on the *Juncadella* complaint, listed himself as first and listed Ms. Salas at the bottom, even below a male attorney 10 years junior to her.