UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-2989-MDL-ALTONAGA/Torres

In re:

**JANUARY 2021 SHORT SQUEEZE**
**TRADING LITIGATION**

_____/

**APPLICATION OF MAURICE PESSAH ON BEHALF OF PESSAH LAW GROUP, PC**
**FOR APPOINTMENT TO PLAINTIFFS' LEADERSHIP COMMITTEE**

Pessah Law Group, PC ("PLG"), by and through its founder Maurice D. Pessah, counsel of record in the matter of *Gossett et al. v. Robinhood Financial, LLC et al.*, No. 1:21-cv-21293-CMA, hereby respectfully submits this application pursuant to MDL Pretrial Order No. 2 (Dkt. No. 209) for appointment to such leadership committee (Executive, Steering or Management (each a "Committee")) as may be deemed appropriate by this Honorable Court.[1]

**I. BACKGROUND**

The United States hosts the largest public capital markets in the world. The strength of these markets is inextricably linked to the trust its participants have in their fair and transparent operation. Any activity by key market players which erodes that trust has serious implications for the new and growing cohort of retail investors who wish to participate on equal terms.

Events giving rise to this litigation have raised valid questions as to whether those championing market accessibility are doing so in the spirit of transparency and in accordance with the letter of the law. Robinhood, a key defendant in this MDL, has over thirteen (13) million users,

---

[1] Pretrial Order No. 2 ("Order No. 2") provides, in relevant part, "if the parties involved fail to reach an agreement (…) a party seeking to be appointed lead counsel shall submit an application[.]" Counsel acknowledges, after discussing with Liaison Counsel and other counsel, that there have been varying interpretations of Order No. 2. The purpose of the instant application is to apprise the Court of PLG's experience and ongoing contributions to this MDL. It is not counsel's intention to contravene the Court's Order or overburden the Court.

1

with a reported median age of 31 years old[2] now trading in the capital markets. The impact on the markets of this largely millennial and demographically diverse cohort is undeniable.

In January of 2021, retail traders, operating predominantly via online brokerages like Robinhood, invested heavily in the securities of major U.S.-listed corporations such as American Airlines (AAL), AMC Entertainment Holdings (AMC), Nokia (NOK) and Gamestop (GME) (the "Affected Securities"). Large Wall Street players, on the other hand, had taken significant short positions in the Affected Securities. This dichotomy resulted in a scenario known as a "short squeeze." On January 28, 2021, Robinhood imposed drastic "buy side" trading restrictions on the Affected Securities, thereby forcing its clients to choose between the lesser of two evils: (1) sell their shares, or (2) hold their shares while the value of their portfolios plummeted due to artificial "position closing only" restrictions. This precipitated a morass of lawsuits across the country, which, upon motion to the Judicial Panel on Multidistrict Litigation (JPML), became known as the *In re January 2021 Short Squeeze Trading Litigation* (the "MDL"). On April 1, 2021, the JPML transferred the instant MDL to this Honorable Court.

This MDL involves numerous complex issues of law and fact. As of this date, there are dozens of pleaded common law causes of action, and state and federal statutory claims, including federal securities claims subject to inclusion in an, or multiple, eventual Master Complaint(s). More significantly, there are more than thirty (30) discrete defendants and hundreds of thousands (if not millions) of putative class members. Indeed, as this Court has acknowledged, the intricacies of this litigation necessitate the establishment of a collegial leadership structure designed to ensure judicial efficiency and collaboration.

---

[2] Kate Rooney, *Fintech App Robinhood Is Driving a Retail Trading Renaissance During the Stock Market's Wild Ride*, CNBC.com (June 17, 2020, 4:27 PM), https://www.cnbc.com/2020/06/17/robinhood-drives-retail-trading-renaissance-during-markets-wild-ride.html.

Notwithstanding the appointment of lead counsel, best practices support the establishment of a Committee "if the litigation involves numerous complex issues, if there is a substantial amount of work to be done, or if the plaintiffs have different interests that require separate representation." Bolch Judicial Institute, *Guidelines And Best Practices For Large and Mass Tort MDLS*, Duke Law School (2nd. Ed. 2018) (hereinafter, "Duke Standards"), p. 33. Accordingly, those involved in discussions amongst Plaintiffs' counsel have acknowledged the need for a leadership structure encompassing either an executive committee or co-chairs. PLG is poised to assist lead counsel with the effective and efficient management of this litigation in a manner that reduces duplication of efforts and preserves resources. *See*, *e.g.* Manual for Complex Litigation (4th Ed.) (hereinafter, "MCL 4th") §10.221, p.25.

## II. INTRODUCTION

PLG has been retained by over 4,100 individual plaintiffs. This class of plaintiffs has participated in PLG's streamlined digital intake system. This intake process is in part designed to build a database that will assist in the tabulation of damages, and in the collection of other pertinent information. Importantly, this information has also revealed the tremendous diversity that exists among those retail investors affected by the unlawful actions taken by Robinhood and other brokers on or about January 28, 2021.

PLG seeks to enhance the complexion of the leadership's diversity in this litigation—a diversity that ultimately reflects the multifaceted demographic and socio-economic makeup of plaintiffs. Indeed, PLG is committed to collaborating with the other appointed lead and Committee counsel "in a manner that fosters and sustains good working relations among fellow counsel and the Court." MDL Docket (Dkt. No. 46); *see also* MCL 4th §10.21, p.23 ("The added demands and burdens of complex litigation place a premium on attorney professionalism, and the judge should

encourage counsel to act responsibly."). If selected, PLG welcomes the opportunity to participate in the ongoing effort to modernize and enhance the efficiency of this complex MDL.

### III. ARGUMENT

#### A. PLG's Early Involvement In Class Advocacy

PLG was an early advocate for the putative class of Robinhood users impacted by the events of January 28, 2021. On January 29, 2021, PLG filed *Gossett et al. v. Robinhood Financial, LLC et al.*, 2:21-cv-00837 (C.D. Cal.) (the "Gossett Action") against Robinhood Financial LLC, Robinhood Securities LLC, and Robinhood Markets LLC (collectively, "Robinhood"). **Exh. A**: Conformed Copy of the Gossett Action Complaint. The Gossett Action was among the first lawsuits filed against Robinhood. From the moment Robinhood imposed trading restrictions on its largely millennial client base, PLG implemented a targeted outreach campaign designed to facilitate information gathering in a way that would resonate with Robinhood's user-base.

#### B. PLG's Streamlined Intake Methodology

Concurrently with the filing of the Gossett Action, PLG designed and initiated an extensive, targeted public outreach campaign focused on (i) facilitating access to the justice system, and (ii) collecting meaningful data from putative class members. This effort focused on social media and online applications, the very milieu which is so vital to the daily life of the affected class. PLG allocated significant time and financial resources towards this effort, resources which it remains committed to allocating in this MDL.

The success of PLG's undertaking is reflected in the vast number of clients now represented by the firm (4,180 and counting). The large putative class represented by PLG is demographically and geographically diverse. PLG's analysis and organization of the data that

continues to pour in from the affected class is ongoing. All or some of this information will play a vital role in establishing the claims germane to this MDL.

PLG has collected information regarding, *inter alia*, (i) which securities plaintiffs traded and in what volume; and (ii) in which derivatives of securities (such as options) they traded and in what volume. Equally as important are the fact patterns that class members have shared with PLG. These narratives underscore the common experience among plaintiffs who were impacted by Robinhood's unlawful actions.

Through this process, PLG is well positioned to assemble a vast repository of data (the "Data Repository"). Given the complex nature of this MDL, PLG recognizes the need to implement a process and system designed to efficiently ascertain and organize information within the Data Repository. PLG continues to refine its Data Repository and is eager to collaborate with leadership counsel to ensure that the Data Repository is optimized for the benefit of class members.

### C. **PLG's Experience, Expertise and Knowledge of Applicable Law**

At the outset, PLG wishes to emphasize its commitment to devote the full breadth of its talent and resources to this MDL. PLG is not currently involved in any other MDL or class action litigation. Additionally, PLG notes that it does not wish to apply for lead counsel, but rather a Committee position for which it is more appropriately suited at this time.

PLG is a dynamic and effective team of litigators with experience in class action and multidistrict litigation as well as mass torts. PLG's attorneys have contributed to lawsuits of comparable size and complexity, including the *In re National Prescription Opiate Litigation* (MDL No. 2804), *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation* (MDL No. 2672), *In re Roundup Products Liability Litigation* (MDL No. 2741), and *In re Ford Motor Co. DPS6 Powershift Transmission Product Liability*

(MDL No. 2814). Moreover, PLG has experience and expertise in commercial litigation, including the prosecution of claims relevant to this MDL. **Exh. B**: Copies of PLG Attorney Biographies.

1. **Maurice D. Pessah**

Over the past ten years, Maurice Pessah, PLG's founder, has maintained and built an active litigation practice. Mr. Pessah's practice includes high stakes, complex class actions, as well as single-party and multi-party commercial disputes. Mr. Pessah is an eight-time California Super Lawyer Rising Star, a peer-based award reserved only for the top 2% of lawyers under 40 in Southern California. Mr. Pessah has extensive litigation experience, and has secured substantial recoveries on behalf of plaintiffs against large corporate adversaries. In 2017, Mr. Pessah was invited to join a group of prominent plaintiff's attorneys pursuing claims against Wells Fargo bank on behalf of a class of aggrieved employees. *See Hogan et al. v. Wells Fargo Bank NA, et al.*, No. 4:16-cv-07360-DMR (ND Cal. 2016)

Mr. Pessah is joined by PLG's team of Associate Attorneys, Summer E. Benson, Jason H. Sunshine and Michael Morris-Nussbaum, and PLG's Of Counsel, Stuart Chelin.

2. **Summer E. Benson**

Ms. Benson graduated from American University Washington College of Law, where she was a dean's fellow for the Program on Information Justice and Intellectual Property. Ms. Benson's practice reflects her passion for advocacy and problem solving. Prior to joining PLG, Ms. Benson was a litigation associate at a large consumer protection law firm, where she worked on the *In re Volkswagen Clean Diesel Litigation* (MDL No. 2672), and the *In re Ford Motor Co. DPS6 Powershift Transmission Product Liability Litigation* (MDL No. 2814).

//

### 3. Jason H. Sunshine

Upon completing his undergraduate studies at Columbia University, Jason Sunshine served as Special Assistant at the New York State Department of Financial Services, where he investigated LIBOR manipulation by several large banks. The investigation culminated in a historic settlement. Mr. Sunshine then went on to graduate from Columbia Law School. Prior to joining PLG, Jason practiced at a nationwide plaintiffs' firm, where he litigated products liability cases and mass torts, such as the *In Re National Prescription Opiate Litigation* (MDL No. 2804) and the *In Re Roundup Products Liability Litigation* (MDL No. 2741).

### 4. Stuart N. Chelin

Mr. Chelin has decades of experience in commercial litigation, including significant experience acting against large institutional corporate opponents. He also brings the added benefit and perspective of behind-the-scenes business experience, having worked early in his career as in-house counsel for a multi-national corporation.

Mr. Chelin was a top ten graduate (6th overall) from the prestigious Faculty of Law at McGill University in Montreal, Canada. He graduated with the distinction of Upper Second Class Honors. Mr. Chelin is a member of the Law Society of Ontario, and is admitted to practice in the State of California.

### D. PLG's Collaborative, Consistent and Innovative Approach

PLG's commitment to this litigation has continued unabated since the filing of the Gossett Action. In an effort to assist all attorneys to prepare applications for leadership to this Court, PLG created a resource page at www.pessahlawgroup.com/resources which provides links to MCL 4th, the Duke Standards, the Local Rule of this Court, and other useful information. **Exh. C**: PLG's MDL Resources Page.

PLG has a demonstrated track-record of participation in all aspects of this MDL, including prior to consolidation and transfer. For example, PLG submitted a comprehensive brief to the JPML. Mr. Pessah was one of the relatively few attorneys to present oral argument at the hearing on March 25, 2021 before the JPML. Prior to submitting its brief, PLG reviewed each of the operative complaints and created a consolidated spreadsheet identifying all named plaintiffs and defendants, filing districts, dates and assigned judges. **Exh. D**: Spreadsheet of Cases Submitted to JPML. The spreadsheet was included in PLG's brief for the benefit of the esteemed JPML.

Moreover, Mr. Pessah, joined by other PLG attorneys, has participated in all conferences among Plaintiffs' counsel, and maintained an ongoing dialogue with those who are applying for leadership positions. PLG has held these discussions with a view toward future collaboration with other plaintiffs' counsel.

Significantly, PLG has played a critical role in shaping the tranche-based approach that has been endorsed by all parties. PLG's early and consistent espousal of a Robinhood-centric tranche for statutory and common law claims ultimately gained consensus amongst plaintiffs' counsel. By the Initial Conference on April 19, 2021, PLG's vision of the case and the division of claims it contemplated had gained general consensus. PLG has thus already played a major role in shaping this MDL.

### E. Diversity and Inclusion

PLG is not a "repeat player" in multi-district or class action litigation. PLG's young slate of attorneys, some of whom have relevant MDL experience, will enhance problem solving and promote a new generation of aspiring MDL counsel.

> In selecting a selection mechanism and in turn appointing a leadership team, courts should be mindful of the benefits of diversity of all types. In particular, the strong repeat player dynamic that has historically existed **reduces fresh outlooks** and innovative ideas,

8

> and increases pressure to go along with the group and conform, all of which may negatively impact the plaintiffs whose cases are being pursued in the MDL.

Duke Standards, p. 37 (emphasis added).

As explicitly recognized in the Duke Standards, "the same way that diversity improves companies' bottom lines, litigants and the civil justice system benefit from diversity of leadership." Duke Standards, p. 45. In addition to the experience and expertise PLG brings to this litigation, its relatively young and diverse group of attorneys will bring "novel concepts," creativity and innovation to the eventual slate of leadership appointed by this Court. *See* Duke Standards, p. 46 (recognizing the benefits of "new players" in enhancing creativity and innovation in MDL advocacy).

Appointing PLG to a leadership Committee would empower the next generation of MDL attorneys, promote diversity in the slate, and advance the policy of avoiding dominance by "repeat players."

### F. PLG's Relationship With Other Counsel

As indicated above, through its wide outreach, PLG has already developed relationships with many of the attorneys representing plaintiffs in this MDL.

PLG is aware of at least five (5) attorneys seeking appointment as lead or co-lead counsel (excluding the firms handling the securities related tranche). The attorneys, in no particular order, are as follows: (1) Natalia Salas (The Ferraro Law Firm), (2) Dennis Ellis (Browne George Ross O'Brien Annaguey & Ellis LLP), (3) Frank Schirripa (Hach Rose Schirripa & Cheverie LLP), (4) Joseph Saveri (Joseph Saveri Law Firm), and (5) Jeffrey Klafter (Klafter Lesser LLP).

PLG has maintained a productive dialogue with the above counsel, all of whom are accomplished and qualified in their own right. By way of example, PLG has held ongoing discussions with Brown George Ross and would support a slate that includes Mr. Ellis in a lead

counsel position. Additionally, Ms. Salas has initiated outreach to PLG and would also have PLG's support for the lead position she is seeking. Messrs. Saveri and Schirripa are seeking to lead the anti-trust tranche of cases, and PLG would support either choice for said role. PLG further recognizes that qualified attorneys outside of the aforementioned group may be applying for leadership positions. With respect to Liaison Counsel, PLG supports the appointment of Rachel Wagner Furst of Grossman Roth Yaffa Cohen, P.A. Of utmost importance is that plaintiffs are competently represented, and PLG remains committed to working with any Court-appointed leadership slate.

## IV. CONCLUSION

For the foregoing reasons, Maurice Pessah respectfully requests that the Court appoint him to such Committee as this Honorable Court deems appropriate.

Dated: April 26, 2021

Respectfully submitted,

**PESSAH LAW GROUP, PC**

By: */s/ Maurice D. Pessah*
**Maurice D. Pessah**
*maurice@pessahgroup.com*
**Summer E. Benson**
*sbenson@pessahgroup.com*
**Jason H. Sunshine**
*jsunshine@pessahgroup.com*
**Michael Morris-Nussbaum**
*mmnussbaum@pessahgroup.com*
**Stuart N. Chelin (Of Counsel)**
*stuart@chelinlaw.com*
**Attorneys for Plaintiffs**
Josh Gossett
James LaPlant
Danielle Perreault
Maurice Scarborough
Scott Schiller