

BRICKELL WORLD PLAZA  
600 BRICKELL AVENUE, SUITE 3800  
MIAMI, FLORIDA 33131  

PHONE 305.375.0111  
TOLL-FREE 800.275.3332  
FAX 305.379.6222  

Natalia M. Salas, Esq.  
Partner  
nms@ferrarolaw.com  

April 26, 2021

<u>*Via Electronic Filing*</u>
The Honorable Cecilia M. Altonaga
United States District Court Judge
400 N. Miami Avenue, Room 12-2
Miami, Florida 33128-1812

Re:   *In re January 2021 Short Squeeze Trading Litigation*, MDL No. 2989 Application of Natalia Salas of The Ferraro Law Firm, P.A. for Lead Counsel

Dear Judge Altonaga:

The Ferraro Law Firm, P.A. ("Ferraro Law") has tried close to 100 cases to verdict or judgment, successfully handled close to 50 appeals, and recovered billions of dollars for our clients. In this case, we filed one of the first complaints nationally against the Robinhood Defendants and their alleged co-conspirators, in this Honorable Court, and were the only legal team to appear before the Joint Panel on Multidistrict Litigation ("JPML") to argue for transfer to this District. The majority of parties appearing before the JPML argued for transfer to California. Now that the cases have been transferred to the Southern District of Florida, where Ferraro Law is headquartered, the overwhelming majority of firms in these consolidated actions support my application to serve as Lead Counsel with specific responsibility over the common law tranche of this of this Multi-District Litigation ("MDL").[1] Additionally, I am pleased to share that Professor Bruce S. Rogow has agreed to serve as Special Counsel for the common law tranche,[2] lending support for my application through his 55 years of litigation experience, including MDL leadership and class action expertise.

The main criteria for appointment of lead counsel are: (1) ability to work cooperatively with others; (2) willingness and ability to commit to a time-consuming process; (3) professional experience in this type of litigation; and (4) access to sufficient resources to advance the litigation in a timely manner. *See In Re:*

---

[1] The names of over 30 law firms supporting my application for Lead Counsel, as well as a CV for myself and my firm, are attached as **Exhibits A and B**, filed contemporaneously herewith.

[2] As the designated MDL law clerk *In re Checking Account Overdraft Litigation*, I interfaced directly with Professor Rogow, who served as Lead Counsel to Plaintiffs. In 2011, Professor Rogow was named Most Effective Class Action Lawyer for his work on the Bank Overdraft MDL. The organization of cases into tranches and timely resolution of arbitration issues, motions to dismiss, and class certification led to class settlements of $410 million with Bank of America, $110 million with J.P. Morgan Chase, and settlements with Citizens Bank, PNC, Compass Bank, Comerica, U.S. Bank and others totaling $1.275 billion dollars through 2020. Professor Rogow's CV is attached as **Exhibit C**.

*Zantac (Ranitidine) Prods. Liab. Litig.*, Case No. 20-md-02924-RLR (Feb. 14, 2020 Pretrial Order #1, ECF No. 13 at 11-12); THE MANUAL FOR COMPLEX LITIGATION (FOURTH) ("MCL 4TH"), § 10.224, p. 27. As set forth below, we satisfy all four criteria.

   1. *Ability to work cooperatively with others.*

As the Court noted in Pretrial Order #1, "[t]he way the attorneys comport themselves by remaining professional and courteous always is imperative . . . ." [ECF No. 46.] Our ability to work cooperatively with others is established by this application's endorsements from ***nearly all Plaintiffs' counsel*** who have affirmatively lent support to a leadership structure, with 31 firms supporting our application. We are particularly humbled by the support we received from all Florida-based law firms that, to our knowledge, have chosen to affirmatively endorse our leadership application, including Gray Robinson, P.A., the largest staffed Plaintiffs' firm in this entire MDL, with 300 lawyers, all in Florida, and 70 in the Southern District. This support was earned over hours of 100+ lawyer calls, Zooms, and emails in the weeks since the JPML granted our request to transfer the Short Squeeze Actions to this District. *See* MCL 4TH § 10.224, p. 27 ("It is important [for the Court] to assess . . . the attorneys' ability to command the respect of their colleagues . . . ."). During these interactions, the attorneys for the Plaintiffs familiarized themselves with all attorneys seeking leadership roles.

At the outset of this MDL, Ferraro Law took the initiative as the first firm to arrange internal group discussions among 136 attorneys, circulating a Joint Initial Agenda, and coordinating the selection of Liaison Counsel. Ferraro Law also took the initiative to lead the first and only conference to date among all Plaintiffs' counsel and all Defendants' counsel (totaling over 150 attorneys), in order to collaborate, reduce waste, and timely comply with the Court's orders. As a result of those efforts, I prepared and co-signed the Joint Proposed Agenda, [ECF No. 145], and led the Initial Status Conference held before Your Honor on April 19, 2021 [ECF No. 202].

As a result of our efforts thus far in this litigation, Plaintiffs' counsel in a majority of the cases in this litigation have reached a consensus on a 3-person, Co-Lead structure, with each Lead specifically responsible for his or her "tranche," as distinguished by the nature of the claims, namely antitrust and the common law claims, which may be further divided generally by the Robinhood Defendants and other Broker Dealer Defendants for efficiency purposes. The majority of Plaintiffs' counsel supports Ferraro Law and Dennis Ellis of Browne George Ross O'Brien Annaguey & Ellis LLP serving as Co-Lead Counsel over the common law claims in this MDL, Frank Schirripa as Lead of the antitrust tranche,[3] and Rachel Furst of Grossman Roth P.A. as Liaison Counsel, supported by a Plaintiffs' Executive Committee ("PEC") to be appointed by Lead Counsel as appropriate to promote the orderly prosecution of this case.[4]

---

[3] To the extent that Joseph Saveri from The Joseph Saveri Law Firm, Inc. is also applying for the lead counsel role presiding over the antitrust claims, Ferraro Law defers to this Honorable Court to appoint lead counsel to best serve the interests of the class and is not opposed to Mr. Saveri's candidacy.

[4] Ferraro Law takes no position regarding the "co-chair" concept mentioned during the April 19, 2021 Status Conference as long as there is top-level diversity, by location, gender, race, and age, and any such co-chairs are not used to provide cover for an all-male, generally non-diverse top-line leadership group with no representation from the State of Florida. We are committed to appointing a PEC that is similarly diverse and representative of the class, without, as we argued during the Status Conference, increasing leadership bureaucracy.

I believe that the support that I have received is largely the result of the transparency and candor that we have championed in discussions with Plaintiffs' counsel over the last several weeks, and that we emphasized during the April 19, 2021 Status Conference. For example, during that hearing, my co-counsel and I argued against a majority-rules leadership selection process even though my application enjoys overwhelming majority support. As a matter of principle and leadership style, if appointed Lead Counsel, I will continue to promote the professionalism and openness within the leadership structure that has allowed me to earn the trust of my peer attorneys in this case and the Plaintiffs whom they represent.

2. *Willingness and availability to commit to a time-consuming project.*

My firm and I have demonstrated our willingness and ability to commit the time necessary to successfully prosecute this litigation. For example, Ferraro Law, together with its co-counsel, Sean Burstyn and Jeffrey Kwatinetz, was the only legal team to argue that the Short Squeeze Actions should be transferred to the Southern District of Florida and this Honorable Court in particular. Additionally, we took prompt action by filing a complaint within 36 hours of the underlying misconduct. The other firms seeking leadership appointments that argued before the JPML sought transfer to the Northern District of California and shut out the close to one dozen Florida firms from communications regarding leadership, *even after* the MDL was transferred to this Court. While each firm is entitled to pick its own strategy, Ferraro Law never wavered from the appropriateness of prosecuting this national case in the Southern District of Florida. After Mr. Dennis Ellis' firm, Ferraro Law is the largest seeking a leadership role. I am personally fully available to this important case and backed by dozens of capable attorneys and staff.

3. *Professional experience in this type of litigation.*

My firm and I are nationally recognized and have the experience and resources to advance this litigation. Ferraro Law lawyers have litigated significant class action cases in the United States, and have achieved landmark legal decisions and recoveries in the billions of dollars on behalf of millions of plaintiffs nationwide. Ferraro Law attorneys have substantial experience serving as lead counsel and co-lead counsel in class actions and complex litigation, as well as in MDLs, serving on several plaintiffs' executive committees, including a recent appointment in *Aqueous Film-Forming Foams (AFFF) Products Liability Litigation*, MDL No. 2873. Additionally, Professor Rogow, as Special Counsel, brings his wealth of experience to the table and will undoubtedly be an asset to the class and me if I am so privileged as to be appointed Lead Counsel.

My substantial professional experiences have amply prepared me for the Lead Counsel role in this case. I have been on the inside of a sophisticated, consumer financial fraud class action MDL, such as this one, involving over 80 actions against over 30 banks, before the Honorable James Lawrence King (MDL No. 2036), overseeing class certification motions, arbitration and class action waiver issues, common law claims under the laws of various states, and settlements totaling over $1 billion for Plaintiffs. My clerkship experience also includes the trials of a securities class action and the largest healthcare fraud case at the time. For close to fifteen years, I have litigated complex business litigation disputes, including in successful defense of one of the largest class actions in the country, financial fraud and Securities and Exchange Commission (SEC) enforcement actions, and breach of contract, breach of fiduciary duty, tortious interference, and negligence cases such as this one. I also have significant trial and courtroom experience, beginning my career with the benefit of first- and second-chair roles in jury and bench trials under the mentorship of Kendall Coffey and Robert Burlington of Coffey Burlington, P.L. During my six-year tenure

as Senior Counsel for an AmLaw 50 law firm in Miami, Florida, I litigated high profile cases, including the prosecution of a month-long jury trial on behalf of The Vizcayans, a $100 million summary judgment through appeal, and representation of Kickstarter and other online platforms relating to their terms of use in a matter involving issues similar to those in this case.  Most recently, before joining Ferraro Law, I served as Assistant General Counsel to the University of Miami in the areas of litigation, healthcare, privacy, regulatory compliance, athletics, research, and technology transfer.  I was recognized by Senior Vice President and General Counsel, Aileen Ugalde, for my leadership through the Talent and Organizational Development program.

4. *Willingness to commit the necessary resources to pursue this matter.*

Ferraro Law has the human and financial resources necessary to prosecute a case like this, which is particularly important given the well-heeled Defendants and defense firms in this case, and we commit to providing those resources to this litigation.  Ferraro Law is no stranger to cases of this magnitude, as we regularly invest millions of dollars in cases against the largest and wealthiest corporations and law firms in the world.  I also intend to lead a team of as many partners and associates as needed to effectively prosecute this case in coordination with the additional firms that will make up the leadership structure of this case.  Finally, as a successful and well-managed firm, Ferraro Law never relies on outside funding for its cases, and has no plans to do so here.

5. *American Bar Association ("ABA") Resolution 113.*

Although not a traditional consideration, we are aware of and welcome the close attention recently given to the makeup of leadership in MDLs of national importance.  *See* Elizabeth C. Burch, Diversity in MDL Leadership: A Field Guide, (University of Missouri-Kansas City Law Review, 2020), https://ssrn.com/abstract=3767123 (last visited Apr. 24, 2021); *In Re: Zantac (Ranitidine) Prods. Liab. Litig.*, Case No. 20-md-02924-RLR (Feb. 14, 2020 Pretrial Order #1, ECF No. 13 at 11-12) (discussing the court's desire for diverse leadership).  We also recognize the same concern was recently noted in another ongoing matter against Robinhood, *In re Robinhood Outage Litigation*, Case No. 3:20-cv-02669-JD, where the Court declined to appoint the individual lawyers identified to be lead counsel, despite their "impressive history of successful engagements as class counsel in this District," because of the "repeat player" problem:

> The Court is concerned about a lack of diversity in the proposed lead counsel. For example, all four of the proposed lead counsel are men, which is also true for the proposed seven lawyers for the "executive committee" and liaison counsel. In addition, the proposed counsel appear to be lawyers and law firms that have enjoyed a number of leadership appointments in other cases. While this experience is likely to benefit the putative class, it highlights the "repeat player" problem in class counsel appointments that has burdened class action litigation and MDL proceedings. Counsel with significant prior appointments are by no means disqualified from consideration here, but leadership roles should be made available to newer and less experienced lawyers, and the attorneys running this litigation should reflect the diversity of the proposed national class. Consequently, the Court denies the interim counsel request.

(*See* Order Regarding Consolidation and Interim Class Counsel [ECF 42], ¶ 11.)

Ferraro Law supports ABA Resolution 113, which urges our profession to become more inclusive and create opportunities at all levels of responsibilities for diverse attorneys. As such, we are committed to proposing to the Court a final slate that is demographically, geographically, and experientially diverse, eminently competent, and representative of the class. Although courts have historically been constrained by proposed MDL slates that fail to reflect the makeup of America, the slate proposed herein presents an opportunity to turn the page on that past. I am a Cuban-American mother of two young and biracial children from Florida and my proposed Co-Lead Counsel for the common law tranche is an African-American, male, from California, who brings a unique class-action defense perspective to this case. Mr. Schirripa, whom we support as Lead or Co-Lead of the antirust tranche, is from New York, has been involved in over 24 MDLs, including a 6-week jury trial that achieved a $25 million settlement, and brings a youthful energy to the case.

Moreover, Lead Counsel has entrusted and will continue to entrust substantial responsibilities to young attorneys who can ably represent, and are representative of, the class. *See* CBS News, "Ahead of IPO, Robinhood expands risky stock market lending," at https://www.cbsnews.com/news/robinhood-ipo-filing-margin-lending/ (last visited Apr. 24, 2021) ("Robinhood, launched in 2013, has become particularly popular with young investors because it offers commission-free trading through an app geared to millennial and Gen Z consumers . . . ."). For example, Ferraro Law's co-counsel, Mr. Burstyn, a first-generation American of Afro-Cuban descent, successfully argued for transfer to the Southern District of Florida as the youngest attorney to appear before the JPML in this case, and he brings a professionally diverse perspective given his background as a predominantly defense-side attorney during his years at Skadden, Arps, Slate, Meagher & Flom LLP.

This is not one of the typical cases where courts are constrained to choose from a prepackaged MDL slate that is proposed by senior attorneys and supported by young and diverse back-office helpers. *See, e.g., In re: Denture Cream Prods. Liab. Litig.*, No. 19-md-02051 (S.D. Fla. July 13, 2009) (Altonaga, J.) (ECF No. 174, Hearing Tr. at 14:8–9) ("I do have a woman, just so that's clear."); *see also id*. at 14:20–21 ("We have more women lawyers in our office than men."). The proposed structure offers diversity, aptitude, and experience, with qualified lawyers prepared to lead the class and ensure the best possible representation for the class.

I thank the Court in advance for considering my application to serve as Lead Counsel. It would be an honor and a privilege to serve if I were chosen.

Sincerely,

*/s/ Natalia M. Salas*
Natalia M. Salas, Esq.

cc: All Counsel of Record