UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-2989-MDL-ALTONAGA/Torres

In re:

JANUARY 2021 SHORT SQUEEZE
TRADING LITIGATION

_____/

THIS DOCUMENT RELATES TO: ALL ACTIONS

PLAINTIFFS SHANE CHENG AND TERELL STERLING'S
MOTION TO APPOINT JOSEPH R. SAVERI AS INTERIM LEAD COUNSEL

**TABLE OF CONTENTS**

Page

I.      BACKGROUND ..................................................................................................3

II.     JSLF IS WELL SUITED TO SERVE AS INTERIM LEAD COUNSEL ......................3

        A.      JSLF Satisfies All the Criteria of Rule 23(g) ........................................4

                i.      JSLF's Investigation Produced Previously Unknown Elements of
                        Defendants' Scheme...............................................................................4

                ii.     JSLF Has Unparalleled Experience and Credentials Handling Complex
                        Antitrust and Consumer Protection Class Actions ..................................6

                iii.    JSLF Has Unrivaled Knowledge of the Applicable Law.............................9

                iv.     JSLF Has the Resources to Adequately Represent the Proposed Class......9

                v.      Additional Factors Support JSLF's Appointment ...................................9

III.    CONCLUSION ..................................................................................................10

This complex litigation will require deft, flexible and collaborative leadership to best insure the most positive result for the proposed classes. Appointment of a single firm, with deep expertise in the substantive law and proven case management skills, will most likely ensure the efficient prosecution of this case and will promote the interests of justice. The Joseph Saveri Law Firm ("JSLF") best combines the requisite credentials and expertise with the interests of diversity to effectively advance this litigation. It is a leader in the field, with a track record of success unequalled by any firm applying for leadership in this case.[1]

Therefore, Plaintiffs Shane Cheng and Terell Sterling, on behalf of themselves and others similarly situated (the "*Cheng* Plaintiffs"), respectfully request that the Court appoint Joseph R. Saveri and the Joseph Saveri Law Firm, LLP as Interim Lead Counsel[2] pursuant to Federal Rule of Civil Procedure 23(g).

---

[1] For example, in reviewing JSLF's leadership in the *Capacitors* matter, Judge James Donato remarked that the "docket and procedural the history in this case demonstrate Counsel's expertise and the Direct Purchaser Plaintiffs' successes to date." *In re Capacitors Antitrust Litig.*, No. 3:14-cv-03264, ECF No. 1714, at 7. JSLF has deftly navigated and progressed the *Capacitors* case to trial, and indeed has tried the case once before trial was suspended due to the COVID-19 pandemic. Judge Donato recently noted that "The MDL litigation . . . required an enormous amount of work to collect evidence in the United States and several overseas countries, bring and defend complex motions, and prepare a sprawling case for a jury trial. Class Counsel prosecuted the case with skill and vigor, and achieved strongly positive results. The Court also appreciated the professionalism and spirit of cooperation that Class Counsel brought to the proceedings." *In re Capacitors Antitrust Litig.*, No. 3:14-cv-03264, ECF No. 2735 at 2-3. While JSLF could handle this case on its own, other firms can be called on as needed. Defendants have hired many of the largest and most prestigious law firms in the United States. While the *Cheng* Plaintiffs predict that the *Short Squeeze* Actions will require far fewer lawyers to represent the plaintiffs' side, surely they are entitled to representation comparable to their adversaries.

[2] This MDL includes over 50 class action lawsuits with claims that can broadly be categorized as falling within three separate tracks—antitrust claims, claims against Robinhood, and claims against other broker-dealers and hedge funds. The consensus among most if not all Plaintiffs is that the most efficient way to balance the different interests at stake is to allow the three tracks to prosecute their claims separately, but closely, with coordination with respect to discovery and other issues which will benefit from common management and execution. While the three tracks share some common interests, the cases also raise issues that are unique to each group. Separate but synchronized leadership will ensure a clear division in authority for each group, while balancing the needs for efficient and cost-effective litigation. As part of this broad structure, JSLF submits its application to serve as Interim Lead Counsel bringing to bear its significant experience in managing complex litigation and its substantive antitrust expertise with regards to the antitrust track. Plaintiffs are confident that JSLF will work collaboratively and effectively with any other counsel the Court may appoint as Co-Lead counsel.

JSLF possesses a depth of experience in antitrust law that is unrivaled by any other firm.[3] Mr. Saveri, together with the members of the law firm—many of whom are young and diverse—have expertise in antitrust litigation honed through years of leading and trying high-profile complex antitrust cases. Both Mr. Saveri and JSLF partner Steven N. Williams have been appointed to lead complex antitrust and other multidistrict class cases on numerous occasions by federal courts across the country.[4] Each of JSLF's attorneys[5] are primarily dedicated to its antitrust practice and bring to bear all of the expertise associated with prosecuting the most complex, innovative, and challenging antitrust cases. This specialized expertise will provide a substantial benefit to the Class and the Court.

JSLF works collaboratively and inclusively as a matter of principle in order to serve the best interest of its clients. Through decades of experience, Mr. Saveri and JSLF attorneys have developed collaborative skills and efficient approaches to litigation decision making and problem solving. JSLF is committed to the mentorship and development of the next generation of practitioners. Towards that goal, JSLF provides meaningful opportunities for courtroom experience to early career lawyers—not only its own but also those of co-counsel.[6] In matters where JSLF has been appointed as sole lead counsel,[7] JSLF offers intra-firm mentorship and courtroom opportunities to junior attorneys at other firms that it partners with. JSLF is committed to those as core values and, if chosen, would ensure they are advanced here.

---

[3] JSLF has offices in San Francisco, California and New York, New York, reflecting its nationwide practice, with other offices soon to be opened.

[4] *See, e.g.*, *In re In re Capacitors Antitrust Litig.*, Case No. 3:17-md-02801 (N.D. Cal. ) (Donato, J.), *In re Titanium Dioxide Antirust Litig.*, Case No. 1:10-cv-00318 (Bennett, J.) (D. Md.); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, Case No. 1:18-md-02819 (Gershon, J.) (E.D.N.Y.); *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.*, Case No. 2:17-md-02785 (D. Kan.) (Crabtree, J.); *In re Automotive Parts Antitrust Litig.*, Case No. 2:12-md-02311 (E.D. Mich.) (Battani, J.).

[5] Biographies of attorneys who will work on the case are annexed as Exhibit B to the Declaration of Joseph R. Saveri dated April 26, 2021.

[6] JSLF's commitment to this is apparent in numerous recent cases where young and diverse lawyers had meaningful courtroom roles, including the recent jury trial presided over by Judge Donato in *In re Capacitors Antitrust Litigation, In re Juul Labs, Inc. Antitrust Litigation* before Judge Orrick, and numerous *pro bono* and other cases pending in federal court.

[7] Courts have appointed JSLF as sole lead class counsel in antitrust cases against some of the largest companies in the world. Just a few recent examples are *In re Juul Labs, Inc. Antitrust Litig.*, Case No. 3:20-cv-02345 (N.D. Cal.) (Orrick, J.); *In re Capacitors Antitrust Litig.*, Case No. 3:17-md-02801 (N.D. Cal.) (Donato, J.) (involving 22 groups of defendant corporate families located throughout the globe).

## I.     BACKGROUND

On January 28, 2021, almost twenty broker-dealers restricted trading on securities. On February 1, 2021, the *Cheng* Plaintiffs filed their complaint alleging federal and state antitrust law claims, false advertising claims and common law claims. The *Cheng* complaint was one of the first complaints alleging antitrust claims—and remains the most detailed complaint filed to date, reflecting the care and consideration JSLF devoted to their pleading.

The *Cheng* Plaintiffs were responsible for the centralization of this case. On February 5, 2021, the *Cheng* Plaintiffs filed the motion for centralization with the Judicial Panel on Multidistrict Litigation ("JPML"). *In re January 2021 Short Squeeze Trading Litig.*, MDL No. 2989 (J.P.M.L. Feb. 5, 2021) ECF No. 1. On April 1, 2021, the JPML centralized and transferred the *Short Squeeze* Actions to this Court for pretrial purposes. MDL ECF No. 1.

On April 19, 2021, the Court held an initial status conference wherein the Court set forth procedures for the appointment of lead counsel and organization and structure of counsel. MDL ECF No. 209. With regard to the non-federal securities actions, the Court directed that should the parties reach agreement regarding lead counsel, a joint application be filed on April 23, 2021; should the parties fail to reach agreement, then parties seeking appointment as lead counsel shall submit applications on April 26, 2021. *Id.*

Consistent with the Court's order, the *Cheng* Plaintiffs conferred extensively with other *Short Squeeze* plaintiffs in an effort to reach consensus on the appointment of lead counsel, as well as a leadership structure to facilitate the orderly and efficient management of this complex litigation. The parties were unable to reach consensus.

Plaintiffs propose the appointment of the Joseph Saveri Law Firm, LLP as Interim Lead Counsel.

## II.    JSLF IS WELL SUITED TO SERVE AS INTERIM LEAD COUNSEL

The primary consideration in choosing class leadership in a complex action "is achieving efficiency and economy without jeopardizing fairness to the parties." *Manual for Complex Litig.* § 10.221 (4th ed. 2004) (hereinafter "Manual"). Rule 23(g)(1) sets out factors that govern the appointment of class counsel at certification; these factors equally apply to the designation of interim class counsel. *See* Fed. R. Civ. P. 23(g)(1)(A) (considering (1) work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling

class actions, other complex litigation, and claims of the type asserted; (3) counsel's knowledge of the applicable law; and (4) resources counsel will commit to representing the class). Under Rule 23(g)(1), appointed counsel "must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). Where multiple firms seek to serve as lead counsel, the court "must appoint the applicant **best able** to represent the interests of the class." Fed. R. Civ. P. 23(g)(2) (emphasis added).

In ensuring that appointed counsel satisfies the key requirement under Rule 23(g)— counsel's ability to best represent the interests of the class—courts may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B)-(C). The most important factor when appointing lead counsel "is achieving efficiency and economy without jeopardizing fairness to the parties." Manual, § 10.221.

As described below, the appointment of JSLF—and particularly the service of Mr. Saveri, Mr. Williams, Mr. Davis, Ms. Reddy, Mr. Young and their young and diverse antitrust team— would best serve those interests.

### A.     JSLF Satisfies All the Criteria of Rule 23(g)

#### i.     JSLF's Investigation Discovered Critical Elements of Defendants' Scheme

In evaluating appropriate leadership, courts look to "the work counsel has put into identifying and investigating potential claims in the action." Fed. R. Civ. P. 23(g)(1)(A)(i). Such efforts are more significant than simply being the first case on file. *See* Newberg & Conte, *Newberg on Class Actions* § 9.35.

While JSLF was not the first to the courthouse, it nonetheless proceeded with remarkable resolve and alacrity. JSLF filed its complaint three days after the events at issue occurred, on February 1, 2021, and was among the first firms to file a class action complaint asserting violations of the antitrust laws. The *Cheng* Plaintiffs' complaint reveals the fruits of JSLF's careful research and investigation. *See* Declaration of Joseph R. Saveri ("Saveri Decl."), ¶¶ 13-14; *Cheng, et al. v. Ally Financial Inc., et al.*, No. 21-cv-00781, ECF No. 1. The *Cheng* complaint is the broadest complaint and supersedes and encompasses the complaints brought by others before and after. Drawing upon its broad and deep experience prosecuting antitrust cases, class actions

and other complex business disputes, JSLF conducted an extensive and thorough investigation of the events surrounding the restrictions in trading on January 28, 2021. Those efforts produced the most detailed complaint, including meticulous analysis of price movements, analysis of short sale positions in the hours immediately before January 28, 2021, analysis of market conditions in the weeks prior, and detection of simultaneous coordinated conduct among competitors. This careful and focused analysis indicates that the restrictions in trading were not limited to one or a few broker-dealers but across nearly twenty. JSLF also investigated the relevant market and the facts underlying the challenged conduct. The highly particularized complaint demonstrates substantial analysis and investigation, including consideration of market structure, market participants, anticompetitive effects, market power, market definition, causation and damages together with applicable federal law, state law, and common law. The *Cheng* complaint has become the model for other subsequent complaints and has been widely copied.

JSLF's investigation revealed that many of the communications leading up to the restrictions imposed on January 28, 2021, occurred via telephone calls or through social media. Recognizing the urgent need to preserve evidence given the many nonparties who possess or control relevant evidence and the fact that potentially relevant evidence could have been lost as a function of ordinary data retention policies (e.g., call records are typically destroyed within a year), JSLF sent document preservation letters to nonparties including phone carriers and social media web companies to ensure relevant evidence is preserved. Saveri Decl., ¶ 16. These efforts will substantially benefit all plaintiffs. *Id.*

This shows that JSLF has taken a leadership role in this case. Recognizing the need for centralization in order to promote judicial economy and efficiency and to minimize the risk of conflicting results, JSLF took the initiative to file the motion to centralize the *Short Squeeze* actions before the JPML.[8] JSLF organized the 50 plus actions with numerous state and federal claims, into three groups organized by claims and common issues—a proposal that was adopted by all plaintiffs and defendants and presented to the Court at the April 19, 2021 initial status conference. JSLF worked with experts, co-organized various small and larger group calls with

---

[8] In accordance with JPML procedures, the *Cheng* Plaintiffs effected service to over 100 entities—mailing physical copies of thousands of pages—upon each Defendant, each *Short Squeeze* plaintiff, and each District Court in which a *Short Squeeze* Action was proceeding. Saveri Decl. ¶ 15.

plaintiffs and Defendants and was selected by counsel for all plaintiffs to speak on behalf of the Class at the Court's April 19, 2021 initial conference. Saveri Decl., ¶ 19.

JSLF's knowledge of the relevant industry, the Defendants, and other market participants will add specialized knowledge and substantive depth to the prosecution of the claims. JSLF's expertise in antitrust law, class action practice and efficient management of complex multiparty litigation will ensure that any class action practice will assist "the court and the parties to secure the just, speedy, and inexpensive determination" of this proceeding. Fed. R. Civ. P. 1.

### ii.     JSLF Has Unparalleled Credentials and Experience in Handling Complex Antitrust and Consumer Protection Class Actions

No firm applying for leadership positions in this case has the experience and credentials of JSLF in handling antitrust and consumer protection class actions of this type. *See* Fed. R. Civ. P. 23(g)(1)(A)(ii). JSLF attorneys have recovered over $4 billion in settlements and resolutions for the firm's clients. Partners Joseph R. Saveri and Steven N. Williams have over 55 years of experience between them handling high-profile antitrust cases on an international and national scale. *See, e.g.*, *In re Capacitors Antitrust Litig.*, No. 3:14-cv-03264-JD (N.D. Cal.); *In re Titanium Dioxide Antitrust Litig.*, No. 1:10-cv-00318-RDB (D. Md.); *In re High-Tech Employees Antitrust Litig.*, No. 5:11-cv-02509-LHK (N.D. Cal.); *In re Automotive Parts Antitrust Litigation,* No. 12-md-02311-SFC-RSW(E.D. Mich.); *In re Static Random Access Memory Litigation,* No. 07-md-01819-CW (N.D. Cal), *In re Transpacific Air Transportation Litigation,* No. 07-cv-05634-CRB (N.D. Cal); *In re Lidoderm Antitrust Litig.*, No. 3:14-md-02521-WHO (N.D. Cal.); and *In re Cipro Cases I And II*, J.C.C.P. Nos. 4154, 4220 (San Diego County Sup. Ct.). The firm has ongoing lead counsel responsibilities handling other class actions including antitrust cases involving international cartel cases (*In re Capacitors Antitrust Litig.*, No. 3:17-md-02801-JD (N.D. Cal.)); illegal merger agreements (*In re Juul Labs, Inc. Antitrust Litig.*, No. 3:20-02345-WHO (N.D. Cal.)), illegal restrictions in sports and labor markets (*e.g.*, *Jones v. Varsity Brands, LLC*, No. 20-cv-02892 (W.D. Tenn.); *Le v. Zuffa, LLC*, No. 2:15-cv-01045 (D. Nev.)); pharmaceutical pricing (*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, No. 1:18-md-02819-NG-LB (E.D.N.Y.)); and labor market no poach cases (*Robinson v. Jackson Hewitt Inc.*, No. 2:19-cv-09066-SDW-LDW (D.N.J.); *Giordano v. Saks*, No. 20-cv-00833-MKB-CLP (E.D.N.Y.)). *See* Saveri Decl., Ex. A (JSLF Firm Resume).

As lead or co-lead counsel in these and other cases, JSLF has taken a leadership role in organizing litigation, setting strategy, establishing and directing teams of lawyers, and assigning specific tasks to teams of attorneys to ensure the efficient use of resources and the best utilization of the talents of the litigation team. JSLF has particular expertise in electronic discovery issues and has made important contributions to the development of efficient and proportional practices and procedures. Saveri Decl., ¶ 3 ( Joseph Saveri participated in meetings of the Federal Rules Advisory Committee which produced the 2005 amendments to the Federal Rules and was a member of the committee of judges and lawyers that drafted the Northern District of California's E-Discovery (ESI) Guidelines, and Steven Williams served on the committee that created California's Electronic Discovery Act). JSLF attorneys have taken the primary role in class certification issues, summary judgment, expert "hot tub" proceedings, trial and appeals. Throughout these cases, JSLF has displayed the energy, vision, and commitment that leadership requires, combined with the ability to listen, share, and work cooperatively so that the litigation team operates equitably, efficiently, and without friction.

JSLF's experience is exemplified in the cases it has prosecuted as lead counsel. For example, as sole lead counsel for the direct purchaser plaintiffs in *In re Capacitors Antitrust Litigation*, No. 3:17-md-02801-JD (N.D. Cal.), JSLF recently successfully managed over 40 million pages of discovery (nearly all in Japanese) from 22 corporate defendant families, and coordinated with separate counsel for the indirect purchaser-class, opt-outs, and the DOJ.[9]

JSLF is led by some of the most experienced antitrust lawyers in the nation. Joseph Saveri is one of the most accomplished and respected antitrust attorneys in the country.[10] He has practiced in this area for over 30 years. Steven Williams has played a lead role in many of the most prominent antitrust class actions. For example, Mr. Williams served as co-lead counsel in *In re Automotive Parts Antitrust Litigation*, No. 2:12-md-02311 (E.D. Mich.). Under Mr. Williams's

---

[9] As noted above, Judge Donato has commented favorably as to JSLF's deft leadership and prosecution of the *Capacitors* case. *See* note 1, *supra*. To date, under JSLF's leadership, settlements in *Capacitors* have exceeded single damages as calculated by the class's expert with some of the most culpable defendants having yet to settle.

[10] For example, David Balto, former policy director at the FTC described Mr. Saveri as the "Michael Jordan of plaintiffs' antitrust." *See* Melissa Lipman, *Lieff Cabraser Antitrust Chief to Launch Own Firm*, LAW360 (May 1, 2012), *available at* https://www.law360.com/articles/335937/lieff-cabraser-antitrust-chief-to-launch-own-firm.

leadership, the end payor class reached settlements to date exceeding $1.25 billion. The case was widely considered the largest antitrust conspiracy in history in terms of impact on U.S. consumers until the *In re Generic Drugs Antitrust Litig.*, a case in which Judge Rufe appointed both Mr. Saveri and Mr. Williams to the Plaintiff's Steering Committee.

Mr. Saveri and Mr. Williams are recognized as two of the top lawyers in the United States. Both Mr. Saveri and Mr. Williams are rated AV Preeminent by LexisNexis Martindale-Hubbell and were ranked "Band 1" attorneys by Chambers USA in its "Antitrust: Mostly Plaintiff" category for 2018 and 2019. JSLF has received numerous accolades: the American Antitrust Institute awarded JSLF the award for Outstanding Antitrust Litigation Achievement in Private Law Practice in 2017; Best Lawyers/U.S. News & World Report named JSLF among the Best Law Firms from 2013-2019; the California Daily Journal selected JSLF as one of the "Top Boutiques in California"; and the Daily Journal honored Mr. Saveri and other JSLF attorneys with the California Lawyer Attorney of the Year (CLAY) Award in 2016.

Other key members of the JSLF team include Anupama K. Reddy and Christopher K.L. Young (both of whom have worked on this case since its inception), Joshua P. Davis, and a team of paralegals, investigators and other professional staff. *See generally* Declaration of Christopher K.L. Young, ¶¶ 2-10; Declaration of Anupama K. Reddy, ¶¶ 2-10. The firm is committed to gender equality and has a diverse management team. Ms. Reddy and Mr. Young each have substantial experience in complex antitrust cases, including in the recent *Capacitors* jury trial and arguing dispositive motions in the *In re Juul Labs, Inc. Antitrust Litigation*. JSLF's diverse team of lawyers and professional staff are prepared, professional, zealous and up to the task.

JSLF has an established track record of working cooperatively and collegially with co-counsel, including with many of the counsel of record appearing in the *Short Squeeze* case, distributing work assignments equitably and offering support where needed, resulting in the smooth and efficient administration of case responsibilities. JSLF anticipates that the present case, much like other similar complex cases, will necessitate the coordination and cooperation of counsel in order to effectuate the most effective prosecution of the case—a task made easier by JSLF's long history of collaboration with other counsel, not least of all with many of the firms representing the *Short Squeeze* plaintiffs. *See generally*, *e.g.*, Declaration of Catherine Smith; Declaration of Austin B. Cohen. JSLF's commitment to collaboration will continue here.

### iii.    JSLF Has Unrivaled Knowledge of the Applicable Law

JSLF has extensive knowledge of the applicable law in this case, both with regard to federal class actions under Rule 23(b)(3) and with regard to the applicable federal and state antitrust statutes and the common law. *See* Fed. R. Civ. P. 23(g)(1)(A)(iii). Unlike other firms, all JSLF attorneys are primarily dedicated to the firm's recognized antitrust practice. While other firms may boast of a higher head count, few if any can say they have as many attorneys devoted to the practice of antitrust law. This team of dedicated antitrust practitioners translates to a wealth of knowledge gleaned from decades of successful practice in prosecuting antitrust class actions in federal and state courts throughout the United States.

This knowledge has resulted in exceptional results for the firm's clients, in cases where defendants are represented by the largest law firms in the United States, and in antitrust, an area of law already recognized as being uniquely challenging. JSLF's knowledge of the antitrust law and of complex litigation render them effective private attorneys general that successfully challenge illegal efforts to suppress and eliminate competition in all areas of the economy. JSLF is prepared to bring that knowledge to bear on behalf of the proposed Class.

### iv.    JSLF Has the Resources to Adequately Represent the Proposed Class

As demonstrated by its proven track record of prosecuting large and complex antitrust class actions, JSLF has shown that it has the resources and resolve to ensure the interests of the Class are zealously prosecuted to a full and fair resolution—without support from or involvement with third-party litigation funders—and JSLF is prepared to do so again here. *See* Fed. R. Civ. P. 23(g)(1)(A)(iv); Saveri Decl., ¶ 6. JSLF has consulted with a number of experts, including some of the nation's leading experts in the field of antitrust and competition, securities law, securities regulations and consumer class action litigation. *See* Saveri Decl., ¶ 13. JSLF's resources are not only financial—it also includes the resources of some of the most accomplished antitrust lawyers, investigators, and professional staff in the United States—and it has brought those resources to bear in the past and will do so again here.

### v.    Additional Factors Support JSLF's Appointment

In addition to the enumerated factors set forth in Rule 23(g), in determining the best counsel for the class, the Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B)-(C).

9

Several factors support JSLF's appointment as interim lead counsel. JSLF has a history of working collaboratively and inclusively in leadership positions, providing strong direction but also listening to co-counsel, resolving differences equitably, providing opportunities to diverse and young attorneys, and distributing work fairly and in a way that promotes the most efficient use of the collective resources of co-counsel. JSLF will adhere to those values here. Likewise, JSLF has a long history of collaborative professional relationships with its adversaries. JSLF recognizes it owes a duty of professionalism to its clients, opposing parties and their counsel, the courts, and the public as a whole. *E.g.*, Saveri Decl., ¶ 17.

In appointing lead counsel, the Court may inquire into any *quid pro quo* arrangements or promises for future work. *See* Manual, § 21.272 ("To guard against overstaffing and unnecessary fees, the court should order the attorneys to produce for court examination any agreements they have made relating to fees or costs."). JSLF has made no such promises or bargains. Additionally, JSLF has established efficient case management and billing protocols in other cases where it serves in leadership roles and will do so here if appointed as lead counsel. A small, well-qualified select team of attorneys will oversee case strategy, document review, take related depositions, and draft well-supported briefs. There will be no block billing, and time will be entered contemporaneously, to be submitted to the Court at regular intervals. JSLF has also retained a Certified Public Accountant, at no cost to the Class, who will routinely audit time and expense reports which can be submitted on a quarterly basis to the Court for review.[11] JSLF has proposed time and expense guidelines to be approved by the Court. *See* Saveri Decl., Ex. C.

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court appoint the Joseph Saveri Law Firm, LLP as Interim Lead Class Counsel.

---

[11] In the *Capacitors* matter, Judge Donato appointed a Special Master to review time and expenses prior to submission of the fee and cost applications. *See In re: Capacitors Antitrust Litigation*, No. 17-md-02801, MDL ECF No. 1366. That review resulted in adjustments of less than 0.01% of the submitted lodestar and less than 0.04% of the submitted costs. *Id.*, MDL ECF No. 1397.

Dated: April 26, 2021

**JOSEPH SAVERI LAW FIRM, LLP**

By:      */s/ Joseph R. Saveri*
            Joseph R. Saveri

Joseph R. Saveri (CA Bar No. 130064)
Steven N. Williams (CA Bar No. 175489)
Christopher K.L. Young (CA Bar No. 318371)
Anupama K. Reddy (CA Bar No. 324873)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
swillliams@saverilawfirm.com
cyoung@saverilawfirm.com
areddy@saverilawfirm.com

*Counsel for Plaintiffs Shane Cheng and Terell Sterling*