UNITED SATE DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 21-md-2989-ALTONAGA/Torres

IN RE: JANUARY 2021 SHORT
SQUEEZE TRADING LITIGATION

THIS DOCUMENT RELATES TO:
ALL ACTIONS

**APPLICATION OF FRANK R. SCHIRRIPA
OF HACH ROSE SCHIRRIPA & CHEVERIE LLP TO BE
<u>APPOINTED TO A LEADERSHIP POSITION</u>**

Pursuant to the Court's Order (Dkt. No. 206) following the Initial Conference on the April 19, 2021 (Dkt. No. 202), attorney Frank R. Schirripa of Hach Rose Schirripa & Cheverie LLP, counsel for plaintiffs in *Dechirico, et al. v. Ally Financial Inc., et al.,* No. 1:21-cv-21451-CMA (S.D. Fla.), hereby applies to be appointed as co-lead interim class counsel, as part of the proposed leadership slate set forth herein.

**PRELIMINARY STATEMENT**

While in law school, working in the Office of the Special Counsel at the New York Stock Exchange, Mr. Schirripa was actively day-trading during the "irrational exuberance" of the early 2000s, which makes this matter near and dear to his heart. Small fortunes were made and lost overnight, and the allure that preceded the dot.com bubble had reemerged in the period leading up to the January 2021 short squeeze. While some believe trading securities is a zero-sum game, the institutional investors – the so-called "smart money" – are not in the business to lose. Here, the retail traders' investment in heavily shorted securities like GameStop and AMC caused institutional investors to record significant losses when their strategy did not playout. For the moment, David had beaten Goliath. However, refusing to lose, defendants changed the rules of

1

the game and put purchase restrictions on retail traders – but not institutional investors – causing retail traders' investments to plummet. Defendants unlawful scheme to restrict retail investors' ability to trade gave rise to the fifty consolidated actions that are currently before this Court.

Frank R. Schirripa is the managing partner of Hach Rose Schirripa & Cheverie LLP (HRS&C), a nationally recognized class action law firm specializing in complex litigation in the fields of antitrust securities, corporate governance, consumer protection, investor arbitration and employment litigation on behalf of investors, consumers and pension and health funds and their members. As set forth below, HRS&C, possesses the necessary experience and professionalism and would be honored to serve the class in a leadership role. HRS&C is comprised of a diverse and talented group of twelve full-time attorneys and has been steadily growing since its inception in 2011. With well over 100 years of combined experience, HRS&C attorneys have established themselves as leading representatives of class members in these areas of the law. Our attorneys have litigated hundreds of cases in both state and federal courts through the United States, and are committed to protecting consumer, investors and fund assets that have fallen victim to corporate wrongdoing.

HRS&C, led by Mr. Schirripa, is honored to be considered for as part of the proposed leadership slate along with our colleagues at the Ferraro Law Firm ("Ferraro"), headed by partner Natalia Salas, and Browne George Ross O'Brien Annaguey & Ellis ("BGR"), headed by partner Dennis S. Ellis. The Salas-Ellis-Schirripa slate shares the attributes that this Court demands in leading a case of this size and importance: experience, resources, commitment, and it also mirrors the diversity of the putative class it seeks to represent with regard to race, gender, geography and age. In addition, HRS&C is grateful that our proposed leadership slate has garnered the support of no less that 30 of the 50 consolidated cases. It is a privilege for HRS&C to submit Mr.

Schirripa's application for a leadership position with specific responsibility for leading the antitrust tranche in this class action, but will, with all due alacrity participate in any role that this Court sees fit.

## ARGUMENT

"Federal Rule of Civil Procedure 23(g)(1) outlines the consideration pertinent to the appointment of lead counsel at the time a class is certified and applies equally to the appointment of interim lead counsel before certification." *In re: Disposable Contact Lens Antitrust Litig.*, No. 3:15-md-2626-J-20JRK, 2015 WL 10818781, at *1 (M.D. Fla. Oct. 7, 2015). Accordingly, courts must consider four factors in appointing lead counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i-iv). Because co-lead counsel are charged with the ultimate responsibility of acting on behalf of the class throughout the entire litigation, this Court must appoint co-lead counsel who are fully capable and qualified to fairly and adequately represent the interests of the class, including through trial if necessary. *See* Manual for Complex Litigation, 4th Ed. (2004), §§ 21.271-72.

### A. **HRS&C performed significant work developing the claims in this action.**

HRS&C promptly investigated and filed a comprehensive complaint alleging violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, Section 16 of the Clayton Act, 15 U.S.C. § 26, state antitrust and consumer protection laws, and common law within ten-days of defendants' execution of their unlawful scheme to restrict retail investors' ability to trade. HRS&C then moved with alacrity to effect service on all domestic defendants and quickly began the arduous process of

effecting service upon the foreign defendants. HRS&C attorneys worked with defense counsel to reach a stipulated proposed briefing schedule in the event that the action remained in the Eastern District of New York, and Mr. Schirripa ultimately argued before the Judicial Panel on Multidistrict Litigation for transfer to that district. In the interim, HRS&C attorneys, at Mr. Schirripa's direction, continued to develop the legal theories and investigate as new facts continued to develop following several statements by defendants in news conferences, and indeed, defendant Robinhood's CEO's Congressional testimony.

B. **HRS&C's experience in handling class action litigation.**

HRS&C, and specifically Mr. Schirripa, has the expertise, knowledge, integrity and resources necessary to prosecute this case having previously represented retail and institutional investors, consumers and end-users in an antitrust, consumer and securities fraud MDLs and class actions.

For the past 18 years, Mr. Schirripa has almost exclusively litigated cases like this, having served in a lead, co-lead or representative capacity in cases against a full spectrum of industries (cellular and landline telecommunications, financial services, healthcare, insurance, manufacturing, pharmaceuticals, retail, stock broker and exchange, technology, and utilities) and practices (antitrust, consumer and investor fraud and protection, employment, and shareholder derivative actions) that encompass HRS&C's complex litigation practice. Mr. Schirripa has represented the rights of consumers, shareholders and investors in high profile and precedent-setting class action litigation involving such companies such as: Bank of America, Bank of New York Mellon, Bombardier, Charles Schwab, Celgene, ConRail, Darden Restaurants, DreamWorks Animation SKG, Dynex Capital., Facebook, Globe Specialty Metals, Leap Wireless, Merrill Lynch, Nicor, The Rawlings Company, Sinclair Broadcasting, SPX, TD Ameritrade, Tidel

Technologies, Verizon, Volkswagen AG, Wells Fargo, Westar Energy, and Williams Companies. *See* HRS&C Curriculum Vitae, Schirripa Decl., Ex. 1.[1]

Mr. Schirripa and HRS&C attorneys have served as lead, co-lead, class counsel or on plaintiffs' executive committee and steering committees in MDLs and class actions throughout the United States. HRS&C is currently representing purchasers including third-party payors and consumers in a large number of complex healthcare matters, including "pay-for-delay" generic suppression antitrust cases. HRS&C represented the putative class of end-payer plaintiffs as Court-appointed Co-lead Counsel in *In re Thalomid and Revlimid Antitrust Litigation*, No. 14-cv-6997-KSH (D.N.J.), which after six-years of hard fought litigation was successfully resolved, resulting in one of the largest end-payor only settlements since *FTC v. Activis*.

HRS&C currently represents two Taft-Hartley welfare fund and is serving on the Plaintiffs' Executive Committee in *In re Suboxone Antitrust Litig.*, No. 13-md-2445 (E.D. Pa.), and is currently working in tandem with the Plaintiffs' Steering Committee in *In re: Generic Pharmaceuticals Pricing Antitrust Litig.*, MDL No. 2724 (E.D. Pa.), a series of complex cases alleging price fixing of eighteen generic drugs, wherein HRS&C is specifically tasked with leading discovery issues, ESI claw back negotiations, privilege logs, as well as all aspects of discovery for two of the defendants. HRS&C previously represented two Taft-Hartley welfare funds that served as certified class representatives of all Indirect Purchasers in *In re Nexium Antitrust Litig.*, No. 12-md-2409 (D. Mass.) in a 6-week jury trial before Judge William Young, which mid-trial achieved a $25 million settlement with one of the generic manufacturers.

---

[1] For more information about Mr. Schirripa and HRS&C, we encourage the Court to visit our firm website at *www.hrsclaw.com*.

In addition to its leadership and integral roles in the aforementioned antitrust MDLs and class actions, HRS&C has represented lead plaintiffs and certified class representatives in landmark securities and financial services class actions, recovering billions of dollars for investors. HRS&C has achieved significant results, including monetary recoveries and other valuable relief on behalf of stockholders in representative litigation.[2]

Mr. Schirripa's skills and expertise as a class action litigator have been recognized by colleagues, courts and private institutions. For example, HRS&C recently successfully represented a pension fund which was appointed and served as one of three co-lead plaintiffs in *In re BNY Mellon FOREX Transaction Litigation*, No.12-2335 (S.D.N.Y.) (Kaplan, J.). Following four-years of intense litigation, which included over 19 million pages of document discovery, over 100 depositions, counterclaims against the named plaintiffs and their trustees, counsel for co-lead plaintiffs secured a court-approved settlement that returned, in aggregate, $504 million to BNY Mellon's custodial banking customers. *See id.* At the final settlement hearing in *BNY Mellon* (Sept. 24, 2015), Judge Kaplan noted:

> This really was an extraordinary case in which plaintiffs' counsel performed, at no small risk, an extraordinary service, …. They did a wonderful job in this case, and I've seen a lot of wonderful lawyers over the years. This was a great performance.

\*   \*   \*

---

[2] *Connecticut Laborers Pension and Annuity Funds, et al. v. Stumpf, et al. ("Wells Fargo Derivative Litigation")*, C.A. No. 2017-0380-SG (significant corporate governance reforms valued between $100-$200 million as part of joint settlement approved in California state court); *In re Dreamworks Animation SKG, In*c., Consol. C.A. No. 12619-CB ($4.5 million); *In re Globe Specialty Metals, Inc. S'holders Litig.*, Consol. C.A. No. 10865-VCG ($32.5 million); *City of Westland Police and Fire Retirement System et al. v. NVIDIA Corporation*, C.A. 2020-0075-KSJM (Del. Ch.) (Mr. Schirripa successfully tried Section 220 action to obtain corporate books and records); *In re Facebook, Inc. Section 220 Litigation*, C.A. No. 2018-0661-JRS (Mr. Schirripa successfully co-tried Section 220 action to obtain corporate books and records); *Construction and General Building Laborers' Local No. 79 General Fund v. The Boeing Co.*, C.A. 2019-0603-MTZ (same).

> This was an outrageous wrong committed by the Bank of New York Mellon, and plaintiffs' counsel deserve a world of credit for taking it on, for running the risk, for financing it and doing a great job.

See Schirripa Decl., Ex. 1.

In addition, HRS&C represented three certified class representatives and the interests of the proposed Retail Investor sub-class in *In re Facebook Inc., IPO Securities & Derivative Litig.*, MDL No. 12-2389 (Sweet, J.), a securities class action arising from misstatements made to investors in connection with Facebook's initial public offering in May 2012, which was successfully resolved just weeks before jury selection was scheduled to commence. See Schirripa Decl., Ex. 1.

### C. **HRS&C is well-versed with the applicable law.**

As demonstrated herein, HRS&C's knowledge of the law and procedures particular to class action and complex MDLs is without question.[3] Mr. Schirripa and his colleagues at HRS&C have exclusively litigated antitrust, consumer and securities class actions for decades, successfully recovering billions of dollars for injured consumers and investors. Mr. Schirripa and the team at HRS&C are acutely aware of the legal issues, practices and procedures required to successfully lead this MDL. As recognized by all counsel at the April 19, 2021 status conference, this case is multi-faceted and involves three distinct tranches for the non-PSLRA claims and another separate tranche for the Exchange Act of 1934 claims which are subject to specific PSLRA standards and procedures. HRS&C's vast experience in antitrust and consumer cases, as well as PSLRA

---

[3] Mr. Schirripa has been recognized by his peers as a *New York Super Lawyer* in Class Action Litigation. Mr. Schirripa regularly lectures to Taft-Hartley and multi-employer pension and welfare funds on securities and antitrust related legal issues. Mr. Schirripa recently spoke as a panelist on an ABA CLE: "*Current Issues in Pharmaceutical, Medical Device & Biotech Litigation,*" October 2019. Mr. Schirripa, co-authored the article "*Is the Delaware Section 220 Tango Worth the Wait?*" which was published in the ABA Litigation Section, October 2017.

securities litigation makes it uniquely qualified for a leadership position in this litigation. We fully understand the interplay between the antitrust, consumer and PSLRA claims.

### D. HRS&C is willing and available to commit to a time-consuming project.

As demonstrated by years of litigating hard-fought claims against some of the most prominent corporations in America, Mr. Schirripa, along with the attorneys at HRS&C, are abundantly aware of the personal time commitment necessary to litigate this matter. HRS&C's attorney's leadership roles in other cases demonstrates its willingness and ability to devote the resources necessary to prosecute its clients' and class claims to the fullest extent of the law. Over the course of his career, Mr. Schirripa has crisscrossed the country hundreds of times for organizational meetings, hearings, depositions, mediations, and trials. And when required, HRS&C has even built out and relocated its attorneys to temporary satellite offices to serve as "war rooms" for boots on the ground investigative efforts, deposition preparation and trial support. Of the current MDLs that HRS&C attorneys are working in an Executive Committee or Plaintiffs' Steering Committee role, Mr. Schirripa has been overseeing younger attorneys within the firm to broaden their experience and, as result, is willing and able to commit a significant portion of his time, partner Daniel Rehns' time and Kathryn Hettler's time to this litigation.

HRS&C is prepared to commit the necessary and substantial financial and intellectual resources to this litigation. The firm's resources are not merely financial, however, as they also have the personnel and expertise necessary to pursue a case of this magnitude and to achieve a positive outcome for the Class. The legal team has substantial experience not only with the traditional duties of counsel, but also with the tasks particular to complex litigation, including supervising focused teams of lawyers to efficiently analyze discovery documents and engaging highly qualified expert witnesses and consultants. Further, the other firms in our proposed slate,

Ferraro and BGR are committed to supplement HRS&C's extensive resources with their own arsenal of personnel, litigation skills, experience, and financial resources. Complex cases, such as this, are not litigated by one attorney or by one firm alone. If appointed, HRS&C and the proposed Salas-Ellis-Schirripa leadership slate intend to utilize the resources of the many talented law firms involved in this MDL in a manner that establishes defined responsibilities, maximizes efficiencies, encourages communication and cooperation, and avoids duplication efforts.

HRS&C's success and growth over the past decade is due in part to our ability to collaborate with co-counsel, work cooperatively and effectively with our adversaries to achieve the results that our clients, the class and the Court demand. Likewise, Mr. Schirripa's ability to maintain a professional relationship with co-counsel and adversaries, fostering mutual respect in the face of zealous prosecution of our clients' claims, has forged numerous friendships, repeat referrals and recommendations within the class action bar.

## **PROPOSED LEADERSHIP STRUCTURE**

HRS&C, and the other members of the proposed Salas-Ellis-Schirripa leadership slate, proposed that the Court appoint three co-lead counsel. Ms. Salas and Mr. Ellis would preside over the state law contract- and tort-based claims, and Mr. Schirripa would preside over the antitrust claims. This leadership group would be supported by an executive committee consisting of 10-12 members, to be appointed by co-lead counsel after their appointment. The proposed leadership structure has the support of 29 of the 50 cases consolidated in the MDL. *See* Chart of Counsel Support for Salas-Ellis-Schirripa leadership slate, Schirripa Decl., Ex. 2. This support is a compelling reason to appoint the Salas-Ellis-Schirripa leadership slate. *Cf. In re Aluminum Phosphide Antitrust Litig.*, 1994 WL 481847, at *5, 7 (D. Kan. May 17, 1994) ("In designating lead counsel, the Court will also give due consideration to the preferences expressed by the parties

themselves, through their counsel … Absent persuasive evidence to the contrary, the court assumes that nominations and votes for lead counsel are made in good faith for reasons that benefit the client.").[4]

## CONCLUSION

For the reasons set forth above, HRS&C respectfully requests that the Court appoint Mr. Schirripa as co-lead counsel, to be joined by Ms. Salas and Mr. Ellis.

DATED:   April 26, 2021               Respectfully submitted,

*/s/ Frank R. Schirripa*
Frank R. Schirripa
Daniel B. Rehns
Kathryn Hettler
Eugene Zaydfudim
**HACH ROSE SCHIRRIPA
& CHEVERIE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
T: (212) 213-8311

*Attorneys for Plaintiffs Dan Dechirico, Angel Guzman and Joshua Palmer and Proposed Class Counsel for the Putative Class*

---

[4] HRS&C is mindful that several other experienced firms have filed actions on behalf of the class and are seeking appointment as interim co-lead counsel as well. HRS&C have worked (and are currently working) cooperatively with these firms and individuals in other matters. If appointed interim class counsel by the Court, they would welcome the opportunity to work with the other plaintiffs' counsel in this litigation to maximize their collective resources and expertise and ensure the effective and efficient prosecution of the proposed class.