UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-2989-MDL-ALTONAGA/Torres

IN RE:

JANUARY 2021 SHORT SQUEEZE
TRADING LITIGATION
_____/
*THIS DOCUMENT RELATES TO: ALL ACTIONS*

**DECLARATION OF JOSEPH R. SAVERI
IN SUPPORT OF *CHENG* PLAINTIFFS' MOTION TO APPOINT
JOSEPH R. SAVERI AS INTERIM LEAD COUNSEL**

I, Joseph R. Saveri, declare as follows:

1.     I am an attorney licensed to practice law in California. I am attorney of record in *Cheng v. Ally Financial Inc.*, No. 21-cv-00781 (N.D. Cal.), one of the cases that has since been centralized before this Court. I have handled this action since its inception. Unless otherwise indicated, I have personal knowledge of the facts set forth herein. I make this Declaration in support of *Cheng* Plaintiffs' Motion to Appoint Joseph R. Saveri as Interim Lead Counsel. If called to testify as a witness in this case, I could and would testify competently to the following. I make this Declaration pursuant to 28 U.S.C. § 1746.

2.     The Joseph Saveri Law Firm, LLP ("JSLF") is a law firm with offices in San Francisco, California and New York, New York. A description of the law firm, biographical information of the firm's lawyers, the accolades and honors the firm has received, and a description of the firms practice and cases can be found on the firm's website www.saverilawfirm.com. The firm currently employs 17 full time attorneys; and paralegals,

1

investigators, and professional staff. I founded the law firm in 2012 and am a partner in the firm. The firm has grown and continues to grow. The current firm résumé is attached as **Exhibit A.**

3. I am a 1987 graduate of the University of Virginia School of Law. I was admitted to the California Bar in 1987. Upon my graduation from law school, I worked as an associate attorney at the law firm which was then known as McCutchen, Doyle, Brown & Emerson, in San Francisco where my practice focused on complex business litigation, including antitrust and securities litigation. In 1992, I joined the law firm of Lieff, Cabraser & Heimann. During my tenure there, I handled antitrust, securities, employment and consumer class actions. I handled many groundbreaking and precedent setting cases and served as court-appointed lead counsel or co-lead counsel in many of them. I established the firm's Antitrust and Intellectual Property Practice Group which received numerous awards during my tenure. I served as the Managing Partner of the firm, overseeing the firm's growth from a 20-lawyer firm in San Francisco to a 60-lawyer firm with over 100 employees and offices in San Francisco, New York, Nashville and Boston.

4. I have handled and managed all phases of civil litigation, including class certification, discovery, summary judgment, trial, appeals and settlement. I have tried numerous antitrust and other cases to verdict.

**The Short Squeeze Team**

5. In addition to me, members of the proposed litigation team for this matter include Mr. Steven N. Williams, Mr. Joshua P. Davis, Ms. Anupama K. Reddy, and Mr. Christopher K.L. Young. Brief biographies of the proposed team are included in **Exhibit B.**

6. The firm handles complex business litigation, including class actions. In particular, the firm specializes in antitrust litigation on behalf of plaintiffs. Many of our cases are handled on a contingent fee basis, in which we perform legal services on a wholly contingent basis, including the advancement of costs. The firm is entirely self-funded. It receives no funding from third-party funders or similar businesses.

7. Although the firm is less than nine years old, the firm has handled some of the nation's most important and complex cases. Those cases include *In re Capacitors Antitrust Litig.*, No. 3:14-cv-03264-JD (N.D. Cal.); *In re Titanium Dioxide Antitrust Litig.*, No. 1:10-cv-00318-RDB (D. Md.); *In re High-Tech Employees Antitrust Litig.*, No. 5:11-cv-02509-LHK (N.D. Cal.); and *In re Cipro Cases I And II*, J.C.C.P. Nos. 4154, 4220 (San Diego County Sup. Ct.). The firm has ongoing lead counsel responsibilities handling other class actions including antitrust cases involving international cartel cases (*In re Capacitors Antitrust Litig.*, No. 3:17-md-02801-JD (N.D. Cal.)); illegal merger agreements (*In re Juul Labs, Inc. Antitrust Litig.*, No. 3:20-02345-WHO (N.D. Cal.)); illegal restrictions in sports and labor markets (*e.g.*, *Jones v. Varsity Brands, LLC*, No. 20-cv-02892 (W.D. Tenn.); *Le v. Zuffa, LLC*, No. 2:15-cv-01045 (D. Nev.)); pharmaceutical pricing (*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, No. 1:18-md-02819-NG-LB (E.D.N.Y.)); and no-poach cases (*Robinson v. Jackson Hewitt Inc.*, No. 2:19-cv-09066-SDW-LDW (D.N.J.); *Giordano v. Saks*, No. 20-cv-00833-MKB-CLP (E.D.N.Y.)). To date, the firm has generated over $4 billion in settlements and resolutions for our clients.

8. In addition to my work for my clients, I and others at the firm have been active in the legal community and in service to the Court. I was chosen to serve as Lawyer's Representative for the Northern District of California from 2010-2013. I served on the group of

3

lawyers and judges who created the Northern District's E-Discovery (ESI) Guidelines as well as the group that created the local rule for summary jury trial. My law partner, Steven N. Williams, served on the committee that created California's Electronic Discovery Act. I participated in the meetings of the Federal Rules Advisory Committee in 2003-2005, which among other things, amended the Federal Rules of Civil Procedure with respect to the discovery of electronically stored information. I have been active in the Sedona Conference on electronic discovery and antitrust law. In addition to the articles I have written, I regularly speak on issues regarding antitrust, ESI discovery, complex litigation, and class actions. Additional biographical information can be found at https://www.saverilawfirm.com/attorneys/joseph-r-saveri/.

9. In order to ensure efficiency and transparency regarding attorneys' fees and costs, in cases in which the firm has been appointed as lead counsel, we have proposed time and expense guidelines to be approved by the Court. These time and expense guidelines have been refined over time and reflect best practices gleaned through experience and have been approved by other courts. A proposed Time and Expense Protocol is attached herewith as **Exhibit C**.

**Commitment to Diversity, Inclusion and Mentoring**

10. Throughout its existence, the firm has been committed to values of diversity, inclusion and mentoring. Through its recruiting and hiring, the firm has included persons from a wide spectrum of gender, ethnicity, national origin, and sexual identity. As one of its core values, the firm encourages the inclusion and advancement of all.

11. A core value of the firm is mentoring. It is important to the firm—and the profession—that senior and junior employees work with one another for the purposes of growth, learning and development. It is the firm's mentors who serve as role models and sounding boards

for more junior attorneys at the firm. The firm's commitment to mentoring extends outside the firm itself. An important part of the commitment is providing opportunities to less experienced lawyers in court and in all phases of litigation. This includes significant writing assignments, discovery planning and management, percipient and expert witness preparation, law and motion practice, trial and appeals. The firm is also committed to providing opportunities for attorneys who are less experienced, including those of co-counsel. The firm's junior lawyers participate in all phases of litigation, including discovery, arguing dispositive motions, and examining witnesses at trial. Recent examples include the *In re Capacitors Antitrust Litig.*, No. 3:14-cv-03264-JD (N.D. Cal.) jury trial, wherein younger attorneys served critical trial roles such as examining expert witnesses; and *In re Juul Labs, Inc. Antitrust Litig.*, No. 3:20-02345-WHO (N.D. Cal.), in which less experienced and diverse attorneys took lead roles in drafting and arguing dispositive motions.

12. In addition, the firm has actively participated in the Federal *Pro Bono* Project in the Northern District of California. *See* https://www.cand.uscourts.gov/attorneys/federal-pro-bono-project/. In addition to providing much-needed representation of *pro se* litigants, participation in the Federal *Pro Bono* Project has provided excellent opportunities for less-experienced attorneys to obtain federal court experience. Members of the firm have been recognized for their service, including my law partner Mr. Williams who received the Justice & Diversity Center of the Bar Association of San Francisco's Federal *Pro Bono* Project 2020 Crystal Award for "Outstanding Volunteer of the Year" award.

**Development of this Case**

13. My firm conducted significant and independent investigation of this case shortly after the events of January 27-28, 2021. This work included an extensive and thorough

investigation of the events surrounding the restrictions in trading on January 28, 2021, analysis of price movements, analysis of short sale positions in the hours immediately before January 28, 2021, analysis of market conditions in the weeks prior, and detection of simultaneous coordinated conduct among competitors in the securities space. We consulted with many experts, including nationally recognized experts on securities law, securities litigation, and antitrust and competition issues.

14. My firm's investigation developed the claims of the *Cheng* Plaintiffs. The *Cheng* complaint was filed on February 1, 2021, only days after the events of January 28, 2021, and was one of the first *Short Squeeze* complaints to bring antitrust claims. The *Cheng* complaint remains the most detailed and comprehensive, evidencing the care and consideration I and my firm put into investigating and developing the complaint.

**Advancement of the Litigation**

15. My firm has already demonstrated its leadership skills in this case, taking a number of significant steps in this regard. Recognizing the need for centralization in order to minimize the risk of conflicting results, we took the initiative to file the motion to centralize the *Short Squeeze* actions before the JPML. In accordance with JPML procedures, my firm effected service to over 100 entities—mailing physical copies of thousands of pages—upon each Defendant, each *Short Squeeze* plaintiff, and each District Court in which a *Short Squeeze* Action was proceeding.

16. My firm's investigation revealed that many of the communications leading up to the restrictions imposed on January 28, 2021 occurred via telephone calls or on social media. Moreover, recognizing the need to preserve evidence given many nonparties who possess or

control relevant evidence, regularly destroy potentially relevant evidence as a function of ordinary data retention policies (e.g., call records are typically destroyed within a year) JSLF sent document preservation letters to nonparties including phone carriers and social media web companies to ensure relevant evidence is preserved.

17. In order to most efficiently progress the litigation, it is important to establish mutual respect and cooperation between counsel of plaintiffs and counsel for the defendants. I and my firm have negotiated waivers of service of process and coordinated response dates. We have coordinated with plaintiffs' counsel, participated in the drafting of the proposed agenda for the initial court conference and negotiated it with counsel for defendants.

**Case Structure and Organization**

18. I have been directly involved in efforts to organize the litigation consistent with sound principles of case management. This has included efforts to identify major issues and potential difficulties, scheduling, discovery and structure of plaintiffs' counsel. It has also included discussions regarding the grouping of claims.

19. I was instrumental in the organization and categorization of the 50 plus actions with numerous state and federal claims into three general groups: (1) antitrust; (2) common law claims; and (3) claims only against broker-dealers. My firm's proposal was adopted by all plaintiffs and defendants and presented to the Court at the April 19, 2021 initial status conference. We worked with experts, co-organized various small and larger group calls with plaintiffs and defendants. I was selected to speak on behalf of the Class at the Court's April 19, 2021 initial conference.

20. I have been extensively involved in numerous conversations and communications with counsel regarding case organization, case structure and leadership of plaintiffs' counsel. Those communications continued for a number of weeks. I and other members of JSLF did not make any promises of work nor any bargains for support during these communications. While from my perspective, those conversations were cordial, productive and in good faith, counsel for plaintiffs were unable to reach consensus regarding leadership.

I declare under the penalty of perjury that the foregoing is true and correct, executed on April 26, 2021 at San Francisco, California.

        */s/ Joseph R. Saveri*
        Joseph R. Saveri