**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-2989-MDL-ALTONAGA/Torres**

In re: JANUARY 2021 SHORT SQUEEZE
TRADING LITIGATION

<u>**This Document Relates to: All Actions Involving the Federal Securities Laws**</u>

**MEMORANDUM OF LAW OF MOVANT CODY TODD IN OPPOSITION TO**
<u>**COMPETING LEAD PLAINTIFF MOTION**</u>

1

## <u>TABLE OF CONTENTS</u>

BACKGROUND ........................................................................................................................ 1

ARGUMENT ........................................................................................................................... 3

  I.   MR. TODD SHOULD BE APPOINTED LEAD PLAINTIFF ............................................. 3

  II.  MR. TODD'S SELECTION OF COUNSEL SHOULD BE APPROVED ....................... 6

  III.  THE GROUP'S MOTION SHOULD BE DENIED ........................................................ 7

    A.  The Group's Motion is Untimely and Should Denied on that Basis Alone .................... 7

    B.  Even if the Court Considers the Group's Untimely Motion (it should not), The Group is Inadequate and Atypical ........................................................................................ 10

      1.   The Group is an Improper Lawyer-Made Group of Unrelated Investors .................. 10

      2.   The Group Members Submitted Defective PSLRA Certifications; Failed to Assert Losses ........................................................................................................................ 13

      3.   The Group Asserts Inappropriate and Inadequate Claims ......................................... 15

      4.   The Group's Selection of Counsel Demonstrates its Inadequacy ............................. 16

CONCLUSION ....................................................................................................................... 18

**TABLE OF AUTHORITIES**

**Cases**

*Abouzied v. Applied Optoelectronics, Inc.*, 2018 WL 539362 (S.D. Tex. Jan. 22, 2018) ........... 12

*Adcock v. Netbank, Inc.*, 2008 WL 11322962 (N.D. Ga. Apr. 21, 2008) ...................................... 3

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 185 F.R.D. 172 (S.D.N.Y. 1999), *aff'd in part, vacated in part,* 222 F.3d 52 (2d Cir. 2000) ............................................................................... 16

*Belmont Holdings Corp. v. Suntrust Banks, Inc.*, 2009 WL 3188695 (N.D. Ga. Sept. 29, 2009).. 1

*Bhojwani v. Pistiolis*, 2007 WL 9228588 (S.D.N.Y. July 31, 2007).......................................... 15

*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975) ................................................................................................................................................ 16

*Brustein v. Lampert*, 2005 WL 8154797 (S.D. Fla. June 16, 2005) ............................................ 11

*Cambridge Ret. Sys. v. Mednax, Inc.*, 2018 WL 8804814 (S.D. Fla. Dec. 6, 2018), *report and recommendation adopted,*  2018 WL 6978626 (S.D. Fla. Dec. 21, 2018)................ 3, 5, 10, 11

*Carvelli v. Ocwen Fin. Corp.*, 2017 WL 11068524 (S.D. Fla. July 14, 2017), *objections overruled,* 2017 WL 3473482 (S.D. Fla. Aug. 14, 2017) ................................................ 10, 11

*Cheney v. Cyberguard Corp.*, 213 F.R.D. 484 (S.D. Fla. 2003)................................................... 7

*Darwin v. Taylor*, 2012 WL 5250400 (D. Colo. Oct. 23, 2012) ................................................ 15

*Ferrari v. Gisch,* 225 F.R.D. 599 (C.D. Cal. 2004) ..................................................................... 9

*Grand Lodge of Pennsylvania v. Peters*, 560 F. Supp. 2d 1270, 1273 (M.D. Fla. 2008).............. 6

*Gutman v. Sillerman*, 2015 WL 13791788 (S.D.N.Y. Dec. 8, 2015) ........................................... 9

*Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharmaceutical Indus. Ltd.*, 2021 WL 1217395 (E.D. Pa. Mar. 26, 2021) ....................................................................................... 18

*Hevesi v. Citigroup Inc.*, 366 F.3d 70 (2d Cir. 2004) ................................................................... 5

*In re Baan Co. Sec. Lit.*, 186 F.R.D. 214 (D.D.C. 1999) ............................................................ 12

*In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428 (S.D. Tex. 2010) ................................................ 9

*In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D. 552 (S.D. Ohio)...................................... 18

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001)......................................................... 1, 4

*In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427 (S.D. Tex. Feb. 15, 2002).................................... 11

*In re HealthSouth Corp. Sec. Litig.*, 261 F.R.D. 616 (N.D. Ala. 2009)........................................ 5

*In re Level 3 Commc'ns, Inc.*, 2009 WL 10684924 (D. Colo. May 4, 2009)............................... 13

*In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427 (E.D. Va. 2000) ............................... 15

*In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128 (S.D.N.Y. 2007) ......................................... 8

*In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618 (S.D.N.Y. 2015)............................................. 11

*In re Quintus Sec. Litig.*, 201 F.R.D. 475 (N.D. Cal. 2001) ..................................................... 16

*In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304 (S.D.N.Y. 2001). ..................................... 10

*In re Ribozyme Pharms., Inc. Sec. Litig.*, 192 F.R.D. 656 (D. Colo. 2000) ............................... 15

*In re Robinhood Order Flow Litigation*, case no. 4:20-cv-09328 (N.D. Cal.) ...................... 17, 18

*In re Stitch Fix, Inc. Sec. Litig.,* 393 F. Supp. 3d 833 (N.D. Cal. 2019)..................................... 13

*In re Sunbeam Sec. Litig.*, 1998 WL 1990884 (S.D. Fla. Dec. 4, 1998)........................................ 7

*In re Superior Offshore Int'l, Inc. Sec. Litig.*, 2008 WL 2148745 (S.D. Tex. May 20, 2008)...... 12

*In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803 (N.D. Ohio 1999)...................................... 8, 15

*IN RE: January 2021 Short Squeeze Trading Litigation*, MDL No. 2989 ..................................... 9

*Jakobsen v. Aphria, Inc.,* 2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) ....................................... 13

*Krim v. pcOrder.com, Inc.,* 210 F.R.D. 581 (W.D. Tex. 2002) ..................................................... 17

*Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) .............. 7

*Luczak v. Nat'l Beverage Corp.,* 2018 WL 9847842 (S.D. Fla. Oct. 12, 2018) ........................ 4, 6

*Marcus v. J.C. Penney Co.*, 2014 WL 11394911 (E.D. Tex. Feb. 28, 2014) .............................. 11

*McIlvaine v. ArthroCare Corp.*, 2008 WL 1331999 (S.D. Fla. July 16, 2008).............................. 2

*McIntire v. Mariano*, 2019 WL 78982 (S.D. Fla. Jan. 2, 2019) ..................................................... 7

*Michollle v. Ophthotech Corp*., 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ........................... 14

*Miller v. Dyadic Int'l, Inc.*, 2008 WL 2465286 (S.D. Fla. Apr. 18, 2008) ........................... passim

*Muncy v. Robinhood Financial, LLC, et al.*, case no. 1:21-CV-21307-CMA  .................... 4, 7, 17

*Nabi v. Robinhood Financial, LLC, et al.*, case no. 4:21-cv-00755-YGR (N.D. Cal.)................ 17

*Nasin v. Hongli Clean Energy Techs. Corp.*, 2017 WL 5598214 (D.N.J. Nov. 21, 2017).......... 14

*Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499 (S.D. Fla. 2002)................................................ 12

*Oklahoma L. Enf't Ret. Sys. v. Adeptus Health Inc.*, 2017 WL 3780164 (E.D. Tex. Aug. 31,
    2017).......................................................................................................................................... 14

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395
    (S.D.N.Y. 2004) ........................................................................................................................ 15

*Piven v. Sykes Enters. Inc.,* 137 F.Supp.2d 1295 (M.D. Fla. 2000)................................................ 1

*Plaut v. The Goldman Sachs Grp., Inc.*, 2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019). ........ 9, 14

*Plumbers & Pipefitters Local 51 Pension Fund v. Darden Restaurants, Inc*., 2008 WL 2608111
    (M.D. Fla. July 1, 2008) ............................................................................................................. 6

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620 (E.D. Wis.
    2009)........................................................................................................................................... 9

*Pritchard v. Apyx Med. Corp.*, 2019 WL 9093486 (M.D. Fla. July 16, 2019)............................... 8

*Quat, et al. v. Robinhood Financial, LLC, et al.*, 1:21-cv-21404-CMA (S.D. Fla.)........... 8, 16, 17

*Springer v. Code Rebel Corp.*, 2017 WL 838197 (S.D.N.Y. Mar. 2, 2017)................................... 6

*Steamfitters Loc. 449 Pension Fund v. Cent. Eur. Distribution Corp.*, 2012 WL 3638629 (D.N.J.
    Aug. 22, 2012), *motion for relief from judgment granted sub nom. In re Cent. Eur.
    Distribution Corp. Sec. Litig.*, 2012 WL 5465799 (D.N.J. Nov. 8, 2012) ............................... 14

*Stone v. Life Partners Holdings, Inc.*, 2011 WL 13237569 (W.D. Tex. Aug. 12, 2011) .............. 8

*Takata v. Riot Blockchain, Inc.*, 2018 WL 5801379 (D.N.J. Nov. 6, 2018)................................. 13

*Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273 (D. Ariz. Apr. 7, 2008).......................... 13

*Varghese v. China Shenghuo Pharm. Holdings, Inc.,* 589 F. Supp. 2d 388 (S.D.N.Y. 2008) ..... 11

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) ....................................................... 4

*Villare v. ABIOMED, Inc.,* 2020 WL 3497285 (S.D.N.Y. June 29, 2020)..................................... 9

*Weinberg v. Atlas Air Worldwide Holdings, Inc*., 216 F.R.D. 248 (S.D.N.Y.2003) ................... 16

*Welch v. Meaux*, 2020 WL 4758269 (W.D. La. Aug. 17, 2020) ................................................. 11

## Statutes

15 U.S.C. §78u-4(a) ................................................................................................................. passim

## Rules

Fed. R. Civ. P. Rule 23 ........................................................................................................... passim

Lead Plaintiff Movant Cody Todd ("Movant" or "Mr. Todd") respectfully submits this opposition to the competing lead plaintiff motion filed by Aaron Fassinger, Eric Quat, Tenzin Woiser, Igor Kravchenko, Michael McFadden, and Mike Ross (collectively the "Group"). Dkt. No. 144.

## BACKGROUND

Before the Court are two motions seeking appointment as Lead Plaintiff and approval of their selection of counsel—Mr. Todd with losses in excess of $8,000 (Dkt. No. 26-4), and an untimely motion filed by the Group—six unrelated investors cobbled together by counsel that has failed to assert any specific financial interest.  Dkt. No. 144.

These motions are governed by the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). "The PSLRA was enacted to remedy perceived abuses in the class action procedure in securities fraud actions."  *Miller v. Dyadic Int'l, Inc.*, 2008 WL 2465286, at *3 (S.D. Fla. Apr. 18, 2008) (citing *Piven v. Sykes Enters. Inc.,* 137 F.Supp.2d 1295, 1301 (M.D. Fla. 2000)).

"The PSLRA 'sets up a rebuttable presumption that the plaintiff with the largest stake in the controversy will be the lead plaintiff. [] So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, [he, she or it] is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.'"  *Belmont Holdings Corp. v. Suntrust Banks, Inc.*, 2009 WL 3188695, at *2 (N.D. Ga. Sept. 29, 2009) (citing *In re Cavanaugh,* 306 F.3d 726,729 n. 2 and 732 (9th Cir.2002); *In re Cendant Corp. Litig.*, 264 F.3d 201, 268-69 (3d Cir. 2001); 15 U.S.C. §78u-4(a)(3)(B).

Preliminarily, Mr. Todd is the only movant that timely filed a lead plaintiff motion on the due date—April 5, 2021.  The Group's motion, filed on April 14, 2021 is untimely.  Given that

courts around the country strictly enforce PSLRA lead plaintiff deadlines, the Group's motion should be denied on this basis alone.

Even if the Court considers the Group's late motion (it should not), Mr. Todd has triggered the PSLRA's "most adequate plaintiff" presumption.  First, Mr. Todd has the largest financial interest in this litigation as he has the largest losses of all the movants.  *See* Dkt. Nos. 26 at 8 and 26-4.  Indeed, the Group does not specify any loss.  The Group has failed to provide any data for the Court or Mr. Todd to determine its financial interest.  The Group also failed to provide a loss chart—which is universally filed with lead plaintiff motions under the PSLRA. *See* Dkt. No. 144.

Second, as set forth in Mr. Todd's opening papers, including his PSLRA certification, he has made a *prima facie* showing of adequacy and typicality under Fed. R. Civ. P. Rule 23.  Dkt. No. 26 at 9-10, 26-3, and 26-4; *McIlvaine v. ArthroCare Corp.*, 2008 WL 11331999, at *4 (S.D. Fla. July 16, 2008) ("Typicality is established where the proposed lead plaintiff has sustained the same injuries as the proposed class members resulting from the same course of conduct by the defendants[,]" and "adequa[cy] where '1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class has sufficient interest in the outcome of the case to ensure vigorous advocacy.'") (quoting *Miller*, 2008 WL 2465286 *6)).  Finally, the presumption that Mr. Todd is the "most adequate plaintiff"—*i.e.* the presumptive lead plaintiff—"may be rebutted only upon proof."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

Because the Group can offer no proof to rebut the presumption in favor of Mr. Todd, the Court should grant his motion in its entirety and deny the Group's motion.

## ARGUMENT

### I.   MR. TODD SHOULD BE APPOINTED LEAD PLAINTIFF

"The PSLRA establishes the procedure for the appointment of a lead plaintiff in a private class action arising under federal securities law." *Adcock v. Netbank, Inc.*, 2008 WL 11322962, at *3 (N.D. Ga. Apr. 21, 2008) (citing 15 U.S.C. § 78u-4(a)(1)); *Cavanaugh*, 306 F.3d at 729 (PSLRA provides a "clear path that the district court must follow in selecting the lead plaintiff."); *see also Cambridge Ret. Sys. v. Mednax, Inc.*, 2018 WL 8804814, at *2 (S.D. Fla. Dec. 6, 2018), *report and recommendation adopted*, 2018 WL 6978626 (S.D. Fla. Dec. 21, 2018). After reviewing the notice and timeliness of a motion, the Court "address[es] which of the proposed lead plaintiffs has the 'largest financial interest in the relief sought by the class' and whether that proposed lead plaintiff satisfies the requirements of Rule 23, *i.e.*, whether its claims 'are typical of the claims ... of the class' and whether it 'will fairly and adequately protect the interests of the class.'" *Cambridge Ret. Sys.*, 2018 WL 8804814, at *2; (quoting Fed. R. Civ. P. 23(a)); *Cavanaugh*, 306 F.3d at 730, 732. Importantly, "a straightforward application of the statutory scheme … provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case." *Cavanaugh*, 306 F.3d at 732. "So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, [he, she or it] is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Id.* Utilizing this simple process confirms that Mr. Todd is the presumptive Lead Plaintiff and the Court should grant his motion.

Mr. Todd has triggered the PSLRA's most adequate plaintiff presumption. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Mr. Todd has the largest loss of any movant before the Court. Therefore, Mr. Todd has the largest financial interest.

Once the Court "determines which plaintiff has the biggest stake [here Mr. Todd], the court must appoint that plaintiff as lead, unless it finds that he does not satisfy the typicality or adequacy requirements." *Cavanaugh*, 306 F.3d at 730, 732 ("If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff."); *Cendant*, 264 F.3d at 263 ("The initial inquiry (i.e., the determination of whether the movant with the largest interest in the case 'otherwise satisfies' Rule 23) should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy.").

Like all purported class members, Mr. Todd alleges that Defendants violated the Exchange Act by engaging in market manipulation.  Mr. Todd sold certain of the Affected Securities[1] after Robinhood's restrictions and was damaged thereby.  *See* Dkt. Nos. 26 at 5 and 26-4.  These claims are also premised on the same legal and remedial theories and are based on the same misconduct—the market manipulation.  *See generally, Luczak v. Nat'l Beverage Corp.,* 2018 WL 9847842, at *2 (S.D. Fla. Oct. 12, 2018); *Kavra v. Health Ins. Innovations, Inc.*, 2018 WL 4611215, at *3 (M.D. Fla. Feb. 6, 2018) (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275 (11th Cir. 2009)).  Mr. Todd has demonstrated his adequacy by submitting a sworn certification affirming his willingness to serve as, and carry out the responsibilities of, class representative.  Dkt. No. 26-3. Based on his financial interest in the litigation and satisfaction of the Rule 23 requirements at

---

[1] The Affected Securities include American Airlines Group Inc. (NASDAQ: "AAL"), AMC Entertainment Holdings Inc. (NYSE: "AMC"), BlackBerry Limited (NYSE: "BB"), Bed Bath & Beyond Inc. (NASDAQ: "BBBY"), GameStop Corp. (NYSE: "GME"), Nokia Corporation ("NOK"), Express, Inc. (NYSE: "EXPR"), Koss Corporation (NASDAQ "KOSS"), Naked Brand Group Limited (NASDAQ: "NAKD"), Sundial Growers, Inc. (NASDAQ: "SNDL"), Tootsie Roll Industries, Inc. (NYSE: "TR"), and Trivago NV (NASDAQ: "TRVG").  *See* Dkt. No. 26 at 5; Dkt. No.144 at 5-6; *Muncy v. Robinhood Financial, LLC, et al.*, case no. 1:21-CV-21307-CMA, Dkt. No. 1 at 2; *Quat* Action, Dkt. No. 1 at 1-2.

this stage, Mr. Todd has triggered the PSLRA's most adequate plaintiff presumption. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

A showing that a proposed lead plaintiff is the presumptively most adequate can be rebutted by proof by a member of the purported class that the proposed lead plaintiff "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Cambridge Ret. Sys.*, 2018 WL 8804814, at *2 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)); *Kavra*, 2018 WL 4611215, at *2 (same); *see also Cavanaugh*, 306 F.3d at 732 (explaining that courts are not to "engage[] in a freewheeling comparison of the parties competing for lead plaintiff"). That "the presumption is rebuttable does not mean that it may be set aside for any reason that the court may deem sufficient. Rather, the statute provides that the presumption 'may be rebutted only upon proof . . . that the presumptively most adequate plaintiff' does not satisfy the adequacy or typicality requirements of Rule 23.'" *Cavanaugh*, 306 F.3d at 729 n.2 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II))

The Group may argue that Mr. Todd is inadequate because he did not purchase and sell each of the Affected Securities impacted by Defendants' manipulation. However, a lead plaintiff need not have standing to pursue every single claim. *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) ("Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action. Rather, because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim."). Indeed, named plaintiffs are added to round out standing when consolidated complaints are filed by the Lead Plaintiff. *In re HealthSouth Corp. Sec. Litig.*, 261 F.R.D. 616, 648 (N.D. Ala. 2009) ("In such cases, as here, additional named plaintiffs may be needed to aid

the lead plaintiff in representing the class."); *Grand Lodge of Pennsylvania v. Peters*, 560 F. Supp. 2d 1270, 1273 (M.D. Fla. 2008) ("situations in which the lead plaintiff may not possess standing to sue on all of the claims and, thus, other named plaintiffs may assist the lead plaintiffs even though their qualifications may not rise to the level of lead plaintiff. Generally, the PSLRA does not prohibit the addition of named plaintiffs to aid the lead plaintiffs.").

## II.     MR. TODD'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select lead counsel, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Luczak*, 2018 WL 9847842, at *2 ("The Court should interfere with lead plaintiff's selection only when necessary 'to protect the interests of the class.'") (quoting 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)(aa)).

Here, Mr. Todd has selected The Rosen Law Firm, P.A. as Lead Counsel. The Firm is eminently qualified. The Firm has the resources and expertise to litigate this action efficiently and aggressively. As the Firm's resume reflects, it is highly experienced in the area of securities class action litigation and has successfully prosecuted numerous securities fraud class actions on behalf of investors. Dkt. Nos. 26 at 11 and 26-5; *see Plumbers & Pipefitters Local 51 Pension Fund v. Darden Restaurants, Inc.*, 2008 WL 2608111, at *2 (M.D. Fla. July 1, 2008) ("where a law firm 'has successfully prosecuted securities class action litigations in the past,' courts generally will not 'interfere with the [l]ead [p]laintiff's choice of counsel ....'") (quoting *Miller,* 2007 WL 4754041, at *2); *Luczak*, 2018 WL 9847842, at *2 ("It is 'evident from the documentation provided to the Court' that [the] law firm[] that seek[s] appointment as lead []counsel, [The Rosen Law Firm, P.A.], ha[s] extensive experience in securities litigation and class actions involving issues similar to those raised in this cause.") (quoting *Springer v. Code Rebel Corp.*, 2017 WL 838197, at *3 (S.D.N.Y. Mar. 2, 2017)).

Thus, the Court may be assured that by approving Mr. Todd's selection of counsel, the members of the class will receive excellent legal representation.

## III.     THE GROUP'S MOTION SHOULD BE DENIED

### A.  The Group's Motion is Untimely and Should Denied on that Basis

Courts strictly enforce PSLRA lead plaintiff motion deadlines.   "The intent of the PSLRA was 'to have lead plaintiffs appointed as soon as practicable' and avoid the potential indefinite delay caused by later-filed complaints."  *McIntire v. Mariano*, 2019 WL 78982, at *6 (S.D. Fla. Jan. 2, 2019) (citing *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *4 (N.D. Ill. Aug. 11, 1997)); *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 503 (S.D. Fla. 2003) ("It is widely recognized that the intent of the PSLRA is "to have the 'most adequate lead plaintiffs' appointed as soon as practicable in the litigation") (internal citations omitted); *see also In re Sunbeam Sec. Litig.*, 1998 WL 1990884, at *2 (S.D. Fla. Dec. 4, 1998) (recognizing that the PSLRA intended to have the lead plaintiff  appointed as soon as practicable in the litigation.).

Here, the *Muncy* Action[2], the only action to comply with the PSLRA, was filed by The Rosen Law Firm, P.A. in the United States District Court for the District of New Jersey on February 2, 2021.  That same day a PSLRA notice was issued to the class which announced the lead plaintiff deadline of April 5, 2021.  *See* Dkt. No. 26-2; 15 U.S.C. § 78u-4(a)(3)(A)(i)(II); *Miller*, 2008 WL 2465286, at *5 ("Section 78u–4(a) (3)(i)(II) of the PSLRA provides that 'not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.'").

"Courts have interpreted this and other time limitations in the PSLRA to be a reflection of Congress's intent that the lead plaintiff be appointed as early as possible in the litigation. … As a

---

[2] *Muncy v. Robinhood, LLC, et al.*, case no. 1:21-CV-21307-CMA (S.D. Fla.).

result, ***courts have strictly construed this time limitation and found those motions for appointment as lead plaintiff filed outside of the sixty-day window to generally be time-barred***." *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 141-42 (S.D.N.Y. 2007) (citing cases) (emphasis added); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999) ("The PSLRA is unequivocal and allows for no exceptions.  All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action.  The plain language of the statute precludes consideration of a financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed ***after*** the sixty (60) day window has closed.") (emphasis added); *see also Stone v. Life Partners Holdings, Inc.*, 2011 WL 13237569, at *4 (W.D. Tex. Aug. 12, 2011) (following the lead plaintiff deadline with a timely movant, a later-movant filed a complaint and then moved for appointment as lead plaintiff—the timely movant was appointed as "the Court believes that it may select an untimely movant as lead plaintiff only if no adequate candidate timely applies for lead plaintiff status.")

Despite the April 5, 2021 lead plaintiff deadline, on April 12, 2021, the Group filed a complaint styled as *Quat, et al. v. Robinhood Financial, LLC, et al.*, case no. 1:21-cv-21404-CMA (the "*Quat* Action "), Dkt. No. 1.  Two days later, on April 14, 2021, the Group filed its motion for appointment as lead plaintiff.  *See* Dkt. Nos. 144, 144-1, 144-2, and 144-3.

No explanation is provided for the Group's late filing.  It is implausible that the Group and its counsel were unaware of the April 5, 2021 lead plaintiff deadline.[3]  Throughout the MDL proceedings, issues relating to PSLRA compliance and the April 5, 2021 lead plaintiff deadline

---

[3] The PSLRA early notice was issued on Business Wire on February 2, 2021. Dkt. No. 26-2. Courts routinely find that issuing an early notice on Business Wire satisfies the PSLRA notice provision.  *See e.g.*, *McIlvaine*, 2008 WL 11331999, at *3 (PSLRA notice properly issued on Business Wire); *Pritchard v. Apyx Med. Corp.*, 2019 WL 9093486, at *1 n. 1 (M.D. Fla. July 16, 2019) (same).

were briefed.  *See e.g.*, *IN RE: January 2021 Short Squeeze Trading Litigation*, MDL No. 2989 Dkt. No. 158 at 8.

PSRLA certifications of three members of the Group are dated April 5, 2021.  Then after having the benefit of reviewing Mr. Todd's motion papers, the Group's counsel decided to add three additional shareholders, whose certifications are dated April 9, 2021 and April 12, 2021—in an apparent effort to increase their financial interest.  Allowing the Group, or other movants, to belatedly file complaints and lead plaintiff motions would "'encourage parties seeking lead plaintiff status to manipulate the size of their financial loss by enlarging the class period or adding additional persons to a group in supplemental filings ... [which] would invite additional briefing ... effectively rendering the strict timeliness set forth in the [Reform Act] meaningless." *Miller*, 2008 WL 2465286, at *5  (quoting *Ferrari v. Gisch,* 225 F.R.D. 599, 603–04 (C.D. Cal. 2004)).

The Group's gamesmanship to manipulate the PSLRA lead plaintiff process should not be rewarded.  In *Plaut v. The Goldman Sachs Grp., Inc.*, that court found a lead plaintiff movant inadequate who, like the Group, filed a belated complaint. 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019).  Because the "principal purpose of the PSLRA was to prevent just the kind of gamesmanship in which [the Group] and [their] counsel have engaged here," the court found "it would be inappropriate to select [the Group] as lead plaintiff." *Id.* at *5 (quoting *Gutman v. Sillerman,* 2015 WL 13791788, at *3 (S.D.N.Y. Dec. 8, 2015)); *see also Villare v. ABIOMED, Inc.,* 2020 WL 3497285, at *4 (S.D.N.Y. June 29, 2020) (explaining that lead plaintiff movants may "be encouraged to manipulate the class period so they had the largest financial interest"); *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 434 (S.D. Tex. 2010) (same); *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) (same).

In short, the Group's motion should be denied as untimely.

**B.  Even if the Court Considers the Group's Untimely Motion (it should not), The Group is Inadequate and Atypical**

Even if the Court were to consider the Group's lead plaintiff motion (it should not), the Group's motion should be denied as Mr. Todd has the larger financial interest in the litigation, satisfies the requirements of Rule 23, and should therefore be appointed Lead Plaintiff without further analyses. *Cambridge Ret. Sys.*, 2018 WL 8804814 ("The Court must, therefore, address which of the proposed lead plaintiffs has the 'largest financial interest in the relief sought by the class' and whether that proposed lead plaintiff satisfies the requirements of Rule 23, *i.e.*, whether [his] claims 'are typical of the claims ... of the class' and whether [he] 'will fairly and adequately protect the interests of the class.'" (citing Fed. R. Civ. P. 23(a)); *Cavanaugh*, 306 F.3d at 732 ("The statutory process is sequential: The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical.").

That said some facts bear noting about the Group.

**1.     The Group is an Improper Lawyer-Made Group of Unrelated Investors**

While the PSLRA allows groups to serve as lead plaintiffs, "courts routinely reject lead plaintiff applications filed by groups of investors who are 'simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff,' ..." *Carvelli v. Ocwen Fin. Corp.*, 2017 WL 11068524, at *5 (S.D. Fla. July 14, 2017), *objections overruled,* 2017 WL 3473482 (S.D. Fla. Aug. 14, 2017) (citing *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001)).

Indeed, "[w]here the motion for appointment seeks to appoint more than one lead plaintiff, 'that group must be restricted to a few cohesive parties and the ***movant must bear the burden of***

*demonstrating that the group not only has the largest interest in the outcome of the litigation, but also a pre-litigation relationship based on more than the losing investments at issue in the securities fraud class action*.'"  *Welch v. Meaux*, 2020 WL 4758269, at *6 (W.D. La. Aug. 17, 2020) (citing *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 442 (S.D. Tex. Feb. 15, 2002)) (emphasis added); *Cambridge Ret. Sys.*, 2018 WL 8804814, at *14 ("Allowing unrelated plaintiffs to band together in order to manufacture a larger financial interest ... ensures that the lawyers, who are invariably the matchmakers behind such marriages of convenience, are the true drivers of the litigation.") (quoting *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621-22 (S.D.N.Y. 2015)); *Brustein v. Lampert*, 2005 WL 8154797, at *6 (S.D. Fla. June 16, 2005) (denying a group of unrelated investors because "the aggregation of losses under the present circumstances would not serve the purpose" of the PSLRA "and because an individual movant with significant losses has also sought lead plaintiff status, the Court is unwilling to allow such aggregation here").

Courts require members of a proposed group to make "an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs."  *Varghese v. China Shenghuo Pharm. Holdings, Inc.,* 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008).  Courts evaluate evidence of the following *Varghese* factors:

> (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa.

*Id*.; *Carvelli*, 2017 WL 11068524, at *5 n. 8 (considering *Varghese* factors in evaluating an unrelated group); *Marcus v. J.C. Penney Co.*, 2014 WL 11394911, at *6 (E.D. Tex. Feb. 28, 2014) (same).

Here, the Group has made no evidentiary showing to justify its grouping.  Nor has the Group provided any client-driven reason for their grouping; nor has any information about the Group's members been provided so that the Court and Mr. Todd can evaluate the Group.  Rather, the facts indicate that the Group was constructed by counsel in a misguided attempt to create a "better" lead plaintiff movant.  Three members of the Group's certifications are dated April 5, 2021.  Then after having the benefit of reviewing Mr. Todd's motion and his financial interest, it appears that the Group's counsel decided to add three additional shareholders, whose certifications are dated April 9, 2021 and April 12, 2021.

Additionally, the Group, with six members, is presumptively too large.  Courts that have considered unrelated groups have explained that groups with more than five members are too large and inappropriate. *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 505 (S.D. Fla. 2002) ("'a court generally should only approve a group that is small enough to be capable of effectively managing the litigation and lawyers ... ordinarily this should be no more than three to five persons.'") (quoting *In re Baan Co. Sec. Lit.,* 186 F.R.D. 214, at 216–217 (D.D.C. 1999)); *In re Superior Offshore Int'l, Inc. Sec. Litig.*, 2008 WL 2148745, at *1 (S.D. Tex. May 20, 2008) ("The [sic] qualify as lead plaintiff, an investor's losses should include the aggregate losses of no more than 'three to five persons.'") (quoting *In re Enron Corp. Sec. Litig*., 206 F.R.D. at 442).

Lastly, the Court should not permit the members of the Group to be considered individually as the Group did not request that any of its constituents be appointed as lead plaintiff individually in the event the Court did not appoint the Group.  Therefore, none of the individuals themselves "made a motion" pursuant to the PSLRA and should not be considered further.  *See Abouzied v. Applied Optoelectronics, Inc.*, 2018 WL 539362, at *5 (S.D. Tex. Jan. 22, 2018) (group members did not move in the alternative to be considered individually and "the Court will

not consider the suggestion that it select one member of the group. The Court will consider the motion of the collective group."); *Jakobsen v. Aphria, Inc.,* 2019 WL 1522598 at *4 (S.D.N.Y. Mar. 27, 2019) (court did not consider individual group members as lead plaintiff as there were no separate motions to appoint any member of the group as a lead plaintiff on an individual basis); *Takata v. Riot Blockchain, Inc.*, 2018 WL 5801379 at *5 (D.N.J. Nov. 6, 2018) (declining to break apart a group of lead plaintiff movants because the group belatedly requested such cure "when confronted with [the] argument that a loosely connected group cannot effectively monitor counsel" which did "not assuage the Court's concerns that the attorneys, and not the plaintiffs, have initiated [the] efforts."); *In re Level 3 Commc'ns, Inc.*, 2009 WL 10684924, at *5 (D. Colo. May 4, 2009) (declining to consider individual constituents of a group because neither individual "'made a motion' in response to the notice of the putative class action"); *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273 at *4 (D. Ariz. Apr. 7, 2008) (declining to consider individual constituent of group as lead plaintiff candidate because the group "moved for lead plaintiff as a group and will be evaluated as such"); *In re Stitch Fix, Inc. Sec. Litig.,* 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) (denying a group's motion when group members have not explicitly requested to be considered individually).

**2.      The Group Submitted Defective Sworn PSLRA Certifications; Failed to Assert Losses**

Group members submitted defective sworn PSLRA certifications. The PSLRA requires "[e]ach plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, … that … ***sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint***."  15 U.S.C. § 78u-4(a)(2)(A); 15 U.S.C. § 78u-4(a)(2)(A)(iv) (emphasis added).

Instead of providing all the purchase and sale transactions with date, quantity, and price per share, each member merely listed a company name and number of shares. *See e.g.,* Dkt. No. 144-1 at 5 ("AMC Entertainment    50 shares").  Courts find lead plaintiff movants that fail to file proper PSLRA certifications to be inadequate and/or atypical. *Steamfitters Loc. 449 Pension Fund v. Cent. Eur. Distribution Corp.*, 2012 WL 3638629, at *12–13 (D.N.J. Aug. 22, 2012), *motion for relief from judgment granted sub nom. In re Cent. Eur. Distribution Corp. Sec. Litig.*, 2012 WL 5465799 (D.N.J. Nov. 8, 2012) ("The PSLRA has specific requirements for lead plaintiff certifications, and the Court finds that there is substantial likelihood that the [Group] would be subject to a unique defense regarding invalid or lack of certification because the validity of their purported certification is fairly debatable. … Because the [Group] [is] subject to unique defenses regarding untimely filing and lack of certification, their appointment would not be in the class' best interest[.]"); *Nasin v. Hongli Clean Energy Techs. Corp.*, 2017 WL 5598214, at *3 (D.N.J. Nov. 21, 2017) (deficient initial PSLRA certifications, later amended after the 60-day lead plaintiff deadline, subject movant "to a unique defense that renders them 'incapable of adequately representing the class' and, as a result, they are not the presumptively most adequate lead plaintiff.") (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb)); *Oklahoma L. Enf't Ret. Sys. v. Adeptus Health Inc.*, 2017 WL 3780164, at *3 (E.D. Tex. Aug. 31, 2017) ("compliance with the procedural requirements of the PSLRA is mandatory and should be strictly enforced.") (citing cases).

The fundamental errors in the Group's PSLRA certifications "militate[s] against appointment and render[s] [the Group] inadequate to serve as lead plaintiff under Rule 23's adequacy requirement." *Plaut*, 2019 WL 4512774, at *5 (quoting *Micholle v. Ophthotech Corp*., 2018 WL 1307285, at *8 (S.D.N.Y. Mar. 13, 2018)); *see also Bhojwani v. Pistiolis*, 2007 WL

14

9228588, at *3 (S.D.N.Y. July 31, 2007) (finding "carelessness about detail that undermines the adequacy of [the Group] as a lead plaintiff.").

Additionally, loss charts are universally filed with lead plaintiff motions as that is the way the Court and other lead plaintiff movants can compare financial interests. The failure to do so here, further demonstrates the Group's inadequacy. *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 436 (E.D. Va. 2000) (even where a movant "submitted a conclusory affidavit and a collection of indecipherable financial statements that purported to support the affidavit's conclusion … even assuming Wolverine Trading's evidence of loss was sufficient, its application did not satisfy the statutory requirements of typicality and adequacy[.]") (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)); *see also In re Ribozyme Pharms., Inc. Sec. Litig.*, 192 F.R.D. 656, 659 (D. Colo. 2000) ("courts may only look to the losses sustained by the class members actually being put forward by any particular group to act as lead plaintiffs"); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 410 (S.D.N.Y. 2004) ("supplementation of a movant's losses 'is not contemplated by the PSLRA ... [and] supplementation after the expiration of the sixty (60) day period would not only be inconsistent with the language and purposes of the PSLRA, but would effectively nullify the time limits expressly provided therein.'") (citing *In re Telxon,* 67 F.Supp.2d at 819); *Darwin v. Taylor*, 2012 WL 5250400, at *6 (D. Colo. Oct. 23, 2012) (declined to consider "a placeholder motion, with a speculative loss calculation, subject to further substantiation").

### 3.    The Group Asserts Inappropriate and Inadequate Claims

The Group claims that *holding* the Affected Securities caused some vague implied damages. ("Plaintiffs were injured by the combination of 1) selling shares at a loss on or after 1/28/21 and 2) losing the value of shares still held as a result of Robinhood's manipulative

conduct.").  Dkt. No. 144 at 11.  The Group members assert *no sale* (or purchase) and only provide

each member's holding.  *See* Dkt. No. 144 at 10; *Quat* Action, Dkt. No. 1 ¶¶ 24-28, 71.

However, the Exchange Act applies only to actual purchases and/or sales—not those who

held shares or those who contemplate a purchase or sale.  *See Blue Chip Stamps v. Manor Drug

Stores*, 421 U.S. 723, 754-55, 95 S. Ct. 1917, 1934, 44 L. Ed. 2d 539 (1975) (a private damages

action under Section 10(b) and Rule 10b–5 is confined to actual purchasers or sellers of securities).

The Group's apparent misapprehension of this hornbook law further demonstrates its inadequacy.

### 4.      The Group's Selection of Counsel Demonstrates its Inadequacy

Courts have held that a proposed lead plaintiff's selection of counsel can demonstrate

inadequacy if the lead plaintiff selects a firm that is not experienced in the field of law at issue.

The adequacy requirement is satisfied where: "(1) class counsel is qualified, experienced, and

generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one

another; and (3) the class has sufficient interest in the outcome of the case to ensure vigorous

advocacy."  *Miller*, 2008 WL 2465286 at *6 (citing *Weinberg v. Atlas Air Worldwide Holdings,

Inc.*, 216 F.R.D. 248, 253 (S.D.N.Y.2003)); *In re Quintus Sec. Litig.*, 201 F.R.D. 475, 482 (N.D.

Cal. 2001) ("if a representative plaintiff does not select competent counsel, he cannot meet the

adequacy requirement of FRCP 23 and the PSLRA.") (citing *Baffa v. Donaldson, Lufkin & Jenrette

Sec. Corp.*, 185 F.R.D. 172, 176 (S.D.N.Y. 1999), *aff'd in part, vacated in part,* 222 F.3d 52 (2d

Cir. 2000)).

While the Group's counsel, Bursor & Fisher P.A. ("Bursor") appears to have experience

in other types of class actions, there is not a single securities class action settlement noted in the

Bursor's firm's credentials included with the Group's motion.  *See* Dkt. No. 144-2.

Only one securities class action is mentioned in the Bursor's firm's credentials—*In re Robinhood Order Flow Litigation*, Case No. 4:20-cv-09328 (N.D. Cal.) ("*Robinhood Order Flow Case*"), where on April 12, 2021 (the same day it filed a case here) the firm was appointed co-lead counsel with two other law firms on an unopposed motion.[4]  No other securities class actions are listed where the Bursor firm is either sole-lead or co-lead counsel.

The Bursor firm's involvement in the *Robinhood Order Flow Case* actually weighs against the Group's motion.  The interests of the *Robinhood Order Flow Case* class are antagonistic to the federal securities class here.  Both classes have common Robinhood defendants[5] and may have overlapping class periods.[6]  Therefore, if the Bursor firm is appointed lead counsel in this case, it would be representing two competing classes that are both vying for a limited pool of resources from the same defendants.  *See Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 590–91 (W.D. Tex. 2002) (finding a disqualifying conflict of interest where counsel represented shareholders in multiple class actions against the same defendant because "[w]ith multiple lawsuits, more than a fair chance exist[ed] that the shareholders represented in the various suits, and their interests [might] not always coincide"); *see also, In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D. 552,

---

[4] Interestingly in the *Robinhood Order Flow Case*, the Bursor firm timely filed a lead plaintiff motion on the due date.  *Robinhood Order Flow Case*, case no. 4:20-cv-09328-YGR Dkt. No. 30-4.

[5] Defendants Robinhood Financial LLC and Robinhood Securities, LLC are defendants in both actions. *Muncy* Action, Dkt. No. 1; *Quat* Action, Dkt. No. 1; *Robinhood Order Flow Case*, Dkt. Nos. 1, 7, and 30; *Nabi v. Robinhood Financial, LLC, et al.*, case no. 4:21-cv-00755-YGR (N.D. Cal.), Dkt. No. 1.

[6] *Robinhood Order Flow Case* appears to have no set class period at this point, but the allegations in the Bursor-filed complaint filed January 29, 2021 run through the present—including through the late-January trade restriction period. *Compare Nabi v. Robinhood Financial, LLC, et al.*, case no. 4:21-cv-00755-YGR (N.D. Cal.), Dkt. No. 1 *with In re Robinhood Order Flow* Dkt. No. 7 (filed January 5, 2021); *Muncy* Action, Dkt. 1 at 2 and *Quat* Action, Dkt. No. 1 at 6.

17

557 (S.D. Ohio) ("Counsel cannot represent different classes of plaintiffs with conflicting claims who are seeking recovery from a common pool of assets.").

Additionally, the damages theories in the *Robinhood Order Flow Case* conflict with the damages in the instant case. The *Robinhood Order Flow Case* asserts damages based on Robinhood's failure to obtain the best execution on trades in connection with an undisclosed payment for order flow scheme with vendors, whereas the damages in the instant case are premised on market price declines based on Robinhood's actions to prevent transactions in the Affected Securities. *See Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharmaceutical Indus. Ltd.*, 2021 WL 1217395 at * 9- *10 (E.D. Pa. Mar. 26, 2021) (denying lead plaintiff motion and finding disabling conflict of interest of where counsel would be required to make conflicting damages arguments in a different litigation covering an overlapping time period).

## CONCLUSION

For the foregoing reasons, Mr. Todd's motion should be granted in its entirety and the competing motion should be denied.

Dated: April 26, 2021

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
/s/Laurence M. Rosen
Laurence M. Rosen, Esq., Fla. Bar No. 0182877
Phillip Kim, Esq.
Michael Cohen, Esq.
Erica Stone, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com
Email: mcohen@rosenlegal.com
Email: estone@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 26, 2021, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

<u>/s/Laurence M. Rosen</u>

19