**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-2989-MDL-ALTONAGA/Torres**

In re: JANUARY 2021 SHORT SQUEEZE
TRADING LITIGATION

**This Document Relates to: All Actions Involving the Federal Securities Laws**

**REPLY MEMORANDUM OF LAW OF MOVANT CODY TODD IN
FURTHER SUPPORT OF HIS LEAD PLAINTIFF MOTION**

## TABLE OF CONTENTS

1.    Mr. Todd Has the Largest Financial Interest.......................................................... 1

2.    Mr. Todd is Adequate, Typical and Not Subject to Unique Defenses; Mr. Todd is
Not Required to have Standing to Sue on Every Claim; The Group's Speculation that Mr. Todd
will Abandon the Affected Securities He Did Not Purchase is Wrong ..................................... 2

3.    Proper Notice Was Issued ..................................................................................... 5

4.    The Suggested Collaborative Leadership Structure ............................................... 8

5.    Mr. Todd's Counsel Properly Requested Local Rule 7.1(A)(3) be Waived ......... 9

CONCLUSION ............................................................................................................. 10

TABLE OF AUTHORITIES

**Cases**

*Beck v. Walter Investment Management,* case no. 14-cv-20880-UU (S.D. Fla.)........................... 10

*Bush v. Blink Charging Company, et al.,* case no. 1:20-cv-23527-KMW (S.D. Fla.) ................ 10

*Cambridge Ret. Sys. v. Mednax, Inc.,* 2018 WL 8804814 (S.D. Fla. Dec. 6, 2018), *report and recommendation adopted,* 2018 WL 6978626 (S.D. Fla. Dec. 21, 2018)................................... 2

*Cheney v. Cyberguard Corp.,* 213 F.R.D. 484 (S.D. Fla. 2003).................................................. 6, 7

*City of Riviera Beach General Employees Retirement System v. Royal Caribbean Cruises Ltd., et al.,* case no. 1:20-cv-24111-KMW (S.D. Fla.) ........................................................................ 10

*Clapp and Redfield v. Ally Financial Inc., et al.,* case no. 1:21-cv-21441-CMA (S.D. Fla.)......... 4

*Edward J. Goodman Life Income Tr. v. Jabil Circuit, Inc.,* 2007 WL 170556 (M.D. Fla. Jan. 18, 2007)....................................................................................................................................... 2

*Ehlert v. Singer,* 185 F.R.D. 674 (M.D. Fla. 1999) ...................................................................... 9

*Ferreiro v. Robinhood Financial LLC, et al.,* case no. 1:21-cv-21479-CMA (S.D. Fla.)............. 4

*Fox and Huq v. Ally Financial Inc., et al.,* case no. 1:21-cv-21478-CMA (S.D. Fla.).................. 4

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176 (2d Cir.1990) ............................................................................................................................... 3

*Grand Lodge of Pennsylvania v. Peters,* 560 F. Supp. 2d 1270 (M.D. Fla. 2008)........................ 3

*Graney v. Restaurant Brands International Inc., et al.,* case no. 1:21-cv-20508-KMM (S.D. Fla.) .............................................................................................................................................. 10

*Greenberg v. Bear Stearns & Co.,* 80 F. Supp. 2d 65 (E.D.N.Y. 2000)........................................ 6

*Hevesi v. Citigroup Inc.,* 366 F.3d 70 (2d Cir. 2004) ................................................................... 3

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447 (C.D. Cal. 2002) ......................... 8

*In re HealthSouth Corp. Sec. Litig.*, 261 F.R.D. 616 (N.D. Ala. 2009).......................................... 3

*In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128 (S.D.N.Y. 2007) ............................................ 1

*In re PartsBase.com, Inc. Securities Litigation*, case no. 01-8319 (S.D. Fla.) ............................ 10

*In re Pfizer Inc. Sec. Litig.*, 2005 WL 8153373 (S.D.N.Y. Oct. 21, 2005).................................... 8

*In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304 (S.D.N.Y. 2001) ........................................ 9

*In re Sci.-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315 (N.D. Ga. 2007) .................................. 3

*In re Synovis Life Techs., Inc. Sec. Litig.*, 2005 WL 2063870 (D. Minn. Aug. 25, 2005)............. 7

*In re Telxon Corp. Sec. Litig.,* 67 F.Supp.2d 803 (N.D. Ohio 1999).............................................. 6

*In re Thornburg Mortg., Inc. Sec. Litig.*, 629 F. Supp. 2d 1233 (D.N.M. 2009)........................... 6

*IN RE: January 2021 Short Squeeze Trading Litigation*, MDL No. 2989 ................................. 4, 8

*Ito-Stone v. DBV Techs. S.A.*, 2020 WL 6580776 (D.N.J. Nov. 10, 2020) ................................... 7

*Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036  (N.D. Ill. Aug. 11, 1997) .......... 6, 7

*McIlvaine v. ArthroCare Corp.*, 2008 WL 11331999 (S.D. Fla. July 16, 2008) ........................... 9

*Miller v. Dyadic Int'l, Inc.,* 2008 WL 2465286 (S.D. Fla. Apr. 18, 2008) .................................... 5

*Muncy v. Robinhood Financial, LLC, et al.*, case no. 1:21-CV-21307-CMA (S.D. Fla.)  ......... 4, 6

*Nasin v. Hongli Clean Energy Techs. Corp.*, 2017 WL 5598214  (D.N.J. Nov. 21, 2017)............ 3

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395
     (S.D.N.Y. 2004) .......................................................................................................................... 1

*Piven v. Sykes Enterprises, Inc.*, 137 F. Supp. 2d 1295 (M.D. Fla. 2000).................................. 5, 9

*Quat, et al. v. Robinhood Financial, LLC, et al.*, 1:21-cv-21404-CMA (S.D. Fla.)...................... 6

*Ravens v. Iftikar,* 174 F.R.D. 651 (N.D. Cal. 1997) ...................................................................... 9

**Statutes**

15 U.S.C. § 78u-4(a)(3)(A) .......................................................................................................... 7

15 U.S.C. § 78u-4(a)(3)(B) ................................................................................................ 1, 2, 4, 7

At the outset, the Group's[1] opposition still provides no justification for its untimely motion. On this ground alone the Group's motion should be denied. *See*, Dkt. 254 at 11-12. Mr. Todd is the presumptive lead plaintiff under the PSRLA as he has the largest financial interest and made a preliminary showing of adequacy and typicality. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II); Dkt. Nos. 26 at 9-10, 26-3, and 254 at 6. Because the Group has failed to rebut the presumption in favor of Mr. Todd with the requisite "proof" that Mr. Todd is inadequate or atypical, Mr. Todd's motion should be granted and the Group's motion should be denied. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

In opposition, the Group advances arguments that are all meritless.

### 1.   **Mr. Todd Has the Largest Financial Interest**

The Group asserts that Mr. Todd does not have the largest financial interest (Dkt. No. 253 at 6-7), yet the Group has not presented any transaction data for the Court or Mr. Todd to determine the losses of the entire Group.[2]

In opposition, the Group provides the "loss" for only Mr. Woiser. Dkt. No. 253 at 7-8; 253-2. Preliminarily, the Court should reject this untimely supplementation of the Group's motion given the strict PSLRA deadline. *See, In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 141-42 and 138 (S.D.N.Y. 2007) ("'[T]he supplementation of a movant's losses is not contemplated by the PSLRA ... [and] supplementation after the expiration of the sixty (60) day period would not only be inconsistent with the language and purposes of the PSLRA, but would effectively nullify the time limits expressly provided therein.'") (quoting *Pirelli Armstrong Tire Corp. Retiree Med.*

---

[1] All capitalized terms shall have the same meanings as set forth in Mr. Todd's opposition, Dkt. No. 254.
[2] As explained in Mr. Todd's opening papers, it is well settled that in assessing financial interest the best measurement is approximate loss. Dkt. No. 26 at 8.

1

*Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 410 (S.D.N.Y. 2004)); Dkt. No. 254 at 11-12. The Group was aware that losses are outcome determinative. Indeed, the Group's opening brief explains that "there is no question that [the Group], individually and in the aggregate, have suffered the largest financial loss." Dkt. No. 144 at 10. It is simply too late for the Court to consider Mr. Woiser's alleged losses or any other losses that may be submitted on reply.

Even if the Court considers Mr. Woiser's losses (it should not), he only claims a loss of $1,942.28 on sales made on February 8, 2021[3]—significantly smaller than Mr. Todd's losses of $8,056.70. Dkt. No. 26-4. Thus, Mr. Todd has largest losses and financial interest.

Because Mr. Todd has the largest financial interest and made a *prima facie* showing of adequacy and typicality, he is the presumptive lead plaintiff under the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B); *Edward J. Goodman Life Income Tr. v. Jabil Circuit, Inc.*, 2007 WL 170556, at *3 (M.D. Fla. Jan. 18, 2007). This presumption may only be rebutted by "proof" that Mr. Todd "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Cambridge Ret. Sys. v. Mednax, Inc.*, 2018 WL 8804814, at *2 (S.D. Fla. Dec. 6, 2018), *report and recommendation adopted*, 2018 WL 6978626 (S.D. Fla. Dec. 21, 2018) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).

2. **Mr. Todd is Adequate, Typical and Not Subject to Unique Defenses; Mr. Todd is Not Required to have Standing to Sue on Every Claim; The Group's Speculation that Mr. Todd will Abandon the Affected Securities He Did Not Purchase is Wrong**

---

[3] Mr. Woiser's loss chart is defective. He does not list any specific transaction but merely aggregates transactions to "average price."

In an effort to rebut the presumption in favor of Mr. Todd, the Group variously argues that Mr. Todd is inadequate, atypical and subject to unique defenses because he did not purchase all the Affected Securities and that purchases of the other Affected Securities would not be represented.  Dkt. No. 253 at 7-8.  These arguments are without merit.

As explained in opposition, Mr. Todd is not required to have standing to sue on every claim to be Lead Plaintiff.[4]  Additional named plaintiffs can be added to fill in standing for the other Affected Securities.[5]  *In re HealthSouth Corp. Sec. Litig.*, 261 F.R.D. 616, 648 (N.D. Ala. 2009); *Grand Lodge of Pennsylvania v. Peters*, 560 F. Supp. 2d 1270, 1273 (M.D. Fla. 2008); *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004).  Indeed, the Group appears to implicitly acknowledge this reality, since the members of the Group themselves do not have standing to bring claims on all of the Affected Securities[6].

---

[4] Additionally, to the extent that the Group is arguing that Mr. Todd is subject to unique defenses because he did not purchase all the Affected Securities, this argument is senseless.  For a defense to a disabling "unique defense," it has to be unique to that movant and not common to the class. *In re Sci.-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1327 (N.D. Ga. 2007) ("a defense which is unique to the class representative and which has the potential to become 'the focus of the litigation' may suffice to destroy typicality.") (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir.1990)); *Nasin v. Hongli Clean Energy Techs. Corp.*, 2017 WL 5598214, at *3 (D.N.J. Nov. 21, 2017)).  The individual members of the Group would be subject to the same "unique defense" as the individual members did not individually transact in all of the Affected Securities.  Nor is it reasonable to assume that every class member transacted in all of the Affected Securities.
[5] Rosen Law has been retained by hundreds of investors covering all the Affected Securities, thus, named plaintiffs will be added to ensure all the Affected Securities have plaintiffs that have standing.
[6] The Group only transacted in 6 of the 12 Affected Securities: AMC Entertainment Holdings, Inc. (NYSE: "AMC"), Bed Bath & Beyond Inc. (NASDAQ: "BBBY"), GameStop Corp. (NYSE: "GME"), Naked Brand Group Limited (NASDAQ: "NAKD"), Nokia Corporation (NYSE: "NOK"), Sundial Growers Inc. (NASDAQ: "SNDL").  Dkt. No. 144-1.

Contrary to the Group's speculation (Dkt. No. 253 at 6-8), Mr. Todd has no intention of excluding purchasers of the Affected Securities he did not purchase—given that a consolidated amended complaint consolidating all the federal securities claims alleged in the Group's action and others in this MDL is forthcoming. Thus, the Group's speculative suggestion that Mr. Todd will define the class in the forthcoming consolidated amended complaint to only cover the securities he transacted in is meritless and does not rise to the "proof" required to rebut the presumption in favor of Mr. Todd. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Lastly, the Group contends that the class definition in the *Muncy* Action is "problematic" because it allows for those who purchased shares after January 28, 2021—when Robinhood first restricted purchases in the Affected Securities—to bring claims after the date of the initial drop in valuation. Dkt. No. 253 at 8-9. This argument is without merit. Persons who purchased after January 28, 2021 and sold can be class members because Robinhood's manipulation was ongoing and changing as alleged in complaints filed in this MDL. *E.g., Clapp and Redfield v. Ally Financial Inc., et al.*, No. 1:21-cv-21441-CMA, Dkt. No. 1 ¶ 180 ("In the evening of January 29, 2021, Defendant Robinhood announced it was increasing the number of restricted stocks from 13 to 50."); *Fox and Huq v. Ally Financial Inc., et al.*, No. 1:21-cv-21478-CMA, Dkt. No. 1 ¶ 187 (same); *Ferreiro v. Robinhood Financial LLC, et al.*, No.1:21-cv-21479-CMA, Dkt. No. 1 ¶¶ 7-8 ("On January 29, 2021, rather than lift the restrictions in their entirety Robinhood implemented 'capped restrictions[]' Robinhood allowed the trades of [Affected Securities] but limited the total number of shares that each account would be able to hold. … In the early afternoon on the same day Robinhood again pulled the rug out from under its account holders by further restricting some of the [Affected Securities][.]")

4

Thus, the January 28, 2021 manipulation was not the entire scope of the manipulation. The Group even acknowledges that the January 28, 2021 created an "initial drop in valuation." Dkt. No. 253 at 8. The prices of the Affected Securities continued to fall based on Robinhood Defendants' continuing manipulation. There is no basis to limit the class to the "initial drop in valuation" or otherwise narrow it.[7]

In sum, the Group has failed to rebut the Lead Plaintiff presumption in favor of Mr. Todd. The Group has not submitted any evidence to show that Mr. Todd is inadequate, atypical, or otherwise subject to unique defenses. As such, Mr. Todd should be appointed Lead Plaintiff and his selection of counsel should be approved.

3. **Proper Notice Was Issued**

The Group argues that Laurence Rosen and Phillip Kim of The Rosen Law Firm should not be appointed Lead Counsel because the PSLRA notice was defective. Dkt. No. 253 at 9-11. This argument is without merit.

Rosen Law, the only firm to file a relevant complaint compliant with the PSLRA, issued proper notice in accordance with the PSLRA on February 2, 2021. Asserting otherwise, the Group appears to misunderstand or misstate the notice requirement under the PSLRA.

---

[7] At the Lead Plaintiff stage Courts consider the broader more inclusive class. *See Miller v. Dyadic Int'l, Inc.,* 2008 WL 2465286, at *4 (S.D. Fla. Apr. 18, 2008) ("The Court agrees with the reasoning of the court in *In re Doral,* that the longest, most inclusive class period is appropriate at this stage in the litigation because 'it encompasses more potential class members.' [] Narrowing the class period is more appropriate at a later stage of litigation, with participation from the Defendant.") (quoting *In re Doral Fin. Corp. Sec. Litig.,* 414 F.Supp.2d 398, 402–03 (S.D.N.Y.2006)). That said, even under the Group's narrower class, Mr. Todd still has larger losses.

5

The Group misquotes *Piven v. Sykes Enterprises, Inc.*, in suggesting that the PSLRA notice must inform all members of the class (including future and potential members of amended classes) their right to move for lead plaintiff appointment (within 60 days of the notice).  137 F. Supp. 2d 1295, 1302 (M.D. Fla. 2000).  However, the *Piven* Court held that "the class period is defined as that period in the notice published for the first action filed."  *Id*. at 1303 (citing *In re Telxon Corp. Sec. Litig.,* 67 F.Supp.2d 803, 818 (N.D. Ohio 1999)).  Here, that would mean looking at the *Muncy* Action PSLRA notice (Dkt. No. 26-2).

It is well settled that when a class is later expanded, the PSLRA does not require the publication of a new notice, when crux of the action is the same.  *See e.g., Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *4 (N.D. Ill. Aug. 11, 1997) ("If a later action asserts substantially the same claims, no new notice is required. In this case, [the *Quat* Action] do[es] assert substantially the same claims as the [*Muncy* Action], namely, those based on the Securities Exchange Act of 1934."); *In re Thornburg Mortg., Inc. Sec. Litig.*, 629 F. Supp. 2d 1233, 1241 (D.N.M. 2009) ("Moreover, from the typical investor's perspective, probably the most determinative fact in a notice is the company at the heart of the complaint and the general outline of the alleged misconduct. Here, [Robinhood] remains the company at the center of the litigation, and the claims continue to involve the [trade restrictions].  The original notice thus likely fulfilled its purpose. … Courts 'have widely recognized that the intent of the PSLRA is to have the most adequate lead plaintiffs appointed as soon as practicable in the litigation, and that filing of subsequent actions alleging different class periods [does] not require publication of new notice or start a new 60-day period for the filing of motions to appoint lead plaintiff or lead counsel.'") (quoting *Cheney v. Cyberguard Corp.,* 213 F.R.D. 484, 503 (S.D. Fla. 2003)); *Cheney*, 213 F.R.D. at 503 ("Further, the [Group] ha[s] not provided, nor has this Court located, any cases which hold

a class may not be certified where Plaintiffs did not inform individuals of the entire proposed class period in early PSLRA notices.  On the contrary, relevant case law has held that additional notice is not required where the original complaint is amended to include, in part, an extension of the class period.") (citing *Greenberg v. Bear Stearns & Co.*, 80 F. Supp. 2d 65, 69 (E.D.N.Y. 2000)).

Additionally, later-filed complaints, including amended complaints, do not re-trigger the notice requirement. *Ito-Stone v. DBV Techs. S.A.*, 2020 WL 6580776, at *3 (D.N.J. Nov. 10, 2020) (citing 15 U.S.C. § 78u-4(a)(3)) ("The PSLRA makes no mention of a duty to publish any notice other than the initial one.  Although the amendment of plaintiff class action complaints after the initial pleading is commonplace, the PSLRA does not address and therefore does not appear to contemplate a duty to republish notice.  To the contrary, the statutory scheme seems focused on the expeditious selection of lead plaintiff by setting relatively short deadlines for publishing the initial notice, for filing motions to be named lead plaintiff, and even for the Court to adjudicate competing lead plaintiff motions.") (footnotes omitted).

Here, "[t]he PSLRA's early notice requirement meant that the facts relating to [Robinhood's trading restrictions] were likely to evolve after the initial complaint was filed." *Ito-Stone*, 2020 WL 6580776, at *5 (D.N.J. Nov. 10, 2020) (citing 15 U.S.C. § 78u-4(a)(3)(A)); *see also In re Synovis Life Techs., Inc. Sec. Litig.*, 2005 WL 2063870, at *1 (D. Minn. Aug. 25, 2005) ("Defendants argue this [class expansion] undermines the PSLRA's notice requirements and calls into question Plaintiffs' adequacy to serve as lead Plaintiffs. [] Defendants offer no authority for striking the extension and the weight of the case law suggests such action is unnecessary.") (citing 15 U.S.C. § 78u–4(a)(3)(A)(i)); *Cheney*, 213 F.R.D. 484); *In re Sunbeam Sec. Litig.*, 1998 WL 1990884  at * 2 n. 2 (S.D. Fla. Dec. 4, 1998) ("the Court agrees with the district court in *Lax v. First Merchants Acceptance Corp.* …  that the PSLRA intended to have the 'most adequate lead

plaintiffs' appointed as soon as practicable in the litigation, and that filing of subsequent actions alleging different class periods did not require publication of new notices or start a new 60–day period for the filing of motions to appoint lead plaintiff or lead counsel.'").

Here potential class members and counsel were on notice of the action and the PSLRA lead plaintiff deadline.  By April 5, 2021 at least six (6) actions alleging claims under the Exchange Act were centralized in this MDL.  The lead plaintiff deadline was briefed in the MDL.  *See e.g.*, *IN RE: January 2021 Short Squeeze Trading Litigation*, MDL No. 2989 Dkt. No. 158 at 8.  The Group and its counsel were on notice.  Group member Aaron Fassinger, who claims to have held shares of "Naked Brand Group" which were not included in the PSLRA notice, signed his certification April 5, 2021, the lead plaintiff deadline.  Dkt. No. 144-1 at 2-3.  This is similarly true of Eric Quat, with "Sundial Growers Inc." and "Nokia", and Mr. Woiser with "Nokia".  *Id.* at 4-7.  It is clear that the Group members and their counsel, like everyone else, were on notice of the action and the lead plaintiff deadline.

### 4.  **The Suggested Collaborative Leadership Structure**

The collaborative approach suggested by the Bursor firm was for their firm to be co-lead counsel with Rosen Law.  That proposal was rejected as it would not have benefited the class of investors here given that Rosen Law has the resources and experience to litigate this action on its own.  *See e.g., In re Pfizer Inc. Sec. Litig.*, 2005 WL 8153373, at *4 (S.D.N.Y. Oct. 21, 2005) ("I do not see the need for two law firms. This avoids the danger of unnecessarily duplicative attorney work and, ultimately, a lower recovery for the class."); *Carvelli*, 2017 WL 11068524, at *6 ("At least one court has concluded, '[t]he sheer number of attorneys seeking to represent the [proposed lead plaintiff] suggests that counsel, rather than the [lead plaintiff], would control this litigation,

in contravention of the PSLRA's intent.'") (quoting *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 452 (C.D. Cal. 2002)).

In addition to the typical risks of inefficiency with multiple lead counsel, those concerns are exacerbated by the fact that the firms here are not on equal footing as to securities class action experience.  Moreover, having one voice for the federal securities class to interface with the tranches of Plaintiffs' Counsel in the non-federal securities classes is ideal and provides for streamlined and efficient coordination the class deserves.

Additionally, in the PSLRA context, the Court is guided by the purpose of the PSLRA. "Congress intended that the statute would prevent 'lawyer driven' litigation …." *McIlvaine v. ArthroCare Corp.*, 2008 WL 11331999, at *3 (S.D. Fla. July 16, 2008). "Additionally, 'the most adequate plaintiff should choose lead counsel, rather than lawyers picking the plaintiffs.'" *Piven*, 137 F. Supp. 2d at 1306  (quoting *Ehlert v. Singer,* 185 F.R.D. 674, 678 (M.D. Fla. 1999)).

 The collaborative structure the Group's counsel suggests is "precisely the sort of lawyer-driven, manufactured grouping proscribed by the PSLRA and the courts." *Carvelli*, 2017 WL 11068524, at *6.  If Mr. Todd had joined such a group to move for lead plaintiff, his appointment would have been rightly denied as "courts routinely reject lead plaintiff applications filed by groups of investors who are 'simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as lead plaintiff, which can then select the equally artificial grouping of counsel as lead counsel' ..." *Id.*, 2017 WL 11068524, at *5 (quoting *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001)); Dkt. No. 254 at 14-17.

**5.  Mr. Todd's Counsel Properly Requested Local Rule 7.1(A)(3) be Waived**

The Group argues that "failure to comply with the Local Rules demonstrates the Rosen Law Firm's inexperience with practice and procedures in this District." Dkt. No. 253 at 11-12. This argument is without merit.

First, the notion that Rosen Law lacks experience in practicing in this Court is untrue. Unlike the Bursor firm, Rosen Law has actually prosecuted securities fraud class actions in the Southern District as set forth in Rosen Law's resume. Dkt. No. 26-5 at 11, 20, 29, 33, and 38; *Beck v. Walter Investment Management,* case no. 14-cv-20880-UU (S.D. Fla.) ($24 million settlement); *Sood v. Catalyst Pharmaceutical Partners, Inc.*, case no. 13-CV-23878-UU (S.D. Fla.) ($3.5 million settlement); *In re DS Healthcare Group, Inc. Sec. Litig.*, case no. 16-cv-60661-WPD (S.D. Fla.) ($2.1 million settlement); *In re PartsBase.com, Inc. Sec. Litig.*, case no. 01-8319 (S.D. Fla.) ($1.5 million settlement); *Howard v. Chanticleer Holdings, Inc.*, case no. 9:12-cv-81123-JIC (S.D. Fla.) ($850,000 settlement).

Second, in PSLRA cases Local Rule 7.1(A)(3) requirements are waived because the statue permits any putative class member to seek appointment as lead plaintiff irrespective of whether that class member filed a complaint. 15 U.S.C. § 78u–4(a)(3)(B)(i); *see e.g., Graney v. Restaurant Brands International Inc., et al.*, case no. 1:21-cv-20508-KMM (S.D. Fla.), Dkt. No. 7; *City of Riviera Beach General Employees Retirement System v. Royal Caribbean Cruises Ltd., et al.*, case no. 1:20-cv-24111-KMW (S.D. Fla.), Dkt. No. 11; *Bush v. Blink Charging Company, et al.*, case no. 1:20-cv-23527-KMW (S.D. Fla.), Dkt. No. 23-2. Thus, a lead plaintiff movant will not know the identities of other movants to confer with.

## **CONCLUSION**

For the foregoing reasons, Mr. Todd's motion should be granted in its entirety and the competing motion should be denied.

Dated: May 3, 2021                  Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
/s/Laurence M. Rosen
Laurence M. Rosen, Esq., Fla. Bar No. 0182877
Phillip Kim, Esq.
Michael Cohen, Esq.
Erica Stone, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com
Email: mcohen@rosenlegal.com
Email: estone@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiffs*

11

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 3, 2021, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

<u>/s/Laurence M. Rosen</u>