UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  21-2989-MDL-ALTONAGA/Torres

In re:

**JANUARY 2021 SHORT SQUEEZE
TRADING LITIGATION**
_____/

This Document Relates to:     No. 21-21261,
No. 21-21293, No. 21-21298, No. 21-21307,
No. 21-21310, No. 21-21343, No. 21-21404,
and No. 21-21534

**ORDER**

**THIS CAUSE** came before the Court on Movant, Cody Todd's Motion to: (1) Appoint

Lead Plaintiff; and (2) Approve Selection of Lead Counsel ("Todd's Motion") [ECF No. 26]; and

Plaintiffs, Eric Quat, Aaron Fassinger, Mike Ross, Igor Kravchenko, Michael McFadden and

Tenzin Woiser's Motion to Appoint Lead Plaintiffs and Approve Their Selection of Lead Counsel

("the Group's Motion") [ECF No. 144].  Todd filed an Opposition to the Group's Motion [ECF

No. 254], to which the Group filed a Reply [ECF No. 280].  The Group filed a Response in

Opposition to Todd's Motion [ECF No. 253], to which Todd filed a Reply [ECF No. 281].  The

Court has carefully considered the Motions, the parties' responsive filings, the attached exhibits,

and applicable law.  For the following reasons, both Motions are denied.

## I.      BACKGROUND[1]

This litigation involves allegations against Defendants, Robinhood Financial LLC,

Robinhood Securities LLC, and Robinhood Markets, Inc. (collectively, "Robinhood") for

---

[1] This summary is drawn from the various Complaints in the federal securities actions.  For a full list of
those actions, see footnote 2.

violations of the Securities Exchange Act of 1934.  Robinhood is a brokerage firm that offers self-directed stock trading services to customers via its website and mobile application.  In January 2021, retail investors began purchasing large numbers of shares of certain heavily shorted stocks, which dramatically increased share prices and led to a "short squeeze."  Many retail investors used the Robinhood platform to buy and sell shares of the affected securities.

As a result of increased share prices and the threat of greater losses, short holders began closing their short positions to prevent further loss and purchasing shares in the event the brokers who lent them required the shares to be returned.  These actions further drove up the share prices of the affected securities.  In turn, Robinhood was required to post increasingly high amounts of collateral to cover the transactions being processed through its clearinghouse.

Faced with such high demands for collateral, on January 28, 2021, Robinhood chose to restrict trading on the affected securities on its platform.  Specifically, Robinhood restricted its users from purchasing any more shares of the affected stocks, instead only allowing them to sell or close their positions.  Consequently, the share prices of the affected securities dropped dramatically, and individual retail investors suffered significant losses.

Ten different putative class actions were brought against Robinhood for these alleged violations of the Securities Exchange Act.[2]  These suits have since been consolidated into this

---

[2] These actions are: *Daniels v. Robinhood Financial, LLC, et al.*, No. 21-cv-21261 (filed Jan. 28, 2021); *Days v. Robinhood Markets, Inc., et al.*, No. 21-cv-21310 (filed Jan. 28, 2021); *Diamond v. Robinhood Financial, LLC, et al.*, No. 21-cv-21263 (filed Jan. 29, 2021); *Lagmanson et al. v. Robinhood Markets, Inc., et al.*, No. 21-cv-21298 (filed Jan. 29, 2021); *Gossett et al. v. Robinhood Financial, LLC, et al.*, No. 21-cv-21293 (filed Jan. 29, 2021); *Muncy v. Robinhood Securities, LLC, et al.*, No. 21-cv-21307 (filed Feb. 2, 2021); *Krumenacker v. Robinhood Financial LLC, et al*., No. 21-cv-21343 (filed Feb. 2, 2021); *Kadin v. Robinhood Financial LLC, et al.*, No. 21-cv-21511 (filed Mar. 25, 2021); *Quat et al. v. Robinhood Financial, LLC, et al.*, No. 21-cv-21404 (filed Apr. 12, 2021); and *Best et al. v. Robinhood Financial, LLC, et al*., No. 21-cv-21534 (filed Apr. 21, 2021).

The *Diamond* and *Kadin* actions have since been voluntarily dismissed.  (*See* ECF Nos. 214, 271–72).  There is also one other suit asserting federal securities claims, *see Eisen v. Apex Clearing Corp, et al*., No. 21-cv-21665 (filed Apr. 30, 2021), but it does not state any claims against Robinhood.

multi-district litigation, along with numerous other cases asserting other causes of action.  Of the federal securities actions, the Plaintiff in *Muncy*, represented by the Rosen Law Firm, was the first to publish notice to the class on February 2, 2021, instructing interested class members they had until April 5, 2021 within which to petition the Court to be appointed lead plaintiff.  The instant Motions followed.

## II.    DISCUSSION

Motions for appointment as lead plaintiff are governed by the Securities Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA").  The PSLRA requires that notice be published in the first-filed action informing putative class members of their right to move for appointment as lead plaintiff within 60 days of the notice.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)–(ii).  The Court is then tasked with considering all such motions and selecting a lead plaintiff that the Court "determines to be most capable of adequately representing the interests of class members[.]"  *Id.* § 78u-4(a)(3)(B)(i)–(ii) (alteration added).

## A.    The *Muncy* Notice

"Before a district court may rule on a motion to appoint lead plaintiff, it has an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA, that is, encouraging the most adequate plaintiff, the plaintiff with the largest financial stake in the outcome of the litigation, to come forward and take control of the litigation." *Montesano v. Eros Int'l PLC*, No. 19-14125, No. 19-14445, No. 19-18547, 2020 WL 1873015, at *2 (D.N.J. Apr. 14, 2020) (citations and quotation marks omitted); *see also Kanugonda v. Funko, Inc.*, No. C18-812, 2018 WL 9440603, at *1 (W.D. Wash. June 27, 2018) ("As the first step in the process, proper notice is vital and a court has an independent duty to scrutinize published notice

for compliance with the PSLRA requirements." (alteration adopted; citation and quotation marks omitted)).

The PSLRA requires that, "[n]ot later than 20 days after the date on which the complaint is filed," notice must be published in a national business publication or wire service describing the members of the purported class, the pendency of the action, claims asserted, and class period.  15 U.S.C. § 78u-4(a)(3)(A)(i)(I) (alteration added).  The notice must also advise potential class members they have 60 days from the date the notice is published to "move the court to serve as lead plaintiff of the purported class."  *Id.* § 78u-4(a)(3)(A)(i)(II).

On February 2, 2021 — the same day the *Muncy* action was filed[3] — Plaintiff in that case published a timely notice [ECF No. 26-2] in *Business Wire*, informing putative class members of their right to move to serve as lead plaintiff.  However, the notice failed to include any identifying information about the action, such as the case caption and the court in which the action was pending.  *See Mastrella v. WCI Communities, Inc.*, No. 08-80055, 2008 WL 11331712, at *2 (S.D. Fla. May 28, 2008) ("Courts have held that a published notice [is inadequate] unless it indicates not only that an action is pending, but where it is pending, and its full name and style." (alteration added; citations omitted)); *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1316 (N.D. Ala. 2000) ("Without inclusion of the name or style of the action in the notice, an interested investor who even knew of the district in which the case was filed would have a difficult time searching for the action . . . in order that he, she or it might examine the complaint and determine if the case is one

---

[3] Only the plaintiff in the first-filed action is required to file notice.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(ii). Although the *Muncy* Plaintiff was not the first to file, it appears Plaintiffs in the earlier-filed actions did not publish notice.  Rather, Muncy was the first to publish the required notice.  The Court therefore considers the *Muncy* notice the operative PSLRA notice for the federal securities actions.  *Cf. Gunderson v. Klondex Mines Ltd.*, No. 3:18-cv-00256, No. 3:18-cv-00284, No. 3:18-cv-00288, 2018 WL 6620875, at *2 (D. Nev. Dec. 18, 2018) (evaluating lead plaintiff motions following notice published by a plaintiff who did not file the first action where the first-to-file plaintiffs never posted notice).

in which he, she, or it wished to assert control as lead plaintiff." (alteration added)).  And while the notice apprises class members of their right to move the court for appointment as lead plaintiff, the statement is immediately followed by contact information for the Rosen Law Firm, directing class members to contact it if they want to "discuss [their] rights or interests regarding this class action[.]"  (Notice 2 (alterations added)).[4]

The purpose of the PSLRA is to "empower investors so that they — not their lawyers — exercise primary control over private securities litigation[.]"  *In re Cendant Corp.*, 260 F.3d 183, 197 (3d Cir. 2001) (alteration added; emphasis omitted; quoting S. Rep. No. 104–98, at 4 (1995)). Specifically, the notice requirement is meant to provide enough information to allow interested class members to directly "contact the Court and readily obtain a copy of the complaint . . . and/or file a motion to be appointed as lead [plaintiff] in that case."  *Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, No. 3:20-cv-1815, 2020 WL 6682531, at *2 (M.D. Pa. Nov. 12, 2020) (alterations added; citations and quotation marks omitted).

Without information such as the case name, docket number, and the court where the action is pending, "[a] member of the purported class attempting to locate" the suit "would have no choice but to contact [*Muncy*] plaintiff's counsel and potentially be subjected to attempts by that counsel to recruit the class member" as a lead plaintiff to be represented by that counsel.  *Burke*, 102 F. Supp. 2d at 1316 (alterations added); *see also Janovici v. DVI, Inc.*, No. 03-cv-04795, No. 03-cv-04963, No. 03-cv-05000, No. 03-cv-05111, No. 03-cv-05141, No. 03-cv-05244, No. 03-cv-05336, No. 03-cv-05674, 2003 WL 22849604, at *5 (E.D. Pa. Nov. 25, 2003) (A proper notice "shields against lawyer-driven litigation because such class members are not forced to contact noticing counsel for additional information to aid in their decision of whether to move for lead plaintiff

---

[4] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

status.").  Likewise, class members interested in simply "join[ing] the litigation" but faced with a broken hyperlink are left with no choice but to contact the law firm listed.  (Notice 2 (alteration added)).

Because this critical information is omitted, in essence "the notice serves primarily to funnel potential lead plaintiffs through the law firm."  *Mastrella*, 2008 WL 11331712, at *3 (alteration adopted; citations and quotation marks omitted).  This result is plainly contrary to the purpose of the PSLRA.  *See generally Burke*, 102 F. Supp. 2d at 1303–10, 1314–15 (explaining that the purpose of the PSLRA is to avoid lawyer-driven litigation).

More importantly, absent an adequate notice,[5] the Court cannot confidently say class members had sufficient knowledge or the opportunity to move for appointment as lead plaintiff. *See In re Cavanaugh*, 306 F.3d 726, 738 (9th Cir. 2002) ("The notice requirement [is intended to] broaden the number of plaintiffs who get involved and seek lead plaintiff status by assuring potential plaintiffs that they still have a chance to take control of the case, even though they have lost the 'race to the courthouse.'" (alteration added)).  In turn, the Court cannot be reasonably certain it is appointing the "most adequate plaintiff" to represent and protect class members' interests.  *Darwin v. Taylor*, No. 12-cv-01038, No. 12-cv-01521, 2012 WL 5250400, at *2 (D. Colo. Oct. 23, 2012); *see also In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 43–44 (S.D.N.Y. 1998) (explaining goal of the PSLRA is to ensure "parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate

---

[5] The *Quat* Plaintiffs' publication of notice (*see* Opp'n 11) has no effect on the propriety of the *Muncy* notice or the applicable time period for filing lead plaintiff motions.  The PSLRA expressly requires only one notice.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(ii).  The Group does not argue or cite authority to support any suggestion that a later-filed notice supersedes an earlier notice — or otherwise restarts or extends the lead plaintiff motion deadline — and the Court has found none.  The *Quat* notice is therefore irrelevant to the Court's notice analysis.

in the litigation and exercise control over the selection and actions of plaintiffs['] counsel." (alteration added; citation and quotation marks omitted)).

The Court thus concludes "it cannot, consistent with the PSLRA, proceed to consider the merits" of the lead plaintiff motions. *Mastrella*, 2008 WL 11331712, at *3. The Rosen Law Firm, counsel for the *Muncy* Plaintiff and whom Movant Todd requests be appointed lead counsel, is directed to republish notice addressing the identified deficiencies.[6] The Court will then entertain any motions for lead plaintiff filed within the renewed 60-day application period. *See id.* Movants Todd and the Group may re-file their motions at that time for the Court's consideration.

## B.    The *Quat* Certifications

With the filing of a complaint, the PSLRA also requires a sworn certification, which, among other things, requires plaintiffs to "set[] forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint[.]" 15 U.S.C. § 78u-4(a)(2)(A)(iv) (alterations added). This statutory requirement assists district courts in evaluating competing lead plaintiff motions. *See Burke*, 102 F. Supp. 2d at 1320 (explaining one purpose of the certification requirement is to provide "such information from which the district court can evaluate the adequacy of that plaintiff against competitors" (citation omitted)); *Mastrella*, 2008 WL 11331712, at *3 (explaining same).

Specifically, the certification permits the Court to assess a plaintiff's financial interest. Under the PSLRA, the person(s) or entity with the greatest financial interest enjoys a rebuttable presumption that he, she, or it is the most adequate plaintiff to serve as lead plaintiff. *See Kornfield*

---

[6] Because the contours of this action have changed since the filing of the *Muncy* Complaint, the Rosen Law Firm may also wish to include additional information, such as the action's consolidation into this multidistrict litigation and the expanded list of affected securities. To avoid further challenge to the sufficiency of its notice, the Rosen Law Firm should err on the side of including more information, rather than less.

*v. Opteum Inc.*, No. 07-14278-civ, No. 07-14305-Civ, 2008 WL 11408525, at *3 (S.D. Fla. Sept. 29, 2008) ("[T]he most important factor in determining the lead plaintiff is the amount of financial interest claimed." (alteration added; citations omitted)); *Montesano*, 2020 WL 1873015, at *2 (same).  To determine which proposed lead plaintiff has the largest financial interest, the Court considers (1) the number of shares purchased during the class period, (2) the amount of the investment or net funds expended during the class period, and (3) the estimated losses suffered. *See Miller v. Dyadic Int'l Inc.*, No. 07-80948-civ, 2008 WL 2465286, at *3 (S.D. Fla. Apr. 18, 2008) (citation omitted).

Upon review, the Group's certifications filed with the *Quat* Complaint[7] do not meet the statutory requirement of setting forth all transactions in the relevant stocks during the alleged class period.  *See* 15 U.S.C. § 78u-4(a)(2)(A)(iv).  Instead, the certifications simply state the number of shares the Plaintiffs each held in the affected securities, without reference to any dates purchased or sold, or at what prices.  While the number of shares purchased is undoubtedly a relevant factor, most courts accord the third factor, the estimated losses, the greatest weight.  *See Montesano*, 2020 WL 1873015, at *3; *Kornfield*, 2008 WL 11408525, at *4; *Malriat v. Quantumscape Corp.*, No. 3:21-cv-00058, 2021 WL 1550454, at *3 (N.D. Cal. Apr. 20, 2021).  Simply stating the number of shares each Plaintiff held, untethered to the class period or prices, is useless to the Court in evaluating financial loss.

In addition, because the certifications filed with the Complaint do not set forth any *transactions* during the alleged class period and are noncompliant with the PSLRA's requirements, the Group would be subject to unique defenses and therefore would not be entitled to the presumption of being the most adequate Plaintiffs.  *See, e.g.*, *Nasin v. Hongli Clean Energy Techs.*

---

[7] The certifications are located on the docket sheet for the *Quat* action, No. 21-cv-21404 [ECF Nos. 1-1–1-6].

CASE NO.  21-2989-MDL-ALTONAGA/Torres

*Corp.*, No. 17-3244, 2017 WL 5598214, at *3 (D.N.J. Nov. 21, 2017) (The movants' "deficient certifications will subject it [sic] to a unique defense . . . and, as a result, they are not the presumptively most adequate lead plaintiff." (alteration added; citation omitted)).  As such, in order to be meaningfully considered for appointment as lead plaintiffs, the Group is advised to amend the certifications attached to the Complaint under 15 U.S.C. section 78u-4(a)(2)(A) before re-filing any lead plaintiff motion within the renewed notice period.

### III.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Movant Cody Todd's Motion to: (1) Appoint Lead Plaintiff; and (2) Approve Selection of Lead Counsel **[ECF No. 26]**; and Plaintiffs Eric Quat, Aaron Fassinger, Mike Ross, Igor Kravchenko, Michael McFadden and Tenzin Woiser's Motion to Appoint Lead Plaintiffs and Approve Their Selection of Lead Counsel **[ECF No. 144]** are **DENIED**.

2. The Rosen Law Firm, representing the *Muncy* Plaintiffs and nominated for lead counsel by Movant Cody Todd, must republish notice, consistent with this Order and the requirements of the PSLRA, within **twenty (20) days** of the date of this Order.

**DONE AND ORDERED** in Miami, Florida, this 17th day of May, 2021.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record
       *Pro Se* Plaintiffs