```
 1                 UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF FLORIDA
 2                       MIAMI DIVISION
                   CASE NO. 21-md-02989-CMA
 3

 4   IN RE: JANUARY 2021 SHORT        Miami, Florida
     SQUEEZE TRADING LITIGATION
 5                                    April 19, 2021

 6                                    10:06 a.m. to 11:16 a.m.

 7                                    Courtroom 12-2

 8                                    (Pages 1 to 64)
     _____

 9
                    STATUS CONFERENCE (ZOOM)
10           BEFORE THE HONORABLE CECILIA M. ALTONAGA,
                 UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES:

13    FOR THE PLAINTIFFS:   NATALIA M. SALAS, ESQ.
                            SEAN BURSTYN, ESQ.
14                          JEFFREY KWATINETZ, ESQ.
                            The Ferraro Law Firm
15                          600 Brickell Avenue, Suite 3800
                            Miami, FL  33131-3073
16                          (305) 375-0111
                            nms@ferrarolaw.com

17                          RACHEL W. FURST, ESQ.
                            Grossman Roth Yaffa Cohen, P.A.
18                          2525 Ponce de Leon Boulevard
                            Suite 1150
19                          Coral Gables, FL  33134-6040
                            (305) 442-8666
20                          rwf@grossmanroth.com

21                          WILLIAM M. AUDET, ESQ.
                            Audet & Partners, LLP
22                          711 Van Ness Avenue, Suite 500
                            San Francisco, CA  94102
23                          (800) 965-1461
                            www.audetlaw.com

24

25
```

```
 1    APPEARANCES CONTINUED:

 2      FOR THE PLAINTIFFS:    RON T. WILLEY, ESQ.
                               Anastopoulo Law Firm
 3                             32 Ann Street
                               Charleston, SC  29403
 4                             (843) 800-0000
                               roy@akimlawfirm.com
 5
                               JOSEPH SAVERI, ESQ.
 6                             Joseph Saveri Law Firm
                               601 California Street, Suite 1000
 7                             San Francisco, CA  94108
                               (415) 500-6800
 8                             contact@saverilawfirm.com

 9                             PHILLIP KIM, ESQ.
                               The Rosen Law Firm
10                             275 Madison Avenue, 40th Floor
                               New York, NY  10016
11                             (212) 686-1060
                               pkim@rosenlegal.com
12
                               SARAH N. WESTCOT, ESQ.
13                             Bursor & Fisher, P.A.
                               701 Brickell Avenue, Suite 1420
14                             Miami, FL  33131
                               (305) 330-5512
15                             swestcot@bursor.com

16                             JEFFREY A. KLAFTER, ESQ.
                               Klafter Lesser, LLP
17                             2 International Drive, Suite 350
                               Rye Brook, NY  10573
18                             (914) 934-9200

19

20      FOR THE DEFENDANTS:    KEVIN ORSINI, ESQ.
                               Cravath, Swaine & Moore, LLP
21                             Worldwide Plaza
                               825 Eighth Avenue
22                             New York, NY  10019-7475
                               (212) 474-1596
23                             korsini@cravath.com

24

25
```

APPEARANCES CONTINUED:


FOR THE DEFENDANTS:        JASON MENDRO, ESQ.
                          Gibson Dunn
                          1050 Connecticut Avenue, Northwest
                          Washington, D.C.  20036-5306
                          (202) 887-3726
                          jmendro@gibsondunn.com


REPORTED BY:               STEPHANIE A. McCARN, RPR
                          Official Court Reporter
                          400 North Miami Avenue
                          Twelfth Floor
                          Miami, Florida 33128
                          (305) 523-5518
                          Stephanie_McCarn@flsd.uscourts.gov

<u>**I N D E X**</u>

<u>**WITNESSES**</u>

<u>**WITNESSES FOR THE PLAINTIFFS:**</u>                              <u>**Page**</u>

<u>**WITNESSES FOR THE PLAINTIFFS:**</u>                              <u>**Page**</u>

<u>**EXHIBITS IN EVIDENCE**</u>                    <u>**MARKED**</u>     <u>**ADMITTED**</u>

<u>**MISCELLANEOUS**</u>

**Proceedings**........................................   <u>**Page**</u>
                                                        **5**
**Court Reporter's Certificate**......................   **54**

1          (The following proceedings were held at 10:06 a.m.)

2              THE COURT:  Good morning.

3          I know we have a large gathering, virtual gathering

4     this morning.  I welcome everyone to the first hearing in our

5     multidistrict litigation.  We have all of your names that

6     appear, and so I'm not going to ask each of you to state your

7     appearances.  When you do speak, please restate your name and I

8     think Mike already asked that everyone remain on mute unless

9     you are speaking.

10         Please remember this cannot be recorded.  At the end

11    of this morning's hearing, Mike will generate for us a list of

12    all of those who attended, so I don't need to take your formal

13    appearances at this time.

14         I've received a joint proposed agenda.  I thank the

15    attorneys for working on that as requested in my pretrial

16    order.  And so why don't we begin with this list of issues.

17    We'll take it one by one, and we'll start with Category 1, the

18    grouping of related cases and issues.

19             MS. SALAS:  Good morning, Judge Altonaga.  May it

20    please the Court, my name is Natalia Salas of the Ferraro Law

21    Firm.  Good morning.

22             THE COURT:  Good morning.

23             MS. SALAS:  And along with my cocounsel, Sean Burstyn

24    and Jeff Kwatinetz, I represent the Juncadella Plaintiffs, who

25    filed the case before Your Honor and advocated for transfer to

1   this district before the JPML.

2          If I may proceed, I will give a brief road map for the

3   Court before turning it over to Ms. Furst.

4          THE COURT:  All right.

5          MS. SALAS:  We have been engaging over the last

6   several weeks in numerous calls.  As you can see from the

7   number of attendees here, we have hundreds of attorneys who

8   have participated in calls, both on a Plaintiffs' side and with

9   Defense counsel to come before Your Honor prepared to discuss

10  these items on the joint agenda filed last week.

11         We have substantial agreement, and we've seen a great

12  deal of professionalism and cooperation on both sides on most

13  of the issues that other attorneys will speak to substantively

14  today.

15         We do have two camps with slightly different views on

16  Topic 2 of the agenda relating specifically to the procedure

17  for organization of counsel, which my colleague, Sean Burstyn,

18  will speak to later on in this hearing.

19         We specifically advocated for transfer to this

20  district before Your Honor both because of its efficiency and

21  because of Your Honor's experience in overseeing MDLs in large

22  coordinated proceedings.

23         So our proposal is to follow the Farm-Raised Salmon

24  Litigation procedure for appointment of counsel.  We believe

25  that that is going to cause the least amount of delay and also

1      give the Court a meaningful choice to a transparent process.

2              As Your Honor knows, the sooner we can have a

3      leadership structure in place, the sooner the case can proceed

4      on the merits, and that is ultimately what is going to benefit

5      the class.  And in that order, as Your Honor well knows, the

6      parties had one week within which to reach an agreement.

7              And I'm reading from that order, and it's at Docket

8      Entry 63 in the Farm-Raised Salmon case, if the parties fail to

9      reach an agreement on that same day, go through an application

10     process via one attorney.

11             In this case, we've had discussion on the Plaintiffs'

12     side, and we propose that Rachel Furst, of Grossman Roth, be

13     appointed as liaison counsel, either on an interim basis or

14     permanently, to facilitate this process.  I have a great deal

15     personally of respect for Ms. Furst having clerked in this

16     court alongside Ms. Furst over ten years ago and having worked

17     directly with her law firm, Stuart Grossman, Abby Gilbert and

18     others at the MDL Court in the Overdraft Bank Litigation

19     matters.

20             I do not believe that you will hear disagreement over

21     Ms. Furst's qualifications to serve in this role, and she has

22     expressed a willingness to do so either on an interim basis to

23     facilitate the process or permanently.

24             With that I'll turn it over to Ms. Furst, who is going

25     to go ahead and introduce some of the California lawyers,

1    including Mr. Audet and his former partner, Mr. Saveri, after

2    which my colleague, Sean Burstyn, will speak on an important

3    issue of diversity at the leadership level as well as to

4    address any substantive points on the issue of the procedure

5    for grouping of counsel.

6            Thank you.

7            THE COURT:  Thank you, Ms. Salas.

8            Ms. Furst.

9            MS. FURST:  Good morning, Your Honor.  Rachel Furst of

10   Grossman Roth Yaffa Cohen here in Coral Gables.

11           Thank you, Natalia, for that introduction.

12           So I propose that we jump into the agenda.  As

13   Your Honor has noted, and I wanted to -- and I filed the joint

14   agenda after conference with Defense counsel, along with

15   Natalia Salas, and last night filed a listing of cases that are

16   pending and centralized before Your Honor because I thought it

17   would assist the Court in -- in understanding the cases.  And

18   in the discussion this morning, and in particular as related to

19   Topic 1, which is the grouping of related cases and issues, the

20   cases do fall naturally, we believe, on the Plaintiffs' side

21   into tranches by claims and Defendants.

22           And I think that -- again, that's Topic 1, and to

23   address that, I want to introduce my colleague, William Audet

24   of Audet & Partners, in San Francisco, for whom it is very

25   early in the morning, but who is prepared, at least on behalf

```
 1    of the Plaintiffs, who are generally in agreement on a tranche
 2    structure to address the division of those cases and those
 3    tranches.  So if I could turn it over to Bill, he's here.
 4              THE COURT:  Thank you.
 5              Mr. Audet.
 6              MR. AUDET:  Good morning, Your Honor.
 7              THE COURT:  Good morning.
 8              MR. AUDET:  Yes, thank you.  Just wanted to make sure
 9    I had a cue to speak.
10              Again, William Audet for Audet & Partners.
11              We have had I think general agreement amongst the
12    Plaintiffs, a good group of lawyers by the way, about the
13    potential for proceeding in this case with two, I suggest three
14    tranches.  Now, I'm excluding from this discussion the
15    securities, the federal-based securities claims.  Those are on,
16    as Your Honor I'm sure is aware, a different track because of
17    the regulations and statutes provided under the PSLRA.  So the
18    lawyers for the security Plaintiffs that I'm sure are on this
19    call, the Zoom call, will speak to that.  So I'm excluding
20    that.
21              The three tranches generally has the antitrust case,
22    and there's a few of them, consolidated into one complaint.
23    Then I'll call it the Robinhood, Citadel and affiliated
24    Defendants as another tranche.
25              And the third tranche is, and I'm labeling it very
```

1    liberally, a broker-dealer hedge fund tranche.  And I've been

2    sort of an advocate for tranches because I see it naturally as

3    a way to deal honestly with a motion to dismiss.  The concern I

4    have is one complaint for all of the nonmonopoly, nonsecurities

5    cases would be a 200-page endeavor that would be difficult to

6    deal with on a motion to dismiss.  I'm sure Your Honor could

7    deal with it, but I think from a Plaintiff's standpoint.

8           Plus, I also see the need for a little bit of separate

9    counsel for each of those tranches because everybody within

10   that tranche has to make a decision regarding the claims and

11   regarding who that should be included.

12          The plan is, of course, to not have any duplication of

13   effort, not have any duplication of discovery, this will be all

14   under one umbrella.  So we're not going to be serving the

15   Defendants, you know, one tranche serves them with this and the

16   like.  In a couple of cases where we've had tranches like this,

17   we generally send out a larger document request, and then we

18   have what's called supplemental that are specific to say a

19   cause of action or a Defendant.  And this will remove any

20   concern the Defendants may have, Your Honor may have for

21   duplication of effort.  There won't be multiple motions to

22   compel on the same issue.

23          And so we've sort of broken it down that way.  All of

24   these events arise out of basically activities prior to and

25   after January of 2021, and the impact it's had on a lot of

1    securities holders and others utilizing generally the platform

2    such as Robinhood.

3          So anyways, I think any of the issues that can arise

4    or will arise and even more complicated cases that I've been

5    in, we deal with it in a case management order.  And for the

6    most part, my experience has been, Your Honor, that we worked

7    that out with the Defendants without any difficulty.

8          So that's I guess from the Plaintiffs' standpoint,

9    other Plaintiffs may want to speak of course, and we of course

10   want to hear from Defendants.  We didn't go into too much

11   detail during our meet and confer process on the tranches.  We

12   did mention it to them, and they of course said, We'll get back

13   to you.

14         So if Your Honor has any questions for me, I'm happy

15   to address it.

16         THE COURT:  So, Mr. Audet, you mentioned the three

17   tranches.  You also -- clarify for me, if you would, did you

18   also envision having separate lead Plaintiff's counsel for each

19   of those?

20         MR. AUDET:  Your Honor, and it's in the next section,

21   but I'll -- the dream I have is that we have co-chairs, not the

22   co-chairs of each of the tranche.  The real idea I have,

23   Your Honor, that I've been pushing, it's my own personal view

24   that others have agreed with is we'll make -- we'll have a

25   senior experienced MDL class action lawyer with someone a

```
 1    little less experienced that maybe would not get a chance to be
 2    on what I'll call a chairmanship position over a tranche.  So
 3    yes, I envision each tranche has its own, at a minimum, one
 4    lead, maybe two co-chairs.
 5              THE COURT:  All right.  Did anyone else -- thank you.
 6    Did anyone want to speak to this proposal that Mr. Audet is
 7    putting forward?
 8              MR. WILLEY:  Your Honor, Roy Willey, I represent the
 9    Plaintiffs in the Moody action, which is pending before you,
10    and I just want to say, having been a part of similar
11    situations in courts and in this court as being the co-lead in
12    a case pending before Judge Singhal, Mr. Audet has done a
13    fantastic job at incorporating the younger lawyers in this
14    process.  We've had a real say-so so far, and it's been a very
15    collaborative effort.
16              And I think that everybody is in agreement in general
17    with the tranches.  There's been some disagreement about how to
18    label those but, of course, those are issues, you know, for
19    another day when we're working on consolidated complaints.  But
20    I believe that the tranche system will work well, and I believe
21    that there will continue to be collaboration among the
22    tranches, which, of course, will be to the benefit of the
23    classes.
24              THE COURT:  Thank you, Mr. Willey.
25              Anyone else want to speak to that?
```

```
 1              MR. BURSTYN:  Your Honor, this is Sean Burstyn of the
 2    Burstyn Law firm.
 3              THE COURT:  Yes, Mr. Burstyn.
 4              MR. BURSTYN:  I was prepared to address that I think
 5    after Mr. Audet completed his presentation of lead counsel
 6    process, so I'm not sure if Mr. Audet is finished, but I do
 7    have some comments on that once Mr. Audet wraps up his portion.
 8              MR. AUDET:  Yeah, Your Honor, the plan was when we get
 9    to organization of counsel, I have a little more to add, and
10    then I'm -- you're not going to hear from me, hopefully, unless
11    you have questions.  I don't want to hog this conference, but I
12    thought it would be the opportunity for the Defendants to
13    speak.  We'll get to organization as the next agenda, and
14    then -- Sean and I have had some great talks about this.  So,
15    and hopefully I can call him Sean, but we're going to -- he's
16    going to have his opportunity at the end of kind of my
17    introduction on that issue, if that's okay with Your Honor.
18              THE COURT:  Very well.
19              MR. AUDET:  Okay.
20              THE COURT:  All right.
21              MR. ORSINI:  Good morning, Your Honor.  Kevin Orsini
22    from Cravath, Swaine & Moore, on behalf of the Robinhood
23    Defendants.  If none of the other Plaintiffs --
24              THE COURT:  Good morning, Mr. Orsini.
25              MR. ORSINI:  Good morning.
```

1          I guess I can chime in now if the Plaintiffs are done

2    speaking on this issue.  So as Your Honor may be aware, we have

3    approximately 55 cases that have been swept up into the MDL so

4    far.  My clients, Robinhood, are in the overwhelming majority

5    of those cases.  In fact, the majority of those cases involve

6    claims only against my client.  So on these issues of

7    tranching, as well as organization of counsel, we, of course,

8    have two guiding principles, which I think will match the

9    Court's guiding principles, which are efficiency to make sure

10   that we have identified and discrete groups of lawyers leading

11   each piece of this so that we can engage in meaningful

12   meet-and-confers.

13         And I echo what's been said so far, by the way,

14   Your Honor, which is there has been tremendous cooperation

15   and -- and communication across both sides even given the

16   number of Plaintiffs' lawyers we have, we had about 125 people

17   on a meet-and-confer last week, but we were able to put

18   together a joint agenda, which I think is a good sign for this

19   case going forward.

20         So efficiency is number one.  Number two is to make

21   sure that we as Defendants, both Robinhood and the other

22   Defendants, have an adequate opportunity to address,

23   particularly at the motion to dismiss stage, the discrete

24   issues that are presented by these cases and make sure that we

25   can do so in a way that both minimizes the burden on the Court

 1    but makes sure that the issues are clearly identified and

 2    joined.

 3              So I don't know that there is actually much

 4    disagreement, at least on the Robinhood side, with what's been

 5    laid out with the concept of tranches, whether that means one

 6    complaint or four, I don't think we really have much of an

 7    opinion on, we leave that to the Plaintiffs' groups.  It is

 8    complicated here by the existence of overlapping classes.  So

 9    we really don't have individual claims here, these are class

10    actions.  And so I could foresee a scenario where the different

11    tranches are actually asserting claims on behalf of the same or

12    overlapping classes, which introduces another level of

13    complexity.

14              But on the sort of buckets, I've been thinking of the

15    term buckets of claims we have here, I agree there's a bucket

16    that are the federal securities claims.  I agree that there's a

17    bucket that constitute the antitrust claims.  The way we've

18    been thinking about it, Your Honor, is that a third bucket

19    consists of all of the various common law and contract claims,

20    along with consumer protection claims that have been asserted

21    primarily against Robinhood.  I believe Citadel may be

22    mentioned in a few of those claims as well.  And then the final

23    bucket, in our view, would be there are five or six complaints

24    against other broker-dealers, TD and few others that are

25    specific to those Defendants.

1          And so our view is certainly at the motion to dismiss

2    stage, we ought to be thinking about those four buckets of

3    issues discretely.   I think a schedule that proceeds

4    simultaneously on all of those makes sense for efficiencies if

5    we do get past the motion to dismiss.

6          But that's sort of how we're thinking of buckets, and

7    I heard Mr. Audet say securities and antitrust, so at least two

8    out of four it sounds like we're on the same page.

9          What wasn't clear to me, Your Honor, was the fourth

10   bucket, which was labeled by him, I guess it was his third one

11   he set securities apart as broker-dealer.   If by that Mr. Audet

12   was referring to those five or so claims that don't involve my

13   client Robinhood, then it actually sounds like we have a pretty

14   similar, at least from Robinhood's perspective, construction of

15   what the buckets of issues are with what the Plaintiffs have

16   described.

17          THE COURT:   Mr. Audet, did you mean the five or six

18   claims against other broker-dealers or no?

19          MR. AUDET:   Yes, Your Honor.   Essentially, I think

20   we're closer in agreement than I even thought the other day,

21   so -- in terms of that.   But again, I don't want to tie myself

22   down or the Plaintiffs down too much because that will be left

23   to the chairpeople.

24          But yes, that's essentially the way we've been looking

25   at it, bar some additional facts I'm missing.   But I think with

all the Plaintiffs' lawyers I've talked to, there may have

been, oh, let's merge the two, the last two I'm talking about.

But essentially, Kevin's comment, if I may call him Kevin,

comment is correct and consistent with what we've been talking

about internally within Plaintiffs' counsel.

THE COURT:  Mr. Orsini, did that conclude your --

these remarks, these initial remarks?

MR. ORSINI:  On this issue, it does, Your Honor.  I

guess the only thing I'd add is, is I noted as we are -- as we

think about these buckets, I really think it's a matter of how

we can separate out the claims for the motion to dismiss

purposes.  We'll talk more I'm sure about, you know, subsequent

stages if we get to subsequent stages.  Respectfully, we don't

think we will.  But obviously if we did get past motions to

dismiss, then we'd want to make sure that the creation of

buckets or issue groups doesn't lead to inefficiencies in terms

of discovery and the other -- you know, the other things that

may proceed.  But I know the Court has that same view based on

reading the Court's orders in prior MDLs and complex cases.

So with that I'll -- I'll conclude my remarks on this

topic, Your Honor.

THE COURT:  Thank you.

Mr. Audet.

MR. AUDET:  I'm just going to say, I would say after

we get done with motions to dismiss, not if.  So that's my only

```
 1    comment, disagreeing with Defense counsel.  That's it.

 2            THE COURT:  So what is your proposal, Mr. Audet, in

 3    terms of timing for these -- these groupings?

 4            MR. AUDET:  Oh, in terms of -- of filing the amended

 5    consolidated complaints in the buckets I'll call them,

 6    Your Honor, instead of tranches, although I do believe there's

 7    an order I saw that you referenced tranches, so I think I

 8    picked that up, but I could be wrong.  Let's call them buckets

 9    or tranches.

10            THE COURT:  This takes us to item -- this takes us to

11    Item 3 on the agenda, the amendment of the pleadings and

12    consolidated claims.

13            MR. SAVERI:  Your Honor, this is Joseph Saveri.  I --

14    I was nominated to speak briefly on this.

15            I think our thinking, Your Honor, is that after the

16    leadership is established, something like 45 or 60 days, I

17    think you -- it's -- given what we've just been talking about,

18    there is some complexity here, and I think we want to proceed

19    with some care.

20            I think Mr. Orsini has identified one of the issues,

21    which -- well, two of them.  One is how we organize, I guess,

22    the claims to present them in an orderly fashion to you for

23    resolution on the Rule 12 motions, which we know are coming.

24    Part of it also is sorting through how -- these are all class

25    actions and how -- how to kind of organize these consistent
```

1    with Rule 23.  So if you put that together, I think we're

2    thinking 45 to 60 days after leadership is appointed is a -- is

3    a reasonable interval, and you know, we could have a -- I've

4    worked -- we've worked with Mr. Orsini's office and a lot of

5    the lawyers on the Defense side in the past, and I'm sure we

6    can organize something reasonable in terms of response dates.

7        MR. ORSINI:  Your Honor, this is Kevin Orsini again

8    from Cravath for Robinhood Defendants.

9        THE COURT:  Yes.

10       MR. ORSINI:  I think the proposal Mr. Saveri makes, at

11   least from our perspective, is reasonable, 45 to 60 days or so

12   after the leadership is sorted out.  I also think the most

13   efficient thing to do at that point would probably be once the

14   Defendants have the new pleadings, which in our view ought to

15   be superseding pleadings so that these are the pleadings that

16   are governing, and any motions and decisions as to those are

17   final and binding, that the Defendants confer with the

18   leadership that the Court appoints and report back to the Court

19   in seven days, ten days after we get the pleadings with a

20   proposed plan for responsive dates, how we break out the briefs

21   as between, you know, the various Defendants and the different

22   issues to try and come to something that's manageable for the

23   Court rather than try to do it in a vacuum now.

24       MR. SAVERI:  Your Honor, Joseph Saveri again.  That

25   what Mr. Orsini suggests, I think is -- is workable too.  It's

```
 1    really just a question of whether we want to put the response
 2    dates in place right now, or to give us a little bit of an
 3    interval once the Defendants see them to see what we have and
 4    to proceed then.
 5            I'm -- I'm really, from a Plaintiff's perspective,
 6    agnostic.  I'm sure we're going to work out something
 7    reasonable with the other side.
 8            THE COURT:  Both of your remarks, yours and -- and
 9    Mr. Orsini's, assume that this 45 to 60 day time period after
10    leadership is appointed.  So I'd like to get a sense of this --
11    this precondition, this appointment of leadership and how you
12    all envision that taking place and in what timetable.
13            MR. SAVERI:  Your Honor, it's -- so -- Joseph Saveri
14    again.
15            We've obviously spent a fair amount of time on the
16    case already, so we have some ideas.  I think our perspective
17    is that who's ever going to be in charge of the case has to be,
18    you know, have a lot to do -- be in charge of this decision.
19            So I would imagine, Your Honor, that if we -- I'm
20    hoping we can do this by consensus and submit it to the Court,
21    and the Court will approve it or review it.  Once that's in
22    place, and I don't know how long that's going to take, my
23    impression is that that decision can be reached pretty quickly.
24    I think we are happy to have a hearing on it, but we would also
25    just do it on the papers.  And assuming that that happens
```

1    relatively quickly, we would proceed to this next -- this next

2    phase.  So I really don't know -- excuse me, Your Honor, I'll

3    just finish, and then I'll be quiet.

4          The -- I don't know how long the -- the leadership

5    process will really take because I think we're prepared to

6    submit very quickly, and then it's -- it's framed for decision

7    for Your Honor.

8          THE COURT:  I think that takes us back to Item 2 on

9    the agenda, organization --

10          MR. SAVERI:  I think that's fair.  Excuse me,

11    Your Honor.

12          MR. AUDET:  Your Honor, this is Bill Audet.  I -- I

13    drew the short straw on this.  And there's been -- Mr. Saveri,

14    a good friend of mine by the way, we did -- we were at Lieff

15    Cabraser together years ago, many years ago.

16          And so I'll skip sort of the introduction and

17    basically say that this has been really a great case in terms

18    of the quality of the lawyering.  Everybody brings to the table

19    here, and I know you hear this a lot, but we do have a lot of

20    good young, young energy I'll say, that I think is going to

21    help the case overall.  So what I would suggest because we all

22    seem to agree essentially on a procedure, although I know

23    Sean -- Sean and Ms. Salas has a little different view, which

24    they will express, looking at various orders of Your Honor and

25    talking to other people and Rachel, who's my cocounsel on the

```
 1    case, we are going to suggest something along the lines of the
 2    Salmon Antitrust process.  I would like to shorten it.  I think
 3    we can have a consensus by Friday.  And if not a consensus, I
 4    was just going to suggest we'll give the applications early
 5    morning Monday or by 11:00.  So it's done by Friday,
 6    essentially, one way or the other, or Monday if it's
 7    applications.
 8            And they would go through our proposed and agreed upon
 9    interim counsel like it was done, I believe, in Salmon
10    within -- they were -- they were organized by the law firm for
11    you to easily read, and I am suggesting, and a lot of the
12    Plaintiffs' lawyers agree, that we do that, and we try to reach
13    a consensus.  The issue is, is the consensus a hundred percent
14    of the people or less than a hundred percent.
15            I always prefer the concept of wiggle room in case one
16    or two firms don't like where they are in the case.  But I -- I
17    really believe we do have general agreement about the quality
18    of lawyering and the regions and the diversity that's needed
19    for this case.  It's been something I really, hopefully, have
20    some impact on in terms of having a real diverse intrafirm
21    mentoring process, even if the co-chairs are different firms.
22            So that's my two cents.  I think maybe Your Honor has
23    a question.
24            THE COURT:  I presently have two motions pending on
25    this issue.  What is --
```

```
 1          MR. AUDET:  I'm sorry, Your Honor.  I hope I didn't
 2   interrupt.
 3          THE COURT:  Go ahead.
 4          MR. AUDET:  Those are the securities cases,
 5   Your Honor, that have -- they're that separate track we're not
 6   touching.
 7          THE COURT:  Right.
 8          MR. AUDET:  So the lawyers, I believe Phillip is --
 9          MR. KIM:  That's right.  Your Honor, Phillip Kim for
10   Securities Plaintiffs.
11          I think there's consensus among the Plaintiffs' group.
12   It's unanimous that the leadership process with respect to the
13   federal securities claims should be on a separate track, but
14   you know timed the same way as the track that Mr. Audet and
15   other Plaintiffs have suggested.  And given the leadership is
16   controlled by the PSRA, and it's pretty mechanical and
17   statutory, the deadline to file those motions have passed.  I
18   know there -- I filed a motion, another firm filed a motion,
19   and what we would propose is that either nonoppositions to
20   those motions be filed on Friday assuming there could be some
21   consensus.  And if not, which is different from the Salmon
22   case, that oppositions be filed on Monday, and a week
23   thereafter replies filed on those motions.
24          And I understand in Salmon, there wasn't sort of a
25   reply period, but given the PSRA and sort of the lead-plaintiff
```

1    presumption and allowing other movants to try to rebut that

2    presumption, I think an opposition and a reply are necessary.

3    And I think once that's accomplished, at least in the

4    security -- the federal securities end, you know, we would also

5    be, you know, supportive of the 45 to 60 days for us to file

6    the federal consolidated securities complaint as well.

7             So unless the Court has any questions, I'll mute

8    myself.

9             THE COURT:  Thank you, Mr. Kim.

10            MS. FURST:  And, Your Honor, this is Rachel Furst of

11   Grossman Roth.  I was just going to add that, you know, I have

12   been nominated by this group of Plaintiffs' counsel.  We've

13   been conferring among to serve as an interim liaison counsel

14   for the purpose of accepting applications, if it comes to that,

15   on April 26th.  And I would be honored, I'm happy to do so in

16   line with the Court's ruling -- in line with the Court's

17   directives in the Salmon Antitrust Litigation, which was Docket

18   Entry 63, in which Ms. Salas referenced.

19            So if the Court is amenable to that procedure and to

20   my appointment for this purpose, again, I would be happy to --

21   to coordinate the filing of the applications and the acceptance

22   of those applications on Monday.

23            I would just ask if you're going to set a deadline

24   that it be end of the day because there is a -- just because we

25   have West Coast counsel working on the case.

```
 1            THE COURT:  Any opposition to Ms. Furst's proposal?
 2            MR. BURSTYN:  None with respect to that point.  But I
 3   think if Mr. Audet's completed his presentation of his
 4   leadership process proposal, I can speak as to ours.
 5            THE COURT:  All right.
 6            MR. AUDET:  I think I've spoken enough for the
 7   Plaintiffs' counsel unless someone else wants to before Sean.
 8   But, yeah, I think it's more than fair that Sean -- I'll be
 9   quiet at this point.
10            MR. BURSTYN:  Okay.  Good morning, Your Honor.  I'm
11   Sean Burstyn of the Burstyn Law Firm, may it please the Court.
12            As an initial matter before touching leadership, I'm
13   just pleased to share on behalf of the group that whichever
14   leadership appointment process is ordered by the Court, the
15   Plaintiffs have agreed to have me, in our spirit of
16   camaraderie, a fairly young first generation American of
17   Afro-Cuban descent share with the Court our collective
18   commitment to proposing a slate that is young, diverse and
19   representative of the class.
20            We believe a leadership structure with -- on
21   leadership and committees that includes newer and experienced
22   attorneys can reflect the generally young and diverse makeup of
23   the class without compromising the quality of the
24   representation or increasing leadership bureaucracy.  It's our
25   view that such a mix of attorneys in this important national
```

1    case will promote professional development and present our

2    profession in a favorable welcoming light.

3            With that, I'll turn for just a minute or two to the

4    competing views on a leadership selection process.

5            Under the proposal outlined by Mr. Audet, which speaks

6    to general consensus and not agreement, once their coalition

7    rallies 51 percent support, the remaining 49 percent of

8    attorneys are shut out of the process.  As a result, a viable

9    alternative slate from among those other 49 percent will never

10   see the light of day.

11           Ms. Salas and I propose a selection process that is

12   transparent and consistent with this Court's precedent in the

13   Salmon case, which we reviewed, and the manual for complex

14   litigation.

15           First, transparency is paramount in this case because

16   remoteness between client and counsel is at its peak in MDL

17   class actions.  In Salmon Products Antitrust Litigation, this

18   Court gave the lawyers one week to either reach an agreement

19   with respect to leadership, or they'd submit applications.

20           As Ms. Furst described, it's binary and, you know, on

21   April 26th we either have a slate or we have applications.

22   That's the Manual For Complex Litigations binary process set

23   forth in Section 21.12 at Page 247.  Under Option A, the

24   lawyers stipulate to their chosen counsel, at which point the

25   Court is tasked with determining the adequacy of that choice,

1    not the choice of some of them, but the choice of all of them.

2         The manual speaks to the word "stipulation," not

3    majorities, pluralities or coalitions.  Absent stipulation, the

4    manual provides Option B, under which the Court selects, quote,

5    from lawyers competing for the role, end quote.

6         Our view is that a competitive market for leadership

7    will result in better options for the Court and a better

8    outcome for the class.  Under our proposal all viable leaders

9    are presented in open court, and the class will know exactly

10   how their new lawyers got that job.

11        By contrast, the proposal set forth by my colleagues

12   from California could result in a majority-trounces-minority

13   approach, and it's not precedented when contrasted against the

14   Court's order in Salmon.  I'm referring specifically to

15   footnote 856 of the manual, which cites to a report warning

16   that a less than unanimous consensus approach is prone to

17   dealmaking.  And I quote from that report, Cartel-like

18   groupings that favor some lawyers and disfavor others on the

19   basis of factors that have little do with ability, end quote.

20        Now, that risk is only amplified by a proposal to

21   dilute the threshold for agreement and is virtually eliminated

22   under our proposal, which is exactly how Your Honor proceeded

23   in Salmon, which maximizes the Plaintiffs' representation in

24   this process.

25        For these reasons, we request that the Court enter

1   essentially the same order that it entered in Salmon Products

2   Antitrust Litigation at Docket Entry No. 63.

3          With that I'm available to Your Honor for any

4   questions.

5          MR. WILLEY:  Your Honor.

6          THE COURT:  Mr. Willey?

7          MR. WILLEY:  Roy Willey.

8          MR. AUDET:  Roy, can I -- do you mind if I go?

9          MR. WILLEY:  Sure.

10          MR. AUDET:  Your Honor, this is William Audet.  I just

11   want to clarify something, and I'll take all the blame for

12   this.  There was never any slate of 51 percent votes.  This

13   isn't a popularity contest.  I've done hundreds of these,

14   hopefully not too many more.  We were talking about essentially

15   what happened in Salmon, which was, as I understand it,

16   90 percent of almost all the lawyers agreed, and then the other

17   two or three lawyers that didn't agree ended up agreeing so

18   they could present a slate.

19          And I don't want to get into too much details, but I

20   think other firms will agree there was never -- there's no

21   dealmaking going on.  And I take a little bit of an offense,

22   that's the last thing I do is dealmaking.  I don't want to do

23   that in any case.  I think it backfires.  I've been the subject

24   of where people make deals, and I just -- I'm opposed to it.

25          I look to the concept of helping younger experienced

1    lawyers become more experienced, and I really believe in that,

2    and I'd like to do it here.  And I think this we can present a

3    diverse slate.  I -- my only point is I just don't want one or

4    two firms saying we don't agree, go through this process, and

5    it's a longer process.  But either way I don't care if

6    Your Honor thinks this is too much, do applications, happy to

7    do it.  We can do it with a slate or whatever.

8            I think for the most part -- I've talked to so many

9    lawyers.  They put aside their own desires and interests and

10    say I want to be lead.  They're like, Well, what's the slate,

11    Bill?  Does that work?  Great.  It's a diverse group, let's go

12    with it.  We don't have that gelled yet, that's why we need the

13    extra four days.  This will all be over, in my view, either

14    Friday or Monday.  If not, by Friday if Your Honor wants.

15            I think -- I think there's -- I didn't explain it well

16    maybe to Sean, and -- and for that I apologize.  But this isn't

17    anything that's contrary to the Manual For Complex Litigation,

18    nor is it anything junto in terms of a cartel or a bunch of

19    California lawyers getting together, trying to come down to

20    Miami, which seems to be the play here.

21            But I know Roy and some others hopefully will agree

22    with what I've said, this is not a Bill Audet concept.  It's

23    one where we spoke to so many lawyers.

24            I don't want to spend too much time on this issue,

25    Your Honor.  I think it's just the procedure there's a

```
 1    disagreement.  And I'll leave Roy -- I know Roy wanted to say
 2    something, I think another lawyer did on the Plaintiff side, so
 3    unless Your Honor has some questions, I'll mute myself.
 4              MR. WILLEY:  Thanks, Bill.
 5              Your Honor, Roy Willey of the Anastopoulo Law Firm.
 6              Initially, I'll just say I'm not from California, I'm
 7    from South Carolina, here in the Southeast.  And I am a young
 8    lawyer.  I don't know if -- if age should really come into play
 9    in these sort of proceedings, but I'm 34, so I'm probably among
10    some of the youngest on the call.
11              And I would just say that when I first spoke with
12    Mr. Audet about structuring the case having spent countless
13    hours on it with my team obviously, up late at night drafting
14    the complaint, trying to get on file, obviously knowing people
15    that are personally impacted, Robinhood obviously is used by a
16    lot of young people.  He was very open to the ideas, and there
17    was never a concept of 51 percent.  In fact, I think we have
18    spent many, many hours, I know we have spent many, many hours
19    talking to everyone on the phone.  And there is a general
20    consensus, I believe, about the more experienced lawyer pairing
21    with a younger lawyer for each tranche and moving the case
22    forward expeditiously.
23              And -- and I would just note that I don't think the
24    two proposals are really mutually exclusive either.  I mean, as
25    Mr. Audet said, if we could have just some additional time, we
```

1    can submit papers with a consensus.  Obviously, if anyone does

2    not agree with that consensus, they are free to file leadership

3    papers.  And I would just tell you there have been no deals

4    made.  I do not have a spot secured in some consensus-based

5    structure.  We have all been talking generally about how things

6    happen.  But obviously, you know, if that were to occur, people

7    are free to submit their papers anyway.

8              So I would just say that I don't think the two things

9    are mutually exclusive, and I think that younger lawyers, if

10   they are engaged in the process, will continue to be engaged in

11   the process irrespective of who the co-chairs are.  Obviously,

12   this is a big case.  It does require folks who have a lot of

13   experience in complex MDL litigation, and I think we can put

14   together a group with -- who is energetic, as Mr. Audet said,

15   but also has the experience to guide that energy to getting the

16   best result for the classes.

17             THE COURT:  Thank you.

18             The attorneys have been speaking of and referencing my

19   order in the Farm-Raised Salmon Antitrust case, Docket Entry

20   63.  I assume the lawyers who are at this hearing today have

21   had access to that order and have reviewed it.

22             And, Ms. Furst, you've offered to be the

23   Robert Gilbert, who's referenced in the order; is that right?

24             MS. FURST:  That's correct.

25             THE COURT:  And is there any -- is there any objection

1    to an order being entered today that tracks that -- those

2    requirements, that were in Docket Entry 63, obviously with

3    different dates and different names and players?

4          MR. KIM:  Your Honor, this is Phillip Kim.

5          With regard to the federal securities claims, I think

6    there is unanimous agreement that our track would be a little

7    bit different, so I would just suggest that you would enter a

8    deadline for the filing of any opposition briefs to the

9    currently filed motions for Monday, I guess that would be

10   April 26th, and reply briefs on May 3rd.

11         And although I would have no objection for Ms. Furst

12   and her firm to be liaison counsel.  I think just the way the

13   appointment of counsel works in the PSRA cases, I think the

14   parties seeking to be Plaintiff and lead counsel in the federal

15   securities cases file their own motions at this time, the

16   responses.

17         MS. FURST:  Your Honor, I would agree that the

18   presence in this case of the federal securities cases adds a

19   level of complexity that wasn't present in the Salmon case.  So

20   Docket Entry 63 from that case doesn't fit our case exactly.

21   And as Mr. Kim said, you know, these PSLRA cases do need to

22   follow, I think, the separate leadership track and process and

23   it would be probably better for those applications to be filed

24   directly -- the motions to be filed directly on the docket and

25   not through an interim liaison counsel like myself.

1      THE COURT:  I was remiss in my remarks.  Mr. Kim and

2  Ms. Furst, you're both correct.  The order Docket Entry 63,

3  what will be the new order in this case would track the

4  language of the Salmon case as it pertains to the four groups

5  or tranches that we've been discussing.  We're going to deal

6  with the federal securities cases, the two competing motions

7  that I have presently, separately.

8      And so I will include those dates for the response and

9  reply memoranda unless there is anyone who would like to be

10  heard on that with any opposition.

11      MS. WESTCOT:  Good morning, Your Honor.  My name is

12  Sarah Westcot with Bursor & Fisher.  Along with Mr. Kim's firm,

13  my firm, Bursor & Fisher, has the other competing leadership

14  motion under the Federal Securities Act, and we do not have any

15  opposition to those dates that Mr. Kim has suggested.

16      THE COURT:  Thank you.

17      In Docket Entry 63, I indicated that I would have a

18  status conference to address the deadlines for the filing of

19  consolidated class action, a consolidated class action

20  complaint, here we're talking of several.

21      Is it the attorneys' wish that I do the same in this

22  case, that following the selection of counsel, that then we

23  have another status conference to address that?  I heard a 45

24  to 60 day time period after leadership is appointed as being

25  acceptable, or -- or would you all like to have a status

1    conference before I simply select the date?

2         MR. BURSTYN:  Your Honor, this is Sean Burstyn.  We,

3    you know, endorse the -- the Salmon order.

4         I think it makes sense to have another status

5    conference once leadership is selected because it's leadership

6    that's going to have to, you know, drive the bus from that

7    point on.

8         MR. AUDET:  Your Honor, again, I echo that,

9    Your Honor.  I'm more than happy to Zoom in or fly in to Miami

10   any time.

11        MR. SAVERI:  Your Honor, this is Joseph Saveri.  It's

12   just another 45 or 60 days of -- before we get started, but

13   it's fine either way.  It probably makes sense to have who's in

14   charge in front of you making the decisions, and then we can

15   address other things and off we go.

16        THE COURT:  All right.

17        MR. AUDET:  Yes.

18        MR. WILLEY:  Your Honor, Roy Willey.  The only thing I

19   would add is just that we have a period of time after the

20   appointment before the status conference so that whoever is

21   appointed can self-organize with the other lawyers as well.

22   I'm sure Your Honor was already going to do that, but just to

23   offer.

24        THE COURT:  Very well.  I think this discussion has

25   sort of wrapped up Items 3 and 4 on the agenda, would that be

1    fair?  Unless there's anything that anyone else would like to

2    add.

3         (No audible response.)

4              THE COURT:  All right.  So moving on, Item No. 5 was a

5    discovery plan.

6              MR. KLAFTER:  Yes, Your Honor, this is

7    Jeffrey Klafter.  I'll address that issue.  We've had a -- I'm

8    from Klafter Lesser, I'm in New York, Your Honor.  And -- and I

9    represent Mr. Krasowski in 21-cv-21313.

10             THE COURT:  All right.

11             MR. KLAFTER:  Well, we've heard a lot of talk this

12   morning about coordination and making sure that there isn't

13   duplication.  It's our consensus view that we can start pretty

14   soon after leadership is appointed to work on a number of

15   issues, which will be common to all of the cases.  One will be

16   a discovery plan; second, a confidentiality order; an ESI

17   protocol; a remote deposition protocol because I think we're

18   still going to be in some COVID kind of world for the -- for a

19   while longer where that may be -- very well be necessary.  And

20   that we can meet and confer the leadership that's appointed and

21   make a submission to Your Honor.

22             We can get all that in place.  If there are

23   disagreements, we would propose a joint submission, and the

24   joint submission indicate any disagreements that may need to be

25   resolved.

1    So again, that would all be common to everything, and

2    it would be something that would be in place for all of the --

3    of the cases.

4        And then the other thing I wanted to discuss,

5    Your Honor, is that we anticipate that the Defendants will say,

6    well, there should be a stay of everything.  Well, first of

7    all, we don't agree there should be a stay of anything, but at

8    least there's no reason not to get those basic things, which

9    won't take a lot of time, which are sort of pro forma with some

10   tweaks in these types of cases, that we can get all that under

11   the belt, so that's not going to hinder the proceeding of

12   discovery.

13       Next thing with regard to discovery, I just want to

14   mention that there is an automatic stay under the PSLRA, but

15   there's no stay for purposes of any of the other claims.  And

16   we would submit, Your Honor, although there's no motion that's

17   pending to stay cases, that this case is in the same posture as

18   another case Your Honor had where TD Ameritrade was a

19   Defendant, which is the -- the *Krukever* case in which no

20   motions had been filed, it was an early stage in the case, and

21   the Court -- Your Honor said that it was -- the Defendants

22   hadn't met their burden.

23       But we think we, under our view of the world, that we

24   can put off the -- any stay issues with regard to the

25   nonsecurities cases because our proposal is, is that we would

1    serve discovery after the filing of the consolidated amended

2    complaints so Your Honor would have the benefit of those

3    complaints if any stay motion were then made.  But we don't

4    have to deal with that now.

5            So again, we're suggesting that leadership be

6    appointed, let's get the discovery plan in place, let's get all

7    these other items done, and then we can -- with the benefit of

8    consolidated amended complaints determine how best the case

9    should proceed.

10           THE COURT:  Thank you, Mr. Klafter.

11           From Defense, I think Mr. Orsini would have a

12   different view about discovery moving forward simply upon the

13   filing of the complaints.  He's going to want to have no

14   discovery until I've ruled on whether any of the claims can go

15   forward.

16           Would that be a fair statement, Mr. Orsini?

17           MR. ORSINI:  I think that would be a very fair

18   statement, Your Honor.  Our view, just briefly, is -- and I

19   know Defendants say this a lot, but I believe in this case we

20   will not get past motions to dismiss.

21           The conduct that's being challenged here is -- is

22   conduct to suspend or limit trades during a time of incredible

23   and unprecedented market volatility.  These are steps that were

24   taken independently by each of the Defendants consistent with,

25   at least in Robinhood's case and I believe the others, explicit

1    provisions of their -- their customer agreements.  And, in

2    fact, we actually have an SEC statement confirming that

3    broker-dealers reserve the right to do this.  And the one court

4    that's addressed the merit to these cases so far has -- you

5    know, on a TRO context, Your Honor, found based upon these and

6    other grounds that there is no likelihood of success on the

7    merits.

8            Of course, this will be up to Your Honor.  But given

9    the existence of the PSLRA stay and the fact that any discovery

10   in any of the other claims would be completely overlapping with

11   the discovery in the securities cases, thereby undermining the

12   efficiencies if we let them go forward without the securities

13   claims and also undermining the PSLRA, if we allow the

14   securities claims to sort of tag along.

15           And two, last I counted, Your Honor, we have 25-plus

16   Defendants here.  These are a result of the antitrust

17   conspiracy claims.  And the number of Defendants here and the

18   complexity of antitrust discovery, there would be a massive

19   amount of inefficiencies in starting any discovery process in

20   our view, Your Honor.

21           Unless and until we get the motion to dismiss

22   resolved, we're prepared to move with alacrity on those so we

23   can see if the Court has a different view than I do about the

24   merits of the claims.  But in the meantime, we would propose

25   that the Court do what I understand the Court did in the Salmon

1    case, which is stay discovery pending the outcome of those

2    motions.

3         THE COURT:  Which ended in what case -- I'm sorry,

4    Mr. Orsini.

5         MR. ORSINI:  I believe Your Honor took that approach

6    in the Salmon Antitrust claims.

7         MR. KLAFTER:  Your Honor, may I briefly respond?

8         THE COURT:  Of course.

9         MR. KLAFTER:  Okay.  With regard -- again, there's no

10   stay motion pending.  And -- but if -- but again, on the issue

11   of stay, there is going to be one lead Plaintiff appointed and

12   one lead counsel appointed over the securities claims.  It's

13   very easy to wall off that counsel.  And we're also talking

14   about a period after the consolidated amended complaints would

15   be filed.  So -- so no one would have the benefit of discovery

16   in preparing their consolidated amended complaints.

17        And then second, Your Honor, I would just point out

18   that we disagree, we think that Robinhood and the other brokers

19   are not allowed under their contracts to do what they did, and

20   that they are taking gross liberties with respect to language

21   that doesn't speak to these specific issues.  And then we've

22   also asserted a number of others -- the complaints have

23   asserted a number of other claims, breach of fiduciary duty,

24   unfair and deceptive trade practices.

25        There's the whole issue of Robinhood's inadequate

1    capitalization here, which is at blame for their decision to

2    terminate trading.  So there are whole issues here and, again,

3    we think that any issues with regard to any stay should best be

4    resolved in the context of the consolidated amended complaints

5    if a motion is then filed.

6              MR. KIM:  And, Your Honor, if I could speak briefly on

7    that because we filed a federal securities case.  There is no

8    risk of bleed over.  I think, as Mr. Klafter had indicated,

9    there will be separate leadership in securities cases, and also

10   mentioned that there would be confidentiality orders that the

11   other nonfederal securities Plaintiffs' leadership and

12   attorneys were working on those matters would sign.

13             And it's not, you know, without precedent.  I'm

14   currently involved in an MDL against Capital One where we had

15   the securities claim, and it's related to the data breach.  The

16   data breach claims have been going forward.  They're engaged in

17   discovery.  We are still at the pleading stages, we're walled

18   off.  So I don't see that there's a reason to sort of expand

19   the scope of the PSRA discovery stage to include these other

20   claims that these other Plaintiffs have filed.

21             MR. MENDRO:  If I may, Your Honor, this is

22   Jason Mendro from Gibson Dunn & Crutcher, on behalf of the

23   Charles Schwab Defendants and the TD Ameritrade Defendants.

24             Not surprisingly, I agree wholeheartedly with the

25   position that Mr. Orsini articulated.  I would just like to add

1    that my experience in MDLs, when there are securities cases

2    paired with other cases, is that enormous wasteful litigation

3    occurs as a result of the different tracks in discovery.  What

4    I find is that if some groups of Plaintiffs are permitted to

5    have discovery, they start seeking discovery and filing

6    motions, which then have to be filed under seal to prevent

7    discovery material from being filed publicly.  And then the

8    parties end up in a wave of litigation of unsealing and attempt

9    by the securities Plaintiffs to obtain discovery that they're

10   not entitled to receive through other parties.

11            So I just speak briefly to voice my different

12   experience in this matter and to say that we agree with

13   Mr. Orsini that discovery should be stayed.

14            THE COURT:  Thank you, Mr. Mendro.

15            I think the better course given the divergence of

16   views here is to allow this to be briefed by motion.  So I will

17   indicate in my order today that any request to stay discovery

18   is to be a joint motion filed by any and all Defendants who are

19   seeking that relief and that in any event, no discovery is to

20   be propounded until after the amended complaints are filed.

21   And that gives the Defendants a time period within which you

22   need to get yourself -- get yourselves teed up to file that

23   combined motion to stay discovery.

24            MR. KLAFTER:  Your Honor, this is Jeffrey Klafter.

25            I would just ask -- I didn't hear any opposition from

```
 1    Defendants in terms of doing the matter such as a discovery
 2    plan, confidentiality order, ESI, remote deposition protocol.
 3    I don't think that prejudices anybody, and that's something
 4    that we could still get done regardless of whether discovery
 5    can actually commence.
 6              THE COURT:  I agree.
 7              Mr. Orsini, you disagree?
 8              MR. ORSINI:  This is Kevin.  I was going to,
 9    Your Honor, but I've heard what you just said, so maybe I
10    won't.
11              But our view on that is -- my position would be it
12    would be easier for that as well, at least pending filing our
13    motion to stay discovery.
14              As I said, we have 25 or so Defendants.  You know,
15    there's -- there's a lot of different Plaintiffs' lawyers here.
16    I don't want to waste a lot of time and energy putting together
17    documents that may not be necessary.  But I take the Court's
18    point, and -- and so we can -- we can deal with those
19    preliminaries.
20              THE COURT:  All right.  And let me just say it is not
21    my practice to welcome or allow sealed filings.  So whatever
22    confidentiality orders you're drafting up and working from,
23    remove references to filing documents under seal.  Any
24    information is such that the parties don't wish it to be on the
25    public docket, just redact it from whatever it is you do file
```

with the Court.  I am not in the business of trying to parse my words and figure out what -- if what I'm putting into my public order contains some reference to some sealed document or not. So that's just a -- a way of background for you, Mr. Klafter, as you put together those confidentiality orders.

Modes of trial, Item 6.

MR. KLAFTER:  Okay.  That's me again, Your Honor.

So we -- the Plaintiffs anticipate first that we're going to overcome the motions to dismiss, and that we are going to have trials here if the case is not resolved, and that they would be class trials.  Whether how many, whether there be one for each bucket or whether there would be common trials or maybe trials on common issues, or how that goes, but they would be class trials.

And I think it's premature until we see Your Honor's rulings on motions to dismiss and also rulings with regard to class certification motions to see who the class is.  Perhaps we end up with the same classes, in which case maybe they could all be tried in one case.

But again, we have to be informed by what claims and what classes are going forward and this is not a situation where we could have bellwether trials.  It's not -- you know, these are class claims, it's not like a bunch of individual claims that there are on mass tort situations.  But we think that the issue of what trials may look like should be put off

until we have the benefit of Your Honor's rulings on those two

motions.

                    THE COURT:  I agree with you as well.

                    I frankly was not aware that this was not an MDL, and

that was not amenable to bellwether trials.  So that's valuable

information to have, and I do think it's rather premature to be

talking about trials when we're -- we're not even at the

pleading stage yet.  So, thank you.

                    Item No. 7.

                    MR. ORSINI:  Yes, Your Honor, this is Kevin Orsini

again.  These are really Defendants' issues that we wanted to

just raise some housekeeping issues for the Court early in the

process here.

                    The first -- the first item relates to the stays of

litigation.  I said earlier that we don't really have

individual claims here.  That's true with the exception of two

cases.  There are two pro se actions that have been filed in

the Northern District of Illinois that are individual actions.

                    Those individuals, when they signed up for Robinhood,

agreed to arbitration clauses.  The arbitration clauses that

they agreed to, and this is in no small part because of FINRA

regulations, are a bit different than some arbitration clauses

you typically see insofar as they expressly allow for class

action litigation in federal court.

                    And so once the -- that's why we can't move against

the classes here.  We can't move the class to arbitration as long as there's a punitive class pending, nor can classes be filed in arbitration.  So a plaintiff, such as these two individuals, has a choice at the outset.  They're absolutely entitled to proceed with individual arbitrations against Robinhood, or if they would like to be in federal court, they are part of a punitive class action at least until the Court makes a decision that a class cannot be certified.

So we've been in touch with these two individuals. We're trying to establish whether or not they'd like to elect for the individual arbitrations.  Candidly, Your Honor, the answers we've gotten so far are not entirely clear.  They've not, in fact, even served us yet, and the deadlines are coming up for that.  But in the event that we do get served, and they elect to keep their cases in federal court, which would be part of this MDL, we would ask the Court to stay those proceedings under the arbitration clauses pending any decision on class certification.  If the class is certified, they can be class members.  If the class is certified, and they opt out, then they go to arbitration.  If the class is not certified, they go to arbitration.

So no action required from the Court at this time, but I wanted to just punt that issue so the Court is aware it will be coming down -- coming down the turnpike here.

THE COURT:  I appreciate it.  You would be filing a

1    motion, right?

2           MR. ORSINI:  We would, Your Honor.  We would file

3    motions under the FAA to stay those actions.  And we can --

4    once we get a little bit more clarity, and if we actually get

5    served, we can propose to the Court a schedule for that.

6           THE COURT:  All right.

7           MR. ORSINI:  The second item, Your Honor, was just to

8    update the Court and keep the Court apprised of other matters

9    that are proceeding with respect to removal and remand.

10          We currently have one case that was filed in state

11   court in California that we removed to federal court.  This is

12   the Thompson action, Your Honor.  We have a hearing before the

13   court in the Central District of California on our motion to

14   remand that's tentatively scheduled for May 3rd.

15          There has been a conditional transfer order entered

16   for the Thompson case, but the Thompson Plaintiffs have

17   objected to that conditional transfer.  That will be fully

18   briefed by May 24th, Your Honor.  It will be our position that

19   that case absolutely ought to be transferred to this Court, and

20   that this Court ultimately ought to be the one that addresses

21   the issue of remand since we have at least two other state

22   court proceedings that I believe will be filed, that I expect

23   will also be removed, such that the removal issues will overlap

24   as well as issues related to SLUSA, which of course bears on

25   both removal jurisdiction as well as potential preclusion on a

motion to dismiss.

So again, Your Honor, no action item, just wanted to make sure the Court is aware that that process in underway as well.

THE COURT:  Mr. Orsini, how many more cases do you anticipate joining this MDL?

MR. ORSINI:  So the cases of which I'm aware are obviously the Thompson case, Your Honor.  There are then -- there's one case that Your Honor granted a voluntary dismissal of this morning before this hearing, and there's one other matter, which was voluntarily dismissed.  This is the Diamond matter, Your Honor, which was originally filed in the Middle District of Florida.

The Plaintiffs in that case filed a motion -- or a voluntary notice of dismissal, but it was filed in Tampa I think after it had already been transferred to this court.  So I think they're probably going to have to file a new voluntary dismissal.  My expectation based upon conversations with those Plaintiffs' counsel and some comments that they had made during the MDL process is they're dismissing these so that they can file in state court.

We obviously will need to review the pleadings, but I find it hard to imagine that, given the nature of the allegations, they will be claims that can stay in state court. So I'd say at least the Thompson case, maybe -- which is the

1    one in California, maybe these two others.  I don't have any

2    knowledge of additional claims that may be filed.

3            And at this point, since everything is class action,

4    Your Honor, *(Audio distortion)* context, right, where we're

5    going to get 5,000 a them.  At least I don't expect so.

6            THE COURT:  All right.  Thank you.

7            MR. ORSINI:  And then the final matter, Your Honor,

8    procedurally, is the *Siruk* case, I may be mispronouncing that,

9    if I am I apologize to Mr. Siruk.

10           This is a litigation that was originally filed in the

11   District of Minnesota.  It's a punitive class action.  It's

12   identical to some of the other class actions that were filed.

13           The magistrate judge to whom that case was assigned in

14   the District of Minnesota *sua sponte* dismissed it on the

15   grounds that it under the first filed rule and on the grounds

16   that the Plaintiff, who filed this punitive class action, filed

17   it pro se, and at least according to the magistrate is a serial

18   pro se filer in the District of Minnesota.

19           I candidly, Your Honor, don't -- can't speak to that.

20   Obviously, that magistrate would know that much better than I

21   would.  But the magistrate issued a report and recommendation

22   dismissing that claim or recommending the dismissal of that

23   claim on March 31st.  The pro se Plaintiff objected to that

24   report and recommendation, but it looks like that objection got

25   docketed in Minnesota the day after or maybe the day of the

1    transfer to this Court.

2         So I believe, Your Honor, that that objection likely

3    needs to get refiled on your docket to the extent that it would

4    still be timely, and we're reserving rights on that and looking

5    into that issue, Your Honor.  But I believe it would have to be

6    documented on -- on Your Honor's court docket here in the MDL.

7    And I did not take, for example, the Court's order short of

8    suspending and vacating all pending motions to apply to this

9    because, obviously, a report recommendation is sort of its own

10   animal.

11        THE COURT:  When is your -- when is your response to

12   the objections due, Mr. Orsini?

13        MR. ORSINI:  You know, Your Honor, I'm not sure off

14   the top of my head.  But I can -- I can find that out.  And

15   what we'll do is we'll reach out to the pro se Plaintiff,

16   Your Honor, to try and meet and confer about -- I believe it's

17   due 14 days.  One of my colleagues just kindly gave me that.

18        THE COURT:  Right.

19        MR. ORSINI:  So it would be due April 28ish.

20        There's a question as to when it was -- it was

21   docketed on the 15th, the objection, but it was mailed in on

22   the 11th, so it's either the 28th or 29th of April.

23        But let us meet and confer, Your Honor, if we can get

24   in touch with them.  If not, I suppose what we could do,

25   Your Honor, is simply file our opposition to their objection on

1    the date it would otherwise be due, which would tee the issue

2    up for the Court.

3              THE COURT:  Right.  I'll look out for the objection if

4    I haven't received anything refiled on my docket from the

5    Plaintiff.

6              MR. ORSINI:  Okay.  Thank you, Your Honor.

7              THE COURT:  Thank you for alerting me to that one as

8    well.

9              MR. AUDET:  Your Honor?

10             THE COURT:  Yes, Mr. Audet.

11             MR. AUDET:  Just as we're talking about pro ses.  In

12   another case I was involved with, lead counsel were tasked with

13   helping pro ses, not advising them.  And we would set up

14   separate hearings if there was more than a couple of more

15   pro ses coming.  Even if there was two, I feel they're going to

16   be overwhelmed trying to respond to anything from a firm like

17   Mr. Orsini is at.

18             So it doesn't need to be addressed now, but I -- just

19   in terms of the rights of the pro se having -- I worked in a

20   legal clinic, and that's what I did a lot of years ago in

21   Wisconsin.  We had sort of a separate track, and we would have

22   quick hearings and deal with them so it wasn't part of a larger

23   concern.

24             It's just a suggestion, maybe I should wait till later

25   and, hopefully, I'm part of the leadership, and if I am -- but

1    it really helped a lot in terms of making sure there wasn't

2    overreaching in a sense like during a meet and confer.  They're

3    just overwhelmed, of course, Your Honor.  Whether they have

4    good cases or not, it doesn't matter.

5         MR. SAVERI:  Your Honor, it's Joseph Saveri.

6         I think letting some -- I would really support that

7    because the pro se Plaintiffs present particular challenges.

8    We represent a number of pro se Plaintiffs in the Northern

9    District, and I think that our experience is the process works

10   better if they have access to lawyers who can help advise about

11   the process.

12        So I'd certainly recommend kind of providing us, not

13   as their counsel of record in the first instance, but providing

14   us as a resource.  I just think that the process -- I think

15   everybody benefits from that, so I would really endorse that.

16        THE COURT:  Are any of these pro se Plaintiffs present

17   at this morning's hearing who would like to be heard?

18     (No audible response.)

19        MR. ORSINI:  Your Honor, those would be Mr. Gatz and

20   Mr. Cherry, just so they understand the individual names, if

21   that will help them identify themselves.

22        THE COURT:  Thank you.

23        Not hearing from them.  Let me return then to what

24   remains, which is the order that I'll be preparing after we

25   adjourn, and that's going to give a deadline of -- was it this

1 Friday or Monday, Ms. Furst?

2   MS. FURST:  It was -- the deadline for submission of

3 leadership applications is Monday, as we discussed.  But Friday

4 would be the deadline for any sort of -- as it was phrased in

5 the Salmon order, an agreement regarding lead class counsel for

6 the filing of such agreement.

7   MR. BURSTYN:  Sorry.  This is Sean Burstyn,

8 Your Honor.  I'm just -- I'm looking at the Salmon order.  The

9 date for agreed class counsel proposals is the same as the date

10 for applications, so those would both be on Monday, April 26th.

11   MS. FURST:  That's right, but the process that was

12 proposed during the discussions earlier was that Friday would

13 be the -- and again, open to Your Honor's -- whatever you

14 prefer, but Friday would be the deadline for any sort of motion

15 to appoint an -- an agreed motion to appoint lead class counsel

16 and that Monday would be the deadline for applications just to

17 give folks an opportunity over the weekend to get their

18 applications in.

19   But yes, in Salmon, it was the same day.  That's

20 correct.

21   MR. GROSSMAN:  This is Stuart Grossman.  Good morning,

22 Judge.  That was quite clear that Friday would be our voluntary

23 deadline.  And Monday if we can't get together, then we would

24 submit applications.  Thank you.

25   THE COURT:  Thank you, Mr. Grossman.

```
 1                    And I am reminded, Mike, you're still with us, please

 2       keep for us all the attorney participant log of this morning's

 3       hearing.

 4                    IT:  Yes, Your Honor.  I'll submit it to Patricia.

 5                    THE COURT:  Thank you.

 6                    All right.  Is there anything else that we did not

 7       address that any of you would like to be heard on?

 8            (No audible response.)

 9                    THE COURT:  Well, I appreciate the lawyers who have

10       sort of taken the lead on this and have directed this morning's

11       discussion, as well as prepared the agenda, and look forward to

12       our next conference and the next receipt of documents given the

13       order that I'll be entering today.

14                    If there's nothing else, then we will adjourn.  And,

15       Mr. Audet, you've got an early start to your day, I hope it's

16       very fruitful out there on the West Coast.

17                    MR. AUDET:  You can see the palm trees, Your Honor.

18                    THE COURT:  We have ours here as well.

19                    MR. AUDET:  They're real.  They're actually real, it's

20       not a screen shot.

21                    THE COURT:  All right.  Everyone, have a good day.

22                    Nice to see and hear from those of you who spoke and

23       those of you whose faces I did get to see.

24                    Have a good day.

25                    MS. FURST:  Thank you, Your Honor.
```

```
 1              ALL PARTIES:  Thank you, Your Honor.

 2         (The proceedings adjourned at 11:16 a.m.)

 3

 4                    C E R T I F I C A T E

 5

 6      I hereby certify that the foregoing is an

 7  accurate transcription of the proceedings in the

 8  above-entitled matter.

 9

10
    _04/21/2021_
11      DATE                 STEPHANIE A. McCARN, RPR
                             Official United States Court Reporter
12                           400 North Miami Avenue, Twelfth Floor
                             Miami, Florida 33128
13                           (305) 523-5518

14

15

16

17

18

19

20

21

22

23

24

25
```

**0**

**04/21/2021** [1] - 54:10

**1**

**1** [4] - 1:8, 5:17, 8:19, 8:22
**1000** [1] - 2:6
**10016** [1] - 2:10
**10019-7475** [1] - 2:22
**1050** [1] - 3:3
**10573** [1] - 2:17
**10:06** [2] - 1:6, 5:1
**1150** [1] - 1:18
**11:00** [1] - 22:5
**11:16** [2] - 1:6, 54:2
**11th** [1] - 49:22
**12** [1] - 18:23
**12-2** [1] - 1:7
**125** [1] - 14:16
**14** [1] - 49:17
**1420** [1] - 2:13
**15th** [1] - 49:21
**19** [1] - 1:5

**2**

**2** [3] - 2:17, 6:16, 21:8
**200-page** [1] - 10:5
**20036-5306** [1] - 3:4
**202** [1] - 3:4
**2021** [3] - 1:4, 1:5, 10:25
**21-cv-21313** [1] - 35:9
**21-md-02989-CMA** [1] - 1:2
**21.12** [1] - 26:23
**212** [2] - 2:11, 2:22
**23** [1] - 19:1
**247** [1] - 26:23
**24th** [1] - 46:18
**25** [1] - 42:14
**25-plus** [1] - 38:15
**2525** [1] - 1:18
**26th** [4] - 24:15, 26:21, 32:10, 52:10
**275** [1] - 2:10
**28ish** [1] - 49:19
**28th** [1] - 49:22
**29403** [1] - 2:3
**29th** [1] - 49:22

**3**

**3** [2] - 18:11, 34:25
**305** [5] - 1:15, 1:19, 2:14, 3:9, 54:13
**31st** [1] - 48:23
**32** [1] - 2:3

**330-5512** [1] - 2:14
**33128** [2] - 3:8, 54:12
**33131** [1] - 2:14
**33131-3073** [1] - 1:15
**33134-6040** [1] - 1:19
**34** [1] - 30:9
**350** [1] - 2:17
**375-0111** [1] - 1:15
**3800** [1] - 1:14
**3rd** [2] - 32:10, 46:14

**4**

**4** [1] - 34:25
**400** [2] - 3:7, 54:12
**40th** [1] - 2:10
**415** [1] - 2:7
**442-8666** [1] - 1:19
**45** [7] - 18:16, 19:2, 19:11, 20:9, 24:5, 33:23, 34:12
**474-1596** [1] - 2:22
**49** [2] - 26:7, 26:9

**5**

**5** [2] - 4:15, 35:4
**5,000** [1] - 48:5
**500** [1] - 1:22
**500-6800** [1] - 2:7
**51** [3] - 26:7, 28:12, 30:17
**523-5518** [2] - 3:9, 54:13
**54** [2] - 1:8, 4:16
**55** [1] - 14:3

**6**

**6** [1] - 43:6
**60** [7] - 18:16, 19:2, 19:11, 20:9, 24:5, 33:24, 34:12
**600** [1] - 1:14
**601** [1] - 2:6
**63** [6] - 7:8, 24:18, 28:2, 31:20, 32:2, 32:20, 33:2, 33:17
**686-1060** [1] - 2:11

**7**

**7** [1] - 44:9
**701** [1] - 2:13
**711** [1] - 1:22

**8**

**800** [1] - 1:23
**800-0000** [1] - 2:4

**825** [1] - 2:21
**843** [1] - 2:4
**856** [1] - 27:15
**887-3726** [1] - 3:4

**9**

**90** [1] - 28:16
**914** [1] - 2:18
**934-9200** [1] - 2:18
**94102** [1] - 1:22
**94108** [1] - 2:7
**965-1461** [1] - 1:23

**A**

**a.m** [4] - 1:6, 5:1, 54:2
**Abby** [1] - 7:17
**ability** [1] - 27:19
**able** [1] - 14:17
**above-entitled** [1] - 54:8
**absent** [1] - 27:3
**absolutely** [2] - 45:4, 46:19
**acceptable** [1] - 33:25
**acceptance** [1] - 24:21
**accepting** [1] - 24:14
**access** [2] - 31:21, 51:10
**accomplished** [1] - 24:3
**according** [1] - 48:17
**accurate** [1] - 54:7
**Act** [1] - 33:14
**action** [13] - 10:19, 11:25, 12:9, 33:19, 44:24, 45:7, 45:22, 46:12, 47:2, 48:3, 48:11, 48:16
**actions** [7] - 15:10, 18:25, 26:17, 44:17, 44:18, 46:3, 48:12
**activities** [1] - 10:24
**add** [6] - 13:9, 17:9, 24:11, 34:19, 35:2, 40:25
**additional** [3] - 16:25, 30:25, 48:2
**address** [11] - 8:4, 8:23, 9:2, 11:15, 13:4, 14:22, 33:18, 33:23, 34:15, 35:7, 53:7
**addressed** [2] - 38:4, 50:18
**addresses** [1] - 46:20
**adds** [1] - 32:18
**adequacy** [1] - 26:25
**adequate** [1] - 14:22

**adjourn** [2] - 51:25, 53:14
**adjourned** [1] - 54:2
**ADMITTED** [1] - 4:10
**advise** [1] - 51:10
**advising** [1] - 50:13
**advocate** [1] - 10:2
**advocated** [2] - 5:25, 6:19
**affiliated** [1] - 9:23
**Afro** [1] - 25:17
**Afro-Cuban** [1] - 25:17
**age** [1] - 30:8
**agenda** [11] - 5:14, 6:10, 6:16, 8:12, 8:14, 13:13, 14:18, 18:11, 21:9, 34:25, 53:11
**agnostic** [1] - 20:6
**ago** [4] - 7:16, 21:15, 50:20
**agree** [15] - 15:15, 15:16, 21:22, 22:12, 28:17, 28:20, 29:4, 29:21, 31:2, 32:17, 36:7, 40:24, 41:12, 42:6, 44:3
**agreed** [8] - 11:24, 22:8, 25:15, 28:16, 44:20, 44:21, 52:9, 52:15
**agreeing** [1] - 28:17
**agreement** [14] - 6:11, 7:6, 7:9, 9:1, 9:11, 12:16, 16:20, 22:17, 26:6, 26:18, 27:21, 32:6, 52:5, 52:6
**agreements** [1] - 38:1
**ahead** [2] - 7:25, 23:3
**alacrity** [1] - 38:22
**alerting** [1] - 50:7
**ALL** [1] - 54:1
**allegations** [1] - 47:24
**allow** [4] - 38:13, 41:16, 42:21, 44:23
**allowed** [1] - 39:19
**allowing** [1] - 24:1
**almost** [1] - 28:16
**alongside** [1] - 7:16
**alternative** [1] - 26:9
**Altonaga** [1] - 5:19
**ALTONAGA** [1] - 1:10
**amenable** [2] - 24:19, 44:5
**amended** [7] - 18:4, 37:1, 37:8, 39:14, 39:16, 40:4, 41:20
**amendment** [1] - 18:11

**American** [1] - 25:16
**Ameritrade** [2] - 36:18, 40:23
**amount** [3] - 6:25, 20:15, 38:19
**amplified** [1] - 27:20
**Anastopoulo** [2] - 2:2, 30:5
**animal** [1] - 49:10
**Ann** [1] - 2:3
**answers** [1] - 45:12
**anticipate** [3] - 36:5, 43:8, 47:6
**Antitrust** [6] - 22:2, 24:17, 26:17, 28:2, 31:19, 39:6
**antitrust** [5] - 9:21, 15:17, 16:7, 38:16, 38:18
**anyway** [1] - 31:7
**anyways** [1] - 11:3
**apart** [1] - 16:11
**apologize** [2] - 29:16, 48:9
**appear** [1] - 5:6
**APPEARANCES** [3] - 1:11, 2:1, 3:1
**appearances** [2] - 5:7, 5:13
**application** [1] - 7:9
**applications** [14] - 22:4, 22:7, 24:14, 24:21, 24:22, 26:19, 26:21, 29:6, 32:23, 52:3, 52:10, 52:16, 52:18, 52:24
**apply** [1] - 49:8
**appoint** [2] - 52:15
**appointed** [10] - 7:13, 19:2, 20:10, 33:24, 34:21, 35:14, 35:20, 37:6, 39:11, 39:12
**appointment** [6] - 6:24, 20:11, 24:20, 25:14, 32:13, 34:20
**appoints** [1] - 19:18
**appreciate** [2] - 45:25, 53:9
**apprised** [1] - 46:8
**approach** [3] - 27:13, 27:16, 39:5
**approve** [1] - 20:21
**April** [7] - 1:5, 24:15, 26:21, 32:10, 49:19, 49:22, 52:10
**arbitration** [8] - 44:20, 44:22, 45:1, 45:3, 45:17, 45:20, 45:21
**arbitrations** [2] - 45:5, 45:11

**arise** [3] - 10:24, 11:3, 11:4
**articulated** [1] - 40:25
**aside** [1] - 29:9
**asserted** [3] - 15:20, 39:22, 39:23
**asserting** [1] - 15:11
**assigned** [1] - 48:13
**assist** [1] - 8:17
**assume** [2] - 20:9, 31:20
**assuming** [2] - 20:25, 23:20
**attempt** [1] - 41:8
**attended** [1] - 5:12
**attendees** [1] - 6:7
**attorney** [2] - 7:10, 53:2
**attorneys** [8] - 5:15, 6:7, 6:13, 25:22, 25:25, 26:8, 31:18, 40:12
**attorneys'** [1] - 33:21
**AUDET** [22] - 1:21, 9:6, 9:8, 11:20, 13:8, 13:19, 16:19, 17:24, 18:4, 21:12, 23:1, 23:4, 23:8, 25:6, 28:8, 28:10, 34:8, 34:17, 50:9, 50:11, 53:17, 53:19
**Audet** [28] - 1:21, 8:1, 8:23, 8:24, 9:5, 9:10, 11:16, 12:6, 12:12, 13:5, 13:6, 13:7, 16:7, 16:11, 16:17, 17:23, 18:2, 21:12, 23:14, 26:5, 28:10, 29:22, 30:12, 30:25, 31:14, 50:10, 53:15
**Audet's** [1] - 25:3
**audible** [3] - 35:3, 51:18, 53:8
**Audio** [1] - 48:4
**automatic** [1] - 36:14
**available** [1] - 28:3
**Avenue** [8] - 1:14, 1:22, 2:10, 2:13, 2:21, 3:3, 3:7, 54:12
**aware** [6] - 9:16, 14:2, 44:4, 45:23, 47:3, 47:7

# B

**backfires** [1] - 28:23
**background** [1] - 43:4
**Bank** [1] - 7:18
**bar** [1] - 16:25
**based** [5] - 9:15,

17:18, 31:4, 38:5, 47:18
**basic** [1] - 36:8
**basis** [3] - 7:13, 7:22, 27:19
**bears** [1] - 46:24
**become** [1] - 29:1
**BEFORE** [1] - 1:10
**begin** [1] - 5:16
**behalf** [5] - 8:25, 13:22, 15:11, 25:13, 40:22
**bellwether** [1] - 43:22, 44:5
**belt** [1] - 36:11
**benefit** [6] - 7:4, 12:22, 37:2, 37:7, 39:15, 44:1
**benefits** [1] - 51:15
**best** [3] - 31:16, 37:8, 40:3
**better** [6] - 27:7, 32:23, 41:15, 48:20, 51:10
**between** [2] - 19:21, 26:16
**big** [1] - 31:12
**Bill** [5] - 9:3, 21:12, 29:11, 29:22, 30:4
**binary** [2] - 26:20, 26:22
**binding** [1] - 19:17
**bit** [6] - 10:8, 20:2, 28:21, 32:7, 44:22, 46:4
**blame** [2] - 28:11, 40:1
**bleed** [1] - 40:8
**Boulevard** [1] - 1:18
**breach** [3] - 39:23, 40:15, 40:16
**break** [1] - 19:20
**Brickell** [2] - 1:14, 2:13
**brief** [1] - 6:2
**briefed** [2] - 41:16, 46:18
**briefly** [5] - 18:14, 37:18, 39:7, 40:6, 41:11
**briefs** [3] - 19:20, 32:8, 32:10
**brings** [1] - 21:18
**broken** [1] - 10:23
**broker** [5] - 10:1, 15:24, 16:11, 16:18, 38:3
**broker-dealer** [2] - 10:1, 16:11
**broker-dealers** [3] - 15:24, 16:18, 38:3

**brokers** [1] - 39:18
**Brook** [1] - 2:17
**bucket** [6] - 15:15, 15:17, 15:18, 15:23, 16:10, 43:12
**buckets** [9] - 15:14, 15:15, 16:2, 16:6, 16:15, 17:10, 17:16, 18:5, 18:8
**bunch** [2] - 29:18, 43:23
**burden** [2] - 14:25, 36:22
**bureaucracy** [1] - 25:24
**Bursor** [2] - 2:13, 33:12, 33:13
**Burstyn** [10] - 5:23, 6:17, 8:2, 13:1, 13:2, 13:3, 25:11, 34:2, 52:7
**BURSTYN** [7] - 1:13, 13:1, 13:4, 25:2, 25:10, 34:2, 52:7
**bus** [1] - 34:6
**business** [1] - 43:1
**BY** [1] - 3:6

# C

**CA** [2] - 1:22, 2:7
**Cabraser** [1] - 21:15
**California** [8] - 2:6, 7:25, 27:12, 29:19, 30:6, 46:11, 46:13, 48:1
**camaraderie** [1] - 25:16
**camps** [1] - 6:15
**candidly** [2] - 45:11, 48:19
**cannot** [2] - 5:10, 45:8
**Capital** [1] - 40:14
**capitalization** [1] - 40:1
**care** [2] - 18:19, 29:5
**Carolina** [1] - 30:7
**Cartel** [1] - 27:17
**cartel** [1] - 29:18
**Cartel-like** [1] - 27:17
**CASE** [1] - 1:2
**case** [57] - 5:25, 7:3, 7:8, 7:11, 9:13, 9:21, 11:5, 12:12, 14:19, 20:16, 20:17, 21:17, 21:21, 22:1, 22:15, 22:16, 22:19, 23:22, 24:25, 26:1, 26:15, 26:15, 28:23, 30:12, 30:21, 31:12, 31:19,

32:18, 32:19, 32:20, 33:3, 33:4, 33:22, 36:17, 36:18, 36:19, 36:20, 37:8, 37:19, 37:25, 39:1, 39:3, 40:7, 43:10, 43:18, 43:19, 46:10, 46:16, 46:19, 47:8, 47:9, 47:14, 47:25, 48:8, 48:13, 50:12
**cases** [35] - 5:18, 8:15, 8:17, 8:19, 8:20, 9:2, 10:5, 10:16, 11:4, 14:3, 14:5, 14:24, 17:19, 23:4, 32:13, 32:15, 32:18, 32:21, 33:6, 35:15, 36:3, 36:10, 36:17, 36:25, 38:4, 38:11, 40:9, 41:1, 41:2, 44:17, 45:15, 47:5, 47:7, 51:4
**Category** [1] - 5:17
**CECILIA** [1] - 1:10
**Central** [1] - 46:13
**centralized** [1] - 8:16
**cents** [1] - 22:22
**certainly** [2] - 16:1, 51:12
**Certificate...............
....** [1] - 4:16
**certification** [2] - 43:17, 45:18
**certified** [4] - 45:8, 45:18, 45:19, 45:20
**certify** [1] - 54:6
**chairmanship** [1] - 12:2
**chairpeople** [1] - 16:23
**chairs** [5] - 11:21, 11:22, 12:4, 22:21, 31:11
**challenged** [1] - 37:21
**challenges** [1] - 51:7
**chance** [1] - 12:1
**charge** [3] - 20:17, 20:18, 34:14
**Charles** [1] - 40:23
**Charleston** [1] - 2:3
**cherry** [1] - 51:20
**chime** [1] - 14:1
**choice** [5] - 7:1, 26:25, 27:1, 45:4
**chosen** [1] - 26:24
**Citadel** [2] - 9:23, 15:21
**cites** [1] - 27:15
**claim** [3] - 40:15, 48:22, 48:23

**claims** [37] - 8:21, 9:15, 10:10, 14:6, 15:9, 15:11, 15:15, 15:16, 15:17, 15:19, 15:20, 15:22, 16:12, 16:18, 17:11, 18:12, 18:22, 23:13, 32:5, 36:15, 37:14, 38:10, 38:13, 38:14, 38:17, 38:24, 39:6, 39:12, 39:20, 40:16, 40:20, 43:20, 43:23, 43:24, 44:16, 47:24, 48:2
**clarify** [1] - 11:17, 28:11
**clarity** [1] - 46:4
**class** [33] - 7:5, 11:25, 15:9, 18:24, 25:19, 25:23, 26:17, 27:8, 27:9, 33:19, 43:11, 43:14, 43:17, 43:23, 44:23, 45:1, 45:2, 45:7, 45:8, 45:17, 45:18, 45:19, 45:20, 48:3, 48:11, 48:12, 48:16, 52:5, 52:9, 52:15
**classes** [8] - 12:23, 15:8, 15:12, 31:16, 43:18, 43:21, 45:1, 45:2
**clauses** [4] - 44:20, 44:22, 45:17
**clear** [3] - 16:9, 45:12, 52:22
**clearly** [1] - 15:1
**clerked** [1] - 7:15
**client** [3] - 14:6, 16:13, 26:16
**clients** [1] - 14:4
**clinic** [1] - 50:20
**closer** [1] - 16:20
**co** [5] - 11:21, 11:22, 12:4, 12:11, 22:21, 31:11
**co-chairs** [5] - 11:21, 11:22, 12:4, 22:21, 31:11
**co-lead** [1] - 12:11
**coalition** [1] - 26:6
**coalitions** [1] - 27:3
**Coast** [2] - 24:25, 53:16
**cocounsel** [2] - 5:23, 21:25
**Cohen** [1] - 1:17, 8:10
**collaboration** [1] - 12:21
**collaborative** [1] - 12:15

**colleague** [3] - 6:17, 8:2, 8:23
**colleagues** [2] - 27:11, 49:17
**collective** [1] - 25:17
**combined** [1] - 41:23
**coming** [5] - 18:23, 45:13, 45:24, 50:15
**commence** [1] - 42:5
**comment** [3] - 17:3, 17:4, 18:1
**comments** [2] - 13:7, 47:19
**commitment** [1] - 25:18
**committees** [1] - 25:21
**common** [5] - 15:19, 35:15, 36:1, 43:12, 43:13
**communication** [1] - 14:15
**compel** [1] - 10:22
**competing** [4] - 26:4, 27:5, 33:6, 33:13
**competitive** [1] - 27:6
**complaint** [6] - 9:22, 10:4, 15:6, 24:6, 30:14, 33:20
**complaints** [12] - 12:19, 15:23, 18:5, 37:2, 37:3, 37:8, 37:13, 39:14, 39:16, 39:22, 40:4, 41:20
**completed** [2] - 13:5, 25:3
**completely** [1] - 38:10
**complex** [3] - 17:19, 26:13, 31:13
**Complex** [2] - 26:22, 29:17
**complexity** [4] - 15:13, 18:18, 32:19, 38:18
**complicated** [2] - 11:4, 15:8
**compromising** [1] - 25:23
**concept** [5] - 15:5, 22:15, 28:25, 29:22, 30:17
**concern** [3] - 10:3, 10:20, 50:23
**conclude** [2] - 17:6, 17:20
**conditional** [2] - 46:15, 46:17
**conduct** [2] - 37:21, 37:22
**confer** [7] - 11:11,

14:17, 19:17, 35:20, 49:16, 49:23, 51:2
**CONFERENCE** [1] - 1:9
**conference** [8] - 8:14, 13:11, 33:18, 33:23, 34:1, 34:5, 34:20, 53:12
**conferring** [1] - 24:13
**confers** [1] - 14:12
**confidentiality** [5] - 35:16, 40:10, 42:2, 42:22, 43:5
**confirming** [1] - 38:2
**Connecticut** [1] - 3:3
**consensus** [14] - 20:20, 22:3, 22:13, 23:11, 23:21, 26:6, 27:16, 30:20, 31:1, 31:2, 31:4, 35:13
**consensus-based** [1] - 31:4
**consistent** [4] - 17:4, 18:25, 26:12, 37:24
**consists** [1] - 15:19
**consolidated** [12] - 9:22, 12:19, 18:5, 18:12, 24:6, 33:19, 37:1, 37:8, 39:14, 39:16, 40:4
**conspiracy** [1] - 38:17
**constitute** [1] - 15:17
**construction** [1] - 16:14
**consumer** [1] - 15:20
**contact@ saverilawfirm.com** [1] - 2:8
**contains** [1] - 43:3
**contest** [1] - 28:13
**context** [3] - 38:5, 40:4, 48:4
**continue** [2] - 12:21, 31:10
**CONTINUED** [2] - 2:1, 3:1
**contract** [1] - 15:19
**contracts** [1] - 39:19
**contrary** [1] - 39:17
**contrast** [1] - 27:11
**contrasted** [1] - 27:13
**controlled** [1] - 23:16
**conversations** [1] - 47:18
**cooperation** [2] - 6:12, 14:14
**coordinate** [1] - 24:21
**coordinated** [1] - 6:22
**coordination** [1] - 35:12

**Coral** [2] - 1:19, 8:10
**correct** [4] - 17:4, 31:24, 33:2, 52:20
**counsel** [33] - 6:9, 6:17, 6:24, 7:13, 8:5, 8:14, 10:9, 11:18, 13:5, 13:9, 14:7, 17:5, 18:1, 22:9, 24:12, 24:13, 24:25, 25:7, 26:16, 26:24, 32:12, 32:13, 32:14, 32:25, 33:22, 39:12, 39:13, 47:19, 50:12, 51:13, 52:5, 52:9, 52:15
**counted** [1] - 38:15
**countless** [1] - 30:12
**couple** [2] - 10:16, 50:14
**course** [12] - 10:12, 11:9, 11:12, 12:18, 12:22, 14:7, 38:8, 39:8, 41:15, 46:24, 51:3
**court** [15] - 7:16, 12:11, 27:9, 38:3, 44:24, 45:6, 45:15, 46:11, 46:13, 46:22, 47:16, 47:21, 47:24, 49:6
**Court** [43] - 3:7, 4:16, 5:20, 6:3, 7:1, 7:18, 8:17, 14:25, 17:18, 19:18, 19:23, 20:20, 20:21, 24:7, 24:19, 25:11, 25:14, 25:17, 26:18, 26:25, 27:4, 27:7, 27:25, 36:21, 38:23, 38:25, 43:1, 44:12, 45:7, 45:16, 45:22, 45:23, 46:5, 46:8, 46:19, 46:20, 47:3, 49:1, 50:2, 54:11
**COURT** [60] - 1:1, 5:2, 5:22, 6:4, 8:7, 9:4, 9:7, 11:16, 12:5, 12:24, 13:3, 13:18, 13:20, 13:24, 16:17, 17:6, 17:22, 18:2, 18:10, 19:9, 20:8, 21:8, 22:24, 23:3, 23:7, 24:9, 25:1, 25:5, 28:6, 31:17, 31:25, 33:1, 33:16, 34:16, 34:24, 35:4, 35:10, 37:10, 39:3, 39:8, 41:14, 42:6, 42:20, 44:3, 45:25, 46:6, 47:5, 48:6,

49:11, 49:18, 50:3, 50:7, 50:10, 51:16, 51:22, 52:25, 53:5, 53:9, 53:18, 53:21
**Court's** [8] - 14:9, 17:19, 24:16, 26:12, 27:14, 42:17, 49:7
**Courtroom** [1] - 1:7
**courts** [1] - 12:11
**COVID** [1] - 35:18
**Cravath** [3] - 2:20, 13:22, 19:8
**creation** [1] - 17:15
**Crutcher** [1] - 40:22
**Cuban** [1] - 25:17
**cue** [1] - 9:9
**customer** [1] - 38:1

# D

**D.C** [1] - 3:4
**data** [2] - 40:15, 40:16
**DATE** [1] - 54:11
**date** [4] - 34:1, 50:1, 52:9
**dates** [6] - 19:6, 19:20, 20:2, 32:3, 33:8, 33:15
**days** [9] - 18:16, 19:2, 19:11, 19:19, 24:5, 29:13, 34:12, 49:17
**de** [1] - 1:18
**deadline** [9] - 23:17, 24:23, 32:8, 51:25, 52:2, 52:4, 52:14, 52:16, 52:23
**deadlines** [2] - 33:18, 45:13
**deal** [10] - 6:12, 7:14, 10:3, 10:6, 10:7, 11:5, 33:5, 37:4, 42:18, 50:22
**dealer** [2] - 10:1, 16:11
**dealers** [3] - 15:24, 16:18, 38:3
**dealmaking** [3] - 27:17, 28:21, 28:22
**deals** [2] - 28:24, 31:3
**deceptive** [1] - 39:24
**decision** [7] - 10:10, 20:18, 20:23, 21:6, 40:1, 45:8, 45:17
**decisions** [2] - 19:16, 34:14
**Defendant** [2] - 10:19, 36:19
**Defendants** [28] - 8:21, 9:24, 10:15, 10:20, 11:7, 11:10,

13:12, 13:23, 14:21, 14:22, 15:25, 19:8, 19:14, 19:17, 19:21, 20:3, 36:5, 36:21, 37:19, 37:24, 38:16, 38:17, 40:23, 41:18, 41:21, 42:1, 42:14
**DEFENDANTS** [2] - 2:20, 3:2
**Defendants'** [1] - 44:11
**Defense** [5] - 6:9, 8:14, 18:1, 19:5, 37:11
**delay** [1] - 6:25
**deposition** [2] - 35:17, 42:2
**descent** [1] - 25:17
**described** [2] - 16:16, 26:20
**desires** [1] - 29:9
**detail** [1] - 11:11
**details** [1] - 28:19
**determine** [1] - 37:8
**determining** [1] - 26:25
**development** [1] - 26:1
**Diamond** [1] - 47:11
**different** [16] - 6:15, 9:16, 15:10, 19:21, 21:23, 22:21, 23:21, 32:3, 32:7, 37:12, 38:23, 41:3, 41:11, 42:15, 44:22
**difficult** [1] - 10:5
**difficulty** [1] - 11:7
**dilute** [1] - 27:21
**directed** [1] - 53:10
**directives** [1] - 24:17
**directly** [3] - 7:17, 32:24
**disagree** [2] - 39:18, 42:7
**disagreeing** [1] - 18:1
**disagreement** [4] - 7:20, 12:17, 15:4, 30:1
**disagreements** [2] - 35:23, 35:24
**discovery** [30] - 10:13, 17:17, 35:5, 35:16, 36:12, 36:13, 37:1, 37:6, 37:12, 37:14, 38:9, 38:11, 38:18, 38:19, 39:1, 39:15, 40:17, 40:19, 41:3, 41:5, 41:7, 41:9, 41:13, 41:17, 41:19, 41:23, 42:1, 42:4,

42:13
**discrete** [2] - 14:10, 14:23
**discretely** [1] - 16:3
**discuss** [2] - 6:9, 36:4
**discussed** [1] - 52:3
**discussing** [1] - 33:5
**discussion** [5] - 7:11, 8:18, 9:14, 34:24, 53:11
**discussions** [1] - 52:12
**disfavor** [1] - 27:18
**dismiss** [13] - 10:3, 10:6, 14:23, 16:1, 16:5, 17:11, 17:15, 17:25, 37:20, 38:21, 43:9, 43:16, 47:1
**dismissal** [4] - 47:9, 47:15, 47:18, 48:22
**dismissed** [2] - 47:11, 48:14
**dismissing** [2] - 47:20, 48:22
**distortion** [1] - 48:4
**DISTRICT** [3] - 1:1, 1:1, 1:10
**district** [2] - 6:1, 6:20
**District** [7] - 44:18, 46:13, 47:13, 48:11, 48:14, 48:18, 51:9
**divergence** [1] - 41:15
**diverse** [5] - 22:20, 25:18, 25:22, 29:3, 29:11
**diversity** [2] - 8:3, 22:18
**DIVISION** [1] - 1:2
**division** [1] - 9:2
**Docket** [8] - 7:7, 24:17, 28:2, 31:19, 32:2, 32:20, 33:2, 33:17
**docket** [5] - 32:24, 42:25, 49:3, 49:6, 50:4
**docketed** [2] - 48:25, 49:21
**document** [2] - 10:17, 43:3
**documented** [1] - 49:6
**documents** [3] - 42:17, 42:23, 53:12
**done** [8] - 12:12, 14:1, 17:25, 22:5, 22:9, 28:13, 37:7, 42:4
**down** [6] - 10:23, 16:22, 29:19, 45:24
**drafting** [2] - 30:13, 42:22

**dream** [1] - 11:21
**drew** [1] - 21:13
**Drive** [1] - 2:17
**drive** [1] - 34:6
**due** [4] - 49:12, 49:17, 49:19, 50:1
**Dunn** [2] - 3:3, 40:22
**duplication** [4] - 10:12, 10:13, 10:21, 35:13
**during** [5] - 11:11, 37:22, 47:19, 51:2, 52:12
**duty** [1] - 39:23

# E

**early** [5] - 8:25, 22:4, 36:20, 44:12, 53:15
**easier** [1] - 42:12
**easily** [1] - 22:11
**easy** [1] - 39:13
**echo** [2] - 14:13, 34:8
**efficiencies** [2] - 16:4, 38:12
**efficiency** [3] - 6:20, 14:9, 14:20
**efficient** [1] - 19:13
**effort** [3] - 10:13, 10:21, 12:15
**Eighth** [1] - 2:21
**either** [10] - 7:13, 7:22, 23:19, 26:18, 26:21, 29:5, 29:13, 30:24, 34:13, 49:22
**elect** [2] - 45:10, 45:15
**eliminated** [1] - 27:21
**end** [8] - 5:10, 13:16, 24:4, 24:24, 27:5, 27:19, 41:8, 43:18
**endeavor** [1] - 10:5
**ended** [2] - 28:17, 39:3
**endorse** [2] - 34:3, 51:15
**energetic** [1] - 31:14
**energy** [3] - 21:20, 41:15, 42:16
**engage** [1] - 14:11
**engaged** [3] - 31:10, 40:16
**engaging** [1] - 6:5
**enormous** [1] - 41:2
**enter** [2] - 27:25, 32:7
**entered** [3] - 28:1, 32:1, 46:15
**entering** [1] - 53:13
**entirely** [1] - 45:12
**entitled** [3] - 41:10, 45:5, 54:8

**Entry** [8] - 7:8, 24:18, 28:2, 31:19, 32:2, 32:20, 33:2, 33:17
**envision** [3] - 11:18, 12:3, 20:12
**ESI** [2] - 35:16, 42:2
**ESQ** [12] - 1:12, 1:13, 1:13, 1:17, 1:21, 2:2, 2:5, 2:9, 2:12, 2:16, 2:20, 3:2
**essentially** [7] - 16:19, 16:24, 17:3, 21:22, 22:6, 28:1, 28:14
**establish** [1] - 45:10
**established** [1] - 18:16
**event** [2] - 41:19, 45:14
**events** [1] - 10:24
**EVIDENCE** [1] - 4:10
**exactly** [3] - 27:9, 27:22, 32:20
**example** [1] - 49:7
**exception** [1] - 44:16
**excluding** [2] - 9:14, 9:19
**exclusive** [2] - 30:24, 31:9
**excuse** [2] - 21:2, 21:10
**EXHIBITS** [1] - 4:10
**existence** [2] - 15:8, 38:9
**expand** [1] - 40:18
**expect** [2] - 46:22, 48:5
**expectation** [1] - 47:18
**expeditiously** [1] - 30:22
**experience** [7] - 6:21, 11:6, 31:13, 31:15, 41:1, 41:12, 51:9
**experienced** [6] - 11:25, 12:1, 25:21, 28:25, 29:1, 30:20
**explain** [1] - 29:15
**explicit** [1] - 37:25
**express** [1] - 21:24
**expressed** [1] - 7:22
**expressly** [1] - 44:23
**extent** [1] - 49:3
**extra** [1] - 29:13

# F

**FAA** [1] - 46:3
**faces** [1] - 53:23
**facilitate** [2] - 7:14, 7:23

**fact** [5] - 14:5, 30:17, 38:2, 38:9, 45:13
**factors** [1] - 27:19
**facts** [1] - 16:25
**fail** [1] - 7:8
**fair** [6] - 20:15, 21:10, 25:8, 35:1, 37:16, 37:17
**fairly** [1] - 25:16
**fall** [1] - 8:20
**fantastic** [1] - 12:13
**far** [5] - 12:14, 14:4, 14:13, 38:4, 45:12
**Farm** [3] - 6:23, 7:8, 31:19
**Farm-Raised** [3] - 6:23, 7:8, 31:19
**fashion** [1] - 18:22
**favor** [1] - 27:18
**favorable** [1] - 26:2
**federal** [14] - 9:15, 15:16, 23:13, 24:4, 24:6, 32:5, 32:14, 32:18, 33:6, 40:7, 44:24, 45:6, 45:15, 46:11
**Federal** [1] - 33:14
**federal-based** [1] - 9:15
**Ferraro** [2] - 1:14, 5:20
**few** [5] - 9:22, 15:22, 15:24
**fiduciary** [1] - 39:23
**figure** [1] - 43:2
**file** [11] - 23:17, 24:5, 30:14, 31:2, 32:15, 41:22, 42:25, 46:2, 47:17, 47:21, 49:25
**filed** [34] - 5:25, 6:10, 8:13, 8:15, 23:18, 23:20, 23:22, 23:23, 32:9, 32:23, 32:24, 36:20, 39:15, 40:5, 40:7, 40:20, 41:6, 41:7, 41:18, 41:20, 44:17, 45:3, 46:10, 46:22, 47:12, 47:14, 47:15, 48:2, 48:10, 48:12, 48:15, 48:16
**filer** [1] - 48:18
**filing** [10] - 18:4, 24:21, 32:8, 33:18, 37:1, 37:13, 41:5, 42:12, 42:23, 45:25, 52:6
**filings** [1] - 42:21
**final** [3] - 15:22, 19:17, 48:7
**fine** [1] - 34:13
**finish** [1] - 21:3

**finished** [1] - 13:6
**FINRA** [1] - 44:21
**firm** [8] - 7:17, 13:2, 22:10, 23:18, 32:12, 33:12, 33:13, 50:16
**Firm** [7] - 1:14, 2:2, 2:6, 2:9, 5:21, 25:11, 30:5
**firms** [4] - 22:16, 22:21, 28:20, 29:4
**first** [10] - 5:4, 25:16, 26:15, 30:11, 36:6, 43:8, 44:14, 48:15, 51:13
**Fisher** [3] - 2:13, 33:12, 33:13
**fit** [1] - 32:20
**five** [5] - 15:23, 16:12, 16:17
**FL** [3] - 1:15, 1:19, 2:14
**Floor** [3] - 2:10, 3:8, 54:12
**FLORIDA** [1] - 1:1
**Florida** [4] - 1:4, 3:8, 47:13, 54:12
**fly** [1] - 34:9
**folks** [2] - 31:12, 52:17
**follow** [2] - 6:23, 32:22
**following** [2] - 5:1, 33:22
**footnote** [1] - 27:15
**FOR** [6] - 1:12, 2:2, 2:20, 3:2, 4:4, 4:7
**foregoing** [1] - 54:6
**foresee** [1] - 15:10
**forma** [1] - 36:9
**formal** [1] - 5:12
**former** [1] - 8:1
**forth** [2] - 26:23, 27:11
**forward** [9] - 12:7, 14:19, 30:22, 37:12, 37:15, 38:12, 40:16, 43:21, 53:11
**four** [5] - 15:6, 16:2, 16:8, 29:13, 33:4
**fourth** [1] - 16:9
**framed** [1] - 21:6
**Francisco** [3] - 1:22, 2:7, 8:24
**frankly** [1] - 44:4
**free** [2] - 31:2, 31:7
**Friday** [10] - 22:3, 22:5, 23:20, 29:14, 52:1, 52:3, 52:12, 52:14, 52:22
**friend** [1] - 21:14
**front** [1] - 34:14
**fruitful** [1] - 53:16
**fully** [1] - 46:17

**fund** [1] - 10:1
**Furst** [12] - 7:12, 7:15, 7:16, 7:24, 8:8, 8:9, 24:10, 26:20, 31:22, 32:11, 33:2, 52:1
**furst** [1] - 6:3
**FURST** [8] - 1:17, 8:9, 24:10, 31:24, 32:17, 52:2, 52:11, 53:25
**Furst's** [2] - 7:21, 25:1

## G

**Gables** [2] - 1:19, 8:10
**gathering** [2] - 5:3
**Gatz** [1] - 51:19
**gelled** [1] - 29:12
**general** [5] - 9:11, 12:16, 22:17, 26:6, 30:19
**generally** [6] - 9:1, 9:21, 10:17, 11:1, 25:22, 31:5
**generate** [1] - 5:11
**generation** [1] - 25:16
**Gibson** [2] - 3:3, 40:22
**Gilbert** [2] - 7:17, 31:23
**given** [8] - 14:15, 18:17, 23:15, 23:25, 38:8, 41:15, 47:23, 53:12
**governing** [1] - 19:16
**granted** [1] - 47:9
**great** [5] - 6:11, 7:14, 13:14, 21:17, 29:11
**gross** [1] - 39:20
**GROSSMAN** [1] - 52:21
**Grossman** [6] - 1:17, 7:12, 7:17, 8:10, 24:11, 52:21
**grossman** [1] - 52:25
**grounds** [3] - 38:6, 48:15
**group** [6] - 9:12, 23:11, 24:12, 25:13, 29:11, 31:14
**grouping** [3] - 5:18, 8:5, 8:19
**groupings** [2] - 18:3, 27:18
**groups** [5] - 14:10, 15:7, 17:16, 33:4, 41:4
**guess** [6] - 11:8, 14:1, 16:10, 17:9, 18:21, 32:9
**guide** [1] - 31:15
**guiding** [2] - 14:8,

14:9

## H

**happy** [6] - 11:14, 20:24, 24:15, 24:20, 29:6, 34:9
**hard** [1] - 47:23
**head** [1] - 49:14
**hear** [6] - 7:20, 11:10, 13:10, 21:19, 41:25, 53:22
**heard** [7] - 16:7, 33:10, 33:23, 35:11, 42:9, 51:17, 53:7
**hearing** [10] - 5:4, 5:11, 6:18, 20:24, 31:20, 46:12, 47:10, 51:17, 51:23, 53:3
**hearings** [2] - 50:14, 50:22
**hedge** [1] - 10:1
**held** [1] - 5:1
**help** [3] - 21:21, 51:10, 51:21
**helped** [1] - 51:1
**helping** [2] - 28:25, 50:13
**hereby** [1] - 54:6
**hinder** [1] - 36:11
**hog** [1] - 13:11
**holders** [1] - 11:1
**honestly** [1] - 10:3
**Honor** [114] - 5:25, 6:9, 6:20, 7:2, 7:5, 8:9, 8:13, 8:16, 9:6, 9:16, 10:6, 10:20, 11:6, 11:14, 11:20, 11:23, 12:8, 13:1, 13:8, 13:17, 13:21, 14:2, 14:14, 15:18, 16:9, 16:19, 17:8, 17:21, 18:6, 18:13, 18:15, 19:7, 19:24, 20:13, 20:19, 21:2, 21:7, 21:11, 21:12, 21:24, 22:22, 23:1, 23:5, 23:9, 24:10, 25:10, 27:22, 28:3, 28:5, 28:10, 29:6, 29:14, 29:25, 30:3, 30:5, 32:4, 32:17, 33:11, 34:2, 34:8, 34:9, 34:11, 34:18, 34:22, 35:6, 35:8, 35:21, 36:5, 36:16, 36:18, 36:21, 37:2, 37:18, 38:5, 38:8, 38:15, 38:20, 39:5, 39:7, 39:17, 40:6,

40:21, 41:24, 42:9, 43:7, 44:10, 45:11, 46:2, 46:7, 46:12, 46:18, 47:2, 47:8, 47:9, 47:12, 48:4, 48:7, 48:19, 49:2, 49:5, 49:13, 49:16, 49:23, 49:25, 50:6, 50:9, 51:3, 51:5, 51:19, 52:8, 53:4, 53:17, 53:25, 54:1
**Honor's** [5] - 6:21, 43:15, 44:1, 49:6, 52:13
**HONORABLE** [1] - 1:10
**honored** [1] - 24:15
**hope** [2] - 23:1, 53:15
**hopefully** [6] - 13:10, 13:15, 22:19, 28:14, 29:21, 50:25
**hoping** [1] - 20:20
**hours** [3] - 30:13, 30:18
**housekeeping** [1] - 44:12
**hundred** [2] - 22:13, 22:14
**hundreds** [2] - 6:7, 28:13

## I

**idea** [1] - 11:22
**ideas** [2] - 20:16, 30:16
**identical** [1] - 48:12
**identified** [3] - 14:10, 15:1, 18:20
**identify** [1] - 51:21
**Illinois** [1] - 44:18
**imagine** [2] - 20:19, 47:23
**impact** [2] - 10:25, 22:20
**impacted** [1] - 30:15
**important** [2] - 8:2, 25:25
**impression** [1] - 20:23
**IN** [2] - 1:4, 4:10
**inadequate** [1] - 39:25
**include** [2] - 33:8, 40:19
**included** [1] - 10:11
**includes** [1] - 25:21
**including** [1] - 8:1
**incorporating** [1] - 12:13
**increasing** [1] - 25:24
**incredible** [1] - 37:22

**independently** [1] - 37:24
**indicate** [2] - 35:24, 41:17
**indicated** [2] - 33:17, 40:8
**individual** [7] - 15:9, 43:23, 44:16, 44:18, 45:5, 45:11, 51:20
**individuals** [3] - 44:19, 45:4, 45:9
**inefficiencies** [2] - 17:16, 38:19
**information** [2] - 42:24, 44:6
**informed** [1] - 43:20
**initial** [2] - 17:7, 25:12
**insofar** [1] - 44:23
**instance** [1] - 51:13
**instead** [1] - 18:6
**interests** [1] - 29:9
**interim** [5] - 7:13, 7:22, 22:9, 24:13, 32:25
**internally** [1] - 17:5
**International** [1] - 2:17
**interrupt** [1] - 23:2
**interval** [2] - 19:3, 20:3
**intrafirm** [1] - 22:20
**introduce** [2] - 7:25, 8:23
**introduces** [1] - 15:12
**introduction** [3] - 8:11, 13:17, 21:16
**involve** [2] - 14:5, 16:12
**involved** [2] - 40:14, 50:12
**irrespective** [1] - 31:11
**issue** [18] - 8:3, 8:4, 10:22, 13:17, 14:2, 17:8, 17:16, 22:13, 22:25, 29:24, 35:7, 39:10, 39:25, 43:25, 45:23, 46:21, 49:5, 50:1
**issued** [1] - 48:21
**issues** [23] - 5:16, 5:18, 6:13, 8:19, 11:3, 12:18, 14:6, 14:24, 15:1, 16:3, 16:15, 18:20, 19:22, 35:15, 36:24, 39:21, 40:2, 40:3, 43:13, 44:11, 44:12, 46:23, 46:24
**IT** [1] - 53:4

**item** [5] - 18:10, 44:9, 44:14, 46:7, 47:2
**Item** [4] - 18:11, 21:8, 35:4, 43:6
**items** [2] - 6:10, 37:7
**Items** [1] - 34:25

## J

**JANUARY** [1] - 1:4
**January** [1] - 10:25
**JASON** [1] - 3:2
**Jason** [1] - 40:22
**Jeff** [1] - 5:24
**Jeffrey** [2] - 35:7, 41:24
**JEFFREY** [2] - 1:13, 2:16
**jmendro@ gibsondunn.com** [1] - 3:5
**job** [2] - 12:13, 27:10
**joined** [1] - 15:2
**joining** [1] - 47:6
**joint** [7] - 5:14, 6:10, 8:13, 14:18, 35:23, 35:24, 41:18
**JOSEPH** [1] - 2:5
**Joseph** [6] - 2:6, 18:13, 19:24, 20:13, 34:11, 51:5
**JPML** [1] - 6:1
**judge** [1] - 48:13
**JUDGE** [1] - 1:10
**Judge** [3] - 5:19, 12:12, 52:22
**jump** [1] - 8:12
**Juncadella** [1] - 5:24
**junto** [1] - 29:18
**jurisdiction** [1] - 46:25

## K

**keep** [3] - 45:15, 46:8, 53:2
**KEVIN** [1] - 2:20
**Kevin** [5] - 13:21, 17:3, 19:7, 42:8, 44:10
**Kevin's** [1] - 17:3
**KIM** [4] - 2:9, 23:9, 32:4, 40:6
**Kim** [6] - 23:9, 24:9, 32:4, 32:21, 33:1, 33:15
**Kim's** [1] - 33:12
**kind** [4] - 13:16, 18:25, 35:18, 51:12
**kindly** [1] - 49:17
**KLAFTER** [7] - 2:16,

35:6, 35:11, 39:7, 39:9, 41:24, 43:7
**Klafter** [6] - 35:7, 35:8, 37:10, 40:8, 41:24, 43:4
**klafter** [1] - 2:16
**knowing** [1] - 30:14
**knowledge** [1] - 48:2
**knows** [2] - 7:2, 7:5
**korsini@cravath. com** [1] - 2:23
**Krasowski** [1] - 35:9
**Krukever** [1] - 36:19
**Kwatinetz** [1] - 5:24
**KWATINETZ** [1] - 1:13

## L

**label** [1] - 12:18
**labeled** [1] - 16:10
**labeling** [1] - 9:25
**laid** [1] - 15:5
**language** [2] - 33:4, 39:20
**large** [2] - 5:3, 6:21
**larger** [2] - 10:17, 50:22
**last** [7] - 6:5, 6:10, 8:15, 14:17, 17:2, 28:22, 38:15
**late** [1] - 30:13
**law** [3] - 7:17, 15:19, 22:10
**Law** [8] - 1:14, 2:2, 2:6, 2:9, 5:20, 13:2, 25:11, 30:5
**lawyer** [5] - 11:25, 30:2, 30:8, 30:20, 30:21
**lawyering** [2] - 21:18, 22:18
**lawyers** [27] - 7:25, 9:12, 9:18, 12:13, 14:10, 14:16, 17:1, 19:5, 22:12, 23:8, 26:18, 26:24, 27:5, 27:10, 27:18, 28:16, 28:17, 29:1, 29:9, 29:19, 29:23, 31:9, 31:20, 34:21, 42:15, 51:10, 53:9
**lead** [14] - 11:18, 12:4, 12:11, 13:5, 17:16, 23:25, 29:10, 32:14, 39:11, 39:12, 50:12, 52:5, 52:15, 53:10
**lead-plaintiff** [1] - 23:25
**leaders** [1] - 27:8
**leadership** [33] - 7:3,

8:3, 18:16, 19:2, 19:12, 19:18, 20:10, 20:11, 21:4, 23:12, 23:15, 25:4, 25:12, 25:14, 25:20, 25:21, 25:24, 26:4, 26:19, 27:6, 31:2, 32:22, 33:13, 33:24, 34:5, 35:14, 35:20, 37:5, 40:9, 40:11, 50:25, 52:3
**leading** [1] - 14:10
**least** [15] - 6:25, 8:25, 15:4, 16:7, 16:14, 19:11, 24:3, 36:8, 37:25, 42:12, 45:7, 46:21, 47:25, 48:5, 48:17
**leave** [2] - 15:7, 30:1
**left** [1] - 16:22
**legal** [1] - 50:20
**Leon** [1] - 1:18
**less** [3] - 12:1, 22:14, 27:16
**Lesser** [2] - 2:16, 35:8
**letting** [1] - 51:6
**level** [3] - 8:3, 15:12, 32:19
**liaison** [4] - 7:13, 24:13, 32:12, 32:25
**liberally** [1] - 10:1
**liberties** [1] - 39:20
**Lieff** [1] - 21:14
**light** [2] - 26:2, 26:10
**likelihood** [1] - 38:6
**likely** [1] - 49:2
**limit** [1] - 37:22
**line** [2] - 24:16
**lines** [1] - 22:1
**list** [2] - 5:11, 5:16
**listing** [1] - 8:15
**LITIGATION** [1] - 1:4
**litigation** [8] - 5:5, 26:14, 31:13, 41:2, 41:8, 44:15, 44:24, 48:10
**Litigation** [6] - 6:24, 7:18, 24:17, 26:17, 28:2, 29:17
**Litigations** [1] - 26:22
**LLP** [3] - 1:21, 2:16, 2:20
**log** [1] - 53:2
**look** [4] - 28:25, 43:25, 50:3, 53:11
**looking** [4] - 16:24, 21:24, 49:4, 52:8
**looks** [1] - 48:24

## M

**Madison** [1] - 2:10
**magistrate** [4] - 48:13, 48:17, 48:20, 48:21
**mailed** [1] - 49:21
**majorities** [1] - 27:3
**majority** [3] - 14:4, 14:5, 27:12
**majority-trounces-minority** [1] - 27:12
**makeup** [1] - 25:22
**manageable** [1] - 19:22
**management** [1] - 11:5
**manual** [4] - 26:13, 27:2, 27:4, 27:15
**Manual** [2] - 26:22, 29:17
**map** [1] - 6:2
**March** [1] - 48:23
**MARKED** [1] - 4:10
**market** [2] - 27:6, 37:23
**mass** [1] - 43:24
**massive** [1] - 38:18
**match** [1] - 14:8
**material** [1] - 41:7
**matter** [9] - 17:10, 25:12, 41:12, 42:1, 47:11, 47:12, 48:7, 51:4, 54:8
**matters** [3] - 7:19, 40:12, 46:8
**maximizes** [1] - 27:23
**McCARN** [2] - 3:6, 54:11
**MDL** [11] - 7:18, 11:25, 14:3, 26:16, 31:13, 40:14, 44:4, 45:16, 47:6, 47:20, 49:6
**MDLs** [3] - 6:21, 17:19, 41:1
**mean** [2] - 16:17, 30:24
**meaningful** [2] - 7:1, 14:11
**means** [1] - 15:5
**meantime** [1] - 38:24
**mechanical** [1] - 23:16
**meet** [7] - 11:11, 14:12, 14:17, 35:20, 49:16, 49:23, 51:2
**meet-and-confer** [1] - 14:17
**meet-and-confers** [1] - 14:12
**members** [1] - 45:19

**memoranda** [1] - 33:9
**MENDRO** [2] - 3:2, 40:21
**Mendro** [2] - 40:22, 41:14
**mention** [2] - 11:12, 36:14
**mentioned** [2] - 11:16, 15:22, 40:10
**mentoring** [1] - 22:21
**merge** [1] - 17:2
**merit** [1] - 38:4
**merits** [3] - 7:4, 38:7, 38:24
**met** [1] - 36:22
**MIAMI** [1] - 1:2
**Miami** [9] - 1:4, 1:15, 2:14, 3:7, 3:8, 29:20, 34:9, 54:12, 54:12
**Middle** [1] - 47:12
**Mike** [3] - 5:8, 5:11, 53:1
**mind** [1] - 28:8
**mine** [1] - 21:14
**minimizes** [1] - 14:25
**minimum** [1] - 12:3
**Minnesota** [4] - 48:11, 48:14, 48:18, 48:25
**minority** [1] - 27:12
**minute** [1] - 26:3
**MISCELLANEOUS** [1] - 4:14
**mispronouncing** [1] - 48:8
**missing** [1] - 16:25
**mix** [1] - 25:25
**modes** [1] - 43:6
**Monday** [11] - 22:5, 22:6, 23:22, 24:22, 29:14, 32:9, 52:1, 52:3, 52:10, 52:16, 52:23
**Moody** [1] - 12:9
**Moore** [2] - 2:20, 13:22
**morning** [19] - 5:2, 5:4, 5:19, 5:21, 5:22, 8:9, 8:18, 8:25, 9:6, 9:7, 13:21, 13:24, 13:25, 22:5, 25:10, 33:11, 35:12, 47:10, 52:21
**morning's** [4] - 5:11, 51:17, 53:2, 53:10
**most** [4] - 6:12, 11:6, 19:12, 29:8
**motion** [24] - 10:3, 10:6, 14:23, 16:1, 16:5, 17:11, 23:18, 33:14, 36:16, 37:3,

38:21, 39:10, 40:5, 41:16, 41:18, 41:23, 42:13, 46:1, 46:13, 47:1, 47:14, 52:14, 52:15
**motions** [23] - 10:21, 17:14, 17:25, 18:23, 19:16, 22:24, 23:17, 23:20, 23:23, 32:9, 32:15, 32:24, 33:6, 36:20, 37:20, 39:2, 41:6, 43:9, 43:16, 43:17, 44:2, 46:3, 49:8
**movants** [1] - 24:1
**move** [3] - 38:22, 44:25, 45:1
**moving** [3] - 30:21, 35:4, 37:12
**MR** [67] - 9:6, 9:8, 11:20, 12:8, 13:1, 13:4, 13:8, 13:19, 13:21, 13:25, 16:19, 17:8, 17:24, 18:4, 18:13, 19:7, 19:10, 19:24, 20:13, 21:10, 21:12, 23:1, 23:4, 23:8, 23:9, 25:2, 25:6, 25:10, 28:5, 28:7, 28:8, 28:9, 28:10, 30:4, 32:4, 34:2, 34:8, 34:11, 34:17, 34:18, 35:6, 35:11, 37:17, 39:5, 39:7, 39:9, 40:6, 40:21, 41:24, 42:8, 43:7, 44:10, 46:2, 46:7, 47:7, 48:7, 49:13, 49:19, 50:6, 50:9, 50:11, 51:5, 51:19, 52:7, 52:21, 53:17, 53:19
**MS** [11] - 5:19, 5:23, 6:5, 8:9, 24:10, 31:24, 32:17, 33:11, 52:2, 52:11, 53:25
**multidistrict** [1] - 5:5
**multiple** [1] - 10:21
**mute** [3] - 5:8, 24:7, 30:3
**mutually** [2] - 30:24, 31:9

## N

**name** [3] - 5:7, 5:20, 33:11
**names** [3] - 5:5, 32:3, 51:20
**Natalia** [3] - 5:20,

8:11, 8:15
**NATALIA** [1] - 1:12
**national** [1] - 25:25
**naturally** [2] - 8:20, 10:2
**nature** [1] - 47:23
**necessary** [3] - 24:2, 35:19, 42:17
**need** [8] - 5:12, 10:8, 29:12, 32:21, 35:24, 41:22, 47:22, 50:18
**needed** [1] - 22:18
**needs** [1] - 49:3
**Ness** [1] - 1:22
**never** [4] - 26:9, 28:12, 28:20, 30:17
**New** [3] - 2:10, 2:22, 35:8
**new** [4] - 19:14, 27:10, 33:3, 47:17
**newer** [1] - 25:21
**next** [7] - 11:20, 13:13, 21:1, 36:13, 53:12
**nice** [1] - 53:22
**night** [2] - 8:15, 30:13
**nms@ferrarolaw. com** [1] - 1:16
**NO** [1] - 1:2
**nominated** [2] - 18:14, 24:12
**none** [2] - 13:23, 25:2
**nonfederal** [1] - 40:11
**nonmonopoly** [1] - 10:4
**nonoppositions** [1] - 23:19
**nonsecurities** [2] - 10:4, 36:25
**North** [2] - 3:7, 54:12
**Northern** [2] - 44:18, 51:8
**Northwest** [1] - 3:3
**note** [1] - 30:23
**noted** [2] - 8:13, 17:9
**nothing** [1] - 53:14
**notice** [1] - 47:15
**number** [9] - 6:7, 14:16, 14:20, 35:14, 38:17, 39:22, 39:23, 51:8
**numerous** [1] - 6:6
**NY** [3] - 2:10, 2:17, 2:22

## O

**objected** [2] - 46:17, 48:23
**objection** [7] - 31:25, 32:11, 48:24, 49:2,

49:21, 49:25, 50:3
**objections** [1] - 49:12
**obtain** [1] - 41:9
**obviously** [13] - 17:14, 20:15, 30:13, 30:14, 30:15, 31:1, 31:6, 31:11, 32:2, 47:8, 47:22, 48:20, 49:9
**occur** [1] - 31:6
**occurs** [1] - 41:3
**OF** [1] - 1:1
**offense** [1] - 28:21
**offer** [1] - 34:23
**offered** [1] - 31:22
**office** [1] - 19:4
**official** [1] - 3:7
**Official** [1] - 54:11
**once** [9] - 13:7, 19:13, 20:3, 20:21, 24:3, 26:6, 34:5, 44:25, 46:4
**One** [1] - 40:14
**one** [33] - 5:17, 7:6, 7:10, 9:22, 10:4, 10:14, 10:15, 12:3, 14:20, 15:5, 16:10, 18:20, 18:21, 22:6, 22:15, 26:18, 29:3, 29:23, 35:15, 38:3, 39:11, 39:12, 39:15, 43:11, 43:19, 46:10, 46:20, 47:9, 47:10, 48:1, 49:17, 50:7
**open** [3] - 27:9, 30:16, 52:13
**opinion** [1] - 15:7
**opportunity** [4] - 13:12, 13:16, 14:22, 52:17
**opposed** [1] - 28:24
**opposition** [5] - 24:2, 25:1, 32:8, 33:10, 33:15, 41:25, 49:25
**oppositions** [1] - 23:22
**opt** [1] - 45:19
**Option** [2] - 26:23, 27:4
**options** [1] - 27:7
**order** [24] - 5:16, 7:5, 7:7, 11:5, 18:7, 27:14, 28:1, 31:19, 31:21, 31:23, 32:1, 33:2, 33:3, 34:3, 35:16, 41:17, 42:2, 43:3, 46:15, 49:7, 51:24, 52:5, 52:8, 53:13
**ordered** [1] - 25:14
**orderly** [1] - 18:22

orders [5] - 17:19, 21:24, 40:10, 42:22, 43:5
**organization** [5] - 6:17, 13:9, 13:13, 14:7, 21:9
**organize** [4] - 18:21, 18:25, 19:6, 34:21
**organized** [1] - 22:10
**originally** [2] - 47:12, 48:10
**Orsini** [16] - 13:21, 13:24, 17:6, 18:20, 19:7, 19:25, 37:11, 37:16, 39:4, 40:25, 41:13, 42:7, 44:10, 47:5, 49:12, 50:17
**ORSINI** [18] - 2:20, 13:21, 13:25, 17:8, 19:7, 19:10, 37:17, 39:5, 42:8, 44:10, 46:2, 46:7, 47:7, 48:7, 49:13, 49:19, 50:6, 51:19
**Orsini's** [2] - 19:4, 20:9
**otherwise** [1] - 50:1
**ought** [4] - 16:2, 19:14, 46:19, 46:20
**outcome** [2] - 27:8, 39:1
**outlined** [1] - 26:5
**outset** [1] - 45:4
**overall** [1] - 21:21
**overcome** [1] - 43:9
**Overdraft** [1] - 7:18
**overlap** [1] - 46:23
**overlapping** [3] - 15:8, 15:12, 38:10
**overreaching** [1] - 51:2
**overseeing** [1] - 6:21
**overwhelmed** [2] - 50:16, 51:3
**overwhelming** [1] - 14:4
**own** [5] - 11:23, 12:3, 29:9, 32:15, 49:9

## P

**P.A** [2] - 1:17, 2:13
**Page** [4] - 4:4, 4:7, 4:15, 26:23
**page** [1] - 16:8
**Pages** [1] - 1:8
**paired** [1] - 41:2
**pairing** [1] - 30:20
**palm** [1] - 53:17
**papers** [4] - 20:25,

31:1, 31:3, 31:7
**paramount** [1] - 26:15
**parse** [1] - 43:1
**part** [9] - 11:6, 12:10, 18:24, 29:8, 44:21, 45:7, 45:15, 50:22, 50:25
**participant** [1] - 53:2
**participated** [1] - 6:8
**particular** [2] - 8:18, 51:7
**particularly** [1] - 14:23
**parties** [6] - 7:6, 7:8, 32:14, 41:8, 41:10, 42:24
**PARTIES** [1] - 54:1
**partner** [1] - 8:1
**Partners** [3] - 1:21, 8:24, 9:10
**passed** [1] - 23:17
**past** [4] - 16:5, 17:14, 19:5, 37:20
**Patricia** [1] - 53:4
**peak** [1] - 26:16
**pending** [11] - 8:16, 12:9, 12:12, 22:24, 36:17, 39:1, 39:10, 42:12, 45:2, 45:17, 49:8
**people** [7] - 14:16, 21:25, 22:14, 28:24, 30:14, 30:16, 31:6
**percent** [8] - 22:13, 22:14, 26:7, 26:9, 28:12, 28:16, 30:17
**perhaps** [1] - 43:17
**period** [6] - 20:9, 23:25, 33:24, 34:19, 39:14, 41:21
**permanently** [2] - 7:14, 7:23
**permitted** [1] - 41:4
**personal** [1] - 11:23
**personally** [2] - 7:15, 30:15
**perspective** [4] - 16:14, 19:11, 20:5, 20:16
**pertains** [1] - 33:4
**phase** [1] - 21:2
**PHILLIP** [1] - 2:9
**Phillip** [3] - 23:8, 23:9, 32:4
**phone** [1] - 30:19
**phrased** [1] - 52:4
**picked** [1] - 18:8
**piece** [1] - 14:11
**pkim@rosenlegal. com** [1] - 2:11
**place** [7] - 7:3, 20:2,

20:12, 20:22, 35:22, 36:2, 37:6
**Plaintiff** [7] - 30:2, 32:14, 39:11, 48:16, 48:23, 49:15, 50:5
**plaintiff** [2] - 23:25, 45:3
**Plaintiff's** [3] - 10:7, 11:18, 20:5
**Plaintiffs** [22] - 5:24, 9:1, 9:12, 9:18, 11:9, 12:9, 13:23, 14:1, 16:15, 16:22, 23:10, 23:15, 25:15, 40:20, 41:4, 41:9, 43:8, 46:16, 47:14, 51:7, 51:8, 51:16
**PLAINTIFFS** [4] - 1:12, 2:2, 4:4, 4:7
**Plaintiffs'** [16] - 6:8, 7:11, 8:20, 11:8, 14:16, 15:7, 17:1, 17:5, 22:12, 23:11, 24:12, 25:7, 27:23, 40:11, 42:15, 47:19
**plan** [7] - 10:12, 13:8, 19:20, 35:5, 35:16, 37:6, 42:2
**platform** [1] - 11:1
**play** [2] - 29:20, 30:8
**players** [1] - 32:3
**Plaza** [1] - 2:21
**pleading** [2] - 40:17, 44:8
**pleadings** [6] - 18:11, 19:14, 19:15, 19:19, 47:22
**pleased** [1] - 25:13
**pluralities** [1] - 27:3
**plus** [1] - 10:8
**point** [9] - 19:13, 25:2, 25:9, 26:24, 29:3, 34:7, 39:17, 42:18, 48:3
**points** [1] - 8:4
**Ponce** [1] - 1:18
**popularity** [1] - 28:13
**portion** [1] - 13:7
**position** [4] - 12:2, 40:25, 42:11, 46:18
**posture** [1] - 36:17
**potential** [2] - 9:13, 46:25
**practice** [1] - 42:21
**practices** [1] - 39:24
**precedent** [2] - 26:12, 40:13
**precedented** [1] - 27:13
**preclusion** [1] - 46:25

**precondition** [1] - 20:11

**prefer** [2] - 22:15, 52:14

**prejudices** [1] - 42:3

**preliminaries** [1] - 42:19

**premature** [2] - 43:15, 44:6

**prepared** [6] - 6:9, 8:25, 13:4, 21:5, 38:22, 53:11

**preparing** [2] - 39:16, 51:24

**presence** [1] - 32:18

**present** [7] - 18:22, 26:1, 28:18, 29:2, 32:19, 51:7, 51:16

**presentation** [2] - 13:5, 25:3

**presented** [2] - 14:24, 27:9

**presently** [2] - 22:24, 33:7

**presumption** [2] - 24:1, 24:2

**pretrial** [1] - 5:15

**pretty** [4] - 16:13, 20:23, 23:16, 35:13

**prevent** [1] - 41:6

**primarily** [1] - 15:21

**principles** [2] - 14:8, 14:9

**pro** [13] - 36:9, 44:17, 48:17, 48:18, 48:23, 49:15, 50:11, 50:13, 50:15, 50:19, 51:7, 51:8, 51:16

**procedurally** [1] - 48:8

**procedure** [6] - 6:16, 6:24, 8:4, 21:22, 24:19, 29:25

**proceed** [8] - 6:2, 7:3, 17:18, 18:18, 20:4, 21:1, 37:9, 45:5

**proceeded** [1] - 27:22

**proceeding** [3] - 9:13, 36:11, 46:9

**proceedings** [7] - 5:1, 6:22, 30:9, 45:16, 46:22, 54:2, 54:7

**Proceedings..............
.........................** [1] - 4:15

**proceeds** [1] - 16:3

**process** [31] - 7:1, 7:10, 7:14, 7:23, 11:11, 12:14, 13:6, 21:5, 22:2, 22:21, 23:12, 25:4, 25:14,

26:4, 26:8, 26:11, 26:22, 27:24, 29:4, 29:5, 31:10, 31:11, 32:22, 38:19, 44:13, 47:3, 47:20, 51:9, 51:11, 51:14, 52:11

**Products** [2] - 26:17, 28:1

**profession** [1] - 26:2

**professional** [1] - 26:1

**professionalism** [1] - 6:12

**promote** [1] - 26:1

**prone** [1] - 27:16

**proposal** [12] - 6:23, 12:6, 18:2, 19:10, 25:1, 25:4, 26:5, 27:8, 27:11, 27:20, 27:22, 36:25

**proposals** [2] - 30:24, 52:9

**propose** [7] - 7:12, 8:12, 23:19, 26:11, 35:23, 38:24, 46:5

**proposed** [4] - 5:14, 19:20, 22:8, 52:12

**proposing** [2] - 25:18

**propounded** [1] - 41:20

**protection** [1] - 15:20

**protocol** [3] - 35:17, 42:2

**provided** [1] - 9:17

**provides** [1] - 27:4

**providing** [2] - 51:12, 51:13

**provisions** [1] - 38:1

**PSLRA** [5] - 9:17, 32:21, 36:14, 38:9, 38:13

**PSRA** [4] - 23:16, 23:25, 32:13, 40:19

**public** [2] - 42:25, 43:2

**publicly** [1] - 41:7

**punitive** [4] - 45:2, 45:7, 48:11, 48:16

**punt** [1] - 45:23

**purpose** [2] - 24:14, 24:20

**purposes** [2] - 17:12, 36:15

**pushing** [1] - 11:23

**put** [8] - 14:17, 19:1, 20:1, 29:9, 31:13, 36:24, 43:5, 43:25

**putting** [2] - 12:7, 42:16, 43:2

### Q

**qualifications** [1] - 7:21

**quality** [3] - 21:18, 22:17, 25:23

**questions** [5] - 11:14, 13:11, 24:7, 28:4, 30:3

**quick** [1] - 50:22

**quickly** [3] - 20:23, 21:1, 21:6

**quiet** [2] - 21:3, 25:9

**quite** [1] - 52:22

**quote** [4] - 27:4, 27:5, 27:17, 27:19

### R

**Rachel** [4] - 7:12, 8:9, 21:25, 24:10

**RACHEL** [1] - 1:17

**raise** [1] - 44:12

**Raised** [3] - 6:23, 7:8, 31:19

**rallies** [1] - 26:7

**rather** [2] - 19:23, 44:6

**RE** [1] - 1:4

**reach** [5] - 7:6, 7:9, 22:12, 26:18, 49:15

**reached** [1] - 20:23

**read** [1] - 22:11

**reading** [2] - 7:7, 17:19

**real** [5] - 11:22, 12:14, 22:20, 53:19

**really** [18] - 15:6, 15:9, 17:10, 20:1, 20:5, 21:2, 21:5, 21:17, 22:17, 22:19, 29:1, 30:8, 30:24, 44:11, 44:15, 51:1, 51:6, 51:15

**reason** [2] - 36:8, 40:18

**reasonable** [4] - 19:3, 19:6, 19:11, 20:7

**reasons** [1] - 27:25

**rebut** [1] - 24:1

**receipt** [1] - 53:12

**receive** [1] - 41:10

**received** [2] - 5:14, 50:4

**recommend** [1] - 51:12

**recommendation** [3] - 48:21, 48:24, 49:9

**recommending** [1] - 48:22

**record** [1] - 51:13

**recorded** [1] - 5:10

**redact** [1] - 42:25

**reference** [1] - 43:3

**referenced** [3] - 18:7, 24:18, 31:23

**references** [1] - 42:23

**referencing** [1] - 31:18

**referring** [2] - 16:12, 27:14

**refiled** [2] - 49:3, 50:4

**reflect** [1] - 27:2

**regard** [6] - 32:5, 36:13, 36:24, 39:9, 40:3, 43:16

**regarding** [3] - 10:10, 10:11, 52:5

**regardless** [1] - 42:4

**regions** [1] - 22:18

**regulations** [2] - 9:17, 44:22

**related** [5] - 5:18, 8:18, 8:19, 40:15, 46:24

**relates** [1] - 44:14

**relating** [1] - 6:16

**relatively** [1] - 21:1

**relief** [1] - 41:19

**remain** [1] - 5:8

**remaining** [1] - 26:7

**remains** [1] - 51:24

**remand** [4] - 46:9, 46:14, 46:21

**remarks** [5] - 17:7, 17:20, 20:8, 33:1

**remember** [1] - 5:10

**reminded** [1] - 53:1

**remiss** [1] - 33:1

**remote** [2] - 35:17, 42:2

**remoteness** [1] - 26:16

**removal** [3] - 46:9, 46:23, 46:25

**remove** [2] - 10:19, 42:23

**removed** [2] - 46:11, 46:23

**replies** [1] - 23:23

**reply** [4] - 23:25, 24:2, 32:10, 33:9

**report** [6] - 19:18, 27:15, 27:17, 48:21, 48:24, 49:9

**REPORTED** [1] - 3:6

**Reporter** [2] - 3:7, 54:11

**Reporter's** [1] - 4:16

**represent** [4] - 5:24, 12:8, 35:9, 51:8

**representation** [2] -

25:24, 27:23

**representative** [1] - 25:19

**request** [3] - 10:17, 27:25, 41:17

**requested** [1] - 5:15

**require** [1] - 31:12

**required** [1] - 45:22

**requirements** [1] - 32:2

**reserve** [1] - 38:3

**reserving** [1] - 49:4

**resolution** [1] - 18:23

**resolved** [4] - 35:25, 38:22, 40:4, 43:10

**resource** [1] - 51:14

**respect** [6] - 7:15, 23:12, 25:2, 26:19, 39:20, 46:9

**respectfully** [1] - 17:13

**respond** [2] - 39:7, 50:16

**response** [7] - 19:6, 20:1, 33:8, 35:3, 49:11, 51:18, 53:8

**responses** [1] - 32:16

**responsive** [1] - 19:20

**restate** [1] - 5:7

**result** [6] - 26:8, 27:7, 27:12, 31:16, 38:16, 41:3

**return** [1] - 51:23

**review** [2] - 20:21, 47:22

**reviewed** [2] - 26:13, 31:21

**rights** [2] - 49:4, 50:19

**risk** [2] - 27:20, 40:8

**road** [1] - 6:2

**Robert** [1] - 31:23

**Robinhood** [13] - 9:23, 11:2, 13:22, 14:4, 14:21, 15:4, 15:21, 16:13, 19:8, 30:15, 39:18, 44:19, 45:6

**Robinhood's** [3] - 16:14, 37:25, 39:25

**role** [2] - 7:21, 27:5

**RON** [1] - 2:2

**room** [1] - 22:15

**Rosen** [1] - 2:9

**Roth** [4] - 1:17, 7:12, 8:10, 24:11

**Roy** [8] - 12:8, 28:7, 28:8, 29:21, 30:1, 30:5, 34:18

**roy@akimlawfirm. com** [1] - 2:4

**RPR** [2] - 3:6, 54:11
**Rule** [2] - 18:23, 19:1
**rule** [1] - 48:15
**ruled** [1] - 37:14
**ruling** [1] - 24:16
**rulings** [3] - 43:16, 44:1
**rwf@grossmanroth.com** [1] - 1:20
**Rye** [1] - 2:17

## S

**Salas** [6] - 5:20, 8:7, 8:15, 21:23, 24:18, 26:11
**SALAS** [4] - 1:12, 5:19, 5:23, 6:5
**Salmon** [22] - 6:23, 7:8, 22:2, 22:9, 23:21, 23:24, 24:17, 26:13, 26:17, 27:14, 27:23, 28:1, 28:15, 31:19, 32:19, 33:4, 34:3, 38:25, 39:6, 52:5, 52:8, 52:19
**San** [3] - 1:22, 2:7, 8:24
**SARAH** [1] - 2:12
**Sarah** [1] - 33:12
**SAVERI** [7] - 2:5, 18:13, 19:24, 20:13, 21:10, 34:11, 51:5
**Saveri** [9] - 2:6, 8:1, 18:13, 19:10, 19:24, 20:13, 21:13, 34:11, 51:5
**saw** [1] - 18:7
**say-so** [1] - 12:14
**SC** [1] - 2:3
**scenario** [1] - 15:10
**schedule** [2] - 16:3, 46:5
**scheduled** [1] - 46:14
**Schwab** [1] - 40:23
**scope** [1] - 40:19
**screen** [1] - 53:20
**se** [9] - 44:17, 48:17, 48:18, 48:23, 49:15, 50:19, 51:7, 51:8, 51:16
**seal** [2] - 41:6, 42:23
**sealed** [2] - 42:21, 43:3
**Sean** [14] - 5:23, 6:17, 8:2, 13:1, 13:14, 13:15, 21:23, 25:7, 25:8, 25:11, 29:16, 34:2, 52:7
**SEAN** [1] - 1:13

**SEC** [1] - 38:2
**second** [3] - 35:16, 39:17, 46:7
**section** [1] - 11:20
**Section** [1] - 26:23
**secured** [1] - 31:4
**Securities** [2] - 23:10, 33:14
**securities** [24] - 9:15, 11:1, 15:16, 16:7, 16:11, 23:4, 23:13, 24:4, 24:6, 32:5, 32:15, 32:18, 33:6, 38:11, 38:12, 38:14, 39:12, 40:7, 40:9, 40:11, 40:15, 41:1, 41:9
**security** [2] - 9:18, 24:4
**see** [14] - 6:6, 10:2, 10:8, 20:3, 26:10, 38:23, 40:18, 43:15, 43:17, 44:23, 53:17, 53:22, 53:23
**seeking** [3] - 32:14, 41:5, 41:19
**seem** [1] - 21:22
**select** [1] - 34:1
**selected** [1] - 34:5
**selection** [3] - 26:4, 26:11, 33:22
**selects** [1] - 27:4
**self** [1] - 34:21
**self-organize** [1] - 34:21
**send** [1] - 10:17
**senior** [1] - 11:25
**sense** [5] - 16:4, 20:10, 34:4, 34:13, 51:2
**separate** [9] - 10:8, 11:18, 17:11, 23:5, 23:13, 32:22, 40:9, 50:14, 50:21
**sorted** [1] - 19:12
**separately** [1] - 33:7
**serial** [1] - 48:17
**serve** [3] - 7:21, 24:13, 37:1
**served** [3] - 45:13, 45:14, 46:5
**serves** [1] - 10:15
**serving** [1] - 10:14
**ses** [3] - 50:11, 50:13, 50:15
**set** [5] - 16:11, 24:23, 26:22, 27:11, 50:13
**seven** [1] - 19:19
**several** [2] - 6:6, 33:20
**share** [2] - 25:13, 25:17

**SHORT** [1] - 1:4
**short** [2] - 21:13, 49:7
**shorten** [1] - 22:2
**shot** [1] - 53:20
**shut** [1] - 26:8
**side** [7] - 6:8, 7:12, 8:20, 15:4, 19:5, 20:7, 30:2
**sides** [2] - 6:12, 14:15
**sign** [2] - 14:18, 40:12
**signed** [1] - 44:19
**similar** [2] - 12:10, 16:14
**simply** [3] - 34:1, 37:12, 49:25
**simultaneously** [1] - 16:4
**Singhal** [1] - 12:12
**Siruk** [2] - 48:8, 48:9
**situation** [1] - 43:21
**situations** [2] - 12:11, 43:24
**six** [2] - 15:23, 16:17
**skip** [1] - 21:16
**slate** [8] - 25:18, 26:9, 26:21, 28:12, 28:18, 29:3, 29:7, 29:10
**slightly** [1] - 6:15
**SLUSA** [1] - 46:24
**small** [1] - 44:21
**someone** [2] - 11:25, 25:7
**soon** [1] - 35:14
**sooner** [2] - 7:2, 7:3
**sorry** [3] - 23:1, 39:3, 52:7
**sort** [17] - 10:2, 10:23, 15:14, 16:6, 21:16, 23:24, 23:25, 30:9, 34:25, 36:9, 38:14, 40:18, 49:9, 50:21, 52:4, 52:14, 53:10
**sorted** [1] - 19:12
**sorting** [1] - 18:24
**sounds** [2] - 16:8, 16:13
**South** [1] - 30:7
**Southeast** [1] - 30:7
**SOUTHERN** [1] - 1:1
**speaking** [3] - 5:9, 14:2, 31:18
**speaks** [2] - 26:5, 27:2
**specific** [3] - 10:18, 15:25, 39:21
**specifically** [3] - 6:16, 6:19, 27:14
**spend** [1] - 29:24
**spent** [2] - 20:15, 30:12, 30:18
**spirit** [1] - 25:15

**spoken** [1] - 25:6
**sponte** [1] - 48:14
**spot** [1] - 31:4
**SQUEEZE** [1] - 1:4
**stage** [5] - 14:23, 16:2, 36:20, 40:19, 44:8
**stages** [3] - 17:13, 40:17
**standpoint** [2] - 10:7, 11:8
**start** [4] - 5:17, 35:13, 41:5, 53:15
**started** [1] - 34:12
**starting** [1] - 38:19
**state** [5] - 5:6, 46:10, 46:21, 47:21, 47:24
**statement** [3] - 37:16, 37:18, 38:2
**STATES** [2] - 1:1, 1:10
**States** [1] - 54:11
**status** [5] - 33:18, 33:23, 33:25, 34:4, 34:20
**STATUS** [1] - 1:9
**statutes** [1] - 9:17
**statutory** [1] - 23:7
**stay** [18] - 36:6, 36:7, 36:14, 36:15, 36:17, 36:24, 37:3, 38:9, 39:1, 39:10, 39:11, 40:3, 41:17, 41:23, 42:13, 45:16, 46:3, 47:24
**stayed** [1] - 41:13
**stays** [1] - 44:14
**STEPHANIE** [2] - 3:6, 54:11
**Stephanie_McCarn@flsd.uscourts.gov** [1] - 3:9
**steps** [1] - 37:23
**still** [5] - 35:18, 40:17, 42:4, 49:4, 53:1
**stipulate** [1] - 26:24
**stipulation** [2] - 27:2, 27:3
**straw** [1] - 21:13
**Street** [2] - 2:3, 2:6
**structure** [4] - 7:3, 9:2, 25:20, 31:5
**structuring** [1] - 30:12
**Stuart** [2] - 7:17, 52:21
**sua** [1] - 48:14
**subject** [1] - 28:23
**submission** [4] - 35:21, 35:23, 35:24, 52:2
**submit** [8] - 20:20, 21:6, 26:19, 31:1, 31:7, 36:16, 52:24,

53:4
**subsequent** [2] - 17:12, 17:13
**substantial** [1] - 6:11
**substantive** [1] - 8:4
**substantively** [1] - 6:13
**success** [1] - 38:6
**suggest** [5] - 9:13, 21:21, 22:1, 22:4, 32:7
**suggested** [2] - 23:15, 33:15
**suggesting** [2] - 22:11, 37:5
**suggestion** [1] - 50:24
**suggests** [1] - 19:25
**Suite** [6] - 1:14, 1:18, 1:22, 2:6, 2:13, 2:17
**superseding** [1] - 19:15
**supplemental** [1] - 10:18
**support** [2] - 26:7, 51:6
**supportive** [1] - 24:5
**suppose** [1] - 49:24
**surprisingly** [1] - 40:24
**suspend** [1] - 37:22
**suspending** [1] - 49:8
**Swaine** [2] - 2:20, 13:22
**swept** [1] - 14:3
**swestcot@bursor.com** [1] - 2:15
**system** [1] - 12:20

## T

**table** [1] - 21:18
**tag** [1] - 38:14
**talks** [1] - 13:14
**Tampa** [1] - 47:15
**tasked** [2] - 26:25, 50:12
**TD** [3] - 15:24, 36:18, 40:23
**team** [1] - 30:13
**tee** [1] - 50:1
**teed** [1] - 41:22
**ten** [2] - 7:16, 19:19
**tentatively** [1] - 46:14
**term** [1] - 15:15
**terminate** [1] - 40:2
**terms** [11] - 16:21, 17:16, 18:3, 18:4, 19:6, 21:17, 22:20, 29:18, 42:1, 50:19, 51:1

**THE** [66] - 1:10, 1:12, 2:2, 2:20, 3:2, 4:4, 4:7, 5:2, 5:22, 6:4, 8:7, 9:4, 9:7, 11:16, 12:5, 12:24, 13:3, 13:18, 13:20, 13:24, 16:17, 17:6, 17:22, 18:2, 18:10, 19:9, 20:8, 21:8, 22:24, 23:3, 23:7, 24:9, 25:1, 25:5, 28:6, 31:17, 31:25, 33:1, 33:16, 34:16, 34:24, 35:4, 35:10, 37:10, 39:3, 39:8, 41:14, 42:6, 42:20, 44:3, 45:25, 46:6, 47:5, 48:6, 49:11, 49:18, 50:3, 50:7, 50:10, 51:16, 51:22, 52:25, 53:5, 53:9, 53:18, 53:21
**themselves** [1] - 51:21
**thereafter** [1] - 23:23
**thereby** [1] - 38:11
**they've** [1] - 45:12
**thinking** [6] - 15:14, 15:18, 16:2, 16:6, 18:15, 19:2
**thinks** [1] - 29:6
**third** [3] - 9:25, 15:18, 16:10
**Thompson** [5] - 46:12, 46:16, 47:8, 47:25
**three** [4] - 9:13, 9:21, 11:16, 28:17
**threshold** [1] - 27:21
**tie** [1] - 16:21
**timed** [1] - 23:14
**timely** [1] - 49:4
**timetable** [1] - 20:12
**timing** [1] - 18:3
**today** [5] - 6:14, 31:20, 32:1, 41:17, 53:13
**together** [8] - 14:18, 19:1, 21:15, 29:19, 31:14, 42:16, 43:5, 52:23
**took** [1] - 39:5
**top** [1] - 49:14
**Topic** [3] - 6:16, 8:19, 8:22
**topic** [1] - 17:21
**tort** [1] - 43:24
**touch** [2] - 45:9, 49:24
**touching** [2] - 23:6, 25:12
**track** [8] - 9:16, 23:5, 23:13, 23:14, 32:6, 32:22, 33:3, 50:21

**tracks** [2] - 32:1, 41:3
**trade** [1] - 39:24
**trades** [1] - 37:22
**TRADING** [1] - 1:4
**trading** [1] - 40:2
**tranche** [11] - 9:1, 9:24, 9:25, 10:1, 10:10, 10:15, 11:22, 12:2, 12:3, 12:20, 30:21
**tranches** [17] - 8:21, 9:3, 9:14, 9:21, 10:2, 10:9, 10:16, 11:11, 11:17, 12:17, 12:22, 15:5, 15:11, 18:6, 18:7, 18:9, 33:5
**tranching** [1] - 14:7
**transcription** [1] - 54:7
**transfer** [5] - 5:25, 6:19, 46:15, 46:17, 49:1
**transferred** [2] - 46:19, 47:16
**transparency** [1] - 26:15
**transparent** [2] - 7:1, 26:12
**trees** [1] - 53:17
**tremendous** [1] - 14:14
**trial** [1] - 43:6
**trials** [9] - 43:10, 43:11, 43:12, 43:13, 43:14, 43:22, 43:25, 44:5, 44:7
**tried** [1] - 43:19
**TRO** [1] - 38:5
**trounces** [1] - 27:12
**true** [1] - 44:16
**try** [5] - 19:22, 19:23, 22:12, 24:1, 49:16
**trying** [5] - 29:19, 30:14, 43:1, 45:10, 50:16
**turn** [3] - 7:24, 9:3, 26:3
**turning** [1] - 6:3
**turnpike** [1] - 45:24
**tweaks** [1] - 36:10
**Twelfth** [2] - 3:8, 54:12
**two** [27] - 6:15, 9:13, 12:4, 14:8, 14:20, 16:7, 17:2, 18:21, 22:16, 22:22, 22:24, 26:3, 28:17, 29:4, 30:24, 31:8, 33:6, 38:15, 44:1, 44:16, 44:17, 45:3, 45:9,

46:21, 48:1, 50:15
**types** [1] - 36:10
**typically** [1] - 44:23

**U**

**ultimately** [2] - 7:4, 46:20
**umbrella** [1] - 10:14
**unanimous** [3] - 23:12, 27:16, 32:6
**under** [17] - 9:17, 10:14, 26:5, 26:23, 27:4, 27:8, 27:22, 33:14, 36:10, 36:14, 36:23, 39:19, 41:6, 42:23, 45:17, 46:3, 48:15
**undermining** [2] - 38:11, 38:13
**underway** [1] - 47:3
**unfair** [1] - 39:24
**UNITED** [2] - 1:1, 1:10
**United** [1] - 54:11
**unless** [8] - 5:8, 13:10, 24:7, 25:7, 30:3, 33:9, 35:1, 38:21
**unprecedented** [1] - 37:23
**unsealing** [1] - 41:8
**up** [15] - 13:7, 14:3, 18:8, 28:17, 30:13, 34:25, 38:8, 41:8, 41:22, 42:22, 43:18, 44:19, 45:14, 50:2, 50:13
**update** [1] - 46:8
**utilizing** [1] - 11:1

**V**

**vacating** [1] - 49:8
**vacuum** [1] - 19:23
**valuable** [1] - 44:5
**Van** [1] - 1:22
**various** [3] - 15:19, 19:21, 21:24
**via** [1] - 7:10
**viable** [2] - 26:8, 27:8
**view** [16] - 11:23, 15:23, 16:1, 17:18, 19:14, 21:23, 25:25, 27:6, 29:13, 35:13, 36:23, 37:12, 37:18, 38:20, 38:23, 42:11
**views** [3] - 6:15, 26:4, 41:16
**virtual** [1] - 5:3
**virtually** [1] - 27:21
**voice** [1] - 41:11

**volatility** [1] - 37:23
**voluntarily** [1] - 47:11
**voluntary** [4] - 47:9, 47:15, 47:17, 52:22
**votes** [1] - 28:12

**W**

**wait** [1] - 50:24
**wall** [1] - 39:13
**walled** [1] - 40:17
**wants** [2] - 25:7, 29:14
**warning** [1] - 27:15
**Washington** [1] - 3:4
**waste** [1] - 42:16
**wasteful** [1] - 41:2
**wave** [1] - 41:8
**week** [5] - 6:10, 7:6, 14:17, 23:22, 26:18
**weekend** [1] - 52:17
**weeks** [1] - 6:6
**welcome** [2] - 5:4, 42:21
**welcoming** [1] - 26:2
**West** [2] - 24:25, 53:16
**WESTCOT** [2] - 2:12, 33:11
**Westcot** [1] - 33:12
**whichever** [1] - 25:13
**whole** [2] - 39:25, 40:2
**wholeheartedly** [1] - 40:24
**wiggle** [1] - 22:15
**WILLEY** [7] - 2:2, 12:8, 28:5, 28:7, 28:9, 30:4, 34:18
**Willey** [6] - 12:8, 12:24, 28:6, 28:7, 30:5, 34:18
**William** [3] - 8:23, 9:10, 28:10
**WILLIAM** [1] - 1:21
**willingness** [1] - 7:22
**Wisconsin** [1] - 50:21
**wish** [2] - 33:21, 42:24
**WITNESSES** [3] - 4:2, 4:4, 4:7
**word** [1] - 27:2
**words** [1] - 43:2
**workable** [1] - 19:25
**works** [2] - 32:13, 51:9
**world** [2] - 35:18, 36:23
**Worldwide** [1] - 2:21
**wrapped** [1] - 34:25
**wraps** [1] - 13:7
**www.audetlaw.com** [1] - 1:23

**Y**

**Yaffa** [2] - 1:17, 8:10
**years** [4] - 7:16, 21:15, 50:20
**York** [3] - 2:10, 2:22, 35:8
**young** [7] - 21:20, 25:16, 25:18, 25:22, 30:7, 30:16
**younger** [4] - 12:13, 28:25, 30:21, 31:9
**youngest** [1] - 30:10
**yourself** [1] - 41:22
**yourselves** [1] - 41:22

**Z**

**ZOOM** [1] - 1:9
**Zoom** [2] - 9:19, 34:9