**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-2989-MDL-ALTONAGA/Torres**

IN RE:

**JANUARY 2021 SHORT SQUEEZE**
**TRADING LITIGATION**
_____/

This Document Relates to the Non-Federal Securities Actions

**STIPULATED ORDER REGARDING**
**ESI PROTOCOL AND FORMAT OF PRODUCTIONS**

Pursuant to the Court's June 3, 2021 order (ECF No. 323), and to expedite the flow of discovery material and facilitate the consistency in the format of the documents to be produced by the Parties in this case, Plaintiffs and Defendants (collectively "Parties"), by and through their respective counsel, consistent with the Southern District of Florida's Checklist for Rule 26(f) Conference Regarding Electronically Stored Information ("ESI"), hereby stipulate and agree to the terms of this Stipulated Order Regarding ESI Protocol and Format of Productions (the "ESI Protocol" or "Protocol").

**I.      SCOPE**

A.      **General.** The procedures and protocols set forth in this ESI Protocol shall govern the production of relevant electronically stored information ("ESI") and hard copy documents in this matter, unless the Parties agree in writing to a change or they are changed by the Court. Nothing in this ESI Protocol shall be interpreted to require production of relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege, protection, or immunity. The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents.

B.      **Cooperation.** The Parties will cooperate on issues relating to discovery of ESI and other documents. The Parties recognize that collaborative conduct in the course of discovery reduces litigation costs and delay. The Parties will engage in informal discussions about the discovery of ESI throughout the litigation as necessary. Counsel will be knowledgeable about their respective clients' information technology infrastructure, including the manner in which potentially relevant data is stored and retrieved. The Parties are encouraged to bring technically-adept personnel together to resolve e-discovery issues.

C.      **Liaison.** The Parties (Plaintiffs, collectively; and Defendants individually) will each identify an e-discovery liaison, who will be knowledgeable about and responsible for each party's ESI.

D.      **Disputes.** The Parties shall meet and confer in good faith on any dispute regarding ESI. No Party may seek relief from the Court concerning compliance with the ESI Protocol unless it has conferred in good faith with the affected Parties to resolve any dispute regarding the interpretation or application of any provision of this Protocol or any proposed deviation from the provisions of this Protocol. Any dispute(s) left unresolved after good faith meet and confer efforts may be submitted to the Court for resolution in accordance with Local Rule 26.1(g).

E.      **Confidentiality Order.** All productions are subject to the Stipulated Protective Order, ECF No. 329 ("Protective Order") and the concurrently filed Stipulated Order Regarding Rule 502(d) and Privileged Materials ("Privileged Materials Order") entered by the Court in this matter. For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations with respect to any information designated as Confidential or Highly Confidential – Attorneys Eyes Only pursuant to the Protective Order.

## II.     DEFINITIONS

A.     **"Documents"** shall have the same definition as set forth in the Federal Rule of Civil Procedure 34(a).

B.     **"Electronically stored information"** or **"ESI"** as used herein has the same meaning as in the Federal Rules of Civil Procedure and other applicable law, including Rules 26 and 34(a) of the Federal Rules of Civil Procedure. Examples of ESI include the below. For the avoidance of doubt, nothing in this Paragraph constitutes an agreement that any particular source of ESI exists, is responsive, or will in fact be produced.

1.     Digital communications (e.g., e-mail, voice mail, text messages, instant messaging, and ephemeral messaging (e.g. SnapChat, Slack, etc.);

2.     E-mail server stores (e.g., Microsoft Exchange .edb);

3.     Word-processed documents (e.g., Word files and drafts thereof);

4.     Spreadsheets and tables (e.g., Excel worksheets);

5.     Accounting application data (e.g. Quickbooks);

6.     Image and facsimile files (e.g., .PDF, .TIFF, .JPG, .GIF);

7.     Sound recordings (e.g., .WAV and .MP3);

8.     Video and animation (e.g., .AVI and .MOV);

9.     Databases (e.g., Access, Oracle, SAP, SQL data);

10.    Contact and relationship management data (e.g. Outlook contacts);

11.    Calendar and diary application data (e.g., Outlook calendar entries, blog entries);

12.    Presentations (e.g., PowerPoint);

13.    Network access and server activity logs;

14.    Project management application data;

15.    Computer aided design/drawing files; and

16.      Cloud-based or other virtualized ESI, including applications, infrastructure, and data.

C.      **"Extracted Text"** means the text extracted from ESI, and includes all headers, footers, tracked changes markups, and document body information when reasonably available.

D.      **"Hard Copy Document"** means a document collected from physical files and not from electronic sources.

E.      **"Hit Report"** means a report with the number of documents identified (i.e., "hit") by each keyword search term or Boolean search string.

F.      **"Load/Unitization file"** means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Unitization file will also contain data relevant to the individual Documents, including extracted and user-created Metadata.

G.      **"Media"** means an object or device, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

H.      **"Metadata"** means and refers to application and system information of a file that contains data about the file, as opposed to describing the contents of a file, as the term is described and used in "The Sedona Conference Glossary: E-Discovery and Digital Information Management," Fifth Ed., February 2020.

I.      **"Parties"** means or refers collectively to the named Plaintiffs and Defendants in the above-captioned matter, as well as any later added plaintiffs and defendants. **"Party"** shall refer to a named Plaintiff or Defendant, individually.

J.      **"Producing Party"** means or refers to a Party in the above-captioned matter from which production of ESI or Hard Copy Documents are sought.

4

K.      **"Native," "Native Format,"** or **"Native Data Format"** means and refers to an electronic document's associated file structure as defined by the original creating application. For example, the native format of an Excel workbook is a .xls or .xlsx file.

L.      "**NIST Library**" means the list of over 26 million known, traceable software application files (i.e., the NIST List or the National Software Reference Library (NSRL)) maintained by the federal technology agency known as the National Institute of Standards and Technology (NIST). *See* https://nvd.nist.gov/ncp/repository.

M.      **"OCR text"** means text generated through the optical character recognition process of a Document.

N.      **"Requesting Party"** means or refers to a Party in the above-captioned matter seeking production of ESI or Hard Copy Documents.

O.      **"Search Terms"** means a search methodology using keywords, terms, or phrases including Boolean-search strings.

P.      **"Static Image(s)"** means a representation of ESI produced by converting a Native file into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format, or "TIFF," image is an example of a Static Image. Tagged Image File Format or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper documents.

Q.      **"TAR"** means Technology Assisted Review using computer algorithms or programs to identify and tag potentially responsive documents based on keywords and other Metadata.

R.      **"Text Messages"** means electronic messages that are sent among users with mobile devices. Text Messages shall include Short Messaging Service (SMS) and Multimedia

Messaging Service (MMS), as the terms are described and used in "The Sedona Conference Glossary: E-Discovery and Digital Information Management," Fifth Ed., February 2020.

## III.      RULE 26(a) ESI DISCLOSURES

Parties agree to meet and confer concerning the scope of Rule 26(a) ESI Disclosures regarding custodians, non-custodial data sources, data sources, employee technology use policies, and inaccessible data and report back to the Court within thirty (30) days of the entry of this Order.

## IV.      SEARCH PROCEDURES FOR DOCUMENTS AND ESI

A.      **In General.** Prior to conducting a search for responsive Documents and ESI, regardless of the search methodologies to be employed, the Requesting Party and Producing Party shall meet and confer regarding search methodologies (described below) that the Producing Party proposes to employ to identify responsive materials.

B.      **Preparation for Meet and Confer.** The Parties agree that negotiations regarding search methodology(ies) and custodians are intended to be a cooperative and interactive process, involving a good faith exchange of information and proposals to facilitate production of the Documents requested by the Requesting Party (subject to privilege assertions). At the initial meet and confer, the Parties shall be prepared to discuss the proposed methodology for searching and retrieving Documents, as described below:

1.      **Search Methodology for ESI.** The proposed method of searching ESI, including any Search Terms and/or Boolean search strings, date ranges and phrases to be searched, custodians, and any additional parameters to be applied for ESI.

2.      **Go-Gets.** Whether certain categories of documents or requests for production are amenable to retrieval without utilizing Search Terms, i.e., using a "go-get" approach.

3.      **Search Methodology for Hard Copy Documents.** The proposed methodology for searching Hard Copy Documents.

C.      **TAR/Advanced Analytics.**

1.      If a Party proposes the use of TAR, it shall meet and confer with the other Parties to negotiate a stipulation governing TAR methodologies and process if the Parties deem it necessary.

2.      Any disputes regarding TAR will not be submitted to the Court, Magistrate Judge, or appointed Special Master before the Parties have met and conferred in good faith.

D.      **Responsive ESI Discovered Outside of Search Methodology.** Notwithstanding any of the foregoing, if any Party identifies ESI or Documents that are responsive and subject to discovery in this matter outside of the search methodology(ies) agreed to by the Parties, it shall produce all such Documents to the extent they are not privileged.

E.      **Procedure for Search Terms.** The Parties shall abide by the following schedule, for Search Terms which may be modified upon written agreement of the Parties:

1.      Should the Parties agree to using Search Terms, the Requesting Party shall propose Search Terms in the first instance.

2.      Within fourteen (14) calendar days of receipt of the proposed Search Terms from the Requesting Party, the Producing Party and Requesting Party shall meet and confer to attempt to reach agreement on the Search Terms and/or limiters to be used to identify

responsive Documents. In connection with such meet and confers, the Parties shall discuss in good faith, inter alia, at least the following topics: the justification for inclusion or exclusion of particular search terms, reasonable information concerning the number of documents identified by search terms (i.e., Hit Reports) and the search syntax used in developing and applying terms.

F.     **Production and Supplementation of Searches for ESI.** Production of responsive, non-privileged documents shall proceed on a rolling basis and be completed within the time period specified by order of the Court.

G.     Activities undertaken in compliance with the duty to preserve information are protected from discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B), except for good cause shown.

## V.     FORMAT OF PRODUCTION

A.     **Hard Copy Document Production Format.** The following provisions shall generally govern the production format and procedure for Hard Copy Documents and images.

1.     All documents originating in hardcopy format may be produced as black-and-white, single-page, 300 dpi Group IV tagged image file format ("TIFF") images, with OCR text and related path provided in document level text files, except that PowerPoint or other presentation program files shall be produced in color, and the Requesting Party may request color images of other Documents where color is reasonably necessary to their comprehension or use, and such request shall not unreasonably be denied.

2.     In scanning hardcopy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., hardcopy documents should be logically unitized). The Producing Party will use reasonable efforts to unitize documents correctly.

3.      Where a document, or a document group – such as folder, clipped bundle, or binder – has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

4.      Productions of the images shall be made using an image load file (.OPT or .LFP) and a delimited database/Metadata load file (.DAT), pursuant to Exhibit 2. Exhibit 1 part 1 lists the objective coding fields that will be produced for hard copy documents.

5.      The Producing Party will utilize reasonable efforts to ensure that paper records for a particular custodian, which are included in a single production, are produced in consecutive Bates-stamp order.

B.      **ESI Production Format.** The following provisions shall generally govern the production format and procedure for ESI and are subject to the other provisions contained herein.

1.      **Production of electronic documents.** The Producing Party must produce all ESI in TIFF format according to the following specifications.

i.      Where technically feasible, TIFFs shall be produced as black and white, single-page Group IV TIFF in 8½ X 11-inch page size images at a resolution of at least 300 DPI with the quality setting of 75% or higher.

ii.      When producing documents in TIFF format, the image files shall be produced along with Concordance/Opticon image load files, linking the images to the corresponding document that indicate the beginning and ending of each document, showing the Bates number of each page and the appropriate unitization of the documents.

iii.      Each image file of an electronic document will be created directly from the original electronic document. Image files shall show all text and images that would be visible in the original electronic format (Native Format), including redlines and speaker notes.

iv.     All TIFF files are to be provided with an accompanying searchable text (.TXT) file extracted from the native, electronic file (not generated as an OCR file from the TIFF image(s)), and such text files shall contain the full text extraction. To the extent technically feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns, and rows. In the case of files with redacted text, OCR'ed text of the redacted documents may be provided in lieu of extracted text so long as the OCR'ed text is comprehensible.

v.      All documents shall be produced in their original language. For documents in foreign languages, any OCR shall be performed using an OCR tool and settings suitable for the particular byte or multi-byte languages, if available.

vi.     Each text file shall be named according to the Bates number of the first page of the corresponding image files (e.g., BATES000001.TXT).

**Plaintiffs' Proposed Language: Microsoft Word Documents in Color PDFs**

a.      Microsoft Word Documents (or similar) (.DOC, .DOCX, or substantially similar non-Microsoft file formats) should be produced as **a single-color PDF files** for each Document, containing all images for that document, and should be imaged in a manner that captures track changes and comments. To the extent a Requesting Party believes the converted image format distorts, omits, or causes information to be improperly displayed, the Requesting Party may request the Document in Native Format and the Producing Party shall meet and confer to attempt to resolve the problem(s).

**Defendants Proposed Language: Microsoft Word Documents in Black and White TIFFs**

a.      Microsoft Word Documents (or similar) (.DOC, .DOCX, or substantially similar non-Microsoft file formats) should be produced as **TIFFs** for each

Document, containing all images for that document, and should be imaged in a manner that captures track changes and comments. To the extent a Requesting Party believes the converted image format distorts, omits, or causes information to be improperly displayed, the Requesting Party may request the Document in Native Format and the Producing Party shall meet and confer to attempt to resolve the problem(s).

vii.      In the case of email, the corresponding text file shall include, where reasonably available: (1) the individual(s) to whom the communication was directed ("To"); (2) the author(s) of the email communication ("From"); (3) who was copied and blind copied on such email ("CC" and "BCC"); (4) the subject line of the email ("RE" or "Subject"); (5) the names of any attachments; and (6) the text (body) of the email.

2.      **Fields and Metadata**. Exhibit 1 part 2 lists the objective coding fields and Metadata that will be produced for all ESI—including ESI produced in TIFF or Native Format.

**Plaintiffs' Proposed Language: PowerPoint Files and Web pages in native.**

3.      **Native Format Production Documents**.

i.      The Parties will produce the following ESI types in native file format:

a.      Excel files;

**b.      <u>Presentation files (e.g., PowerPoint);</u>**

**c.      <u>Web pages;</u>**

d.      Audio/video files;

e.      Animations.

**Defendants' Proposed Language: PowerPoint Files and Web pages not in native.**

3. **Native Format Production Documents**.

  i.  The Parties will produce the following ESI types in native file format:

    a.  Excel files;

    b.  Audio/video files;

    c.  Animations.

  ii.  To the extent responsive Text Messages are being produced, they will be produced in a reasonably usable format. The Producing Party will disclose its production format of Text Messages to the Receiving Party prior to the production of Text Messages. The Requesting Party retains its rights to meet and confer on the production format to address any concerns. The Parties reserve the right to request production of other ESI types in Native Format, for example, that documents be produced in Microsoft Word, in addition to TIFF images. The Parties agree to meet and confer regarding such requests. Any Native files that are produced should be produced with a link in the NativeLink field, along with all extracted Metadata fields as set forth in Exhibit 1.

  iii.  A Requesting Party may request the production of PowerPoint or other presentations files in Native Format and such request shall not unreasonably be denied by the Producing Party. PowerPoint presentations shall also be produced in full-slide image format, along with speaker notes (which should follow the full images of the slides) with related searchable text, Metadata, and bibliographic information.

  iv.  In the case of personal database (e.g., MS Access) files containing confidential or privileged information, the parties shall meet and confer to determine the

appropriate form of production.

        v.     ESI shall be processed in a manner that preserves hidden columns or rows, hidden text, worksheets, notes, tracked changes, and comments. Any Party seeking a deviation from this provision must provide notice to other Parties and the Parties agree to meet and confer regarding such requests.

        vi.     Any Document produced in native format will be produced according to the following specifications:

        a.     The native format Documents shall be accompanied by a slipsheet with a unique Bates number and confidentiality designation that links to the native file.

        b.     The native format Documents shall be accompanied by reference information that sets forth for each document, sufficient information to allow the Parties to track and authenticate the native format documents produced, including: (i) the name of the custodian from whose files the electronic file is produced; (ii) an appropriately calculated "MD5 Hash Value"; (iii) the original name of the file; and (iv) a Bates number.

        c.     In all cases, unless there is no textual content, an OCR or Extracted Text file shall be produced along with the native file.. For any native format documents that cannot be imaged or where the image is produced as a separate document, a single page placeholder image shall be provided that indicates the file was produced in native format and contains the Bates number and confidential designation, if any, of the corresponding file.

        d.     In order to preserve the integrity of any file produced in Native Format, no Bates number, confidentiality designation, or internal tracking number should be added to the body of the Native Format document unless otherwise agreed to between the

Producing Party and the Requesting Party during any meet and confer related to the production of that Native Format document.

        e.     The Requesting Party may also request that the Producing Party produce additional file types of electronic documents in Native Format where converted image format distorts or causes information to be improperly displayed. The Parties shall meet and confer regarding such requests in good faith and cooperate consistent with the provisions set forth in this Protocol.

        C.     **Deduplication and De-NISTing Documents.** To reduce the unnecessary costs of reviewing and producing exact duplicate documents (i.e., the documents and Metadata fields are identical copies), to the extent reasonably possible and accounting for any technical limitations of any Party's ESI, each Party may remove duplicate ESI prior to producing documents.

        1.     Subject to the provisions in this section, each Party may remove duplicate ESI prior to producing documents (based on the MD5 or SHA-1 hash values at the parent document level). Stand-alone files will de-duplicate against other stand-alone files, but not against attachments contained in document families. If an "identical" document is an attachment to different emails (e.g., where attachment 1 is sent to person A one day and then sent to person B another day), then the attachment shall be produced together with each email.

        2.     For exact duplicate documents, the Producing Party will produce certain Metadata described herein for a single production copy. The Producing Party may de-duplicate documents within custodians and/or across custodians. Names of custodians of copies of files eliminated due to global deduplication shall, if such information is readily available, be provided in the Duplicate Custodian field accompanying the original file.

3.      If during the course of its review the Producing Party identifies a large number of duplicate documents, the Parties may meet and confer regarding a custom deduplication protocol. Except for the removal of extracted logos, no custom deduplication method will be implemented without meeting and conferring with the Requesting Party.

4.      Common system and program files as defined by the NIST Library need not be processed, reviewed, or produced.

D.      **E-mail Thread Suppression:** Email threads are email communications that contain prior or lesser-included email communications. A Producing Party may not use e-mail thread suppression to exclude email from production without first meeting and conferring with the Requesting Party regarding the methodology used for suppression and means of preserving and producing Metadata of any suppressed email. The Producing Party is not required to obtain the agreement of the Requesting Party to its threading methodology. . However, the Requesting Party reserves the right to raise issues with the Court in the event that it believes the threading methodology is improper after meeting and conferring.

E.      **Password Protected Files**. Where the password to an encrypted or password-protected file is known, the Producing Party shall make efforts to ensure that all encrypted or password-protected Documents are successfully processed for review and production under the requirements of this ESI Protocol, and the decrypted Document is produced (if responsive and not privileged). To the extent encrypted or password-protected Documents are successfully processed according to the requirements of this ESI Protocol, the Producing Party has no duty to identify the prior encrypted status of such Documents. To the extent such Documents are not successfully processed that are members of a responsive family, the Producing Party agrees to: (a) produce a slipsheet for each encrypted or password protected Document indicating that the

Producing Party could not successfully process the Document because it cannot be decrypted; and (b) provide the Metadata for the Document required by Exhibit 1 to the extent it can be reasonably extracted from the file in its encrypted form. The Requesting Party and/or Producing Party, as appropriate, shall meet and confer regarding any requests that a Producing Party undertake additional efforts to decrypt files after production.

      F.    **Prior or Other Production.** To the extent a set or sets of Documents in a Party's possession, custody, or control that were previously produced in a prior or other investigation, proceeding or litigation are the subject of discovery in this case and the ESI for such Documents (including but not limited to Metadata fields, searchable text, and organization) differs from the substance and format agreed to herein, such Party may produce the production set in the same format it was produced in the prior investigation/proceeding/litigation, including, but not limited to, with whatever Metadata fields, searchable text, organization, and formats that were produced in that investigation/proceeding/litigation.

      1.    In the event certain Documents in the prior or other productions are in a form that is not reasonably usable by the Requesting Party, the Requesting Party and the Producing Party shall meet and confer regarding alternative forms of production for such Documents. If the Parties are unable to agree after meeting and conferring in good faith, the Parties may seek resolution by the Court, Magistrate Judge, or Special Master appointed by the Court.

      G.    **Prior Privilege Logs.** To the extent a Party produces Documents in this case that were produced in a prior proceeding or litigation, the Producing Party may produce the privilege logs from those prior proceedings/litigations in lieu of creating, in this case, a new log (or log entries) for the Documents that were withheld in the prior proceeding/litigation, even if the

privilege logs do not comply with the privilege log requirements in any Order in this case. The Requesting Party retains the right to all related challenges, including, without limitation, the right to challenge the validity of any privilege claim(s) asserted.

H.    **Redactions.**

**Plaintiffs' Proposed Language: Redactions, ¶1**

1.    To the extent that a responsive document contains content that is (a) privileged or protected from discovery as work product or by reason of any other applicable privilege or immunity; or (b) protected personal information subject to federal, state, or foreign privacy requirements (e.g., HIPAA), the Producing Party may produce that document in a redacted form. Any redactions shall be clearly indicated on each page of the document from which information is redacted, bearing a designation that it has been redacted. The designation shall make clear the reason for the redaction (e.g., "Redacted Privileged"). Where a document contains both privileged and non-privileged responsive content, the Producing Party shall redact the privileged material and produce the remainder of the document as redacted.

**Defendants' Proposed Language: Redactions, ¶1**

1.    To the extent that a responsive document contains content that is (a) privileged or protected from discovery as work product or by reason of any other applicable privilege or immunity; or (b) protected personal information subject to federal, state, or foreign privacy requirements (e.g., HIPAA), or **(c) personally or commercially sensitive so long as that information is not responsive to any requests for production**, the Producing Party may produce that document in a redacted form. Any redactions shall be clearly indicated on each page of the document from which information is redacted, bearing a designation that it has been redacted. The designation shall make clear the reason for the redaction (e.g., "Redacted

Privileged"). Where a document contains both privileged and non-privileged responsive content, the Producing Party shall redact the privileged material and produce the remainder of the document as redacted.

2.    Native Excel or other spreadsheet files which are redacted may be redacted by overwriting the data contained in a particular cell, row, column, or tab with the word "Redacted" and shall make clear the reason for the redaction (e.g., "Redacted Privilege"). The Parties acknowledge that redacting the native may alter the Metadata of the produced file; however, the Metadata produced subject to Exhibit 1 will be the Metadata extracted from the original native file, other than Metadata containing redacted information.

3.    Native Excels or other files that ordinarily are to be produced natively and are redacted, may be produced as black-and-white or color (as applicable), single-page, 300 DPI Group IV TIFF images, with text and related path provided in document level text files, which can be created through OCR, with load files pursuant to Exhibit 2, which shall include all information contained in the original file, including but not limited to speaker notes and "hidden" slides, with any redaction clearly delineated. If the file contains external video or audio components, the video or audio will be produced as native files.

4.    If the items redacted and partially withheld from production are audio/visual files, the Producing Party shall provide the unredacted portions of the content. If the content is a voice recording, the parties shall meet and confer to discuss the appropriate manner for the Producing Party to produce the unredacted portion of the content.

**Plaintiffs' Proposed Language: Redactions, ¶5**

5.    **The Parties will not make any redactions based upon the purported relevancy of a Document.**

**Defendants' Proposed Language: Exclude Plaintiff's Addition of ¶5**

~~5.     The Parties will not make any redactions based upon the purported relevancy of a Document.~~

I.     **Exception Logs.** Parties agree to meet and confer concerning exception logs and report back to the Court within thirty (30) days of the entry of this Order.

J.     **Confidentiality of Produced ESI.** Responsive ESI, whether produced as TIFF images or in Native Format, shall be produced pursuant to the terms of the separately entered Stipulated Protective Order. If the Producing Party is producing ESI in TIFF Format subject to a claim that it is protected from disclosure under any protective agreement or confidentiality order, or any agreement entered into or Order issued in this matter, the word "CONFIDENTIAL" (or something substantially similar) shall be annotated on each page of such document.

1.     If the Producing Party is producing ESI in Native Format subject to a claim that it is protected from disclosure under the Stipulated Protective Order or any protective agreement or confidentiality order entered into or other Order issued in this matter, then the designation shall be included in the TIFF placeholder or where not produced with a TIFF placeholder, the storage device (e.g., CD, USB, or hard drive) containing such native ESI data shall be labeled with the designation in a location that does not obliterate, conceal, or interfere with any information from the source document.

K.     **Additional Production Specifications.** All productions will include these additional specifications:

1.     Delimited Metadata load file (.DAT) containing a field with the full path and file name to the native files produced pursuant to Exhibit 2, and shall include the Metadata fields identified below (Exhibit 1);

2.      Delimited image load/unitization file for images (.opt, .lfp, or .dii) shall be provided pursuant to Exhibit 2;

3.      Document level .txt files for all native documents containing extracted full text or OCR text (OCR only if extracted text is not available or if the document has been redacted);

4.      Bates number branding and Confidentiality designation (if any) on the face of the TIFF image in the lower left-hand corner using a consistent font type and size that, to the extent reasonably feasible, does not obliterate, conceal, or interfere with any information from the source document. If the placement in the lower left-hand corner will result in obscuring the underlying image, the Bates number should be placed as near to that position as possible while preserving the underlying image;

5.      A TIFF placeholder embossed with the corresponding confidentiality designation and Bates number shall be produced for all ESI produced in Native Format;

6.      Each Bates number will: (i) be unique across all document productions, including prior productions; (ii) maintain a constant length and format across the entire production (i.e., ABC00000001- with a consistent prefix, no space between the prefix and the number, and padded to the same number of characters); (iii) contain no special characters; and (iv) be sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.

7.      To the extent any documents contain redactions and are produced in TIFF format, the following specifications apply:

   i.  PowerPoint slides/presentations that are produced in TIFF format will be produced with any notes, talking points, outlines, or comments contained therein; and

   ii.  All hidden text (e.g., track changes, hidden columns, comments, notes, markups, etc.) will, to the extent reasonably feasible, be expanded, extracted, and rendered in the TIFF file.

8.  Each of the Metadata and coding fields set forth in Exhibit 1 that can be extracted from a Document shall be produced for that Document. The Parties are not obligated to populate manually any of the fields in Exhibit 1 *except* Default Production Fields ("DPF") that are generated in the course of collection, review, and production (e.g., BEGBATES, ENDBATES, etc.); and the "CUSTODIAN," "DUPLICATE CUSTODIAN," and "REDACTION" fields to the extent such information is readily available. If Metadata fields are not produced because they do not exist or because they are not reasonably accessible, the Producing Party shall include the fields in the header row of the .DAT to the extent practicable and leave the field blank for the corresponding document(s).

  •  **Time Zone.** The parties will meet-and-confer and report back to the Court within thirty (30) days concerning the way in which the time zone shall be processed for ESI items.

  9.  **Auto date/time stamps.** ESI items shall be processed whenever possible so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

10.     The Parties understand and acknowledge that such standardization affects only dynamic date fields and Metadata values and does not affect, among other things, dates and times that are hard-coded text within a file.

## VI.     PRESERVATION

**Plaintiffs' Proposed Language: Preservation**

H.     **Deleted Files and Meet and Confer.** The Parties shall not be obligated under this Protocol to produce or preserve ESI that was deleted, lost, or destroyed before the date upon which the duty to preserve ESI arose, as a result of the routine, good-faith operation of an ESI system. Nothing in this provision limits or expands a Party's obligation to seek or search for ESI known to be "deleted" by a user that remains as a copy on an archive, backup, or as active data on some other central server or place within a Party's possession, custody, or control provided such search is otherwise consistent with and does not exceed or limit the Party's obligations under the Federal Rules of Civil Procedure. **If a Producing Party learns that responsive ESI that should have been preserved was lost or destroyed, and is no longer retrievable, the Parties shall promptly meet and confer regarding such responsive ESI. Nothing in this agreement alters or expands the obligations of the Requesting Party or the Producing Party pursuant to Federal Rule of Civil Procedure 26(b).**

**Defendants' Proposed Language: Preservation**

H.     Deleted Files and Meet and Confer. The Parties shall not be obligated under this Protocol to produce or preserve ESI that was deleted, lost, or destroyed before the date upon which the duty to preserve ESI arose, as a result of the routine, good-faith operation of an ESI system. Nothing in this provision limits or expands a Party's obligation to seek or search for ESI known to be "deleted" by a user that remains as a copy on an archive, backup, or as active data

on some other central server or place within a Party's possession, custody, or control provided such search is otherwise consistent with and does not exceed or limit the Party's obligations under the Federal Rules of Civil Procedure. **If a Producing Party learns that ESI that would reasonably have been searched for responsive information has been lost or destroyed after the date upon which the duty to preserve that ESI arose, the Parties shall promptly meet and confer regarding such ESI. Nothing in this agreement alters or expands the obligations of the Requesting Party or the Producing Party pursuant to Federal Rule of Civil Procedure 26(b).**

## VII.   FAMILY RELATIONSHIPS OF ELECTRONIC FILES

I.      **Family Relationships.** Parent-child relationships between ESI (e.g., the association between an attachment and its parent e-mail, or a spreadsheet embedded within a word processing document), must be preserved by assigning sequential Bates numbers to all files within a parent-child group, and by providing accurate attachment ranges for those files in the Metadata fields required. If a Party withholds as privileged a member of a parent-child group (e.g., a document or portion of a document) that has other non-privileged or privilege redacted members, any parent-child relationship must be similarly maintained by indicating the absence of that document (or portion thereof) using a Bates-numbered slip sheet (or a clearly marked redaction) and the grounds for withholding.

1.      In the event a document or portion of a document that is part of a family is initially withheld as privileged, but later produced, the entire family must be reproduced with it if requested by the Requesting Party, along with all required Metadata.

J.      **Non-Responsive Attachments.** The Parties agree that "non-responsive" shall generally not be a cognizable basis for withholding documents from production, if a document is

associated, through familial relationships, with a responsive document. An otherwise non-responsive attachment to a responsive parent document—or an otherwise non-responsive parent document that has responsive attachments—may not be withheld simply because the document, if it were not in the same family as responsive material, would not be responsive. The Parties agree, however, that the general provisions of this paragraph shall not prejudice any Party's right to seek exceptions if it identifies particular non-responsive documents, or categories or portions of documents, that it believes are appropriate to withhold or redact on the basis of non-responsiveness notwithstanding their association with a responsive document. In such case, the Parties shall meet and confer regarding the exception sought and may submit any such issue to the Court if agreement cannot be reached.

K.     **Embedded Documents.** Where reasonably feasible, non-image embedded ESI documents (e.g., a spreadsheet embedded within a word processing document or an audio file in a PowerPoint presentation) will be extracted, produced as independent document records, and related back to the respective top level parent document (e.g., standalone file, email message, etc.) via the BegAttach and EndAttach fields referenced in Exhibit 1. The embedded document will be marked with a "YES" in the load file under the IsEmbedded field referenced in Exhibit 1. Related embedded documents will be produced within a continuous Bates range.

L.     **Compressed Files.** Compression file types (e.g., .CAB, .GZ, .RAR. .ZIP), shall be decompressed to ensure a container within a container is decompressed into the lowest uncompressed element resulting in individual files. The container file itself shall not be produced. .

## VIII.   STRUCTURED DATA

When responsive information is located in a database—including for enterprise resource planning or human resource applications or databases like Workday, SuccessFactor, Access, Oracle, SQL Server data, SAP, etc.—or other structured or aggregated data source, the Parties will meet and confer to address the production format of responsive data.

## IX.   PARAMETERS FOR CUSTODIAL ESI COLLECTION

Parties agree to meet and confer concerning the parameters for custodial ESI collection, including custodial data sources like: e-mail, cell phone data, personal computer based ESI, phone records, tablets, contacts, cloud based ESI, and information in possession of administrative assistants, and report back to the Court within thirty (30) days of the entry of this Order.

## X.   PRODUCTION MEDIA

Documents shall be produced via secure FTP site, rather than through physical media (e.g., CD-ROM, DVD, or external hard drive), unless such transmission is impracticable or the Parties hereafter agree upon on a different method of transmission. Each production shall be accompanied by a cover letter, to be sent via email at the time of production, including the following information:

A.   Name of the Litigation and its case number;

B.   Name of the Producing Party;

C.   Date of the production (mm/dd/yyyy);

D.   Bates number range;

E.   Confidentiality Designation; and

F.     Notes regarding any irregularities in the production (e.g., whether it is a replacement production (see below)).

G.     Any replacement production or Documents shall cross-reference the original production, clearly identify that it is a replacement, and cross-reference the Bates number range that is being replaced.

H.     Producing Parties may encrypt their productions and, if so, shall provide a key to decrypt the production in a separate communication via email.

## XI.    NON-PARTY SUBPOENAS AND PRODUCTIONS

Any Party that issues a non-party subpoena shall timely notify other Parties when it receives non-party productions of documents, ESI, or other responses from the non-party, and shall provide copies of all such productions in the format in which they were received from the non-party to the other Parties. If the non-party produces documents or ESI that are not Bates labeled, the Requesting Party will Bates-label the documents or ESI before producing a copy to the other Parties if the produced documents or ESI are of the type so requiring consistent with other provisions of this Order.

Nothing in this Protocol precludes a Requesting Party from reviewing a non-party production of documents or ESI and applying (if the non-party produced documents without a confidentiality designation) or elevating a confidentiality designation (e.g., elevating documents designated as CONFIDENTIAL to ATTORNEYS' EYES ONLY) if the production contains highly sensitive information as set forth in the Stipulated Protective Order.

## XII.   OBJECTIONS TO ESI PRODUCTION

If any formatting requirements or other specifications agreed to in this Protocol are later determined by the Producing Party to be not feasible, or unduly burdensome or unreasonably

costly, the Producing Party shall notify the Requesting Party, and the Parties will meet and confer in order to attempt to agree upon appropriate modifications to the Protocol before presenting any such issue to the Court. Notwithstanding anything contained herein to the contrary, a Producing Party shall not intentionally produce ESI in a format not provided for in this Protocol, and if a mistake is made, shall be allowed to remediate that mistake. If an issue arises, the issue may be submitted to the Court after reasonable efforts by the Parties to reach agreement by the meet and confer process.

## XIII.   ESI PROTECTED FROM DISCOVERY OR PUBLIC DISCLOSURE

A.   **Privilege Logs.** For any Document withheld in whole or in part on the basis of privilege, work product doctrine, or other protection, the Party or third party withholding the Document(s) shall produce a privilege log or logs concerning any information that has been redacted or withheld in whole or in part from that production consistent with the procedures set forth in the Privileged Materials Order. The withholding party's log shall be in Excel format that permits electronic sorting and searching. As set forth in the Privileged Materials Order, privilege logs shall be detailed enough to enable other parties to assess the applicability of the privilege or protection asserted and shall include all information as set forth in paragraph __ of that Order. Any disputes as to claims of privilege shall be governed by the procedures set forth in paragraph __ of the Privileged Materials Order.

## XIV.   RESERVATION OF RIGHTS

By entering this Protocol, a Party does not waive any objections it has to requests for documents. Nor does a Party give up its right to review its documents for privilege or any other reason (including to identify non-responsive documents), and the existence of this Protocol cannot be used to compel a party to produce documents without review.

**DONE AND ORDERED** in Miami, Florida, on this __ day of July, 2021.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

Dated: July 9, 2021                          Respectfully submitted,

*/s/ Joseph R. Saveri*
**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (CA SBN 130064)
Steven N. Williams (CA SBN 175489)
Anupama K. Reddy (CA SBN 324873)
Christopher K.L Young (CA SBN 318371)
601 California Street, Suite 1000
San Francisco, CA 94108
Tel: (415) 500-6800
jsaveri@saverilawfirm.com
swilliams@saverilawfirm.com
areddy@saverilawfirm.com
cyoung@saverilawfirm.com

*/s/ Frank Schirripa*
**HACH ROSE SCHIRRIPA &**
**CHEVERIE LLP**
Frank Schirripa (NY SBN 4103750)
Kathryn Hettler (NY SBN 5126065)
Seth Pavsner (NY SBN 4969689)
112 Madison Ave, 10th Floor
New York, New York 10016
Tel: (212) 213-8311
fschirripa@hrsclaw.com
khettler@hrsclaw.com
SPavsner@hrsclaw.com

*/s/ Peter Safirstein*
**SAFIRSTEIN METCALF LLP**
Peter Safirstein (NY SBN 2044550)
Elizabeth S. Metcalf (NY SBN 4644431)
1345 Avenue of the Americas, 2nd Floor
New York, NY 10105
Tel: (212) 201-5845
psafirstein@safirsteinmetcalf.com
emetcalf@safirsteinmetcalf.com

*/s/ Natalia M. Salas*
**THE FERRARO LAW FIRM, P.A.**
Natalia M. Salas (FBN 44895)
James L. Ferraro (FBN 381659)
James Ferraro, Jr. (FBN 107494)
Bruce S. Rogow (FBN 067999)
Sean A. Burstyn (FBN 1028778)
600 Brickell Avenue, Suite 3800
Miami, FL 33131
Tel: (305) 375-0111
nms@ferrarolaw.com
jlf@ferrarolaw.com
jjr@ferrarolaw.com
bsr@ferrarolaw.com
sab@ferrarolaw.com

***Plaintiffs' Lead Counsel***

28

*/s/ Gabriel Amin Assaad*
**MCDONALD WORLEY, P.C.**
Gabriel Amin Assaad (TX SBN 24076189)
Matthew Yezierski (TX SBN 24076989)
1770 St. James Place, Suite 100
Houston, TX 77056
Tel: (713) 523-5500
gassaad@mcdonaldworley.com
matt@mcdonaldworley.com
don@mcdonaldworley.com

*/s/ Jeffrey A. Klafter*
**KLAFTER LESSER, LLP**
Jeffrey A. Klafter (NY SBN 1662428)
Amir Alimehri (NY SBN 5631262)
Two International Drive Suite 350
Rye Brook, NY 10573
Tel: (914) 934-9200
jak@klafterlesser.com
amir.alimehri@klafterlesser.com

*/s/ Maurice D. Pessah*
**Pessah Law Group, PC**
Maurice D. Pessah (CA SBN 275955)
Michael Morris-Nussbaum (CA SBN 317146)
Summer E. Benson (CA SBN 326398)
Jason Sunshine (CA SBN 336062)
Stuart Neil Chelin (CA SBN 320357)
661 N Harper Avenue, Suite 208
West Hollywood, California 90048
Tel: (310) 772-2261
maurice@pessahgroup.com
mmnussbaum@pessahgroup.com
sbenson@pessahgroup.com
jsunshine@pessahgroup.com
stuart@chelinlaw.com

*/s/ Roy T. Willey, IV*
**ANASTOPOULO LAW FIRM**
Roy T. Willey, IV (SC SBN 101010)
Eric M. Poulin (SC SBN 100209)
Blake Abbott (SC SBN 104423)
32 Ann Street
Charleston, SC 29403
Tel: (843) 614-8888
roy@akimlawfirm.com
eric@akimlawfirm.com
blake@akimlawfirm.com

*Plaintiffs' Steering Committee*

_/s/ Kevin J. Orsini_____

**HUNTON ANDREWS KURTH LLP**
Samuel A. Danon (FBN 892671)
Gustavo Javier Membiela (FBN 513555)
María Castellanos Alvarado (FBN 116545)
333 S.E. 2 Avenue, Suite 2400
Miami, FL 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460
sdanon@huntonak.com
gmembiela@huntonak.com
mcastellanos@hunton.com


**CRAVATH, SWAINE & MOORE LLP**
Antony L. Ryan
Kevin J. Orsini
Brittany L. Sukiennik
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
aryan@cravath.com
korsini@cravath.com
bsukiennik@cravath.com

**_Counsel for Defendants Robinhood
Financial LLC, Robinhood Securities, LLC,
Robinhood Markets, Inc. and Robinhood
Crypto, LLC_**


_/s/ Justina K. Sessions_____

**WILSON SONSINI GOODRICH & ROSATI**
Justina K. Sessions
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2197
Facsimile: (415) 947-2099
jsessions@wsgr.com


_/s/ Marc De Leeuw_____

**SULLIVAN & CROMWELL LLP**
Marc De Leeuw
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
deleeuwm@sullcrom.com


**SULLIVAN & CROMWELL LLP**
Adam S. Paris
1888 Century Park East
Los Angeles, CA 90067
Telephone: (310) 712-6600
Facsimile: (310) 712-8800
parisa@sullcrom.com

**SHOOK, HARDY & BACON L.L.P.**
Jennifer A. McLoone (Fla. Bar No. 0029234)
Citigroup Center Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305-358-5171

**_Counsel for Defendant Ally Financial, Inc._**


_/s/ Christopher D. Kercher_____

**QUINN EMANUEL URQUHART & SULLIVAN,
LLP**
Christopher D. Kercher
51 Madison Avenue, 22nd Floor,
New York, New York, 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
christopherkercher@quinnemanuel.com

**WILSON SONSINI GOODRICH & ROSATI**
Kenneth R. O'Rourke
Brendan J. Coffman
1700 K Street NW, 5th Floor
Washington, DC 20006
Telephone: (202) 973-8800
Facsimile: (202) 973-8899
korourke@wsgr.com
bcoffman@wsgr.com

*Counsel for Defendant Open to the Public Investing, Inc.*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Marina E. Lev
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
marinalev@quinnemanuel.com

**BARTLIT BECK LLP**
Adam L. Hoeflich
Dawson Robinson
54 W. Hubbard St., Ste. 300
Chicago, IL 60654
Telephone: (312) 494-4400
Facsimile: (312) 494-4440
adam.hoeflich@bartlitbeck.com
dawson.robinson@bartlitbeck.com

*Counsel for Defendants Citadel Enterprise Americas, LLC and Citadel Securities LLC*

/s/ Jason J. Mendro
**GIBSON, DUNN & CRUTCHER LLP**
Jason J. Mendro
Russell B. Balikian
1050 Connecticut Ave., NW
Washington, DC 20036
Telephone: (202) 887-3726
jmendro@gibsondunn.com
rbalikian@gibsondunn.com

*Counsel for Defendants Charles Schwab & Co., Inc.; TD Ameritrade, Inc.; TD Ameritrade Clearing, Inc.; TD Ameritrade Holding Corporation; and The Charles Schwab Corporation*

/s/ Harry A. Olivar, Jr.
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Harry A. Olivar, Jr.
Korinna S. Anderson
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
harryolivar@quinnemanuel.com
korinnaanderson@quinnemanuel.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Linda J. Brewer
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700
lindabrewer@quinnemanuel.com

*Counsel for Defendant Sequoia Capital Operations LLC*

*/s/ Jason J. Mendro*

**GIBSON, DUNN & CRUTCHER LLP**
Jason J. Mendro
Russell B. Balikian
1050 Connecticut Ave., NW
Washington, DC 20036
Telephone: (202) 887-3726
jmendro@gibsondunn.com
rbalikian@gibsondunn.com

***Counsel for Defendants Charles Schwab &
Co., Inc.; TD Ameritrade, Inc.; TD
Ameritrade Clearing, Inc.; TD Ameritrade
Holding Corporation; and The Charles
Schwab Corporation***

*/s/ Harry A. Olivar, Jr.*

**QUINN EMANUEL URQUHART & SULLIVAN,
LLP**
Harry A. Olivar, Jr.
Korinna S. Anderson
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
harryolivar@quinnemanuel.com
korinnaanderson@quinnemanuel.com

**QUINN EMANUEL URQUHART & SULLIVAN,
LLP**
Linda J. Brewer
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700
lindabrewer@quinnemanuel.com

***Counsel for Defendant Sequoia Capital
Operations LLC***

*/s/ Thomas E. Redburn, Jr.*

**LOWENSTEIN SANDLER LLP**
Thomas E. Redburn, Jr.
Maya Ginsburg
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 262-6700
Facsimile: (973) 597-2457
tredburn@lowenstein.com
mginsburg@lowenstein.com

**LOWENSTEIN SANDLER LLP**
Zarema Arutyunova Jaramillo
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 753-3800
Facsimile: (202) 753-3838
zjaramillo@lowenstein.com

*/s/ Shari Ross Lahlou*

**DECHERT LLP**
Shari Ross Lahlou
1900 K Street, NW
Washington, D.C. 20006
Telephone: (202) 261-3300
Facsimile: (202) 261-3333
shari.lahlou@dechert.com

**Dechert LLP**
Andrew J. Levander
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698 3500
Facsimile: (212) 698 3599
andrew.levander@dechert.com

*Counsel for Defendants Melvin Capital Management LP and Candlestick Capital Management LP*

**DECHERT LLP**
Steven Bizar
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994 4000
Facsimile: (215) 994 2222
steven.bizar@dechert.com

*Counsel for Defendant Interactive Brokers LLC*

/s/ Robin Nunn
**MORGAN, LEWIS & BOCKIUS LLP**
Robin Nunn
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000
Facsimile: (212) 309-3001
robin.nunn@morganlewis.com

*Counsel for Defendant Stash Financial, Inc.*

/s/ Gregory M. Boyle
**JENNER & BLOCK, LLP**
Gregory M. Boyle
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone: (312) 923-2651
gboyle@jenner.com

*Counsel for Defendants The Depository Trust & Clearing Corporation; The Depository Trust Company*

/s/ Alfred C. Pfeiffer, Jr.
**LATHAM & WATKINS LLP**
Alfred C. Pfeiffer, Jr.
Belinda S Lee
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
al.pfeiffer@lw.com
belinda.lee@lw.com

*Counsel for Defendants Square, Inc. and Cash App Investing LLC*

## EXHIBIT 1

## FIELDS and METADATA TO BE PRODUCED

1.      The load files accompanying scanned paper documents will include the following

objective coding fields, to the extent applicable:

| Field | Field Description |
|---|---|
| BEGBATES | First Bates identifier of item |
| ENDBATES | Last Bates identifier of item |
| BEGATTACH | Starting Bates number of a document family |
| ENDATTACH | Ending Bates number of a document family |
| PAGECOUNT | Number of pages |
| TEXTLINK | Link to text file for the document |
| CUSTODIAN | Name of custodian or custodial file contained in the collected file |

2.      The following Metadata fields shall be included in Load files accompanying ESI, to the

extent reasonably accessible:

| Field | Field Description for Electronic Documents | Field Description for Emails or Calendar Entries |
|---|---|---|
| BEGBATES | First Bates identifier of item | First Bates identifier of item |
| ENDBATES | Last Bates identifier of item | Last Bates identifier of item |

| BEGATTACH | Starting Bates number of a document family | Starting Bates number of a document family |
|---|---|---|
| ENDATTACH | Ending Bates number of a document family | Ending Bates number of a document family |
| PAGECOUNT | Number of pages | Number of pages |
| ATTACHCOUNT | Number of files attached to parent | Number of files attached to parent |
| CUSTODIAN | Custodian(s) of the document | Custodian(s) of the document |
| DUPLICATE CUSTODIAN | Name of duplicate custodian(s) | Name of duplicate custodian(s) |
| CONFIDENTIALITY | Confidentiality designation | Confidentiality designation[1] |
| AUTHOR | Document author from Metadata | n/a |
| FROM | n/a | Sender of message or calendar invite |
| TO | n/a | Recipient of message or calendar invite |

---

[1] If the confidentiality metadata field conflicts with the designation on the face of the document, the higher designation controls.

| CC | n/a | Copied recipients of message or calendar invite |
|---|---|---|
| BCC | n/a | Blind copied recipients of message or calendar invite |
| SUBJECT | n/a | Subject of message or calendar invite |
| TITLE | Title from a document's properties | n/a |
| DATECREATED | Date file was created | n/a |
| TIMECREATED | Time file was created | |
| DATEMODIFIED | Date file was last modified | |
| TIMEMODIFIED | Time file was last modified | |
| SENTDATE | n/a | The sent date of the message in the format MM/DD/YYYY |
| SENTTIME | n/a | The sent time of the message in the format HH:mm:ss |
| RECEIVEDDATE | | The received date of the message in the format MM/DD/YYYY |

| | | |
|---|---|---|
| RECEIVEDTIME | | The received time of the message in the format HH:mm:ss |
| Status as READ or UNREAD | Whether or not a message was READ or UNREAD. | Whether or not a message was READ or UNREAD. |
| ID of Original Message REPLIED to or FORWARDED | The unique Email message identifier of the previous message in the thread (the message that was replied to or forwarded). | The unique Email message identifier of the previous message in the thread (the message that was replied to or forwarded). |
| TIMEZONE | Metadata field indicating the time zone in which an email was sent. For instance, unique local timestamp populated by MS Outlook on all outgoing messages is "PR_CLIENT_SUBMIT_ TIME". | Metadata field indicating the time zone in which an email was sent. For instance, unique local timestamp populated by MS Outlook on all outgoing messages is "PR_CLIENT_SUBMIT_TIM E". |
| FILENAME | Contents of this Metadata field, or an equivalent | Contents of this Metadata field, or an equivalent |
| FILEEXTEN | File extension | File extension |
| FILESIZE | Size of the file in bytes | Size of the file in bytes |

| | | |
|---|---|---|
| LOGICALPATH | The directory structure of the original file(s). Any container name is included in the path. | The directory structure of the original file(s). Any container name is included in the path. |
| HASH | MD5 or SHA1 hash of the document | MD5 or SHA1 hash of the email |
| THREADID | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that permits email threading in review software. | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that permits email threading in review software. |
| THREADINDEX | Message header identifier, distinct from "PR_Conversation_Index", that permits threading of email chains in review software. | Message header identifier, distinct from "PR_Conversation_Index", that permits threading of email chains in review software. |
| ITEMTYPE | Identifies whether the file is an email, attachment, or stand-alone efile. | Identifies whether the file is an email, attachment, or stand-alone efile. |
| ISEMBEDDED | Identifies if a document is embedded in another document. | Identifies if a document is embedded in another document. |
| NATIVELINK | Link to native file (if any) | Link to native file (if any) |
| TEXTLINK | Link to text file for the document | Link to text file for the email |

| REDACTION | Identifies if a document has been redacted | Identifies if a document has been redacted |
|---|---|---|
| **Additional Field Descriptions for Contacts and Calendar Entries** | | |
| Date of Creation | Contact | Date the contact entry was created or sent |
| Last Modified Date | Contact | Date the contact entry was last modified. |
| Name Fields | Contact | All names associated with contact entry (such as first, last, middle, nicknames, prefix, suffix, etc.) |
| Email Aliases | Contact | For example, the name or reference that will display in the email address lines in place of the actual email address |
| Phone Numbers | Contact | All phone numbers associated with the contact entry |
| Addresses | Contact | All physical/mailing addresses associated with the contact entry |
| URL addresses | Contact | All URL addresses associated with the contact entry |
| Notes/Journal Field | Contact | All free text entered by user that is associated with and reflected in contact entry |

| Other Contacts | Contact | Identification of other contact entries associated with and reflected in the contact entry, such as contact entry's assistant or manager |
| Contact Tracking | Contact | Track contacts made with the person or entity shown in the contact entry, such as date and/or time and type of contact. |
| Importance Ranking | Contact | Level of importance/sensitivity of the contact entry (e.g., High Importance or Low Importance) |
| Follow-Up Flags | Contact | Tracks responses to contact entries that were sent and follow up on contact entries that were received |
| Categories/ Groups | Contact | Specific fields designed to sort, filter or classify the contact entry |
| Date of Creation | Calendar | The date the calendar entry was created or sent |
| Last Modified Date | Calendar | Date the calendar entry was last modified |
| Other fields associated with the date, time, and place of the calendar entry | Calendar | E.g., address and room designations for physical location meetingsl dial-in information or web addresses for phone conferences and virtual meetings |
| Notes/Journal Field | Calendar | All free text entered by the user that is reflected in the calendar entry |
| Importance Ranking | Calendar | Level of importance/sensitivity of the calendar entry |

| Follow-Up Flags | Calendar | Tracks responses to calendar entries that were sent and follow-up on calendar entries that were received |
| Categories/Groups | Calendar | Specific fields designed to sort, filter or classify calendar entries |
| Response Category | Calendar | The response to a calendar or meeting invitation (e.g., tentative or accepted) |

Such Metadata field values will be extracted from the native file and will be produced to the extent available at the time of collection and processing, except that they may be redacted if privileged or if the information in the Metadata is protected by law or Court Order. This list of fields does not create any obligation to create or manually code fields that do not exist as part of the original Metadata of the document.

**EXHIBIT 2**

**REQUESTED LOAD FILE FORMAT FOR DOCUMENTS AND ESI**

1.   **Delimited Text File.**

A delimited text file (.DAT File) containing the fields listed in Exhibit 1 should be provided.

The delimiters for the file should be Concordance defaults accordingly:

| Record Delimiter | ASCII character 10 followed by ASCII character 13 |
|---|---|
| Field Delimiter | ASCII character 20 (¶) |
| Multi-value Delimiter | ASCII character 59 (;) |
| Text Qualifier | ASCII character 254 (þ) |
| Newline | ASCII character 174 (®) |

þBegBatesþ¶þEndBatesþ¶þBegAttachþ¶þEndAttachþ¶þPageCountþ¶þCustodianþ

- The first record should contain the field names in the order of the data.

- All date fields should be produced in mm/dd/yyyy format.

- Use carriage-return line-feed to indicate the start of the next record.

- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, etc.); a separate volume should be created for each piece of media delivered.

- The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (i.e., ABC001.DAT).

- The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.).

- If Foreign Language / Unicode text exists, DAT file shall be in appropriate UTF-8 or UTF-16 format.

2.     **Image Cross-Reference File (.opt).** The Opticon cross-reference file is a comma delimited file consisting of six fields per line. There must be a line in the cross-reference file for every image in the database. The format for the file is as follows:

ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount.

Further definitions and instructions as follows:

| | |
|---|---|
| ImageID | The unique designation that Concordance and Opticon use to identify an image. This should be the BegBates Number of the Document. |
| VolumeLabel | The name of the volume. |
| ImageFilePath | The full path to the image file. |
| DocumentBreak | If this field contains the letter "Y," then this is the first page of a Document. If this field is blank, then this page is not the first page of a Document. |
| FolderBreak | Leave empty. |
| BoxBreak | Leave empty. |
| PageCount | Number of pages in the Document. |

- The name of the image load file should mirror the name of the delivery volume, and should have the appropriate extension (e.g., ABC001.LFP).

- The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.).

- There should be one row in the load file per TIFF image.

- Every image in the delivery volume should be contained in the image load file.

- The image key should be named the same as the Bates number of the page.

- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.), i.e., a separate volume should be created for each piece of media delivered.

3.      **Sample Data.**

PROD00000001,VOL001,E:\100\ PROD00000001.TIF,Y,,2

PROD00000002,VOL001,E:\100\ MT00000002.TIF,,,,

PROD00000003,VOL001,E:\100\ MT00000003.TIF,Y,,,4

PROD00000004,VOL001,E:\100\ MT00000004.TIF,,,,

PROD00000005,VOL001,E:\100\ MT00000005.TIF,,,,

PROD00000006,VOL001,E:\100\ MT00000006.TIF,,,,

Summation DII File:
@C HASIMAGE YES

@T EPRG036023 2

@DD:\FILES\PRODUCTION\CD0004\VOL0011\Images

EPRG036023.tif

EPRG036024.tif

4. **OCR / Extracted Text Files.**

OCR or Extracted Text files shall be provided in a separate \OCR\ directory containing Document level text files

If Foreign Language / Unicode text exists, TEXT files shall be in appropriate UTF-8 or UTF-16 format