UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-2989-MDL-ALTONAGA/Torres

IN RE: JANUARY 2021 SHORT SQUEEZE
TRADING LITIGATION

This Document Relates to: All Actions Involving Federal Securities Laws

**<u>MOTION AND MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
MOVANTS ABE KURDI AND TEODORO RUSSELL PUEYRREDON</u>**

# TABLE OF CONTENTS

**PAGE(S)**

MOTION ................................................................................................................................. 1

MEMORANDUM OF LAW ................................................................................................... 2

I.      INTRODUCTION ....................................................................................................... 2

II.     BACKGROUND ......................................................................................................... 2

III.    ARGUMENT ............................................................................................................... 6

        A.    Movants Should Be Appointed Lead Plaintiffs Under The PSLRA ................... 6

            1.    Movants Made A Motion In Response To The Republished Notice .......... 6

            2.    Movants Have The Largest Financial Interest ............................................. 6

            3.    Movants Satisfy The Requirements of Rule 23 ........................................... 9

                a.    Typicality ............................................................................................... 10

                b.    Adequacy ............................................................................................... 10

        B.    Movants' Counsel Should Be Appointed Lead Counsel .................................. 11

IV.   CONCLUSION .......................................................................................................... 13

## TABLE OF CONTENTS

PAGE(S)

**CASES**

*Campos v. ChoicePoint, Inc.*,
  237 F.R.D. 478 (N.D. Ga. 2006) .................................................................................. 10

*Cohen v. U.S. Dist. Court for N. Dist. of California*,
  586 F.3d 703 (9th Cir. 2009) ....................................................................................... 11

*Eastwood Enterprises v. Farha*,
  2008 WL 687351 (M.D. Fla. Mar. 11, 2008) ................................................................ 7

*Fischler v. AMSouth Bancorporation*,
  1997 WL 118429 (M.D. Fla. Feb. 6, 1997) ................................................................... 9

*In re 21st Century Holding Co. Sec. Litig.*,
  2007 WL 9220955 (S.D. Fla. 2007) .............................................................................. 7

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
  258 F.R.D. 260 (S.D.N.Y. 2009) ................................................................................... 6

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) .......................................................................................... 9

*In re Fuwei Films Sec. Litig.*,
  247 F.R.D. 432 (S.D.N.Y. 2008) ................................................................................... 9

*Inchen Huang v. Depomed, Inc.*,
  289 F. Supp. 3d 1050 (N.D. Cal. 2017) ....................................................................... 11

*McDermid v. Inovio Pharm., Inc.*,
  467 F. Supp. 3d 270 (E.D. Pa. 2020) ............................................................................. 9

*Newman v. Eagle Bldg. Techs.*,
  209 F.R.D. 499 (S.D. Fla. 2002) .................................................................................... 7

*Piazza v. Ebsco Indus., Inc.*,
  273 F.3d 1341 (11th Cir. 2001) ................................................................................... 10

*Plumbers & Pipefitters Loc. 51 Pension Fund v. Darden Restaurants, Inc.*,
  2008 WL 2608111 (M.D. Fla. July 1, 2008) ................................................................. 7

*Plymouth Cty. Ret. Sys. v. Carter's, Inc.*,
  2009 WL 692141 (N.D. Ga. Mar. 13, 2009) ............................................................... 10

*Sheet Metal Workers Loc. 28 Pension Fund v. Off. Depot, Inc.*,
  2008 WL 1943955 (S.D. Fla. May 2, 2008) .................................................................... 8

**STATUTES**

15 U.S.C. § 78(j)(b) ............................................................................................................. 5

15 U.S.C. § 78u-4 ........................................................................................................... 1, 5

15 U.S.C. § 78u-4(a)(3)(B)(iii) ........................................................................................... 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(aa) ..................................................................................... 6

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I) ....................................................................................... 7

15 U.S.C. § 78u-4(a)(3)(B)(v) .......................................................................................... 11

**RULES**

Federal Rules of Civil Procedure, Rule 23 ............................................................... 2, 6, 9, 10

## MOTION

PLEASE TAKE NOTICE that pursuant to 15 U.S.C. § 78u-4, Movants Abe Kurdi and Teodoro Russell Pueyrredon (collectively "Movants") will move, before the Honorable Cecilia M. Altonaga, United States District Judge for the United States District Court, Southern District of Florida, at Wilkie D. Ferguson, Jr. United States Courthouse, 400 North Miami Avenue Room 12-2, Miami, Florida 33128, on a date and at a time designated by the Court, for an Order appointing Movants as Lead Plaintiffs in the present action and appointing their counsel, Bursor & Fisher, P.A., as Lead Counsel in the present matter. In the alternative, each Movant moves individually for appointment as Lead Plaintiff and for appointment of counsel Bursor & Fisher, P.A. as Lead Counsel should the Court decline to appoint them as a group. This Motion is supported by the accompanying Memorandum of Law in Support of the Motion of Movants to Appoint Lead Plaintiffs and Approve Their Selection of Lead Counsel and accompanying exhibits, the declaration of Sarah N. Westcot, and the certifications of Movants submitted herewith.

**MEMORANDUM OF LAW**

## I.   INTRODUCTION

Movants Abe Kurdi and Teodoro Russell Pueyrredon (collectively "Movants") hereby move for appointment as Lead Plaintiffs in the consolidated actions against Robinhood Financial, LLC ("Robinhood Financial"), Robinhood Securities, LLC ("Robinhood Securities"), Robinhood Markets, Inc. ("Robinhood Markets") (collectively, "Robinhood" or "Defendant"), for prohibiting or restricting customers from buying multiple publicly traded stocks, including but not limited to GameStop ("GME"), AMC Entertainment ("AMC"), American Airlines ("AAL"), Nokia ("NOK"), BlackBerry Limited ("BB"), Bed Bath & Beyond ("BBBY"), Express ("EXPR"), Koss Corporation ("KOSS"), Naked Brand Group ("NAKD"), Sundial Growers, Inc. ("SNDL"), Tootsie Roll Industries ("TR"), and Trivago NV ("TRVG") (collectively, the "Stocks"), during an unprecedented rise in valuation of the aforementioned Stocks. Movants have reviewed complaints filed in this action alleging that Defendants engaged in market manipulation in violation of federal securities laws and have authorized the filing of a complaint on their behalf, collectively have the largest financial stake in the litigation, and because Movants otherwise *prima facie* satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, their motion should be granted. In the alternative, each Movant moves individually for appointment as Lead Plaintiff and for appointment of counsel Bursor & Fisher, P.A. as Lead Counsel should the Court decline to appoint them as a group.

## II.   BACKGROUND

These consolidated matters against Robinhood arise due to Robinhood's market-manipulative conduct in outright restricting or substantially limiting open market trading of the Stocks on its platform. In short, these Stocks were heavily shorted by various hedge funds and

institutional investors. Because of the unusually high amount of shorted stock, an organized group of retail investors effectuated a short squeeze as to the Stocks, many of whom used the Robinhood's trading platform. The short-squeeze strategy largely consisted of purchasing as many outstanding shares of the Stocks as possible, combined with purchasing call options "out of the money." As the Stocks rose in value due to the increased purchasing of shares, the increasing Stock valuation moved the share price closer to the strike price of the call options (closer to being "in the money"). Faced with rapidly increasing share prices (and greater and greater losses for those holding short positions), persons or entities shorting the Stocks began to close their short positions to mitigate loss, which had the effect of further increasing the share price. Faced with the prospect of delivery on the out of the money call options, market makers were pressured to hedge by purchasing the Stocks should delivery be required, which further drove up the Stocks' price. This feedback loop put tremendous pressure on Robinhood, which was required to post increasingly high amounts of collateral as required by its regulator. Faced with this mounting pressure, and indeed a threat to its very existence, Robinhood intentionally interfered with the otherwise free market and heavily restricted, if not completely eliminated, purchasing any additional shares of the Stocks and allowed only selling or closing of positions. This had the effect of deflating the short squeeze, as the artificial conditions created by Robinhood prevented further buying but freed up shares to be used to replenish its inventory. In short, Robinhood chose its own interests before those of its customers, and violated federal securities laws as the means of doing so.

Specifically, on or about January 11, 2021, stocks in GME, AMC, and NOK, among others, began to rise. However, on or around January 27, 2021, these Stocks were no longer available for purchase by retail investors on Robinhood's platform. For example, on Robinhood, the Stocks

3

featured an icon that read, "This stock is not supported on Robinhood":



By prohibiting the purchase of the Stocks, Robinhood denied their customers the ability to purchase shares of Stocks rapidly rising in valuation, and through their market-manipulative actions caused a steep decline in the value of the Stocks.

Robinhood knew that its manipulative conduct was to the detriment of its customers. Robinhood's CEO, Vlad Tenev, stated publicly in an interview with Elon Musk that "as a clearing broker, and this is where Robinhood Securities comes in, we have to put up money to the NSCC [National Securities Clearing Corporation]," and that the NSCC gave Robinhood a file requesting deposit of $3 billion dollars, later lowered to $1.4 billion through negotiations, and again reduced to $700 million, which Robinhood paid. Elon Musk then asked Mr. Tenev "[i]s anyone holding you hostage right now?" To which Mr. Tenev answered "no." In discussing the decision to have position closing only, Mr. Tenev said "**we knew this was a bad outcome for customers**."[1]

---

[1] https://www.realclearpolitics.com/video/2021/02/01/elon_musk_interviews_robinhood_ceo_vlad_tenev_on_stock_tradigin_restrictions_on_clubhouse_app.html (last visited 2/2/21).

As a result of Robinhood's conduct, numerous complaints were filed alleging violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(j)(b), and Rule 10b-5 promulgated thereunder by the SEC. After consolidation of the securities cases with the common law consumer class actions, an initial round of lead plaintiff motions under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, were filed. Specifically, the Court considered a motion by Mr. Cody Todd, represented by the Rosen Law Firm P.A. ("Rosen"), and a competing motion filed by Plaintiffs Eric Quat, Aaron Fassinger, Mike Ross, Igor Kravchenko, Michael McFadden and Tenzin Woiser, represented by Bursor & Fisher, P.A. On May 17, 2021, the Court entered an Order denying both motions. *See* May 17, 2021 Order ("Order") (ECF No. 307). The Court denied Rosen's motion because the published notice omitted "critical information" such as the case name, docket number, and court where the action was pending. *Id.* at 5-6. Further, the Court noted that the notice was deficient because interested class members were "faced with a broken hyperlink" and were "left with no choice but to contact the law firm listed." *Id.* at 6. The Court directed Rosen to "republish notice addressing the identified deficiencies." *Id.* at 7.

Rosen republished notice on May 28, 2021 (ECF No. 321). In response to that notice, Movants now file their motion to be appointed lead plaintiffs and for approval of their selection of counsel, Bursor & Fisher, P.A. Pursuant to the PSLRA, Movants have executed certifications attesting, among other things, that they are willing to serve as representative parties on behalf of the Class and setting forth the financial losses suffered by them as a result of Robinhood's conduct. The certifications are attached to the accompanying Declaration of Sarah N. Westcot ("Westcot Dec.") as Exhibit A.

### III.      ARGUMENT

**A. Movants Should Be Appointed Lead Plaintiffs Under The PSLRA**

The PSLRA "requires the court to appoint a 'lead plaintiff' in private securities class actions who is 'the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members.'" *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 268 (S.D.N.Y. 2009). 15 U.S.C. § 78u-4(a)(3)(B)(iii) states, in pertinent part:

> Subject to subclause (II), for purposes of clause (i), the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—
>
> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

Here, Movants satisfy each of these factors.

**1. Movants Made A Motion In Response To The Republished Notice**

Movants have brought the present motion in response to the republished notice and have filed herewith PSLRA certifications attesting that they are willing to serve as representatives of the class, are willing to assume the duties and responsibilities of being class representatives, and are willing to provide testimony at deposition and at trial, as necessary. *See* Westcot Dec., Ex. A. As such, Movants satisfy 15 U.S.C. § 78u-4(a)(3)(B)(iii)(aa).

**2. Movants Have The Largest Financial Interest**

"The most important factor in determining the lead plaintiff is the amount of financial

interest claimed." *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 502 (S.D. Fla. 2002). In this District and the Eleventh Circuit more generally, it is well settled that investors may aggregate their losses into a group to show the largest financial interest. *See id.* at 503 ("The idea that plaintiffs may aggregate their losses into a group to show the largest financial interest derives from the language of the PSLRA which states that the most adequate plaintiff is the 'person or group of persons.'") (quoting 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)); *id.* at 503-04 ("This Court adopts the reasoning of the Third Circuit and finds that aggregation is acceptable for the purposes of lead plaintiff in private securities litigation."); *In re 21st Century Holding Co. Sec. Litig.*, 2007 WL 9220955, at *4 (S.D. Fla. 2007) ("When moving for lead plaintiff, aggregation of individual losses to form a small group is acceptable and derives from the language of the PSLRA which states that the most adequate plaintiff is the person or group of persons.") (Internal citations omitted); *Plumbers & Pipefitters Loc. 51 Pension Fund v. Darden Restaurants, Inc.*, 2008 WL 2608111, at *2 (M.D. Fla. July 1, 2008) (permitting two pension funds to aggregate their losses and appointing them as a group of lead plaintiffs); *Eastwood Enterprises v. Farha*, 2008 WL 687351, at *2 (M.D. Fla. Mar. 11, 2008) ("District courts within the Eleventh Circuit have allowed aggregation of a group's loss in order to determine whether the group is the presumptively most adequate plaintiff."). Further, "[t]here is no requirement contained in the PSLRA that the group of persons serving as lead plaintiff have a relationship among themselves. Instead, the PSLRA focuses on whether the person or group that is the proposed lead plaintiff can fairly and adequately serve as the lead plaintiff." *Newman*, 209 F.R.D. at 503–04; *see also Eastwood Enterprises*, 2008 WL 687351, at *2 ("We note at this juncture that we disagree with those courts that have held that the statute invariably precludes a group of 'unrelated individuals' from serving as a lead plaintiff. The statute contains no requirement mandating that the members of a proper group be 'related' in some

manner") (citation omitted).

"In determining the largest financial interest, courts consider: (1) the number of shares purchased during the class period; (2) the amount of the investment, and (3) the 'alleged losses.'" *Sheet Metal Workers Loc. 28 Pension Fund v. Off. Depot, Inc.*, 2008 WL 1943955, at *2 (S.D. Fla. May 2, 2008).

Here, there is no question Movants have suffered the largest financial loss. Currently before the Court are two competing class definitions. The class definition alleged in the complaint filed by Bursor & Fisher reads, "[a]ll persons within the United States who purchased one or more of the Stocks through Robinhood on or before January 28, 2021." Dkt. No. 1 Case No. 1:21-cv-21404 ¶ 68. The class definition alleged by the Rosen Law Firm is "a class of all persons other than defendants sold the Affected Securities on the Robinhood trading platform on or after January 28, 2021, and who were damaged thereby." Dkt. No. 1, Case No. 2:21-cv-01729 ¶ 26. Movants' losses are analyzed under both definitions below. A list of the Stocks purchased by each Movant is also set forth below and in Movants' certifications attached to the Westcot Declaration as Exhibit A.

**BURSOR & FISHER CLASS DEFINITION:**

| Movant Name | Brokerage | Stock | Loss |
|---|---|---|---|
| Abe Kurdi | Robinhood | GME | $4,094.83 |
| Teodoro Russell Pueyrredon | Robinhood | GME | $4,318.27 |

**ROSEN CLASS DEFINITION:**

| Movant Name | Brokerage | Stock | Loss |
|---|---|---|---|
| Abe Kurdi | Robinhood | GME | $9,917.98 |
| Teodoro Russell Pueyrredon | Robinhood | GME | $6,321.72 |

In total, Movants suffered a total loss of $8,413.10 under Bursor & Fisher's class definition. Utilizing the Rosen Law Firm's alleged class definition, Movants suffered a total loss of

8

$16,239.70. Regardless of which class definition is used, Movants have the largest financial stake in the litigation..

### 3. Movants Satisfy The Requirements of Rule 23

Movants also satisfy the requirements of Rule 23. At this juncture, namely at the stage of appointing a lead plaintiff or plaintiffs, only a *prima facie* showing is required. *See, e.g., McDermid v. Inovio Pharm., Inc.*, 467 F. Supp. 3d 270, 277 (E.D. Pa. 2020) ("The Inovio Group makes a *prima facie* showing of typicality"); *In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001) (requiring that the Rule 23 factors be "preliminarily satisfied" at the appointment of lead plaintiff stage); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 439 (S.D.N.Y. 2008) ("At this point, a prospective lead plaintiff need only make a preliminary, *prima facie* showing that his or her claims satisfy the requirements of Rule 23."). As one Florida federal court explained:

> A wide-ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class certification. This inquiry, therefore, focuses on the qualities of the class representatives enumerated in 23(a)(3) and 23(a)(4), that is, typicality and adequacy. Fed. Rule Civ. P. 23. The language of the Act envisions this delineation, which directs attention to "unique defenses" that may apply to a presumptive "most adequate" plaintiff and whether that plaintiff will "adequately represent" the class. The analysis inevitably comes down to the one question of whether Movant will fairly and adequately represent the interests of the class. The Court must determine whether Movant is entitled to the presumption, whether Plaintiff has rebutted that presumption, or whether Plaintiff demonstrated a reasonable basis for taking discovery.

*Fischler v. AMSouth Bancorporation*, 1997 WL 118429, at *2 (M.D. Fla. Feb. 6, 1997).

As to adequacy, "[t]he determination of fair and adequate representation rests on two bases: common interests between representative and the class and a willingness and ability to vigorously prosecute the action." *Id.* at *3. Here, Movants satisfy both typicality and adequacy.

9

### a. Typicality

"Under Rule 23, typicality is present when the lead plaintiff's claims arise from the same series of events and are based on the same legal theories as the claims of other class members." *Plymouth Cty. Ret. Sys. v. Carter's, Inc.*, 2009 WL 692141, at *2 (N.D. Ga. Mar. 13, 2009). "Claims need not be identical to be typical." *Id.*

Here, Movants' claims are typical of those of the other class members because all class members bring claims under federal securities laws; specifically, Robinhood's market-manipulative conduct effected all class members identically. There are no defenses relevant to Movants that are unique to Movants. Further, Movants' interests are not in conflict with the interests of any other class member. *Id.* at *3 ("Plaintiff can adequately represent a class of investors because it has no interests that conflict with other class members . . .").

### b. Adequacy

Rule 23's adequacy requirement "means that the class representative has common interests with unnamed class members and will vigorously prosecute the interests of the class through qualified counsel." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001). "In evaluating the adequacy factor, the Court follows the general principle that adequacy of representation is primarily based on the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the class and whether plaintiffs have interests antagonistic to those of the rest of the class." *Campos v. ChoicePoint, Inc.*, 237 F.R.D. 478, 487 (N.D. Ga. 2006) (citation omitted).

Here, Movants have every intention of vigorously litigating the claims on behalf of the class. Indeed, Movants have certified that they are willing to serve as representative plaintiffs, including attending deposition and trial. *See* Westcot Dec., Ex. A. Further, Movants have retained

counsel highly qualified in complex class action litigation who intend to devote the necessary time and resources to this litigation, as set forth below. Indeed, Movants' counsel, Bursor & Fisher, was recently approved as lead counsel in another securities action by Judge Yvonne Gonzalez Rogers in the Northern District of California. *See* 4/12/21 Order (ECF No. 55), *Kwon v. Robinhood Financial LLC et al*, Case No. 4:20-cv-09328-YGR (N.D. Cal).[2] Neither proposed Lead Plaintiffs or Proposed Lead Counsel have any interests that are antagonistic to the interests of the rest of the class.

### B. Movants' Counsel Should Be Appointed Lead Counsel

Pursuant to the PSLRA, the lead plaintiff has authority to select lead counsel. 15 U.S.C. § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."). "So long as the lead plaintiff has made 'a reasonable choice of counsel, the district court should generally defer to that choice.'" *Inchen Huang v. Depomed, Inc.*, 289 F. Supp. 3d 1050, 1055 (N.D. Cal. 2017) (quoting *Cohen v. U.S. Dist. Court for N. Dist. of California*, 586 F.3d 703, 712 (9th Cir. 2009)).

Here, proposed Lead Counsel has substantial experience handling class actions and other complex litigation, including successful experience litigating, settling, and, where necessary, trying certified class action cases. Bursor & Fisher lawyers have been court-appointed counsel or interim class counsel in more than 30 class actions. *See* Westcot Dec., ¶ 6, and firm resume attached thereto as Exhibit C. Bursor & Fisher has also proven that it can – and will – take cases to trial if necessary, having won multi-million-dollar verdicts or recoveries in six of six civil jury trials in consumer class action cases since 2008. Westcot Dec., at ¶ 5. Bursor & Fisher's most recent class action trial victory came in May 2019 in *Perez v. Rash Curtis & Associates*, Case No.

---

[2] The Order is attached to the Westcot Dec. Exhibit B. *See* Westcot Dec. ¶ 8.

11

16-cv-03396-YGR (N.D. Cal.), in which Bursor & Fisher served as lead trial counsel and won a $267 million jury verdict against a debt collector found to have violated the Telephone Consumer Protection Act. *Id.* Also, while serving as lead trial counsel in *Thomas v. Global Vision Products, Inc.*, Bursor & Fisher obtained a $50 million jury verdict in favor of the plaintiff and class on a CLRA claim. *Id.* In another example, *Ayyad v. Sprint Spectrum, L.P.*, Bursor & Fisher obtained a $299 million trial verdict for a class of Sprint customers. *Id.* Bursor & Fisher also has substantial experience in multidistrict litigation, including holding plaintiffs' leadership positions in *In re Zantac (Ranitidine) Products Liability Litigation*, Case No. 9:20-md-02924 (S.D. Fl.) (Rosenberg, J.) (S. Westcot appointed to Plaintiffs' Steering Committee), *In re Valsartan Losartan and Irbesartan Products Liability Litigation*, Case No. 1:19-md-02875 (D.N.J.) (Plaintiffs' Steering Committee), *American Medical Collection Agency, Inc., Customer Data Security Breach Litigation*, Case No. 2:19-md-02904 (D.N.J.) (Bankruptcy Liaison Counsel). Finally, Bursor & Fisher has an active securities practice, and is presently litigating matters involving federal securities laws, including matters against Robinhood. *See Kwon v. Robinhood Financial LLC et al,* Case No. 4:20-cv-09328-YGR (N.D. Cal) (appointed co-lead counsel).

Bursor & Fisher also has the resources to devote to this litigation. Bursor & Fisher is a well-established, successful law firm that has the resources and personnel necessary to pursue a case of this magnitude, as they have demonstrated in numerous similar large-scale class actions. Bursor & Fisher has already demonstrated the will and ability to commit the necessary resources to assure a strong and well-supported case on behalf of members of the proposed class. The firm's resources are not merely financial, but also include substantial expertise and work-product as discussed above, which were developed in other similar cases that will benefit Plaintiffs and the putative class. Other courts have opined on the resources and commitment of Bursor & Fisher in

12

representing clients in class action cases. For instance, Judge Morrison C. England, Jr. of the Eastern District of California appointed Bursor & Fisher as interim class counsel in *Melgar v. Zicam*, LLC, No. 2:14-cv-00160-MCE-AC (E.D. Cal. Oct. 29, 2014). Westcot Decl., ¶ 10; Exhibit D to Westcot Decl., Oct. 29, 2014 Order in *Melgar v. Zicam*, LLC, No. 2:14-cv-00160-MCE-AC, ECF No. 21. Judge England's order noted that Bursor & Fisher "has extensive experience representing plaintiffs in large class actions, both in negotiating settlements and litigating through trial." *Id*. Judge England further commented that "Bursor & Fisher is a well-established, reputable firm that is up to handling the challenges of this litigation and is capable of committing the requisite resources to doing so. The Court is confident that Bursor & Fisher will fairly and adequately represent the interests of the class." *Id.* (citation omitted).

Given proposed Lead Counsel's qualifications, this Court should approve proposed Lead Plaintiffs' choice of counsel.

## IV.   CONCLUSION

For the foregoing reasons, Movants respectfully request that this Court grant their motion to appoint them as Lead Plaintiffs and approve their selection of Lead Counsel.

Dated: July 27, 2021                         Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   */s/ Sarah N. Westcot*
         Sarah N. Westcot

Sarah N. Westcot (FBN: 1018272)
Rachel L. Miller (FBN: 119778)
Stephen A. Beck (FBN: 1010183)
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006

Email: swestcot@bursor.com
rmiller@bursor.com
sbeck@bursor.com

*Attorneys for Movants*

14

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(3)

Pursuant to Local Rule 7.1(A)(3), counsel for movants have conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so. Counsel for Plaintiff Cody Todd advised that Mr. Todd opposed the initial lead plaintiff motion filed on April 14, 2021. Counsel for Robinhood advised that they did not take a position as to the April 14, 2021 motion. Counsel for Plaintiff Cody Todd and Robinhood have not indicated a change in position.

By:  */s/ Sarah N. Westcot*
Sarah N. Westcot

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 27, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day to all counsel of record in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:  */s/ Sarah N. Westcot*
Sarah N. Westcot