**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-2989-MDL-ALTONAGA/Torres**

In re: JANUARY 2021 SHORT SQUEEZE
TRADING LITIGATION

**This Document Relates to: All Actions Involving the Federal Securities Laws**

**MEMORANDUM OF LAW OF MOVANT BLUE LAINE-BEVERIDGE IN**
**OPPOSITION TO COMPETING LEAD PLAINTIFF MOTION**

1

## TABLE OF CONTENTS

BACKGROUND ...................................................................................................................... 1

ARGUMENT ......................................................................................................................... 3

   I.    MR. LAINE-BEVERIDGE SHOULD BE APPOINTED LEAD PLAINTIFF ............... 3

   II.   MR. LAINE-BEVERIDGE'S SELECTION OF COUNSEL SHOULD BE
APPROVED ...................................................................................................................... 5

   III.   THE GROUP'S MOTION SHOULD BE DENIED ................................................... 6

    A.   THE GROUP IS INADEQUATE AND ATYPICAL ........................................... 7

      1.   The Group is an Improper Lawyer-Made Group of Unrelated Investors .................. 7

      2.   The Group Failed to Provide Any Background Information Regarding its Members 10

      3.   The Group Failed to Provide a Joint Declaration ..................................................... 11

      4.   The Group Provided Inaccurate Calculations .......................................................... 13

      5.   The Group's Selection of Counsel Demonstrates its Inadequacy ............................ 14

CONCLUSION ..................................................................................................................... 16

## **TABLE OF AUTHORITIES**

**Cases**

*Abouzied v. Applied Optoelectronics, Inc.*, 2018 WL 539362 (S.D. Tex. Jan. 22, 2018) ........ 9, 12

*Adcock v. Netbank, Inc.*, 2008 WL 11322962 (N.D. Ga. Apr. 21, 2008) ...................................... 3

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 185 F.R.D. 172 (S.D.N.Y. 1999), *aff'd in part, vacated in part,* 222 F.3d 52 (2d Cir. 2000) .............................................................................. 14

*Belmont Holdings Corp. v. Suntrust Banks, Inc.*, 2009 WL 3188695 (N.D. Ga. Sept. 29, 2009) .. 2

*Bhojwani v. Pistiolis*, 2007 WL 9228588 (S.D.N.Y. July 31, 2007) ............................................. 13

*Brustein v. Lampert*, 2005 WL 8154797 (S.D. Fla. June 16, 2005) ................................................ 7

*Cambridge Ret. Sys. v. Mednax, Inc.*, 2018 WL 8804814 (S.D. Fla. Dec. 6, 2018), *report and recommendation adopted,* 2018 WL 6978626 (S.D. Fla. Dec. 21, 2018) ..................... 3, 5, 6, 7

*Camp v. Qualcomm Inc.*, 2019 WL 277360 (S.D. Cal. Jan. 22, 2019) ......................................... 10

*Carvelli v. Ocwen Fin. Corp.*, 2017 WL 11068524 (S.D. Fla. July 14, 2017), *objections overruled,* 2017 WL 3473482 (S.D. Fla. Aug. 14, 2017) ...................................................... 7, 8

*Eastwood Enterprises v. Farha*, 2008 WL 687351 (M.D. Fla. Mar. 11, 2008) ............................. 9

*Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharmaceutical Indus. Ltd.*, 2021 WL 1217395 (E.D. Pa. Mar. 26, 2021) ........................................................................................ 16

*In re 21st Century Holding Co. Sec. Litig.*, 2007 WL 9220955 (S.D. Fla. 2007) ......................... 8

*In re Baan Co. Sec. Litig.*, 186 F.R.D. 214 (D.D.C. 1999) .......................................................... 12

*In re Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399 (N.D. Ill. Nov. 15, 2019), *reconsideration denied,* 2020 WL 476658 (N.D. Ill. Jan. 28, 2020) ............................. 10

*In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D. 552 (S.D. Ohio 2005) .............................. 15

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) .................................................. 2, 4, 12

*In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427 (S.D. Tex. Feb. 15, 2002) ..................................... 7

*In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618 (S.D.N.Y. 2015) ............................................... 7

*In re Ply Gem Holdings, Inc., Securities Litigation*, 2014 WL 12772081 (S.D.N.Y. Oct. 14, 2014) ....................................................................................................................................... 12

*In re Quintus Sec. Litig.*, 201 F.R.D. 475 (N.D. Cal. 2001) ....................................................... 14

*In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304 (S.D.N.Y. 2001). ....................................... 7

*In re Robinhood Order Flow Litigation*, case no. 4:20-cv-09328 (N.D. Cal.) ...................... 14, 15

*Jakobsen v. Aphria, Inc.,* 2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) ..................................... 12

*Karp v. Diebold Nixdorf, Inc.*, 2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019), *adhered to on reconsideration,* 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019) ................................................ 11

*Kniffin v. Micron Tech., Inc.,* 379 F. Supp. 3d 259 (S.D.N.Y. 2019) .......................................... 12

Krim v. pcOrder.com, Inc., 210 F.R.D. 581 (W.D. Tex. 2002) .................................................... 15

*Luczak v. Nat'l Beverage Corp.,* 2018 WL 9847842 (S.D. Fla. Oct. 12, 2018) ....................... 4, 5

*Marcus v. J.C. Penney Co.*, 2014 WL 11394911 (E.D. Tex. Feb. 28, 2014) ................................. 8

*McIlvaine v. ArthroCare Corp.*, 2008 WL 11331999 (S.D. Fla. July 16, 2008) ........................... 2

*Micholle v. Ophtothech Corp.*, 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ........................... 13

*Miller v. Dyadic Int'l, Inc.*, 2008 WL 2465286 (S.D. Fla. Apr. 18, 2008) ............................. 1, 14

*Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499 (S.D. Fla. 2002) ............................................. 3, 9

*Perez v. HEXO Corp.*, 2020 WL 905753 (S.D.N.Y. Feb. 25, 2020), *reconsideration denied sub nom. In re HEXO Corp. Sec. Litig.*, 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020) ............... 11

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395 (S.D.N.Y. 2004) ........................................................................................................... 11

*Piven v. Sykes Enters. Inc.,* 137 F.Supp.2d 1295 (M.D. Fla. 2000) ......................................... 1, 10

*Plumbers & Pipefitters Local 51 Pension Fund v. Darden Restaurants, Inc*., 2008 WL 2608111 (M.D. Fla. July 1, 2008) ......................................................................................................... 6, 9

*Smajlaj v. Brocade Commc'ns Sys. Inc.,* 2006 WL 7348107 (N.D. Cal. Jan. 12, 2006) ............. 10

*Springer v. Code Rebel Corp.*, 2017 WL 838197 (S.D.N.Y. Mar. 2, 2017) .................................. 6

*Stires v. Eco Science Solutions, Inc.*, 2018 WL 5784817 (D.N.J. Feb. 14, 2018) ....................... 12

*Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273 (D. Ariz. Apr. 7, 2008) ........................... 10

*Varghese v. China Shenghuo Pharm. Holdings, Inc.,* 589 F. Supp. 2d 388 (S.D.N.Y. 2008) . 8, 11

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) ....................................................... 4

*Weinberg v. Atlas Air Worldwide Holdings, Inc*., 216 F.R.D. 248 (S.D.N.Y.2003) ................... 14

*Welch v. Meaux*, 2020 WL 4758269 (W.D. La. Aug. 17, 2020) ................................................... 7

**Statutes**

15 U.S.C. § 78u-4(a) ........................................................................................................... passim

**Rules**

Fed. R. Civ. P. Rule 23 ........................................................................................................ passim

Lead Plaintiff Movant Blue Laine-Beveridge ("Movant" or "Mr. Laine-Beveridge") respectfully submits this opposition to the competing lead plaintiff motion filed by Abe Kurdi ("Mr. Kurdi") and Teodoro Russell Pueyrredon ("Mr. Pueyrredon" and collectively with Mr. Kurdi the "Group"). Dkt. No. 365.

## **BACKGROUND**

Before the Court are two motions seeking appointment as Lead Plaintiff and approval of their selection of counsel. Dkt. Nos. 365 and 366.

Mr. Laine-Beveridge lost $122,383.49. Dkt. Nos. 366 at 9 and 366-4. As explained in his opening papers, Mr. Laine-Beveridge is a sophisticated investor with 10 years of investing experience, including 5 years of trading on Robinhood's platform. Dkt. No. 366 at 11. Mr. Laine-Beveridge is a resident of New York, a registered nurse, holds a degree in biology, and has experience in the hospitality industry. *Id*.

The Group lost $16,239.70. Dkt. No. 365 at 13; *see also* Dkt. No. 365-2 at 6 and 9. Because the Group has a smaller financial interest and does not meet Rule 23's adequacy requirements, the Group cannot be the presumptive lead plaintiff.

These motions are governed by the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). "The PSLRA was enacted to remedy perceived abuses in the class action procedure in securities fraud actions." *Miller v. Dyadic Int'l, Inc.*, 2008 WL 2465286, at *3 (S.D. Fla. Apr. 18, 2008) (citing *Piven v. Sykes Enters. Inc.*, 137 F.Supp.2d 1295, 1301 (M.D. Fla. 2000)).

"The PSLRA 'sets up a rebuttable presumption that the plaintiff with the largest stake in the controversy will be the lead plaintiff. [] So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, [he, she, or it] is entitled to lead plaintiff status, even if

the district court is convinced that some other plaintiff would do a better job.'" *Belmont Holdings Corp. v. Suntrust Banks, Inc.*, 2009 WL 3188695, at *2 (N.D. Ga. Sept. 29, 2009) (citing *In re Cavanaugh,* 306 F.3d 726,729 n. 2 and 732 (9th Cir.2002); *In re Cendant Corp. Litig.*, 264 F.3d 201, 268-69 (3d Cir. 2001); 15 U.S.C. §78u-4(a)(3)(B).

First, Mr. Laine-Beveridge has the largest financial interest in this litigation as he has the largest losses of all the movants.  *See* Dkt. Nos. 365 at 13 and 366-4.  Indeed, the Group's maximum losses are stated as $16,239.70.  Dkt. No. 365 at 13; *see also* Dkt. No. 365-2 at 6 and 9.

Second, as set forth in Mr. Laine-Beveridge's opening papers, including his PSLRA certification, he has made a *prima facie* showing of adequacy and typicality under Fed. R. Civ. P. Rule 23.  Dkt. No. 366 at 9-10, 366-3, and 366-4; *McIlvaine v. ArthroCare Corp.*, 2008 WL 11331999, at *4 (S.D. Fla. July 16, 2008) ("Typicality is established where the proposed lead plaintiff has sustained the same injuries as the proposed class members resulting from the same course of conduct by the defendants[,]" and "adequa[cy] where '1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class has sufficient interest in the outcome of the case to ensure vigorous advocacy.'") (quoting *Miller*, 2008 WL 2465286 *6)).  Finally, the presumption that Mr. Laine-Beveridge is the "most adequate plaintiff"—*i.e.* the presumptive lead plaintiff— "may be rebutted only upon proof."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

Because the Group can offer no proof to rebut the presumption in favor of Mr. Laine-Beveridge, the Court should grant his motion in its entirety and deny the Group's motion.

## ARGUMENT

**I.     MR. LAINE-BEVERIDGE SHOULD BE APPOINTED LEAD PLAINTIFF**

"The PSLRA establishes the procedure for the appointment of a lead plaintiff in a private class action arising under federal securities law." *Adcock v. Netbank, Inc.*, 2008 WL 11322962, at *3 (N.D. Ga. Apr. 21, 2008) (citing 15 U.S.C. § 78u-4(a)(1)); *Cavanaugh*, 306 F.3d at 729 (the PSLRA provides a "clear path that the district court must follow in selecting the lead plaintiff."); *see also Cambridge Ret. Sys. v. Mednax, Inc.*, 2018 WL 8804814, at *2 (S.D. Fla. Dec. 6, 2018), *report and recommendation adopted,* 2018 WL 6978626 (S.D. Fla. Dec. 21, 2018).  After reviewing the notice and timeliness of a motion, the Court "address[es] which of the proposed lead plaintiffs has the 'largest financial interest in the relief sought by the class' and whether that proposed lead plaintiff satisfies the requirements of Rule 23, *i.e.*, whether its claims 'are typical of the claims ... of the class' and whether it 'will fairly and adequately protect the interests of the class.'" *Cambridge Ret. Sys.*, 2018 WL 8804814, at *2; (quoting Fed. R. Civ. P. 23(a)); *Cavanaugh,* 306 F.3d at 730, 732.  Importantly, "a straightforward application of the statutory scheme … provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case." *Cavanaugh*, 306 F.3d at 732.  "So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, [he, she or it] is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Id*; *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 502 (S.D. Fla. 2002) ("The most important factor in determining the lead plaintiff is the amount of financial interest claimed."). Utilizing this simple process confirms that Mr. Laine-Beveridge is the presumptive Lead Plaintiff and the Court should grant his motion.

Mr. Laine-Beveridge has triggered the PSLRA's most adequate plaintiff presumption. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Mr. Laine-Beveridge has the largest loss of any movant before the Court. Therefore, Mr. Laine-Beveridge has the largest financial interest.

Once the Court "determines which plaintiff has the biggest stake [here Mr. Laine-Beveridge], the court must appoint that plaintiff as lead, unless it finds that he does not satisfy the typicality or adequacy requirements." *Cavanaugh*, 306 F.3d at 730, 732 ("If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff."); *Cendant*, 264 F.3d at 263 ("The initial inquiry (i.e., the determination of whether the movant with the largest interest in the case 'otherwise satisfies' Rule 23) should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy.").

Like all purported class members, Mr. Laine-Beveridge alleges that Defendants violated the Exchange Act by engaging in market manipulation. Mr. Laine-Beveridge sold certain of the Affected Securities[1] after Robinhood's restrictions and was damaged thereby. *See* Dkt. Nos. 366 at 9 and 366-4. These claims are also premised on the same legal and remedial theories and are based on the same misconduct—the market manipulation. *See generally, Luczak v. Nat'l Beverage Corp.,* 2018 WL 9847842, at *2 (S.D. Fla. Oct. 12, 2018); *Kavra v. Health Ins. Innovations, Inc.*, 2018 WL 4611215, at *3 (M.D. Fla. Feb. 6, 2018) (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275 (11th Cir. 2009)). Mr. Laine-Beveridge has demonstrated his adequacy by submitting a sworn certification affirming his willingness to serve as, and carry out the responsibilities of,

---

[1] The Affected Securities include American Airlines Group Inc. (NASDAQ: AAL), AMC Entertainment Holdings Inc. (NYSE: AMC), BlackBerry Limited (NYSE: BB), Bed Bath & Beyond Inc. (NASDAQ: BBBY), GameStop Corp. (NYSE: GME), Express (NYSE: EXPR), Koss Corporation (NASDAQ: KOSS), Naked Brand Group (NASDAQ: NAKD), Nokia Corporation (NYSE: NOK), Sundial Growers, Inc. (NASDAQ: SNDL), Tootsie Roll Industries (NYSE: TR), and Trivago NV (NASDAQ: TRVG).

4

class representative.  Dkt. No. 366-3.  Based on his financial interest in the litigation and satisfaction of the Rule 23 requirements at this stage, Mr. Laine-Beveridge has triggered the PSLRA's most adequate plaintiff presumption.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

A showing that a proposed lead plaintiff is the presumptively most adequate can be rebutted by proof by a member of the purported class that the proposed lead plaintiff "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Cambridge Ret. Sys.*, 2018 WL 8804814, at *2 (citing  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)); *Kavra*, 2018 WL 4611215, at *2 (same); *see also Cavanaugh*, 306 F.3d at 732 (explaining that courts are not to "engage[] in a freewheeling comparison of the parties competing for lead plaintiff").  That "the presumption is rebuttable does not mean that it may be set aside for any reason that the court may deem sufficient.  Rather, the statute provides that the presumption 'may be rebutted only upon proof . . . that the presumptively most adequate plaintiff' does not satisfy the adequacy or typicality requirements of Rule 23.'" *Cavanaugh*, 306 F.3d at 729 n.2 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).

## II.    MR. LAINE-BEVERIDGE'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select lead counsel, subject to Court approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Luczak*, 2018 WL 9847842, at *2 ("The Court should interfere with lead plaintiff's selection only when necessary 'to protect the interests of the class.'") (quoting 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)(aa)).

Here, Mr. Laine-Beveridge has selected The Rosen Law Firm, P.A. as Lead Counsel.  The Firm is eminently qualified.  *See* Dkt. No. 366 at 12-13 and 366-5.  The Firm has the resources and expertise to litigate this action efficiently and aggressively.  The Firm has been ranked in the

top 4 each year since 2013 by the ISS Institutional Securities Class Action Services and has recovered hundreds of millions of dollars for investors.  In 2019 alone the firm secured over $438 million for investors.  In 2020, founding partner Laurence Rosen was named by law360 as a Titan of Plaintiffs' Bar.  *See* Dkt. No. 366 at 12-13.

As the Firm's resume reflects, it is highly experienced in the area of securities class action litigation and has successfully prosecuted numerous securities fraud class actions on behalf of investors.  Dkt. No. 366-5; *see Plumbers & Pipefitters Local 51 Pension Fund v. Darden Restaurants, Inc*., 2008 WL 2608111, at *2 (M.D. Fla. July 1, 2008) ("where a law firm 'has successfully prosecuted securities class action litigations in the past,' courts generally will not 'interfere with the [l]ead [p]laintiff's choice of counsel ....'") (quoting *Miller,* 2007 WL 4754041, at *2)).

Thus, the Court may be assured that by approving Mr. Laine-Beveridge's selection of counsel, the members of the class will receive excellent legal representation.

## III.     THE GROUP'S MOTION SHOULD BE DENIED

The Group's motion should be denied as Mr. Laine-Beveridge has the larger financial interest in the litigation, satisfies the requirements of Rule 23, and should therefore be appointed Lead Plaintiff without further analyses.  *Cambridge Ret. Sys.*, 2018 WL 8804814 ("The Court must, therefore, address which of the proposed lead plaintiffs has the 'largest financial interest in the relief sought by the class' and whether that proposed lead plaintiff satisfies the requirements of Rule 23, *i.e.*, whether [his] claims 'are typical of the claims ... of the class' and whether [he] 'will fairly and adequately protect the interests of the class.'" (citing Fed. R. Civ. P. 23(a)); *Cavanaugh*, 306 F.3d at 732 ("The statutory process is sequential: The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest,

and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical.").

That said some facts bear noting about the Group.

## A.  THE GROUP IS INADEQUATE AND ATYPICAL

### 1.      The Group is an Improper Lawyer-Made Group of Unrelated Investors

While the PSLRA allows groups to serve as lead plaintiffs, "courts routinely reject lead plaintiff applications filed by groups of investors who are 'simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff,' ..." *Carvelli v. Ocwen Fin. Corp.*, 2017 WL 11068524, at *5 (S.D. Fla. July 14, 2017), *objections overruled,* 2017 WL 3473482 (S.D. Fla. Aug. 14, 2017) (citing *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001)).

Indeed, "[w]here the motion for appointment seeks to appoint more than one lead plaintiff, 'that group must be restricted to a few cohesive parties and the ***movant must bear the burden of demonstrating that the group not only has the largest interest in the outcome of the litigation, but also a pre-litigation relationship based on more than the losing investments at issue in the securities fraud class action***.'" *Welch v. Meaux*, 2020 WL 4758269, at *6 (W.D. La. Aug. 17, 2020) (citing *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 442 (S.D. Tex. Feb. 15, 2002)) (emphasis added); *Cambridge Ret. Sys.*, 2018 WL 8804814, at *14 ("Allowing unrelated plaintiffs to band together in order to manufacture a larger financial interest ... ensures that the lawyers, who are invariably the matchmakers behind such marriages of convenience, are the true drivers of the litigation.") (quoting *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621-22 (S.D.N.Y. 2015)); *Brustein v. Lampert*, 2005 WL 8154797, at *6 (S.D. Fla. June 16, 2005) (denying a group of unrelated investors because "the aggregation of losses under the present circumstances would not

serve the purpose" of the PSLRA "and because an individual movant with significant losses has also sought lead plaintiff status, the Court is unwilling to allow such aggregation here").

Courts require members of a proposed group to make "an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). Courts evaluate evidence of the following *Varghese* factors:

> (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa.

*Id.*; *Carvelli*, 2017 WL 11068524, at *5 n. 8 (considering *Varghese* factors in evaluating an unrelated group); *Marcus v. J.C. Penney Co.*, 2014 WL 11394911, at *6 (E.D. Tex. Feb. 28, 2014) (same).

Here, the Group has made no evidentiary showing to justify its grouping. Nor has the Group provided any client-driven reason for their grouping; nor has any information about the Group's members been provided so that the Court and Mr. Laine-Beveridge can evaluate the Group and its members. Rather, the facts indicate that the Group was constructed to create the largest losses—specifically to show a greater loss than a previous movant, Cody Todd. *See* Dkt. No. 26-4 (loss chart of Cody Todd showing a loss of $8,056.70) and 365 at 9 (the Group claiming a loss of $8,413.10 under the so-called "Bursor & Fisher's class definition").

Indeed, this lack of justification, lack of a joint declaration, and lack of institutional investors as part of the Group, also renders its cases inapposite.

In *In re 21st Century Holding Co. Sec. Litig.*, the appointed group was comprised of two Israeli mutual funds, managed and controlled by the same entity. 2007 WL 9220955, at *6 (S.D.

Fla. 2007).  There was no concern that these mutual funds were cobbled together by counsel as there is here.

In *Plumbers & Pipefitters Loc. 51 Pension Fund*, the appointed group members were related institutional investors, the Carpenters Pension Trust Fund for Northern California and Carpenters Annuity Trust Fund for Northern California.  2008 WL 2608111, at *2 (M.D. Fla. July 1, 2008).  These funds also clearly certified with their initial motion papers that they were willing to "serve as a lead plaintiff either individually or as part of a group."  *Plumbers & Pipefitters Loc. 51 Pension Fund*, case no. 6:08-cv-00388-MSS-DAB, Dkt. No. 26-2 at 2 and 4 (M.D. Fla.).

In *Eastwood Enterprises v. Farha*, the appointed group members were again institutional investors which "filed a joint declaration in which they detail their history together and their desire to join together to litigate this action" and the "Court was satisfied that the PPF Group is not lawyer-driven."  2008 WL 687351, at *3 (M.D. Fla. Mar. 11, 2008).  Two of the group members, the New Mexico State Investment Council and the Public Employees Retirement Association of New Mexico, which together had the next largest loss after their group as a whole, were closely related with overlapping management and representation.  *Id.*

In *Newman*, the appointed group members consisted of two banks and three individuals. 209 F.R.D. 499, 502 (S.D. Fla. 2002).  The inclusion of institutional investors, which the PSLRA gives preference to, is lacking in the Group but found throughout their citations.

Further, the Group members provide no indication that they even know of each other, much less chose to move the Court for appointment as co-Lead Plaintiffs.

That the Group specifically requests that "[i]n the alternative, each Movant moves individually for appointment as Lead Plaintiff and for appointment of counsel Bursor & Fisher, P.A. as Lead Counsel should the Court decline to appoint them as a group[,]" is further evidence

that this is merely a group cobbled together by counsel. *Abouzied v. Applied Optoelectronics, Inc.*, 2018 WL 539362, at \*5 (S.D. Tex. Jan. 22, 2018) ("Indeed, the movants assert that each stands ready and willing to abandon the group and serve as sole-lead plaintiff. The Court finds that [the Group] is not the most adequate plaintiff."); *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at \*4 (D. Ariz. Apr. 7, 2008) ("The willingness to abandon the group only suggests how loosely it was put together."). Even if either Group member were to be considered individually, Mr. Laine-Beveridge still has by far the largest loss. *Compare* Dkt. No. 366-4 *with* Dkt. No. 365-2 at 6 and 9.

## 2. The Group Failed to Provide Any Background Information Regarding its Members

The Group did not provide any background information about itself or its members in its opening papers, preventing the Court, Mr. Laine-Beveridge, and the class from vetting its background. This makes it impossible for the Court, Mr. Laine-Beveridge, or the class to make a determination on the Group's adequacy and typicality. Courts have held that movants who provide such sparse information are inadequate to represent the class. *See Piven v. Sykes Enters., Inc.*, 137 F. Supp. 2d 1295, 1305 (M.D. Fla. 2000) (finding movant inadequate to serve as lead plaintiff where it "has not proffered any information regarding its identity, resources, and experience"); *Smajlaj v. Brocade Commc'ns Sys. Inc.,* 2006 WL 7348107, at \*11-\*12 (N.D. Cal. Jan. 12, 2006) (rejecting investor's motion for appointment as lead plaintiff, despite a presumption in its favor from having the greatest financial interest in the litigation, after concluding that it "will not adequately represent the interests of the plaintiff class" where questions existed as to, *inter alia*, its "authority, transparency, and structure"); *see also Camp v. Qualcomm Inc.*, 2019 WL 277360 (S.D. Cal. Jan. 22, 2019); *In re Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at \*5 (N.D. Ill.

Nov. 15, 2019), *reconsideration denied,* 2020 WL 476658 (N.D. Ill. Jan. 28, 2020).

   *Perez v. HEXO Corp.*, 2020 WL 905753 (S.D.N.Y. Feb. 25, 2020), *reconsideration denied sub nom. In re HEXO Corp. Sec. Litig.*, 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020) is instructive. In that case, a lead plaintiff movant was rejected for failure to include any background information in the opening papers, even though the movant provided background information in later rounds of briefing. The court explained that "[n]otwithstanding this additional [] information . . . [the Group's] failure to provide any information regarding his experience in his preliminary motion, the Court questions whether [the Group] will meaningfully oversee and control the prosecution of this consolidated class action." *Perez* 2020 WL 905753, at *3. *See also Karp v. Diebold Nixdorf, Inc.*, 2019 WL 5587148, at *5-6 (S.D.N.Y. Oct. 30, 2019), *adhered to on reconsideration,* 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019).

### 3.    The Group Failed to Provide a Joint Declaration

   Universally, group movants for appointment as lead plaintiff in PSLRA cases file joint declarations. This is to allow group members to provide background information about themselves individually, how they found each other, their involvement in the litigation, how they chose counsel, how they decided to move together and with their chosen counsel, and how they will decide disagreements between group members—essentially answering the *Varghese* factors.

   Here, the Group failed to provide a joint declaration with its initial motion and, as noted above, failed to provide any of that important information. However, even if the Group were to belatedly file a joint declaration to reveal any of the necessary information noted above, it would be too late. *See generally* 15 U.S.C. §78u-4(a)(3)(A) (60-day deadline); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 410 (S.D.N.Y. 2004)

("[PSLRA] … precludes consideration of … any other pleading … filed **after** the sixty (60) day window has closed.") (emphasis in original).

Further, Courts do not simply credit any joint declaration that is filed. It must be detailed and actually show the above information. In other words, mere boilerplate declarations are insufficient. *Abouzied*, 2018 WL 539362, at *5 (S.D. Tex. Jan. 22, 2018) ("While members of the group submitted a Joint Declaration asserting their desire to together litigate the case as lead plaintiffs, the Joint Declaration provides no mechanism for resolving disputes. Indeed, the movants assert that each stands ready and willing to abandon the group and serve as sole-lead plaintiff. The Court finds that the Applied Investor Group is not the most adequate plaintiff."); *Lampert*, 2005 WL 8154797, at *6 ("Although the Marcus Group attempted to address these same problems by filing a joint declaration, in which it committed itself to joint control over the litigation and joint management of counsel [], the Group has pointed to no actual evidence showing that these six members—living in Portugal, Pennsylvania, Maryland, Kentucky, and California—have the incentive or practical ability to fulfill these commitments.") (citing *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 224 (D.D.C. 1999)); *Stires v. Eco Science Solutions, Inc.*, 2018 WL 5784817, at *5 (D.N.J. Feb. 14, 2018) (denying lead plaintiff status to an investor group despite their larger losses due, in part, to the group apparently being "precisely the type of lawyer-created group the Third Circuit cautioned about in *In re Cendant Corp.*"); *Jakobsen v. Aphria, Inc.,* 2019 WL 1522598, at *2 (S.D.N.Y. Mar. 27, 2019) (vague plans for cooperation and "boilerplate assurances" are insufficient to show that unrelated investors will be able to manage the litigation efficiently.); *Kniffin v. Micron Tech., Inc.,* 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019) (court not persuaded by a declaration that the group would function cohesively); *In re Ply Gem Holdings, Inc., Securities Litigation*, 2014 WL 12772081, at *2 (S.D.N.Y. Oct. 14, 2014) (denying

appointment of joint lead plaintiffs even though the group filed a joint declaration because "joint lead plaintiffs run counter to the purposes of the PSLRA, which seeks to avoid lawyer-driven litigation." (internal quotation marks omitted) and "[a]llowing lawyers to combine otherwise unrelated entities as joint lead plaintiffs would encourage the lawyers to drive the litigation").[2]

### 4. The Group Provided Inaccurate Calculations

In the Group's memorandum of law, it lists its members' losses under the so-called "Bursor & Fisher Class Definition" and the so-called "Rosen Class Definition." Dkt. No. 365 at 13. While the listed losses appear to be correct under the so-called "Bursor & Fisher Class definition," these are incorrect under the "Rosen Class Definition."[3]

The Group lists Mr. Kurdi's loss as $9,917.98 from GME losses (Dkt. No. 365 at 12), however, his loss from GME should state "$9,541.08" with "$376.91" in losses from AMC for a total loss of $9,917.99[4]. *See* Dkt. No. 365-2 at 4-6.

Similarly, the Group lists Mr. Pueyrredon's loss as $6,321.72 from GME losses (Dkt. No. 365 at 12), however, his loss from GME should state "$4,318.27" with "$2.52", "$1,864.25", and "$136.68" in losses from AMC, KOSS, and NOK, respectively.

These errors also militate against the Group's appointment regardless of its other issues. *Bhojwani v. Pistiolis*, 2007 WL 9228588, at *3 (S.D.N.Y. July 31, 2007) (finding "carelessness about detail that undermines the adequacy of [the Group] as a lead plaintiff."); *Micholle v.*

---

[2] This omission of joint declaration and any background information by the Group in this round of briefing is troubling. These same issues were flagged in the first round of lead plaintiff briefing.

[3] That the Group would name one definition the "Bursor & Fisher Class Definition" raises the question of whether the Group only intends to use that definition and therefore does not intend to prosecute this case on behalf of investors who bought and/or sold their securities after January 28, 2021 when the restrictions were ongoing and changing for at least several days. Puzzlingly, this would essentially cut their own damages in half.

[4] The one cent difference in overall loss is likely attributable to a rounding difference because the Group members neglected to provide their full transaction data (neglecting to include price per share for any transaction).

*Ophthotech Corp.*, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) ("The errors in [their] submissions, however, militate against appointment and render [them] inadequate to serve as lead plaintiff under Rule 23's adequacy requirement.").

**5.    The Group's Selection of Counsel Demonstrates its Inadequacy**

Courts have held that a proposed lead plaintiff's selection of counsel can demonstrate inadequacy if the lead plaintiff selects a firm that is not experienced in the field of law at issue. The adequacy requirement is satisfied where: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class has sufficient interest in the outcome of the case to ensure vigorous advocacy." *Miller*, 2008 WL 2465286 at *6 (citing *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 253 (S.D.N.Y.2003)); *In re Quintus Sec. Litig.*, 201 F.R.D. 475, 482 (N.D. Cal. 2001) ("if a representative plaintiff does not select competent counsel, he cannot meet the adequacy requirement of FRCP 23 and the PSLRA.") (citing *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 185 F.R.D. 172, 176 (S.D.N.Y. 1999), *aff'd in part, vacated in part,* 222 F.3d 52 (2d Cir. 2000)).

While the Group's counsel, Bursor & Fisher P.A. ("Bursor") appears to have experience in other types of class actions, there is not a single successful securities class action outcome noted in the Bursor firm's credentials included with the Group's motion. *See* Dkt. Nos. 365 and 365-1.

Only one securities class action is mentioned in the Bursor firm's credentials—*In re Robinhood Order Flow Litigation*, Case No. 4:20-cv-09328 (N.D. Cal.) ("*Robinhood Order Flow Case*"), where on April 12, 2021 (the same day it filed a case here) the firm was appointed co-lead counsel with two other law firms on an unopposed motion. No other securities class actions are listed where the Bursor firm is either sole-lead or co-lead counsel.

14

The Bursor firm's involvement in the *Robinhood Order Flow Case* actually weighs against the Group's motion.  The interests of the *Robinhood Order Flow Case* class are antagonistic to the federal securities class here.  Both classes have common Robinhood defendants[5] and have overlapping class periods.[6]  Therefore, if the Bursor firm is appointed lead counsel in this case, it would be representing two competing classes that are both vying for a limited pool of resources from the same defendants.  *See Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 590–91 (W.D. Tex. 2002) (finding a disqualifying conflict of interest where counsel represented shareholders in multiple class actions against the same defendant because "[w]ith multiple lawsuits, more than a fair chance exist[ed] that the shareholders represented in the various suits, and their interests [might] not always coincide"); *see also In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D. 552, 557 (S.D. Ohio 2005) ("Counsel cannot represent different classes of plaintiffs with conflicting claims who are seeking recovery from a common pool of assets.").

Additionally, the damages theories in the *Robinhood Order Flow Case* conflict with the damages in the instant case.  The *Robinhood Order Flow Case* asserts damages based on Robinhood's failure to obtain the best execution on trades in connection with an undisclosed payment for order flow scheme with vendors, whereas the damages in the instant case are premised on market price declines based on Robinhood's actions to prevent transactions in the Affected

---

[5] Defendants Robinhood Financial LLC, Robinhood Securities, LLC, and Robinhood Markets, Inc. are defendants in the *Robinhood Order Flow Case* and pertinent actions in this case.  *E.g.*, *Muncy v. Robinhood Financial, LLC, et al.*, case no. 1:21-CV-21307-CMA, Dkt. No. 1; *Robinhood Order Flow Case*, Dkt. Nos. 62.

[6] *Robinhood Order Flow Case* includes a class definition of "All persons in the United States or its Territories who were users of Robinhood between September 1, 2016 and June 16, 2020 and who placed orders in connection with which Defendants received payment for order flow [][,]" while either the so-called Bursor & Fisher Class Definition and the Rosen Class Definition would also include many if not all of those purchasers.  Dkt. No. 365 at 12; *Robinhood Order Flow Case*, Dkt. Nos. 62 at 16.

Securities.  *See Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharmaceutical Indus. Ltd.*, 2021 WL 1217395 at * 9- *10 (E.D. Pa. Mar. 26, 2021) (denying lead plaintiff motion and finding disabling conflict of interest of where counsel would be required to make conflicting damages arguments in a different litigation covering an overlapping time period).

## **CONCLUSION**

For the foregoing reasons, Mr. Laine-Beveridge's motion should be granted in its entirety and the competing motion should be denied.

Dated: August 10, 2021                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
/s/Laurence M. Rosen
Laurence M. Rosen, Esq., Fla. Bar No. 0182877
Phillip Kim, Esq.
Michael Cohen, Esq.
Erica Stone, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com
Email: mcohen@rosenlegal.com
Email: estone@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 10, 2021, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

<u>/s/Laurence M. Rosen</u>