**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-MD-2989-ALTONAGA/TORRES**

In re:

**JANUARY 2021 SHORT SQUEEZE
TRADING LITIGATION**

_____/

This Document Relates to All Claims Included
In the Robinhood Tranche

**DEFENDANTS ROBINHOOD MARKETS, INC., ROBINHOOD FINANCIAL LLC AND
ROBINHOOD SECURITIES, LLC'S MOTION TO DISMISS THE ROBINHOOD
TRANCHE COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND .............................................................................................................5

I.      The Contractual Relationship Between Robinhood and Its Customers............................5

II.     The Mechanics of Securities Trading. ...........................................................................7

III.    The Unprecedented Market Volatility of January 2021. ..................................................8

IV.     The Events of January 28, 2021 and Onward. ..............................................................11

LEGAL STANDARDS ...................................................................................................13

I.      Applicable Standard.....................................................................................................13

II.     Applicable Law.............................................................................................................13

ARGUMENT ................................................................................................................16

I.      PLAINTIFFS' NEGLIGENCE AND GROSS NEGLIGENCE CLAIMS FAIL
        BECAUSE PLAINTIFFS DO NOT ADEQUATELY ALLEGE THAT ROBINHOOD
        OWED THEM A DUTY IN TORT...................................................................................17

        A.      Robinhood Owes Its Customers Contractual Obligations, Not Tort Duties..........17

        B.      Robinhood Does Not Owe Its Customers a Generalized Duty of Care.................21

        C.      Plaintiffs Cannot Rely on Regulations and Self-Regulatory Rules for Which There
                Are No Private Rights of Action to Impose a Tort Duty on Robinhood ...............25

II.     PLAINTIFFS CANNOT PLEAD A NEGLIGENCE PER SE CLAIM............................28

III.    ROBINHOOD DOES NOT OWE ITS CUSTOMERS A FIDUCIARY DUTY..............29

        A.      Robinhood Owed No Duty to Customer Plaintiffs To Make Its Brokerage
                Services Available For Any Specific Security At All Times ...............................29

        B.      Robinhood Also Owed No Duty to Plaintiff Moody for Canceled Orders ...........34

IV.     ROBINHOOD OWES NO DUTIES TO NON-ROBINHOOD CUSTOMERS—ALL
        CLAIMS BROUGHT BY NON-ROBINHOOD CUSTOMERS THEREFORE FAIL....36

        A.      The Negligence-Based Claims on Behalf of Non-Robinhood Customers Fail
                Because Robinhood Does Not Owe Them a Duty..............................................36

        B.      Robinhood Does Not Owe a Fiduciary Duty to Non-Robinhood Customer
                Investors ......................................................................................................37

V.      PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE............38

CONCLUSION..............................................................................................................38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aas v. Super. Ct.*, 12 P.3d 1125 (Cal. 2000) ................................................................19

*Apollo Capital Fund LLC v. Roth Capital Partners LLC*, 70 Cal. Rptr. 3d 199
(Ct. App. 2007) ......................................................................................................30, 33

*Arndt v. Twenty-One Eighty-Five, LLC*, 448 F. Supp. 3d 1310 (S.D. Fla. 2020).............13, 14, 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................................13

*Biakanja v. Irving*, 320 P.2d 16 (Cal. 1958) ..............................................................23

*Bily v. Arthur Young & Co.*, 834 P.2d 745 (Cal. 1992) ...........................................17, 21

*Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084 (C.D. Cal. 2017)...................23

*Brown v. Cal. Pension Adm'rs & Consultants, Inc.*, 52 Cal. Rptr. 2d 788
(Ct. App. 1996) ................................................................................................19, 29, 30

*Burdick v. Bank of Am., N.A.*, 99 F. Supp. 3d 1372 (S.D. Fla. 2015) ...........................................20

*Caravan Mobile Home Sales, Inc. v. Lehman Bros. Kuhn Loeb*, 769 F.2d 561 (9th
Cir. 1985) ................................................................................................................34

*Carleton v. Tortosa*, 17 Cal. Rptr. 2d 734 (Ct. App. 1993) ...............................................35

*Cavero v. Law Offices of Erskine & Fleisher*, No. 12-21196-CIV, 2012 WL
13134213 (S.D. Fla. Aug. 28, 2012)..........................................................................9

*Certain Underwriters at Lloyd's of London, UK Subscribing to Pol'y No.
B1230AP56189A14 v. Ocean Walk Resort Condo. Ass'n, Inc.*,
No. 616CV258ORL37GJK, 2017 WL 3034069 (M.D. Fla. July 18, 2017).........................24

*Champion v. Feld Ent., Inc.*, No. 20-CV-2400-DMS-KSC, 2021 WL 1812764
(S.D. Cal. May 6, 2021)........................................................................................17

*Clanton v. Inter.Net Glob., L.L.C.*, 435 F.3d 1319 (11th Cir. 2006) .............................................13

*Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182 (Fla. 2003)...................................................24

*Cobos v. Robinhood Financial LLC, et al.*, No. 2:21-cv-00843-VAP-MRWx,
2021 WL 1035123 (C.D. Cal. Feb. 10, 2021)..........................................................3

*Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151 (11th Cir. 2009)................................................14

*Curd v. Mosaic Fertilizer, LLC*, 39 So.3d 1216 (Fla. 2010)........................................................24

*D.A.M. v. Barr*, 474 F. Supp. 3d 45 (D.D.C. 2020) .....................................................................11

*DeJesus v. Seaboard Coast Line R.R.*, 281 So. 2d 198 (Fla. 1973).............................................28

*Deloitte & Touche v. Gencor Indus., Inc.*, 929 So. 2d 678 (Fla. 5th DCA 2006) .......................16

*Detwiler v. Bank of Cent. Fla.*, 736 So. 2d 757 (Fla. 5th DCA 1999)...........................................35

*Erlich v. Menezes*, 981 P.2d 978 (Cal. 1999)......................................................................18, 20, 23

*Estate of Johnson ex rel. Johnson v. Badger Acquisition of Tampa LLC*,
    983 So. 2d 1175 (Fla. 2d DCA 2008) ......................................................................................27

*Fox v. Lifemark Sec. Corp.*, 84 F. Supp. 3d 239 (W.D.N.Y. 2015).............................................25

*Gochnauer v. A.G. Edward & Sons, Inc.*, 810 F.2d 1042 (11th Cir. 1987)............................32, 34

*Gracey v. Eaker*, 837 So. 2d 348 (Fla. 2002) ..............................................................................37

*Gurfein v. Ameritrade, Inc.*, 312 F. App'x 410 (2d Cir. 2009)....................................................26

*Hallock v. Holiday Isle Resort & Marina, Inc.*, 4 So. 3d 17 (Fla. 3d DCA 2009) .......................35

*Harper v. Wausau Ins. Co.*, 66 Cal. Rptr. 2d 64 (Ct. App. 1997)................................................27

*Hauptman v. Interactive Brokers, LLC*, 349 F. Supp. 3d 292 (S.D.N.Y. 2018)..........................27

*Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186 (11th Cir. 2018) ............................15, 16

*Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002)........................................................................15

*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069
    (S.D. Ind. 2001) .......................................................................................................................14

*In re Series 7 Broker Qualification Exam Scoring Litig.*, 510 F. Supp. 2d 35
    (D.D.C. 2007) ..........................................................................................................................26

*In re Verifone Sec. Litig.*, 11 F.3d 865 (9th Cir. 1993)................................................................26

*Ins. Co. of the W. v. Island Dream Homes, Inc.*, 679 F.3d 1295 (11th Cir. 2012) .......................20

*Island Travel & Tours, Co. v. MYR Indep., Inc.*, 300 So. 3d 1236
    (Fla. 3d DCA 2020) .................................................................................................................20

*J'Aire Corp. v. Gregory*, 598 P.2d 60 (Cal. 1979).......................................................................23

*Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir. 1980) ..........................................................26

*Kidder Peabody & Co. v. Unigestion Int'l, Ltd.*, 903 F. Supp. 479
(S.D.N.Y. 1995) ...........................................................................................................................26

*Kurtz-Ahlers, LLC v. Bank of Am., N.A.*, 262 Cal. Rptr. 3d 420 (Ct. App. 2020) ........................22

*La Grasta v. First Union Sec., Inc.*, 358 F.3d 840 (11th Cir. 2004)................................................9

*Lamm v. State St. Bank & Tr.*, 749 F.3d 938 (11th Cir. 2014) ......................................................24

*Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 461 F. Supp. 951
(E.D. Mich. 1978) ........................................................................................................................32

*Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334 (11th Cir. 2012) .........................................28

*Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337 (11th Cir. 2005) ..........................................15

*Meyers v. Guar. Sav. & Loan Ass'n*, 144 Cal. Rptr. 616 (Ct. App. 1978)....................................35

*Misabec Mercantile, Inc. De Panama v. Donaldson, Lufkin & Jenrette ACLI
Futures, Inc.*, 853 F.2d 834 (11th Cir. 1988)......................................................................34, 35

*Moody, et al. v. Robinhood Financial LLC*, No. 21-cv-00861 (N.D. Cal.) ...................................18

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 98 Cal. Rptr. 837
(Ct. App. 1971) ............................................................................................................................20

*Orey v. Super. Ct.*, 152 Cal. Rptr. 3d 878 (Ct. App. 2013)...........................................................17

*Paszamant v. Ret. Accts., Inc.*, 776 So. 2d 1049 (Fla. 5th DCA 2001)..........................................25

*Peregrine Pharms., Inc. v. Clinical Supplies Mgmt., Inc.*, No. 12-cv-1608-JGB,
2015 WL 13309286 (C.D. Cal. June 22, 2015) ..................................................19, 20, 22, 23

*Petersen v. Sec. Settlement Corp.*, 277 Cal. Rptr. 468 (Ct. App. 1991) .................................30, 31

*Pinchasov v. Robinhood Financial LLC*, No. 20-cv-24897-CMA (S.D. Fla.) .......................24, 36

*Price (Tilley) v. Charles Schwab & Co.*, No. 14-cv-06194, 2015 WL 9694811
(C.D. Cal. Apr. 6, 2015)..............................................................................................................26

*Quiroz v. Seventh Ave. Ctr.*, 45 Cal. Rptr. 3d 222 (Ct. App. 2006)..............................................28

*Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268 (Cal. 2004) ............................................19

*Rocks v. McLaughlin Eng'g Co.*, 49 So. 3d 823 (Fla. 4th DCA 2010)..........................................21

*Rosencrans v. Dover Images, Ltd.*, 122 Cal. Rptr. 3d 22 (Ct. App. 2011) ...................................17

*S. California Gas Leak Cases*, 441 P.3d 881 (Cal. 2019) .......................................................22, 23

*SFM Holdings, Ltd. v. Banc of Am. Sec.*, 600 F.3d 1334 (11th Cir. 2010) .......................15, 30, 33

*Sheen v. Wells Fargo Bank, N.A.*, 250 Cal. Rptr. 3d 677 (Ct. App. 2019) .............................17, 22

*Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252 (11th Cir. 2009) ....................................................13

*Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, No. C-95-3926-MHP,
     1997 WL 50223 (N.D. Cal. Jan. 30, 1997) ...........................................................................25

*Stevens v. Danek Medical, Inc.*, 1999 WL 33217282 (S.D. Fla. 1999) ........................................28

*Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293
     (11th Cir. 2002) .....................................................................................................................30

*Tank Tech, Inc. v. Valley Tank Testing, L.L.C.*, 244 So. 3d 383
     (Fla. 2d DCA 2018) ..........................................................................................................24, 37

*Thompson v. County of Alameda*, 614 P.2d 728 (Cal. 1980) .........................................................17

*Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399
     (Fla. 2013) .............................................................................................................................24

*Twomey v. Mitchum, Jones & Templeton, Inc.*, 69 Cal. Rptr. 222 (Ct. App. 1968) ...............30, 31

*Underwriters at Int. v. All Logistics Grp., Inc.*, 483 F. Supp. 3d 1199
     (S.D. Fla. 2020) ................................................................................................................23, 24

*Unity House, Inc. v. N. Pac. Inv., Inc.*, 918 F. Supp. 1384 (D. Haw. 1996) .................................32

*Univ. Express, Inc. v. SEC*, 177 F. App'x 52 (11th Cir. 2006) .......................................................3

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634
     (S.D.N.Y. 2020) .....................................................................................................................25

*Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359
     (S.D. Fla. 2015) .....................................................................................................................28

*Whitesides v. E\*Trade Securities, LLC*, No. 20-CV-05803-JSC, 2021 WL 930794
     (N.D. Cal. Mar. 11, 2021) .....................................................................................................23

*World Vacation Travel, S.A., de C.V. v. Brooker*, 799 So. 2d 410
     (Fla. 3d DCA 2001) ...............................................................................................................16

*Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218 (S.D. Fla. 2010) .........................................28

**Statutes & Rules**

17 C.F.R. § 240.15c3-1 ..................................................................................................26

17 C.F.R. § 240.17Ad-22 ..............................................................................................7

15 U.S.C. § 78bb ...........................................................................................................19

Fed. R. Civ. P. 12 ....................................................................................................1, 13

Fed. R. Evid. 201 .........................................................................................................11

FINRA Rule 2010 .........................................................................................................26

FINRA Rule 4370 .........................................................................................................26

Options Clearing Corporation Rule 1305(c) .................................................................34

Options Clearing Corporation Rule 805 ........................................................................34

Securities Exchange Act of 1934 § 15(c)(3) .................................................................26

**Other Authorities**

Maggie Fitzgerald, *Robinhood restricts trading in GameStop, other names
    involved in frenzy*, CNBC (Jan. 28, 2021, 9:19 AM EST), *available at*
    https://www.cnbc.com/2021/01/28/robinhood-interactive-brokers-restrict-
    trading-in-gamestop-s.html .........................................................................................8

*Market Activity*, Nasdaq, https://www.nasdaq.com/market-activity (last visited
    Aug. 24, 2021) .............................................................................................................9

Restatement (Third) of Torts, Liab. for Econ. Harm (Tent. Draft No. 1) .....................17

Restatement (Third) of Torts: Phys. & Emot. Harm § 7 (2010) ...................................21

Restatement (Third) of Torts: Liab. for Econ. Harm § 4 (2020) ..................................20

Restatement (Third) of Torts: Liab. for Econ. Harm § 4 cmt. B (2020).......................21

Securities and Exchange Comm'n, "Thinking About Investing in the Hot Stock?"
    (Jan. 30, 2021), https://www.sec.gov/oiea/investor-alerts-and-bulletins/risks-
    short-term-trading-based-social-media-investor-alert ...........................................3, 13

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Robinhood Markets, Inc. ("Robinhood Markets"), Robinhood Financial LLC ("Robinhood Financial") and Robinhood Securities, LLC ("Robinhood Securities") (together, "Robinhood") respectfully submit this memorandum of law in support of their Motion to Dismiss the Robinhood Tranche claims set forth in the Consolidated Robinhood and Other Broker Class Action Complaint (the "Complaint") (ECF No. 359) for failure to state a claim.[1]

## PRELIMINARY STATEMENT

Robinhood's obligations to its retail investor customers are defined by contract. The rights and obligations between Robinhood and its customers are delineated in the Robinhood Customer Agreement ("Cust. Agmt." or "Customer Agreement" (attached as Exhibit A)), which all Robinhood customers must review and accept when opening an account. The Customer Agreement is explicitly cited in, and thereby incorporated by reference into, the Complaint. The Customer Agreement expressly permitted Robinhood to implement the restrictions it imposed on January 28, 2021, which are the basis of Plaintiffs' claims in this Action.

Specifically, Plaintiffs' claims arise from the difficult decision that Robinhood Securities made on January 28, 2021 to limit customer trading in certain popular stocks, including GameStop, Inc. ("GME") and AMC Entertainment Holdings, Inc. ("AMC"). In the

---

[1] Robinhood submits this Motion seeking dismissal of the claims brought by Plaintiffs for the Robinhood Tranche, consistent with this Court's June 2, 2021 Order calling "Defendants in each Tranche" to file a joint motion to dismiss in that Tranche. (ECF No. 323 at 1.) Robinhood respectfully submits that Plaintiffs cannot unilaterally override the Court's designation of a separate Robinhood Tranche and Other Broker Tranche by filing a single Master Complaint naming unrelated brokers falling into two separate Tranches. (*See* ECF No. 310 at 1-2 (creating one tranche for "state-law claims against the Robinhood entities and other Robinhood-related Defendants" and a separate tranche for claims involving "other broker-dealer Defendants and other related Defendants").) Indeed, the Complaint does not allege that Robinhood is related to Apex Clearing Corporation in any way, and therefore, the claims pertain to two separate Tranches.

days leading up to this decision, retail investors, spurred by social media and online forums, poured into the stock markets in record numbers to trade in stocks for GME, AMC and certain other popular issuers known as the "meme stocks." This activity pushed trading volatility in the meme stocks to record levels within a matter of days.

In late January 2021, this market volatility significantly affected the collateral deposit requirements that clearinghouses impose on clearing brokers to protect investors, brokers and the financial system as a whole. To ensure market stability in the event that a market participant is unable satisfy its obligations with respect to a trade, clearing brokers, like Robinhood Securities, are required to post collateral to clearinghouses, like the National Securities Clearing Corporation ("NSCC"), at least daily to cover the cost and risk associated with their customers' trade orders. Deposit requirements are calculated based on order volume and volatility multipliers, with the requirements increasing dramatically as volatility increases. The ultimate purpose of these deposits is to protect investors and the financial system generally.

As the unprecedented volatility in late January 2021 grew, so too did brokers' clearinghouse deposit requirements with the NSCC. This substantial increase in trading volume and volatility led the NSCC, on the morning of January 28, 2021, to issue a *$3 billion* collateral deposit demand on Robinhood Securities—a ten-fold increase from earlier in the week, and more than four times what was required the day before. In order to remain in compliance with its deposit requirements, Robinhood Securities made the difficult decision to place limited restrictions on customer purchases on the small number of securities driving its deposit requirements. Other brokers, which also saw dramatic increases in their deposit requirements, imposed restrictions on a number of securities experiencing trading volatility as well.

Robinhood's Customer Agreement expressly provides that Robinhood can impose trading restrictions, stating *inter alia* that "Robinhood may at any time, in its sole discretion, and without prior notice to [the customer], prohibit or restrict [the customer's] ability to trade securities." (Cust. Agmt. § 5.F.)  Robinhood reserves this right to restrict trading precisely because of situations like the one that unfolded in late January 2021:  extreme market volatility can have unpredictable effects, and Robinhood, like all brokers, needs the flexibility to take measures to satisfy its legal obligations so that it can continue serving its customers trading in thousands of available securities.  This authority to restrict trading was quickly reaffirmed by the Securities and Exchange Commission ("SEC"); just two days after Robinhood imposed the much-discussed restrictions, the SEC reiterated in an investor alert and bulletin that brokers have the authority to restrict trading during periods of volatility, and that brokers may reserve this right, as Robinhood has done, in their customer agreements.[2]  Unsurprisingly, the only other district court to consider the merits of these claims ruled that the plaintiff was unlikely to prevail on claims arising from the restrictions at issue.  *See Cobos v. Robinhood Financial LLC, et al.*, No. 2:21-cv-00843-VAP-MRWx, 2021 WL 1035123, at *2-3 (C.D. Cal. Feb. 10, 2021).

Recognizing that they have no claim for breach of contract—after many of the individual plaintiffs named in this consolidated complaint originally pleaded such claims prior to centralization—Plaintiffs now attempt to create liability in tort where none exists under contract law.  They allege that Robinhood is liable for negligence, gross negligence, negligence per se

---

[2] *See* Securities and Exchange Comm'n, "Thinking About Investing in the Latest Hot Stock?" (Jan. 30, 2021) ("Jan. 30 SEC Statement"), https://www.sec.gov/oiea/investor-alerts-and-bulletins/risks-short-term-trading-based-social-media-investor-alert.  The Court may take judicial notice of the Jan. 30 SEC Statement because it is a public record, the accuracy of which cannot reasonably be questioned.  *See Univ. Express, Inc. v. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006) (taking judicial notice of public records at the motion to dismiss stage).

and breach of fiduciary duty.  But the law does not permit Plaintiffs to take a losing breach of contract claim and dress it up as a tort claim in order to avoid the governing provisions of the Customer Agreement.  This is particularly so where, as here, Plaintiffs do not contest the validity of the Customer Agreement, and in fact rely upon the agreement to support their tort claims.

All of Plaintiffs' claims must therefore be dismissed.  Counts I (negligence) and II (gross negligence) fail because Robinhood customer plaintiffs do not identify—and cannot identify—any duty under tort law that arises independent of Robinhood's contractual obligations. (*See infra* Argument, Section I.)  In Count III, Plaintiffs attempt to provide the missing duty element of their tort claims by alleging negligence per se.  However, negligence per se does not constitute an independent claim under the governing law.  And even where such a cause of action is recognized, courts have confirmed that it can be maintained only if the underlying statute creates a private right of action.  None of the statutes or regulations that Plaintiffs cite do so.  (*See infra* Argument, Section II.)  Count IV (breach of fiduciary duty) fails because, as a non-discretionary broker-dealer that does not provide investment advice, Robinhood owes no general fiduciary duty to its customers.  (*See infra* Argument, Section III.)  Finally, those claims also fail to the extent they are asserted on behalf of non-Robinhood customers, to whom Robinhood owed no duties.  (*See infra* Argument, Section IV.)  This Action should be dismissed with prejudice.[3]

---

[3] Robinhood respectfully submits this memorandum of law in response to the unredacted version of the Complaint that Plaintiffs served on July 27, 2021.  Despite multiple attempts by Robinhood to meet and confer with Plaintiffs concerning the filing of a lesser-redacted versions of the Complaint—specifically, to redact only personally identifying information that Plaintiffs included in the unredacted Complaint, none of which is necessary for Plaintiffs' claims— Plaintiffs declined to do so.  Robinhood respectfully reserves the right to move for a protective order concerning the public filing of personally identifying employee information.

## BACKGROUND

### I.     The Contractual Relationship Between Robinhood and Its Customers.

Robinhood is an industry-changing financial services company founded on the ethos of putting financial power into the hands of everyday people—not just the few and wealthy.  (Compl. ¶ 107.)  Started in 2013 by Vladimir Tenev and Baiju Bhatt, Robinhood's securities business currently comprises three entities:  Robinhood Markets, Inc. ("Robinhood Markets"), which wholly owns Robinhood Financial LLC ("Robinhood Financial"), the customer-facing introducing broker, and Robinhood Securities, LLC ("Robinhood Securities"), the clearing broker.  (*Id.* ¶¶ 78-81.)  Robinhood is not an investment adviser and does not make investment recommendations to its customers; instead, Robinhood provides an online trading platform on which customers direct their finances.  (*Id.* ¶¶ 99-100, 116.)  Customers can make trades without paying any commissions and are not required to have account minimums.  (*Id.* ¶ 109.)

When Robinhood customers sign up for a Robinhood account, they first agree to the terms of the Customer Agreement between the customer, Robinhood Financial and Robinhood Securities.[4]  (*Id.* ¶ 306; Cust. Agmt. at 1.)  The Customer Agreement addresses, among other things, the nature of the customer's relationship with Robinhood and its rights and obligations vis-à-vis its customers.  (*See* Cust. Agmt.)[5]

---

[4] As discussed in Legal Standards, Section II, Plaintiffs have incorporated the Customer Agreement into the Complaint by reference, and the Court should consider its contents in this Motion.

[5] Robinhood periodically updates its Customer Agreement, and the Customer Agreement provides that by "continuing to maintain [a] securities brokerage account without objecting to any revised terms of [the] agreement, [customers are] accepting the terms of the revised agreement and [] will be legal bound by its terms and conditions."  (Cust. Agmt. at 1.)  The version of the Customer Agreement in place at the time the underlying complaints in this

Through the Customer Agreement, Robinhood and its customers—including Plaintiffs—confirm the hands-off role that Robinhood plays in its customers' trading activity. Customers agree that their accounts are "self-directed" and that Robinhood does not "(1) provide investment advice in connection with [Plaintiffs'] Account[s]; (2) recommend any security, transaction or order; (3) solicit orders; (4) act as a market maker in any security; [or] (5) make discretionary trades." (*Id.* § 5.A.)  Further, Plaintiffs agree that "Robinhood may at any time, at its sole discretion and without prior notice to [the customer] . . . (ii) refuse to accept any of [the customer's] transactions, [or] (iii) refuse to execute any of [the customer's] transactions." (*Id.* § 16; *see also id.* § 5(F).)

The Customer Agreement also expressly provides that Robinhood can impose trading restrictions like those at issue in this litigation.  Specifically, the Customer Agreement provides that:

- "Robinhood may at any time, in its sole discretion, and without prior notice to [the customer], prohibit or restrict [the customer's] ability to trade securities." (*Id.* § 5.F);

- "Robinhood may, in its discretion, prohibit or restrict the trading of securities, or the substitution of securities, in any of [the customer's] Accounts." (*Id.* § 16); and

- "Robinhood may at any time, at its sole discretion and without prior notice to [the customer]: (i) prohibit or restrict [the customer's] access to the use of the App or the Website or related services and [customer's] ability to trade, (ii) refuse to accept any of [the customer's] transactions, (iii) refuse to execute any of [the customer's] transactions, or (iv) terminate [the customer's] Account." (*Id.* § 16.)

The Customer Agreement was in effect at the time Robinhood imposed the limited trading restrictions at the end of January 2021.  (*See* Compl. ¶ 306.)

---

multidistrict litigation were filed was dated December 30, 2020 and is attached hereto as Exhibit A.

II.     **The Mechanics of Securities Trading.**

A securities transaction is a multi-step process.  (*See generally* Compl. ¶¶ 137-68.)  When a Robinhood customer places an order to buy or sell a security, Robinhood Financial, as the introducing broker, may first choose to accept the order; should it do so, it then sends the order to Robinhood Securities, the clearing broker.  (*Id.* ¶¶ 80-81.)  Robinhood Securities then routes the order for execution to a market maker; following execution, Robinhood Securities then submits the resulting trade to a clearinghouse for clearance and settlement.  (*Id.* ¶¶ 81, 100 n.5.)  The main clearinghouse for equities traded in the U.S. is the National Securities Clearing Corporation ("NSCC"), part of a larger clearing organization called Depository Trust & Clearing Corporation ("DTCC").  (*Id.* ¶¶ 137-38.)  Clearinghouses such as NSCC and DTCC are regulated by the SEC.  *See* 17 C.F.R. § 240.17Ad-22.

As this multi-step process unfolds, there is some risk that market participants will be unable to satisfy their obligations in connection with a trade.  (*Id.* ¶¶ 137-44.)  To mitigate this risk, clearing brokers, such as Robinhood Securities, are required to post collateral with NSCC to cover the risk until the trade "settle[s]."  (*Id.* ¶ 141.)  These collateral requirements are often referred to as deposit requirements.  (*Id.* ¶ 137.)  To clear and settle customer transactions, each trading day by 10:00 AM ET, Robinhood Securities must meet the deposit requirements set by NSCC.  (*Id.* ¶ 141.)  Depending on NSCC's calculation of the day's deposit requirements, Robinhood Securities may be able to withdraw money that it left on deposit the previous day, or may be required to deposit additional money.  (*Id.*)  Indeed, NSCC can even require additional deposits during a trading day.  (*Id.* ¶ 196.)

In setting the deposit requirements, NSCC considers volatility in the market; if NSCC perceives certain securities as being particularly risky or volatile, NSCC may assign a volatility multiplier or special charge that can increase deposit requirements.  (*Id.* ¶¶ 141, 143,

207.)  While NSCC calculates its daily deposit requirements according to set formulas, it also can exercise discretion in setting the requirements.  (*See, e.g.*, *id.* ¶ 207.)  If Robinhood Securities were to be unable to meet its deposit requirements on a given day, NSCC could liquidate Robinhood Securities' entire portfolio, which could significantly damage Robinhood's customers.  (*Id.* ¶ 140.)

In addition to deposit requirements, Robinhood Securities must also comply with the SEC's Net Capital Rule when clearing and settling customer transactions.  (*Id.* ¶ 147.)  This rule requires brokers to maintain sufficient liquid assets to meet all obligations to their customers.  (*Id.*)  Together, the clearinghouse deposit requirements and the Net Capital Rule require clearing brokers to monitor liquidity.  (*Id.* ¶¶ 142, 147.)  The purpose of these rules and regulations is to ensure market stability and protect investors.  (*Id.* ¶¶ 143, 147.)

## III.    The Unprecedented Market Volatility of January 2021.

January 2021 was marked by a series of unprecedented events in the securities industry.  (Compl. ¶¶ 169-216.)  Retail investors, banding together through online forums such as WallStreetBets on Reddit, drove a massive short squeeze involving certain stocks they perceived to be the target of short selling by hedge funds (the "meme stocks").[6]  (*Id.* ¶¶ 169-75,

---

[6] Plaintiffs initially allege that fourteen stocks constitute the "Suspended Stocks" in this Action:  GameStop Corporation (GME), BlackBerry Ltd. (BB), Nokia (NOK), AMC Entertainment Holdings, Inc. (AMC), AMC Networks, Inc. (AMCX), American Airlines Group, Inc. (AAL), Bed Bath & Beyond, Inc. (BBBY), Castor Maritime Inc. (CTRM), Express, Inc. (EXPR), Koss Corporation (KOSS), Naked Brand Group Ltd. (NAKD), Sundial Growers, Inc. (SNDL), Tootsie Roll Industries, Inc. (TR), and Trivago NV (TRVG).  (Compl. ¶ 3.)  Plaintiffs later (correctly) allege that only thirteen stocks were subject to position close only restrictions, and exclude AMCX.  (*Id.* ¶ 276.)  As was reported by the media, Robinhood placed position close only restrictions on thirteen stocks, which did not include AMCX.  *See* Maggie Fitzgerald, *Robinhood restricts trading in GameStop, other names involved in frenzy*, CNBC (Jan. 28, 2021, 9:19 AM EST), *available at* https://www.cnbc.com/2021/01/28/robinhood-interactive-brokers-restrict-trading-in-gamestop-s.html.  The Court may judicially notice the full set of restricted stocks as reported by the media, which are "generally known" and "whose accuracy cannot

183, 185.)  Their activity resulted in extreme market volatility, with dramatic increases in trading prices.  (*Id.* ¶¶ 169, 176, 198.)  For example, on January 27, GME's price closed at $347.51 per share, a 707.6% increase from just five trading days earlier.[7]



Indeed, in the span of just five trading days (from January 21 to January 27, 2021), the total daily trading volume for the meme stocks increased eight-fold from 863 million to 6.95 billion shares.[8]

---

reasonably be questioned." *Cavero v. Law Offices of Erskine & Fleisher*, No. 12-21196-CIV, 2012 WL 13134213, at *2 (S.D. Fla. Aug. 28, 2012).

[7] *See Market Activity*, Nasdaq, https://www.nasdaq.com/market-activity (last visited Aug. 24, 2021).  The Court may take judicial notice of stock information related to the securities at issue here and in the ensuing charts.  *See La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 842 (11th Cir. 2004) (taking judicial notice of stock information at the motion to dismiss stage because the information was "not subject to reasonable dispute").

[8] *See Market Activity*, Nasdaq, https://www.nasdaq.com/market-activity (last visited Aug. 24, 2021).  The Court may take judicial notice of stock information.  *See supra* note 7.

9



While these unprecedented events were taking place, Robinhood Securities considered how the volatility could affect its deposit requirements and risk exposure.  (*Id.* ¶¶ 178-87.)  In the days leading up to January 28, to mitigate the volatility, Robinhood Securities increased margin requirements for erratically trading securities like GME to 100%, which in effect meant that a customer needed sufficient funds to pay for such shares in full, rather than being able to buy shares on credit.  (*See id.* ¶ 179.)

As volatility involving the meme stocks increased, so too did Robinhood Securities' daily deposit requirements.  (*Id.* ¶¶ 191-98.)  On the days leading up to January 28, Robinhood Securities' approximate daily deposit requirements were as follows:

- January 25, 2021, 5:19 AM UTC[9] deposit requirement:  $125 million;[10] Robinhood Securities had a deposit surplus of $11,397,650.77 (Compl. ¶ 191).

- January 26, 2021, 8:34 AM UTC deposit requirement:  $291 million (Tenev Testimony at 10); Robinhood Securities had a deposit deficit of $84,930,632.62 (Compl. ¶ 193).

- January 27, 2021, 8:20 AM UTC deposit requirement:  $282 million (Tenev Testimony at 10); Robinhood Securities had a deposit surplus of $11,348,423.58 (Compl. ¶ 194).

- January 27, 2021, 8:03 PM UTC deposit requirement:  $690 million (Tenev Testimony at 10); Robinhood Securities had a deposit deficit of $407,770,190.70 (Compl. ¶¶ 196-97).

## IV.     The Events of January 28, 2021 and Onward.

At approximately 5:11 AM EST on January 28, 2021, Robinhood Securities received an email notice from NSCC stating that its deposit requirements had jumped dramatically from the previous days:  Robinhood Securities' deposit deficit was over *$3 billion*. (*Id.* ¶ 198.)  Robinhood Securities did not have the cash on hand to satisfy a deposit requirement of that size.  (*Id.* ¶ 204.)  In light of the massive capital call, Robinhood Securities decided after

---

[9] The Plaintiffs erroneously allege that the times at which Robinhood Securities received its deposit requirements in paragraphs 191, 193, 194, 196 and 197 were in Eastern Standard Time. The times set forth in those paragraphs were in Coordinated Universal Time ("UTC"), which is five hours ahead of Eastern Standard Time.

[10] *See Virtual Hearing – Game Stopped?  Who Wins and Loses When Short Sellers, Social Media, and Retail Investors Collide*, 117th Cong. at 10 (2021) (statement of Vladimir Tenev, Chief Executive Officer, Robinhood Markets, Inc.), *available at* https://financialservices.house.gov/uploadedfiles/hhrg-117-ba00-wstate-tenevv-20210218.pdf ("Tenev Testimony").  The Court may take judicial notice of the deposit requirements described in Mr. Tenev's testimony in the days leading up to January 28, 2021.  *See D.A.M. v. Barr*, 474 F. Supp. 3d 45, 55 n.12 (D.D.C. 2020) (taking judicial notice of Congressional testimony because Congressional testimony "is not subject to reasonable dispute") (quoting Fed. R. Evid. 201(b)(2)).  Indeed, Plaintiffs themselves cite Mr. Tenev's testimony to support their allegations about Robinhood's deposit requirements on January 28.  (*See* Compl. ¶¶ 14, 198.)  The times regarding the deposit requirements referenced herein refer to the time that Robinhood Securities received an email notice from NSCC stating the deposit requirement.

several hours of deliberation to set a small number of the meme stocks to a "position close only" ("PCO"), which would enable (but not require) Robinhood customers to exit their positions in those symbols if they wished, but restricted purchases of those volatile securities.  (*Id.* ¶¶ 203, 219.)

Shortly after 9:00 AM EST, after Robinhood Securities put in place the majority of the restrictions, NSCC reduced Robinhood Securities' deposit requirements to approximately $1.4 billion.  (*Id.* ¶ 207.)  The revised requirements remained hundreds of millions of dollars above typical levels, but Robinhood Securities promptly paid its deposit requirements that morning, complied with its NSCC deposit requirements and never violated the SEC Net Capital Rule.  (*Id.* ¶¶ 213, 214.)  Robinhood Securities was far from the only clearing broker to impose restrictions on the meme stocks during this period of unprecedented volatility.  (*See, e.g.*, *id.* ¶ 233.)  Apex Clearing Corporation ("Apex"), for example, imposed restrictions on several of the meme stocks, which impacted the downstream customers of Apex's introducing broker partners, including customers of Ally, Dough, Public.com, SoFi, Stash, Tastyworks and WeBull.  (*Id.* ¶¶ 234, 236.)  Charles Schwab was one of numerous other brokers to impose restrictions on the meme stocks as well.  (*Id.* ¶ 256.)

Robinhood worked quickly to remove the restrictions, easing them by market open on January 29, 2021, and lifting all purchase limits on February 4, 2021.  (*Id.* ¶¶ 258, 269.) The company also spoke with investors and lenders to raise new capital and expand its line of credit to accommodate the historic market volatility and the unprecedented deposit requirements; by February 1, 2021, several days after Robinhood first imposed the restrictions, Robinhood had raised $3.4 billion from investors.  (*Id.* ¶¶ 213, 268.)

On January 30, 2021, amid much public discussion about Robinhood Securities' and other brokers' trade restrictions, the SEC released an investor alert and bulletin warning about the risks of short-term trading based on social media and acknowledging that "broker-dealers may reserve the ability to reject or limit customer transactions" for "legal, compliance, or risk management reasons" and that such ability is "typically discussed in the customer account agreement."  (*See* Jan. 30 SEC Statement, *supra* note 2.)

## **LEGAL STANDARDS**

### I.     **Applicable Standard.**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (alterations added).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).  "To meet this 'plausibility standard,' a plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Arndt v. Twenty-One Eighty-Five, LLC*, 448 F. Supp. 3d 1310, 1314 (S.D. Fla. 2020) (quoting *Iqbal*, 556 U.S. at 678).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss."  *Id.* at 1314-15 (quoting *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012)).

### II.     **Applicable Law.**

A "federal district court sitting in diversity must apply the choice of law rules of the forum state." *Arndt*, 448 F. Supp. 3d at 1315 (quoting *Clanton v. Inter.Net Glob., L.L.C.*, 435 F.3d 1319, 1323 (11th Cir. 2006)).  When sitting in diversity, this Court applies Florida's choice-

of-law rules. *Id.* In a multidistrict litigation where (as here) the parties have agreed that a master complaint will serve as the operative and superseding complaint, the court applies the forum's choice-of-law rules. *See In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1078 (S.D. Ind. 2001); (ECF No. 322 at 2) (Parties agreed that the "Master Complaints will supersede the individual complaints filed to date and will constitute the operative pleadings with respect to those claims")). Under Florida's choice-of-law rules, it is well settled that "Florida courts are obligated to enforce choice-of-law provisions unless a showing is made that the law of the chosen forum contravenes strong public policy or that the clause is otherwise unreasonable or unjust." *Arndt*, 448 F. Supp. 3d at 1315 (citations omitted). "Simply put, when an unambiguous, valid choice-of-law provision exists, as it does here, there is no need for the court to engage in a further conflict of laws analysis." *Id.* at 1321 (citations omitted).

California law applies to the claims of all Robinhood Customer Plaintiffs because their claims are subject to a valid contractual choice-of-law provision. The Customer Agreement, alleged in the Complaint, provides that "[t]his Agreement and all transactions made in [a customer's] Account shall be governed by the laws of the State of California (regardless of the choice of law rules thereof)." (Cust. Agmt. § 37.K.) Plaintiffs' alleged claims all arise from their use of and interactions with their Robinhood brokerage accounts. (*See* Compl. ¶¶ 25-27 (Juncadella), 28-32 (Goodan), 35-36 (Makeham), 38-40 (Sanders), 42-44 (Rodriguez), 46-49 (Krasowski), 51-53 (Hill), 55-57 (Gonzalez), 59-60 (Daniluk), 62-64 (Cornwell), 66-69 (Moody).) The choice-of-law provision in the Customer Agreement ("this Agreement and all transactions made in [a customer's] Account") is a broad provision that applies to tort claims as well as breach of contract claims. *See Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1162-63 (11th Cir. 2009) (finding choice of law provisions encompassing more than "this [agreement]"

apply to tort claims); *see also Arndt*, 448 F. Supp. 3d at 1315-21 (applying choice of law provision to all claims relating to the agreement).  Accordingly, all of the Robinhood Customer Plaintiffs' claims are governed by California law.  (*See infra* Argument, Sections I to III.)

While the Customer Agreement is not attached to the Complaint, the "[Court] may [] consider documents attached to [a] motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity."  *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).  All three elements are present here.  *First*, Plaintiffs quote directly from Robinhood's Customer Agreement as the basis for at least one of their claims.  (*See* Compl. ¶ 306 (quoting Cust. Agmt. § 5.E).)  The Eleventh Circuit has incorporated documents by reference based on more indirect references in a complaint.  *See SFM Holdings, Ltd. v. Banc of Am. Sec.*, 600 F.3d 1334, 1337 (11th Cir. 2010) (incorporating a customer agreement based on the complaint's reference to "account opening documents").  *Second*, the Customer Agreement is central to Plaintiffs' claims.  As a threshold matter, "relationship-forming documents [such as brokerage agreements] are central to a plaintiff's claim."  *Id.* at 1337 (citing *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005)).  Indeed, the Robinhood Customer Plaintiffs would have no relationship with Robinhood without the Customer Agreement, which they are required to review and accept before they can open a Robinhood account.  Furthermore, Plaintiffs cite to the Customer Agreement to allege that Robinhood owed and breached a fiduciary duty to its non-discretionary customers—allegations sufficient for this Court to consider the contents of the Customer Agreement when testing their claims.  *See Hi-Tech Pharm.*, 910 F.3d at 1189 (incorporating by reference product labels that were the subject of deceptive advertising claims).  *Third*, no party disputes the authenticity of the Customer

Agreement.  Plaintiffs' reliance on the text of the Customer Agreement belies any potential dispute of its authenticity.  (*See* Compl. ¶ 306.)  Therefore, the Customer Agreement has been incorporated into the Complaint by reference and its provisions should be considered in connection with this Motion.[11]  *Hi-Tech Pharm.*, 910 F.3d at 1189.

While Florida's choice-of-law rules make clear that California law applies to the Robinhood Customer Plaintiffs' claims, for the reasons set forth below, analyzing Plaintiffs' claims under Florida law would yield the same result—dismissal.  (*See* Argument, Sections I to III.)  As a result, Plaintiffs cannot prevail under any potentially applicable law in this case.

Finally, Robinhood respectfully takes no position on this Motion on the law applicable to the claims brought by Plaintiffs Chavez and Yang, both individually and on behalf of an alleged putative "Nationwide Investor Class," which apparently includes all persons trading securities in the United States, including those who are not Robinhood customers.  For the reasons set forth below, no non-Robinhood customer can state a claim against Robinhood regardless of which state's law applies.  (*See infra* Argument, Section IV.)

## ARGUMENT

Plaintiffs bring four tort claims against Robinhood:  (1) negligence, (2) gross negligence, (3) negligence per se and (4) breach of fiduciary duty.  Plaintiffs cannot state a claim for any of these causes of actions and their claims should be dismissed.

---

[11] The claims against Robinhood Markets should also be analyzed pursuant to the choice-of-law provision in the Customer Agreement.  Florida courts have recognized that contract terms can be enforced by non-signatories where there is a close relationship between the non-signatory and the parties.  *See, e.g.*, *World Vacation Travel, S.A., de C.V. v. Brooker*, 799 So. 2d 410, 412–13 (Fla. 3d DCA 2001) (finding non-signatory could enforce a forum selection clause due to the "nature of the commercial relationship of the parties" and the fact that the claims against the non-signatories arose from the agreement); *see also Deloitte & Touche v. Gencor Indus., Inc.*, 929 So. 2d 678, 683 (Fla. 5th DCA 2006) (reaching the same conclusion where the non-signatory was the corporate parent of a signatory).

I.    **PLAINTIFFS' NEGLIGENCE AND GROSS NEGLIGENCE CLAIMS FAIL BECAUSE PLAINTIFFS DO NOT ADEQUATELY ALLEGE THAT ROBINHOOD OWED THEM A DUTY IN TORT.**

To prevail on their negligence claim, Plaintiffs must establish (1) that Robinhood had a legal duty to use due care, (2) the breach of such legal duty, and (3) that the breach was the proximate or legal cause of injury.  *Orey v. Super. Ct*., 152 Cal. Rptr. 3d 878, 886 (Ct. App. 2013).  Gross negligence requires establishing each of the elements of negligence as well as "extreme conduct" by the defendant that rises to the level of "either a want of even scant care or an extreme departure from the ordinary standard of conduct."  *Champion v. Feld Ent., Inc.*, No. 20-CV-2400-DMS-KSC, 2021 WL 1812764, at *2 (S.D. Cal. May 6, 2021) (quoting *Rosencrans v. Dover Images, Ltd.*, 122 Cal. Rptr. 3d 22, 31 (Ct. App. 2011)).

Whether a defendant owes any duty to a plaintiff is a "threshold" question of law to be resolved by the court.  *Bily v. Arthur Young & Co*., 834 P.2d 745, 760-61 (Cal. 1992). "Courts . . . have invoked the concept of duty to limit generally 'the otherwise potentially infinite liability which would follow from every negligent act . . . .'"  *Id.* at 761 (quoting *Thompson v. County of Alameda*, 614 P.2d 728, 732 (Cal. 1980)).  Here, Plaintiffs fail to allege that Robinhood owed its customers any cognizable tort duty—as opposed to contractual obligations—and, as a result, their negligence and gross negligence claims should be dismissed.

A.    **Robinhood Owes Its Customers <u>Contractual</u> Obligations, Not <u>Tort</u> Duties.**

Robinhood and its customers are parties to a contract.  (Compl. ¶ 306.)  "[T]he duties of care between parties who negotiate contracts are not governed by the law of tort." *Sheen v. Wells Fargo Bank, N.A.*, 250 Cal. Rptr. 3d 677, 684 (Ct. App. 2019) (quoting Rest. 3d Torts, Liability for Economic Harm (Tent. Draft No. 1) § 3, cmt. d)).  Rather, the obligations between contractual parties, such as Robinhood and its customers, are defined by the terms of the relevant contract.  *See id.*  This is because "[i]f every negligent breach of contract gives rise to

tort damages the limitation would be meaningless, as would the statutory distinction between tort and contract remedies." *Erlich v. Menezes*, 981 P.2d 978, 984 (Cal. 1999).[12]

Prior to opening an account and using Robinhood's services, Plaintiffs were required to review and accept the terms of the Customer Agreement.  (*See* Exhibit A.)  Plaintiffs recognize that the Customer Agreement forms the basis of Robinhood's relationship with and obligations to its customers, given that many of the Plaintiffs in this consolidated Complaint initially filed breach of contract claims.[13]  The Customer Agreement expressly addresses, and explicitly authorizes, the trading restrictions that are the basis of Plaintiffs' claims.  Specifically, the Customer Agreement provides:

- "Robinhood may at any time, in its sole discretion, and without prior notice to [the customer], prohibit or restrict [the customer's] ability to trade securities." (*Id.* § 5.F);

- "Robinhood may, in its discretion, prohibit or restrict the trading of securities, or the substitution of securities, in any of [the customer's] Accounts." (*Id.* § 16); and

- "Robinhood may at any time, at its sole discretion and without prior notice to [the customer]:  (i) prohibit or restrict [the customer's] access to the use of the App or the Website or related services and [customer's] ability to trade, (ii) refuse to accept any of [the customer's] transactions, (iii) refuse to execute any of [the customer's] transactions, or (iv) terminate [the customer's] Account." (*Id.* § 16.)

---

[12] Some courts permit a separate tort claim, in a limited fashion, arising from a breach of contract claim where the plaintiff alleges a special relationship with the defendant.  For the reasons set forth in Argument, Section I.B., *infra*, no such relationship exists here.

[13] The named Plaintiffs who initially included breach of contract claims include:  Compl., *Daniluk v. Robinhood Financial LLC, et al.*, No. 21-cv-00980 (N.D. Cal.) ¶¶ 66-69; Compl., *Juncadella, et al. v. Robinhood Financial LLC, et al.*, No. 21-cv-20414 (S.D. Fla.) ¶¶ 80-85; Compl., *Lybrook, et al. v. Robinhood Financial LLC, et al.*, No. 21-cv-01596 (N.D. Cal.) (including Cody Hill as named plaintiff) ¶¶ 60-65; Compl., *Moody, et al. v. Robinhood Financial LLC*, No. 21-cv-00861 (N.D. Cal.) ¶¶ 77-87.

Because Plaintiffs' claims arise out of restrictions that are expressly permitted by the Customer Agreement, Plaintiffs have done nothing more than attempt to convert a losing contract claim into a tort claim.  The law does not allow Plaintiffs to use such a maneuver to evade the governing contract.  *See Aas v. Super. Ct.*, 12 P.3d 1125, 1136 (Cal. 2000) ("A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations.") (superseded by statute on other grounds); *Brown v. Cal. Pension Adm'rs & Consultants, Inc.*, 52 Cal. Rptr. 2d 788, 795 (Ct. App. 1996) (dismissing negligence claim in part because it was "simply a relabeling of [appellants'] breach of contract claims as tort claims").

Neither of the limited exceptions that could permit contractual parties to recover on a negligence claim applies here.  *First*, Plaintiffs cannot invoke the independent tort doctrine, a limited exception permitting a plaintiff to recover in tort against a contractual counterparty where the plaintiff alleges a tort that is "independent of the [contract] breach."  *See Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 360 (Cal. 2004).  Courts have limited this exception to cases involving intentional torts, such as fraud, which Plaintiffs do not attempt to allege here.[14]  *See Peregrine Pharms., Inc. v. Clinical Supplies Mgmt., Inc.*, No. 12-cv-1608-JGB, 2015 WL 13309286, at *11 (C.D. Cal. June 22, 2015) ("Unintentional acts and misrepresentations are clearly not the type that the California Supreme Court had in mind as forming the basis of an independent tort duty . . . . [Instead,] the court narrowly tailored [the exception] to include only *intentional* conduct.").  In other words, the exception does not apply in cases, such as this

---

[14] Any fraud claim Plaintiffs might allege would be precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), which provides that "[n]o covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging – (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security."  15 U.S.C. § 78bb(f)(1).

one, where a plaintiff brings a negligence claim against a contractual counterparty.  *See id.*; *see also Erlich*, 981 P.2d at 984 ("[M]ore than mere negligence has been involved in each case [between contractual parties] where tort damages have been permitted.").  Although California law applies to Plaintiffs' claims, as explained above, there is no conflict between California and Florida law on this issue, and if Florida law applied, Plaintiffs would be barred from recovering for similar reasons.  *See Island Travel & Tours, Co. v. MYR Indep., Inc.*, 300 So. 3d 1236, 1239 (Fla. 3d DCA 2020) ("It is a fundamental, long-standing common law principle that a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract."); *see also Burdick v. Bank of Am., N.A.*, 99 F. Supp. 3d 1372, 1378 (S.D. Fla. 2015) (dismissing negligence claims because the claims "should have been brought in contract rather than in Negligence"; defendants' purported negligence was not 'independent of any breach of contract claim' as Florida law requires").

   *Second*, Plaintiffs likewise cannot assert a cognizable negligence claim against Robinhood based on a breach of a professional duty.  *See* Restatement (Third) of Torts: Liab. for Econ. Harm § 4 (2020).  Indeed, Plaintiffs do not even allege that Robinhood owes its customers a professional duty.[15]  That is because, as a broker that offers non-discretionary, self-directed

---

[15] Presumably, a reason Plaintiffs do not allege that Robinhood owes its customers a professional duty is because establishing the professional standard of care requires comparing the defendant's conduct with that of similar professionals in the community.  *See Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 98 Cal. Rptr. 837, 844 (Ct. App. 1971) (a professional has a duty under California law "not merely to perform his work with ordinary care but to use the skill, prudence, and diligence commonly exercised by practitioners of his profession"); *Ins. Co. of the W. v. Island Dream Homes, Inc.*, 679 F.3d 1295, 1298 (11th Cir. 2012) (a professional owes a duty under Florida law "to perform the requested services in accordance with the standard of care used by similar professionals in the community under similar circumstances").  As Plaintiffs noted, during the week of January 25, 2021, other brokers—including those not named as defendants in this Action or in the Antitrust Action—enacted trading restrictions for a number of securities in light of the same unprecedented market volatility.  (Compl. ¶¶ 233-36 (clearing

accounts, Robinhood does not provide any investment advice and guidance to customers, and as such, does not exercise the kind of "complex discretionary judgments" that would subject it to a professional duty.  *See* Restatement (Third) of Torts: Liab. For Econ. Harm § 4 cmt. B; *see also Bily*, 834 P.2d at 763 (finding a professional duty where the work was the product of a "complex process involving discretion and judgment on the part of the auditor at every stage").  Plaintiffs could not recover under a professional negligence theory under Florida law either because Florida courts, in determining whether such a theory is valid, consider whether the plaintiff "direct[ed] or specif[ied]" the "manner of performance" or whether performance was "solely under [the defendant's] control and competence."  *See Rocks v. McLaughlin Eng'g Co.*, 49 So. 3d 823, 828 (Fla. 4th DCA 2010).  Robinhood customers' investments are completely self-directed, and Robinhood does not control or direct customers' securities transactions in any way. Robinhood therefore is not subject to a professional duty.  *See id.*

Because Robinhood owes its customers only contractual obligations and Plaintiffs have no professional or tort duty independent of those obligations, Plaintiffs cannot recover in tort.  Their negligence and gross negligence claims should be dismissed.

### B.    Robinhood Does Not Owe Its Customers a Generalized Duty of Care.

In addition to the bar to tort recovery from the contract that governs the relationship between Robinhood and its customers, Plaintiffs also cannot recover under a negligence theory because Robinhood does not owe its customers a general duty of care.  A general tort duty of care exists only "when the actor's conduct creates a risk of *physical harm*." *See* Restatement (Third) of Torts: Phys. & Emot. Harm § 7 (2010) (emphasis added).

---

broker Apex; introducing brokers Ally, Dough, Public.com, SoFi, Stash and Tastyworks); ¶¶ 256-57 (Charles Schwab).)  A comparison of the conduct between Robinhood and other brokers would only underscore that Robinhood's conduct was in line with industry practices.

Specifically, a plaintiff may recover based on a negligence theory only if the defendant's conduct created a "foreseeable" danger of physical harm or damage to real property.  *See S. California Gas Leak Cases*, 441 P.3d 881, 885, 888 (Cal. 2019).  Plaintiffs seek incorrectly to impose such a tort duty against Robinhood by claiming that their risk of *economic* harm was "foreseeable" from Robinhood's actions.  (Compl. ¶¶ 288, 296.)  Plaintiffs' theory is wrong as a matter of law.  Courts routinely reject the proposition that "foreseeability of harm" for *economic* losses is sufficient to impose a duty of care and negligence liability on a defendant.  *See S. California Gas Leak Cases*, 441 P.3d at 889 (dismissing plaintiffs' negligence claim because "consensus cuts sharply against imposing a duty of care to avoid causing purely economic losses in negligence cases"); *Kurtz-Ahlers, LLC v. Bank of Am., N.A.*, 262 Cal. Rptr. 3d 420, 426 (Ct. App. 2020) ("We begin our duty analysis by acknowledging a fundamental rule in tort law: [L]iability in negligence for purely economic losses . . . is the exception, not the rule.") (internal quotations omitted); *Sheen*, 250 Cal. Rptr. 3d at 682 (dismissing plaintiff's negligence claim because it was based on a "financial transaction gone awry and nothing more: [plaintiff] suffered neither personal injury nor property damage").  Plaintiffs' claims, all of which are for *economic* losses against Robinhood, are no exception; therefore Plaintiffs cannot plead a valid negligence claim by alleging that Robinhood owed them a general duty of care.

The limited "special relationship" exception, under which a plaintiff may recover for economic losses under a negligence theory, is also unavailable to Plaintiffs.  *See Peregrine Pharms.*, 2015 WL 13309286, at *9.  For this limited exception to apply, California courts consider:  "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered,

(5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." *Id.* (citing *J'Aire Corp. v. Gregory*, 598 P.2d 60, 63 (Cal. 1979) (internal citations omitted)). The California Supreme Court has criticized the "special relationship" exception as "illusory and not sufficiently precise," *Erlich*, 981 P.2d at 984, and has only recognized the exception where the parties are *not* in contractual privity—unlike the parties here. *See, e.g.*, *Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084, 1092 (C.D. Cal. 2017) (holding that the two California Supreme Court cases addressing the "special relationship exception"—*J'Aire*, 598 P.2d 60, and *Biakanja v. Irving*, 320 P.2d 16 (Cal. 1958)—applied it only to parties that were not in contractual privity). The Court recently clarified in *Southern California Gas Leaks Cases* that "[w]hat we mean by special relationship is that the plaintiff was *an intended beneficiary of a particular transaction* but was harmed by the defendant's negligence in carrying it out." *S. Cal. Gas Leak Cases*, 441 P.3d at 887 (emphasis added). Indeed, courts following *Southern California Gas Leaks Cases* have declined to find a "special relationship" between non-discretionary brokers and their customers. *See Whitesides v. E\*Trade Securities, LLC*, No. 20-CV-05803-JSC, 2021 WL 930794, at \*8 (N.D. Cal. Mar. 11, 2021) (finding no "special relationship" between E\*Trade and its retail investor customers). Therefore, in the absence of any allegations of physical harm, and any legally-recognized and well-pleaded "special relationship" between Robinhood and its customers, Plaintiffs cannot recover for economic losses under a negligence theory. *See S. Cal. Gas Leak Cases*, 441 P.3d at 896.

Likewise, under Florida law, Robinhood does not owe its customers general tort duties. Under Florida law, regardless of whether parties are in contractual privity, "plaintiffs are generally not permitted to recover 'for purely economic losses when the plaintiff has sustained no bodily injury [or] property damage.'" *Underwriters at Int. v. All Logistics Grp., Inc.*, 483 F.

Supp. 3d 1199, 1211 (S.D. Fla. 2020) (quoting *Curd v. Mosaic Fertilizer, LLC*, 39 So.3d 1216, 1223-24 (Fla. 2010)), *appeal dismissed*, No. 20-14453-JJ, 2021 WL 2190226 (11th Cir. Mar. 4, 2021).  A defendant therefore owes a general duty in negligence only for "physical harm."  *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1186 (Fla. 2003).[16]  Instead, "to proceed on a common law negligence claim based solely on economic loss, there must be some sort of link between the parties or some other extraordinary circumstance that justifies recognition of such a claim."  *Tank Tech, Inc. v. Valley Tank Testing, L.L.C.*, 244 So. 3d 383, 393 (Fla. 2d DCA 2018).[17]  Plaintiffs plead no such exception here, and none exists.  Moreover, Florida courts have specifically recognized that where, as here, a financial institution has stated in a contract that it has "no discretionary role in investing [plaintiff's] assets," the plaintiff cannot recover for economic losses under a negligence theory.  *See Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 948 (11th Cir. 2014) (concluding that where custodial bank customers held non-discretionary

---

[16] While this Court cited *Clay Electric* to sustain a negligence claim in *Pinchasov v. Robinhood Financial LLC*, No. 20-cv-24897-CMA (S.D. Fla.), the decision in *Pinchasov* is inapplicable to the instant Action because the Robinhood Customer Agreement was not incorporated by reference in *Pinchasov*, which meant the Court could not consider the California choice-of-law provision or the well-established California precedent discussed herein that bars Plaintiffs' recovery under tort law.  (*See* Order Denying Motion to Dismiss, *Pinchasov v. Robinhood Financial LLC*, No. 20-cv-24897-CMA (S.D. Fla.), ECF No. 48 at 4-6.)  Moreover, Robinhood respectfully submits that the parties in *Pinchasov* did not raise—and the Court therefore did not consider—that a general duty of care in negligence under Florida law arises only to claims of physical harm.  (*Id.* at 5-6.)

[17] This principle is distinct from the economic loss doctrine, which Florida courts have limited to the products liability context.  *See Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399, 407 (Fla. 2013); *see also Certain Underwriters at Lloyd's of London, UK Subscribing to Pol'y No. B1230AP56189A14 v. Ocean Walk Resort Condo. Ass'n, Inc.*, No. 616CV258ORL37GJK, 2017 WL 3034069, at *10 (M.D. Fla. July 18, 2017) (collecting post-*Tiara* cases where courts have reaffirmed the barriers in recovering against a contractual counterparty in tort); *Underwriters*, 483 F. Supp. 3d at 1211 (concluding, post-*Tiara*, that a plaintiff generally cannot recover for economic losses absent injury or property damage, regardless of whether the parties are in privity).

accounts, the custodial bank owed its customers no generalized tort duties under Florida law);

*Paszamant v. Ret. Accts., Inc.*, 776 So. 2d 1049, 1053 (Fla. 5th DCA 2001) (same).  Plaintiffs'

negligence claims therefore fail.

In sum, Plaintiffs cannot prevail on a negligence theory that is premised on an

alleged generalized duty of care that Robinhood owes to its customers.

**C.      Plaintiffs Cannot Rely on Regulations and Self-Regulatory Rules for Which There Are No Private Rights of Action to Impose a Tort Duty on Robinhood.**

Plaintiffs further allege that "SEC, FINRA, and other regulatory rules" impose

duties on Robinhood to its customers.  (Compl. ¶¶ 284, 292.)  This is false.  Not one of the

statutes, regulations or rules cited by Plaintiffs gives rise to a private right of action.  As the cases

discussed in this section demonstrate, a statute, regulation or rule that does not create a private

right of action cannot be used to create a duty in tort.

Courts have widely recognized that a plaintiff cannot create from whole cloth a

private right of action where none exists simply by fashioning their claims as tort claims.  *See*

*Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, No. C-95-3926-MHP, 1997 WL

50223, at *3 & n.3 (N.D. Cal. Jan. 30, 1997) (dismissing tort claim based on purported violations

of NASD Rules, finding it improper "to circumvent the lack of a private right of action under the

Exchange Act"), *aff'd*, 159 F.3d 1209 (9th Cir. 1998); *Valelly v. Merrill Lynch, Pierce, Fenner &*

*Smith Inc.*, 464 F. Supp. 3d 634, 645 (S.D.N.Y. 2020) (dismissing a negligence claim, premised

on an SEC regulation and a FINRA Rule, because the "[p]laintiff cannot circumvent the lack of a

private right of action for violations of industry rules merely by recasting her claim as a violation

of a common law duty"); *Fox v. Lifemark Sec. Corp.*, 84 F. Supp. 3d 239, 245 (W.D.N.Y. 2015)

(holding that "FINRA does not provide a private right of action" and therefore "plaintiff cannot recover for negligence based on the alleged violation" of a FINRA Rule).[18]

None of the rules or regulations Plaintiffs cite in their Complaint has an associated private right of action that would create a duty by Robinhood to Plaintiffs. *First*, Plaintiffs note that Robinhood is subject to the SEC's Uniform Net Capital Rule, 17 C.F.R. § 240.15c3-1, without alleging any specific violation of that rule. (Compl. ¶ 147.) Regardless, Plaintiffs do not have a private right of action for that rule. *See Kidder Peabody & Co. v. Unigestion Int'l, Ltd.*, 903 F. Supp. 479, 495 (S.D.N.Y. 1995) (concluding there is no private cause of action under Section 15(c)(3) of the Securities Exchange Act—the section under which the Net Capital Rule was promulgated).

*Second*, Plaintiffs also refer obliquely to "FINRA Rules," specifying only FINRA Rules 2010 and 4370. (Compl. ¶¶ 155-60.) However, there is also no private right of action for violations of FINRA Rules or NASD Rules, the predecessor to FINRA Rules. *See In re Verifone Sec. Litig.*, 11 F.3d 865, 870 (9th Cir. 1993) ("It is well established that violation of an exchange rule will not support a private claim."); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 681 (9th Cir. 1980) ("[T]here is no implied right of action for an NASD rule violation."); *Price (Tilley) v. Charles Schwab & Co.*, No. 14-cv-06194, 2015 WL 9694811, at *4 (C.D. Cal. Apr. 6, 2015) ("Case law establishes such violations [of NASD rules] do not give rise to a private right of

---

[18] *See also In re Series 7 Broker Qualification Exam Scoring Litig.*, 510 F. Supp. 2d 35, 47 (D.D.C. 2007) (rejecting plaintiffs' argument that their claims were "distinctly derived from duties created at common law" because "courts have logically concluded that the Exchange Act preempts common-law claims that are nothing more than disguised actions to enforce regulatory duties"), *aff'd*, 548 F.3d 110 (D.C. Cir. 2008); *Gurfein v. Ameritrade, Inc.*, 312 F. App'x 410, 414 (2d Cir. 2009) ("[Plaintiff] is precluded from creating a private cause of action for violations of these rules and regulations by fashioning her claim as one for breach of contract based on violations of rules and regulations impliedly incorporated into the agreement.").

action."); *Hauptman v. Interactive Brokers, LLC*, 349 F. Supp. 3d 292, 296 (S.D.N.Y. 2018) (no private right of action for violation of FINRA Rules).

*Third*, Plaintiffs refer vaguely to NSCC and DTCC rules.  (Compl. ¶¶ 151, 284, 286.)  But Plaintiffs further do not have a private right of action for purported violations of DTCC or NSCC rules.  Indeed, DTCC and NSCC rules are simply contractual agreements between the DTCC and NSCC and their members.  If Robinhood had breached a DTCC or NSCC rule—which Plaintiffs fail to plead with any particularity—that would amount to a breach of Robinhood's contractual obligations to DTCC or NSCC, not a breach of any duty to Plaintiffs. *See Harper v. Wausau Ins. Co.*, 66 Cal. Rptr. 2d 64, 68 (Ct. App. 1997) ("A third party should not be permitted to enforce covenants made not for his benefit" unless the contract is "expressly made for his benefit.") (citations omitted).

The same principle holds true under Florida law.  Florida courts have recognized that while an alleged violation of a rule or regulation can inform the applicable standard of care in a negligence action, or even serve as evidence of breach, it cannot provide the source of duty itself.  *See Estate of Johnson ex rel. Johnson v. Badger Acquisition of Tampa LLC*, 983 So. 2d 1175, 1182 (Fla. 2d DCA 2008) ("[T]he violation of a statute may be evidence of negligence, but such evidence only becomes relevant to a breach of a standard of care after the law has imposed a duty of care.").

Therefore, the SEC Regulations, FINRA Rules and DTCC or NSCC rules that Plaintiffs reference in their Complaint do not provide a cognizable tort duty on which Plaintiffs can premise their negligence claims.  Because Plaintiffs have not identified any cognizable tort duty—either professional, generalized, or provided by statute or regulation—that could support its negligence claims, Plaintiffs' negligence and gross negligence claims should be dismissed.

II.     **PLAINTIFFS CANNOT PLEAD A NEGLIGENCE PER SE CLAIM.**

Under California law, negligence per se is not an independent cause of action. *See Quiroz v. Seventh Ave. Ctr.*, 45 Cal. Rptr. 3d 222, 243-44 (Ct. App. 2006).  It is simply an evidentiary presumption that informs the extent of a breach of a preexisting duty at common law and, as such, does not create a duty to serve as a basis for tort liability.  *See id.* at 245.  For the reasons stated above, Plaintiffs have failed to allege any cognizable tort duty that Robinhood owes to its customers.  Consequently, Plaintiffs' negligence per se claim (Compl. ¶¶ 299-303) necessarily fails.

A negligence per se claim also fails should Florida law apply.  Under Florida law, a negligence per se claim may be appropriate when there is a violation of a "statute which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury."  *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 353 (11th Cir. 2012) (quoting *DeJesus v. Seaboard Coast Line R.R.*, 281 So. 2d 198, 201 (Fla. 1973)).  But only a statute or rule for which there is a private right of action can serve as the basis of a negligence per se claim under Florida law.  *See Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1365-66 (S.D. Fla. 2015) ("Florida courts have refused to recognize a private right of action for negligence per se based on an alleged violation of a federal statute that does not provide for a private right of action.") (quoting *Stevens v. Danek Medical, Inc.*, 1999 WL 33217282, at *5-6 (S.D. Fla. 1999)); *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1229 (S.D. Fla. 2010) ("Plaintiffs cannot use negligence per se to create a private cause of action for alleged violations of [Florida state statutes] because the legislature has not demonstrated an intent to create a private cause of action under these sections.").  Because there are no private rights of action for violations of SEC regulations or NSCC rules regarding capitalization or for

violations of FINRA Rules, *see supra* Argument, Section I.C., Plaintiffs' negligence per se claim also fails under Florida law.  Therefore, Plaintiffs' negligence per se claim must be dismissed.

## III.     ROBINHOOD DOES NOT OWE ITS CUSTOMERS A FIDUCIARY DUTY.

To adequately plead a breach of fiduciary duty claim under California law, Plaintiffs must show (1) the existence of a fiduciary duty, (2) its breach, and (3) damage proximately caused by that breach.  *See Brown v. California Pension Administrators & Consultants, Inc*., 52 Cal. Rptr. 2d 788, 796 (Ct. App. 1996).  "The absence of any one of these elements is fatal to the cause of action."  *Id.*  Plaintiffs' claims fail here because they do not (and cannot) allege facts to support the conclusion that Robinhood owes any fiduciary duty.  As explained below, courts routinely hold that non-discretionary brokers that do not provide customers with investment advice, like Robinhood, do not owe a fiduciary duty.  Therefore, the two theories on which Plaintiffs base their claims—(i) where Plaintiffs could not place "buy" orders on the Robinhood platform for the Suspended Stocks, and (ii) where one named Plaintiff's pending trade order was canceled—do not give rise to a breach of fiduciary duty.  Plaintiffs' claims must be dismissed.

### A.     Robinhood Owed No Duty to Customer Plaintiffs To Make Its Brokerage Services Available For Any Specific Security At All Times.

Ten of the eleven "Robinhood Plaintiffs" allege a breach of fiduciary duty based on the inability of investors to submit purchase orders for the meme stocks on the Robinhood platform on January 28, 2021.  (*See* Compl. ¶¶ 24-64, 309-12.)  Specifically, these Plaintiffs allege that "[t]he 'buy' button was deactivated as a feature," which prevented Plaintiffs and other investors from purchasing the meme stocks on the Robinhood platform for a certain time, thereby allegedly "depress[ing] prices" of the meme stocks.  (*Id.* ¶¶ 12, 17, 221-22.)  However, as explained below, Robinhood owed no fiduciary (or other) duty to any customer to make its

brokerage services available for any particular security at all times.  Accordingly, Plaintiffs have no claim for breach of fiduciary duty because where there is no duty, there can be no breach.

Under California law, it is well settled that only securities brokers managing a discretionary account (*i.e.*, making trading decisions on their customers' behalf) or providing investment advice to their customers owe a fiduciary duty.  *See Petersen v. Sec. Settlement Corp.*, 277 Cal. Rptr. 468, 473 (Ct. App. 1991).  Where, as here, a relationship between a broker and a customer is "confined to the simple performance of transactions ordered by a customer"— and Plaintiffs (as they allege) on the morning of January 28 never placed an order to begin with because the "buy" button was disabled—a fiduciary duty "do[es] not arise."  *Id.* at 473; *see also Brown*, 52 Cal. Rptr. 2d at 795 (finding that a non-discretionary broker did not have "an expansive fiduciary relationship giving rise to a duty to notify the customer of the risky nature of an investment, or . . . of the poor performance of similar investments held by different customers"); *Apollo Capital Fund LLC v. Roth Capital Partners LLC*, 70 Cal. Rptr. 3d 199, 214 (Ct. App. 2007) (finding no fiduciary duty where the stockbroker was not an "adviser to the customer about investment decisions").[19]  By contrast, securities brokers that exercise *discretionary* control over a customer's account, or non-discretionary brokers who provide their customers with one-off investment advice, may owe fiduciary duties with respect to those services.  *See Twomey v. Mitchum, Jones & Templeton, Inc.*, 69 Cal. Rptr. 222, 242 (Ct. App. 1968) ("It is contended that the sole obligation of the broker-dealer is to carry out the stated

---

[19] Robinhood Securities, as the clearing broker, could not, by definition, owe any such duties.  *See Petersen*, 277 Cal. Rptr. at 473 (noting that "it would be unfair to impose upon [a clearing broker] disclosure duties which can only be performed by a broker with direct access to customers") (citations omitted).  The same holds under Florida law.  *See SFM Holdings, LLC*, 600 F.3d at 1338-39 ("[C]learing brokers ordinarily owe no fiduciary duty to the customers of introducing brokers."); *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 n.12 (11th Cir. 2002) (same).

objectives of the customer.  This may well be true when the broker is acting merely as [an] agent to carry out purchases or sales selected by the customer, with or without the broker's recommendation.  Here, however, there is evidence to sustain the finding that [the broker's] recommendations, as invariably followed, were for all practical purposes the controlling factor in the transactions."); *see also Petersen*, 277 Cal. Rptr. at 472 (noting that the duties described "in *Twomey* and *Duffy* are predicated expressly on evidence a broker's recommendation was the controlling factor in the customer's stock purchases," and concluding that those duties do not apply where the relationship is non-discretionary and the broker issues no investment advice).

Plaintiffs (like all customers) acknowledged when they signed the Customer Agreement that Robinhood serves as a non-discretionary broker.  (*See* Cust. Agmt. § 5.A.) Through the Customer Agreement, Plaintiffs (like all customers) agreed that all of the customer accounts are self-directed and that Robinhood neither provides investment advice nor recommends any securities, transactions or other orders to its customers.  Specifically, the Plaintiffs (like all customers), agreed:

> [N]either Robinhood nor any of its employees, agents, principals, or representatives (1) provide investment advice in connection with this Account; (2) recommend any security, transaction or order; (3) solicit orders; (4) act as a market maker in any security; (5) make discretionary trades; and (6) produce or provide first-party research providing [] specific investment strategies such as buy, sell or hold recommendations, first-party ratings and/or price targets.

(Cust. Agmt. § 5.A.)  Accordingly, Plaintiffs agree that Robinhood's "sole obligation . . . is to carry out the stated objectives of the customer"; as a result, Robinhood does not owe a fiduciary duty to its customers.  *Twomey*, 69 Cal. Rptr. at 242.  Because Robinhood's duties to its customers are transaction by transaction, Robinhood had no fiduciary duty to make its brokerage services available to customers for all securities at all times—which is the basis for Plaintiffs' complaint here that the "buy" button was unavailable for certain securities for a certain time,

31

which allegedly depressed the prices of those securities.  (Compl. ¶¶ 221-22.)  Holding otherwise

"would impose unjustifiably onerous burdens on [non-discretionary] brokers."  *Unity House, Inc.*

*v. N. Pac. Inv., Inc.*, 918 F. Supp. 1384, 1393 (D. Haw. 1996) (applying California law).

       The outcome would be the same under Florida law.  Courts applying Florida law

impose fiduciary duties on brokers only to the extent that such brokers provide investment

advice.  *See Gochnauer v. A.G. Edward & Sons, Inc.*, 810 F.2d 1042, 1049 & n.9 (11th Cir.

1987) ("The discretionary account is when the broker has a continuous obligation to manage the

account; a nondiscretionary account was *defined as an account where the customer and broker*

*confer as to a particular transaction* but the broker has no continuing management duty over the

account once the single transaction is complete." (emphasis added) (citing *Leib v. Merrill Lynch,*

*Pierce, Fenner & Smith, Inc.*, 461 F. Supp. 951, 952-53 (E.D. Mich. 1978)).  Under *Gochnauer*,

"the focus of the inquiry is how the fiduciary acted in his selection of the investment."  *Id.* at

1050.  Moreover, authorities on which Florida courts rely emphasize that "[i]n a non-

discretionary account each transaction is viewed singly" and that "duties to the customer cease

when the transaction is closed."  *Leib*, 461 F. Supp. at 952-53.  As stated above, Plaintiffs (and

all customers) acknowledge that Robinhood does not provide any advice, nor does it confer with

its customers concerning their trades.  (*See* Cust. Agmt. § 5.A.)  Additionally, Plaintiffs

themselves allege that on the morning of January 28 they did not engage in a transaction,

because they were unable to place "buy" orders.  As a result, Robinhood does not owe a

fiduciary duty to its customers.

       Furthermore, Plaintiffs cannot, as a matter of law, support a claim for breach of

fiduciary duty under either California or Florida law by asserting that customers "are using

Robinhood to enter the financial markets for the first time."  (Compl. ¶ 101 (quoting Robinhood

S-1 at 173).)  Plaintiffs fail to plead any special repose or confidential relationship that customers place with Robinhood to justify imposing a fiduciary duty.  *See Apollo Capital Fund*, 70 Cal. Rptr. 3d at 214-15 (dismissing fiduciary duty claim and requiring plaintiff to plead he "developed a confidential relationship" with the broker, who "was an adviser to the customer about investment decisions"); *SFM Holdings*, 600 F.3d at 1339 (affirming dismissal of fiduciary duty claims because "the fiduciary is the party who . . . provides investment advice to the customer," and the existence of a fiduciary duty is determined by the "substantive agreement of the parties," not the "labels placed on the relationship").

In an attempt to plead around the well-settled rule that non-discretionary brokers do not owe fiduciary duties to their customers, Plaintiffs point to a provision in the Customer Agreement concerning in-the-money options that were about to expire, which are irrelevant to the claims in this case.  Plaintiffs assert that Robinhood's fiduciary duty "is informed, in part, by the fact that Robinhood Securities and Robinhood Financial retain the discretion to execute certain transactions within its customers' accounts without specific customer approval."  (Compl. ¶ 306.)  That provision reads, in relevant part:

> If My Account has an option position on the last trading day prior to expiration, which is one cent or more in the money, Robinhood Financial will generally exercise the option, on My behalf. However, Robinhood Financial reserves the right at Its discretion to close any option prior to expiration date or any position resulting from the exercising/assignment after option expiration.  I will be charged a commission for any such transaction.

(*Id.*; Cust. Agmt. § 5.E.).  The plain text of this provision shows it does not confer unfettered discretionary control to Robinhood and cannot serve as the basis to impose a general fiduciary

duty on Robinhood.  Indeed, the provision simply tracks Options Clearing Corporation ("OCC") rules.[20]

Moreover, this provision is wholly irrelevant to Plaintiffs' claims—Plaintiffs do not bring any claims based on Robinhood's exercise of in-the-money options on the last trading day prior to expiration on behalf of, and inuring to, a customer's benefit.  To the extent Robinhood acts based on this provision (which Plaintiffs do not allege), its duty "arises when the client places an order and terminates when the transaction ordered is complete."  *Caravan Mobile Home Sales, Inc. v. Lehman Bros. Kuhn Loeb*, 769 F.2d 561, 567 (9th Cir. 1985); *Gochnauer*, 810 F.2d at 1049.  No such transaction—and, accordingly, no such duty—has arisen here.  This provision therefore has no bearing on whether Robinhood owed Plaintiffs a fiduciary duty when (as they allege in the Complaint) they could not place buy orders because the "buy" button was disabled.  Robinhood owed no such fiduciary duty.

**B.      Robinhood Also Owed No Duty to Plaintiff Moody for Canceled Orders.**

Plaintiff Moody separately alleges that Robinhood breached its fiduciary duty to her by canceling a previously confirmed stock purchase order that she had placed.  She alleges that she placed a stock purchase order on the evening of January 27, to be executed the following day, and Robinhood canceled the order before the market opened on the morning of January 28. (*See* Compl. ¶¶ 67-69, 223-24.)  To the extent that Robinhood owed any duty to execute Moody's trade order, such a duty arose under agency law.  *Caravan*, 769 F.2d at 567 ("A

---

[20] *See* OCC Rule 1305(c), 805(b) & (d)(2) (Aug. 23, 2021), *available at* https://www.theocc.com/getmedia/9d3854cd-b782-450f-bcf7-33169b0576ce/occ_rules.pdf; *cf. Misabec Mercantile, Inc. De Panama v. Donaldson, Lufkin & Jenrette ACLI Futures, Inc.*, 853 F.2d 834, 837 (11th Cir. 1988) (a commodities broker's decision to liquidate a customer's account when the customer could not meet a margin call was insufficient to serve as a basis for a breach of contract or breach of fiduciary duty claim, and defendants were merely acting within their rights under the applicable commodities exchange rule and customer agreement provision).

stockbroker is an agent of his client.").  It is clearly established, however, that the duties owed by the agent (Robinhood) to the principal (Moody) are "limited to the scope of the agency set forth in the agreement." *Meyers v. Guar. Sav. & Loan Ass'n*, 144 Cal. Rptr. 616, 620 (Ct. App. 1978); *Carleton v. Tortosa*, 17 Cal. Rptr. 2d 734, 740 (Ct. App. 1993) (same).

As set forth above, the Customer Agreement (to which Plaintiff Moody agreed) provides that, "Robinhood may at any time, in its sole discretion and without prior notice to Me, *prohibit or restrict My ability to trade securities.*"  (Cust. Agmt. § 5.F (emphasis added).)  The Customer Agreement further provides that, "Robinhood may at any time, at its sole discretion and without prior notice to Me . . . (ii) refuse to accept any of My transactions, [or] (iii) refuse to execute any of My transactions."  (*Id.* § 16.)  Because the Customer Agreement expressly permitted—and Plaintiffs expressly agreed—that Robinhood could restrict or cancel trades, Robinhood acted within the scope of its agency with its customers, and Plaintiff Moody's claims fail as a result.

Applying Florida law would yield the same result, because "[u]nder Florida law, a cause of action for breach of fiduciary duty will not lie where the claim of breach is dependent upon the existence of a contractual relationship between the parties." *Detwiler v. Bank of Cent. Fla.*, 736 So. 2d 757, 759 (Fla. 5th DCA 1999); *see also Hallock v. Holiday Isle Resort & Marina, Inc.*, 4 So. 3d 17, 21 (Fla. 3d DCA 2009) (holding that conduct that is permitted under the contract "cannot form the basis for a breach of fiduciary duty claim"); *Misabec Mercantile*, 853 F.2d at 839 (holding where a broker "carrie[s] out its preexisting, agreed upon tasks properly . . . , [it] forecloses [a] breach of fiduciary duty claim.").  The Court did not have occasion to consider this critical point in *Pinchasov v. Robinhood Financial LLC* because it was unable to incorporate the Robinhood Customer Agreement by reference.  (*See* Order Denying Motion to

35

Dismiss, *Pinchasov v. Robinhood Financial LLC*, No. 20-cv-24897-CMA (S.D. Fla.) ECF No. 48 at 5-6.)  Here, as stated above, Plaintiffs' reference to the Customer Agreement, the centrality of the agreement to Plaintiffs' claims and the Agreement's undisputed authenticity require the Court to consider the terms of the contract.  (*See supra* Legal Standards, Section II.)  The terms of the agency relationship in the Customer Agreement supplant any purported tort duty Robinhood may have owed to Plaintiff Moody to execute her trades.

## IV.    ROBINHOOD OWES NO DUTIES TO NON-ROBINHOOD CUSTOMERS—ALL CLAIMS BROUGHT BY NON-ROBINHOOD CUSTOMERS THEREFORE FAIL.

Plaintiffs further bring their negligence and fiduciary duty claims against Robinhood on behalf of a putative "Nationwide Investor Class," which includes at least two named Plaintiffs who are not customers of Robinhood—Plaintiff Erik Chavez, who used Webull Financial LLC as his introducing broker and Apex as his clearing broker, and Plaintiff Peter Jang, who used Ally Invest Securities as his introducing broker and Apex as his clearing broker. (Compl. ¶¶ 71, 75, 285, 286, 293, 294, 300, 305, 309.)  These claims fail because—in addition to the grounds for dismissal set forth above in Sections I to III—Robinhood does not owe non-Robinhood customers any duties.

### A.    The Negligence-Based Claims on Behalf of Non-Robinhood Customers Fail Because Robinhood Does Not Owe Them a Duty.

Non-Robinhood customers cannot recover under any negligence theory against Robinhood.  Assuming, *arguendo*, that Florida law would apply to such plaintiffs' claims,[21] Robinhood does not owe them a generalized duty of care for the reasons set forth above (*see*

---

[21] Robinhood takes no position on which state's law would apply to any non-Robinhood customer's claims.  However, Robinhood acknowledges that non-Robinhood customers would not be bound to the contractual choice-of-law provision, which applies California law, that governs Robinhood customers' claims.  (*See supra* Legal Standards, Section II.)

Argument, Section I.B).  Additionally, even if Robinhood did owe tort duties to its customers—it does not—Robinhood still would not owe tort duties to non-Robinhood customers with whom it has no relationship whatsoever.  To conclude otherwise would defy longstanding principles that an actor does not owe a tort duty with respect to economic losses in instances where there is no "link between the parties" and there is no "other extraordinary circumstance" that would justify imposition of a duty.  *See Tank Tech*, 244 So. 3d at 393.  Robinhood had no preexisting relationship with Plaintiffs Chavez and Jang, knew nothing about what securities they bought or sold, and indeed had no reason to know of their existence.  Therefore, Plaintiffs' negligence-based claims fail to the extent that they are brought by or on behalf of non-Robinhood customers.

**B.**   **Robinhood Does Not Owe a Fiduciary Duty to Non-Robinhood Customer Investors.**

Assuming again, *arguendo*, that Florida law applies, Plaintiffs do not adequately allege a fiduciary relationship between Robinhood and non-Robinhood customers, either.  To suggest that Robinhood, or any broker for that matter, owes a fiduciary duty to all persons trading in securities in the United States is absurd.  Under Florida law, "a fiduciary relationship . . . exist[s] between persons when one is under a duty to act for or give advice for the benefit of another upon matters within the scope of the relationship.  Further, one in such a fiduciary relationship is subject to legal responsibility for harm flowing from a breach of fiduciary duty imposed by the relationship."  *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002) (internal citations omitted).

No such relationship exists between Robinhood and non-Robinhood customers.  Plaintiffs' allegation that Robinhood "owed a fiduciary duty of care, loyalty and good faith" to non-customer plaintiffs "by virtue of, among other things, being provider of financial services and a registered securities investment broker-dealer" (Compl. ¶ 305) does not establish any

relationship between Robinhood and non-customer investors at large.  Therefore, Plaintiffs' fiduciary duty claim fails to the extent that it is brought by non-Robinhood customers.

## V.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.

The Court should dismiss Plaintiffs' Complaint with prejudice.  Plaintiffs have had months to consider their arguments and legal theories against Robinhood since the first complaints were filed at the end of January 2021.  Unlike the vast majority of plaintiffs at the pleading stage, Plaintiffs have had the opportunity to review thousands of pages of internal Robinhood communications and documents regarding the facts and issues in this case.  Indeed, Plaintiffs received a two-week extension of the deadline to file the Complaint so they could have more time to review and incorporate those documents into their Complaint.  (*See* ECF No. 335.)  With all of these considerations in their favor, Plaintiffs still have failed to state a claim on which relief can be granted, and any further amendment would be futile.  Therefore, Robinhood respectfully submits that this Action should be dismissed with prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, Robinhood respectfully submits that the Consolidated Robinhood/Other Broker Class Action Complaint should be dismissed with prejudice as to Robinhood for failure to state a claim.

Dated:  August 30, 2021

_/s/ Samuel A. Danon_

**HUNTON ANDREWS KURTH LLP**
Samuel A. Danon (FBN 892671)
Gustavo Javier Membiela (FBN 513555)
María Castellanos Alvarado (FBN 116545)
333 S.E. 2 Avenue, Suite 2400
Miami, FL 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460
sdanon@huntonak.com
gmembiela@huntonak.com
mcastellanos@hunton.com

**CRAVATH, SWAINE & MOORE LLP**
Antony L. Ryan
Kevin J. Orsini
Brittany L. Sukiennik
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
aryan@cravath.com
korsini@cravath.com
bsukiennik@cravath.com

_Counsel for Defendants Robinhood Markets,
Inc., Robinhood Financial LLC and
Robinhood Securities, LLC_

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 30, 2021, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF.  I further certify that the

foregoing document is being served this day on all counsel of record via transmission of Notices

of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel

or parties who are not authorized to receive Notices of Electronic Filing.


Dated:  August 30, 2021                                    */s/ Samuel A. Danon*
                                                       Samuel A. Danon (FBN 892671)