UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-2989-MDL-ALTONAGA/Torres

In re:

**JANUARY 2021 SHORT SQUEEZE
TRADING LITIGATION**

_____/

This Document Relates to the Federal Securities Actions

## ORDER

**THIS CAUSE** came before the Court on Movants, Abe Kurdi and Teodoro Russell Pueyrredon's Motion to Appoint Lead Plaintiffs and Approve Their Selection of Lead Counsel ("Kurdi and Pueyrredon's Motion") [ECF No. 365]; and Movant, Blue Laine-Beveridge's Motion to: (1) Appoint Lead Plaintiff; and (2) Approve Selection of Lead Counsel ("Laine-Beveridge's Motion") [ECF No. 366].[1] The Court has carefully considered the Motions, the parties' responsive filings,[2] the attached exhibits, and applicable law.  For the following reasons, Kurdi and Pueyrredon's Motion is denied, and Laine-Beveridge's Motion is granted.

### I.   BACKGROUND[3]

This litigation involves allegations against Defendants, Robinhood Financial LLC, Robinhood Securities LLC, and Robinhood Markets, Inc. (collectively, "Robinhood") for violations of the Securities Exchange Act of 1934.  Robinhood is a brokerage firm that offers self-

---

[1] Citations to Kurdi and Pueyrredon's Motion will appear as "K&P Mot.," and citations to Laine-Beveridge's Motion will appear as "BLB Mot."

[2] Kurdi and Pueyrredon filed an Opposition to Laine-Beveridge's Motion [ECF No. 377], to which Laine-Beveridge filed a Reply [ECF No. 386].  Laine-Beveridge filed an Opposition to Kurdi and Pueyrredon's Motion [ECF No. 378], to which Kurdi and Pueyrredon filed a Reply [ECF No. 385].

[3] This summary is drawn from the various Complaints in the federal securities actions.  For a full list of those actions, see footnote 3.

directed stock trading services to customers via its website and mobile application. In January 2021, retail investors began purchasing large numbers of shares of certain heavily shorted stocks, which dramatically increased share prices and led to a "short squeeze." Many retail investors used the Robinhood platform to buy and sell shares of the affected securities.

As a result of increased share prices and the threat of greater losses, short holders began closing their short positions to prevent further losses and purchasing shares in the event brokers required the shares to be returned. These actions further drove up the share prices of the affected securities. In turn, Robinhood was required to post increasingly high amounts of collateral to cover the transactions being processed through its clearinghouse.

Faced with such high demands for collateral, on January 28, 2021, Robinhood chose to restrict trading on the affected securities on its platform. Specifically, Robinhood restricted its users from purchasing any more shares of the affected stocks, instead only allowing them to sell or close their positions. Consequently, the share prices of the affected securities dropped dramatically, and individual retail investors suffered significant losses.

Eleven different putative class actions were brought against Robinhood for these alleged violations of the Securities Exchange Act.[4] These suits have since been consolidated into this multi-district litigation, along with numerous other cases asserting other causes of action.

---

[4] These actions are: *Daniels v. Robinhood Financial, LLC, et al.*, No. 21-cv-21261 (filed Jan. 28, 2021); *Days v. Robinhood Markets, Inc., et al.*, No. 21-cv-21310 (filed Jan. 28, 2021); *Diamond v. Robinhood Financial, LLC, et al.*, No. 21-cv-21263 (filed Jan. 29, 2021); *Lagmanson et al. v. Robinhood Markets, Inc., et al.*, No. 21-cv-21298 (filed Jan. 29, 2021); *Gossett et al. v. Robinhood Financial, LLC, et al.*, No. 21-cv-21293 (filed Jan. 29, 2021); *Muncy v. Robinhood Securities, LLC, et al.*, No. 21-cv-21307 (filed Feb. 2, 2021); *Krumenacker v. Robinhood Financial LLC, et al.*, No. 21-cv-21343 (filed Feb. 2, 2021); *Kadin v. Robinhood Financial LLC, et al.*, No. 21-cv-21511 (filed Mar. 25, 2021); *Quat et al. v. Robinhood Financial, LLC, et al.*, No. 21-cv-21404 (filed Apr. 12, 2021); *Best et al. v. Robinhood Financial, LLC, et al.*, No. 21-cv-21534 (filed Apr. 21, 2021); and *Carrasco v. Robinhood Financial LLC, et al.*, No. 21-cv-22702 (filed May 25, 2021).

Of the federal securities actions, the plaintiff in *Muncy* was the first to publish notice to the class on February 2, 2021, instructing interested class members that they had until April 5, 2021 within which to petition the Court to be appointed lead plaintiff. On May 17, 2021, the Court denied competing motions for appointment of lead plaintiff and lead counsel and directed that notice be amended and republished, after which the Court would entertain motions for lead plaintiff filed within the renewed 60-day application period. (*See generally* May 17, 2021 Order [ECF No. 307]). Notice was republished on May 28, 2021, instructing interested class members they had until July 27, 2021 to petition the Court to be appointed lead plaintiff. (*See* Notice [ECF No. 321] 3–4).[5] The instant Motions followed.

## II. DISCUSSION

**A. Selection of Lead Plaintiff**

Motions for appointment as lead plaintiff are governed by the Securities Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The PSLRA requires that after a complaint is filed, notice be published informing putative class members of their right to move for appointment as lead plaintiff within 60 days of the notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)–(ii). The court is then tasked with considering all such motions and selecting a lead plaintiff that the court "determines to be most capable of adequately representing the interests of class members[.]" *Id.* § 78u-4(a)(3)(B)(i)–(ii) (alteration added).

The PSLRA creates a presumption "that the most adequate plaintiff . . . is the person or group of persons that":

---

The *Diamond* and *Kadin* actions have since been voluntarily dismissed. (*See* [ECF Nos. 214, 271–72]). There is also one other suit asserting federal securities claims, *see Eisen v. Apex Clearing Corp., et al.*, No. 21-cv-21665 (filed Apr. 30, 2021), but it does not state any claims against Robinhood.

[5] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

3

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I) (alterations added); *see also In re Oxford Health Plans, Inc. Secs. Litig.*, 182 F.R.D. 42, 43–44 (S.D.N.Y. 1998) (explaining the goal of the PSLRA is to ensure that "parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs['] counsel." (alteration added; citation and quotation marks omitted)). This presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff" either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Each of the proposed lead plaintiffs made a timely motion in response to the May 28, 2021 Notice. The Court therefore turns to the questions of which proposed lead plaintiff has the largest financial interest and whether that plaintiff will fairly and adequately represent the class.

### 1. Largest Financial Interest

Given the PSLRA's framework, the person(s) or entity with the greatest financial interest generally enjoys the rebuttable presumption that he, she, or it is the most adequate plaintiff to serve as lead plaintiff. *See Kornfield v. Opteum Inc.*, No. 07-14278-Civ, No. 07-14305-Civ, 2008 WL 11408525, at *3 (S.D. Fla. Sept. 29, 2008) ("[T]he most important factor in determining the lead plaintiff is the amount of financial interest claimed." (alteration added; citations omitted)); *Montesano v. Eros Int'l PLC*, No. 19-14125, No. 19-14445, No. 19-18547, 2020 WL 1873015, at

4

\*2 (D.N.J. Apr. 14, 2020) (same). To determine which proposed lead plaintiff has the largest financial interest, the Court considers (1) the number of shares purchased during the class period, (2) the amount of the investment or net funds expended during the class period, and (3) the estimated losses suffered. *See Miller v. Dyadic Int'l, Inc.*, No. 07-80948-Civ, 2008 WL 2465286, at \*3 (S.D. Fla. Apr. 18, 2008) (citation omitted). Most courts accord the third factor, the estimated losses, the greatest weight. *See Montesano*, 2020 WL 1873015, at \*3 (citation omitted); *Kornfield*, 2008 WL 11408525, at \*4 (focusing on the applicants who suffered the greatest loss); *Malriat v. QuantumScape Corp.*, No. 3:21-cv-00058, No. 3:21-cv-00070, No. 3:21-cv-00150, 2021 WL 1550454, at \*3 (N.D. Cal. Apr. 20, 2021) (collecting cases).

Laine-Beveridge claims to have suffered a net loss of $122,383.49 on 60,128 shares of the affected securities because of Defendants' allegedly unlawful conduct, with a total investment of $448,735.79. (*See* BLB Mot. 9; Rosen Decl., Ex. 3, Loss Chart [ECF No. 366-4]). By contrast, Kurdi and Pueyrredon claim combined maximum losses of only $16,239.70 on a total of approximately 727.08 of the affected securities, with a total investment of $27,268.27. (*See* K&P Mot. 12–13; Westcot Decl., Ex. A, PSLRA Certs. [ECF No. 365-2] 6, 9). Critically, Kurdi and Pueyrredon acknowledge they do not have the largest financial interest compared to Laine-Beveridge. (*See* K&P Opp'n 11; K&P Reply 10). Therefore, the Court finds that Laine-Beveridge has the largest financial interest of the potential lead plaintiffs.[6]

---

[6] Kurdi and Pueyrredon calculate their losses under the class definitions crafted by their proposed lead counsel, Bursor & Fisher (who filed the *Quat* action), and Laine-Beveridge's proposed lead counsel, the Rosen Law Firm (who filed the *Muncy* action). (*See* K&P Mot. 12). Because Laine-Beveridge has the greatest financial interest under either class definition, the Court need not select which is more appropriate for purposes of appointing a lead plaintiff. Even using the greater estimate of Kurdi and Pueyrredon's losses, Laine-Beveridge's financial interest still far exceeds that of Kurdi and Pueyrredon.

### 2. Typicality & Adequacy

To earn the presumption of being the most adequate lead plaintiff, Laine-Beveridge must also make a "sufficient preliminary showing" that he satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23. *Luczak v. Nat'l Beverage Corp.*, No. 18-cv-61631, 2018 WL 9847842, at *2 (S.D. Fla. Oct. 12, 2018) (quotation marks and citations omitted); *see Miller*, 2008 WL 2465286, at *6 ("Of [Rule 23's] prerequisites, only two — typicality and adequacy — are relevant in deciding a motion for appointment of lead plaintiff." (alteration added; citations omitted)).

Typicality is met where the proposed lead plaintiff's claims share the "same essential characteristics as the claims of the class at large." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 n.14 (11th Cir. 2000) (emphasis, quotation marks, and citation omitted). In other words, the claims and facts need not be identical; instead, "[a] sufficient nexus is established if the claims or defenses of the class and the [proposed lead plaintiff] arise from the same event or pattern or practice and are based on the same legal theory." *Luczak*, 2018 WL 9847842, at *2 (alterations added; quotation marks and citation omitted). In assessing adequacy, courts consider "(1) whether any substantial conflicts of interest exist between the [presumptive lead plaintiff] and the class; and (2) whether the [presumptive lead plaintiff] will adequately prosecute the action." *Phillips v. Churchill Cap. Corp. IV*, No. 1:21-cv-00539, 2021 WL 4220358, at *3 (N.D. Ala. Sept. 16, 2021) (alterations added; quotation marks and citation omitted).

Laine-Beveridge has made a sufficient preliminary showing that his claims are typical of the class. Like the other putative class members, Laine-Beveridge contends he purchased shares of the affected securities on the Robinhood platform; owned shares of the affected securities at the time Robinhood restricted trading of those securities on its platform; and suffered damages as a

result. Additionally, Laine-Beveridge is an experienced investor with a large financial interest in the action. He is willing to serve as lead plaintiff and vigorously prosecute the action and has selected counsel well-versed in securities litigation. Finally, there is no indication that Laine-Beveridge's interests are antagonistic to the interests of the other putative class members. Consequently, the Court finds Laine-Beveridge is presumptively the most adequate lead plaintiff.

### 3. Rebutting the Presumption

To successfully rebut this presumption, Kurdi and Pueyrredon must present "proof" that Laine-Beveridge either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Kurdi and Pueyrredon assert that Laine-Beveridge is subject to unique defenses and will not adequately protect the interests of the class because he realized a gain on his AMC shares during the class period rather than a loss. Specifically, they point out that Laine-Beveridge lacks standing to represent purchasers of AMC stock and is not even a class member as it relates to AMC stock. Kurdi and Pueyrredon further argue the profit Laine-Beveridge turned on his AMC shares renders his claims atypical of the class and makes him less likely to vigorously represent AMC investors. (*See* K&P Opp'n 8–11; K&P Reply 8–10).

The Court first dispenses with Kurdi and Pueyrredon's assertion that Laine-Beveridge's AMC profit precludes his membership in the class as defined in the *Muncy* complaint filed by the Rosen Law Firm and makes him atypical of the putative class. (*See* K&P Opp'n 8–9). Kurdi and Pueyrredon cite no authority — and the Court is aware of none — supporting the proposition that loss must be measured with respect to each individual affected security or by each separate transaction. To the contrary, courts routinely calculate loss in such situations by *net loss* — i.e., by offsetting losses by any profits earned during the class period as a result of the same alleged

7

securities violations. *See, e.g.*, *Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1259–60 (11th Cir. 2014) ("[A]n investor who suffers no *net losses* thanks to sales during the class period is subject to an atypical standing defense," but an investor who suffers a net loss despite making some gains is an adequate and typical class representative. (alteration and emphasis added; citation omitted)); *Cambridge Ret. Sys. v. Mednax, Inc.*, No. 18-61572-Civ, 2018 WL 8804814, at *6 (S.D. Fla. Dec. 6, 2018) (recognizing that "several circuit courts of appeal already ha[ve] adopted a damages model that require[s] plaintiffs' losses to be netted against profits attributable to the same fraud" because it is the "most accurate and realistic way" to measure economic loss (alterations added; citations, quotation marks, and footnote call number omitted)), *report and recommendation adopted*, 2018 WL 6978626 (S.D. Fla. Dec. 21, 2018); *Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 129 (D.D.C. 2017) (explaining the inquiry "focuses on the lead plaintiff's overall experience with the stock" and certifying a class with a lead plaintiff who suffered an overall loss despite making a small profit on some trades); *cf. In re Bausch & Lomb Inc. Secs. Litig.*, 244 F.R.D. 169, 173–74 (W.D.N.Y. 2007) (collecting cases holding that applicants who experience a *net gain* during the class period are ineligible for appointment to lead plaintiff position). So long as the presumptive lead plaintiff has suffered damage by incurring a net loss, he is undoubtedly a class member. *Cf. In re HealthSouth Corp. Secs. Litig.*, 261 F.R.D. 616, 649 (N.D. Ala. 2009) ("If an investor cannot prove damage, it is not a class member by definition.").

Moreover, turning a profit on a few isolated transactions during a given class period is hardly atypical. *See Howard*, 322 F.R.D. at 129 ("[The presumptive lead plaintiff's] small profit, . . . while suffering an overall loss, is a minor factual variation that does not defeat typicality." (alterations added)); *Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261, 268 (S.D.N.Y.

2014) (concluding that plaintiff's profit on certain transactions did not defeat typicality and was perhaps not "relevant at all"); *Tsereteli v. Residential Asset Securitization Tr. 2006-A8*, 283 F.R.D. 199, 208 (S.D.N.Y. 2012) ("[A] finding of typicality would not be precluded even if certain plaintiffs are unable to demonstrate that they would recover *any* damages with respect to certain [securities]." (alteration added; emphasis in original; citations and footnote call number omitted)). "[O]ther class members may very well have booked a profit on particular trades or during particular time periods, even if they suffered overall losses." *Howard*, 322 F.R.D. at 130 (alteration added). Thus, despite realizing a gain on his AMC shares, Laine-Beveridge is plainly a typical class member because he suffered a net loss.

Kurdi and Pueyrredon further submit Laine-Beveridge's AMC profit would subject him to a unique defense because it means he likely lacks standing to represent purchasers of AMC stock.[7] As Laine-Beveridge points out, this is a curious argument for Kurdi and Pueyrredon to make as they, too, lack standing with respect to some of the affected securities. (*See* BLB Reply 6). In any event, PSLRA lead plaintiffs commonly do not have standing to sue on every claim; the proper solution is to simply add additional named plaintiffs. *See In re HealthSouth*, 261 F.R.D. at 648 ("Inevitably, in cases where a lead plaintiff has been selected under the requirements of the PSLRA, a lead plaintiff may not have standing to sue on every available claim. In such cases, as here, additional named plaintiffs may be needed to aid the lead plaintiff in representing the class." (citations omitted)); *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82–83 (2d Cir. 2004) ("Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action. Rather, [given the PSLRA's lead plaintiff framework], it is inevitable

---

[7] Neither Laine-Beveridge's AMC gains nor his lack of standing for AMC claims subjects him to a "unique" defense. It is hardly unusual to realize a gain on particular transactions, *see Howard*, 322 F.R.D. at 130; and it is unlikely that most class members would have standing to sue on every claim, such as by investing in and suffering losses on all of the affected securities.

9

that, in some cases, the lead plaintiff will not have standing to sue on every claim. . . . Moreover, the PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class." (alterations added; citations and footnote call number omitted)); *Grand Lodge of Pa. v. Peters*, 560 F. Supp. 2d 1270, 1273 (M.D. Fla. 2008) (permitting the addition of a named plaintiff to bring a claim the lead plaintiff lacked standing to bring); *see also In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98-cv-4318, 2000 WL 1357509, at *3 (S.D.N.Y. Sept. 20, 2000) ("Courts have repeatedly held that . . . class representatives need not have invested in each [of the subject] securit[ies] so long as the plaintiffs have alleged a single course of wrongful conduct with regard to each security." (alterations added)). That Laine-Beveridge potentially lacks standing with respect to one of the affected securities does not rebut the presumption that he is the most adequate lead plaintiff.

Finally, Kurdi and Pueyrredon argue that Laine-Beveridge is less likely to vigorously pursue claims related to AMC because he experienced a gain on that stock rather than a loss. This argument fails for two reasons. First, it is mere speculation, which is insufficient to challenge adequacy. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (requiring a class member to present "proof" to rebut lead plaintiff presumption); *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324–25 (S.D.N.Y. 2004) ("[C]onclusory assertions of inadequacy are, however, insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence[.]" (alterations added; citation omitted)); *Sofran v. LaBranche & Co., Inc.*, 220 F.R.D. 398, 404 (S.D.N.Y. 2004) (rejecting argument that presumptive lead plaintiff was inadequate where competing movant "provided no proof, as required by the PSLRA," and instead offered "only speculation").

Second, a potential lead plaintiff has a "reduc[ed] [] incentive to litigate" only where he has "profited more from the fraud than [he] has been injured[.]" *In re Bausch & Lomb*, 244 F.R.D.

at 174 (alterations added; emphasis, citation, and quotation marks omitted). As discussed, Laine-Beveridge did not profit more from Defendants' alleged misconduct than he lost. Quite the opposite: even taking his small profit into account, Laine-Beveridge lost significantly more than Kurdi and Pueyrredon combined. He, therefore, has a substantial incentive to vigorously litigate this action, and he has attested that he is willing to do so on behalf of all putative class members. Indeed, because Laine-Beveridge alleges that both his and the class's losses arise from a "common course of conduct, [he] ha[s] a sufficient incentive to fully develop the facts[.]" *In re Dreyfus Aggressive Growth*, 2000 WL 1357509, at *10 (alterations added; citation and quotation marks omitted). Kurdi and Pueyrredon's assertion otherwise is wholly unfounded.

For these reasons, the Court finds Kurdi and Pueyrredon have failed to rebut the presumption in favor of Laine-Beveridge. Therefore, Laine-Beveridge must be appointed Lead Plaintiff in this action.[8]

**B.     Selection of Lead Counsel**

The PSLRA grants authority to the lead plaintiff to "select and retain counsel to represent the class[,]" subject to the Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v) (alteration added). "The district court should generally employ a deferential standard in reviewing the lead plaintiff's choice[]." *Einhorn v. AxoGen, Inc.*, No. 8:19-cv-69, 2019 WL 5636382, at *3 (M.D. Fla. Apr. 30, 2019) (alteration added; citations and quotation marks omitted). The Court should not interfere

---

[8] Because Laine-Beveridge satisfies each of the requirements for appointment as lead plaintiff, the Court need not — and cannot — evaluate Movants' competing arguments regarding the typicality and adequacy of Kurdi and Pueyrredon. *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("Nor does the [PSLRA] authorize the district judge to examine the relative merits of plaintiffs seeking lead status on a round-robin basis. The statutory process is sequential: The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order *if and only if* the presumptive lead plaintiff is found inadequate or atypical." (alteration and emphasis added)).

with the lead plaintiff's selection of counsel unless necessary to "protect the interests of the class[.]" 15 U.S.C. § 78u-4(a)(3)(B)(iii)((II)(aa) (alteration added).

Laine-Beveridge has selected the Rosen Law Firm to serve as Lead Counsel. The Rosen Law Firm has extensive experience in prosecuting securities actions, as detailed in the firm's resumé (*see generally* Rosen Decl., Ex. 4, Rosen Law Firm Biography [ECF No. 366-5]); and is well qualified to represent the class. *See, e.g.*, *In re Tupperware Brands Corp. Secs. Litig.*, No. 6:20-cv-357, 2020 WL 3259749, at *3 (M.D. Fla. May 27, 2020) ("The Court finds the proposed class counsel from [] the Rosen Law Firm . . . are well-credentialed, have significant securities litigation experience, and should serve as effective representation for the entire class[.]" (alterations added)); *Thorpe v. Walter Inv. Mgmt. Corp.*, No. 1:14-cv-20880, 2016 WL 10518902, at *9 (S.D. Fla. Oct. 17, 2016) ("[The Rosen Law Firm] has developed a reputation for zealous advocacy in securities class actions." (alteration added; citations omitted)). There has been no information presented to the contrary. The Court thus approves Laine-Beveridge's selection of the Rosen Law Firm as Lead Counsel.

### III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Movants, Abe Kurdi and Teodoro Russell Pueyrredon's Motion to Appoint Lead Plaintiffs and Approve Their Selection of Lead Counsel **[ECF No. 365]** is **DENIED**; and Movant, Blue Laine-Beveridge's Motion to: (1) Appoint Lead Plaintiff; and (2) Approve Selection of Lead Counsel **[ECF No. 366]** is **GRANTED**.

2. Pursuant to 15 U.S.C. § 78u-4(a)(3)(B), Blue Laine-Beveridge is appointed to serve as Lead Plaintiff in this action, and the Rosen Law Firm is approved as Lead Counsel.

3. Lead Counsel will be responsible for coordinating pretrial proceedings. Lead Counsel

will have the following responsibilities:

    a. fulfilling any and all responsibilities designated by the Court;

    b. determining (after such consultation with members of Plaintiffs' Steering Committee and other counsel of record as may be appropriate) and presenting (in briefs, oral argument, or such other fashion as may be appropriate, personally or by a designee) to the Court and opposing parties the position of Plaintiffs on all matters arising during pretrial proceedings;

    c. coordinating the initiation and conduct of discovery on behalf of Plaintiffs consistent with the requirements of Federal Rules of Civil Procedure 26(b)(1), 26(2), and 26(g), the preparation of joint interrogatories and requests for production of documents, and the examination of witnesses in depositions;

    d. coordinating settlement discussions or other dispute resolution efforts on behalf of Plaintiffs, but not entering binding agreements except to the extent expressly authorized;

    e. delegating specific tasks to other counsel of record in a manner to ensure that pretrial preparation is conducted effectively, efficiently, and economically; scheduling deadlines are met; and unnecessary expenditures of time and expense are avoided;

    f. encouraging full cooperation and efficiency among all Plaintiffs' counsel;

    g. convening meetings of the Steering Committee as necessary for the purpose of proposing joint action and discussing and resolving matters of common concern;

    h. entering into stipulations with opposing counsel necessary for the conduct of

    the litigation;

  i. preparing and distributing periodic status reports to the parties;

  j. maintaining adequate time and disbursement records covering service of designated counsel and establishing guidelines as to the keeping of time records and expenses;

  k. briefing and arguing motions for Plaintiffs and filing opposing briefs and arguing motions and proceedings initiated by other parties (except as to matters specifically directed to individual Plaintiffs) or designating the appropriate counsel to carry out these tasks; and

  l. performing such other duties as may be incidental to the proper coordination of Plaintiffs' pretrial activities in the Federal Securities Tranche.

4. All communications with the Court with respect to the federal securities actions must be through Lead Counsel. If circumstances require direct communication with the Court by other counsel of record, copies of any such communications must simultaneously be served on Lead Counsel.

5. Discovery remains stayed pending entry of a scheduling order to govern these cases.

6. To better manage the orderly progress of the case, it is **ORDERED** that Lead Counsel in the federal securities actions shall confer and file a joint status report **on or before October 22, 2021**, proposing procedural and/or other next steps the Court should take to ensure the just and efficient disposition of the federal securities cases in this MDL.

CASE NO. 21-2989-MDL-ALTONAGA/Torres

**DONE AND ORDERED** in Miami, Florida, this 14th day of October, 2021.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   counsel of record
      *Pro Se* Plaintiffs