**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-MD-2989-ALTONAGA/TORRES**

In re:

**JANUARY 2021 SHORT SQUEEZE**
**TRADING LITIGATION**

_____/

This Document Relates to the Robinhood Tranche


**DEFENDANTS ROBINHOOD MARKETS, INC., ROBINHOOD FINANCIAL LLC AND**
**ROBINHOOD SECURITIES, LLC'S MOTION TO DISMISS THE ROBINHOOD**
**TRANCHE COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT .................................................................................................. 1

BACKGROUND ......................................................................................................................... 4

I.     The Contractual Relationship Between Robinhood and Its Customers. ............................ 4

II.    The Mechanics of Securities Trading. ............................................................................ 6

III.   The Unprecedented Market Volatility of January 2021. .................................................. 7

IV.   The Events of January 28, 2021 and Onward. ................................................................ 9

LEGAL STANDARDS .............................................................................................................. 10

I.     Applicable Standard. ..................................................................................................... 10

II.    Applicable Law. ........................................................................................................... 11

ARGUMENT ............................................................................................................................. 13

I.     PLAINTIFFS' NEGLIGENCE (COUNT I) AND GROSS NEGLIGENCE
(COUNT II) CLAIMS FAIL BECAUSE PLAINTIFFS DO NOT
ADEQUATELY ALLEGE THAT ROBINHOOD OWED THEM A DUTY IN
TORT. ............................................................................................................................ 13

       A.    Robinhood Owes Its Customers Contractual Obligations, Not Tort Duties .......... 13

       B.    Robinhood Does Not Owe Its Customers a Generalized Duty of Care ................ 17

       C.    Plaintiffs Cannot Rely on Regulations and Self-Regulatory Rules for
Which There Are No Private Rights of Action to Impose a Tort Duty on
Robinhood ........................................................................................................... 20

II.    ROBINHOOD DOES NOT OWE ITS CUSTOMERS A FIDUCIARY DUTY
(COUNT III). ................................................................................................................ 23

       A.    Robinhood Owed No Duty to Customer Plaintiffs To Make Its Brokerage
Services Available for Any Specific Security At All Times ................................ 23

       B.    Robinhood Also Owed No Duty to Plaintiff Moody for Canceled Orders .......... 28

III.   PLAINTIFFS CANNOT STATE A CLAIM FOR BREACH OF THE IMPLIED
COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT V). ........................ 29

IV.     PLAINTIFFS CANNOT STATE A CLAIM FOR BREACH OF AN IMPLIED
        DUTY OF CARE (COUNT IV). ........................................................................................31

V.      PLAINTIFFS FAIL TO STATE A CLAIM OF TORTIOUS INTERFERENCE
        AGAINST ROBINHOOD MARKETS (COUNT VI). .....................................................32

VI.     PLAINTIFFS FAIL TO STATE A CLAIM OF CIVIL CONSPIRACY (COUNT
        VII)..................................................................................................................................34

VII.    ROBINHOOD OWES NO DUTIES TO NON-ROBINHOOD CUSTOMERS—
        ALL CLAIMS BROUGHT BY NON-ROBINHOOD CUSTOMERS
        THEREFORE FAIL............................................................................................................35

VIII.   PLAINTIFFS' AMENDED COMPLAINT SHOULD BE DISMISSED WITH
        PREJUDICE. ....................................................................................................................36

CONCLUSION.......................................................................................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*21st Century Ins. Co. v. Super. Ct.*, 213 P.3d 972 (Cal. 2009) .......................................30

*Aas v. Super. Ct.*, 12 P.3d 1125 (Cal. 2000) .......................................15

*Aoki v. Gilbert*, No. 11-cv-02797-TLN-CKD, 2020 WL 6741693
(E.D. Cal. Nov. 17, 2020) .......................................26

*Apollo Capital Fund LLC v. Roth Capital Partners LLC*, 70 Cal. Rptr. 3d 199
(Ct. App. 2007) .......................................24

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454 (Cal. 1994) .......................................34, 35

*Arndt v. Twenty-One Eighty-Five, LLC*, 448 F. Supp. 3d 1310 (S.D. Fla. 2020) .......................................11, 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................11

*Bankest Imports, Inc. v. ISCA Corp.*, 717 F. Supp. 1537 (S.D. Fla. 1989) .......................................27, 28

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................11

*Biakanja v. Irving*, 320 P.2d 16 (Cal. 1958) .......................................18, 19

*Bily v. Arthur Young & Co.*, 834 P.2d 745 (Cal. 1992) .......................................13

*Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084 (C.D. Cal. 2017) .......................................18, 19

*Bombardier Cap. Inc. v. Progressive Mktg. Grp., Inc.*, 801 So. 2d 131
(Fla. 4th DCA 2001) .......................................14

*Brown v. Cal. Pension Adm'rs & Consultants, Inc.*, 52 Cal. Rptr. 2d 788
(Ct. App. 1996) .......................................15, 23, 24

*Burdick v. Bank of Am., N.A.*, 99 F. Supp. 3d 1372 (S.D. Fla. 2015) .......................................16

*Caravan Mobile Home Sales v. Lehman Brothers Kuhn Loeb, Inc.*, 769 F.2d 561
(9th Cir. 1985) .......................................28

*Carleton v. Tortosa*, 17 Cal. Rptr. 2d 734 (Ct. App. 1993) .......................................26, 28

*Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 826 P.2d 710 (Cal. 1992) .......................................30

*Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146
(11th Cir. 2005) .......................................31

*Certain Underwriters at Lloyd's of London, UK Subscribing to Pol'y No. B1230AP56189A14 v. Ocean Walk Resort Condo. Ass'n,* No. 6:16-CV-258-ORL-37GJK, 2017 WL 3034069 (M.D. Fla. July 18, 2017) ..................20

*Champion v. Feld Ent., Inc.*, No. 20-CV-2400-DMS-KSC, 2021 WL 1812764 (S.D. Cal. May 6, 2021) ..................................................................................................13

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 181 P.3d 142 (Cal. 2008) ................................25

*City Sols., Inc. v. Clear Channel Commc'ns, Inc.*, 201 F. Supp. 2d 1048 (N.D. Cal. 2002).........................................................................................................26

*Clanton v. Inter.Net Glob., L.L.C.*, 435 F.3d 1319 (11th Cir. 2006) ...........................................11

*Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182 (Fla. 2003)................................................20

*Cobos v. Robinhood Financial LLC, et al.*, No. 2:21-cv-00843-VAP-MRWx, 2021 WL 1035123 (C.D. Cal. Feb. 10, 2021)...........................................................................3

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 673 P.2d 660 (Cal. 1983) ................................................................................................................27

*Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151 (11th Cir. 2009)...............................................12

*Corral v. Select Portfolio Servicing, Inc.*, No. C-15-1542 EMC, 2015 WL 4149144 (N.D. Cal. July 9, 2015) ....................................................................................32

*Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216 (Fla. 2010)........................................................19

*D.A.M. v. Barr*, 474 F. Supp. 3d 45 (D.D.C. 2020) ......................................................................9

*Deloitte & Touche v. Gencor Indus., Inc.*, 929 So. 2d 678 (Fla. 5th DCA 2006) ........................12

*Elsayed v. Maserati N. Am., Inc.*, 215 F. Supp. 3d 949 (C.D. Cal. 2016) ..............................18, 19

*Erlich v. Menezes*, 981 P.2d 978 (Cal. 1999)..........................................................................14, 15

*Estate of Johnson ex rel. Johnson v. Badger Acquisition of Tampa LLC*, 983 So. 2d 1175 (Fla. 2d DCA 2008) ................................................................................22

*Ethyl Corp. v. Balter*, 386 So. 2d 1220 (Fla. 3d DCA 1980)......................................................35

*Florida Fern Growers Ass'n v. Concerned Citizens of Putnam County*, 616 So. 2d 562 (Fla. 5th DCA 1993) ...............................................................................35

*Fox v. Lifemark Sec. Corp.*, 84 F. Supp. 3d 239 (W.D.N.Y. 2015).............................................21

*Gochnauer v. A.G. Edward & Sons, Inc.*, 810 F.2d 1042 (11th Cir. 1987)..................................27

iv

*Graham v. Scissor-Tail, Inc.*, 623 P.2d 165 (Cal. 1981)...............................................................14

*Gurfein v. Ameritrade, Inc.*, 312 F. App'x 410 (2d Cir. 2009)......................................................21

*Guz v. Bechtel Nat'l Inc.*, 8 P.3d 1089 (Cal. 2000)........................................................................30

*Harper v. Wausau Ins. Co.*, 66 Cal. Rptr. 2d 64 (Ct. App. 1997)..................................................22

*Hauptman v. Interactive Brokers, LLC*, 349 F. Supp. 3d 292 (S.D.N.Y. 2018)............................22

*Holguin v. Dish Network LLC*, 178 Cal. Rptr. 3d 100 (Ct. App. 2014) ........................................31

*Hollingsworth v. Com. Union Ins. Co.*, 256 Cal. Rptr. 357 (Ct. App. 1989)...........................16, 17

*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069
    (S.D. Ind. 2001) ......................................................................................................................11

*In re Series 7 Broker Qualification Exam Scoring Litig.*, 510 F. Supp. 2d 35
    (D.D.C. 2007) ..........................................................................................................................21

*In re Verifone Sec. Litig.*, 11 F.3d 865 (9th Cir. 1993)..................................................................22

*Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.*, No. 5:12-CV-06209-
    EJD, 2013 WL 3974537 (N.D. Cal. July 31, 2013).................................................................30

*Island Travel & Tours, Co. v. MYR Indep., Inc.*, 300 So. 3d 1236
    (Fla. 3d DCA 2020) .................................................................................................................15

*Ixchel Pharma, LLC v. Biogen, Inc.*, 470 P.3d 571 (Cal. 2020) ..............................................32, 33

*J'Aire Corp. v. Gregory*, 598 P.2d 60 (Cal. 1979)....................................................................18, 19

*Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir. 1980) .........................................................22

*Kidder Peabody & Co. v. Unigestion Int'l, Ltd.*, 903 F. Supp. 479
    (S.D.N.Y. 1995).......................................................................................................................21

*Kim v. Westmoore Partners, Inc.*, 133 Cal. Rptr. 3d 774 (Ct. App. 2011)...................................16

*Kipnis v. Bayerische Hypo- und Vereinsbank, AG*, No. 13-23998-CIV,
    2017 WL 11103938 (S.D. Fla. June 26, 2017) .......................................................................28

*Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937 (Cal. 2003) ........................................33

*Kurtz-Ahlers, LLC v. Bank of Am., N.A.*, 262 Cal. Rptr. 3d 420 (Ct. App. 2020) ........................18

*La Grasta v. First Union Sec., Inc.*, 358 F.3d 840 (11th Cir. 2004)................................................7

*Lamm v. State St. Bank & Tr.*, 749 F.3d 938 (11th Cir. 2014) .....................................................20

*Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 461 F. Supp. 951
(E.D. Mich. 1978) ...................................................................................................27

*Marshall v. Galvanoni*, No. 17-cv-00820-KJM-CKD, 2017 WL 5177764
(E.D. Cal. Nov. 8, 2017) ..........................................................................................16

*Meyers v. Guar. Sav. & Loan Ass'n*, 144 Cal. Rptr. 616 (Ct. App. 1978)............................26, 28

*Misabec Mercantile, Inc. de Panama v. Donaldson, Lufkin & Jenrette ACLI
Futures, Inc.*, 853 F.2d 834 (11th Cir. 1988)..........................................................29

*Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154 (N.D. Cal. 2020) .............................................31

*N. Ctys. Eng'g, Inc. v. State Farm Gen. Ins. Co.*, 169 Cal. Rptr. 3d 726
(Ct. App. 2014) .......................................................................................................16

*Orey v. Super. Ct.*, 152 Cal. Rptr. 3d 878 (Ct. App. 2013)......................................................13

*Paszamant v. Ret. Accts., Inc.*, 776 So. 2d 1049 (Fla. 5th DCA 2001).......................................20

*Peregrine Pharms., Inc. v. Clinical Supplies Mgmt., Inc.*, No. 12-cv-1608-JGB,
2015 WL 13309286 (C.D. Cal. June 22, 2015) ...............................................15, 18

*Petersen v. Sec. Settlement Corp.*, 277 Cal. Rptr. 468 (Ct. App. 1991) ......................................24

*Pinchasov v. Robinhood Financial LLC*, No. 20-cv-24897-CMA (S.D. Fla.) ......................20, 29

*Price (Tilley) v. Charles Schwab & Co.*, No. 14-cv-06194, 2015 WL 9694811
(C.D. Cal. Apr. 6, 2015)...........................................................................................22

*QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n*, 94 So. 3d 541 (Fla. 2012)......................31

*Raimi v. Furlong*, 702 So. 2d 1273 (Fla. 3d DCA 1997).........................................................35

*Richelle L. v. Roman Cath. Archbishop*, 130 Cal. Rptr. 2d 601 (Ct. App. 2003)..................25, 26

*Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268 (Cal. 2004) .........................................15

*Rocks v. McLaughlin Eng'g Co.*, 49 So. 3d 823 (Fla. 4th DCA 2010).......................................17

*Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952 (N.D. Cal. 2010) ....................29

*S. California Gas Leak Cases*, 441 P.3d 881 (Cal. 2019)................................................17, 18, 19

*Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381
(Fla. 4th DCA 1999) ................................................................................................34

*Scolieri v. John Hancock Life Ins. Co. (U.S.A.)*, No. 2:16-CV-690-FTM-38CM,
2017 WL 700215 (M.D. Fla. Feb. 22, 2017) ...........................................................28

*Series AGI W. Linn of Appian Grp. Invs. DE, LLC v. Eves*, 158 Cal. Rptr. 3d 193
 (Ct. App. 2013) ....................................................................................................31

*SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334 (11th Cir. 2010).........................24

*Sheahan v. State Farm Gen. Ins. Co.*, 442 F. Supp. 3d 1178 (N.D. Cal. 2020) ...........................19

*Sheen v. Wells Fargo Bank, N.A.*, 250 Cal. Rptr. 3d 677 (Ct. App. 2019) .......................13, 14, 18

*Siemonsma v. Mut. Diversified Emps. Fed. Credit Union*, No. SACV 10-1093
 DOC, 2011 WL 1485979 (C.D. Cal. Apr. 19, 2011).........................................................26

*Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252 (11th Cir. 2009) ...................................................11

*Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, No. C-95-3926-MHP,
 1997 WL 50223 (N.D. Cal. Jan. 30, 1997) ...............................................................21

*Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293
 (11th Cir. 2002).......................................................................................................24

*Sunset Beach Invs., LLC v. Kimley-Horn & Assocs., Inc.*, 207 So. 3d 1012
 (Fla. 4th DCA 2017) ...............................................................................................17

*Tank Tech, Inc. v. Valley Tank Testing, L.L.C.*, 244 So. 3d 383
 (Fla. 2d DCA 2018) ..........................................................................................20, 36

*Thompson v. County of Alameda*, 614 P.2d 728 (Cal. 1980)........................................................13

*Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399 (Fla. 2013) .............................20

*Twomey v. Mitchum, Jones & Templeton, Inc.*, 69 Cal. Rptr. 222 (Ct. App. 1968)...............23, 25

*Underwriters at Int. v. All Logistics Grp., Inc.*, 483 F. Supp. 3d 1199
 (S.D. Fla. 2020).................................................................................................19, 20

*Unity House, Inc. v. N. Pac. Inv., Inc.*, 918 F. Supp. 1384 (D. Haw. 1996).................................25

*Univ. Express, Inc. v. SEC*, 177 F. App'x 52 (11th Cir. 2006).......................................................2

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634
 (S.D.N.Y. 2020).....................................................................................................21

*Whitesides v. E*Trade Securities, LLC*, No. 20-CV-05803-JSC, 2021 WL 930794
 (N.D. Cal. Mar. 11, 2021)......................................................................................18

*World Vacation Travel, S.A., de C.V. v. Brooker*, 799 So. 2d 410
 (Fla. 3d DCA 2001) ..............................................................................................12

*Wyatt v. Union Mortg. Co.*, 598 P.2d 45 (Cal. 1979) ..................................................................35

**Statutes & Rules**

17 C.F.R. § 240.15c3-1 ................................................................................................21

17 C.F.R. § 240.17Ad-22 .............................................................................................6

15 U.S.C. § 78bb(f)(1) ................................................................................................15

Fed. R. Civ. P. 10 ........................................................................................................11

Fed. R. Civ. P. 12(b)(6) ...........................................................................................1, 10

Fed. R. Evid. 201(b)(2) ................................................................................................9

FINRA Rule 2010 .......................................................................................................22

FINRA Rule 3110 .......................................................................................................22

FINRA Rule 4370 .......................................................................................................22

Securities Exchange Act of 1934 § 15(c)(3), 15 U.S.C. § 78o(c)(3) ...........................21

Securities Litigation Uniform Standards Act of 1998 ..................................................15

**Other Authorities**

*Market Activity*, Nasdaq, https://www.nasdaq.com/market-activity (last visited
Aug. 24, 2021) ......................................................................................................7, 8

Restatement (Second) of Contracts § 205 ...................................................................29

Restatement (Third) of Torts: Phys & Emot. Harm § 7 (2010) ...................................17

Restatement (Third) of Torts: Liab. for Econ. Harm § 4 (2020) .................................16

Restatement (Third) of Torts: Liab. for Econ. Harm § 4 cmt. b (2020) .......................16

Restatement (Third) of Torts: Liab. for Econ. Harm § 3 cmt. d (Tent. Draft No. 1) .....13

Securities and Exchange Comm'n, "Thinking About Investing in the Hot Stock?"
(Jan. 30, 2021), https://www.sec.gov/oiea/investor-alerts-and-bulletins/risks-
short-term-trading-based-social-media-investor-alert .........................................2, 10

*Virtual Hearing – Game Stopped?* 117th Cong. at 10 (2021) (statement of
Vladimir Tenev, Chief Executive Officer, Robinhood Markets, Inc.),
https://financialservices.house.gov/uploadedfiles/hhrg-117-ba00-wstate-
tenevv-20210218.pdf ............................................................................................9, 10

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Robinhood Markets, Inc. ("Robinhood Markets"), Robinhood Financial LLC ("Robinhood Financial") and Robinhood Securities, LLC ("Robinhood Securities") (together, "Robinhood") respectfully submit this memorandum of law in support of their Motion to Dismiss the Amended Consolidated Class Action Complaint for the Robinhood Tranche (the "Amended Complaint" or "Am. Compl.") (ECF No. 409) for failure to state a claim.

## PRELIMINARY STATEMENT

Robinhood's obligations to its retail investor customers are defined by contract. The rights and obligations between Robinhood and its customers are delineated in the Robinhood Customer Agreement ("Cust. Agmt." or "Customer Agreement" (Am. Compl., Exhibit A)), which all Robinhood customers must review and accept when opening an account. The Customer Agreement is attached to, and thereby incorporated into, the Amended Complaint. The Customer Agreement expressly permitted Robinhood to implement the temporary restrictions it imposed on January 28, 2021 and in the days thereafter, which are the basis of Plaintiffs' claims in this Action.

Specifically, Plaintiffs' claims arise from the difficult decision that Robinhood Securities made on January 28, 2021 to limit customer purchases of certain popular stocks, including GameStop, Inc. (GME) and AMC Entertainment Holdings, Inc. (AMC). In the days leading up to this decision, retail investors, spurred by social media and online forums, poured into the stock markets in record numbers to trade in stocks for GME, AMC and certain other popular issuers known as the "meme stocks." This activity pushed trading volatility in the meme stocks to record levels within a matter of days.

In late January 2021, this market volatility significantly affected the collateral deposit requirements that clearinghouses impose on clearing brokers to protect investors, brokers and the financial system as a whole. To ensure market stability in the event that a market participant is unable satisfy its obligations with respect to a trade, clearing brokers, like Robinhood Securities, are required to post collateral to clearinghouses, like the National Securities Clearing Corporation ("NSCC"), at least daily to cover the cost and risk associated with their customers' trade orders. Deposit requirements are largely calculated based on net order volume and volatility multipliers, with the requirements increasing dramatically as

volatility increases.  The ultimate purpose of these deposits is to protect investors and the financial system generally.

As the unprecedented volatility in late January 2021 grew, so too did brokers' clearinghouse deposit requirements with the NSCC.  This substantial increase in trading volume and volatility led the NSCC on the morning of January 28, 2021 to issue a *$3 billion* collateral deposit demand on Robinhood Securities—an approximately twenty-four fold increase from earlier in the week, and more than four times what was required the day before.  To remain in compliance with its deposit requirements, Robinhood Securities made the difficult decision to place limited restrictions on customer purchases on the small number of securities driving its deposit requirements.  Other brokers, which also saw dramatic increases in their deposit requirements, imposed restrictions on a number of the securities experiencing trading volatility as well.

Robinhood's Customer Agreement expressly provides that Robinhood can impose trading restrictions, stating *inter alia* that "Robinhood may at any time, in its sole discretion, and without prior notice to [the customer], prohibit or restrict [the customer's] ability to trade securities."  (Cust. Agmt. § 5.F.)  Robinhood reserves this right to restrict trading precisely because of situations like the one that unfolded in late January 2021:  extreme market volatility can have unpredictable effects, and Robinhood, like all brokers, needs the flexibility to take measures to satisfy its legal obligations so that it can continue serving its customers trading in thousands of available securities.  This authority to restrict trading was quickly reaffirmed by the Securities and Exchange Commission ("SEC"); just two days after Robinhood imposed the much-discussed restrictions, the SEC reiterated in an investor alert and bulletin that brokers have the authority to restrict trading during periods of volatility and that brokers may reserve this right, as Robinhood has done, in their customer agreements.[1]  Unsurprisingly, the only other district court to consider the merits of these claims ruled that the plaintiff was unlikely to prevail

---

[1] *See* Securities and Exchange Comm'n, "Thinking About Investing in the Latest Hot Stock?" (Jan. 30, 2021) ("Jan. 30 SEC Statement"), https://www.sec.gov/oiea/investor-alerts-and-bulletins/risks-short-term-trading-based-social-media-investor-alert.  The Court may take judicial notice of the Jan. 30 SEC Statement because it is a public record, the accuracy of which cannot reasonably be questioned.  *See Univ. Express, Inc. v. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006) (taking judicial notice of public records at the motion to dismiss stage).

on claims arising from the restrictions at issue.  *See Cobos v. Robinhood Financial LLC, et al.*, No. 2:21-cv-00843-VAP-MRWx, 2021 WL 1035123, at *2-3 (C.D. Cal. Feb. 10, 2021).

Initially, and prior to centralization, many of the Plaintiffs named in this Amended Complaint pleaded breach of contract claims.  Presumably because they now recognize that they have no such claim, Plaintiffs have abandoned any allegation that Robinhood breached its contractual obligations to them and have instead attempted to fashion liability in tort where none exists under contract law.  Through their most recent amendment, they have also tried to create implied contractual obligations that do not exist in, and instead contradict, the express terms of the Customer Agreement.  But the law does not permit Plaintiffs to take a losing breach of contract claim and dress it up as a tort claim or a claim for breach of an implied contractual obligation in order to avoid the governing provisions of the Customer Agreement.  This is particularly so where, as here, Plaintiffs do not contest the validity of the Customer Agreement, and in fact rely upon that very agreement to support their claims.

All of Plaintiffs' claims must therefore be dismissed.  Counts I (negligence) and II (gross negligence) fail because Plaintiffs do not identify—and cannot identify—any duty under tort law that arises independent of Robinhood's contractual obligations to its customers.  (*See infra* Argument, Section I.)  Count III (breach of fiduciary duty) fails because, as a non-discretionary broker-dealer that does not provide investment advice, Robinhood owes no general fiduciary duty to its customers.  (*See infra* Argument, Section II.)  Counts IV (implied duty of care) and V (implied covenant of good faith and fair dealing) fail because the implied obligations Plaintiffs allege Robinhood owed its customers are contradicted by the terms of the Customer Agreement, which expressly permit Robinhood to restrict trading.  (*See infra* Argument, Sections III, IV.)  Count VI (tortious interference with contract), which is asserted only against Robinhood Markets, fails because Plaintiffs do not allege facts to support a breach of contract by Robinhood Financial or Robinhood Securities, as the Customer Agreement expressly *permitted* them to restrict trading, and do not allege facts to support intentional interference by Robinhood Markets.  (*See infra* Augment, Section V.)  Count VII (civil conspiracy) fails because there is no separate cause of action for civil conspiracy and because contractual parties, such as Robinhood Financial and Robinhood Securities, cannot be liable as a matter of law for conspiring to interfere with their own contract.  (*See infra* Argument, Section VI.)  Finally, those claims that

are brought on behalf of non-Robinhood customers fail because Robinhood owed no tort duties or contractual obligations to non-Robinhood customers.  (*See infra* Argument, Section VII.)

This is Plaintiffs' third attempt to plead a viable cause of action against Robinhood:  each filed a complaint before centralization, and they have now filed two complaints since centralization.  Plaintiffs have also had the benefit of more than 18,000 pages of discovery from Robinhood in drafting this complaint.  Robinhood respectfully submits that Plaintiffs' continued failure to identify a cognizable claim means that the Amended Complaint should be dismissed with prejudice.  (*See infra* Argument, Section VIII.)

## BACKGROUND

### I.     The Contractual Relationship Between Robinhood and Its Customers.

Robinhood is an industry-changing financial services company founded on the ethos of putting financial power into the hands of everyday people.  (Am. Compl. ¶¶ 1, 108, 136.)  Started in 2013, Robinhood's securities business currently comprises three entities:  Robinhood Markets, Inc. ("Robinhood Markets"), which wholly owns Robinhood Financial LLC ("Robinhood Financial"), the customer-facing introducing broker, and Robinhood Securities, LLC ("Robinhood Securities"), the clearing broker.  (*Id.* ¶¶ 85-94.)

Robinhood is not an investment adviser and did not give any of the Plaintiffs here any investment recommendations concerning any securities at issue; instead, Robinhood provides an online trading platform on which customers self-direct their finances.  (*Id.* ¶¶ 314, 319.)  Robinhood periodically publishes simple investment tutorials and basic financial information for the public to peruse on its website, known as "Robinhood Learn," and summarizes new, publicly available market information through a newsletter called "Robinhood Snacks."  (*Id.* ¶ 123.)  Plaintiffs do not allege—nor could they—that this information is available only to Robinhood customers.  (*Id.*)  For those customers who subscribe to Robinhood's "Gold" service, Robinhood also provides access to certain market research and data prepared by leading research firms, such as Morningstar and NASDAQ.  (*Id.*; Am. Compl. Ex. B at 2.)  Plaintiffs do not allege—nor could they—that any of this information (or anything else that Robinhood may provide to its customers) constitutes investment advice.  On the Robinhood platform, it is the customers such as Plaintiffs who make their own independent decisions about which securities to buy and sell, and they do so without paying any commissions or being required to maintain any account minimum.  (*Id.* ¶¶ 109, 319.)

When Robinhood customers sign up for a Robinhood account, they first agree to the terms of the Customer Agreement between the customer, Robinhood Financial and Robinhood Securities.[2]  (*Id.* ¶ 30-84, 311-16; Cust. Agmt. at 1.)  The Customer Agreement addresses, among other things, the nature of the customer's relationship with Robinhood and its rights and obligations vis-à-vis its customers.  (*See* Cust. Agmt.)

Through the Customer Agreement, Robinhood and its customers—including Plaintiffs—confirm the hands-off role that Robinhood plays in its customers' trading activity. Customers agree that their accounts are "self-directed" and that Robinhood does not "(1) provide investment advice in connection with [Plaintiffs'] Account[s]; (2) recommend any security, transaction or order; (3) solicit orders; (4) act as a market maker in any security; [or] (5) make discretionary trades."  (*Id.* § 5.A.)  Further, Plaintiffs agree that "Robinhood may at any time, at its sole discretion and without prior notice to [the customer] . . . (ii) refuse to accept any of [the customer's] transactions, [or] (iii) refuse to execute any of [the customer's] transactions."  (*Id.* § 16; *see also id.* § 5.F.)

The Customer Agreement also expressly provides that Robinhood can impose trading restrictions like those at issue here:

- "Robinhood may at any time, in its sole discretion, and without prior notice to [the customer], prohibit or restrict [the customer's] ability to trade securities." (*Id.* § 5.F);

- "Robinhood may, in its discretion, prohibit or restrict the trading of securities, or the substitution of securities, in any of [the customer's] Accounts."  (*Id.* § 16); and

- "Robinhood may at any time, at its sole discretion and without prior notice to [the customer]:  (i) prohibit or restrict [the customer's] access to the use of the App or the Website or related services and [customer's] ability to trade, (ii) refuse to accept any of [the customer's] transactions, (iii) refuse to execute any of [the customer's] transactions, or (iv) terminate [the customer's] Account."  (*Id.*)

The Customer Agreement was in effect at the time Robinhood imposed the limited purchase restrictions at the end of January 2021.  (*See* Am. Compl. ¶ 311.)

---

[2] As discussed in Legal Standards, Section II, Plaintiffs attached the Customer Agreement to the Amended Complaint, and the Customer Agreement is part of the Amended Complaint for purposes of this Motion.

II.    **The Mechanics of Securities Trading.**

A securities transaction is a multi-step process.  (*See generally* Am. Compl. ¶¶ 90-93, 137, 152-56.)  When a Robinhood customer places an order to buy or sell a security, Robinhood Financial, as the introducing broker, may first choose to accept the order; should it do so, it then sends the order to Robinhood Securities, the clearing broker.  (*Id.* ¶¶ 90, 93.) Robinhood Securities then routes the order for execution to a market maker; following execution, Robinhood Securities then submits the resulting trade to a clearinghouse for clearance and settlement.  (*Id.* ¶¶ 140, 152-53, 156.)  The main clearinghouse for equities traded in the U.S. is the National Securities Clearing Corporation ("NSCC"), part of a larger clearing organization called Depository Trust & Clearing Corporation ("DTCC").  (*Id.* ¶¶ 152-53.)  Clearinghouses such as NSCC and DTCC are regulated by the SEC.  *See* 17 C.F.R. § 240.17Ad-22.

As this multi-step process unfolds, there is some risk that market participants will be unable to satisfy their obligations in connection with a trade.  (*See generally* Am. Compl. ¶¶ 137-44.)  To mitigate this risk, clearing brokers, such as Robinhood Securities, are required to post collateral with NSCC to cover the risk until the trade "settle[s]."  (*Id.* ¶ 156.)  These collateral requirements are often referred to as deposit requirements.  (*Id.*)  To clear and settle customer transactions, each trading day by 10:00 AM ET, Robinhood Securities must meet the deposit requirements set by NSCC.  (*Id.*)  Depending on NSCC's calculation of the day's deposit requirements, Robinhood Securities may be able to withdraw money that it left on deposit the previous day, or may be required to deposit additional money.  (*See* generally *id.* ¶¶ 156, 208-15.)  Indeed, NSCC can even require additional deposits during a trading day.  (*Id.* ¶¶ 209, 212.)

In setting the deposit requirements, NSCC considers volatility in the market; if NSCC perceives certain securities as being particularly risky or volatile, NSCC may assign a volatility multiplier or special charge that can increase deposit requirements.  (*Id.* ¶¶ 156, 158.) While NSCC calculates its daily deposit requirements according to set formulas, it also can exercise discretion in setting the requirements.  (*See, e.g.*, *id.* ¶ 223.)  If Robinhood Securities were to be unable to meet its deposit requirements on a given day, NSCC could liquidate Robinhood Securities' entire portfolio, which could significantly damage Robinhood's customers.  (*Id.* ¶¶ 155, 158.)

In addition to deposit requirements, Robinhood Securities must also comply with the SEC's Net Capital Rule when clearing and settling customer transactions.  (*Id.* ¶ 161.)  This

rule requires brokers to maintain sufficient liquid assets to meet all obligations to their customers.  (*Id.*)  Together, the clearinghouse deposit requirements and the Net Capital Rule require clearing brokers to monitor liquidity.  (*Id.* ¶¶ 158, 161.)  The purpose of these rules and regulations is to ensure market stability and protect investors.  (*Id.*)

## III. The Unprecedented Market Volatility of January 2021.

January 2021 was marked by a series of unprecedented events in the securities markets.  (Am. Compl. ¶¶ 183-237.)  Retail investors, banding together through online forums such as WallStreetBets on Reddit, drove a massive short squeeze involving certain stocks they perceived to be the target of short selling by hedge funds (the "meme stocks").[3]  (*Id.* ¶¶ 10, 183-90, 198, 201.)  Their activity resulted in extreme market volatility, with dramatic increases in trading prices.  (*Id.* ¶¶ 185, 191.)  For example, on January 27, GME's price closed at $347.51 per share, a 707.6% increase from just five trading days earlier.[4]



[3] Plaintiffs claim the "Suspended Stocks" are:  GameStop Corporation (GME), BlackBerry Ltd. (BB), Nokia (NOK), AMC Entertainment Holdings, Inc. (AMC), American Airlines Group, Inc. (AAL), Bed Bath & Beyond, Inc. (BBBY), Castor Maritime Inc. (CTRM), Express, Inc. (EXPR), Koss Corporation (KOSS), Naked Brand Group Ltd. (NAKD), Sundial Growers, Inc. (SNDL), Tootsie Roll Industries, Inc. (TR), and Trivago NV (TRVG).  (Am. Compl. ¶ 4.)

[4] *See Market Activity*, Nasdaq, https://www.nasdaq.com/market-activity (last visited Aug. 24, 2021).  The Court may take judicial notice of this stock information.  *See La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 842 (11th Cir. 2004) (taking judicial notice of stock information at the motion to dismiss stage).

Indeed, in the span of just five trading days (from January 21 to January 27, 2021), the total daily trading volume for the meme stocks increased eightfold from 863 million to 6.95 billion shares.[5]



While these unprecedented events were taking place, Robinhood Securities considered how the volatility could affect its deposit requirements and risk exposure. (*Id.* ¶¶ 193-202.)  In the days leading up to January 28, to mitigate the volatility, Robinhood Securities increased margin requirements for volatile securities like GME to 100%, which in effect meant that a customer needed sufficient funds to pay for such shares in full, rather than being able to buy shares on credit, and that customers could not use such shares as collateral to buy other securities on credit. (*See id.* ¶¶ 194, 249.)

As volatility involving the meme stocks increased, so too did Robinhood Securities' daily deposit requirements. (*Id.* ¶¶ 208-15.)  On the days leading up to January 28, Robinhood Securities' approximate daily deposit requirements were as follows:

---

[5] *See Market Activity*, Nasdaq, https://www.nasdaq.com/market-activity (last visited Aug. 24, 2021).  The Court may take judicial notice of stock information.  *See supra* note 4.

- January 25, 2021, 5:19 AM UTC deposit requirement:  $125 million;[6] Robinhood Securities had a deposit surplus of $11,397,650.77 (Am. Compl. ¶ 208).

- January 26, 2021, 8:34 AM UTC deposit requirement:  $291 million (Tenev Testimony at 10); Robinhood Securities had a deposit deficit of $84,930,632.62 (Am. Compl. ¶ 210).

- January 27, 2021, 8:20 AM UTC deposit requirement:  $282 million (Tenev Testimony at 10); Robinhood Securities had a deposit surplus of $11,348,423.58 (Am. Compl. ¶ 211).

- January 27, 2021, 8:03 PM UTC deposit requirement:  $690 million (Tenev Testimony at 10); Robinhood Securities had a deposit deficit of $407,770,190.70 (Am. Compl. ¶ 213).

## IV.   The Events of January 28, 2021 and Onward.

At approximately 5:11 AM EST on January 28, 2021, Robinhood Securities received an email notice from NSCC stating that its deposit requirements had jumped dramatically from the previous days:  Robinhood Securities' deposit deficit was over *$3 billion*. (Am. Compl. ¶ 215.)  Robinhood Securities did not have the cash on hand to satisfy a deposit requirement of that size.  (*Id.* ¶ 221.)  In light of the massive capital call, Robinhood Securities decided after more than an hour of deliberation to set a small number of the meme stocks to a "position close only" ("PCO"), which would enable (but not require) Robinhood customers to exit their positions in those symbols if they wished, but restricted new purchases of those volatile securities.  (*Id.* ¶¶ 219, 240.)

---

[6] *See Virtual Hearing – Game Stopped?  Who Wins and Loses When Short Sellers, Social Media, and Retail Investors Collide*, 117th Cong. at 10 (2021) (statement of Vladimir Tenev, Chief Executive Officer, Robinhood Markets, Inc.), *available at* https://financialservices.house.gov/uploadedfiles/hhrg-117-ba00-wstate-tenevv-20210218.pdf ("Tenev Testimony").  The Court may take judicial notice of the approximate deposit requirements described in Mr. Tenev's testimony in the days leading up to January 28, 2021. *See D.A.M. v. Barr*, 474 F. Supp. 3d 45, 55 n.12 (D.D.C. 2020) (taking judicial notice of Congressional testimony because Congressional testimony "is not subject to reasonable dispute") (quoting Fed. R. Evid. 201(b)(2)).  Indeed, Plaintiffs themselves cite Mr. Tenev's testimony to support their allegations regarding Robinhood's decision to impose limited purchase restrictions. (*See* Am. Compl. ¶ 235.)  The times regarding the deposit requirements referenced herein refer to the time that Robinhood Securities received an email notice from NSCC stating the deposit requirement.

Shortly after 9:00 AM EST, and after Robinhood Securities put in place the majority of the restrictions, NSCC reduced Robinhood Securities' deposit requirements to approximately $1.4 billion.  (*Id.* ¶ 223.)  The revised requirements remained hundreds of millions of dollars above typical levels, but Robinhood Securities promptly complied with and paid its NSCC deposit requirements that morning.  (*Id.* ¶ 235.)[7]  Robinhood Securities was far from the only clearing broker to impose restrictions on the meme stocks during this period of unprecedented volatility.  (Tenev Testimony at 8.)  Apex Clearing Corporation, for example, imposed restrictions on several of the meme stocks, which impacted the downstream customers of Apex's introducing broker partners, including customers of Ally, Dough, Public.com, SoFi, Stash, Tastyworks and WeBull.  (Robinhood and Other Broker Tranche Consolidated Class Action Complaint, ECF No. 359 ¶¶ 234, 236.)  Charles Schwab was one of numerous other brokers to impose restrictions on the meme stocks as well.  (*Id.* ¶ 256.)

Robinhood worked quickly to remove the restrictions, easing them by market open on January 29, 2021, and lifting all purchase limits by February 5, 2021.  (Am. Compl. ¶¶ 256, 266.)  The company also spoke with investors and lenders to raise new capital and expand its line of credit to accommodate the historic market volatility and the unprecedented deposit requirements; by February 1, 2021, several days after Robinhood first imposed the restrictions, Robinhood had raised $3.4 billion from investors.  (*Id.* ¶ 234.)

On January 30, 2021, amid much public discussion about Robinhood Securities' and other brokers' trade restrictions, the SEC released an investor alert and bulletin warning about the risks of short-term trading based on social media and acknowledging that "broker-dealers may reserve the ability to reject or limit customer transactions" for "legal, compliance, or risk management reasons" and that such ability is "typically discussed in the customer account agreement."  (*See* Jan. 30 SEC Statement, *supra* note 1.)

## LEGAL STANDARDS

I.      **Applicable Standard.**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[7] Plaintiffs do not allege that Robinhood at any point violated the SEC Net Capital Rule. (*Id.* ¶¶ 161-63.)

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (alterations added).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679 (citing *Twombly*, 550 U.S. at 556).  "To meet this 'plausibility standard,' a plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Arndt v. Twenty-One Eighty-Five, LLC*, 448 F. Supp. 3d 1310, 1314 (S.D. Fla. 2020) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Id.* at 1314-15 (quoting *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009)).

## II.    Applicable Law.

A "federal district court sitting in diversity must apply the choice of law rules of the forum state." *Arndt*, 448 F. Supp. 3d at 1315 (quoting *Clanton v. Inter.Net Glob., L.L.C.*, 435 F.3d 1319, 1323 (11th Cir. 2006)).  When sitting in diversity, this Court applies Florida's choice-of-law rules. *Id.*  In a multidistrict litigation where (as here) the parties have agreed that a master complaint will serve as the operative and superseding complaint, the court applies the forum's choice-of-law rules.  *See In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1078 (S.D. Ind. 2001); (ECF No. 322 at 2 (Parties agreed that the "Master Complaints will supersede the individual complaints filed to date and will constitute the operative pleadings with respect to those claims")).  Under Florida's choice-of-law rules, it is well settled that "Florida courts are obligated to enforce choice-of-law provisions unless a showing is made that the law of the chosen forum contravenes strong public policy or that the clause is otherwise unreasonable or unjust." *Arndt*, 448 F. Supp. 3d at 1315 (citations omitted).  "Simply put, when an unambiguous, valid choice-of-law provision exists, as it does here, there is no need for the court to engage in a further conflict of laws analysis." *Id.* at 1321 (citations omitted).

The twelve Plaintiffs allege that they were Robinhood customers as of January 28, 2021.  (*See* Am. Compl. ¶¶ 30, 34, 42, 47, 51, 55, 61, 65, 69, 73, 77, 81.)  California law applies to the claims of all Plaintiffs because, as Robinhood customers, their claims are subject to a valid contractual choice-of-law provision.  The Customer Agreement is attached to the Amended Complaint and therefore is considered part of the Amended Complaint for purposes of this motion. *See* Fed. R. Civ. P. 10 ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  Each Plaintiff entered into the Customer Agreement

with Robinhood Financial and Robinhood Securities.  (*See* Am. Compl. ¶¶ 30, 34, 42, 47, 51, 55, 61, 65, 69, 73, 77, 81.)  The Customer Agreement provides that "[t]his Agreement and all transactions made in [a customer's] Account shall be governed by the laws of the State of California (regardless of the choice of law rules thereof)."  (Cust. Agmt. § 37.K.)  Plaintiffs' alleged claims all arise from their use of and interactions with their Robinhood brokerage accounts.  (*See* Am. Compl. ¶¶ 29-84.)  The choice-of-law provision in the Customer Agreement ("this Agreement and all transactions made in [a customer's] Account") is a broad provision that applies to tort claims as well as breach of contract claims.  *See Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1162-63 (11th Cir. 2009) (finding choice of law provisions encompassing more than "this [agreement]" apply to tort claims); *see also Arndt*, 448 F. Supp. 3d at 1315-21 (applying choice of law provision to all claims relating to the agreement).  Accordingly, all of Plaintiffs' claims are governed by California law.[8]  (*See infra* Argument, Sections I to VI.)

While Florida's choice-of-law rules make clear that California law applies to the Plaintiffs' claims, for the reasons set forth below, analyzing Plaintiffs' claims under Florida law would yield the same result—dismissal.  (*See infra* Argument, Sections I to VI.)  As a result, Plaintiffs cannot prevail under any potentially applicable law in this case.

Finally, although Plaintiffs are all Robinhood customers, Plaintiffs purport to bring certain claims on behalf of a putative "Nationwide Investor Class," which apparently includes all persons trading securities in the United States, including those who are not Robinhood customers.  For the reasons set forth below, non-Robinhood customers cannot state a claim against Robinhood.  (*See infra* Argument, Section VII.)

---

[8] Robinhood Financial and Robinhood Securities are parties to the Customer Agreement, but their parent, Robinhood Markets, is not.  Plaintiffs' claims against Robinhood Markets should still be analyzed pursuant to the Agreement's choice-of law provision.  Florida courts have recognized that forum selection terms can be enforced by non-signatories where, as here, there is a close relationship between the non-signatory and the parties.  *See, e.g.*, *World Vacation Travel, S.A., de C.V. v. Brooker*, 799 So. 2d 410, 412-13 (Fla. 3d DCA 2001) (finding non-signatory could enforce a forum selection clause due to the "nature of the commercial relationship of the parties" and the fact that the claims against the non-signatories arose from the agreement); *see also Deloitte & Touche v. Gencor Indus., Inc.*, 929 So. 2d 678, 683 (Fla. 5th DCA 2006) (reaching the same conclusion where the non-signatory was the corporate parent of a signatory).

**ARGUMENT**

Plaintiffs bring seven claims against Robinhood:  (1) negligence, (2) gross negligence, (3) breach of fiduciary duty, (4) breach of the implied duty of care, (5) breach of the implied covenant of good faith and fair dealing, (6) tortious interference with contract and business relationship and (7) civil conspiracy.  Each should be dismissed.

**I.     PLAINTIFFS' NEGLIGENCE (COUNT I) AND GROSS NEGLIGENCE (COUNT II) CLAIMS FAIL BECAUSE PLAINTIFFS DO NOT ADEQUATELY ALLEGE THAT ROBINHOOD OWED THEM A DUTY IN TORT.**

To prevail on their negligence claim, Plaintiffs must establish (1) that Robinhood had a legal duty to use due care, (2) the breach of such legal duty and (3) that the breach was the proximate or legal cause of injury.  *Orey v. Super. Ct.*, 152 Cal. Rptr. 3d 878, 886 (Ct. App. 2013).  Gross negligence requires establishing each of the elements of negligence as well as "extreme conduct" by the defendant that rises to the level of "either a want of even scant care or an extreme departure from the ordinary standard of conduct."  *Champion v. Feld Ent., Inc.*, No. 20-CV-2400-DMS-KSC, 2021 WL 1812764, at *2 (S.D. Cal. May 6, 2021) (citations omitted).

Whether a defendant owes any duty to a plaintiff is a "threshold" question of law to be resolved by the court.  *Bily v. Arthur Young & Co.*, 834 P.2d 745, 760-61 (Cal. 1992). "Courts . . . have invoked the concept of duty to limit generally 'the otherwise potentially infinite liability which would follow from every negligent act . . . .'"  *Id.* at 761 (quoting *Thompson v. County of Alameda*, 614 P.2d 728, 732 (Cal. 1980)).  Here, Plaintiffs fail to allege that Robinhood owed its customers any cognizable tort duty—as opposed to contractual obligations—and, as a result, their negligence and gross negligence claims should be dismissed.

**A.     Robinhood Owes Its Customers <u>Contractual</u> Obligations, Not <u>Tort</u> Duties.**

Robinhood Financial and Robinhood Securities and their customers are parties to a contract.  (Am. Compl. ¶ 311.)  "[T]he duties of care between parties who negotiate contracts are not governed by the law of tort."  *Sheen v. Wells Fargo Bank, N.A.*, 250 Cal. Rptr. 3d 677, 684 (Ct. App. 2019) (quoting Rest. 3d Torts, Liability for Economic Harm (Tent. Draft No. 1) § 3, cmt. d).  Rather, the obligations between contractual parties, such as Robinhood Financial and Robinhood Securities and their customers, are defined by the terms of the relevant contract.[9]

---

[9] Robinhood Markets is not a party to the contract and therefore does not owe Robinhood customers contractual obligations.  However, as explained in Part I.B, Robinhood Markets still

*See id.*  This is because "[i]f every negligent breach of contract gives rise to tort damages the limitation would be meaningless, as would the statutory distinction between tort and contract remedies." *Erlich v. Menezes*, 981 P.2d 978, 984 (Cal. 1999).[10]

   Prior to opening an account and using Robinhood's services, Plaintiffs were required to review and accept the terms of the Customer Agreement.  (*See* Cust. Agmt.; Am. Compl. ¶¶ 29-80.)  Even assuming as true Plaintiffs' contention that the Customer Agreement is a contract of adhesion (*e.g.*, *id.* ¶ 311), this standard-form agreement is still fully enforceable under both California and Florida law.  *See Graham v. Scissor-Tail, Inc.*, 623 P.2d 165, 172 (Cal. 1981) ("[A] contract of adhesion is fully enforceable according to its terms."); *Bombardier Cap. Inc. v. Progressive Mktg. Grp., Inc.*, 801 So. 2d 131, 135 (Fla. 4th DCA 2001) (finding allegations that a contract is one of adhesion does not "in itself . . . render the contract[] void").  Indeed, Plaintiffs do not allege that the Customer Agreement is procedurally or substantively "unconscionable" and in fact bring claims that are premised on the very enforceability of the Agreement (*e.g.*, Counts IV-VII).  The Customer Agreement expressly addresses, and explicitly authorizes, Robinhood to put in place the trading restrictions that are the basis of Plaintiffs' claims.  Specifically, the Customer Agreement provides:

- "Robinhood may at any time, in its sole discretion, and without prior notice to [the customer], prohibit or restrict [the customer's] ability to trade securities." (Cust. Agmt. § 5.F);

- "Robinhood may, in its discretion, prohibit or restrict the trading of securities, or the substitution of securities, in any of [the customer's] Accounts." (*Id.* § 16); and

- "Robinhood may at any time, at its sole discretion and without prior notice to [the customer]:  (i) prohibit or restrict [the customer's] access to the use of the App or the Website or related services and [the customer's] ability to trade, (ii) refuse to accept any of [the customer's] transactions, (iii) refuse to execute any of [the customer's] transactions, or (iv) terminate [the customer's] Account." (*Id.*)

---

does not owe any tort duties to its customers irrespective of the fact that it is not a party to the Customer Agreement.

 [10] Some courts permit a separate tort claim, in a limited fashion, arising from a breach of contract claim where the plaintiff alleges a special relationship with the defendant.  For the reasons set forth in Argument, Section I.B, *infra*, no such relationship exists here.

Because Plaintiffs' negligence claims are premised on the imposition of restrictions that were expressly permitted by the Customer Agreement, Plaintiffs have done nothing more than attempt to convert a losing breach of contract claim into a tort claim.  The law does not allow Plaintiffs to use such a maneuver to evade the governing contract.  *See Aas v. Super. Ct.*, 12 P.3d 1125, 1136 (Cal. 2000) ("A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations.") (superseded by statute on other grounds); *Brown v. Cal. Pension Adm'rs & Consultants, Inc.*, 52 Cal. Rptr. 2d 788, 795 (Ct. App. 1996) (dismissing negligence claim in part because it was "simply a relabeling of [appellants'] breach of contract claims as tort claims").

Neither of the limited exceptions that could permit contractual parties to recover on a negligence claim applies here.  *First*, Plaintiffs cannot invoke the independent tort doctrine, a limited exception permitting a plaintiff to recover in tort against a contractual counterparty where the plaintiff alleges a tort that is "independent of the [contractual] breach."  *See Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 360 (Cal. 2004).  Courts have limited this exception to cases involving intentional torts, such as fraud, which Plaintiffs do not attempt to allege here.[11]  *See Peregrine Pharms., Inc. v. Clinical Supplies Mgmt., Inc.*, No. 12-cv-1608-JGB, 2015 WL 13309286, at *11 (C.D. Cal. June 22, 2015) ("Unintentional acts and misrepresentations are clearly not the type that the California Supreme Court had in mind as forming the basis of an independent tort duty . . . . [Instead,] the court narrowly tailored [the exception] to include only *intentional* conduct.").  In other words, the exception does not apply in cases, such as this one, where a plaintiff brings a negligence claim against a contractual counterparty.  *See id.*; *see also Erlich*, 981 P.2d at 984 ("[M]ore than mere negligence has been involved in each case [between contractual parties] where tort damages have been permitted.").  Although California law applies to Plaintiffs' claims, as explained above, there is no conflict between California and Florida law on this issue.  *See Island Travel & Tours, Co. v. MYR Indep., Inc.*, 300 So. 3d 1236,

---

[11] Any fraud claim Plaintiffs might allege would be precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), which provides that "[n]o covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging – (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security."  15 U.S.C. § 78bb(f)(1).

1239 (Fla. 3d DCA 2020) ("It is a fundamental, long-standing common law principle that a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract."); *see also Burdick v. Bank of Am., N.A.*, 99 F. Supp. 3d 1372, 1378 (S.D. Fla. 2015) (dismissing negligence claims because the claims "should have been brought in contract rather than in Negligence"; defendants' purported negligence was not "'independent of any breach of contract claim' as Florida law requires" (citation omitted)).

   *Second*, Plaintiffs cannot assert a cognizable negligence claim against Robinhood based on a breach of a professional duty. *See* Restatement (Third) of Torts: Liab. for Econ. Harm § 4 (2020). "Professional services" that can give rise to professional duties are defined as those arising out of an occupation involving "specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual." *N. Ctys. Eng'g, Inc. v. State Farm Gen. Ins. Co.*, 169 Cal. Rptr. 3d 726, 749 (Ct. App. 2014) (citation omitted); *see also* Restatement (Third) of Torts: Liab. for Econ. Harm § 4 cmt. b (explaining that professional services often entail providing "complex discretionary judgments"). Professional services are typically performed "for remuneration." *Hollingsworth v. Com. Union Ins. Co.*, 256 Cal. Rptr. 357, 360 (Ct. App. 1989). Here, Robinhood does not provide any such professional services for remuneration (or otherwise). Instead, Robinhood serves only as a platform through which its customers may place self-directed trade orders. The operative Customer Agreement expressly provides that Robinhood does not "provide investment advice," "recommend any security," "make discretionary trades" or "provide first-party research providing [] specific investment strategies." (Cust. Agmt. § 5.A.) The parties thus expressly agreed that Robinhood does not provide the kind of investment services that a professional would provide, and Robinhood owes no professional duties. *See Kim v. Westmoore Partners, Inc.*, 133 Cal. Rptr. 3d 774, 788 (Ct. App. 2011) (finding no professional duty because the relevant agreement "unambiguously establish[ed] that the relationship between [the parties] was simply one of creditor-debtors," and defendant was not acting as an "investment broker"); *Marshall v. Galvanoni*, No. 17-cv-00820-KJM-CKD, 2017 WL 5177764, at *6 (E.D. Cal. Nov. 8, 2017) (dismissing a claim that the defendant provided professional investment broker services because the "[p]laintiff has pled

neither the requisite agreement to provide professional services nor the details to support a claim such services were provided").[12]

The same conclusion would result under Florida law.  In considering whether an individual is a "professional," Florida courts consider whether individuals engaged in the profession are required to be licensed and whether the profession is one requiring "special education, training, [and] skill." *Sunset Beach Invs., LLC v. Kimley-Horn & Assocs., Inc.*, 207 So. 3d 1012, 1014 (Fla. 4th DCA 2017).  Courts also consider whether the service performed is "solely under [the professional's] control and competence" and whether the client "specif[ies] their manner of performance." *Rocks v. McLaughlin Eng'g Co.*, 49 So. 3d 823, 828 (Fla. 4th DCA 2010).  More control and direction on the part of the client suggests the defendant is not engaged in a professional service. *See id.*  As explained above, Robinhood customer accounts are entirely self-directed, meaning it is the customer, not Robinhood, that "specif[ies] the[] manner of performance," *id.*, and Plaintiffs make no allegations that would otherwise be sufficient to invoke the professional duty cases under Florida law.

Because Robinhood Securities and Robinhood Financial owe their customers only contractual obligations and owe no professional or tort duty independent of those obligations, Plaintiffs cannot recover against those entities in tort.

**B.      Robinhood Does Not Owe Its Customers a Generalized Duty of Care.**

In addition to the bar to tort recovery from the contract that governs the relationship between Robinhood and its customers, Plaintiffs also cannot recover under a negligence theory against any of the three Robinhood entities because Robinhood does not owe its customers a general duty of care.  A general tort duty of care exists only "when the actor's conduct creates a risk of *physical harm*." *See* Restatement (Third) of Torts: Phys. & Emot. Harm § 7 (2010) (emphasis added).  Specifically, a plaintiff may recover based on a negligence theory only if the defendant's conduct created a "foreseeable" danger of physical harm or damage to real property. *See S. California Gas Leak Cases*, 441 P.3d 881, 885, 888 (Cal. 2019).  Plaintiffs seek incorrectly to impose such a tort duty against Robinhood by claiming that their risk of

---

[12] Moreover, Robinhood falls outside the scope of "professional services" because it provides its services free of commission, rather than for compensation. *See Hollingsworth*, 256 Cal. Rptr. at 360 (explaining that professional services are often understood as "activit[ies] done for remuneration").

*economic* harm was "foreseeable" from Robinhood's actions.  (Am. Compl. ¶¶ 160, 285, 298.)
Plaintiffs' theory is wrong as a matter of law.  Courts routinely reject the proposition that
"foreseeability of harm" for *economic* losses is sufficient to impose a duty of care and negligence
liability on a defendant.  *See S. California Gas Leak Cases*, 441 P.3d at 889 (dismissing
plaintiffs' negligence claim because "consensus cuts sharply against imposing a duty of care to
avoid causing purely economic losses in negligence cases"); *Kurtz-Ahlers, LLC v. Bank of Am.,
N.A.*, 262 Cal. Rptr. 3d 420, 426 (Ct. App. 2020) ("We begin our duty analysis by
acknowledging a fundamental rule in tort law: liability in negligence for purely economic losses
. . . is the exception, not the rule.") (internal quotations omitted); *Sheen*, 250 Cal. Rptr. 3d at 682
(dismissing plaintiff's negligence claim because it was based on a "financial transaction gone
awry and nothing more: [plaintiff] suffered neither personal injury nor property damage").
Plaintiffs' claims, all of which are for *economic* losses against Robinhood, are no exception.

The limited "special relationship" exception, under which a plaintiff may recover
for economic losses under a negligence theory, is also unavailable to Plaintiffs.  *See Peregrine
Pharms.*, 2015 WL 13309286, at *9.  For this limited exception to apply, California courts
consider:  "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the
foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury,
(4) the closeness of the connection between the defendant's conduct and the injury suffered,
(5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future
harm."  *Id.* (citing *J'Aire Corp. v. Gregory*, 598 P.2d 60, 63 (Cal. 1979) (internal citations
omitted)).  The special relationship exception applies only where the parties are *not* in
contractual privity.  *See, e.g.*, *Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084,
1092 (C.D. Cal. 2017) (holding that the two California Supreme Court cases addressing the
"special relationship exception"—*J'Aire*, 598 P.2d 60, and *Biakanja v. Irving*, 320 P.2d 16 (Cal.
1958)—applied it only to parties that were not in contractual privity); *Elsayed v. Maserati N.
Am., Inc.*, 215 F. Supp. 3d 949, 963 (C.D. Cal. 2016) ("The Court refuses to extend the special
relationship exception to encompass direct [contractual] relationships.").[13]  Because Robinhood

---

[13] Even if the Court were to apply the *J'Aire* factors, however, dismissal would still be
required as courts have found the *J'Aire* factors weigh against finding a special relationship
between a non-discretionary broker and its customers.  *See Whitesides v. E*Trade Securities*,

Financial and Robinhood Securities are in contractual privity with Plaintiffs, the special relationship exception does not permit Plaintiffs to recover against either entity. *See Body Jewelz*, 241 F. Supp. 3d at 1092; *Elsayed*, 215 F. Supp. 3d at 963.

Nor does the special relationship exception give Plaintiffs a right to recover against Robinhood Markets. The California Supreme Court judicially created the special relationship exception to permit, in limited circumstances, strangers to a contract to recover for economic losses in tort where they are foreseeable victims of tortious conduct between contractual parties. *See J'Aire*, 598 P.2d 60; *Biakanja*, 320 P.2d 16. But Plaintiffs here are contractual parties with Robinhood Financial and Robinhood Securities. The rationale that motivated the courts in *J'Aire* and *Biakanja* to permit recovery in tort—*i.e.*, that the plaintiffs could only recover in tort because they were *not* contractual parties—does not apply here. The "special relationship" exception is therefore inapplicable.[14] *See, e.g.*, *Sheahan v. State Farm Gen. Ins. Co.*, 442 F. Supp. 3d 1178, 1187 (N.D. Cal. 2020) ("*J'Aire* is inapposite because there is no alleged contract between [defendants] to which Plaintiffs can claim to be a third-party beneficiary."). In the absence of any allegations of physical harm, and any legally-recognized and well-pleaded "special relationship" between any of the Robinhood entities and Robinhood customers, Plaintiffs cannot recover for economic losses under a negligence theory. *See S. Cal. Gas Leak Cases*, 441 P.3d at 896.

Robinhood would not owe its customers general tort duties even if Florida law applied. Under Florida law, regardless of whether parties are in contractual privity, "plaintiffs are generally not permitted to recover 'for purely economic losses when the plaintiff has sustained no bodily injury [or] property damage.'" *Underwriters at Int. v. All Logistics Grp., Inc.*, 483 F. Supp. 3d 1199, 1211 (S.D. Fla. 2020) (quoting *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1223-24 (Fla. 2010)), *appeal dismissed*, No. 20-14453-JJ, 2021 WL 2190226 (11th Cir. Mar. 4, 2021). A defendant therefore owes a general duty in negligence only for "physical

---

*LLC*, No. 20-CV-05803-JSC, 2021 WL 930794, at *8 (N.D. Cal. Mar. 11, 2021) (finding no "special relationship" between E*Trade and its retail investor customers).

[14] Moreover, Robinhood Markets is entirely unlike the defendants in *J'Aire* and *Biakanja* in that Robinhood Markets is merely the corporate parent of parties who allegedly engaged in tortious conduct, rather than a perpetrator of tortious conduct itself.

harm." *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1186 (Fla. 2003).[15]  "[T]o proceed on a common law negligence claim based solely on economic loss, there must be some sort of link between the parties or some other extraordinary circumstance that justifies recognition of such a claim." *Tank Tech, Inc. v. Valley Tank Testing, L.L.C.*, 244 So. 3d 383, 393 (Fla. 2d DCA 2018).[16]  Plaintiffs plead no such exception here, and none exists.  Moreover, Florida courts have specifically recognized that where, as here, a financial institution has stated in a contract that it has "no discretionary role in investing [plaintiff's] assets," the plaintiff cannot recover for economic losses under a negligence theory.  *See Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 948 (11th Cir. 2014) (concluding that where custodial bank customers held non-discretionary accounts, the custodial bank owed its customers no generalized tort duties under Florida law); *Paszamant v. Ret. Accts., Inc.*, 776 So. 2d 1049, 1053 (Fla. 5th DCA 2001) (same).

In sum, Plaintiffs cannot prevail on a negligence theory that is premised on an alleged generalized duty of care that Robinhood owes to its customers.

### C.    Plaintiffs Cannot Rely on Regulations and Self-Regulatory Rules for Which There Are No Private Rights of Action to Impose a Tort Duty on Robinhood.

Plaintiffs cite various SEC and FINRA regulations as well as rules of self-regulatory organizations such as the DTCC and NSCC (Am. Compl. ¶¶ 152-73) and contend that

---

[15] While this Court cited *Clay Electric* to sustain a negligence claim in *Pinchasov v. Robinhood Financial LLC*, No. 20-cv-24897-CMA (S.D. Fla.), the decision in *Pinchasov* is inapplicable to the instant Action because the Robinhood Customer Agreement was not attached to the complaint in *Pinchasov*, which meant the Court could not consider the California choice-of-law provision or the well-established California precedent discussed herein that bars Plaintiffs' recovery under tort law.  (*See* Order Denying Motion to Dismiss, *Pinchasov v. Robinhood Financial LLC*, No. 20-cv-24897-CMA (S.D. Fla.), ECF No. 48 at 4-6.)  Moreover, Robinhood respectfully submits that the parties in *Pinchasov* did not raise—and the Court therefore did not consider—that a general duty of care in negligence under Florida law arises only to claims of physical harm.  (*Id.* at 5-6.)

[16] This principle is distinct from the economic loss doctrine, which Florida courts have limited to the products liability context.  *See Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 407 (Fla. 2013); *see also Certain Underwriters at Lloyd's of London, UK Subscribing to Pol'y No. B1230AP56189A14 v. Ocean Walk Resort Condo. Ass'n*, No. 6:16-CV-258-ORL-37GJK, 2017 WL 3034069, at *10 (M.D. Fla. July 18, 2017) (collecting post-*Tiara* cases where courts have reaffirmed the barriers in recovering against a contractual counterparty in tort); *Underwriters*, 483 F. Supp. 3d at 1211 (concluding, post-*Tiara*, that a plaintiff generally cannot recover for economic losses absent injury or property damage, regardless of whether the parties are in privity).

violations of such regulations and rules can serve as evidence of negligence (*id.* ¶ 167). However, not one of the regulations or rules cited by Plaintiffs gives rise to a private right of action.  As the cases discussed in this section demonstrate, a statute, regulation or rule that does not create a private right of action cannot be used to create a duty in tort.

Courts have widely recognized that a plaintiff cannot create from whole cloth a private right of action where none exists simply by fashioning their claims as tort claims.  *See Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, No. C-95-3926-MHP, 1997 WL 50223, at *3 & n.3 (N.D. Cal. Jan. 30, 1997) (dismissing tort claim based on purported violations of NASD Rules (predecessor to the current FINRA rules), finding it improper "to circumvent the lack of a private right of action under the Exchange Act"), *aff'd*, 159 F.3d 1209 (9th Cir. 1998); *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 645 (S.D.N.Y. 2020) (dismissing a negligence claim, premised on an SEC regulation and a FINRA Rule, because the "[p]laintiff cannot circumvent the lack of a private right of action for violations of industry rules merely by recasting her claim as a violation of a common law duty"); *Fox v. Lifemark Sec. Corp.*, 84 F. Supp. 3d 239, 245 (W.D.N.Y. 2015) (holding that "FINRA does not provide a private right of action" and therefore "plaintiff cannot recover for negligence based on the alleged violation" of a FINRA Rule).[17]

None of the rules or regulations Plaintiffs cite in their Amended Complaint has an associated private right of action that would create a duty by Robinhood to Plaintiffs.  *First*, Plaintiffs note that Robinhood is subject to the SEC's Uniform Net Capital Rule, 17 C.F.R. § 240.15c3-1, without alleging any specific violation of that rule.  (Am. Compl. ¶ 161.) Regardless, Plaintiffs do not have a private right of action for that rule.  *See Kidder Peabody & Co. v. Unigestion Int'l, Ltd.*, 903 F. Supp. 479, 495 (S.D.N.Y. 1995) (concluding there is no private cause of action under Section 15(c)(3) of the Securities Exchange Act—the section under which the Net Capital Rule was promulgated).

---

[17] *See also In re Series 7 Broker Qualification Exam Scoring Litig.*, 510 F. Supp. 2d 35, 47 (D.D.C. 2007) (rejecting plaintiffs' argument that their claims were "distinctly derived from duties created at common law" because "courts have logically concluded that the Exchange Act preempts common-law claims that are nothing more than disguised actions to enforce regulatory duties"), *aff'd*, 548 F.3d 110 (D.C. Cir. 2008); *Gurfein v. Ameritrade, Inc.*, 312 F. App'x 410, 414 (2d Cir. 2009) ("[Plaintiff] is precluded from creating a private cause of action for violations of these rules and regulations by fashioning her claim as one for breach of contract based on violations of rules and regulations impliedly incorporated into the agreement.").

*Second*, Plaintiffs also refer obliquely to "FINRA Rules," specifying only FINRA Rules 2010, 3110 and 4370.  (Am. Compl. ¶¶ 167-69.)  However, there is also no private right of action for violations of FINRA Rules or NASD Rules, the predecessor to FINRA Rules.  *See In re Verifone Sec. Litig.*, 11 F.3d 865, 870 (9th Cir. 1993) ("It is well established that violation of an exchange rule will not support a private claim."); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 681 (9th Cir. 1980) ("[T]here is no implied right of action for an NASD rule violation."); *Price (Tilley) v. Charles Schwab & Co.*, No. 14-cv-06194, 2015 WL 9694811, at *4 (C.D. Cal. Apr. 6, 2015) ("Case law establishes such violations [of NASD rules] do not give rise to a private right of action."); *Hauptman v. Interactive Brokers, LLC*, 349 F. Supp. 3d 292, 296 (S.D.N.Y. 2018) (no private right of action for violation of FINRA Rules).

*Third*, Plaintiffs refer vaguely to NSCC and DTCC rules.  (Am. Compl. ¶¶ 152-65.)  But Plaintiffs do not have a private right of action for purported violations of DTCC or NSCC rules.  Indeed, DTCC and NSCC rules are simply contractual agreements between the DTCC and NSCC and their members.  If Robinhood had breached a DTCC or NSCC rule— which Plaintiffs fail to plead with any particularity—that would amount to a breach of Robinhood's contractual obligations to DTCC or NSCC, not a breach of any duty to Plaintiffs.  *See Harper v. Wausau Ins. Co.*, 66 Cal. Rptr. 2d 64, 68 (Ct. App. 1997) ("A third party should not be permitted to enforce covenants made not for his benefit" unless the contract is "expressly made for his benefit.") (citations omitted).

The same principle holds true under Florida law.  Florida courts have recognized that while an alleged violation of a rule or regulation can inform the applicable standard of care in a negligence action, or even serve as evidence of breach, it cannot provide the source of duty itself.  *See Estate of Johnson ex rel. Johnson v. Badger Acquisition of Tampa LLC*, 983 So. 2d 1175, 1182 (Fla. 2d DCA 2008) ("[T]he violation of a statute may be evidence of negligence, but such evidence only becomes relevant to a breach of a standard of care after the law has imposed a duty of care.").

Therefore, the SEC Regulations, FINRA Rules and DTCC or NSCC rules that Plaintiffs reference in their Complaint do not provide a cognizable tort duty on which Plaintiffs can premise their negligence claims.  Because Plaintiffs have not identified any cognizable tort duty—either professional, generalized, or provided by statute or regulation—that could support its negligence claims, Plaintiffs' negligence and gross negligence claims should be dismissed.

22

## II.      ROBINHOOD DOES NOT OWE ITS CUSTOMERS A FIDUCIARY DUTY (COUNT III).

To plead a breach of fiduciary duty claim under California law, Plaintiffs must allege adequately (1) the existence of a fiduciary duty, (2) its breach, and (3) damage proximately caused by that breach.  *See Brown v. California Pension Administrators & Consultants, Inc*., 52 Cal. Rptr. 2d 788, 796 (Ct. App. 1996).  "The absence of any one of these elements is fatal to the cause of action."  *Id.* (citation omitted).  Plaintiffs' claims fail here because they do not (and cannot) allege facts to support the conclusion that Robinhood owes any fiduciary duty.  As explained below, courts routinely hold that non-discretionary brokers like Robinhood that do not provide customers with investment advice do not owe a fiduciary duty.  Therefore, the two theories on which Plaintiffs base their claims—(i) where Plaintiffs could not place "buy" orders on the Robinhood platform for the Suspended Stocks, and (ii) where one named Plaintiff's pending trade order was canceled—do not give rise to a breach of fiduciary duty.

### A.      Robinhood Owed No Duty to Customer Plaintiffs To Make Its Brokerage Services Available for Any Specific Security At All Times.

Eleven of the twelve Plaintiffs allege that Robinhood Financial and Robinhood Securities breached a fiduciary duty by imposing limited purchase restrictions, which allegedly led to their inability to submit purchase orders for the meme stocks on the Robinhood platform on January 28, 2021.  (*See* Am. Compl. ¶¶ 29-79, 304, 306.)  Specifically, these Plaintiffs allege that Robinhood "deactivated the 'buy' button as a feature," which prevented Plaintiffs and other investors from purchasing the meme stocks on the Robinhood platform for a certain time, thereby allegedly "depress[ing] prices" of the meme stocks.  (*Id.* ¶¶ 3, 241-42.)  However, as explained below, Robinhood owed no fiduciary (or other) duty to any customer to make its brokerage services available for any particular security at all times.  Accordingly, Plaintiffs have no claim for breach of fiduciary duty because where there is no duty, there can be no breach.

Under California law, it is well settled that only securities brokers managing a discretionary account (*i.e.*, making trading decisions on their customers' behalf) or providing investment advice to their customers owe a fiduciary duty.  *See Twomey v. Mitchum, Jones & Templeton, Inc.*, 69 Cal. Rptr. 222, 242 (Ct. App. 1968) ("It is contended that the sole obligation of the broker-dealer is to carry out the stated objectives of the customer.  This may well be true when the broker is acting merely as [an] agent to carry out purchases or sales selected by the

customer, with or without the broker's recommendation.  Here, however, there is evidence to sustain the finding that [the broker's] recommendations, as invariably followed, were for all practical purposes the controlling factor in the transactions."); *see also Petersen v. Sec. Settlement Corp.*, 277 Cal. Rptr. 468, 472-73 (Ct. App. 1991) (noting that the duties described "in *Twomey* and *Duffy* are predicated expressly on evidence a broker's recommendation was the controlling factor in the customer's stock purchases," and concluding that those duties do not apply where the relationship is non-discretionary and the broker issues no investment advice).

By contrast, where—as here—the relationship between a broker and a customer is "confined to the simple performance of transactions ordered by a customer" a fiduciary duty "do[es] not arise." *Id.* at 473; *see also Brown*, 52 Cal. Rptr. 2d at 797 (finding that a non-discretionary broker did not have "an expansive fiduciary relationship giving rise to a duty to notify the customer of the risky nature of an investment, or . . . of the poor performance of similar investments held by different customers"); *Apollo Capital Fund LLC v. Roth Capital Partners LLC*, 70 Cal. Rptr. 3d 199, 214 (Ct. App. 2007) (finding no fiduciary duty where the stockbroker was not an "adviser to the customer about investment decisions").[18]

Plaintiffs (like all customers) acknowledged when they signed the Customer Agreement that Robinhood serves as a non-discretionary broker.  (*See* Cust. Agmt. § 5.A.) Through the Customer Agreement, Plaintiffs (like all customers) agreed that their accounts are self-directed and that Robinhood neither provides investment advice nor recommends any securities, transactions or other orders to its customers:

> [N]either Robinhood nor any of its employees, agents, principals, or representatives (1) provide investment advice in connection with this Account; (2) recommend any security, transaction or order; (3) solicit orders; (4) act as a market maker in any security; (5) make discretionary trades; and (6) produce or provide first-party research providing [] specific investment strategies such as buy, sell or hold recommendations, first-party ratings and/or price targets.

___

[18] Robinhood Securities, as the clearing broker, could not, by definition, owe any such duties.  *See Petersen*, 277 Cal. Rptr. at 473 (noting that "it would be unfair to impose upon [a clearing broker] disclosure duties which can only be performed by a broker with direct access to customers").  The same holds under Florida law.  *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1338-39 (11th Cir. 2010) ("[C]learing brokers ordinarily owe no fiduciary duty to the customers of introducing brokers."); *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 n.12 (11th Cir. 2002) (same).

(Cust. Agmt. § 5.A.)  Accordingly, Plaintiffs agree that Robinhood's "sole obligation . . . is to carry out the stated objectives of the customer"; as a result, Robinhood does not owe a fiduciary duty to its customers.  *Twomey*, 69 Cal. Rptr. at 242.  Robinhood therefore had no fiduciary duty to make its brokerage services available to customers for all securities at all times—which is the basis for Plaintiffs' complaint here.  (Am. Compl. ¶¶ 241-42.)  Holding otherwise has no basis in the law and "would impose unjustifiably onerous burdens on [non-discretionary] brokers."  *Unity House, Inc. v. N. Pac. Inv., Inc.*, 918 F. Supp. 1384, 1393 (D. Haw. 1996) (applying California law).[19]

Nor can Plaintiffs state a claim for breach of fiduciary duty based on a premise that fiduciary obligations arose as a result of a "special" or "confidential" relationship between Robinhood and its customers.  (*See* Am. Compl. ¶¶ 121-23, 303, 305.)  Under California law, "fiduciary relations arise out of certain canonical relationships that are legally defined and regulated," while confidential relations—sometimes called special relations—"do not fall into well-defined categories of law and depend heavily on the circumstances."[20]  *Richelle L. v. Roman Cath. Archbishop*, 130 Cal. Rptr. 2d 601, 610 (Ct. App. 2003).  To establish a confidential relationship that gives rise to a fiduciary duty, a plaintiff must establish "1) [t]he vulnerability of one party to the other which 2) results in the empowerment of the stronger party by the weaker which 3) empowerment has been solicited or accepted by the stronger party and 4) prevents the weaker party from effectively protecting itself."  *Id.* at 611.  "[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law."  *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 181 P.3d 142, 150 (Cal. 2008) (citation omitted).

---

[19] Plaintiffs' allegation in passing that Robinhood "retain[s] discretion to execute certain transactions within Plaintiffs' . . . accounts" and that this discretion somehow gives rise to a fiduciary duty is entirely conclusory.  (*See* Am. Compl. ¶ 305.)  Plaintiffs do not cite any provision in the Customer Agreement nor any other documents indicating that Robinhood retains any such discretion sufficient to give rise to a fiduciary duty.  Plaintiffs also do not allege that Robinhood exercised any such discretion within any Plaintiff's account.

[20] To clarify, this type of "special relationship" is distinct from the *J'Aire* special relationship discussed in Part I.B.

Here, Plaintiffs do not allege facts that would support the existence of a confidential relationship.  *First*, Plaintiffs have not pleaded the type of relationship in which confidential relationships are typically found—that is, personal relationships involving a power imbalance.  For example, confidential relationships have been found in relationships between attorneys and their individual clients, *see Aoki v. Gilbert*, No. 11-cv-02797-TLN-CKD, 2020 WL 6741693, at *25 (E.D. Cal. Nov. 17, 2020), as well as relationships between elderly individuals in weakened mental and physical conditions and acquaintances who advise them on financial transactions, *see Richelle*, 130 Cal. Rptr. 2d at 610 (collecting cases).  Plaintiffs here instead allege a purported confidential relationship between Robinhood and its *millions* of customers, who self-direct their trade orders with Robinhood Financial primarily through the use of Robinhood's web or mobile application.  (Am. Compl. ¶ 116.)  Courts have declined to find confidential relationships in similar circumstances.  *See Siemonsma v. Mut. Diversified Emps. Fed. Credit Union*, No. SACV 10-1093 DOC, 2011 WL 1485979, at *3 (C.D. Cal. Apr. 19, 2011) (finding no confidential relationship between a credit union and customer because "[t]o find a confidential relationship arising out of the mere depositing of funds would make confidential relationships ubiquitous in the lending industry, which strikes the Court as contrary to the meaning of a confidential relationship").

*Second*, even if Plaintiffs had adequately alleged they are vulnerable and that they placed trust in Robinhood, they have not alleged—nor could they allege—that Robinhood "accepted" any fiduciary obligations.  *See City Sols., Inc. v. Clear Channel Commc'ns, Inc.*, 201 F. Supp. 2d 1048, 1050 (N.D. Cal. 2002).  Here, Robinhood expressly disclaimed—and Plaintiffs expressly agreed—that Robinhood does not "provide investment advice."  (Cust. Agmt. § 5.A.) California courts have recognized the validity of contract provisions, such as the one in the Customer Agreement, that disclaim fiduciary obligations.  *See Meyers v. Guar. Sav. & Loan Ass'n*, 144 Cal. Rptr. 616, 620 (Ct. App. 1978); *Carleton v. Tortosa*, 17 Cal. Rptr. 2d 734, 740 (Ct. App. 1993).  Robinhood's provision of information to the public through Robinhood Learn and Robinhood Snacks does not change this result.  Those educational tools are not limited to Robinhood customers and do not constitute providing investment advice.  (*See* Am. Compl. ¶ 123.)  Similarly, Robinhood Gold provides subscribers access to special features and information, none of which include investment advice.  (*Id.*; Am. Compl. Ex. B at 2.)  To the extent Plaintiffs are alleging that a fiduciary duty arose because Robinhood advertised and

promoted its product (Am. Compl. ¶ 121), Plaintiffs cannot do so.  *See Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 673 P.2d 660, 676 (Cal. 1983) (declining to find a fiduciary relationship between sellers of cereal and their customers in the context of advertising because "[w]e believe the various statutory and common law doctrines fashioned to protect the consumer from overreaching and deception are strong and flexible enough to accomplish that purpose, and that it is unnecessary to call upon the law of fiduciary relationships to perform a function for which it was not designed and is largely unsuited").  Plaintiffs therefore have failed to allege facts that would support the existence of a confidential relationship that could give rise to a fiduciary duty.

Plaintiffs cannot state a claim for breach of fiduciary duty under Florida law either.  Courts applying Florida law impose fiduciary duties on brokers only to the extent that such brokers provide investment advice.  *See Gochnauer v. A.G. Edward & Sons, Inc.*, 810 F.2d 1042, 1049 & n.9 (11th Cir. 1987) ("The discretionary account is when the broker has a continuous obligation to manage the account; a nondiscretionary account was *defined as an account where the customer and broker confer as to a particular transaction* but the broker has no continuing management duty over the account once the single transaction is complete." (emphasis added) (citing *Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 461 F. Supp. 951, 952-53 (E.D. Mich. 1978))).  Under *Gochnauer*, "the focus of the inquiry is how the fiduciary acted in his selection of the investment."  *Id.* at 1050.  Moreover, authorities on which Florida courts rely emphasize that "[i]n a non-discretionary account each transaction is viewed singly" and that "duties to the customer cease when the transaction is closed."  *Leib*, 461 F. Supp. at 952-53.  As stated above, Plaintiffs (and all customers) acknowledge that Robinhood does not provide any advice, nor does it confer with its customers concerning their trades.  (*See* Cust. Agmt. § 5.A.)  Additionally, Plaintiffs themselves allege that on the morning of January 28 they did not engage in a transaction, because they were unable to place "buy" orders.  For all of these reasons, Robinhood does not owe a fiduciary duty to Plaintiffs.

Plaintiffs also have not alleged facts that would support a claim under Florida law that any fiduciary duty could have arisen as a result of a special or confidential relationship between Robinhood and its customers.  Under Florida law, "[t]o establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party."  *Bankest Imports,*

*Inc. v. ISCA Corp.*, 717 F. Supp. 1537, 1541 (S.D. Fla. 1989). "[T]he fact that one party places its trust in the other does not create a confidential relationship in the absence of some recognition, acceptance, or undertaking of the duties of a fiduciary on the part of the other party." *Id.* Here, even if Plaintiffs could allege they depended on Robinhood and placed trust in Robinhood, they have not alleged a "recognition" or "acceptance" of fiduciary obligations by Robinhood that could give rise to a fiduciary duty. Robinhood expressly disclaimed fiduciary obligations in the Customer Agreement and Florida courts recognize that such disclaimers bar a finding of a fiduciary duty. *Kipnis v. Bayerische Hypo- und Vereinsbank, AG*, No. 13-23998-CIV, 2017 WL 11103938, at *11 (S.D. Fla. June 26, 2017) ("As the breach of fiduciary duty claim is barred by contract, the Court need not address whether Plaintiffs allege a 'special relationship'"); *Scolieri v. John Hancock Life Ins. Co. (U.S.A.)*, No. 2:16-CV-690-FTM-38CM, 2017 WL 700215, at *5 (M.D. Fla. Feb. 22, 2017) (finding no fiduciary relationship because "any expectations Plaintiffs may have for advice from [defendant] were expressly and unequivocally disclaimed" by the relevant contract). Moreover, as explained above, even if there were no contract disclaiming fiduciary obligations, Plaintiffs still have not sufficiently alleged a confidential relationship because the services Plaintiffs allege Robinhood provides do not amount to "advis[ing], counsel[ing], and protect[ing]" Robinhood customers. *See Bankest Imports*, 717 F. Supp. at 1541. Therefore, Plaintiffs have failed to allege facts to support the existence of a confidential relationship under either California or Florida law that could give rise to a fiduciary duty.

**B.      Robinhood Also Owed No Duty to Plaintiff Moody for Canceled Orders.**

Plaintiff Moody separately alleges that Robinhood breached its fiduciary duty to her by canceling a previously confirmed stock purchase order that she had placed. She alleges that she placed a stock purchase order on the evening of January 27, to be executed the following day, and Robinhood canceled the order before the market opened on the morning of January 28. (*See* Am. Compl. ¶¶ 80-84, 243-44.) To the extent that Robinhood owed any duty to execute Moody's trade order, such a duty arose under agency law. *Caravan Mobile Home Sales v. Lehman Brothers Kuhn Loeb, Inc.*, 769 F.2d 561, 567 (9th Cir. 1985) ("A stockbroker is an agent of his client."). It is clearly established, however, that the duties owed by the agent (Robinhood) to the principal (Moody) are "limited to the scope of the agency set forth in the agreement." *Meyers*, 144 Cal. Rptr. at 620; *see also Carleton*, 17 Cal. Rptr. 2d at 740 (same).

28

As set forth above, the Customer Agreement provides that "Robinhood may at any time, in its sole discretion and without prior notice to Me, *prohibit or restrict My ability to trade securities.*" (Cust. Agmt. § 5.F (emphasis added).)  The Customer Agreement further provides that "Robinhood may at any time, at its sole discretion and without prior notice to Me . . . (ii) refuse to accept any of My transactions, [or] (iii) refuse to execute any of My transactions." (*Id.* § 16.)  Because the Customer Agreement expressly permitted—and Plaintiffs expressly agreed—that Robinhood could restrict or cancel trades, Robinhood acted within the scope of its agency with its customers, and Plaintiff Moody's claims fail as a result.

Applying Florida law would yield the same result, because where a broker "carrie[s] out its preexisting, agreed upon tasks properly . . . , [it] forecloses [a] breach of fiduciary duty claim." *See Misabec Mercantile, Inc. de Panama v. Donaldson, Lufkin & Jenrette ACLI Futures, Inc.*, 853 F.2d 834, 839 (11th Cir. 1988).  The Court did not have occasion to consider this critical point in *Pinchasov v. Robinhood Financial LLC* because it was unable to consider the contents of the Robinhood Customer Agreement.  (*See* Order Denying Motion to Dismiss, *Pinchasov v. Robinhood Financial LLC*, No. 20-cv-24897-CMA (S.D. Fla.), ECF No. 48 at 5-6.)  Here, Plaintiffs have attached the Customer Agreement to the Amended Complaint and incorporated it into the pleadings.  (*See supra* Legal Standards, Section II.)  The terms of the agency relationship in the Customer Agreement supplant any purported tort duty Robinhood may have owed to Plaintiff Moody to execute her trades.  Therefore, Plaintiffs cannot state a claim for breach of fiduciary duty under any of the theories they advance.

## III.     PLAINTIFFS CANNOT STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT V).

Plaintiffs' claim that Robinhood Financial and Robinhood Securities breached the implied covenant of good faith and fair dealing by "exercis[ing] [] discretion" to impose a "one-sided halt on trading on the Suspended Stocks" fails.  (Am. Compl. ¶ 330.)  To state a claim for a breach of the covenant, a plaintiff must allege:  "(1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010).  The covenant of good faith and fair dealing is an implied term of every contract.  *See* Restatement (Second) of Contracts § 205.  But the covenant "exists merely to prevent one

29

contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." *Guz v. Bechtel Nat'l Inc.*, 8 P.3d 1089, 1110 (Cal. 2000) (emphasis in original).  It does not "impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id.*  Thus, a claim for breach of the implied covenant of good faith and fair dealing necessarily fails if the conduct at issue was expressly permitted by the contract.

That is the case here.  The Customer Agreement expressly permitted Robinhood to put in place the trading restrictions at issue.  (*See* Cust. Agmt. § 5.F.)  Specifically, it states that "Robinhood may at any time, in its sole discretion, and without prior notice to [the customer], prohibit or restrict [the customer's] ability to trade securities." (*Id.*)  Plaintiffs cannot "invoke the implied covenant [of good faith and fair dealing] to prohibit conduct that a contract expressly allows." *21st Century Ins. Co. v. Super. Ct.*, 213 P.3d 972, 982 (Cal. 2009); *see also Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 826 P.2d 710, 728 (Cal. 1992) ("We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement.").  Because the purchase restrictions at issue were expressly permitted by the Customer Agreement, there was no breach of the implied covenant of good faith and fair dealing.

In an attempt to circumvent the express plain-text "discretion" reserved by Robinhood in the Customer Agreement, Plaintiffs—while claiming Robinhood breached the implied covenant by "exercis[ing] [its] discretion" (Am. Compl. ¶ 330)—allege at the same time that Robinhood did *not* exercise discretion to put in place the trading limits because it was "forced" to do so (*id.* ¶ 178).  This is both contradictory and nonsensical.  Such a reservation of discretion allows Robinhood to put in place purchase limitations when it is necessary to do so, such as during the extreme market events in late January 2021.[21]  Because the Customer Agreement expressly permitted the conduct at issue, Plaintiffs cannot state a claim for breach of the covenant.  *See Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.*, No. 5:12-CV-

---

[21] Equally nonsensical is Plaintiffs' claim that a March 23, 2021 Robinhood blog post shows that the January 2021 PCO restrictions constituted a breach.  (Am. Compl. ¶ 177.)  This blog post—published *two months after* the events at issue—identifies some circumstances in which Robinhood (or any broker) might impose trading restrictions in the ordinary course of business.  (*Id.* ¶ 177 n.10.)  This does not negate Robinhood's discretion to impose such restrictions during *extraordinary* market events, such as in late January 2021.

06209-EJD, 2013 WL 3974537, at *8 (N.D. Cal. July 31, 2013) (dismissing plaintiff's claim for breach of the covenant of good faith and fair dealing where the plaintiff's allegations of breach were "inconsistent with the terms of the [agreements]").  This claim therefore fails under California law.

Applying Florida law yields the same result.  The Florida Supreme Court has been clear that a plaintiff cannot prevail "(1) where application of the covenant would contravene the express terms of the agreement; and (2) where there is no accompanying action for breach of an express term of the agreement."  *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n*, 94 So. 3d 541, 548 (Fla. 2012).  Both factors are present here.  Plaintiffs' claim must be dismissed.  *See id.*; *see also Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1152 (11th Cir. 2005) (where a defendant "[does] not breach the express terms of the [contract], Florida law precludes a finding of breach of the implied covenant of good faith and fair dealing").

## IV.   PLAINTIFFS CANNOT STATE A CLAIM FOR BREACH OF AN IMPLIED DUTY OF CARE (COUNT IV).

In Count IV, Plaintiffs allege that "Robinhood Financial and Robinhood Securities failed to use reasonable care in performing their brokerage services and failed to perform those services competently."  (Am. Compl. ¶ 323.)  This implied duty of care claim fails for the same reason as their good faith and fair dealing claim:  it is contradicted by the express terms of the Customer Agreement.

In certain circumstances, California courts will read an implied duty of care into a contract, giving rise to a breach of contract claim for breach of that implied duty.  *See Holguin v. Dish Network LLC*, 178 Cal. Rptr. 3d 100, 113-14 (Ct. App. 2014) (affirming judgment of breach of contract based on implied duty to install satellite TV equipment properly); *Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1160 (N.D. Cal. 2020) (explaining that to the extent an "implied duty to perform [] contractual duties competently" arose, it was a contractual obligation, not a tort duty), *aff'd*, 857 F. App'x 907 (9th Cir. 2021).  However, it is the "*express contractual terms* [that] give rise to implied duties, violations of which may themselves constitute breaches of contract."  *Holguin*, 178 Cal. Rptr. 3d at 114 (emphasis added).  Therefore, no implied duty claim can lie if the express terms of the contract *permit* the conduct constituting the alleged breach.  *See Series AGI W. Linn of Appian Grp. Invs. DE, LLC v. Eves*, 158 Cal. Rptr. 3d 193, 203 (Ct. App. 2013) (explaining that implied terms "are justified only when they are not inconsistent with some express term of the contract") (citation omitted);

31

*Corral v. Select Portfolio Servicing, Inc.*, No. C-15-1542 EMC, 2015 WL 4149144, at *4 (N.D. Cal. July 9, 2015) (declining to read an implied duty into a contract where the language of the contract indicated no duty existed), *vacated on other grounds*, 878 F.3d 770, 776 (9th Cir. 2017). As described above, the express terms of the contract between Plaintiffs and Robinhood permitted the very conduct at issue.  (*See* Cust. Agmt. § 5.F.)  Therefore, Plaintiffs' implied duty of care claim must be dismissed.[22]

## V.    PLAINTIFFS FAIL TO STATE A CLAIM OF TORTIOUS INTERFERENCE AGAINST ROBINHOOD MARKETS (COUNT VI).

For all of the reasons discussed so far, Plaintiffs have no claim against Robinhood:  Robinhood does not owe tort duties to its customers in negligence or fiduciary duty (*see supra* Sections I and II); Plaintiffs have declined to assert a breach of contract claim against Robinhood because the Customer Agreement expressly permitted Robinhood to put temporary purchase restrictions in place; and Plaintiffs' claims for breach of implied contractual obligations fail because the express terms of the Customer Agreement preclude any such implied terms (*see supra* Sections III and IV).

Plaintiffs are left pleading a perplexing claim in the alternative that Robinhood Markets tortiously interfered in Plaintiffs' contractual relationship with both Robinhood Financial and Robinhood Securities.  (Am. Compl. ¶¶ 335-41.)  Under California law, "[t]ortious interference with contractual relations requires '(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.'" *Ixchel Pharma, LLC v. Biogen, Inc.*, 470 P.3d 571, 575 (Cal. 2020) (citation omitted).  Plaintiffs claim that Robinhood Markets "procured the breaches of implied contractual duties" by forcing Robinhood Financial and Robinhood Securities "to stop performing their legal obligations with respect to the Customer Agreement."  (*Id.* ¶¶ 335, 338.)  This claim too fails as a matter of law, for two reasons.

---

[22] Plaintiffs concede that California law, rather than Florida law, applies to their implied duty of care claim.  (Am. Compl. ¶ 321.)  If Florida law did apply, the claim would also fail because Florida law does not recognize an implied duty of care.

*First*, Plaintiffs fail to plead any "actual breach or disruption of the contractual relationship" between Robinhood Financial and Robinhood Securities and Plaintiffs. *Ixchel*, 470 P.3d at 575. Without a breach or disruption of contract, there can be no claim for tortious interference with contract. *See id.* As set forth above, Plaintiffs have abandoned any breach of contract claim against Robinhood Financial or Robinhood Securities. (*See supra* Sections I and II.) Nor have Plaintiffs stated a claim that either Robinhood Financial or Robinhood Securities breached any "implied" contractual duties. (*See supra* Sections III and IV.) As a result, Plaintiffs fail to plead any "actual breach or disruption of" their business relationship and their tortious interference claim against Robinhood Markets therefore fails. *Ixchel*, 470 P.3d at 575.

*Second*, Plaintiffs fail to plead that Robinhood Markets engaged in any "intentional acts designed to induce a breach or disruption of the contractual relationship." *Id.* At the outset, Plaintiffs concede that the decision to implement a PCO on the Suspended Stocks was made by Robinhood *Securities*, and not by the parent entity, Robinhood Markets. (Am. Compl. ¶ 28.) This leaves Plaintiffs to plead that Robinhood Markets should be liable for a tortious interference claim predicated on "mismanagement of its subsidiaries," which allegedly "forced its subsidiaries to stop performing their obligations under the Customer Agreement." (*Id.* ¶ 339.) Plaintiffs allege a litany of purported actions and inactions by Robinhood Markets, including "forcing the Suspended Stocks into PCO" and other alleged failures to anticipate and prepare for the extreme market volatility. (*Id.* ¶ 338.) Putting aside that Plaintiffs concede that putting "the Suspended Stocks into PCO" was a decision made by Robinhood Securities, and not Robinhood Markets, nowhere do Plaintiffs allege that any of these were "intentional acts" by Robinhood Markets "designed to induce a breach or disruption of the contractual relationship," *Ixchel*, 470 P.3d at 575. By their own terms, the failures that Plaintiffs allege, such as failure to have a supervisory control system or back-up plans, are at most alleged to have been negligent, not intentional acts that could form the basis of a tortious interference claim. Plaintiffs neither allege that Robinhood Markets acted with specific intent to disrupt the contractual relationship nor do they plead that Robinhood Markets "[knew] that the interference [was] certain or substantially certain to occur as a result of [its] action." *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 952 (Cal. 2003) (citation omitted). Thus, Plaintiffs' tortious interference claim against Robinhood Markets fails on these bases under California law.

Plaintiffs would face the same outcome under Florida law.  A tortious interference claim under Florida law requires Plaintiffs to plead "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference."  *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 385 (Fla. 4th DCA 1999) (citations omitted).  As set out above, Plaintiffs do not plead a breach of contract (express or implied) against Robinhood Securities or Robinhood Financial, nor do they plead that any of Robinhood Markets' purported acts (*see* Am. Compl. ¶ 338) were "intentional and unjustified."  *Salit*, 742 So. 2d at 385.  Thus, Plaintiffs' tortious interference claim against Robinhood Markets similarly fails under both California and Florida law.

## VI.   PLAINTIFFS FAIL TO STATE A CLAIM OF CIVIL CONSPIRACY (COUNT VII).

Plaintiffs further contend that Robinhood Markets, Robinhood Financial and Robinhood Securities "unlawfully conspired to tortiously interfere with Plaintiffs and the Robinhood Class's contractual and business relationships with Robinhood Financial and Robinhood Securities."  (Am. Compl. ¶ 343.)  The tortious interference claim in Count VI is the sole basis for the conspiracy claim that Plaintiffs allege in Count VII.  (*See id.*)  This cause of action fails for two reasons.

*First*, under California law, civil "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration."  *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 457 (Cal. 1994).  As stated above, Plaintiffs fail to state a predicate tort claim—here, tortious interference; therefore, their effort to impose conspiracy liability also fails.

*Second*, even if Plaintiffs did state a claim of tortious interference against Robinhood Markets in Count VI, Plaintiffs' civil conspiracy claim in Count VII fails because Robinhood Securities and Robinhood Financial are both parties to the Customer Agreement.  "Because a party to a contract owes no tort duty to refrain from interference with its performance, he or she cannot be bootstrapped into tort liability by the pejorative plea of conspiracy."  *Id.* at 459.  On top of the fact that the PCO restrictions were permitted under the Customer Agreement (*supra* Argument, Section I), Robinhood Financial and Robinhood

Securities "assumed only the obligation to perform the contract or pay damages for breach," not the "independent tort obligation not to interfere with the performance of [their] own contract." *Applied Equip.*, 869 P.2d at 462.  Accordingly, Robinhood Financial and Robinhood Securities cannot be "bootstrapped into tort liability by the pejorative plea of conspiracy."  *Id.* at 459. Thus, Plaintiffs' civil conspiracy claim is left with only Robinhood Markets (already the defendant on the tortious interference claim in Count VI)—and a conspiracy cannot be asserted against only a single actor.  *See Wyatt v. Union Mortg. Co.*, 598 P.2d 45, 51 (Cal. 1979).  For this separate reason, Plaintiffs' civil conspiracy claim must be dismissed.

Applying Florida law would yield the same result.  Under Florida law, a plaintiff must plead, "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997).  Plaintiffs plead a civil conspiracy claim predicated on their underlying tortious interference claim.  (Am. Compl. ¶ 343.)[23]  For the reasons above, this claim fails because Plaintiffs fail to state a tortious interference claim against Robinhood Markets.  But even if Plaintiffs did state a tortious interference claim against Robinhood Markets, as under California law, Florida law also provides that "a cause of action for interference does not exist against one who is himself a party to the contract allegedly interfered with." *Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1224 (Fla. 3d DCA 1980).  Because Plaintiffs cannot state a claim for the predicate tortious interference claim nor can they allege a conspiracy with contracting parties, they cannot state a claim for civil conspiracy.

## VII.   ROBINHOOD OWES NO DUTIES TO NON-ROBINHOOD CUSTOMERS—ALL CLAIMS BROUGHT BY NON-ROBINHOOD CUSTOMERS THEREFORE FAIL.

Plaintiffs further purport to bring their negligence and gross negligence claims against Robinhood on behalf of a putative "Nationwide Investor Class," which includes non-

---

[23] Plaintiffs claim would fail under Florida law for the additional reason that they have not pleaded "some peculiar power of coercion possessed by the conspirators by virtue of their combination, which power an individual could not possess." *Florida Fern Growers Ass'n v. Concerned Citizens of Putnam County*, 616 So. 2d 562, 565 (Fla. 5th DCA 1993) (citation omitted).

Robinhood customers.  (Am. Compl. ¶¶ 273, 292, 301.)[24]  These claims fail because—in addition to the grounds for dismissal set forth above in Section I, and the fact that none of the Plaintiffs is a non-Robinhood customer who could meet the typicality and adequacy requirements to represent such a class—Robinhood does not owe non-Robinhood customers any duties.

Assuming for purposes of this motion, as Plaintiffs do not plead otherwise, that Florida law would apply to non-Robinhood Customer plaintiffs' claims,[25] Robinhood does not owe them a generalized duty of care for the reasons set forth above (*see* Argument, Section I.B). Additionally, even if Robinhood did owe tort duties to its customers—it does not—Robinhood still would not owe tort duties to non-Robinhood customers with whom it has no relationship whatsoever.  To conclude otherwise would defy longstanding principles that an actor does not owe a tort duty with respect to economic losses in instances where there is no "link between the parties" and there is no "other extraordinary circumstance" that would justify imposition of a duty.  *See Tank Tech*, 244 So. 3d at 393.  Robinhood had no preexisting relationship with non-Robinhood Customers, knew nothing about what securities they bought or sold, and indeed had no reason to know of their existence.  Therefore, Plaintiffs' negligence-based claims fail to the extent that they are brought by or on behalf of non-Robinhood customers.

## VIII.   PLAINTIFFS' AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.

The Court should dismiss Plaintiffs' Amended Complaint with prejudice. Plaintiffs have had two opportunities to state a claim against Robinhood and many months more to consider their arguments and legal theories against Robinhood since the first complaints were filed at the end of January 2021.  Unlike the vast majority of plaintiffs at the pleading stage, Plaintiffs have also had the opportunity to review thousands of pages of internal Robinhood communications and documents regarding the facts and issues in this case.  Indeed, Plaintiffs received a two-week extension of the deadline to file their initial Complaint so they could have

---

[24] Plaintiffs limit their other five claims to the purported Robinhood class.  (*See* Am. Compl. ¶¶ 308, 325, 333, 341, 346.)

[25] Robinhood takes no position on which state's law would apply to any non-Robinhood customers' claims.  However, Robinhood acknowledges that non-Robinhood customers would not be bound to the contractual choice-of-law provision, which applies California law and governs Robinhood customers' claims.  (*See supra* Legal Standards, Section II.)

more time to review and incorporate those documents into their Complaint.  (*See* ECF No. 335.) Plaintiffs then had an additional eight weeks between when they filed their initial Complaint and when they filed their Amended Complaint, with the benefit of seeing Robinhood's motion to dismiss the original Robinhood Tranche consolidated complaint (ECF No. 406), to further refine their legal theories and incorporate information they obtained from the thousands of pages of documents Robinhood produced to them.  With all of these considerations in their favor, Plaintiffs still have failed to state a claim on which relief can be granted, and any further amendment would be futile.  Therefore, Robinhood respectfully submits that this Action should be dismissed with prejudice.

<u>**CONCLUSION**</u>

For the foregoing reasons, Robinhood respectfully submits that the Amended Consolidated Class Action Complaint for the Robinhood Tranche should be dismissed with prejudice for failure to state a claim.

Dated: October 15, 2021

<u>/s/ Samuel A. Danon</u>

**HUNTON ANDREWS KURTH LLP**
Samuel A. Danon (FBN 892671)
Gustavo Javier Membiela (FBN 513555)
María Castellanos Alvarado (FBN 116545)
333 S.E. 2 Avenue, Suite 2400
Miami, FL 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460
sdanon@huntonak.com
gmembiela@huntonak.com
mcastellanos@hunton.com

**CRAVATH, SWAINE & MOORE LLP**
Antony L. Ryan
Kevin J. Orsini
Brittany L. Sukiennik
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
aryan@cravath.com
korsini@cravath.com
bsukiennik@cravath.com

*Counsel for Defendants Robinhood Markets, Inc., Robinhood Financial LLC and Robinhood Securities, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 15, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I further certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

Dated:  October 15, 2021

              */s/ Samuel A. Danon*
              Samuel A. Danon (FBN 892671)