# Exhibit 2

# CUSTOMER ACCOUNT AGREEMENT

This Customer Account Agreement (the "Agreement") sets forth the respective rights and obligations of Apex Clearing Corporation ("you" or "your" or "Apex") and the Customer's (as defined below) brokerage firm (the "Introducing Broker", Webull Financial LLC), and the customer(s) identified on the New Account Application (the "Customer") in connection with the Customer's brokerage account with the Introducing Broker ("the Account"). The Customer hereby agrees as follows with respect to the Account, which the Customer has established with the Introducing Broker for the purchase, sale or carrying of securities or contracts relating thereto and/or the borrowing of funds, which transactions are cleared through you. To help the government fight the funding of terrorism and money laundering, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. In order to open an account, the Customer will provide information that will allow you to identify the Customer including, but not limited to, the Customer's name, address, date of birth, and the Customer's driver's license or other identifying documents.

1. Applicable Rules and Regulations. All transactions for the Account shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market and its clearing house, if any, upon which such transactions are executed, except as otherwise specifically provided in this Agreement.

2. Definitions. "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to you, whether now existing or hereafter arising. "Securities and other property" shall include, but shall not be limited to, money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery.

2A. Investment Objective Definitions. "**Capital Preservation**" -- a conservative investment strategy characterized by a desire to avoid risk of loss;; "**Income**" -- strategy focused on current income rather than capital appreciation;; "**Growth**" -- investing in stocks with strong earnings and/or revenue growth or potential;; "**Speculation**" -- taking larger risks, usually by frequent trading, with hope of higher than--average gain. All strategies involve various types and levels of risk, the most common of which are market, credit, inflation, business and interest rate.

3. Breach; Security Interest. Whenever in your discretion you consider it necessary for your protection, or for the protection of the Customer's Introducing Broker or in the event of, but not limited to;; (i) any breach by the Customer of this or any other agreement with you or (ii) the Customer's failure to pay for securities and other property purchased or to deliver securities and other property sold, you may sell any or all securities and other property held in any of the Customer's accounts (either individually or jointly with others), cancel or complete any open orders for the purchase or sale of any securities and other property, and/or borrow or buy--in any securities and other property required to make delivery against any sale,

including a short sale, effected for the Customer, all without notice or demand for deposit of collateral, other notice of sale or purchase, or other notice or advertisement, each of which is expressly waived by the Customer, and/or you may require the Customer to deposit cash or adequate collateral to the Customer's account prior to any settlement date in order to assure the performance or payment of any open contractual commitments and/or unsettled transactions. You have the right to refuse to execute securities transactions for the Customer at any time and for any reason. Any and all securities and other property belonging to the Customer or in which the Customer may have an interest held by you or carried in any of the Customer's accounts with you (either individually or jointly with others) shall be subject to a first and prior security interest and lien for the discharge of the Customer's obligations to you, wherever or however arising and without regard to whether or not you have made advances with respect to such securities and other property, and you are hereby authorized to sell and/or purchase any and all securities and other property in any of the Customer's accounts, and/or to transfer any such securities and other property among any of the Customer's accounts to the fullest extent of the law and without notice where allowed. The losses, costs and expenses, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by you in the (i) collection of a debit balance and/or any unpaid deficiency in the accounts of the Customer with you or (ii) defense of any matter arising out of the Customer's securities transactions, shall be payable to you by the Customer. The Customer understands that because of circumstances beyond broker--dealers control, its customers' voting rights may be impaired. For example, if the stock of a company that another customer has purchased has not yet been received from the seller(s), then other customers' abilities to vote that company's stock could be impaired until those shares are received. In addition, if the stock of a company that the Customer has purchased has not yet been received from the seller(s), then payments received by the Customer from the Introducing Broker, in lieu of the dividends on that stock not yet received, may receive tax treatment less favorable than that accorded to dividends.

4. <u>Cancellation.</u> You are authorized, in your discretion, should you for any reason whatsoever deem it necessary for your protection, without notice, to cancel any outstanding order, to close out the accounts of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

5. <u>Payment of Indebtedness Upon Demand.</u> The Customer shall at all times be liable for the payment upon demand of any obligations owing from the Customer to you, and the Customer shall be liable to you for any deficiency remaining in any such accounts in the event of the liquidation thereof (as contemplated in Paragraph 3 of this Agreement or otherwise), in whole or in part, by you or by the Customer;; and the Customer shall make payment of such obligations upon demand.

6. <u>Accounts Carried as Clearing Broker.</u> The Customer understands that you are carrying the accounts of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the account of the Customer has been introduced to you. Until receipt from the Customer of written notice to the contrary, you may accept from and rely upon the Customer's Introducing Broker for (a) orders for the purchase or sale in said account

of securities and other property, and (b) any other instructions concerning the Customer's accounts. The Customer represents that the Customer understands that you act only to clear trades introduced by the Customer's Introducing Broker and to effect other back office functions for the Customer's introducing broker. The Customer confirms to you that the Customer is relying for any advice concerning the Customer's accounts solely on the Customer's Introducing Broker. The Customer understands that all representatives, employees and other agents with whom the Customer communicates concerning the Customer's account are agents of the Introducing Broker, and not your representatives, employees or other agents and the Customer will in no way hold you liable for any trading losses that the Customer may incur. The Customer understands that you are not a principal of or partner with, and do not control in any way, the Introducing Broker or its representatives, employees or other agents. The Customer understands that you

will not review the Customer's accounts and will have no responsibility for trades made in the Customer's accounts. You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents. Notwithstanding the foregoing, in the event that the Customer initiates a claim against you in your capacity as clearing broker and does not prevail, the Customer shall be responsible for the costs and expenses associated with your defense of such claim. The Customer understands you shall be entitled to exercise and enforce directly against the Customer all rights granted to the Introducing Broker.

6A. <u>Accounts Carried as Custodian.</u> In some cases, the Customer's account is being carried by arrangement with the Customer's Investment Advisor or Investment Manager, who uses you as their Broker--Dealer custodian. The Customer acknowledges that your role as custodian is to hold or custody account assets, distribute or collect funds on behalf of the Customer's account, execute and clear trades under instruction of the Customer's Investment Advisor or Investment Manager, generate account statements and provide other custodial services as may be mandated by various regulatory standards and requirements. The Customer understands that in the capacity as custodian, you will not offer investment advice, review the Customer's accounts, and will have no responsibility for trades made in the Customer's accounts. Additionally, in your capacity as custodian, you will not verify the accuracy of management fees that the Customer pays to Investment Advisors or Investment Managers pursuant to the terms of the Investment Management Agreement executed between the Customer and the Investment Advisor or Investment Manager. Notwithstanding the foregoing, in the event that the Customer initiates a claim against you in your capacity as custodial broker and does not prevail, the Customer shall be responsible for the costs and expenses associated with your defense of such claim.

7. <u>Communications.</u> You may send communications to the Customer at the Customer's address on the New Account Application or at such other address as the Customer may hereafter give you in writing, and all communications so sent, whether by mail, telegraph, or otherwise, shall be deemed given to the Customer personally, whether actually received or not. Reports of execution of orders and statements of accounts of the Customer shall be conclusive if not objected to in writing to you, the former within five (5) days and the latter within ten (10) days, after forwarding by you by mail or otherwise. In consideration of your

sending any mail to me in care of a Post Office Box Address or a third party, I hereby agree that "all correspondence of any nature whatsoever" sent to me in such address will have the same force and effect as if it had been delivered to me personally.

8. ARBITRATION AGREEMENT. THIS AGREEMENT CONTAINS A PREDISPUTE

ARBITRATION CLAUSE. BY SIGNING AN ARBITRATION AGREEMENT, THE PARTIES AGREE AS FOLLOWS:

a. ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORM IN WHICH A CLAIM IS FILED;

b. **ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; APARTY'**S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AW ARD IS VERY LIMITED;

c. THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;

d. THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD UNLESS, IN AN ELIGIBLE CASE, A JOINT REQUEST FOR AN EXPLAINED DECISION HAS BEEN SUBMITTED BY ALL PARTIES TO THE PANEL AT LEAST 20 DAYS PRIOR TO THE FIRST SCHEDULED HEARING DATE;
e. THE PANEL OF ARBITRATORS MAY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY;

f. THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT;

g. THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THE DISCLOSURES ABOVE. ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE CUSTOMER AND YOU, OR THE INTRODUCING BROKER, OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS

AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE CUSTOMER'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE **FINANCIAL INDUSTRY REGULATORY AUTHORITY ("FINRA")**. THE DECISION AND AWARD OF THE ARBITRATOR(S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre- -dispute arbitration agreement against any person who has initiated in court a putative class action;; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied;; or (ii) the class is de--certified;; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

9. Representations. The Customer represents that the Customer is of majority age, that the Customer is not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock, or of a member of any exchange, or of a member firm or member corporation registered on any exchange or of a bank, trust company, insurance company or of any corporation, firm or individual engaged in the business dealing either as broker or as principal in securities, bills of exchange, acceptances or other forms of commercial paper. If the Customer is a corporation, partnership, trust or other entity, the Customer represents that its governing instruments permit this Agreement, that this Agreement has been authorized by all applicable persons and that the signatory on the New Account Application is authorized to bind the Customer. The Customer represents that the Customer shall comply with all applicable laws, rules and regulations in connection with the Customer's account. The Customer further represents that no one except the Customer has an interest in the account or accounts of the Customer with you.

10. Joint Accounts. If the New Account Application indicates that the Account shall consist of more than one person, the Customer's obligations under this Agreement shall be joint and several. References to the "Customer" shall include each of the customers identified on the New Account Application. You may rely on transfer or other instructions from any one of the Customers in a joint account, and such instructions shall be binding on each of the Customers. You may deliver securities or other property to, and send confirmations; notices, statements and communications of every kind, to any one of the Customers, and such action shall be binding on each of the Customers. Notwithstanding the foregoing, you are authorized in your discretion to require joint action by the joint tenants with respect to any matter concerning the joint account, including but not limited to the giving or cancellation of orders and the withdrawal of money or securities. In the case of Tenants by the Entirety accounts, joint action will be required for all matters concerning the joint account. Tenants by Entirety is not recognized in certain jurisdictions, and, where not expressly allowed, will not be a permitted designation of the account.

11. <u>Other Agreements.</u> If the Customer trades any options, the Customer agrees to be bound by the terms of your Customer Option Agreement. The Customer understands that copies of these agreements are available from you and, to the extent applicable, are incorporated by reference herein. The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between you and the Customer.

12. <u>Data Not Guaranteed.</u> The Customer expressly agrees that any data or online reports is provided to the Customer without warranties of any kind, express or implied, including but not limited to, the implied warranties of merchantability, fitness of a particular purpose or non-infringement. The Customer acknowledges that the information contained in any reports provided by you is obtained from sources believed to be reliable but is not guaranteed as to its accuracy of completeness. Such information could include technical or other inaccuracies, errors or omissions. In no event shall you or any of your affiliates be liable to the Customer or any third party for the accuracy, timeliness, or completeness of any information made available to the Customer or for any decision made or taken by the Customer in reliance upon such information. In no event shall you or your affiliated entities be liable for any special incidental, indirect or consequential damages whatsoever, including, without limitation, those resulting from loss of use, data or profits, whether or not advised of the possibility of damages, and on any theory of liability, arising out of or in connection with the use of any reports provided by you or with the delay or inability to use such reports.

13. <u>Payment for Order Flow Disclosure.</u> Depending on the security traded and absent specific direction from the Customer, equity and option orders are routed to market centers (i.e., broker-dealers, primary exchanges or electronic communication networks) for execution. Routing decisions are based on a number of factors including the size of the order, the opportunity for price improvement and the quality of order executions, and decisions are regularly reviewed to ensure the duty of best execution is met. You or the Introducing Broker may receive compensation or other consideration for the placing of orders with market centers for execution. The amount of the compensation depends on the agreement reached with each venue. The source and nature of compensation relating to the Customer's transactions will be furnished upon written request.

14. <u>Credit Check.</u> You are authorized, in your discretion, should you for any reason deem it necessary for your protection to request and obtain a consumer credit report for the Customer.

15. <u>Miscellaneous.</u> If any provision of this Agreement is held to be invalid or unenforceable, it shall not affect any other provision of this Agreement. The headings of each section of this Agreement are descriptive only and do not modify or qualify any provision of this Agreement. This Agreement and its enforcement shall be governed by the laws of the state of Texas and shall cover individually and collectively all accounts which the Customer has previously opened, now has open or may open or reopen with you, or any introducing broker, and any and all previous, current and future transactions in such accounts. Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by your authorized representative. This Agreement and all provisions shall inure to the benefit of you and your successors, whether by merger, consolidation or

otherwise, your assigns, the Introducing Broker, and all other persons specified in Paragraph 8. You shall not be liable for losses caused directly or indirectly by any events beyond your reasonable control, including without limitation, government restrictions, exchange or market rulings, suspension of trading or unusually heavy trading in securities, a general change in economic, political or financial conditions, war or strikes. You may transfer the accounts of the Customer to your successors and assigns. This Agreement shall be binding upon the Customer and the heirs, executors, administrators, successors and assigns of the Customer. Failure to insist on strict compliance with this Agreement is not considered a waiver of your rights under this Agreement. At your discretion, you may terminate this Agreement at any time on notice to the Customer, the Customer will continue to be responsible for any obligation incurred by the Customer prior to termination. The Customer may not assign the Customer's rights or delegate the Customer's obligations under this Agreement, in whole or in part, without your prior consent.

16. SIPC Protection. As a member of the Securities Investor Protection Corporation (SIPC), funds are available to meet customer claims up to a ceiling of $500,000, including a maximum of $250,000 for cash claims. For additional information regarding SIPC coverage, including a brochure, please contact SIPC at (202) 371--8300 or visit www.sipc.org. Apex has purchased an additional insurance policy through a group of London Underwriters to supplement SIPC protection. This additional insurance policy becomes available to customers in the event that SIPC limits are exhausted and provides protection for securities and cash up to certain limits. Similar to SIPC protection, this additional insurance does not protect against a loss in the market value of securities.

17. Tax Treaty Eligibility. This agreement shall serve as the Customer's certification that you are eligible to receive tax treaty benefits between the country or (of) residence indicated on the new account form and the country(ies) of origin holding jurisdiction over the instruments held within the customer's account.