UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  21-2989-MDL-ALTONAGA/Torres

In re:

JANUARY 2021 SHORT SQUEEZE
TRADING LITIGATION
_____/

This Document Relates to the Actions in the
Other Broker Tranche

## ORDER

**THIS CAUSE** came before the Court on Defendant, Apex Clearing Corporation's Rule 12 Motion to Dismiss Plaintiffs' Amended Consolidated Other Broker Tranche Class Action Complaint [ECF No. 422], filed on October 15, 2021.  Plaintiffs filed a [Response] in Opposition [ECF No. 435], to which Defendant filed a Reply [ECF No. 440].  The Court has carefully considered the Amended Consolidated Class Action Complaint ("Amended CCAC") [ECF No. 410], the parties' written submissions, the record, and applicable law.  For the following reasons, the Motion is granted.

## I.        BACKGROUND

This putative class action is brought on behalf of Defendant's customers and other individual investors who suffered losses as a result of Defendant's decision to block them from purchasing shares of AMC Entertainment Holdings, Inc. ("AMC"), GameStop Corporation ("GME"), and Koss Corporation ("KOSS") for nearly three-and-a-half hours on January 28, 2021. (*See* Am. CCAC ¶¶ 1–2, 29, 67, 93).  Defendant is a broker-dealer for certain direct customers and provides clearing broker services to introducing broker-dealers and their customers.  (*See id.* ¶¶ 1, 24–25).

Leading up to January 28, 2021, individual investors began purchasing large numbers of shares of AMC, GME, and KOSS.  (*See id.* ¶¶ 3, 57, 59, 64).  The increased demand for these stocks drove share prices up and led to a "short squeeze."[1]  (*See id.* ¶¶ 59–64).  In a "short squeeze," individual investors like Plaintiffs typically "stand to benefit . . . as the value of the stocks they purchased increases.  Short sellers, on the other hand, risk further losses, as stock prices rise as a natural consequence of market forces."  (*Id.* ¶ 63 (alteration added)).

In response to the ongoing market volatility, at approximately 10:31 a.m.[2] on January 28, 2021, Defendant "blocked its direct customers and directed its [i]ntroducing [b]roker-[d]ealers to block [their] [c]ustomers from purchasing shares of AMC, GME, and KOSS."  (*Id.* ¶ 67 (alterations added); *see also id.* ¶¶ 68–72, 74–75).

Defendant has maintained it restricted trading due to potential future collateral requirements the National Securities Clearing Corporation ("NSCC")[3] "appeared it may impose on [Defendant] as part of the margin system NSCC maintains to comply with the [Securities and Exchange Commission]'s standards for covered clearing agencies."  (*Id.* ¶ 77 (alterations added; quotation marks omitted)).  Specifically, Defendant received an NSCC report at 8:30 a.m. projecting substantially increased collateral requirements.  (*See id.* ¶ 76).

Yet Defendant did not take any action to "confirm the higher collateral number" from the NSCC.  (*Id.* ¶ 80).  Moreover, documents submitted to regulators reveal Defendant knew its NSCC collateral deposit requirement was lower than initially expected at 10:00 a.m. — approximately 30

---

[1] In a "short squeeze," short sellers are pressured to purchase the affected stocks at inflated, and continually rising, prices in order to cover their losses and prevent potentially greater losses.  (*See* Am. CCAC ¶ 62).

[2] All times refer to the Central Time Zone.

[3] The NSCC "is the central counterparty that clears cash transactions in the U.S. equities markets, netting securities deliveries and payments among NSCC's clearing members, and guaranteeing completion of trades even if one party to the transaction defaults."  (Am. CCAC ¶ 32).

minutes before it implemented the trading restrictions.  (*See id.* ¶¶ 76, 78, 80).  And despite having the opportunity to confirm the lower number on a call with the Depository Trust and Clearing Corporation[4] at 10:47 a.m., Defendant waited until 1:55 p.m. to lift the trading restrictions.  (*See id.* ¶¶ 76, 78–80).  In any event, Defendant has subsequently admitted it was never unable to meet its capital requirements.  (*See id.* ¶¶ 83–84).

As a result of Defendant's one-way trading restrictions, Plaintiffs were prevented from purchasing additional shares of these stocks, the prices of these stocks fell, and Plaintiffs were forced to either sell at artificially suppressed prices or continue holding their shares despite depreciating values.  (*See id.* ¶¶ 2, 6–7, 65).

Plaintiffs assert claims for negligence, breach of fiduciary duty, and tortious interference with a business relationship.  (*See id.* ¶¶ 100–123).  Plaintiffs, Erik Chavez (*see id.* ¶¶ 14–17) and Peter Jang (*see id.* ¶¶ 18–21), did not file lawsuits in other districts that were then transferred to the Court through the Judicial Panel on Multidistrict Litigation ("JPML" or "Panel"), nor did they file a separate action in this District that was then consolidated with this multidistrict litigation ("MDL").  Instead, Plaintiffs assert claims related to the events of January 28 for the first time directly in this MDL.  (*See generally id.*).[5]

---

[4] The Depository Trust Clearing Corporation "keeps a record of the stocks owned through the clearing brokerage firms for NSCC members, including [Defendant], and establishes financial requirements for clearing brokerage firm members, which include deposit requirements designed to reduce risk to the DTCC."  (Am. CCAC ¶ 31 (alteration added)).

[5] Plaintiffs Chavez and Jang first asserted their claims in the Consolidated Class Action Complaint (*see* [ECF No. 359] ¶¶ 70–77), in response to which Defendant filed a Motion to Dismiss [ECF No. 405]. Plaintiffs then filed the Amended CCAC, thereby rendering moot the initial Motion to Dismiss.

Defendant moves to dismiss the Amended CCAC on the grounds that: (1) Plaintiffs' claims are not properly before the Court as part of this MDL proceeding (*see* Mot. 22–24)[6]; (2) Plaintiffs lack Article III standing (*see id.* 24–28); (3) Plaintiffs fail to state claims upon which relief can be granted (*see id.* 28–57, 61–62); and (4) Plaintiffs' state law tort claims are preempted by federal securities laws (*see id.* 57–61).  Because the Court agrees that Plaintiffs' claims have not been properly consolidated in this MDL, and hence the Court lacks subject matter jurisdiction, the Court does not reach Defendant's remaining arguments.

## II.    LEGAL STANDARD

Subject matter jurisdiction must be established before a case can proceed on the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–95 (1998).  This is because "[f]ederal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (alteration added).  It is presumed that a federal court lacks jurisdiction in a case until the plaintiff demonstrates the court has jurisdiction over the subject matter.  *See id.* (citing *Turner v. Bank of N. Am.*, 4 U.S. 8, 11 (1799); *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 182–83 (1936)).  "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case[.]"  *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) (alterations added; citations omitted).

A defendant may attack subject matter jurisdiction under Rule 12(b)(1) in two ways — a facial attack or factual attack.  *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).  A facial attack asserts a plaintiff has failed to allege a basis for subject matter jurisdiction in the complaint.  *See id.* (citation omitted).  In a facial attack, the plaintiff's allegations are taken

---

[6] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

as true for purposes of the motion, *see id.* (citation omitted); and the plaintiff is afforded safeguards like those provided in challenging a Rule 12(b)(6) motion raising the failure to state a claim for relief, *see Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citation omitted).  A district court may *sua sponte* convert a motion to dismiss under Rule 12(b)(6) to a Rule 12(b)(1) motion to dismiss relying on a facial challenge to subject matter jurisdiction.  *See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1247, 1251 (11th Cir. 2007).

In contrast to a facial challenge, a factual attack "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered."  *Menchaca*, 613 F.2d at 511 (citation omitted).  In a factual attack, courts are free to weigh the evidence to satisfy themselves they have the power to hear the case.  *See Lawrence*, 919 F.2d at 1529 (citations omitted).  No presumption of truth attaches to the plaintiff's allegations, and the existence of disputed material facts does not prevent the trial court from evaluating for itself the merits of the jurisdictional claim.  *See id.* (citations omitted).  "In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists."  *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002) (citations and footnote call number omitted).

"A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice."  *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (citing *Crotwell v. Hockman-Lewis Ltd.*, 734 F.2d 767, 769 (11th Cir. 1984)).

## III.    ANALYSIS

Defendant presents a factual challenge to the Court's subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. section 1407(a) and the Supreme Court's decision in *Lexecon*

*Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).  (*See* Mot. 22–24; Reply 34–36).  Specifically, Defendant argues both *Lexecon* and Section 1407 require cases consolidated in an MDL to be remanded to their originating courts once pretrial proceedings have concluded.  (*See* Mot. 22).  Because Plaintiffs asserted their claims for the first time directly in the MDL, their claims do not have an originating "home" court to return to (*see id.* 23); and there is no apparent statutory authority that would permit the Court, sitting in its capacity as custodian of the MDL member cases, to accept new complaints or new claims by new plaintiffs directly within the MDL proceeding (*see id.*; Reply 35).  Therefore, Defendant contends the Court lacks subject matter jurisdiction over Plaintiffs, Chavez and Jang's claims.  (*See* Mot. 23; Reply 34–36).[7]  The Court agrees.

Section 1407 sets forth the procedure by which actions may be added to an MDL.  The statute was enacted to authorize the transfer and centralization of existing actions filed in different districts that share common facts.  *See Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 410 (2015) (citing H.R. Rep. No. 1130, 90th Cong., 2d Sess., 2 (1968)).  Upon a determination that consolidation would promote convenience and efficiency, the JPML may transfer such actions to a "transferee" district for consolidated pretrial proceedings.  *See* 28 U.S.C. §§ 1407(a)–(b).  After the JPML authorizes an MDL and transfers actions to a transferee district, "[a]ny party or counsel in actions previously transferred under Section 1407 shall promptly notify the Clerk of the Panel of any potential tag-along actions in which that party is also named or in which that counsel appears."  J.P.M.L. R. 7.1(a) (alteration added).  The Clerk may then "enter a conditional order

---

[7] Although there are some features of Section 1407 that suggest the issue is a defect in venue, the Court treats it as an issue of subject matter jurisdiction because the parties address it as such in their briefing and other courts that have considered the propriety of direct filing have likewise treated it as a matter of subject matter jurisdiction.  Regardless of whether the defect is one of venue or subject matter jurisdiction, the fate of Plaintiffs, Chavez and Jang's claims remains the same.

transferring that action to the previously designated transferee district court[.]"  *Id.* 7.1(b) (alteration added).

There is one exception to this process: "[p]otential tag-along actions filed in the transferee district do not require Panel action."  *Id.* 7.2(a) (alteration added).  To invoke this exception, a party filing a tag-along action in the transferee district "should request assignment of such action[] to the Section 1407 transferee judge in accordance with applicable local rules."  *Id.* (alteration added).  Under the Southern District of Florida's Local Rules, counsel is instructed to inform the court if an action is similar or related to another action or proceeding then pending before the court.  *See* L.R. 3.8.  If appropriate, the court will then transfer the newly-filed action to the judge presiding over the existing proceedings.  *See* S.D. Fla. Internal Operating Procedures 2.15.00.

A close review of the language of the MDL statute and Panel rules indicates that a plaintiff's claims are properly before an MDL court only where the plaintiff has first asserted his or her claims in a separate action.  For example, Section 1407 limits those "actions [which] may be transferred to any district for coordinated or consolidated pretrial proceedings" to "civil *actions* involving one or more common questions of fact [that] *are pending in different districts*[.]"  28 U.S.C. § 1407(a) (alterations and emphases added); *see In re Mortg. Elec. Registration Sys. (Mers) Litig.*, No. 09-md-02119, 2016 WL 3931820, at *11 (D. Ariz. July 21, 2016) ("[Section] 1407(a) indicates that all actions must first be filed and pending before that action may be transferred for consolidated pretrial proceedings." (alteration added; citation omitted)).

Similarly, a tag-along action is defined as "a civil *action pending in a district court* which involves common questions of fact with either (1) actions on a pending motion to transfer to create an MDL or (2) actions previously transferred to an existing MDL[.]"  J.P.M.L. R. 1.1(h) (alteration and emphasis added).  Both the statute and the Rules thus presuppose the existence of separate

"civil actions" that are "pending" in different districts prior to consolidation and transfer into an MDL.  The sole exception to Panel action likewise contemplates the filing of a separate, individual action.  *See id.* 7.2(a) (referring to "potential tag-along *actions* filed in the transferee *district*" rather than directly in an MDL (emphases added)).

As stated, Plaintiffs, Chavez and Jang, did not assert their claims in any separate civil action.  They did not have any separate civil action pending which could have been transferred to the Court by the JPML, either in the first instance upon creation of the MDL or in a later tag-along action.  Plaintiffs did not file a tag-along action in this District or in any court, for that matter, nor did they request consolidation or assignment of their claims to the undersigned.  In short, Plaintiffs did not abide by the procedures prescribed in Section 1407 and the JPML Rules for joining this MDL.  *See In re Mortg. Elec. Registration Sys.*, 2016 WL 3931820, at *6 ("[I]t is clear that neither . . . Section 1407, the Rules of Procedure of the [JPML], nor the Local Rules permit a transferee court to join a new plaintiff in the MDL when such plaintiff never filed his own case or had his case transferred to the court by the [JPML]." (alterations added)).

Plaintiffs' failure to assert their claims in a separate action(s) not only directly contravenes the procedures set forth by statute and Panel Rules, but it is also inconsistent with the Supreme Court's directive that MDL member cases be remanded to their originating courts upon completion of pretrial proceedings.  Section 1407 requires MDL transferee courts, upon the conclusion of pretrial proceedings, to remand "[e]ach action . . . to the district from which it was transferred[.]" 28 U.S.C. § 1407(a) (alterations added); *see also In re FCA US LLC Monostable Elec. Gearshift Litig.*, No. 16-md-2744, 2017 WL 6402992, at *3 (E.D. Mich. Mar. 21, 2017) ("Section 1407 makes clear that the role of a transferee court is to act as a judicial caretaker of actions that come from somewhere else, manage those actions to ready them for trial (or until they are resolved by

motion or settlement), and then send them back for trial." (citation omitted)), *reconsideration denied*, 2017 WL 6402991 (E.D. Mich. Mar. 23, 2017); *In re: Soc'y Ins. Co. Covid-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2964, 2021 WL 3290962, at *6 (N.D. Ill. Aug. 1, 2021) ("The MDL statute is clear in its division of labor between the transferor and transferee district courts, contemplating that the case will originate in its proper home district . . . and then later return to that district for trial." (alteration added; citation omitted)).

The Supreme Court emphasized this statutory language in *Lexecon* and reiterated the transferee court's "obligat[ion]" to send all transferred actions back to their originating districts. *Lexecon*, 523 U.S. at 34 (alteration added).[8] *See also id.* at 35 (explaining that the statute imposes an express "remand duty"); *id.* at 40 (noting the statute's "straightforward language imposing the Panel's responsibility to remand"; quoting the legislative history demonstrating that Congress intended the remand requirement to be obligatory); *In re FCA US*, 2017 WL 6402992, at *3 (explaining the Supreme Court in *Lexecon* held that cases in a Section 1407 MDL "*must* return" to their home districts (emphasis in original; citation omitted)).

Thus, both Section 1407 and *Lexecon* make clear that, "[i]n the unique procedural world of an MDL, the authority of the transferee court to handle the case . . . ends on conclusion of pretrial proceedings."  *In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.*, MDL No. 33-1439, 2008 WL 4763029, at *3 (D. Or. Oct. 28, 2008) (alterations added; citing *Lexecon*, 523 U.S. at 36–37); *see also In re FCA US*, 2017 WL 6402992, at *3 ("The transferee court is without power to take any further action in the individual cases once [pretrial] proceedings are concluded." (alteration added; citing *Lexecon*, 523 U.S. at 28)).  This is so because "[c]ases

---

[8] In *Lexecon*, the Supreme Court held that a transferee district court did not have the authority under section 1404(a) to transfer an individual MDL action from the originating district to itself for trial, because Section 1407 mandates that MDL member cases be remanded at the conclusion of pretrial proceedings.  *See* 523 U.S. at 34–37, 40.

consolidated for MDL pretrial proceedings ordinarily retain their separate identities" throughout the MDL process. *Gelboim*, 574 U.S. at 413 (alteration added; footnote call number omitted).

Indeed, Section 1407 refers to a multitude of individual "actions"; it does not create "any monolithic multidistrict action[.]"  *Id.* (alteration added; citation, quotation marks, and footnote call number omitted); *see also Lexecon*, 523 U.S. at 37 ("Section 1407 [does not] imbu[e] transferred actions with some new and distinctive . . . character[.]" (alterations added)).  MDL member cases are "intended to resume their independent status once the pretrial stage of litigation is over."  *In re Mortg. Elec. Registration Sys.*, 2016 WL 3931820, at *8 (citation and quotation marks omitted).  And the obligation to remand "each" transferred action, as set forth in Section 1407 and *Lexecon*, reflects that intention.

The addition of plaintiffs directly in an MDL tangibly frustrates these principles.  Plaintiffs who assert their claims for the first time in an MDL's master pleading lack a case capable of retaining or resuming a separate identity.  Moreover, the practice leaves transferee courts without options at the conclusion of pretrial proceedings, as direct-filed cases do not have a transferor "home" court to which the transferee court can remand them.  *See* J.P.M.L. R. 1.1(j) ("'Transferor district' is the federal district court where an *action was pending* prior to its transfer pursuant to Section 1407, for inclusion in an MDL, and where the Panel may *remand that action* at or before the conclusion of pretrial proceedings." (emphases added)); *see also In re Packaged Ice Antitrust Litig.*, No. 08-md-1952, 2011 WL 6178891, at *8 (E.D. Mich. Dec. 12, 2011) ("Were the Court to permit the addition of these [p]laintiffs, the Court would be without options at the time of remand[.]" (alterations added)); *In re: Soc'y Ins. Co.*, 2021 WL 3290962, at *6 (agreeing with defendant's observation that direct filing by new plaintiffs puts "*Lexecon* rights at stake, given that there is no obvious transferor court to which to remand those plaintiffs' claims for trial[,]" and

requiring new plaintiffs to file actions in their home districts before seeking transfer into the MDL (alteration added)); *In re Farmers Ins. Exch.*, 2008 WL 4763029, at *3 (claims by new plaintiffs, which "were not transferred . . . through proper MDL procedures but, rather, were simply added by fiat, . . . had no 'home federal court' to which [the MDL court] could eventually remand them" (alterations added)); *In re Mortg. Elec. Registration Sys.*, 2016 WL 3931820, at *10 ("This Court has no 'home court' to remand [newly-added plaintiff]'s action to at the conclusion of pretrial proceedings because [his] claim was never filed in any court nor transferred to this Court by the [JPML] or by Local Rule." (alterations added; citation omitted)); *In re FCA US*, 2017 WL 6402992, at *3 ("[I]n the case of the newly-named plaintiffs who have never filed any lawsuit anywhere, in any court, there is no 'transferor court' from which this Court could inherit its authority over their claims[,]" and to which the transferee court could remand them.  (alterations added; citation omitted)).

Simply put, the direct addition of new plaintiffs' claims in an MDL is "at odds" with the statutory scheme established by Congress.  *Id.* ("The idea that an MDL proceeding is an environment that can spawn fresh actions by new plaintiffs is at odds with [Section 1407]." (alteration added)); *see also In re Mortg. Elec. Registration Sys.*, 2016 WL 3931820, at *7 (Adding new plaintiffs by amendment in an MDL "directly contradicts the appropriate procedures designated in [Section] 1407 for consolidating cases for pretrial proceedings." (alteration added; citation omitted)); *In re: Soc'y Ins. Co.*, 2021 WL 3290962, at *6 (concluding "it is improper to add new plaintiffs . . . 'directly' to [an] MDL" because "[t]he MDL statute is clear" (alterations added)).

The Court — sitting in its capacity not as an ordinary district court, but as an MDL transferee court — plainly only has jurisdiction over MDL member cases properly transferred or

consolidated under Section 1407 and the accompanying JPML Rules.  *See* 28 U.S.C. § 1407(f) (permitting the Panel to prescribe additional rules).  It therefore follows, using elementary logic, that a transferee court does not have jurisdiction over an action that was never "filed" or "pending[,]" within the meaning of Section 1407.  *Id.* § 1407(a) (alteration added); J.P.M.L. R. 1.1(h), 1.1(j), 7.1, 7.2(a).  It is obvious that an unfiled case does not invoke federal subject matter jurisdiction in any federal court, let alone an MDL transferee court.  *See* 15 Fed. Prac. & Proc. Juris. § 3866 (4th ed.) (A transferee judge's authority "does not extend to . . . un-transferred federal cases[] *or unfiled claims*." (alterations and emphasis added; footnote call number omitted)).  In other words, a transferee court "does not have subject matter jurisdiction to adjudicate an action that is lacking in original federal jurisdiction."  *In re Mortg. Elec. Registration Sys.*, 2016 WL 3931820, at *8 (citation and quotation marks omitted); *see also In re Packaged Ice*, 2011 WL 6178891, at *8–9 (Adding new plaintiffs directly to an MDL "ignore[s] basic Article III principles and . . . bypasse[s] the appropriate MDL process for consolidation of these plaintiffs' claims."; "While an MDL court has 'substantial discretion' with regard to consolidated cases, [it does] 'not have the power to override the application of substantive legal standards.'  The Court cannot simply 'assimilate' these proposed Plaintiffs' claims into this MDL action." (alterations added; citation omitted)).

The weight of authority further supports the conclusion that an MDL transferee court lacks subject matter jurisdiction over claims by new plaintiffs asserted for the first time directly in an MDL proceeding. *See In re Mortg. Elec. Registration Sys.*, 2016 WL 3931820, at *5–11 (dismissing new plaintiff's claims for lack of subject matter jurisdiction because "[a] plaintiff may not unilaterally add actions in the MDL that have not been pending in federal court elsewhere or which were not transferred to the transferee court through the MDL process" (alteration added;

CASE NO.  21-2989-MDL-ALTONAGA/Torres

citation omitted; collecting cases)); *In re Farmers Ins. Exch.*, 2008 WL 4763029, at *5 ("I have discovered no authority for this court, as an MDL transferee court, to exercise subject matter jurisdiction over state law claims not transferred by the MDL Panel and [therefore] over which this court lacks original jurisdiction." (alteration added)); *In re Packaged Ice*, 2011 WL 6178891, at *8–9; *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 17-md-2785, 2021 WL 2585065, at *76–77 (D. Kan. June 23, 2021), *reconsideration denied*, 2021 WL 4948269, at *12–13 (D. Kan. Oct. 25, 2021); *see also In re: Soc'y Ins. Co.*, 2021 WL 3290962, at *6 ("The Court has also not been able to find persuasive caselaw that explains precisely, with regard to statutory and precedential authority, how plaintiffs may be added 'directly' to an MDL[.]" (alteration added)); *In re FCA US*, 2017 WL 6402992, at *2–4.[9]  The Court agrees with the analyses undertaken in these cases and finds that it lacks subject matter jurisdiction over Plaintiffs, Chavez and Jang's claims.

Plaintiffs cite *In re Takata Airbag Products Liability Litigation*, 379 F. Supp. 3d 1333 (S.D. Fla. 2019), to support their addition of new plaintiffs directly into the MDL.  There, at first glance, the transferee court appears to have permitted direct filing, in the same manner Plaintiffs, Chavez and Jang, seek to do in this case.  *See id.* at 1336–37, 1338.  But, as Defendant points out (*see* Reply 34), a closer look at the record reveals that the plaintiffs who allegedly "direct-filed" in *Takata* were actually added via amendment to an existing — *separate* — underlying civil action (S.D. Fla., Case No. 14-cv-24009).  *See In re FCA US*, 2017 WL 6402992, at *3 ("None of the cases cited by the plaintiffs endorsed attempts by parties to add newly-named individual plaintiffs

_____

[9] *Cf. In re KBR, Inc.*, 736 F. Supp. 2d 954, 978 (D. Md. 2010) (striking consolidated MDL complaint where plaintiffs added new plaintiffs "nowhere to be found in the original forty-three . . . complaints Plaintiffs filed in this action"); *In re Motor Fuel Temperature Sales Pracs. Litig.*, No. 07-md-1840, 2008 WL 7708967, at * 3–4 (D. Kan. Nov. 18, 2008) (denying motion to amend consolidated complaint to add new plaintiffs, or to add new plaintiffs in the underlying cases already consolidated in the MDL but permitting them to file new cases in the underlying jurisdictions).

CASE NO.  21-2989-MDL-ALTONAGA/Torres

without explicitly making them parties to a specific, underlying, properly-transferred case.").  By contrast, Chavez and Jang are not affiliated with an underlying civil case number in this District, let alone a proper home district.

In addition, the cases relied on by the *Takata* court are inapposite.  *See Takata*, 379 F. Supp. 3d at 1338–39.  For example, the plaintiffs in *Heartland Payment Systems* did not file directly into the MDL, as Plaintiffs here have attempted to do.  Rather, they filed their own separate suit in the Southern District of Texas, asserting diversity jurisdiction, and then moved to consolidate their suit with actions already consolidated and transferred to that district by the JPML, under Panel Rule 7.2(a).  *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, MDL No. 2046, 2011 WL 1232352, at *4 (S.D. Tex. Mar. 31, 2011).

Likewise, in *In re Managed Care Litigation*, one case (*Humana*) was filed in the Southern District of Florida, and six others were transferred from the Southern District of Mississippi by the JPML to this District for consolidation with the *Humana* case.  *See* 150 F. Supp. 2d 1330, 1334 (S.D. Fla. 2001).  "Apparently[,] each [Southern District of Mississippi] [p]laintiff filed [an amended] complaint directly [in the Southern District of Florida] in anticipation of [their] case[s] being transferred from the Southern District of Mississippi . . . by the MDL Panel."  *Id.* at 1336 n.5 (alterations added).  Nothing in the opinion, however, suggests those plaintiffs attempted to add new plaintiffs in their amended complaints.  *See id.*  Because the amended complaints merely "reiterat[ed]" the allegations of the original transferred complaints, the court declined to dismiss them on that basis.  *Id.* (alteration added).

Unlike the present situation, each of the purportedly "direct-filed" complaints in these cases had its own separate case number and retained its identity throughout the MDL.  Thus, although the *Takata* court relies on these cases in support of permitting the addition of new plaintiffs directly

CASE NO.  21-2989-MDL-ALTONAGA/Torres

in an MDL, neither case actually stands for that proposition or contemplates "direct filing" in the manner Plaintiffs have done here.[10]

The *Takata* court also cites *In re Vioxx Products Liability Litigation*, 478 F. Supp. 2d 897 (E.D. La. 2007).  In *Vioxx*, the court entered a direct filing order — an entirely separate procedure whereby the defendant waived venue objections on the stipulation that, when pretrial proceedings concluded, the court would remand direct-filed cases (by plaintiffs who did not reside in the transferee district) to a federal district court of proper venue under 28 U.S.C. section 1404(a).  *See In re Vioxx*, 478 F. Supp. 2d at 903–04, 904 n.2.  Similarly, Plaintiffs cite *Wahl v. General Electric Company*, 786 F.3d 491 (6th Cir. 2015), in support of direct filing, but the plaintiffs in that case also direct filed only because the MDL court implemented a direct filing order.  *See id.* at 493.[11] This procedure, purely a creature of stipulation or other agreement, is irrelevant in this case, where the parties have neither stipulated to nor requested entry of a direct filing order, and the Court has not entered one.

Finally, Plaintiffs argue their direct-filed claims should be allowed to proceed in this MDL for efficiency's sake.  (*See* Resp. 25 (stating that direct filing avoids "the seemingly inefficient step of filing-and-transfer from the JPML" (citation and quotation marks omitted)); *id.* 26 (arguing MDLs are "designed to increase efficiency," and direct filing "eliminate[s] the delays associated with transfer of cases into an MDL proceeding" (alteration added; citation omitted))).  Plaintiffs perceive Defendant's subject matter jurisdiction argument as "little more than a stall tactic that would result in the identical outcome of adding [P]laintiffs Jang and Chavez's tort claims to a

---

[10] *Takata* and the cases it cites are also distinguishable because, in each case, the defendants challenged (and the court addressed) personal jurisdiction, not subject matter jurisdiction.

[11] On appeal, the Sixth Circuit did not address the propriety of direct filing, either by order, stipulation, or fiat.  *See generally Wahl*, 786 F.3d 491.

consolidated action before this MDL Court, but only after wasting time and judicial resources." (*Id.* 27 (alteration added; footnote call number omitted)).

What Plaintiffs appear to ignore is that direct filing, although presumably efficient for plaintiffs on the front end, creates accumulating inefficiencies for the Court and the parties to address on the back end.  Specifically, were the Court to permit direct filing, it would then, at the conclusion of pretrial proceedings, be tasked with conducting a series of mini-trials in order to determine the proper venue for remand.  Such a consequence unquestionably defeats the supposed purpose of direct filing: efficiency.

As they all but admit, Plaintiffs "are simply trying to make an end run around the proper procedural framework that governs MDL proceedings, and to avoid the necessary prerequisites of initiating a civil action or actions in some suitable federal district court . . . , and then seeking transfer and consolidation through the appropriate channels[.]"  *In re FCA US*, 2017 WL 6402992, at \*4 (alterations added).  But contrary to Plaintiffs' opinion — and as Defendant correctly points out — the requirement that plaintiffs in an MDL have filed a separate action prior to consolidation and transfer "is not a mere procedural nicety."  (Mot. 23).  "Federal courts are courts of limited jurisdiction[,]" *Kokkonen*, 511 U.S. at 377 (alteration added); and as the Court has explained, failure to assert claims in a separate action prior to consolidation in an MDL deprives a transferee court of subject matter jurisdiction over those claims.  Absent subject matter jurisdiction, the Court is powerless to proceed.  *See Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1092 (11th Cir. 2010) (citing *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)); *see also In re Packaged Ice*, 2011 WL 6178891, at \*9 (rejecting plaintiffs' argument that they "thought they were achieving efficiencies" by direct filing and "making it easier for everyone" because in doing so, they "ignored basic Article III principles" (quotation marks omitted)).

CASE NO.  21-2989-MDL-ALTONAGA/Torres

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant, Apex Clearing Corporation's Rule 12 Motion to Dismiss Plaintiffs' Amended Consolidated Other Broker Tranche Class Action Complaint **[ECF No. 422]** is **GRANTED**.  The Amended Consolidated Class Action Complaint **[ECF No. 410]** is **DISMISSED without prejudice**.  If Plaintiffs, Chavez and Jang, wish to assert their claims in this MDL, they must follow the proper procedures for doing so.

Plaintiffs in the Other Broker Tranche of this Multidistrict Litigation have until **February 14, 2022** to file a final amended complaint.

**DONE AND ORDERED** in Miami, Florida, this 10th day of January, 2022.

_Cecilia M. Altonaga_
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:    counsel of record
        *Pro Se* Plaintiffs

17