UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-2989-MDL-ALTONAGA/Damian

In re: JANUARY 2021 SHORT SQUEEZE
TRADING LITIGATION

This Document Relates to the Federal Securities Tranche

**PLAINTIFFS' RESPONSE TO ROBINHOOD'S DISCOVERY MEMORANDUM
REGARDING ROBINHOOD'S REQUESTS FOR PRODUCTION**

Plaintiffs respectfully submit that the relief Robinhood seeks should be denied. Robinhood claims to have "democratized finance" by empowering individual investors. Yet it seeks to probe every trade, every word uttered, and three years of tax returns, in the hope of finding something that might convince the Court that retail traders should not be empowered as class representatives to hold Robinhood to account to injured investors for its market manipulation.

**Request 4:** "All Documents, Communications or Social Media Posts concerning Robinhood or this Action." Plaintiffs have agreed to produce nearly everything Robinhood seeks. Plaintiffs are producing responsive documents, communications, and social media posts made during the "Relevant Period" – a negotiated time window for almost all of *both Plaintiffs' and Robinhood's document productions* – from December 1, 2020, to March 5, 2021. Plaintiffs even offered to extend the production period for this request to June 5, 2021. Moreover, Robinhood was provided a list of the social media usernames and handles used by Lead Plaintiff and the eleven Named Plaintiffs, which enables Robinhood to search for responsive statements right up to the present day. Plaintiffs invited Robinhood to suggest a counterproposal to the expanded six-month window, however, Robinhood views no cut-off as acceptable. Plaintiffs disagree.

As the Court is aware, Robinhood became a household name when it caused investors to lose *billions* of dollars after it tanked the market for stocks popular with its customers by imposing a variety of trading restrictions, including a purchase ban for an entire trading session,[1] for as many

---

[1] After three days of hearings, the House Financial Services Committee majority staff issued a report, *Game Stopped: How the Meme Stock Market Event Exposed Troubling Business Practices, Inadequate Risk Management, and the Need for Legislative and Regulatory Reform*. At page 31, Robinhood's Head of Data Science was quoted as warning on January 27, 2021: **"us PCO** [position closing only] **will trigger a crash, I am certain**." (emphasis added). In response, a Brokerage Product Manager concurred: "its [sic] a bad look…w'ere [sic] supposed to support the retail." https://democrats-financialservices.house.gov/uploadedfiles/6.22_hfsc_gs.report_hmsmeetbp.irm.nlrf.pdf.

as 50 stocks between January 28 and February 4, 2021. This case centers on Robinhood's actions and motives for roiling U.S. markets. The twelve Plaintiffs are individual retail investors who sold at a loss one or more of nine stocks that are the focus of the case (the "Affected Stocks") during the six trading days that Robinhood's restrictions were in effect.

Plaintiffs do not dispute that Robinhood is entitled to probe Plaintiffs' trades in not only the Affected Stocks but in all 50 stocks Robinhood restricted during the Relevant Period, as well as obtain other non-privileged documents that Plaintiffs may possess concerning Robinhood and the case. While documents that date from after the trading restrictions were lifted appear to be of little to no relevance, Plaintiffs have nevertheless agreed to expand the period by three months, to June 5, 2021. Robinhood, which has argued that none of its documents dating after March 5, 2021, have any relevance to the case, has not articulated any reasonable basis for the production of documents and statements made by a dozen retail investors during the past 21 months, more than two years after the events at issue and their Class Period trades occurred.

Discovery is limited to "nonprivileged matter[s] that [are] relevant to any party's claim or defense and proportional to the needs of the case." *See* Fed R. Civ. P. 26(b)(1). Discovery must be tailored to the issues in the case, and Robinhood's refusal to accept any endpoint short of the present is anything but tailored. *See Buckeye Ventures, Inc. v. Trafalgar Cap. Specialized Inv. Fund, Luxembourg*, 2009 WL 10667899, at *2 (S.D. Fla. Aug. 20, 2009) ("[D]iscovery is not a fishing expedition.") (citation omitted). When "relevancy is not apparent, the burden is on the party *seeking* discovery to show the relevancy of the discovery request." *Id*. (citation omitted) (emphasis in original).

As a general matter, the time period for discovery "must be reasonable given the factual circumstances of the case." *See, e.g., Warren v. Credit Pros Int'l Corp.*, 2021 WL 3552254, at *8

n.8 (M.D. Fla. Apr. 26, 2021) (citation omitted). The facts in Robinhood's cited cases, compelling the production of documents that post-date certain disputes, are markedly unlike the facts here, which involve retail investors who simply sold stock for a loss during an *eight-day Class Period* when Robinhood was manipulating the market. Robinhood's demand that plaintiffs produce all documents generated in the more than two years since January 2021 is "grossly overbroad." *See Continuum on S. Beach Condo. v. QBE Ins. Corp.*, 338 F.R.D. 668, 670 (S.D. Fla. 2021). It should be denied.

**Request 11:** "Documents sufficient to identify each of [Plaintiffs'] holdings, investments, and transactions in any securities ***other than*** the Relevant Securities during the Relevant Time Period." (Emphasis added.) The "Relevant Securities" are the 50 stocks on which Robinhood imposed trading restrictions during the week at issue; it is a broader range of securities than the nine Affected Stocks, one of which Plaintiffs had to sell between January 28 and February 4, 2021, to be a member of the class. Forty-one of the Relevant Securities are not part of the class and the Action does not seek to recover damages based upon losses arising from their sale. Plaintiffs have agreed to produce their transactions in all 50 Relevant Securities during the Relevant Period.

First and foremost, *eight of the twelve plaintiffs are Robinhood customers*. Robinhood already has their complete, unredacted trading records, yet brings this motion to compel documents, most of which they already possess. Moreover, Robinhood has not provided any argument that the full Robinhood trading records it already has for those plaintiffs show anything relevant to the issues in this case that would require full production from those Plaintiffs who do not have Robinhood accounts.

Robinhood relies heavily on *Luczak v. Nat'l Beverage Corp.*, where the court compelled the plaintiff's complete trading records, but there, the plaintiff agreed to produce his trades in *one*

3

relevant security, not *fifty*. *See* 2020 WL 10505310, at *3 (S.D. Fla. Nov. 2, 2020). In any event, what is reasonable is specific to the facts of the case. In *In re Northfield Labs. Inc. Sec. Litig.*, 264 F.R.D. 407, 410-12 (N.D. Ill. 2009), the court refused to compel production of documents evidencing plaintiffs' trading in non-relevant securities, where plaintiffs had agreed to produce trading in the relevant security, there was no suggestion that the plaintiffs had previously served in class action lawsuits, and the defendants could question the plaintiffs at deposition regarding their overall trading strategies. The court's approach in *Northfield Labs.* fits the facts of this case.

Here, in response to Request 21, Plaintiffs have agreed to produce documents that would identify any concerns that one or more of them are atypical, professional plaintiffs (there are no such concerns). In response to Request 10, Plaintiffs have agreed to produce trading in the 50 Relevant Securities. In response to Request 8, Plaintiffs have agreed to produce documents concerning their trading goals or strategies. In response to Request 4, Plaintiffs have agreed to produce responsive documents, communications or social media posts from the Relevant Period, and have already produced a list of the Plaintiffs' social media usernames to allow Robinhood to search these accounts for itself. Defendants can also ask the Plaintiffs at deposition what their investment strategies are. All of this will certainly be enough to allow Robinhood to probe the Plaintiffs' trading strategies and social media activity, the concern raised in Robinhood's motion to compel. In a case about Robinhood's misbehavior aimed at millions of investors, discovery from 12 individual investors beyond all of the above amounts to a fishing expedition that should not be countenanced by the Court. *See Buckeye Ventures*, 2009 WL 10667899, at *2.

**Request 12:** "Your federal and state income tax returns for the most recent three years, including tax returns for any businesses You own, limited to Internal Revenue Service Form 1040, U.S. Individual Income Tax Return and Schedules A, B, D and E and the IRS worksheets related

4

<u>to these schedules, or the equivalent for any other type of return</u>." Robinhood has since narrowed the Request to Schedules B and D of Plaintiffs' federal tax returns. In fact, Robinhood offered to withdraw the request altogether if Plaintiffs agreed to produce the documents sought by Request 11, *i.e.*, their trades in securities other than the 50 Relevant Securities. Whereas Robinhood offered to forego the requested *three years* of tax returns in exchange for all of Plaintiffs' securities transactions over the Relevant Period – a period of only *three months and five days* – it is clear that Robinhood does not really care about the information in Plaintiffs' tax returns. Rather, this Request is designed to harass and intimidate the twelve retail investor Plaintiffs. In fact, other than highly-generalized and non-applicable justifications concerning losses and tax treatments, Robinhood has articulated no real reason why it wants this information.

  Nor can it. In a nutshell, Plaintiffs' theory of market manipulation is that Robinhood turned off the buy button (in addition to imposing a host of other restrictions) for certain securities, which caused the prices of these securities at the close of trading on January 27 to decline steeply between January 28, 2021, and February 4, 2021. As Robinhood is aware, Plaintiffs' recoverable damages are not limited to losses claimed in a tax return, likely explaining its willingness to forego this Request entirely if it received all of Plaintiffs' trades in the Relevant Period. *See Randall v. Loftsgaarden*, 478 U.S. 647, 664 (1986) (damages in securities action not offset by tax losses). Accordingly, Robinhood has shown no need for the Plaintiffs' tax returns. *See Buckeye Ventures*, 2009 WL 10667899, at *2 n.3 ("'[i]ncome tax returns are highly sensitive documents' that courts should be reluctant to order disclosed during discovery") (citation omitted). Robinhood's intrusive fishing expedition for documents of dubious relevance – information it was (conditionally) willing to forego entirely – should be denied.

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 2, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by the Court's CM/ECF system.

Dated: March 2, 2023

Respectfully submitted,

THE ROSEN LAW FIRM, P.A.
By: /s/Laurence M. Rosen
Laurence M. Rosen FBN# 0182877
Phillip Kim
Robin Bronzaft Howald
Jonathan Stern
Brent LaPointe
Michael A. Cohen
275 Madison Avenue  40th Floor
New York, New York  10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com

*Counsel for Lead Plaintiffs*