**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-2989-MDL-ALTONAGA/DAMIAN**

In re:

**JANUARY 2021 SHORT SQUEEZE**
**TRADING LITIGATION**

_____/

**This Document Relates to:**
**Case No. 1:23-cv-21572 -CMA and**
**the Federal Securities Stock Tranche**

**PLAINTIFFS MAURICE SCARBOROUGH AND SCOTT SCHILLER'S OPPOSITION
TO PLAINTIFF BLUE LAINE-BEVERIDGE'S MOTION TO CONSOLIDATE AND
DISCONTINUE THE LEAD PLAINTIFF PROCESS FOR THE OPTIONS CLASS AS
<u>MOOT</u>**

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**..................................................................................................................1

**STATEMENT OF RELEVANT FACTS**..................................................................................3

ARGUMENT…………………………………………………………………………………...5

      A.     LEAD PLAINTIFF AND LEAD COUNSEL LACK THE AUTHORITY, AND
            SHOULD NOT BE AFFORDED ANY AUTHORITY, TO EXTINGUISH THE
            SECURITIES FRAUD CLAIMS OF THE OPTIONS CLASS…………………..5

            1.   Lead Plaintiff and Lead Counsel Cannot Have Any Authority Beyond the
                  Claims Lead Counsel Described in its PSLRA Notices………………………5

            2.   Lead Plaintiff and Lead Counsel Cannot Have Any Authority Beyond the
                  Class for Which it Moved for Appointment or Beyond the Authority Granted
                  By this Court …………………………………………………………..…….6

            3.   Lead Plaintiff and Lead Counsel Cannot Have Any Authority Over the
                  Options Class as Neither the Lead Plaintiff nor the Named Plaintiffs Have
                  Standing to Assert Claims on Behalf of the Options Class…………………..9

            4.   This Court Should Not Now Grant Lead Plaintiff and Lead Counsel
                  Authority Over the Options Class Because They Have Acted Over a
                  Sustained Period of Time Against the Interest of the Options Class and
                  Intend, if Afforded that Authority, to Terminate the Viable Claims of the
                  Options Class…………………………………………………………..…….10

            5.   Lead Plaintiff's and Lead Counsel's Attempts to Fault Options Plaintiffs'
                  Counsel Are Red Herrings That Should be Rejected………………………...12

      B.     CONSOLIDATION IS NOT APPROPRIATE WHEN LEAD PLAINTIFF
            AND LEAD COUNSEL FOR THE STOCK CLASS INTEND TO USE
            CONSOLIDATION TO ABANDON THE OPTIONS ACTION TO THE
            PREJUDICE OF THE OPTIONS CLASS……………………………………16

CONCLUSION………………………………………………………………………………...19

<u>**TABLE OF AUTHORITIES**</u>

*Bank of Am. Corp. Secs v. Bank of Am. Corp.,*
    2011 U.S. Dist. LEXIS 113672 (S.D.N.Y. July 29, 2011)……………………………………8

*Burke v. Ruttenberg,*
    102 F.Supp.2d 1280  (N.D. Ala 2000)……………………………………………………………6

*Cal. Public Employees' Retirement System v. Chubb Corp.*,
    127 F.Supp.2d 572 (D. N. J. 2001) ....................................................................................... 6

*Chill v. Green Tree Fin. Corp.,*
    181 F.R.D. 398 (D. Minn. 1998) .......................................................................................... 19

*China Agritech, Inc. v. Resh*,
    138 S. Ct. 1800 (2018) ......................................................................................................... 14

*Christine Asia Co. v. Jack Yun Ma,*
    2019 U.S. Dist. LEXIS 179836 (S.D.N.Y. Oct. 16, 2019) ................................................... 11

*Hevesi v. Citigroup Inc.*,
    366 F.3d 70 (2d Cir. 2004) ................................................................................................... 7

*Hoffman v. UBS–AG,*
    591 F.Supp.2d 522 (S.D.N.Y.2008) ………………………………………………………...10

*In re AIG Advisor Group Sec. Litig.,*
    2007 U.S. Dist. LEXIS 30179 (E.D.N.Y Apr. 25, 2007)…………………………………… 9

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litigation,*
    2010 U.S. Dist. LEXIS 37799 (S.D.N.Y. Apr. 9, 2010)........................................................ 8

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.,*
    2011 U.S. Dist. LEXIS 84831 (S.D.N.Y. July 29, 2011)………………………………………9

*In re Barclays Bank PLC Sec. Litig.,*
    2016 U.S. Dist. LEXIS 75663 (S.D.N.Y. June 9, 2016) ....................................................... 7

*In re Cavanaugh,*
    306 F.3d 726 (9th Cir. 2002) ............................................................................................... 6

*In re Facebook, Inc.,IPO Sec. & Derivative Litig.,*
    2013 U.S. Dist. LEXIS 115647 (S.D.N.Y. Aug. 13, 2013) ................................................... 7

*In re Facebook, Inc., IPO Secs. and Deriv. Litig.*,
    343 F. Supp. 3d 394 (S.D.N.Y. 2018) .................................................................................. 7

*In re HealthSouth Corp. Sec. Litig.*,
    257 F.R.D. 260 (N.D. Ala. 2009) ......................................................................................... 11

iii

*In re New Oriental Educ. & Technology Group Securities Litigation*
    293 F.R.D. 483 (S.D.N.Y. 2013) ............................................................. 16, 17, 18

*In re Smith Barney Transfer Agent Lit.,*
    765 F.Supp.2d 391 (S.D.N.Y. 2011)…………………………………………………...10

*In re Scientific-Atlanta, Inc. Secs. Litig.,*
    571 F. Supp. 2d 1315 (N.D. Ga. 2007) ................................................................. 11

*In re Sunbeam Secs. Litig.,*
    2001 U.S. Dist. LEXIS 25704 (S.D. Fl. July 3, 2001) ........................................ 11

*In re WorldCom, Inc. Sec. Litig.,*
    219 F.R.D. 267 (S.D.N.Y. 2003) ............................................................................ 7

*King County, Wash. V. IKB Deutsche Industriebank AG,*
    2010 U.S. Dist. LEXIS 48999 (S.D.N.Y. May 18,2010)……………………………………10

*Krukever v. TD Ameritrade, Futures & Forex LLC,*
    328 F.R.D. 649 (S.D. Fla. 2018) ......................................................................... 11

*Levy v. Gutierrez,*
    448 F. Supp. 3d 46 (D.N.H. 2019) .................................................................. 10, 11

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.,*
    315 F.R.D. 226 (E.D. Mich. 2016) ........................................................................ 7

*Prefontaine v. Research in Motion Ltd.,*
    2012 U.S. Dist. LEXIS 4238 (S.D.N.Y Jan. 5, 2012)……………………………………...17

*Ravens v. Iftikar,*
    174 F.R.D. 651 (N.D. Cal. 1997) .......................................................................... 6

*Rougier v. Applied Optoelectronics, Inc.,*
    2019 U.S. Dist. LEXIS 198919 (S.D. Tex. Nov. 13, 2019) .................................. 10

Statutes and Rules

15 U.S.C. § 78u-4 ........................................................................................................ 5

Plaintiffs Maurice Scarborough and Scott Schiller (collectively, "Options Plaintiffs") in *Maurice Scarborough et al. v. Robinhood Financial LLC et al.*, Case No. 1:23-cv-21572 -CMA ("Options Action"), respectfully submit this response in opposition to Lead Plaintiff Blue Laine-Beveridge's motion to consolidate the Options Action and discontinue the Lead Plaintiff process in the Options Action as moot (the "Motion" or "Mot."). [ECF No. 565].  Defendants Robinhood Markets, Inc, Robinhood Financial, LLC and Robinhood Securities, LLC are collectively referred to herein as "Robinhood." Counsel for the Options Plaintiffs, Jeffrey Klafter, Maurice Pessah and Stuart Chelin as collectively referred to hereafter as "Options Counsel."

## INTRODUCTION

Commencing on January 28, 2021, Robinhood suddenly imposed unprecedented "position closing only" (i.e. buy-side) trading restrictions across its brokerage on a basket of stocks ("Affected Stocks")[1]. The result was a precipitous decline in the values of those stocks and correspondingly in the values of the options on those stocks ("Affected Options"). At the time of the restrictions, there was an enormous volume of trading, particularly by relatively unsophisticated retail investors, in both the Affected Stocks and the Affected Options. Both stockholders and options holders suffered significant and distinct damages as a result of Robinhood's alleged market manipulation. After decimating the market for the Affected Stocks and the Affected Options through their trading restrictions, approximately fifty-three (53) class actions were filed against Robinhood (and others). The Judicial Panel on Multidistrict Litigation ("JPML") consolidated the multiplicity cases into this MDL No. 2989 ("MDL"). This Court subsequently entered an Order [ECF No. 420] approving Blue Laine-Beveridge as Lead Plaintiff and its counsel, the Rosen Law Firm as Lead Counsel. That Order, however, was circumscribed by Blue-Laine Beverage's lead plaintiff motion, which **only** sought appointment to pursue federal securities claims concerning the Affected Stocks.

Consistent with that appointment, Lead Plaintiff and the Rosen Law Firm have taken no

---

[1] The thirteen (13)  "Affected Stocks" included in Lead Plaintiff's and Lead Counsel's motion for appointment were: American Airlines Group Inc. (NASDAQ: AAL), AMC Entertainment Holdings Inc. (NYSE: AMC), BlackBerry Limited (NYSE: BB), Bed Bath & Beyond Inc. (NASDAQ: BBBY), GameStop Corp. (NYSE: GME), Express (NYSE: EXPR), Koss Corporation (NASDAQ: KOSS), Naked Brand Group (NASDAQ: NAKD), Nokia Corporation (NYSE: NOK), Sundial Growers, Inc. (NASDAQ: SNDL), Tootsie Roll Industries (NYSE: TR), and Trivago NV (NYSE: TRVG).

actions on behalf of holders of the Affected Options.  They filed a Consolidated Class Complaint on November 30, 2021 [ECF No. 446] and an Amended  Consolidated Class Complaint on January 17, 2023 [ECF No. 527]  Both complaints were limited to the Affected Stocks and made no mention of the Affected Options.  Importantly, neither the two complaints filed, nor the motion for class certification [ECF No. 559], purported in any way to represent the interests of holders of the Affected Options.

The conspicuous absence of any claims asserted by Lead Plaintiff Blue-Laine Beverage on behalf of injured holders of Affected Options is consistent with Lead Counsel's decision to seek redress **_only_** for losses suffered by the holders of certain of the Affected Stocks ("Stock Class").[2] Mr. Rosen's PSLRA motion also confirms the deliberate omission of the Affected Options.

Accordingly, the Options Action seeks relief on behalf of the injured option holders who owned the Affected Options ("Options Class").[3] Contrary to the suggestion by Lead Plaintiff and Lead Counsel that the Options Action is a "carve out" of "niche claims," the Options Class is an entirely distinct class from the Stock Class, dealing with a different type of security. Here, Lead Plaintiff and the Rosen Law Firm (i) never asserted claims on behalf of the Options Class, (ii) determined not to seek appointment as Lead Plaintiff and Lead Counsel on behalf of said class, and (iii) plainly stated that, even now, they have no interest in pursuing any such claims. (Mot. at 10 "**Lead Plaintiff ha[s] considered and rejected the inclusion of options traders in the instant consolidated action [**.]") (emphasis added). Rather, the purpose of the Motion is to preclude potentially tens of thousands of injured option holders from recovering damages in this MDL even though the Options Plaintiffs seek to assert the same security fraud claims this Court has allowed to proceed. Indeed, it is paradoxical that Lead Plaintiff and Lead Counsel, have not taken a single step before or during this MDL on behalf of the Options Class, yet now, after over two years, claim dominion over the Options Class only to ensure its disappearance from this MDL.

Accordingly, the only issue before the Court in the Motion is  whether the current Lead Plaintiff and Lead Counsel have, or should have, the authority to act as the executioners of the

---

[2]  The Affected Stocks included in the Consolidated Class Complaint and the Amended Consolidated Class Complaint are AMC, BBBY, BB, EXPR, GME, KOSS, TR, NOK and TRVG. (*See* CCC ¶ 1 and ACCC ¶ 1)

[3]  The Affected Options addressed by the Options Action are call options on AMC, GME, AAL, BBBY, BB and NOK. It is noted that Lead Plaintiff has asserted no claims on behalf of any class of stockholders of AAL common stock.

Options Class and can simultaneously insist that the notice mandates of the PSLRA be summarily discarded. Such a result should not be countenanced by this Court (or any other), where, as here, Lead Counsel never published a PSLRA notice inviting options holders to seek appointment as Lead Plaintiff.  Indeed, Blue Laine Beverage motion for appointment as Lead Plaintiff, and its counsel's motion to be appointed Lead Counsel, were expressly limited to stockholders and made no mention of an Options Class. Accordingly, representing the interests of the Stock Class is the only authority this Court bestowed upon Lead Plaintiff and his counsel its October 15, 2021 Order. [ECF No. 420][4]

Granting the instant relief Lead Plaintiff requests would be tantamount to this Court extinguishing the securities fraud claims asserted in the Options Action. As further discussed, the Motion should therefore be denied in all respects.

## STATEMENT OF RELEVANT FACTS

Lead Plaintiff and Lead Counsel have acted with a long and consistent history which demonstrates a single-minded appetite to pursue redress only for the Stock Class. Indeed, their abandonment of the securities claims of the Options Class predates their appointment in this MDL, and has continued unabated to the present with this Motion.

On February 2, 2021, prior to the JPML's consolidation into this MDL, Lead Counsel filed *Muncy v. Robinhood Financial, LLC* et al., Case No. 21-cv-01729 ("Muncy Action"). The Muncy Action was filed to address only the class of persons who held six (6) of the Affected Stocks and were damaged by selling them after Robinhood imposed restrictions. The Muncy Action did not include any claims on behalf of Affected Options or any Options Class. The individual Muncy allegations and his sworn certification did not indicate any facts that would give Muncy standing to sue on behalf of holders of the Affected Options. [ECF No. 446]

---

[4] Shockingly, Lead Plaintiff and Lead Counsel are so determined that the Options Class not survive, that in furtherance of their Motion, they are relying on support for the relief they are seeking from Robinhood (direct adversaries to the Stock Class and the Options Class)!!  As they say, adversity makes strange bedfellows. In the last paragraph of the Motion it states that Lead Counsel informed Robinhood that this Motion would be filed and that on "May 26, 2023, counsel indicated that Robinhood **supports** the motion to consolidate the [Options] Action with the other cases in the [Securities] Tranche and takes no position on the lead plaintiff process." (alterations added) (emphasis added). There is no surprise that Robinhood would support relief that ultimately and effectively eliminates a large class asserting significant claims against them, and thus, their damages exposure. Further, Robinhood, as Defendants, not commenting on the lead plaintiff process and taking no position is neither here nor there.

On February 2, 2021, the Rosen Firm published a purported PSLRA Notice concerning a class action on behalf of those who sold the five (5) Affected Stocks referred to in the Muncy Action in relation to Robinhood's alleged market manipulation. This PSLRA Notice was manifest in that it only related to the sale of said five (5) Affected Stocks (which were listed with their stock symbols); it contained no mention of any Affected Options or any Options Class. [ECF No. 26-2]

On April 5, 2021, the Rosen Firm filed a motion in the MDL seeking appointment of Cody Todd as lead plaintiff, and approving Mr. Rosen as lead counsel, for the same Stock Class identified in the Muncy Action and in his PSLRA Notice ("Todd Motion"). The Todd Motion made it clear that the five (5) Affected Stocks (which were again described as securities) only referred to persons who held the actual stocks and did not involve any Affected Options or any Options Class. Todd's certification filed with the Todd Motion included no positions in any Affected Options. [ECF No. 26]

On May 18, 2021, the Court issued an Order denying the Todd Motion, finding that the Rosen Firm's PSLRA Notice was inadequate in several respects. The Court notes and that said PSLRA notice was missing critical information and served primarily "to funnel potential lead plaintiffs through the law firm." [ECF No. 307] The Order further directed the Rosen Firm to republish its PSLRA Notice and remediate the deficiencies identified in the Order. *Id.*

On May 28, 2021, the Rosen Firm republished its updated PSLRA Notice as directed by this Court. The revised PSLRA Notice described the class at issue as "those who were unable to execute trades, sold and/or purchased certain securities" on or around January 28, 2021, and indicated that the "securities" mentioned were the full basket of Affected Stocks (which were listed with their stock symbols). This revised PSLRA Notice made it clear that it only concerned persons who held and sold one or more of the Affected Stocks as it did not contain a single reference to options on such stocks. [ECF No. 321]

On July 27, 2021, the Rosen Firm filed a motion in the MDL seeking appointment of Blue Laine-Beveridge ("Beveridge") as lead plaintiff, and approving Mr. Rosen as lead counsel, but that appointment was sought solely in respect of the Stock Class described in the Rosen Firm's May 28, 2021 PSLRA Notice ("Beveridge Motion"). The Beveridge Motion again made it clear that the now nine (9) Affected Stocks dealt with by the Stock Class only meant actual stocks as no options on any of the Affected Stocks were included in the described Stock Class. [ECF No. 366] Further, no Affected Option positions are included in Beveridge's Certification in compliance with

the PSLRA ("PSLRA Certification"). [ECF No. 366-3]

On October 15, 2021, this Court granted the Beveridge Motion to be appointed Lead Plaintiff and for its counsel, Mr. Rosen, to be appointed Lead Counsel solely with respect to the Stock Class. [ECF No. 420] ("Movant, Blue Laine-Beveridge's Motion to: (1) Appoint Lead Plaintiff; and (2) Approve Selection of Lead Counsel [ECF No. 366] is GRANTED.").

On November 30, 2021, the Rosen Firm filed the CCC, without inclusion of any Affected Options or any Options Class and only asserting claims on behalf of the Stock Class. [ECF No. 446]

On January 17, 2023, the Rosen Firm filed the ACCC, without inclusion of any Affected Options or any Options Class and only asserting claims on behalf the Stock Class. While the ACCC added certain Named Plaintiffs, none of them are indicated as having held any Affected Options that would give any of them standing to sue on behalf of option holders of the Affected Options. [ECF No. 527]

On April 28, 2023, the Rosen Firm filed a motion for class certification by which the Lead Plaintiffs and Named Plaintiffs only sought certification of the Stock Class ("Certification Motion"). [ECF No. 559]

<u>**ARGUMENT**</u>

A. <u>**LEAD PLAINTIFF AND LEAD COUNSEL LACK THE AUTHORITY, AND SHOULD NOT BE AFFORDED ANY AUTHORITY, TO EXTINQUISH THE SECURITIES FRAUD CLAIMS OF THE OPTIONS CLASS**</u>

1. <u>**Lead Plaintiff and Lead Counsel Cannot Have Any Authority Beyond the Claims Lead Counsel Described in its PSLRA Notices**</u>

The PSLRA requires that, "[n]ot later than 20 days after the date on which the complaint is filed," notice must be published in a national business publication or wire service **describing the members of the purported class**, the pendency of the action, claims asserted, and class period. 15 U.S.C. § 78u-4(a)(3)(A)(i)(I) (alteration added) (emphasis added). This notice must also advise potential members of the described class that they have 60 days from the date the notice is published to "move the court to serve as lead plaintiff **of the purported class**." *Id.* § 78u-4(a)(3)(A)(i)(II) (emphasis added).

"The fundamental purpose of the § 78u–4(a)(3)(A)(i) notice requirement is to provide class members with sufficient information about the suit and inform class members of their right to

move to be appointed lead plaintiff so they can make an informed and reasoned judgment about whether they should seek lead plaintiff status." *Cal. Public Employees' Retirement System v. Chubb Corp.*, 127 F.Supp.2d 572, 576 (D. N. J. 2001); see also *Burke v. Ruttenberg,* 102 F.Supp.2d 1280, 1310-11 (N.D. Ala. 2000). It is a fundamental principle underlying this notice requirement that it serve the purpose of broadening "the number of plaintiffs who get involved and seek lead plaintiff status by assuring potential plaintiffs they still have a chance to take control of the case, even though they have lost the 'race to the courthouse.'" *In re Cavanaugh*, 306 F.3d 726, 738 (9th Cir. 2002).

It is therefore axiomatic that where the notice mandated by the PSLRA does not include options in the definition of the class, Affected Option holders were not notified of their rights to seek to become Lead Plaintiff and that the appointment sought resulting from a PSLRA Notice cannot be any broader than the class described in the relevant PSLRA Notice.[5]

## 2. Lead Plaintiff and Lead Counsel Cannot Have Any Authority Beyond the Class for Which it Moved for Appointment or Beyond the Authority Granted By this Court

As shown above, Lead Plaintiff did not move before this Court pursuant to the procedures provided for in the PSLRA for any authority over any class beyond the Stock Class it set forth in its moving papers. Moreover, in appointing Lead Plaintiff and the Rosen Firm as Lead Counsel, this Court only granted Lead Plaintiff's motion. Accordingly, neither the Lead Plaintiff nor the Rosen Firm were granted any authority by this Court to prosecute any class other than the Stock Class for which it moved for appointment. Recognizing this, all of the class complaints they have filed and their Certification Motion are so limited. This is therefore not a case in which The Rosen Firm's PSLRA Notice made specific reference to both stocks and options, and in which the Lead Plaintiff moved to be appointed with respect to a stock class and options class, and in which the

---

[5] While Rosen's revised PSLRA notice cited other cases in this MDL which other cases the notice stated were "brought on behalf of different classes and include different securities," the notice was still limited to a class of persons holding, selling or unable to execute trades in the Affected Stocks. It did not specifically refer to holders of Affected Options or invite such holders to move for lead plaintiff. *See Ravens v. Iftikar*, 174 F.R.D. 651, 656 (N.D. Cal. 1997), *reconsideration denied,* July 16, 1997) (In certain cases, such as where there are multiple pleadings or complex pleadings, as is common in securities fraud cases, where even a diligent investor might be stymied in interpreting the legal and factual basis of the class claims being asserted, simply advising that the pleadings are available, may not be sufficient for PSLRA Notice adequacy.).

court granted the Lead Plaintiff with authority over both stock and option classes.

Lead Plaintiff relies on a host of inapposite decisions that have no bearing on the circumstances present here as they only concerned the discretion of a lead plaintiff as to what claims should be asserted on behalf of the class the lead plaintiff was authorized to represent.

In *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82-83 (2d Cir. 2004), the issue before the Second Circuit was the Lead Plaintiff's addition, unlike the Lead Plaintiff here, of named plaintiffs in its Amended Complaint and in support of its class motion to represent a class defined to consist of purchasers of all securities. It was in that context that the Second Circuit stated that "the PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class." *Hevisi*, 366 F.3d at 83. [6] And, it was also in this context of representing this broad class of all securities purchasers that the court also stated that the Lead Plaintiff need not have standing to bring every claim. Similarly, *In re Facebook, Inc. ,IPO Sec. & Derivative Litig.,* 2013 U.S. Dist. LEXIS 115647 (S.D.N.Y. Aug. 13, 2013) concerned an attempt to separately bring additional claims (Exchange Act claims) of the same class the lead plaintiff had delineated in its Consolidated Complaint. *See id.* at *15 ("here, all investors asserted to have Exchange Act claims are already members of the class asserted in the Consolidated Complaint."). That court also made it clear that the appointed lead plaintiffs' discretion only goes so far as the claims of the specific class it is charged with representing. *See id.* at *8 ("Consistent with this Court's holding, courts in this Circuit have consistently held that a lead plaintiff has the sole authority to determine which claims to pursue on behalf of the class.") (emphasis added); *see also In re Facebook, Inc., IPO Secs. and Deriv. Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018) (same). The Court went on to note that "if a parallel class action were to be permitted, both actions would therefore seek recovery for the same absent class members." 2013 U.S. Dist. LEXIS 115647, * 15 (emphasis added). This is the opposite of the case here with the distinct Stock Class and Options Class. No relief whatsoever is sought in the ACCC by Lead Plaintiff for anything to do with any person or entity on the basis that they held any of the Affected Options. The Stock Class and the Options Class may assert the same claims; however, they are fundamentally different classes arising from distinct financial instruments.

*In re Barclays Bank PLC Sec. Litig.,* 2016 U.S. Dist. LEXIS 75663 (S.D.N.Y. June 9, 2016)

---

[6] *See also In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 274 (S.D.N.Y. 2003) (named plaintiffs added to cover all claims of the class at issue).

also involved the determination of what claims could be brought on behalf of the only viable class alleged in the complaint --purchasers on the Series 5 offering.  *New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226 (E.D. Mich. 2016) dealt with a settlement that did not include warrants which themselves were not part of the class action and any claims in respect thereof were not being released by the settlement in any event. (*New York State Teachers' Ret. Sys., supra,* 239).

Lead Plaintiff also relies on *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litigation,* 2010 U.S. Dist. LEXIS 37799 (S.D.N.Y. Apr. 9, 2010), where unlike here, the Court order appointing the Lead Plaintiff did so for "each new securities case that relates to or arises out of the subject matter of the Securities Actions which is filed in, or transferred to, this Court." *Id.* at *3. Given this authority, it is not surprising that when a subsequent class action was filed on behalf of options holders and holders of debt securities arising from the same set of facts and circumstances, which securities were not already included in the case, the Court consolidated it with the existing securities cases and gave the Lead Plaintiff, which had, unlike the Lead Plaintiff here, indicated it would consider adding the claims of these securities.  *Id* at *4.  Moreover, the Court noted that Lead Plaintiffs explicitly advised that they were still assessing whether to assert claims on behalf of holders of debt securities and the Lead Plaintiffs had purchased, at least, the debt securities and suffered significant losses. *Id*. Significantly, the Court noted that such incentivized Lead Plaintiffs should be given the opportunity to assert claims for classes based on these further securities. *Id.* After the decision, lead counsel added options plaintiffs and classes.

Lead Plaintiff further relies upon subsequent history in the case when Charles Dornfest again sought to bring his own options case when the lead plaintiffs, who already had authority to deal with options, had determined not to add him to their complaint because they evaluated that he was not an adequate class representative for the particular options.  *See Bank of Am. Corp. Secs v. Bank of Am. Corp.,* 2011 U.S. Dist. LEXIS 113672 at *2 (S.D.N.Y. July 29, 2011). This subsequent development in *In re Bank of Am. Corp. Sec.* is therefore irrelevant.  Thus, none of the authority on which Lead Plaintiff relies provide support for its ability to extinguish the claims of the Options Class.

The present circumstances also do not require a resetting of the lead plaintiff clock or those which would render the PSLRA process meaningless as Lead Plaintiff contends. This is a circumstance of Lead Plaintiff's and Lead Counsel's own making which circumstance they could have clearly avoided by publishing a PSLRA notice that included options and moving for

appointment on behalf of stock and options.  No sea change in the PSLRA lead plaintiff appointment rules will therefore result by rejecting Lead Plaintiff's Motion.

**3.  Lead Plaintiff and Lead Counsel Cannot Have Any Authority Over the Options Class as Neither the Lead Plaintiff nor the Named Plaintiffs Have Standing to Assert Claims on Behalf of the Options Class**

The sworn certifications of the Lead Plaintiff and the Named Plaintiffs added to the ACCC confirm that not a single plaintiff invested in any options.  The Lead Plaintiff had a full opportunity to add an options plaintiff to its CCC or ACCC but did not do so.  In the Order approving Mr. Rosen as Lead Counsel, the Court noted that, the "Rosen Law Firm has extensive experience in prosecuting securities actions, as detailed in the firm's resumé." [ECF 420] The Rosen Firm has a longstanding business focused on seeking to serve as lead counsel in securities class actions, and has often been approved as lead counsel in such cases.  Accompanying this experience is a history of published notices that include both stock and options (*See e.g.* Declaration of Maurice D. Pessah ("Pessah Dec."), ¶ 6, **Exhibit A**). As shown in Section 4 below, Rosen has acted for and obtained class certification on behalf of, stock and options holders asserting claims against a publicly traded companies based on alleged securities violations.  Presumably, the Rosen Firm has at all material times therefore has been well aware, among many other aspects of securities class action litigation, of (i) the differences between stocks and options, and (ii) that there remains a difference in the standing for bringing claims based on options and those based on stocks.

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.,* 2011 U.S. Dist. LEXIS 84831, *48-50 (S.D.N.Y. July 29, 2011), the court makes it abundantly clear that  a securities class action can only be maintained on behalf of a plaintiff (whether lead or named) who has standing to assert the claim for the  relevant type of security. As the Court noted at *50, several "district courts have relied on *Lujan* and its progeny to conclude that plaintiffs had no standing to bring claims seeking to recover losses in securities in which the named plaintiffs themselves had no stake. As observed by *In re AIG Advisor Group Sec. Litig.*, 2007 U.S. Dist. LEXIS 30179, *12-15 (E.D.N.Y Apr. 25, 2007), "[t]hat plaintiffs would represent a class of similarly situated claimants does not exempt them from the requirement that '[a]t the pleading stage' they must set forth some 'general factual allegations of injury resulting from the defendant's conduct.'" *Id.* at *12 (alteration in original; quoting *Lewis,* 518 U.S. at 358). Judge Gleeson rejected the plaintiffs' argument that the issue should be resolved at the class-certification stage, stating that standing was

instead a threshold issue. *Id.* at \*13. He concluded that "[i]n this securities fraud case, the named plaintiffs can allege no injury from the purchase or sale of funds they never invested in." *Id.; accord In re Smith Barney Transfer Agent Lit.,* 765 F.Supp.2d 391, 399–400 (S.D.N.Y.2011) (because named plaintiffs neither purchased nor sold shares in funds, they lacked standing to assert securities fraud claims); *King County, Wash. v. IKB Deutsche Industriebank AG,* 2010 U.S. Dist. LEXIS 48999, \*14 (S.D.N.Y. May 18, 2010) ("Because plaintiffs cannot assert class claims on behalf of purchasers of securities they themselves did not buy, plaintiffs lack standing to sue on behalf of purchasers of the European Commercial Paper."); *Hoffman v. UBS– AG,* 591 F.Supp.2d 522, 532 (S.D.N.Y.2008) ("If a party, such as Plaintiffs in this case, is not personally injured by the alleged action of a defendant then he is not entitled to come into court and litigate that action, regardless of whether the disposition of his case necessarily requires the same result as the case of another. As such, Plaintiffs lack standing for claims relating to funds in which they did not personally invest.")."

Here, the Rosen Firm has not acted for a plaintiff at any time with standing to sue on behalf of the Options Class. The plaintiff in the Muncy Action and the Lead Plaintiff and Named Plaintiffs in the CCC and the ACCC assert no allegations, and provide no sworn certifications, of any trading whatsoever other than in respect to holding and selling an Affected Stock. Therefore, neither Lead Plaintiff nor Lead Counsel can have any authority with regard to the Options Class, and certainly no authority to extinguish it.[7]

4. **This Court Should Not Now Grant Lead Plaintiff and Lead Counsel Authority Over the Options Class Because They Have Acted Over a Sustained Period of Time Against the Interests of the Options Class and Intend, if Afforded that Authority, to Terminate the Viable Claims of the Options Class**

Lead Plaintiff and Lead Counsel's explanation for why they did not make any effort to assert the same claims they asserted on behalf of stockholders on behalf of options holders demonstrates why they should now not be given any authority over the Option Class. Specifically, they assert that certification of an option class in this MDL was not likely. (Mot. at 2). There are, however, numerous cases in which courts have certified an option class together with a stock class. *See e.g. Rougier v. Applied Optoelectronics, Inc.*, 2019 U.S. Dist. LEXIS 198919 (S.D. Tex. Nov.

---

[7] In its recently filed memorandum in opposition to class certification of the stock class, Robinhood has challenged the Lead Plaintiff's standing to even act on behalf of the Stock Class. [ECF 568 at 29-30]

13, 2019) (certifying a class of persons who purchased stock or call options, or sold put options during the Class Period, and finding that damages can be calculated for all class members using a common method); *Levy v. Gutierrez*, 448 F. Supp. 3d 46 (D.N.H. 2019) (certifying a class consisting of all people and entities that acquired GTAT common stock, GTAT's 3% Convertible Notes Due 2020, or publicly-traded options for GTAT common stock, and specifically rejecting a challenge to including options); *In re Sunbeam Secs. Litig.*, 2001 U.S. Dist. LEXIS 25704 (S.D. Fl. July 3, 2001) (certifying class of all persons and entities who purchased the common stock of Sunbeam Corporation on the open market or who purchased calls options or sold put options to sell Sunbeam stock.); *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D. 260 (N.D. Al. 2009) (Court certified a class consisting of persons who purchased or otherwise acquired the stock or options of HealthSouth Corporation and were damaged thereby): *In re Scientific-Atlanta, Inc. Secs. Litig.*, 571 F. Supp. 2d 1315 (N.D. Ga. 2007) (certifying class consisting of all persons who purchased or otherwise acquired the securities of Scientific-Atlanta, Inc. ("SA") between January 18, 2001, and August 16, 2001, inclusive and retained said securities on or after July 19, 2001, or who sold put options of SA between January 18, 2001, and August 16, [**81] 2001, inclusive, which options were exercised on or after July 19, 2001.). Indeed, the Rosen Firm in other cases, when appointed as lead counsel, has moved to certify a class including both stock and options. *See e.g. Christine Asia Co. v. Jack Yun Ma*, 2019 U.S. Dist. LEXIS 179836, *24 (S.D.N.Y. Oct. 16, 2019) (Plaintiffs moved for certification of a class comprised of all persons and/or entities that purchased or otherwise acquired Alibaba ADS, or purchased call options or sold put options on Alibaba ADS).

The Lead Plaintiff and the Rosen Firm now ignore all of the extensive authority for certifying an options class and instead point to *Krukever v. TD Ameritrade, Futures & Forex LLC*, 328 F.R.D. 649 (S.D. Fla. 2018) as their justification for not asserting options claims. A true advocate for the Options Class, or even one that suggests they fairly weighed the merits of the claims of the Options Class, would not point to a case that is easily distinguishable from the claims of the Option Class.

*Krukever* involved a claim that the defendants improperly liquidated their option investments in stock exchange futures in the after-market in violation of Nebraska state law concerning the covenant of good faith and fair dealing. This action involved both the need to examine whether the individual class members would have otherwise held or sold their options had they not been liquidated and, if sold, when, which individual expectations, the court reasoned,

rendered the damages too speculative and individualized for class certification. 328 F.R.D. at 661. No such individual expectations as potential investment decisions are at issue here as the Options Class is limited to damages from actual sales or expiration of Options as worthless.. The damages of the members of the Options Class can therefore be readily determined by the difference between the value of the options as of the close on January 27, 2021, and the actual prices those options were sold at (or 0 if they expired) during the alleged Class Period, less any difference not caused by Robinhood's trading restrictions. Indeed, this is precisely the methodology employed by Lead Plaintiff's damage expert whose report was filed in support of Lead Plaintiff's class motion. [ECF No. 559-14 at 43 of 206 ("damages for a defrauded seller can be measured as the difference between the market value of the Affected Companies' shares' prices at close of trading on January 27, 2021 (before Robinhood first implemented various alleged restrictions), and the prices at which Class Members sold their shares during the Class Period, reduced by non-Robinhood related price deflation.")]. [8]

The Rosen Firm abandoned the Options Class from the publication of its first PSLRA Notice in this case. Nevertheless, Lead Plaintiff and the Rosen Firm are asking this Court to affirm its authority over the Options Class so that they can effectively be in control of ending it. For the reasons discussed above, this Court should not put this fox in charge of guarding the Options hen house.

5. **Lead Plaintiff's and Lead Counsel's Attempts to Fault Options Plaintiffs' Counsel Are Red Herrings That Should be Rejected**

Lead Plaintiff and the Rosen Firm attempt to shift focus from their own failures by trying to point blame at Options Plaintiffs' counsel for not raising their failure to include the Options

---

[8] In an attempt to liken this case to *TD Ameritrade*, Lead Plaintiff notes that "GME alone had more than 2,000 call contract types outstanding during the class period, and that, in total, there are more than 4,500 unique types of call options for the six companies at issue." [Mot. at 9 n.10]. The specter Mr. Rosen raises about the number of call options outstanding during the class period is baseless as the issue is not the number of outstanding call options, but which call options were held at the close on January 27, 2021, and sold or expired no later than February 19, 2021. It is likely that the overwhelming number of such call options had expiration dates of either January 29 or February 19, 2021 (Option contracts expire only once a month). There were only a limited number of call options expiring on those two dates. Lastly, if it were determined that the number of call options meeting this criteria were still significant, counsel truly acting in the best interests of the Options Class (and which had authority to so act) could use their discretion to narrow the number of options to exclude those with minimal volume. Such counsel would not, as Mr. Rosen has done, abandon the options claims completely.

Class earlier.  They even go so far as to assert that those Options Plaintiffs' counsel who are members of the Steering Committee should have done so.  (Mot. at 2).  This is a clear red herring as Lead Plaintiff and the Rosen Firm have made it absolutely clear that they consciously abandoned the claims of the Options Class.  Accordingly, any earlier efforts would have also been met with deaf ears.

Moreover, the Order appointing Lead Plaintiff explicitly placed on Lead Counsel the decision as to whether consultation with the Steering Committee was necessary.  ([ECF No. 420 at 13] (imposing the following responsibility on the Rosen Firm: "determining (after such consultation with members of Plaintiffs' Steering Committee and other counsel of record as may be appropriate) and presenting (in briefs, oral argument, or such other fashion as may be appropriate, personally or by a designee) to the Court and opposing parties the position of Plaintiffs on all matters arising during pretrial proceedings" and for "convening meetings of the Steering Committee as necessary for the purpose of proposing joint action and discussing and resolving matters of common concern").  However, Lead Counsel never consulted with, or convened any meetings of, the Steering Committee, including without limitation to discuss whether or not any class of holders of the Affected Options would, or should, be included in the Lead Plaintiff's operative consolidated complaint.  Pessah Dec. ¶¶ 4-5).

Lead Plaintiff and the Rosen Firm also raise the irrelevant point that there are confidentiality issues concerning documents produced in Lead Plaintiff's action which present issues with certain counsel for the Options Plaintiffs being members of the Steering Committee concerning other tranches.  This is irrelevant to the present motion as it has no bearing on whether Lead Plaintiff and Lead Counsel should have any authority over the Options Class. Moreover, unless the Eleventh Circuit reverses this Court's dismissal of the complaints asserted with respect to the other three tranches, there will be no issue at all.  Nevertheless, issues as to how to deal with this confidentiality issue must await the lead plaintiff determination for the Options Class.[9]

Lead Plaintiff further attempts to attach some significance to the fact the Options Action could have been filed earlier. However, for the purpose of resolving the Motion, the timing of the filing is of no consequence. Moreover, Lead Plaintiff is adamant that the Rosen Firm decided long

---

[9] Relatedly, Movants incredibly suggest that the Questionnaires Mr. Klafter and Mr. Pessah answered on May 11, 2021 and May 14, 2021, respectively, in support of their respective applications to be appointed to leadership in the other MDL tranches failed to disclose their interest in the Options Action filed in April 2023.  (Mot. at 5).  That position is obviously baseless.

ago not to pursue claims to address the damages suffered by the Options Class. There therefore can be no suggestion whatsoever that Lead Plaintiff and Lead Counsel would have included options holders' claims in a class action dealing with Robinhood's wrongdoing at any point from February 2, 2021 when they were excluded as a class in the Muncy Action filed by Lead Counsel, through two PSLRA Notices, multiple motions filed with the Court, the preparation and filing of the CCC and the ACCC and the recently filed motion for class certification which includes only the Stock Class.  The Rosen Firm, with a wealth of securities class action experience, has been involved with claims for stockholders against Robinhood for over two years and has never taken a single step on behalf of the Options Class even though in other cases, the Rosen Firm has litigated options holder claims for securities law violations. The only reasonable conclusion is that the Rosen Firm intentionally limited everything it has done in this MDL to the Stock Class and now having to confront its intentional omission, is casting stones in the hope there will be no consequences of its omission.

Lead Plaintiff further tries to capitalize on the timing of the filing of the Options Action by relying on *China Agritech, Inc. v. Resh*,  138 S. Ct. 1800, 1802 (2018) for the generalized proposition that plaintiffs who did not avail themselves of the opportunity to enter a class action fray for several years should not be allowed to enter later. In *China Agritech*, however, the Supreme Court was dealing with a class action which was the *third* class action brought alleging "materially identical violations" of the Securities Exchange Act by purchasers of common stock in China Agritech, when the previous two class actions had failed to be certified as class actions and, most significantly, that third class action was brought *after* the statute of limitations had run. *China Agritech, supra,* 1801. The issue before the Supreme Court, and the basis for its decision, is elegantly summarized by Justice Ginsburg at page 1804 "The question presented in the case now before us: Upon denial of class certification, may a putative class member, in lieu of promptly joining an existing suit or promptly filing an individual action, commence a class action anew beyond the time allowed by the applicable statute of limitations? Our answer is no." There is no such issue here.

Lead Plaintiff also unfairly and inaccurately criticizes the Options Action as a "transparent effort to interfere in the resolution of the claims" in the Securities Tranche and having filed the Options Action after counsel to the Options Plaintiffs' were unsuccessful in efforts to" inject themselves" into the mediation schedule with Robinhood on May 17, 2023 ("Mediation") (Mot.

at 7, 8) This is simply not the case. Because Options Counsel were planning the imminent filing of the Options Action (which was filed on April 6, 2023 in C.D. Cal.), and given the upcoming Court ordered Mediation was approximately six (6) weeks away, there was a concern that any settlement reached might potentially include options holders' claims despite the Options Class not being part of the ACCC. Certainly, Robinhood would prefer that for the same reasons that they are supportive of this Motion….get rid of the Options Class. Indeed, as Lead Plaintiff points out, there will most likely be persons or entities that traded in both Affected Stocks and the Affected Options such that they could inhabit the Stock Class and the Options Class. (Mot. at 7 n. 9)  A broadly pitched release as part of a settlement, however, could eliminate their options related claims (and indeed, if Lead Counsel believes his authority is over the Options Class a broadly pitched release might have covered the entire Options Class without any consideration for their option claims. Meanwhile, the Order appointing Lead Counsel explicitly limited settlement authority to "coordinating settlement discussions or other dispute resolution efforts on behalf of Plaintiffs, **but not entering binding agreements except to the extent expressly authorized**." [ECF 420] (emphasis added).

On May 5, 2023, Mr. Klafter emailed Mr. Rosen and stated "As we are pursuing claims on behalf of a different class which was harmed by the same underlying conduct which damaged your class, we are writing to obtain confirmation from you that you will not seek to settle or compromise the options claims of the members of our alleged class.  If you do intend to seek a settlement or compromise on behalf of option-holders, or for whatever reason are unable to provide the confirmation we are requesting, we will seek appropriate relief from the Court. We hope to be appointed lead counsel for the options class, and, if you have not settled your stockholder claims by then, **we would like to explore working in tandem with you to obtain an appropriate settlement from Robinhood covering both the stockholder and option holder claims**." (Pessah. Dec. ¶ 7, Exhibit B) (emphasis added) Mr. Rosen responded to Mr. Klafter by way of email on May 8, 2023 advising in part "We do not intend to resolve the claims of any securities  holders other than common stock holders at the May 17 mediation. We have not yet determined what our formal position will be as to the claims raised in the complaint you filed in California and which was transferred to our MDL in Miami." (Pessah Dec. ¶ 8, Exhibit C). On May 10, 2023, Mr. Chelin wrote to counsel for Robinhood, Kevin Orsini, and copied to Mr. Rosen seeking his agreement to postpone the Mediation until after Lead Counsel and Lead Plaintiff for

the Options Class have been determined so that the Mediation can proceed with the inclusion of Lead Plaintiffs for the Options Class as well as for the Stock Class. Further, Mr. Orsini was asked, if he was in agreement, we would all need to coordinate an approach to have the Court modify its Mediation order to specify a reasonable new Mediation schedule." (Pessah Dec. ¶ 9, Exhibit D). By way of an email dated May 15, 2023, Mr. Orsini declined to postpone the Mediation and, Mr. Rosen having provided assurance he would not deal with options holders, the Mediation proceeded as scheduled. [ECF No. 563] (Pessah Dec. ¶ 10, Exhibit E)

Ultimately, the entire discussion about the Mediation is moot considering that the parties failed to reach an agreement. [ECF No. 563] That said, there was no intention to "inject" into the Mediation or interfere with it. Options Counsel, given the imminent filing of the Options Action, simply and openly sought confirmation that the Options Class would not be compromised by any agreement reached, asked if the participating parties would agree to their involvement on behalf of the Options Class (which would necessarily involve a rescheduling) and, not receiving an affirmative response, did nothing to stop the mediation process form playing out.

**B.**   **CONSOLIDATION IS NOT APPROPRIATE WHEN LEAD PLAINTIFF AND LEAD COUNSEL FOR THE STOCK CLASS INTEND TO USE CONSOLIDATION TO ABANDON THE OPTIONS ACTION TO THE PREJUDICE OF THE OPTIONS CLASS**

If Lead Plaintiff's and Lead Counsel's history of excluding the Options Class does not make it obvious enough, they make sure in their Motion that their desire and intent that no Options Class be included in this MDL is clearly expressed. Making the assumption as to why no action similar to the Options Action was previously filed, Lead Plaintiff states "[p]resumably, other investors…..(and counsel for those injured) recognized that Lead Plaintiff and his counsel made a considered judgement to not attempt to advance claims past  a motion to dismiss that would not likely be certified." (See Mot. at 2). (alterations added).  This is rank speculation, for which there is no support, and any earlier raising of this issue would have failed as the Motion materials unequivocally state that Lead Counsel "decided not to pursue class-wide claims on behalf of investors trading in options." (Mot. at 5). Further, to drive home the point again, Lead Plaintiff exclaims that it and its counsel have "considered and rejected the inclusion of options traders in the instant consolidated action." (Mot. at 10).

Consolidation is not mandatory under the PSLRA even where more than one action on behalf of different classes assert substantially the same claims. *See In re Cent. European Distrib.*

*Corp. Sec. Litig.* ("*CEDC*") 2012 WL 5465799, at *8 (D.N.J. Nov. 8, 2012); *cf. Prefontaine v. Research in Motion Ltd.,* 2012 U.S. Dist. LEXIS 4238, at *5 (S.D.N.Y Jan 5, 2012); *In re New Oriental Educ. & Technology Group Securities Litigation* ("New Oriental"), 293 F.R.D. 483, 487 (S.D.N.Y. 2013) These decisions make clear that the prejudice to an abandoned or neglected class can warrant a Court to reject consolidation (or in the other direction, de-consolidate through severance). (See, *CEDC*; *New Oriental*)

In *CEDC,* a securities class action ("CEDC I") was consolidated under the PSLRA with another similar securities class action in the District of New Jersey. (*CEDC*, 2012 WL 5465799, at *3). A lead plaintiff and lead counsel were appointed to represent a class of common stockholders. *Id.* Subsequently, two additional securities class actions ("Grodko" and "Puerto Rico") against the same defendant making the same types of legal claims were transferred into the District of New Jersey from the Southern District of New York and were consolidated with the CEDC I action. *Id.* at *1. Unlike the CEDC I action, the classes in both the Grodko and Puerto Rico actions included not only common stockholders but purchasers of all the defendant's securities. *Id.* at *4. The district court de-consolidated the Grodko and Puerto Rico actions from the original consolidated action, consolidated them separately, and coordinated the discovery among the separately consolidated actions. *Id.* at *7–8. Referring specifically to the Grodko action, the district court held that "[c]onsolidation is unwarranted when prejudice would result. [Lead plaintiffs] have indicated that they will not prosecute the Grodko action claims. **The Court would prejudice [the] Grodko [plaintiffs] ... by subjecting them to a lead plaintiff that would neglect their claims.**" *Id.* at *9. (emphasis added) (alteration added)

In *New Oriental*, three competing lead plaintiff movants stipulated to consolidate their securities action and appoint one movant, MPS, as lead plaintiff. (*New Oriental, supra,* 484-485). One of the movants, an options investor, agreed to the stipulation only on the condition that MPS include options investors in the class asserted in the consolidated complaint. *Id.* Even though MPS had explicitly agreed to include options investors, its consolidated complaint as lead plaintiff excluded them from the class. *Id.* As a result, the options investor moved to sever his action and assert claims on behalf of a separate class of options investors. *Id.* The Court noted in *New Oriental* that, just like in *CEDC*, "the lead plaintiff has indicated that it will not prosecute the claims of the options class" and that the appropriate remedy was severance of the consolidation.(*New Oriental, supra,* 487). As the *New Oriental* Court further stated, the "potential repercussions for the

abandoned class argue in favor of severance of [option investor's] action from the consolidated class action complaint." (*New Oriental, supra,* 488) (alteration added). Further, the Court discounted lead plaintiff's claim that it *might* at some point in the future amend the consolidated class action complaint as an "ambiguous litigation position" that did not protect the "abandoned subclass". *Id* Moreover, in *New Oriental*, the opposing lead plaintiff based part of its opposition on its "good faith" conclusion that "the options class claims cannot be pursued as a class action because the claims cannot satisfy certain class certification requirements." (New Oriental*, supra,* 488). The Court rejected this argument and stated that "[d]enial of severance would have the effect of peremptorily dismissing the options class claims without any briefing on whether such a dismissal was warranted. If the claims of the options class are without merit, they can be disposed of on a motion to dismiss." *Id.* (alteration added). Thjs rejected position is the same position Lead Plaintiff asks this Court to adopt.

While the Court in *CEDC* found that a lead plaintiff's refusal to prosecute a subclass's claims is sufficient prejudice to warrant a refusal to consolidate, the Court in *New Oriental* also considered the repercussions of the running of the statute of limitations on un-litigated class claims which a lead plaintiff abandons as a further prejudicial circumstance favoring severance (de-consolidation). (See *New Oriental, supra,* at 487). Here. Lead Counsel's abandonment of the Option Class also risked the running of the state of limitations on that class' claims as the filing of the Stock class claims did not toll the Options claims at issue.

The enormous prejudice to having the Options Action terminated, and the Options Class extinguished, by handing over authority to Lead Plaintiff and Lead Counsel is obvious considering Lead Plaintiff's proclamation in this Motion that that class and its claims will be abandoned and have been rejected. The course of Lead Plaintiff's conduct is mystifying. As demonstrated, Lead Plaintiff and Lead Counsel have not published any PSLRA notices or filed any documents with the Court asserting or seeking to advocate for a single claim in respect of a single option on behalf of a single option holder from February 2, 2021 until the present; however, now when an Options Class makes resort to the Court and this MDL, suddenly Lead Plaintiff and Lead Counsel want to establish authority over that class and their claims for the express purpose of neglecting them and not letting them proceed. No wonder Robinhood supports their move for consolidation. Robinhood clearly does not want to be exposed to the additional damages of the Options Class.

Moreover, while it is now well recognized law of this MDL that the Options Class can assert the same claims as those asserted by the Stock Class, even if the ultimate result of granting the Lead Plaintiff's relief were not to extinguish the Options Class and the Options Action (which it is), Lead Counsel and Lead Plaintiff are complaining that the difficulty they perceived in pursuing an options based class action in this MDL is because of damage calculation certification issues for the Options Class, which would burden the Stock Class by being mixed into the same action. As discussed above, the specter of unique damage issues for the Options Class is baseless. The same damage methodology would govern both stock and options and option prices are directly derivative of the price of the underlying stock.  Moreover, even if there were greater damage issues facing the Options Class, the solution is not to allow those claims to be extinguished.  Rather, the solution is to allow the claims of the Options Class to proceed separately under separate leadership who will zealously advance the interests of the Options Class, albeit with coordination, as necessary, with the stock case.  This was precisely the approach taken in *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 406 (D. Minn. 1998), where the Court determined to maintain an options class separate from a stock class, and denied consolidation, even though their claims arose from common questions of law and fact. The issue in that case was a potential burden that, given the state of the jurisprudence at that time, an options class would place on the stock class and the stock class's contention that it would be "burdened with additional impediments to class certification, and to success on the merits, that are unique to the Options Plaintiffs." (*Chill, surpa,* 405)   Lead Plaintiff's expressed concern with the certifiability of the Options Class, albeit for different reasons, is thus further grounds for not consolidating the Options Class even if their intention was not to extinguish the Options Action. The Options Class deserves a lead counsel that will be a zealous advocate for their claims without reluctance.

## CONCLUSION

For the foregoing reasons, the Court should deny in all respects Lead Plaintiff's and Named Plaintiffs' motion to consolidate the Options Action and discontinue the Lead Plaintiff process in the Options Action as moot.

Dated:  June 9, 2023               Respectfully submitted,

**KLAFTER LESSER LLP**

/s/ Jeffrey A. Klafter
Jeffrey A. Klafter
2 International Drive, Suite 350
Rye Brook, New York 10573
Telephone: (914) 934-9200
Fax: (914) 934-9220
*jak@klafterlesser.com*

**PESSAH LAW GROUP, PC**

/s/ Maurice D. Pessah
Maurice D. Pessah
9100 Wilshire Boulevard, Suite 850E
Beverly Hills, CA 90212
Tel. (310) 772-2261
*maurice@pessahgroup.com*

**CHELIN LAW FIRM**

/s/ Stuart Chelin
Stuart Chelin
16133 Ventura Boulevard, Suite 700
Encino, CA 91436
Tel. (310) 556-9664
*stuart@chelinlaw.com*

*Counsel for the Option Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Jeffrey Klafter