UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-2989-MDL-ALTONAGA/Damian

In re: JANUARY 2021 SHORT SQUEEZE
TRADING LITIGATION

<u>This Document Relates to: All Actions Involving the Federal Securities Laws</u>

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION TO CONSOLIDATE
AND DISCONTINUE THE NOTICED LEAD PLAINTIFF PROCESS AS MOOT**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................................ | 1 |
| II. | THE SCOPE OF THE PSLRA NOTICE INCLUDED OPTIONS CLAIMS .................... | 3 |
| III. | BLUE LAINE-BEVERIDGE WAS APPOINTED LEAD PLAINTIFF FOR THE FEDERAL SECURITIES LAWS TRANCHE ................................................................... | 5 |
| IV. | INDIVIDUAL OPTIONS CASES MAY STILL BE FILED............................................. | 9 |
| V. | THERE IS NO EQUITABLE OR FACTUAL BASIS TO DENY CONSOLIDATION .... | 9 |
| VI. | CONCLUSION.................................................................................................................. | 10 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Burke v. Ruttenberg*,
 102 F. Supp. 2d 1280 (N.D. Ala. 2000) ................................................................................... 4

*Chill v. Green Tree Financial Corp.*,
 181 F.R.D. 398 (D. Minn. 1998) ............................................................................................ 10

*Hall v. Medicis Pharm. Corp.*,
 2009 WL 648626 (D. Ariz. Mar. 11, 2009) ............................................................................. 5

*Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharm. Indus. Ltd.*,
 529 F. Supp. 3d 385 (E.D. Pa. 2021) ................................................................................... 4, 5

*Hevesi v. Citigroup Inc.*,
 366 F.3d 70 (2d Cir. 2004) ...................................................................................................... 8

*In re Bank of Am. Corp. Secs., Derivative & ERISA Litig.*,
 258 F.R.D. 260 (S.D.N.Y. 2009) ............................................................................................. 5

*In re Bank of Am. Corp. Secs., Derivative & ERISA Litig.*,
 2010 WL 1438980 (S.D.N.Y. Apr. 9, 2010) ........................................................................... 7

*In re Bank of Am. Corp. Secs., Derivative & ERISA Litig.*,
 2011 WL 4538428 (S.D.N.Y. Sept. 29, 2011) ..................................................................... 7, 8

*In re Barclays Bank PLC Secs. Litig.*,
 2016 WL 3235290 (S.D.N.Y. June 9, 2016) ........................................................................... 7

*In re Central European Distrib. Corp. Secs. Litig.*,
 2012 WL 5465799 (D.N.J. Nov. 8, 2012) .......................................................................... 9, 10

*In re Facebook, Inc., IPO Secs. & Derivative Litig.*,
 2013 WL 4399215 (S.D.N.Y. Aug. 13, 2013) ..................................................................... 2, 6

*In re New Oriental Educ. & Tech. Grp. Secs. Litig.*,
 293 F.R.D. 483 (S.D.N.Y. 2013) .......................................................................................... 5, 9

*Khunt v. Alibaba Grp. Holding Ltd.*,
 102 F. Supp. 3d 523 (S.D.N.Y. 2015) .................................................................................. 5, 8

*Krukever v. TD Ameritrade, Futures & Forex LLC*,
 328 F.R.D. 649 (S.D. Fla. 2018) ............................................................................................. 8

*N.Y. State Teachers Ret. Sys. v. Gen. Motors Co.*,
  315 F.R.D. 226 (E.D. Mich. 2016) .................................................................................. 7

*Ravens v. Iftikar*,
  174 F.R.D. 651 (N.D. Cal. 1997) ..................................................................................... 4

**Statutes**

15 U.S.C. §78u-4(a)(2)(A)(iv) ................................................................................................ 8

15 U.S.C. §78u-4(a)(3)(A)(i) .................................................................................................. 4

I.      INTRODUCTION

The instant motion for consolidation should be granted because Maurice Scarborough and Scott Schiller ("Scarborough Action plaintiffs") freely admit that they "seek to assert the same security fraud claims this Court has allowed to proceed." ECF 571 at 2.[1] As no legitimate basis exists for a niche case in the federal securities laws tranche, the ongoing lead plaintiff process should be discontinued.

In April 2021, the Judicial Panel on Multidistrict Litigation transferred a dozen cases to this Court that alleged federal securities fraud claims, including claims made by options traders, which were consolidated into this tranche. ECF 420 at 2 & n.4. On June 3, 2021, the Court organized the 50 related cases transferred by the JPML into four tranches. ECF 323. Ever since, the Court has ensured that litigation in each tranche proceeded expeditiously. In the three non-federal securities laws tranches, several rounds of pleading and Rule 12(b) motions were filed and decided in less than a year; all three cases are on appeal. In this tranche, a consolidated complaint was filed and a motion to dismiss briefed less than four months from the appointment of the Lead Plaintiff. *See* ECF 420 (Oct. 15, 2021, Order); ECF 455 (Feb. 11, 2022, Robinhood reply brief). Discovery has been ongoing for nearly eight months and class certification will be fully briefed on June 30, 2023, following extensive class discovery.

Although they seek to add a new class action to this tranche, the Scarborough Action plaintiffs provide no reason why they waited until April 6, 2023, to try to pursue the Rule 10b-5 options class claim[2] they first alleged on February 5, 2021, as named plaintiffs in the Gossett Action (a consolidated case in this tranche). They assert the reason for their procrastination "is of no consequence." ECF 571 at 13. To the contrary, their delay prevented coordinated discovery efforts within this tranche because, if not consolidated, the Scarborough Action is in its infancy.[3]

---

[1] All references to the Scarborough Action plaintiffs' memorandum of law in opposition to the instant motion are to "ECF 571."

[2] Although the Gossett Action did not allege a §9(a) claim, for convenience, the federal securities laws options claims the Scarborough Action plaintiffs now seek to assert will be referred to herein as the "federal options class claims".

[3] Robinhood's position in support of the motion (following a good faith conference pursuant to Local Rule 7.1(a)(3)) likely reflects a concern about the cost of re-starting pleading and motion practice and "reinventing the wheel" in another securities case after many months of discovery.

*In re Facebook, Inc., IPO Secs. & Derivative Litig.*, 2013 WL 4399215, at *4 (S.D.N.Y. Aug. 13, 2013), advises that courts consider the Private Securities Litigation Reform Act of 1995's ("PSLRA") mandate to prevent lawyer-driven litigation when reviewing consolidation and lead plaintiff issues. The reason the Scarborough Action plaintiffs sat on their federal options class claims – claims they argue were disavowed by plaintiffs and Lead Counsel since February 2, 2021 (ECF 571 at 3-4, 18) – is of great consequence to the Court's analysis here.

The Scarborough Action plaintiffs and their counsel made the strategic decision to pursue their options class claims in the Robinhood tranche. Perhaps it was because they assumed they would not prevail on a lead plaintiff motion or that state law claims would be easier to plead because they are not subject to the PSLRA's heightened pleading standards nor its discovery stay. Either way, *they made a choice to abandon the federal securities law tranche.* At no time prior to April 6, 2023, did the Scarborough Action plaintiffs or their counsel take any action in this tranche relating to the federal options class claims they now profess to champion.[4]

The Court dismissed the Robinhood tranche case with prejudice. ECF 409 and 453. An appeal followed (ECF 457), and the Eleventh Circuit held oral argument on March 23, 2023. Not hopeful of their chances on appeal, since early April 2023, the Scarborough Action plaintiffs and their counsel have tried to find a way to reinsert themselves into the only tranche currently alive in the MDL.

The Scarborough Action plaintiffs concede that Lead Plaintiff upon consultation with Lead Counsel, The Rosen Law Firm, P.A. ("Rosen Law"), has the broad authority, power, and discretion to determine what claims to bring or not bring, to decide the parameters of the class and class period, and to resolve such claims with respect to the Affected Stocks. For them, "the only issue now before the Court is whether the current Lead Plaintiff and Lead Counsel have, or should have, the authority" over federal options class claims. ECF 571 at 2. For the reasons set forth in the moving papers and below, the answer is "Yes." The PSLRA contemplates consolidation where, as

---

[4] Asserting that a request to Lead Plaintiff and his counsel to allege an options claim would have fallen on "deaf ears," (ECF 571 at 12-13), the Scarborough Action plaintiffs contend that Lead Counsel should have convened a Steering Committee meeting before filing the consolidated complaint. ECF 571-1 at 2 (Declaration of Maurice D. Pessah, ¶4). The Court's orders mandating procedural and discovery coordination across tranches seek to avoid duplication of effort, *see, e.g.* ECF 323, not to require group approval of pleadings across tranches – especially where the PSLRA grants wide latitude over the conduct of the litigation to a single lead plaintiff.

2

the Scarborough Action plaintiffs concede, the same claims are asserted.

To avoid this result, the Scarborough Action plaintiffs and their counsel distort the record, seize on purported ambiguities, and rely on inapposite authority to assert that Lead Plaintiff has no dominion over the federal options class claims they initially brought in the Gossett Action, which were consolidated into this case. *See* ECF 420 at 2 n.4. First, they contend that the PSLRA notice issued on May 28, 2021 ("PSLRA Notice") was inadequate because it did not specifically identify options. Second, they claim that Lead Plaintiff did not seek and the Court did not appoint Mr. Laine-Beveridge to pursue options claims. Third, they baldly assert that Lead Plaintiff and the named plaintiffs are not authorized to decline to bring federal options class claims because they did not trade in options. Fourth, they ask the Court to engage in a new lead plaintiff process because they disagree with Lead Plaintiff's and Lead Counsel's considered determination not to assert federal options class claims. These arguments are all meritless.

## II.   THE SCOPE OF THE PSLRA NOTICE INCLUDED OPTIONS CLAIMS

The Scarborough Action plaintiffs and their counsel alleged federal options class claims on February 5, 2021, when they amended the complaint in the earlier action in which they were named plaintiffs. *See Gossett et al. v. Robinhood Financial, LLC, et al*., No. 21-cv-21293 (ECF 24, pre-MDL). In addition to their counsel receiving, via ECF on April 18, 2021, a comprehensive list of all cases and claims in the MDL (ECF 200-1), as plaintiffs in the Gossett Action, the Scarborough Action plaintiffs and their counsel knew from the outset that the lead plaintiff process in the federal securities law tranche directly implicated their federal options class claims. Despite their active participation in the MDL, they now suggest that because the PSLRA Notice issued on May 28, 2021 (ECF 321/366-2),[5] used the broad term "Affected Securities" but did not specifically mention "options," Lead Plaintiff Laine-Beveridge was thereafter precluded from making any decision relating to the options class. This argument borders on frivolous. Indeed, do the Scarborough Action plaintiffs contend that had Lead Plaintiff added federal options class claims to the complaint filed on January 17, 2023, that they could have moved to strike the complaint as outside the scope of his authority? Of course not.[6]

---

[5] Because the Court ordered that notice be reissued, the operative PSLRA Notice was filed twice – once upon issuance (ECF 321) and again as part of the Lead Plaintiff moving papers (ECF 366-2). In the moving papers on this motion, Plaintiffs referenced only ECF 366-2.

[6] Conversely, the Scarborough Action plaintiffs give away too much by stating: "This is a circumstance of Lead Plaintiff's and Lead Counsel's own making which circumstance they could

There is no requirement that a PSLRA notice specifically identify by name every possible security or derivative security – in this case, options. The PSLRA Notice is adequate. In addition to the case and Court name, case number, and assigned Judge, the PSLRA Notice alerts investors in the "Affected Securities" of the Gossett Action and seven other cases that "assert largely similar allegations but are brought on behalf of *different classes* and include *different securities*." ECF 321/366-2 (emphasis added). The PSLRA Notice "urge[s] investors to review the different complaints and classes." *Id.* It also provides instructions to investors to contact the Clerk's office for copies of the relevant complaints. *Id.* Consequently, the PSLRA Notice meets the Court's requirement to "provide enough information to allow interested class members to directly 'contact the Court and readily obtain a copy of the complaint[s] … and/or file a motion to be appointed as lead'" plaintiff. ECF 307 at 5 (May 18, 2021, Order); *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharm. Indus. Ltd.*, 529 F. Supp. 3d 385, 392 n.7 (E.D. Pa. 2021) (PSLRA notice sufficient when an investor can "(1) determine whether she is eligible for lead plaintiff status based on the class period; (2) learn enough about the asserted claims to make an initial judgment as to whether to obtain a copy of the Complaint ... and (3) contact the clerk's office to obtain a copy of the Complaint …") (internal quotes and citations omitted); 15 U.S.C. §78u-4(a)(3)(A)(i).[7]

Recognizing that the PSLRA Notice is facially sufficient, the Scarborough Action plaintiffs argue that sometimes it is not enough in complex cases to list the relevant pleadings, citing *Ravens v. Iftikar*, 174 F.R.D. 651, 656 (N.D. Cal. 1997). ECF 571 at 6 n.5. This argument is unavailing here, coming from two of the named plaintiffs in the Gossett Action, a case cited in the PSLRA Notice, who presumably already knew that they had filed options claims. Moreover, the PSLRA was enacted to encourage investors with a large stake in the outcome of a case to step forward and take an active role in the litigation. ECF 307 at 6-7 (explaining purpose of PSLRA and citing cases). An investor that does not carefully read a PSLRA notice, or review or inquire about complaints asserting "largely similar allegations, … brought on behalf of *different classes* and

---

have clearly avoided by publishing a PSLRA notice that included options and moving for appointment on behalf of stock and options." ECF 571 at 8-9. By not adding "and including options claims in the complaint," they admit that they would not have tried to belatedly seek to create a niche options class within this tranche if the notice and motion had used the word "options" – regardless of whether options claims were actually brought. Pure gamesmanship.

[7] Various notices in *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1312-16 (N.D. Ala. 2000) (ECF 571 at 6), had multiple problems, including: not containing the correct court name or district, omitting parties' names, and not indicating investors could move to be appointed lead plaintiff.

includ[ing] *different securities*," ECF 321/366-2 (emphasis added), is not the type of active participant the PSLRA envisions serving as a lead plaintiff. The Scarborough Action plaintiffs were already represented by counsel when the PSLRA Notice was issued; they had the ability to take action, *e.g.* to seek clarification or to file their own PSLRA notice on the Gossett Action complaint, if they were unsure whether options claimants were included in the class. They did not.

Moreover, neither the issuer nor other potential movants are held to a rigid reading of the class as defined in the notice. Instead, courts routinely consider lead plaintiff motions filed by movants with losses in securities that were not specifically identified in the notice. *E.g.*, *Teva Pharm. Indus. Ltd.*, 529 F. Supp. 3d at 393-394 & Ex. F to the Declaration of Laurence M. Rosen ("Rosen Decl."), filed herewith, (movant with stocks and bonds responded to "securities" notice); *In re New Oriental Educ. & Tech. Grp. Secs. Litig.*, 293 F.R.D. 483 (S.D.N.Y. 2013) & Rosen Decl., Ex. G (options movant on "ADS" notice); *Hall v. Medicis Pharm. Corp.*, 2009 WL 648626, at *4 (D. Ariz. Mar. 11, 2009) (appointing options movant on "stock" notice) & Rosen Decl., Ex. H; *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523 (S.D.N.Y. 2015) (options investor moved on "ADS" notice) & Rosen Decl., Ex. I. Indeed, in *In re Bank of Am. Corp. Secs., Derivative & ERISA Litig.*, 258 F.R.D. 260, 267 & n.5 (S.D.N.Y. 2009), the decision on the lead plaintiff motion in the *BofA* cases in which the same options movant was twice rejected, the notice announced the filing of §14(a) claim on behalf of stockholders eligible to vote on a merger; later complaints and movants added the §10(b) claim. Rosen Decl., Ex. J.

Proof that the PSLRA Notice did not confuse or mislead concerning the ability of options traders to move to be appointed lead plaintiff is the fact that no options investor came forward to complain that they missed an opportunity to serve as the lead plaintiff of the federal securities laws tranche. If such interested investors existed, one would expect them to have filed lead plaintiff motions in response to the Scarborough Action plaintiffs' April 10, 2023, PSLRA notice. Scarborough and Schiller, together, are the only movant. *See* ECF 572.

### III. BLUE LAINE-BEVERIDGE WAS APPOINTED LEAD PLAINTIFF FOR THE FEDERAL SECURITIES LAWS TRANCHE

Even though the PSLRA Notice used the phrase "Affected Securities," and by its terms covered the claims of options traders, the Scarborough Action plaintiffs argue that without a motion specifically seeking appointment on behalf of both a stock class *and* an options class, the Court only appointed Mr. Laine-Beveridge as Lead Plaintiff over a stock class. ECF 571 at 6-7. This characterization of the Lead Plaintiff process is factually and legally inaccurate.

5

After the PSLRA Notice was filed on May 28, 2021, on June 3, 2021, the Court created the four-tranche structure and set pleading and briefing deadlines for all but the federal securities laws tranche, for which a briefing schedule on a single master complaint would be entered once the lead plaintiff process concluded. ECF 323. On July 28, 2021, Mr. Laine-Beveridge moved to be appointed lead plaintiff for the entire federal securities laws tranche – not just a subset thereof – moving on behalf of those who traded in the "Affected Securities." ECF 366. On October 15, 2021, the Court appointed Mr. Laine-Beveridge lead plaintiff for the federal securities laws tranche. ECF 420. The Court's Order identifies the cases, including the Gossett Action, that allege various federal securities laws claims. *Id*. at 2 & n.4. As did the PSLRA Notice, the Court refers to the "affected securities" eleven times throughout the Order. *Id.* There is nothing in the record to indicate that the Court intended to appoint Mr. Laine-Beveridge as the lead plaintiff for only a subset of federal securities laws tranche claims.

Because the case law discussed at length in the opening memorandum establishes the broad authority of a lead plaintiff to determine the contours of the class and the federal securities claims to be brought (ECF 565 at 6-10), below, Plaintiffs briefly respond to the Scarborough Action plaintiffs' spurious efforts to distinguish these cases:

***In re Facebook, Inc., IPO Secs. & Derivative Litig***., 2013 WL 4399215 (S.D.N.Y. Aug. 13, 2013) ("*Facebook I*"):  Unlike the Scarborough Action plaintiffs, who sat on their rights for two years, in *Facebook I*, plaintiffs in two actions alleging Exchange Act claims unsuccessfully: (1) opposed consolidation with 29 Securities Act cases; (2) moved for appointment as lead plaintiff; and (3) moved to sever the Exchange Act cases six weeks after the lead plaintiff filed a consolidated class action complaint that did not include Exchange Act claims. The last motion was denied despite the fact that the Exchange Act plaintiffs claimed they would represent a bigger class than the one covered in the Securities Act consolidated complaint. *Id.* at *1-5.

The Scarborough Action plaintiffs argue that the Exchange Act claims covered the same class of shareholders as the Securities Act claims, whereas here options and stock claims are distinct. ECF 571 at 7. But *Facebook I* specifically rejected that argument, holding that "variations in class definition do not defeat consolidation or justify a proliferation of overlapping classes." 2013 WL 4399215 at *6. The Scarborough Action plaintiffs next attack the *Facebook I* court's reasoning that "if a parallel class action were to be permitted, both actions would therefore seek recovery for the same absent class members." *Id.* at *5. They unironically contend that because

6

they traded in different securities, option class members are completely distinct from stock class members – even though "they may assert the same claims." ECF 571 at 7. But the two sets of class members are not distinct: Many investors traded in stocks *and* options and a settlement with Robinhood would likely require a release of all claims each investor holds.

*In re Barclays Bank PLC Secs. Litig.*, 2016 WL 3235290 (S.D.N.Y. June 9, 2016): After many years of motion practice and appeals, the court had finally ruled that the proposed class representative had standing to bring both §§11 and 12 claims. *Id.* at *3. Even so, the court ruled that it was within the lead plaintiff's discretion to not seek to certify the §12 claim as a class claim. *Id.* at *7. The Scarborough Action plaintiffs assert the case "involved the determination of what claims could be brought on behalf of the only viable class alleged in the complaint -- purchasers on the Series 5 offering." ECF 571 at 7-8. Whereas the proposed class representative purchased the Series 5 security, this attempted distinction makes no sense.

*N.Y. State Teachers Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 239 (E.D. Mich. 2016): Rejecting an objection to a settlement made on the ground that warrants had never been made part of the class, the court upheld the lead plaintiff's decision to exclude them. Although the Scarborough Action plaintiffs try to distinguish the case by arguing that excluded warrant claims were not extinguished (ECF 571 at 8), here, individual options cases may be brought.

*In re Bank of Am. Corp. Secs., Derivative & ERISA Litig.*, 2010 WL 1438980 (S.D.N.Y. Apr. 9, 2010) ("*BofA I*"): Rather than appoint lead plaintiffs and lead counsel in carve-out cases, the court consolidated two cases later brought by options investors and one brought by debt securities holders into an existing securities class action – even though the lead plaintiff in the action had already filed a consolidated complaint on behalf of only stockholders. Recognizing the full authority of the lead plaintiff under the PSLRA to determine the scope of the case, the court noted that the lead plaintiff might decide to bring the other claims "if there is a meritorious basis for doing so." *Id.* at *2. The Scarborough Action plaintiffs try to distinguish the case by noting that Lead Plaintiff here has already determined not to bring option claims. ECF 571 at 8. This is a distinction without a difference because the court's reasoning clearly indicates that the lead plaintiff was free not to bring those claims if, in its judgment, it would be unwise to do so.

*In re Bank of Am. Corp. Secs., Derivative & ERISA Litig.,* 2011 WL 4538428 (S.D.N.Y. Sept. 29, 2011) ("*BofA II")*: Lead Plaintiff decided to add the options and debt claims to its next

7

complaint,[8] but they were mostly dismissed for lack of standing. A renewed motion by one of the options plaintiffs to pursue the parallel action for which he had standing was denied: Once more, because lead plaintiff had the authority to set the bounds of the class, it could *let the options claims go*. The court refused to either permit a parallel action or to force lead plaintiff to join forces with the options plaintiff. *Id.* at *1. Although the Scarborough Action plaintiffs try to distinguish the case by stating the options plaintiff "was not an adequate class representative for the particular options" (ECF 571 at 8), in fact, lead plaintiff interviewed him and "concluded that he was not well suited for [the] role [of class representative]." 2011 WL 4538428, at *1.

Here, Lead Plaintiff and Lead Counsel exercised their fiduciary duties and judgment to determine, after significant research, that although they could assert options claims in the consolidated complaint,[9] it would not be in the best interests of the class to include options claims that would not likely be certified under the Court's ruling in *Krukever v. TD Ameritrade, Futures & Forex LLC*, 328 F.R.D. 649, 661-62 (S.D. Fla. 2018). Even if there is a straightforward class-wide damages formula for options, plugging in the values for over 4,600 options across nine issuers places an intolerable burden on the Court.[10]

---

[8] In *Alibaba, supra,* cited by the Scarborough Action plaintiffs for the uncontested proposition that it is possible to certify an options class (ECF 571 at 11), the PSLRA notice only mentioned Alibaba ADSs. The options claims that were certified were added later. *See* Rosen Decl., Ex. I.

[9] Solely because options trades were not in their certifications, the Scarborough Action plaintiffs baldly assert that neither the Lead Plaintiff nor any named plaintiff traded options. ECF 571 at 3, 5, and 9-10. However, certifications need only list transactions in "the security that is the subject of the complaint " (15 U.S.C. §78u-4(a)(2)(A)(iv)), here, stocks and ADSs. Moreover, because a lead plaintiff has the ability to add plaintiffs if it is deemed necessary, *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82-83 (2d Cir. 2004), under *Hevesi* and *BofA II*, it is a lead plaintiff's choice to either add a plaintiff or drop a claim. Thus, the contention (ECF 571 at 10) that standing to sue for options is a predicate for Lead Plaintiff to exercise his authority to decline to bring a class-wide options claim is completely meritless.

[10] Although they never moved to be lead plaintiff and never contacted Lead Counsel in the two years before filing their complaint, the Scarborough Action plaintiffs brazenly second-guess the determination not to attempt the heavy lift of trying to certify options claims for thousands of different derivative securities of nine issuers. Although Lead Plaintiff does not believe proof of market efficiency is required in this case, if the Court ruled otherwise, expert reports and discovery could present a crushing burden on the parties and the Court, even if an options class could adopt Plaintiffs' expert's class-wide damages model as suggested in the opposition brief. More traditional securities fraud cases where options classes were certified for a single issuer – including *Alibaba,* in which Rosen Law served as Lead Counsel – stand in contrast to this market manipulation case. The Scarborough Action plaintiffs do not cite authority for the proposition that Lead Plaintiff was

8

## IV. INDIVIDUAL OPTIONS CASES MAY STILL BE FILED

The Scarborough Action plaintiffs sound a false alarm that meritorious options claims will be extinguished if the motion is granted and a federal options class is not added to the case. Not so. While rejecting class status, both *Facebook* and *BofA* noted that individual cases could be brought. ECF 565 at 8.

## V. THERE IS NO EQUITABLE OR FACTUAL BASIS TO DENY CONSOLIDATION

Although consolidation is not mandatory, the Scarborough Action plaintiffs' citation to cases with unusual facts that justify deconsolidation completely backfires, reinforcing why, in this case, the Court can apply *Facebook* and *BofA*, grant consolidation, and never look back.

Deconsolidation was ordered in *New Oriental Educ.*, *supra*, because the lead plaintiff reneged on a promise to bring options claims in exchange for the options plaintiff withdrawing his own motion and stipulating to the lead plaintiff appointment. Three months after the consolidated amended complaint was filed without options claims, the options plaintiff sought relief from the court. 293 F.R.D. at 485. Although the court denied a co-lead plaintiff appointment as unwarranted, specifically citing the "course of conduct" between the parties, it carved out an options class explaining: "[i]f the lead plaintiff motions were litigated and were not the subject of a stipulation, the Court would have considered how to protect the potential members of an options class." *Id.* at 488.

Here, the Scarborough Action plaintiffs did not move for lead plaintiff after filing the Gossett Action and, because they never once reached out to Lead Plaintiff and Lead Counsel after joining the Robinhood Tranche, were never promised federal options class claims would be asserted in the consolidated complaint. Having done nothing to protect such claims since filing them on February 5, 2021, there is no equitable basis to deny consolidation or reward extreme delay with a lead plaintiff appointment – something not even the *New Oriental Educ.* court was willing to grant to options movants who did not sit on their hands.

*In re Central European Distrib. Corp. Sec. Litig.*, 2012 WL 5465799 (D.N.J. Nov. 8, 2012) is, literally, a tale of two cases. The first-filed cases, brought in New Jersey in 2011, alleged an eight-month fraud arising out of CEDC's failing vodka business in Poland. On June 8 and August 7, 2012, before Arkansas & Fresno were appointed co-lead plaintiffs in the vodka case on August

---

obligated to try to certify *some* options. *See* ECF 571 at 10-12 & n.8.

22, 2012, the same defendants were sued in New York, in two complaints alleging a 27-month class period concerning improper accounting for retroactive trade rebates given to customers of CEDC's Russian subsidiary. Of little relevance to the main event, the first cases involved a common stock class while the class in the second set of cases included all securities. The New Jersey lead plaintiff order provided that all related cases would be automatically consolidated, with parties objecting to consolidation provided a short time window to seek relief. Defendants procured a transfer of the newly-filed New York cases to New Jersey. Arkansas & Fresno informed the transferee case plaintiffs that they had no intention of litigating the trade rebate claims or expanding the class period in their consolidated action. *Id.* at *1-4. The plaintiffs in the trade rebate cases immediately moved for deconsolidation. The court granted the motion because the differences between the cases were "stark." *Id.* at *8-12.

Having copied Lead Plaintiff's complaint herein, to justify reliance on *CEDC*, the Scarborough Action plaintiffs shockingly describe the two sets of cases in *CEDC* as "making the same types of legal claims." ECF 571 at 17. They then disingenuously cite *CEDC* for the proposition that when a stock class lead plaintiff is hostile to claims of other securities holders, the latter case should have its own lead plaintiff and not be consolidated into a case where the lead plaintiff would neglect their claims. *Id.* If the reason for the deconsolidation was the one given by the Scarborough Action plaintiffs, *CEDC* would conflict with all of the cases affirming a PSLRA lead plaintiff's authority to define the contours of the class. But it really doesn't.[11]

## VI. CONCLUSION

For the reasons stated herein and in Plaintiffs' opening papers, and at any oral argument the Court may schedule, Plaintiffs respectfully request that the Court consolidate the Scarborough Action into the existing federal securities laws tranche and discontinue as moot the proposed lead plaintiff process noticed for that action.

---

[11] *Chill v. Green Tree Financial Corp.*, 181 F.R.D. 398 (D. Minn. 1998) created separate stock and options classes *at the lead plaintiff stage* of the case – not two years later – and only because the law at the time was not settled as to whether options traders had standing to sue. *Id.* at 405-06. *Chill* does not support deviating from the vesting of broad authority in one lead plaintiff (or lead plaintiff group) where there is no potential prejudice to some class members caused by others.

Dated:  June 16, 2023                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, FBN# 0182877
Robin Bronzaft Howald
Michael A. Cohen
By: /s/ Laurence M. Rosen
Laurence M. Rosen, Esq.
275 Madison Avenue 40th Floor
New York, New York 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com

*Counsel for Lead Plaintiff Blue Laine-Beveridge and Named Plaintiffs Abraham Huacuja, Ava Bernard, Brendan Clarke, Brian Harbison, Cecilia Rivas, Doi Nguyen, Joseph Gurney, Marcel Poirier, Sandy Ng, Santiago Gil Bohórquez, and Thomas Cash*

**CERTIFICATE OF SERVICE**

    I hereby certify that on June 16, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Laurence M. Rosen