# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-2989-MDL-ALTONAGA/Damian**

In re: JANUARY 2021 SHORT SQUEEZE
TRADING LITIGATION

**Declaration of Professor Steven Grenadier**
**In Response to the Declaration of Dr. Adam Werner**
**In Response to Defendants' *Daubert* Motion**

**June 28, 2023**

# Table of Contents

I.      Introduction ........................................................................................................................ 1

II.     Opinion 1:  Dr. Werner Fails to Show That the Market Prices for the At-Issue Stocks in
        the Week Before the Proposed Class Period Behaved Similarly to the Rest of the
        Previous Year and Therefore Does Not Rebut the Statistical Tests in the Grenadier
        Report Showing That the Price Movements in the Week Prior to the Proposed Class
        Period Were Highly Abnormal ........................................................................................... 3

        A.     The Grenadier Report Provides Statistical Tests That Demonstrate the Extreme
               Price Movements for the At-Issue Stocks and Structural Breaks in the
               Relationships Between the Returns of the At-Issue Stocks and the Market and
               Industry Returns Starting the Week Prior to the Proposed Class Period ............... 3

        B.     Dr. Werner's Breusch-Pagan Test for Heteroskedasticity Cannot Test Whether It
               Is Appropriate to Assess Market Efficiency by Examining the Year Prior to the
               Start of the Proposed Class Period ........................................................................ 5

III.    Opinion 2: Dr. Werner Fails to Address That His Definition of "News" Does Not Identify
        New, Value-Relevant Information That Might Cause an Investor to Revise Expectations
        of a Company's Cash Flows or the Risks to Those Cash Flows ........................................ 8

        A.     Dr. Werner's Assertion That His Definition of "News" Is a "More Objective
               Selection Methodology" Does Not Demonstrate That It Is Helpful in Identifying
               New, Value-Relevant Information ......................................................................... 8

        B.     Dr. Werner's Analysis in Table 2 Is Not Reliable As He Does Not Provide Any
               Criteria for His New "Adjustments" ...................................................................... 8

IV.     Opinion 3:  Dr. Werner's Binomial Test Is Unreliable Even Under His Own Stated
        Methodology Because It Fails to Test If the Stock Price Reacted Differently on Days with
        New, Potentially Value-Relevant Information Compared to Days without New,
        Potentially Value-Relevant Information ............................................................................. 9

## I.      Introduction

1.      I have been asked by counsel for Robinhood Markets, Inc., Robinhood Financial LLC, and Robinhood Securities, LLC (together, "Robinhood," "the Company," or "Defendants") to assess certain issues concerning market efficiency and a potential class-wide damages methodology in this litigation.  I submitted an expert report on February 16, 2023 (the "Grenadier Report").[1]  I responded to the Declaration of Adam Werner dated February 16, 2023 ("Werner Declaration")[2] in a report submitted on March 28, 2023 (the "Grenadier Rebuttal Report").[3]  On March 28, 2023, Dr. Werner submitted a report responding to the Grenadier Report ("Werner Rebuttal Report"),[4] and on June 21, 2023, Dr. Werner submitted a declaration in response to Defendants' Daubert Motion ("Werner Daubert Declaration").[5]

2.      Counsel for Defendants has asked me to evaluate and respond to opinions put forth in the Werner Daubert Declaration.[6, 7]  Based on my review of the Werner Daubert Declaration, I conclude the following:

> a.  In the Grenadier Rebuttal Report, I explained why examining market efficiency for the full year prior to the proposed Class Period is unreliable, given the highly unusual "meme stock" episode that occurred shortly before the start of the proposed Class Period.  As a part of my analysis, I conducted a number of statistical tests showing that the pattern of stock price movements starting the

---

[1] All references to the "Grenadier Report" are to my corrected report filed February 24, 2023 (Corrected Expert Report of Professor Steven Grenadier, *In re: January 2021 Short Squeeze Trading Litigation*, February 24, 2023).

[2] Declaration of Dr. Adam Werner, *In re: January 2021 Short Squeeze Trading Litigation*, February 16, 2023.

[3] Rebuttal Expert Report of Professor Steven Grenadier, *In re: January 2021 Short Squeeze Trading Litigation*, March 28, 2023.

[4] Rebuttal Report of Dr. Adam Werner, *In re: January 2021 Short Squeeze Trading Litigation*, March 28, 2023.

[5] Declaration of Dr. Adam Werner in Response to Defendants' Daubert Motion, *In re: January 2021 Short Squeeze Trading Litigation*, June 21, 2023.

[6] My work in this matter is ongoing.  The opinions presented in this report are the result of the information available to me as of the report date.  I reserve the right to supplement or modify my opinions if new information comes to light and to respond to any additional report(s) or opinions offered by other experts.  I am being compensated at my standard billing rate of $1,250 per hour.  I have been assisted in this matter by staff of Cornerstone Research, who worked under my direction.  I receive compensation from Cornerstone Research based on its collected staff billings for its support of me in this matter.  Neither my compensation in this matter nor my compensation from Cornerstone Research is in any way contingent or based on the content of my opinion or the outcome of this or any other matter.

[7] In addition to the documents listed in Appendix C of the Grenadier Report and Appendix A of the Grenadier Rebuttal Report, I considered the following additional documents when forming my opinions in this report: Werner Rebuttal Report; Werner Daubert Declaration; J. Stock and M. Watson (2015), *Introduction to Econometrics*, 3rd ed., Boston: Pearson Education, Inc; T.S. Breusch; A.R. Pagan (1979), "A Simple Test for Heteroscedasticity and Random Coefficient Variation," *Econometrica*, 47(5), pp. 1287–1294; and A. King et al. (2017), "Econometric Analysis" in *Litigation Services Handbook: The Role of the Financial Expert*, R. L. Weil, D. G. Lentz and E. A. Evans, 6th ed., Hoboken, NJ: John Wiley & Sons, Inc.

week prior to the proposed Class Period was highly abnormal.  Dr. Werner presents a test in the Werner Daubert Declaration that does not address changes over time and therefore does not rebut the results presented in the Grenadier Report.

b.  Dr. Werner's claim that the definition of "news" used in his report is "more objective," even if true, would not make his tests appropriate or reliable, as his definition is unhelpful in identifying new, value-relevant information that is critical to assess the "cause and effect" relationship under the fifth *Cammer* factor that he purports to test.  Furthermore, in response to issues raised in the Grenadier Rebuttal Report, Dr. Werner's new analysis in Table 2 of his Daubert Declaration purports to filter out "articles with potentially unrelated news" and "discussions of price movements only."  However, he does not provide any criteria or methodology that would be required for one to evaluate or replicate his analysis.

c.  Dr. Werner's binomial test is unreliable even under his own stated methodology because it fails to test if the stock price reacted differently on days *with* new, potentially value-relevant information compared to days *without* new, potentially value-relevant information.  When I tested if there was a difference in the frequency of statistically significant residual returns between "news" days and "non-news" days[8] in the Grenadier Report Appendix E, I found that there was no statistically significant difference.

---

[8] Note that Dr. Werner mischaracterizes the identification of "news" days in my report.  I identify *potentially* value-relevant pre-Class Period news in Appendix E of my report, which he treats as a "news" day.  For the purposes of my Opinion 3, I use Dr. Werner's definition of "news" and "non-news" days, despite my disagreement with this categorization.

II.     **Opinion 1:  Dr. Werner Fails to Show That the Market Prices for the At-Issue
        Stocks in the Week Before the Proposed Class Period Behaved Similarly to the Rest
        of the Previous Year and Therefore Does Not Rebut the Statistical Tests in the
        Grenadier Report Showing That the Price Movements in the Week Prior to the
        Proposed Class Period Were Highly Abnormal**

        A.      **The Grenadier Report Provides Statistical Tests That Demonstrate the
                Extreme Price Movements for the At-Issue Stocks and Structural Breaks in
                the Relationships Between the Returns of the At-Issue Stocks and the Market
                and Industry Returns Starting the Week Prior to the Proposed Class Period**

3.      In the Werner Declaration, Dr. Werner examines market efficiency of the At-Issue Stocks
over a full year before the beginning of the proposed Class Period.  As discussed in the
Grenadier Rebuttal Report, such an approach is unreliable because it masks the highly unusual
market conditions directly before the proposed Class Period, including evidence of coordinated
trading, short squeezes, attempted short squeezes, and short-sale constraints.[9]  Dr. Werner
erroneously claims that "Defendants offer zero evidence other than anecdotes and speculation
that there is even a distinction between this so-called 'general data set' and the 'narrower data
set'."[10]  Contrary to his claim of "zero evidence," in the Grenadier Report I performed five
different sets of statistical tests to show such a distinction.

4.      In particular, I examined the extreme nature of the stock price movements leading up to
and, separately, during the proposed Class Period by running statistical tests comparing (i) the
stock price movements and residual stock price movements for the At-Issue Stocks to those of
other stocks on the NYSE/Nasdaq; (ii) the stock price movements for the At-Issue Stocks to their
own historical stock price movements over the past 25 years; and (iii) the stock price movements
of the At-Issue Stocks as a group to the historical performance of a broad set of stocks over the
past 25 years.[11, 12]  These tests showed that in the week leading up to the proposed Class Period,
the At-Issue Stocks experienced highly unusual returns, including some of the largest returns in
the past 25 years, let alone the past year.

---

[9] Grenadier Rebuttal Report, Section III.C.
[10] Werner Daubert Declaration, ¶ 14.
[11] Grenadier Report, ¶¶ 74–91, Figures 2–6, Exhibits 3–4, Appendix D.
[12] I ran these tests using cumulative returns and additional tests comparing raw price movements for the At-Issue
Stocks to their own historical stock price movements using daily returns (Grenadier Report, ¶¶ 81–91).

5.      In addition, in a separate set of analyses in the Grenadier Report, I established that there was a statistically significant structural break in the relationship between the stock returns of the At-Issue Stocks and market and industry returns when comparing the 120 day period ending December 31, 2020 and the period of January 21 to February 4, 2021.[13]  This means that, in the period starting January 21, 2021, the manner in which the prices of the At-Issue Stocks fluctuated relative to the market and industry movements changed when compared to the period before December 31, 2020.

6.      Finally, I established that there was a statistically significant change in the variance of residual returns when comparing the same two periods.[14]  To conduct this test, I calculated residual returns as the difference between returns of each of the At-Issue Stocks and returns predicted by a regression model using the market and industry indices.  I used the Brown-Forsythe test to determine whether the variances of residual returns were equal across the two periods.[15]  Hypothetical Illustration 1 below shows an example of equal variances across two time periods while Hypothetical Illustration 2 below shows variances changing across two time periods.[16]  Like in Hypothetical Illustration 2, I found statistically significant changes in the variances of residuals of all the At-Issue Stocks between the 120 day period ending December 31, 2020 and the period of January 21 to February 4, 2021.  This means that, in the period starting January 21, 2021, the variance of the residual returns for the At-Issue Stocks was not the same as the variance of the residual returns for the At-Issue Stocks in the period before December 31, 2020.

---

[13] Grenadier Report, fn. 140.
[14] Grenadier Report, fn. 140.
[15] Grenadier Report, fn. 140.
[16] Illustrations are not based on actual data.



### B. Dr. Werner's Breusch-Pagan Test for Heteroskedasticity Cannot Test Whether It Is Appropriate to Assess Market Efficiency by Examining the Year Prior to the Start of the Proposed Class Period

7.     Instead of addressing the tests described above, Dr. Werner claims that the Breusch-Pagan test for heteroskedasticity can test whether the "use of the one-year estimation period prior to the Class Period is 'improper' because it 'commingles a general data set with a narrower one.'"[17]  However, contrary to Dr. Werner's assertion, his Breusch-Pagan heteroskedasticity test does not test differences between the one year period over which he claims to test market

───────────────

[17] Werner Daubert Declaration, ¶ 14.

efficiency and the narrow "meme stock" period preceding the proposed Class Period, because it does not compare results across different time periods.[18]

8.      Dr. Werner's Breusch-Pagan heteroskedasticity test takes the residual returns from his regression model and tests whether the variance of these residual returns differs across different levels of the independent variables, which in Dr. Werner's model are market and industry returns.[19]  Hypothetical Illustrations 3 and 4 below show a graphical representation of heteroskedasticity, the data pattern that Dr. Werner's Breusch-Pagan test is supposed to discern.[20] As shown in the Hypothetical Illustration 3 below, the variance of the plotted residual returns can be the same for different levels of market (and industry) returns, resulting in the Breusch-Pagan test finding of no heteroskedasticity, or different (see Hypothetical Illustration 4), resulting in the Breusch-Pagan test finding of heteroskedasticity.

---

[18] Note that Dr. Werner incorrectly defines heteroskedasticity by claiming that "[h]eteroskedasticity means that the residual price movements of a particular stock are not normally distributed" (Werner Daubert Declaration, ¶ 15).  The term "normally distributed," refers to the underlying data following a normal distribution, which is based on certain statistical properties (*See* J. Stock and M. Watson (2015), *Introduction to Econometrics*, 3rd ed., Boston: Pearson Education, Inc., available at https://www.amazon.com/Introduction-Econometrics-3rd-Addison-wesley-Economics/dp/0138009007/ref=tmm_hrd_swatch_0?, pp. 36–37).  This proposed definition is not a definition of heteroskedasticity and is not consistent with the definition Dr. Werner quotes from the Litigation Services Handbook in ¶ 15 of the Werner Daubert Declaration (*See* A. King et al. (2017), "Econometric Analysis" in *Litigation Services Handbook: The Role of the Financial Expert*, R. L. Weil, D. G. Lentz and E. A. Evans, 6th ed., Hoboken, NJ: John Wiley & Sons, Inc., pp. 1–62 at p. 7).  On the contrary, residual price movements can be heteroskedastic and normally distributed, just as they can be homoskedastic and not normally distributed.  My criticisms of Dr. Werner's application of the Breusch-Pagan test for heteroskedasticity are independent of this definitional error, however.
[19] I have replicated the results in Table 1 of the Werner Daubert Declaration and verified that the independent variables Dr. Werner included in the Breusch-Pagan test in Table 1 were the market and industry returns.  For a definition of the Breusch-Pagan test, *see* T.S. Breusch and A.R. Pagan (1979), "A Simple Test for Heteroscedasticity and Random Coefficient Variation," *Econometrica*, 47(5), pp. 1287–1294.
[20] Illustrations are not based on actual data.



9.      The key difference between the charts illustrating my variance test methodology (Hypothetical Illustrations 1 and 2) and Dr. Werner's (Hypothetical Illustrations 3 and 4) is that for Dr. Werner's test, the horizontal axis is market returns (it can also be industry returns), but not time. This is because Dr. Werner's test, unlike my test, does not measure changes in variance over time.

10.     In particular, unlike my comparison of residual variance across time periods described in Section II.A above, Dr. Werner's Breusch-Pagan test does not assess whether the variance of residual returns is different *for different time periods* because this is *not* one of the independent variables in Dr. Werner's model. Therefore, Dr. Werner's Breusch-Pagan test cannot be used to test whether results of a longer time period are applicable to a much shorter sub-period.

III.   **Opinion 2: Dr. Werner Fails to Address That His Definition of "News" Does Not Identify New, Value-Relevant Information That Might Cause an Investor to Revise Expectations of a Company's Cash Flows or the Risks to Those Cash Flows**

A.   **Dr. Werner's Assertion That His Definition of "News" Is a "More Objective Selection Methodology" Does Not Demonstrate That It Is Helpful in Identifying New, Value-Relevant Information**

11.   In his opening report, Dr. Werner identified "news" days for his fifth *Cammer* factor analysis by obtaining a list of articles from Factiva[21] and categorizing days as either in the "high information flow group" or "low information flow group" based on a count of the number of articles on each day.[22]  Dr. Werner conceded that this methodology "captures all news regardless of whether it is 'valuation relevant.'"[23]  In the Werner Daubert Declaration, Dr. Werner attempts to justify his definition of "news" using Factiva article counts by describing the definition as being "a more objective selection methodology"[24] than "typical collective test designs" used in his past reports.[25]  However, a test being "more objective" does not make it appropriate.  As discussed in the Grenadier Rebuttal Report, this determination of "news" days is fatally flawed because it does not assess whether there was new, value-relevant information that might cause an investor to revise expectations of the company's cash flows or the risks to those cash flows.[26]

B.   **Dr. Werner's Analysis in Table 2 Is Not Reliable As He Does Not Provide Any Criteria for His New "Adjustments"**

12.   In the Werner Daubert Declaration, Dr. Werner appears to attempt to address issues that I raised in the Grenadier Rebuttal Report about his inclusion of non-value relevant information in his definition of "news."[27]  Dr. Werner conducts a new analysis in which he claims to "filter[] for

---

[21] Dr. Werner also determines when the articles were published and with what trading day each article would be associated (Werner Declaration, ¶ 70).

[22] Werner Declaration, ¶ 70.

[23] Werner Daubert Declaration, ¶ 31.

[24] Werner Daubert Declaration, ¶ 28.

[25] Werner Daubert Declaration, ¶ 20.

[26] This description of what constitutes new, value-relevant information is also consistent with the language Dr. Werner has used in prior declarations, where he stated: "The efficient market hypothesis forms the foundation of modern finance theory.  Finance theory holds that the market price of a stock reflects the discounted value of expected future cash flows to the stockholder.  As a result, new information that causes the market to significantly alter its expectations of future cash flows will cause a repricing of the security to reflect these new expectations."  *See* Declaration of Dr. Adam Werner, *In re: Hi-Crush Partners L.P. Securities Litigation*, April 15, 2014, ¶ 13.  Dr. Werner cites E.F. Fama (1991), "Efficient Capital Markets: II," *Journal of Finance*, 46(5), pp. 1575–1617.

[27] Grenadier Rebuttal Report, Section III.C.

'noise'" and remove "articles with potentially unrelated news, discussions of price movements only, and duplicate articles discussing the same information."[28]  He reruns his "collective test"[29] on this updated set of "news" and concludes that this does "not materially change [his] findings."[30]

13.    However, it is not clear from the analysis in Dr. Werner's Daubert Declaration whether or how his "adjustment" addressed my criticisms in the Grenadier Rebuttal Report, because he did not provide any description of how his new methodology (which would necessarily require some subjective decision-making) was implemented.  To identify and filter out "articles with potentially unrelated news, discussions of price movements only, and duplicate articles discussing the same information," Dr. Werner presumably would have had to review the content of articles and decide which articles to exclude.[31]  Unlike the documentation I provided in my analysis in the Grenadier Report,[32] Dr. Werner does not provide any criteria for how he filtered his articles or how he defined "potentially unrelated news."

14.    Dr. Werner's classification of what constitutes "unrelated news" and "discussions of price movements only" is particularly relevant given the media coverage of the "meme stock" episode in the period immediately prior to the proposed Class Period.  For example, Dr. Werner does not explain how he treated articles with information about retail investors coordinating over social media, short squeezes, attempted short squeezes, or short-sale constraints in his "filtering of noise."[33]  As discussed in my reports, in an efficient market, these types of information do not represent value-relevant information that might cause an investor to revise expectations of the company's cash flows or the risks to those cash flows.[34]

**IV.    Opinion 3:  Dr. Werner's Binomial Test Is Unreliable Even Under His Own Stated Methodology Because It Fails to Test If the Stock Price Reacted Differently on Days**

---

[28] Werner Daubert Declaration, ¶ 33.
[29] Dr. Werner "employ[s] a Fisher's exact test to compare the frequency of statistically significant stock price reactions on high information flow days as compared to lesser information flow days" (Werner Declaration, ¶ 75).
[30] Werner Daubert Declaration, ¶ 32.
[31] Werner Daubert Declaration, ¶ 33.  I understand that Factiva has an option to exclude duplicate articles in searches, but I am not aware of an automated approach to identify articles with "potentially unrelated news" or "discussions of price movements only."
[32] *See* Grenadier Report, Appendix E and Appendix F.
[33] Werner Daubert Declaration, ¶ 32.
[34] Grenadier Rebuttal Report, ¶44.

**with New, Potentially Value-Relevant Information Compared to Days without New, Potentially Value-Relevant Information**

15.     In the Werner Daubert Declaration, Dr. Werner attempts to justify the binomial test analysis he performed in the Werner Rebuttal Report.[35]  Dr. Werner claims that he provided a "testable hypothesis" and tested that hypothesis with the binomial test.[36]  The binomial test Dr. Werner performed combines days on which Prof. Fischel and I identified *potentially* value-relevant information into a set of what he calls "news" days.[37]  Based on his binomial test, Dr. Werner concluded that he could "reject the null hypothesis that the companies' security prices behave no differently on days with company-specific news than on days without company-specific news."[38]  However, the binomial test conducted by Dr. Werner does not and cannot assess whether the At-Issue Stocks reacted differently on "news" days than on "non-news" days, as price reactions on days *without* any "news" are not considered in the test at all.  To demonstrate this limitation, if there were statistically significant residual returns for a stock on every day of the period examined by Dr. Werner, and on half of those days there was "news" and on half there was not, using the binomial test Dr. Werner would conclude that the market for that stock was efficient even though it reacted equally on days with and without "news."

16.     This flaw in Dr. Werner's use of a binomial test is highlighted by Dr. Werner's own statements emphasizing the importance of comparing the frequency of statistically significant returns on days with and without "news," which the binomial test does not do.[39]  In order to demonstrate this flaw, in considering the Werner Rebuttal Report in advance of my deposition, I performed an alternative version of Dr. Werner's test using the "non-news" days in Appendix E of the Grenadier Report, and tested whether "the frequency of statistically significant price movements on days [*without*] Company-specific news is too unlikely to be considered

---

[35] Werner Daubert Declaration, Section III.C and Section III.D.
[36] Werner Daubert Declaration, ¶ 50.
[37] Note that Dr. Werner mischaracterizes the identification of "news" days in my report.  I identify *potentially* value-relevant pre-Class Period news in Appendix E of my report, which he treats as a "news" day.  For the purposes of my Opinion 3, I use Dr. Werner's definition of "news" and "non-news" days, despite my disagreement with this categorization.
[38] Werner Rebuttal Report, ¶ 51.
[39] For example, Dr. Werner states that an appropriate test "determines how frequently the security price exhibits a statistically significant response on 'news' days and 'non-news' days" and that "[b]ased on these frequencies, a statistical test is conducted to determine whether there is a statistically significant difference between the reaction frequency of 'news' dates and 'non-news' dates" (Werner Daubert Declaration, ¶ 38).

random."[40]  I understand this was provided to Plaintiffs' counsel.  I found that four of the seven At-Issue Stocks (BB, BBBY, EXPR, GME) had too many statistically significant price movements on "non-news" days to be considered random.  In summary, an alternative version of Dr. Werner's own test shows that "non-news" days (on which there was no new, *potentially* value-relevant information) are associated with statistically significant stock price movements, which is inconsistent with market efficiency.[41]

17.     In order to further demonstrate the flaw in Dr. Werner's binomial test, I also previously ran a test to compare the frequency of statistically significant residual returns on "news" days and "non-news days."[42]  To address Dr. Werner's concern of a small sample size,[43] I analyzed the seven At-Issue Stocks (for which Dr. Werner claimed that the market was efficient) in a single test to demonstrate the stock prices of the At-Issue Stocks collectively did not react more frequently on "news" days than "non-news" days.  I found that there was no statistically significant difference between the two sets of days, and in fact, days *without* new, potentially value-relevant information were more likely to have statistically significant residual returns than days *with* new, potentially value-relevant information.[44]  In other words, days on which I identify new, potentially value-relevant information are no more likely to experience statistically significant residual returns than days on which I do not identify new, potentially value-relevant information.[45]

Executed this 28th of June, 2023

*Steven Grenadier*

_____

Steven Grenadier, Ph.D.

---

[40] Werner Rebuttal Report, ¶ 51.  I understand that Plaintiffs were provided this analysis prior to my deposition in response to Plaintiffs' notice of my deposition, in which they requested documents that I "considered ... in forming [my] opinions and findings." I have included it as **Exhibit 1**.

[41] Grenadier Report, ¶ 64.

[42] I ran a Fisher exact test, which Dr. Werner used in the Werner Declaration in order to conduct his "news vs. no-news test" (Werner Declaration, ¶¶ 68–75).

[43] In Dr. Werner's Daubert Declaration, he stated that "it is generally advised for scientific studies to examine at least 30 observations so that the size of the sample is large enough to lead to robust conclusions" (Werner Daubert Declaration, ¶ 47).

[44] The Fisher test found that 62% of days *without* new, potentially value-relevant information had statistically significant returns, while 57% of days *with* new, potentially value-relevant information had statistically significant returns.

[45] I understand that Plaintiffs were provided this analysis prior to my deposition, and I have included it as **Exhibit 2**.

**Exhibit 1**

# Analysis in Response to Werner Rebuttal Report Table 7

## Applying Dr. Werner's Binomial Test Using Days without News with New, Potentially Value-Relevant Information[1]
### 1/21/21 – 1/27/21

| Affected Company | Days without News with New, Potentially Value-Relevant Information | Statistically Significant Days without News with New, Potentially Value-Relevant Information[2] | Binomial Test P-Value[3] | Cumulative Distribution P-Value[4] |
|---|---|---|---|---|
| AMC | 1 | 0 | 95.00% | 100.00% |
| BB | 3 | 2 | 0.71% | 0.73% |
| BBBY | 2 | 2 | 0.25% | 0.25% |
| EXPR | 5 | 4 | 0.00% | 0.00% |
| GME | 5 | 4 | 0.00% | 0.00% |
| NOK | 1 | 0 | 95.00% | 100.00% |
| TRVG | 4 | 1 | 17.15% | 18.55% |

Source: Grenadier Report, Figure 7; Werner Rebuttal Report, Exhibit 4, Table 7

Note:
[1] "Days without News with New, Potentially Value-Relevant Information" refer to days that are not marked as "News Identified in Grenadier Report" in the Werner Rebuttal Report, Exhibit 4.
[2] Significant days are based on the Grenadier Report. The significant days in Table 7 in the Werner Rebuttal Report match the significant days in the Grenadier Report.
[3] The "Binomial Test P-Value" tests the probability that *exactly* "X" days are significant out of a total of "Y" days. Dr. Werner includes this test in Table 7 of his rebuttal report.
[4] The "Cumulative Distribution" tests the probability that *at least* "X" days are significant out of a total of "Y" days.

**Exhibit 2**

## Analysis in Response to Werner Rebuttal Report Table 7

### Applying a Fisher Exact Test Using Days with and without
### News with New, Potentially Value-Relevant Information[1]
1/21/21 – 1/27/21

| Affected Companies | Days with News with New, Potentially Value-Relevant Information | | | Days without News with New, Potentially Value-Relevant Information | | | Fisher's Exact Test P-Value[3] |
|---|---|---|---|---|---|---|---|
| | Total Days | Statistically Significant Days[2] | % of Significant Days | Total Days | Statistically Significant Days[2] | % of Significant Days | |
| AMC, BB, BBBY, EXPR, GME, NOK, TRVG | 14 | 8 | 57.14% | 21 | 13 | 61.90% | 100.00% |

Source:  Grenadier Report, Figure 7;  Werner Rebuttal Report, Exhibit 4, Table 7

Note:
[1]  "Days with and without News with New, Potentially Value-Relevant Information" refer to days that are marked (or are not marked) as "News Identified in Grenadier Report" in the Werner Rebuttal Report, Exhibit 4.
[2]  Significant days are based on the Grenadier Report.  The significant days in Table 7 in the Werner Rebuttal Report match the significant days in the Grenadier Report.
[3]  Fisher's Exact Test p-values are statistically significant at the 95% confidence level if they are less than 5%.