**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-MD-2989-ALTONAGA/DAMIAN**

In re:

**JANUARY 2021 SHORT SQUEEZE**
**TRADING LITIGATION**

_____/

This Document Relates to the Federal Securities Tranche


**<u>DEFENDANTS ROBINHOOD MARKETS, INC., ROBINHOOD FINANCIAL LLC AND
ROBINHOOD SECURITIES, LLC'S ("ROBINHOOD'S) RESPONSE TO PLAINTIFFS'
DISCOVERY MEMORANDUM REGARDING PLAINTIFFS' REQUESTS FOR
PRODUCTION</u>**

Plaintiffs have jumped the gun.  They seek to compel the production of certain regulatory correspondence and trading data.  The parties are not at impasse on either issue.  Plaintiffs filed their motion two business days after Robinhood stated that its position on the regulatory correspondence was not final and it was reconsidering in light of Plaintiffs' new explanation of relevance.  Just one day before that, Robinhood told Plaintiffs that it would look into their questions as to the trading data.  Earlier today, Robinhood answered those questions and proposed new compromises on both issues.  Plaintiffs' motion is unripe and should be denied.

**I.      The Court Should Deny Plaintiffs' Motion as to the Regulatory Correspondence.**

Robinhood has produced the underlying documents relevant to this case that it previously produced to regulators.  Plaintiffs then demanded, in addition, regulators' information requests and Robinhood's correspondence with regulators.  On August 3, Robinhood's counsel told Plaintiffs "we are discussing that issue with our client and will provide you with a final position on whether we will produce those materials no later than the end of next week" (*i.e.*, August 11).  Without waiting to hear back, Plaintiffs filed this Motion on August 7.  On August 10, as promised, Robinhood provided Plaintiffs a revised position.  Because the parties have not reached impasse, Plaintiffs' motion should be denied.  *Waste Pro USA, Inc. v. Adams Sanitation Holding Co.*, No. 6:21-CV-1521, 2022 WL 19842682, at *2 (M.D. Fla. June 13, 2022).

Plaintiffs' original Request was, by their own admission, an impermissible fishing expedition.  Plaintiffs admitted at a meet-and-confer that their reason for seeking the regulators' requests and accompanying correspondence was that regulators may have known better than Plaintiffs what avenues to explore.  This is plainly improper.  *See, e.g.*, *Stellato v. Medtronic Minimed, Inc.*, No. 6:19-CV-2180, 2021 WL 3134685, at *3 (M.D. Fla. Feb. 2, 2021); *Pictsweet Co. v. R.D. Offutt Co.*, No. 3:19-CV-722, 2020 WL 12968432, at *5 (M.D. Tenn. Apr. 23, 2020) (barring "an impermissible fishing expedition" that involved seeking a "broad universe of

information" produced in another litigation without demonstrating relevance); *In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. 20-MD-2924, 2020 WL 5585137, at *5 (S.D. Fla. Sept. 16, 2020), *aff'd*, No. 20-MD-2924, 2020 WL 6440461 (S.D. Fla. Nov. 3, 2020) ("[A]dopting or cross-checking someone else's investigative strategy[ ]is not the purpose of civil discovery."). Robinhood therefore refused to produce the regulators' requests and correspondence.

Since then, Plaintiffs have advanced a new and narrower justification for the supposed relevance of these Requests. They now state that they seek regulatory correspondence (a) because it might include information relevant to this case, and (b) in order better to understand certain spreadsheets Robinhood produced to regulators (and re-produced to Plaintiffs).

In view of this narrowing, Robinhood has agreed to produce responsive documents. Robinhood agreed to produce portions of its correspondence with regulators that contain information relevant to this case (*i.e.*, responsive to any other Request to which Robinhood has agreed). Robinhood is also working on descriptions of 421 spreadsheets Plaintiffs identified and will provide those descriptions shortly. Finally, Robinhood will provide a metadata overlay identifying the Bates numbers for documents produced both to regulators and in this case.

Plaintiffs filed this motion without waiting for this offer of compromise, which Robinhood told Plaintiffs was coming this week. Plaintiffs have not yet responded to Robinhood's offer, which fulfills Robinhood's discovery obligations. Because the parties are not at impasse, Plaintiffs' motion should be denied. *Waste Pro*, 2022 WL 19842682, at *2.

## II.     The Court Should Deny Plaintiffs' Motion as to the Trading Data.

Plaintiffs' motion should also be denied as to Request Nos. 19, 20 and 22. Those Requests seek data about certain transactions—order cancellations, equity close-outs and option close-outs—in 50 securities. Plaintiffs contend that "Robinhood refuses to produce" this data. (Mot. at 3.) That is false. The parties agreed months ago that Robinhood would produce only

aggregate data, which it did on June 30.[1]  Plaintiffs then reneged on this agreement, asked for

trade-by-trade data and have now moved to compel that data with respect to Request Nos. 19, 20

and 22, the transactions underlying Plaintiffs' 9(a)(2) claim.  But there is no live dispute.

*First*, when Plaintiffs raised the fact that they were unwilling to accept the aggregate

trading data for these Requests and instead wanted trade-by-trade data, Robinhood began

working with them to understand what exactly they wanted and why.  That culminated in a meet-

and-confer with Plaintiffs on August 2, during which Plaintiffs asked Robinhood a series of

questions about limiting the scope of the data that would be produced and whether Robinhood

could provide additional fields.  Robinhood told Plaintiffs it would look into these requests, and

confirmed that it was continuing to investigate purported discrepancies Plaintiffs believed they

had identified in the data produced, as well as the burden of providing trade-by trade data.

Rather than wait for that response, Plaintiffs filed this Motion.   If they had waited and

allowed the meet-and-confer process to play out, they would have known—as Robinhood has

now told them—that Robinhood will produce:  (a) transaction-level data for Request Nos. 19, 20

and 22 for the Class Period (which are the transactions that form the basis for Plaintiffs' Section

9(a)(2) claim, *see* MTD Order (ECF 503) at 19-23), including all the fields Plaintiffs requested;

and (b) for Request No. 19 (order cancellations), data for the full three-month period further

disaggregated by side and order_type fields and indicating total dollar value cancelled, excluding

involuntary and certain normal-course-of-business cancellations.  This should moot the Motion.

*Second*, to the extent Plaintiffs believe they need data for a longer time period, that

dispute is not ripe because the meet-and-confer on that issue has not happened because they ran

---

[1] That agreement was reached in November 2022, and applies to Request Nos. 1 and 2 (the general stock and options trading requests, not at issue on this Motion) as well as Request Nos. 19, 20 and 22 (the specific transaction types underlying the Section 9(a)(2) claim).

to court too quickly.   Thus, any argument that what Robinhood has now agreed to produce is insufficient is not ripe and the motion should be denied. *Waste Pro*, 2022 WL 19842682, at *2.

In any event, Plaintiffs would have no basis to argue for a broader time period given the limited—at best—relevance of that data weighed against the enormous burden it would impose on Robinhood.  Producing transaction-level data is highly burdensome.  Robinhood must break out each Request into individual data queries.  A query can time out if it takes too long to process.  Execution time depends on the size of the database searched, number of results, and server capacity then available.  Robinhood cannot anticipate those variables, so must craft small, manageable queries.  Pulling data for 50 stocks over three months would require substantial manpower and computing costs.  Further, to maintain customers' privacy, Robinhood must take the time-intensive steps of creating dummy identifiers for each customer, to anonymize the data, and implementing those identifiers consistently across datasets.  Obviously, the larger the dataset, the higher the burden.

That burden would be disproportionate to the needs of the case. *Colucci v. Health First, Inc.*, No. 6:21-CV-681, 2022 WL 17370335, at *1 (M.D. Fla. Sept. 19, 2022) (cost of pulling data was too high), *objections overruled,* 2022 WL 18926772 (M.D. Fla. Dec. 22, 2022).  This is precisely why the parties previously agreed Robinhood could produce aggregated data, and Plaintiffs may not now "renege on [t]his agreement to limit discovery." *Mawulawde v. Bd. of Regents of Univ. Sys. of Ga.*, 1:05-cv-99, 2007 WL 2460774, at *12 (S.D. Ga. Aug. 24, 2007). Plaintiffs argue that production is not burdensome because Robinhood produced trade-by-trade data to FINRA for 13 stocks for 8 days in RHMDL00047925-26.  (Mot. at 4.)  But Plaintiffs seek trade-by-trade data for four times more stocks over a period almost twelve times longer. The burden on Robinhood is correspondingly higher. *Colucci*, 2022 WL 17370335, at *1.

*Third,* Plaintiffs' complaints about the data fields that were not produced in connection with the aggregate data are misplaced.  On July 20, Robinhood offered to further disaggregate the cancellation data by the two fields Plaintiffs specifically requested (side and order_type) and to limit equity close-outs to those caused by margin calls.  Plaintiffs did not respond to this offer.  On August 2, Robinhood told Plaintiffs that it would look into their request for a field indicating total dollar value.  Without waiting to hear back, Plaintiffs filed this Motion.  Robinhood has now answered Plaintiffs' questions.  Many of the supposedly "missing" data fields were not included in the aggregate data because they only reflect data that is meaningful at the trade-by-trade level or, at least, at a level well below the aggregated data level the parties agreed to back in November.[2]  Other fields are entirely irrelevant.  For example, Plaintiffs fail to explain why times of day (and not just dates) are necessary to prove "loss causation and damages" (Mot. at 4-5), or why the time an order was placed (not just when it was cancelled) is relevant.  *Mylan Pharms. Inc. v. Celgene Corp.*, No. 14-cv-2094, 2016 WL 2943813, at *8 (D.N.J. May 20, 2016) (denying motion to compel transaction-level data where less granular data was sufficient).

To the extent Plaintiffs believe additional fields remain necessary for the aggregate data given Robinhood's agreement on the trade-level data, Robinhood remains willing to continue the meet-and-confer process and answer further questions.  Plaintiffs' motion on this issue is thus premature, and should be denied for that reason alone.  *Waste Pro*, 2022 WL 19842682, at *2.

---

[2] To illustrate, Plaintiffs now contend they need to see *both* the date an order was placed *and* the date it was cancelled.  But this is impossible if the data is produced on an aggregated basis by cancellation date.  Robinhood would have to further *dis*aggregate the data by the dates orders were placed.  In other words, rather than producing one row per day, it would need to provide one row for *every possible combination* of dates placed and cancelled.

Dated:  August 10, 2023

                                                    */s/ Tom K. Schulte*
                                            **HUNTON ANDREWS KURTH LLP**
                                            Samuel A. Danon (FBN 892671)
                                            Tom K. Schulte (FBN 1025692)
                                            María Castellanos Alvarado (FBN 116545)
                                            333 S.E. 2 Avenue, Suite 2400
                                            Miami, FL 33131
                                            Telephone: (305) 810-2500
                                            Facsimile: (305) 810-2460
                                            sdanon@huntonak.com
                                            tschulte@huntonak.com
                                            mcastellanos@hunton.com

                                            **CRAVATH, SWAINE & MOORE LLP**
                                            Antony L. Ryan
                                            Kevin J. Orsini
                                            Brittany L. Sukiennik
                                            825 Eighth Avenue
                                            New York, NY 10019
                                            Telephone: (212) 474-1000
                                            Facsimile: (212) 474-3700
                                            aryan@cravath.com
                                            korsini@cravath.com
                                            bsukiennik@cravath.com

                                            *Counsel for Defendants Robinhood Markets,
                                            Inc., Robinhood Financial LLC and
                                            Robinhood Securities, LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 10, 2023, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF.  I further certify that the

foregoing document is being served this day on all counsel of record via transmission of Notices

of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel

or parties who are not authorized to receive Notices of Electronic Filing.


Dated:  August 10, 2023                                         _/s/ Tom K. Schulte_