```
 1                THE UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF FLORIDA
 2                      MIAMI DIVISION
                  CASE NO.:  21-md-02989-CMA
 3

 4  IN RE: JANUARY 2021 SHORT        )
    SQUEEZE TRADING LITIGATION,      )        August 15, 2023
 5                                   )
    ANDREA JUNCADELLA, EDWARD GOODAN,)        Pages 1 - 32
 6  WILLIAM MAKEHAM, MARK SANDERS,   )
    JAIME RODRIGUEZ, et al.,         )
 7                                   )
            Plaintiffs-Appellants,   )
 8                                   )
    PATRICK YOUNG, et al.,           )
 9                                   )
            Plaintiffs,              )
10  v.                               )
                                     )
11  ROBINHOOD FINANCIAL LLC,         )
    ROBINHOOD SECURITIES, LLC,       )
12  ROBINHOOD MARKETS, INC.,         )
                                     )
13          Defendants-Appellees,    )
                                     )
14  CITADEL LC, d/b/a                )
    CITADEL SECURITIES, et al.,      )
15                                   )
            Defendants.              )
16  _____/

17

18                   DISCOVERY HEARING
              BEFORE THE HONORABLE MELISSA DAMIAN
                UNITED STATES MAGISTRATE JUDGE
19

20  APPEARANCES:

21  Counsel on behalf of the Plaintiffs:

22                      THE ROSEN LAW FIRM
                        275 Madison Avenue
23                      40th Floor,
                        New York, NY 10016
24                      BY:  LAWRENCE M. ROSEN, ESQ.
                        BY:  MICHAEL COHEN, ESQ.
25                      BY:  JONATHAN STERN, ESQ.
                        BY:  BRENT LAPOINTE, ESQ.
```

APPEARANCES CONTINUED:

Counsel on behalf of the Defendants:

              CRAVATH SWAINE & MOORE LLP
              825 Eighth Avenue
              New York, NY 10019
              BY:  BRITTANY L. SUKIENNIK, ESQ.
              BY:  ANTONY L. RYAN, ESQ.
              BY:  NICHOLAS LIN, ESQ.


              HUNTON ANDREWS KURTH LLP
              333 SE 2nd Avenue
              Suite 2400,
              Miami, FL 33131
              BY:  THOMAS K. SCHULTE, ESQ.



Transcribed By:

              BONNIE JOY LEWIS, R.P.R.
              7001 SW 13 Street
              Pembroke Pines, FL  33023
              954-985-8875
              caselawrptg@gmail.com

1          (Thereupon, the following proceeding was held:)

2          THE COURTROOM DEPUTY:  The United States District

3   Court for the Southern District of Florida with the Honorable

4   Melissa Damian presiding.

5          The Court calls Case Number 21-md-2989-Judge Altonaga;

6   In Re: January 2021 Short Squeeze Trading Litigation.

7          Counsel, please state your appearances beginning with

8   the Plaintiff.

9          MR. ROSEN:  Good afternoon, Your Honor.

10          This is Lawrence Rosen on behalf of the Plaintiffs and

11   also in the room with me is Michael Cohen and Jonathan Stern.

12          THE COURT:  Good afternoon.

13          MS. SUKIENNIK:  Good afternoon, Your Honor.

14          This is Brittany Sukiennik from Cravath Swain and

15   Moore for the Defendants.  I have Antony Ryan with me also from

16   Cravath and Nick Lin from Robinhood.

17          THE COURT:  Okay.  Good afternoon to you.

18          MR. SCHULTE:  Good afternoon, Your Honor.

19          Tom Schulte with Hunton Andrews Kurth also here as

20   local counsel for the Robinhood Defendants.

21          THE COURT:  All right.  Good afternoon.

22          Let's see.  So I have the Rosen Law Firm.  Oh, I see,

23   there is someone else from your firm.

24          MR. ROSEN:  Yes.  Mr. LaPointe, I think I see that he

25   has joined.

1          THE COURT:  Okay.  No problem.

2          MR. ROSEN:  On the Zoom call separately.

3          THE COURT:  Well, thank you all for being here.

4          Just to let you know I am obviously familiar with the

5    case.  I think I handled a matter previously with you all.  I

6    did review everybody's briefs and then the supporting discovery

7    requests.

8          I would like to start first with the 30(b)(6) issue

9    because, honestly, I am still a little confused on where we are

10   because based on the Defendants' response it sounds like there

11   was still some negotiating going on as far as topics is

12   concerned.

13         So where are you?  Because I looked at the notice.  I

14   could see that there are a lot of topics that were requested,

15   but then it sounds like you all went back and forth and

16   narrowed those down.

17         So maybe, Mr. Rosen, you can get me up to speed on if

18   there is a topic that the witness is agreeing to testify about.

19         MR. ROSEN:  Yes, Your Honor.

20         We had a meeting, a conference call, I think it may

21   have been a Zoom call.  We discussed the topics.  There were

22   ten topics that Defendants offered to provide interrogatories

23   for.

24         I told them that for nine of them that would be fine,

25   but for a tenth one, topic number 53, it requires an

1  explanation actually of what a document is and who participated

2  in providing and drafting it and so on.  So I didn't think an

3  interrogatory would be satisfactory.

4       So for the other nine, we said if they gave us

5  responses by the date of the deposition that would be fine.  We

6  don't want to have an open-ended time for the information to be

7  provided.  So that eliminated nine of the 57 and I think as to

8  all the others we said we expected to provide representatives

9  to testify as to them.

10       We were quite clear that we thought all of those

11  topics were appropriate and that if they thought it was outside

12  the scope they were entitled not to answer.  And then we would

13  be forced to move to compel if that was our, you know, desire

14  following the deposition.

15       My understanding is -- and I was crystal clear at the

16  meet and confer that we want those other 50, whatever, 41, 47

17  topics, whatever it is, a witness for.

18       THE COURT:  Okay.  If you look at the Defendants'

19  response on Page 2, the response regarding the 30(b)(6),

20  Defendants indicate that you are still conferring regarding --

21  there's a footnote actually that identifies -- footnote number

22  three that identifies, 1, 2, 3, 4, 5, 6, 7, 8 topics that you

23  all are still conferring on.

24       So is it that those conferrals are dead, Miss

25  Sukiennik?  Is that your draft?  Who drafted this response?

1    MS. SUKIENNIK:   Thank you, Your Honor.

2        So some of that was news to me.  I don't recall.  I

3    was not on the meet and confer with Mr. Rosen, but my

4    colleagues were.  And I don't recall any discussion that number

5    53 should be answered through deposition testimony as opposed

6    to an interrogatory.

7        My understanding after the meet and confer was that

8    the Plaintiffs were going to let us know in writing whether

9    they agreed to our proposal on the ten for which we proposed

10   answering my interrogatory.  We have not yet gotten any kind of

11   written confirmation from Plaintiffs and this is the first time

12   hearing that there might be some objection to number 53.

13       There are also these eight topics that you just

14   identified in footnote 3, as well as topic 25, 26, subpart 3,

15   and 52 where we have not either started or finished meeting and

16   conferring with respect to whether those are appropriate topics

17   for which we should be providing 30(b)(6) testimony.

18       So my understanding, Your Honor, is that we are still

19   conferring with respect to those topics that, you know, some of

20   those discussions have not even occurred yet.  And that there

21   needs to be additional discussion before there is any ripe

22   dispute before Your Honor with respect to those topics.

23       THE COURT:  So, Mr. Rosen, if you take a look at Page

24   2 --

25       MR. ROSEN:  Yes, Your Honor.

1          THE COURT:  Footnote 3, which it is the Defendants'

2     position that those are still up for discussion?  I mean, if

3     they are not, we might as well address them because we are

4     here.

5          MR. ROSEN:  They are not, Your Honor.

6          And I was crystal clear.  I was quite clear at the

7     meet and confer that we want to go forward and if they are

8     refusing to go forward, we are going to make a motion to

9     compel.

10          THE COURT:  And then, as to 25, 26, and 52 -- so

11     basically you conferred as to the entire list.  Is that really

12     your position?

13          MR. ROSEN:  Yes, Your Honor.

14          THE COURT:  Okay.  Well, do we have a new date for

15     this depo?

16          MR. ROSEN:  Well, so the Defendants offered to provide

17     a witness on five topics that were the least significant

18     topics, the least substantive topics, and refused to provide

19     anyone for whatever 45 topics if we subtracted the nine

20     interrogatories.

21          So, you know, you are down to, like, I don't know 40

22     something topics.  And they refused to provide anyone.  Their

23     position is that we cannot take the 30(b)(6) deposition until

24     we take -- we have to wait until we get all the documents from

25     all the custodians before we take the 30(b)(6) and I don't

1    think that's not the law in the Southern District of Florida.

2    The law is that we are entitled to take the 30(b)(6) and then

3    subsequently take the fact witness deposition.

4            And it is particularly important, Your Honor, that we

5    take this deposition early on because we haven't even gotten

6    organizational charts from the Defendants.  We don't know who

7    the players are.  We don't know how these two subsidiaries and

8    the parent companies interact.  Who reports to whom.  What the

9    relationship is.  Who the participants are in the events at

10   issue.

11           And so where, you know, where documents are stored, we

12   want to find out all sorts of information that is helpful to

13   discovery and to give us a sense of what the Defendants'

14   defenses are to the factual allegations in the complaint.

15           And so to make us wait until all the e-mails are

16   produced so that we can combine a 30(b)(6) with various fact

17   depositions, it really prevents us from effectively engaging in

18   discovery.

19           THE COURT:  All right.  So have any depos been taken?

20           MR. ROSEN:  Only class certification related depos.

21   They took all the Plaintiffs depositions and there was some

22   class certification experts and a couple of third parties that

23   the Defendants noticed.

24           THE COURT:  Are there any other depos scheduled?

25           MR. ROSEN:  No, Your Honor.

```
 1              THE COURT:  All right.  So it is the Plaintiffs'
 2   intention to take the 30(b)(6) based on this notice first?
 3              MR. ROSEN:  Yes, Your Honor.
 4              THE COURT:  All right.
 5              MR. ROSEN:  The strategy is to take the 30(b)(6) and
 6   understand who the participants are in these events and where
 7   the relevant documents might be to make sure we are getting all
 8   the relevant documents from all the right sources so that we
 9   understand exactly --
10              THE COURT:  Right.  I get it.
11              MR. ROSEN:  -- what is at issue.
12              THE COURT:  And I am not actually looking right now at
13   the discovery plan, but what do you anticipate?  How many depos
14   do you think are going to be taken?
15              MR. ROSEN:  Well, we want to take the 30(b)(6) and
16   understand everything.  Now the Defendants said, well, if you
17   take the 30(b)(6) of Robinhood we can't take the 30(b)(6) --
18              THE COURT:  We'll address that in a second.
19              MR. ROSEN:  So assuming Robinhood speaks for everybody
20   equally and maybe we can take just one 30(b)(6), I don't know,
21   but one of the things the 30(b)(6) is supposed to figure out is
22   what is the relationship here.  Are they separate, completely
23   separate entities with completely separate knowledge bases or
24   are they combined.
25              But in total I would guess we would want to take 15
```

1    depositions, but I haven't had a chance to really learn exactly

2    how things played out.  These are very complex events.  We have

3    looked through the documents and I have some sense of what went

4    on, but the 30(b)(6) is really a roadmap for us to understand a

5    very complex case.

6            THE COURT:  So go ahead, Miss Sukiennik.

7            MS. SUKIENNIK:  If I could respond to that?  Thank

8    you, Your Honor.

9            So Mr. Rosen said a lot there.  So I am going to try

10   to address everything that he said, but I take issue with

11   basically everything that he said because he is completely

12   mischaracterizing both the substance of this 30(b)(6) that he

13   has propounded on.  And also the conversations that we have had

14   for months and months and months about discovery, right?

15           So, first of all, Mr. Rosen has not cited any case in

16   this district that says he is first permitted to take a

17   30(b)(6) and then a 30(b)(1).  None of the cases that he has

18   cited have anything to do with that.

19           They were all about whether an individual who is first

20   deposed in a 30(b)(1) capacity can later be a 30(b)(6) or there

21   is some reason to object to that.  That is not what we are

22   saying here.  We are just saying let's proceed officially and

23   have the depositions and the depositions occur at the same

24   time.

25           Second, the scope of this notice encompasses matters

1   that go to the heart of this litigation.  I can just read a

2   couple to you.  Topic number 6 is a full explanation of all of

3   Robinhood's public statements concerning the mean stockmarket

4   event.

5          Number 18, Robinhood's liquidity position and

6   financial condition during the relevant period as it related to

7   its ability to meet its collateral and deposit requirements

8   with all of its regulators during that time period.

9          These are not topics that are going to where documents

10  are stored and who are the right witnesses, which to be

11  perfectly clear, we have discussed *ad nauseam* in correspondence

12  over the last seven months.

13         We have pages and pages of letters about all of

14  Robinhood's document repositories and all of the different

15  repositories we are going to search and collect documents from

16  and produce from.

17         We have also given Plaintiffs several organizational

18  charts.  They have taken issue with the format of those charts

19  and whether they encompass enough employees, right?  So we have

20  said to them, okay, we will give you this workday report that

21  they have been asking for and that is going out either today or

22  tomorrow at the latest.  So they will have that.

23         We have said we will put up a witness on these data

24  topics, right, that they say are the least important topics in

25  their notice.  We have said, okay, we will give you have a

1  witness on those.  We are happy to do that.

2         All we are saying is for these topics that are going

3  to the heart of this case where we are trying to be efficient

4  and give them the person who is most knowledgeable about these

5  topics.

6         We are just saying, hey, let us do that at the same

7  time as you take their individual deposition.  That is all we

8  are looking for here.  We are giving them all the information

9  they want on the docket repositories, all of the information

10  they want on the data, all the organizational charts, and pages

11  and pages of descriptions about where these things are located

12  within Robinhood's systems.

13         And so I don't actually think what we are asking for

14  is unreasonable.  We are really just trying to proceed

15  efficiently and in the least burdensome way for our witnesses.

16  And as for -- oh, excuse me, Your Honor.  Go ahead.

17         THE COURT:  So let me ask you a question, then.

18         What is the total here?  So as to the remaining 47

19  topics you are not saying that you are only willing to offer a

20  30(b)(6) as to four or five of them.  You are saying you just

21  want the person who is appearing as the 30(b)(6) to be there on

22  the same day that they are having their deposition taken of

23  them personally.

24         But are you still -- I mean, how do I know or how do

25  the Plaintiffs know when whoever this person is that shows up,

1 have you indicated to them your objections in writing to the

2 other topics?

3       I mean, are they going to show up?  Let's just say

4 they agree hypothetically.  Yes, we will do the personal

5 deposition on the same day.  Fine.  Let the person appear.  Are

6 you going to be objecting to the person responding to questions

7 about these other 47 topics?

8       MS. SUKIENNIK:  Your Honor, we have provided responses

9 and objections with respect to all 57 topics in the notice.  I

10 believe that is attached as Exhibit B to the Plaintiffs'

11 motion.

12       So we have provided our objections and that is the

13 basis, Your Honor, for me saying that we have not finished

14 meeting and conferring with respect to certain of these topics

15 because we objected to relevance.

16       We asked questions about the scope of certain topics

17 that we didn't understand what it was Plaintiffs were seeking.

18 There are certain topics where we have said these are

19 inappropriate for a 30(b)(6) because they are asking for legal

20 conclusions.

21       So, Your Honor, I will admit I am not very good at

22 math.  So I am not quite sure at this point how many topics are

23 in and how many are out, but I think 37 are in.  And we are

24 saying 37, yes, we are absolutely going to put up a witness.

25 Four of those or five of those we are going to put up a witness

 1  in the next couple of weeks.

 2         The rest of those we are saying let's just wait and be

 3  efficient and do it all at the same time as the 30(b)(1).  And

 4  then for those other, I think, ten topics where we are still

 5  meeting and conferring, we are not saying -- I think for most

 6  of them we are not saying, no, never.

 7         We need to understand more of what it is you are

 8  looking for here because we are not quite sure what kind of

 9  testimony you want.  And so we need to have further discussions

10  before we can say yes or no.

11         But, yes, they absolutely have our position with

12  respect to all 57 topics in their notice.

13         THE COURT:  And as to the 37, thus far that you are

14  agreeing on is that one person, or how many people is it going

15  to take to represent the corporation on those 37?

16         MS. SUKIENNIK:  We are going to try to do it as

17  efficiently as possible.  We wanted to try to put up the person

18  most knowledgeable for each of those 37.

19         Meaning, probably it would be a few witnesses and not

20  one, but we are not talking about ten.  We are not even, I

21  think, talking about six or seven, right?  It is just a few.

22         THE COURT:  Okay.  Well, I am not inclined to require

23  that they take the 30(b)(6) witnesses, 30(b)(1), or personal

24  deposition on the same day.  I don't want to see the 30(b)(6)

25  witnesses' deposition held up because you may have three

1   different people or two different people that you are putting

2   up as the 30(b)(6).  And now the Plaintiffs are going to have

3   to prepare to go the next, you know, round on that same person,

4   or two people, or more in their individual capacity.

5           And I do agree with the Plaintiffs that in a case like

6   this and looking at the topics that the Plaintiffs are seeking

7   to question the representatives on, I think it is very

8   different from what they will likely be questioning these

9   corporate representatives on personally.

10          So I am granting to the extent this is a request to

11  sort of overrule your objection to having the 30(b)(6)

12  deposition take place without having the 30(b)(1), or the

13  personal deposition at the same time or within, you know, the

14  same day or two.  I am overruling your objection to that.

15          So I would like to see the 30(b)(6) deposition move

16  forward, as you said, as efficiently as possible.  So it sounds

17  like you have agreed to 37 topics that will be addressed by a

18  corporate rep or corporate reps.

19          You all are going to have to keep going back and forth

20  on the next ten.  Unless you have, you know, you are teed up to

21  address them with me.  I am happy to address them.  I just do

22  not know what ten are still outstanding.

23          How soon -- I guess if you don't know exactly who you

24  are using as the corporate rep, I will touch on one other issue

25  that came up, which is right now the notice -- Plaintiffs have

1  agreed that the notice is going to Robinhood almost like as a

2  whole.  So it would be one 30(b)(6) representative.  Meaning,

3  even if it is multiple people, there's a 30(b)(6) for

4  Defendants Robinhood.

5         This possibility of then getting a second bite at the

6  apple and being able to take a subsidiary or some other related

7  Robinhood entity at this point I would -- I'm not even sure if

8  that issue is before me, but I did read about it in the papers

9  and I would deny that request based on the information

10  available to everybody right now.

11         Now, Mr. Rosen, I heard you and I read what you said

12  and if it does turn out that you take the deposition of the

13  30(b)(6) for the -- I guess it is for the group, right?  The

14  collective Robinhood in the way that you have issued your

15  notice now.  And you learn that there is another entity that is

16  a sub or, you know, an affiliate that was materially involved

17  in your allegations and they really are a separate entity with,

18  you know, very different officers, directors.

19         I don't know how it is set up.  And you do them and

20  you believe that you require that entity's 30(b)(6), if you

21  cannot agree with the Defendants on that, then you are going to

22  have to come back and ask for that one.  But based on what I am

23  seeing right now, this should be one notice for the 30(b)(6)

24  testimony from the collective Robinhood at this point.  Again

25  if you learn something later, obviously you can revisit it.

1      MR. ROSEN:  Your Honor, just to be clear so we can

2   avoid having to bother you again.  So there are three

3   Defendants; there is Robinhood Market, Robinhood Securities and

4   Robinhood Financial.

5      THE COURT:  Right.

6      MR. ROSEN:  Now if the Defendants will stipulate that

7   all of the answers by Robinhood Markets at this 30(b)(6) apply

8   equally to the other two Defendants that would eliminate the

9   need for another 30(b)(6).

10      THE COURT:  And I will let them speak for themselves

11   but it sounds like that is what they are saying.  And it sounds

12   like they are offering to provide a 30(b)(6) who can speak for

13   the entities collectively.

14      That person should be prepared to -- I would think

15   logically to say, if there is a question how do Robinhood do X,

16   that person should be prepared to say, well, on that specific

17   topic, you know, the entities would have a different response

18   and they should be prepared on all three.  Unless the

19   Defendants want to give you another 30(b)(6) for another

20   entity.

21      So, Miss Sukiennik, I don't know how you plan on

22   proceeding on that issue.

23      MS. SUKIENNIK:  Yes, Your Honor.

24      I think what we are planning to do is, you know, we

25   are construing Robinhood as you just said, to meet all three of

1  the entities and we will indicate which entity possesses the

2  information.

3          THE COURT:  When they respond?

4          MS. SUKIENNIK:  Right.

5          THE COURT:  Right.

6          Again, Mr. Rosen, that is going to have to cross that

7  bridge when you get to it, but you may learn from that

8  representative that there is no difference.  Maybe you won't.

9  Maybe you will learn there is a difference.

10          And again, we will cross that bridge, but for now I am

11  going to not permit a 30(b)(6) for each entity.  I am going to

12  permit them to present you with or provide you with the

13  30(b)(6) for the collective Robinhood entities.

14          And again, if you learn that you need somebody more

15  specific and be prepared for very specific questions of one of

16  the entities, you can revisit that.

17          MR. ROSEN:  Yes, Your Honor.  Thank you very much.

18          And may I ask one more question just on this point on

19  this motion.  Is there a date?  Can we have a date by when this

20  30(b)(6) --

21          THE COURT:  I was going to suggest that.

22          Since you are all here, sometimes it is the easiest

23  thing to do.  And it does sound, from what Miss Sukiennik was

24  saying that they have not necessarily identified who exactly it

25  is going to be, but I would like to get that scheduled so that

1  you guys can sort of move forward because it is just going to

2  be more cause for delay if you guys do not get this one

3  scheduled.

4         Knowing that you are not in touch with your client

5  right now, I am not going to make you give me a date now, but

6  you do not have a tremendous amount of time.  I think your

7  discovery cutoff is like March.

8         So I would like to see this deposition actually take

9  place within the next 30 days.  Okay.  So that gets you to

10 September 14th.  Whether that is multiple people -- yes,

11 September 14th is a Thursday.  So let's say 31.

12        So we will say by Friday, September 15th that the

13 collective Robinhood 30(b)(6) deposition needs to take place.

14 So you all, obviously, need to schedule that.

15        I am going to leave it to you all to do that.  And you

16 are all going to have to agree on the other ten topics unless

17 there is anything in particular you need to run by me.  Okay.

18        MR. ROSEN:  Yes, Your Honor.

19        MS. SUKIENNIK:  Thank you, Your Honor.

20        THE COURT:  All right.  So, then, let's turn to the

21 requests for production.

22        Thank you.  I received the e-mail that indicates that

23 you have resolved the dispute concerning 19, 20 , 22, and 23.

24 So let's see.  I highlighted what is left.  Let me take a look.

25        That says to me, based on my highlights, we have four,

1  five -- oh, wait.  Okay.  Now I remember.  These were all

2  basically what the Defendants were referring to as clone

3  discovery based on investigations with various investigating

4  bodies.

5          So let me hear from you on this, Miss Sukiennik.

6          MS. SUKIENNIK:  Sure.  So, frankly, Your Honor, I

7  don't really know at this point that there is much of a dispute

8  left.  I mean, this really seems like a situation of someone is

9  not taking yes for an answer here.

10         Plaintiffs keep saying that what they want are the

11  documents and the correspondence about the requests that are

12  relevant to the issues in their complaint.

13         We have said, okay, you can have that and then they

14  seem to be wanting more than that.  They seem to be saying, no,

15  no, you can't actually, you know, tell us what is relevant and

16  what is not relevant.

17         So what we said to them is that you can have the

18  documents that we produced to the regulators that are relevant

19  to the allegations in your complaint, which I believe we have

20  already produced to them.

21         We said you can have the responses to the regulators

22  on the questions they have asked about these issues that are

23  relevant to the allegations in your complaint.

24         We have said you can have an explanation of the

25  spreadsheets that we have produced.  They had a couple of

1   questions about the various spreadsheets we produced to

2   regulators in terms of the date they were created and the

3   requests to which they were responsive to.  We have said you

4   can have that.  We are planning to give that to them hopefully

5   within the next couple of days.

6         And we have also said, okay, you can have the data

7   overlay that is going to tell you the Bates numbers that we

8   provided to the regulators so that you can see how these

9   documents match up with the Bates numbers that we have provided

10   to you.

11         So we have said that we would give them all of those

12   things that they seem to be asking for.  The only things that

13   we have said that they can't have are, first, the actual

14   requests in the subpoenas that were served by the regulatory

15   agencies.

16         The Plaintiffs have told us that, you know, on a meet

17   and confer they told us the reason that they want those things

18   are because, you know, there might be other avenues that they

19   may be exploring, right?

20         This Court had said in the *Santec* (phonetic) case that

21   we cited to that that is not actually a basis for discovery.

22   That just shows you the Government 's state of mind.  And it is

23   really just a fishing expedition and not the purpose of civil

24   discovery and we said you can't have that.

25         We have also said you cannot have the documents or the

1  correspondence that is not relevant at all to the allegations

2  in your complaint.  And there is some that is not relevant to

3  the allegations in their complaint, right?

4         One example, you know, an example is the Arkansas

5  Securities Department sent a request asking for a list of all

6  Arkansas client accounts with Robinhood.  That is not tailored

7  to Arkansas client accounts who traded in the stocks at issue

8  in this case.

9         And you know, there are other reasons why we do not

10  think that the Plaintiffs are entitled to that information at

11  this stage of the litigation, but that is not an issue before

12  the Court today.

13         There are lots of other examples that, frankly, Your

14  Honor, are sensitive and not public.  And that my client is not

15  comfortable with me sharing in open court, which I would be

16  happy to discuss with you *in camera* if you desired more

17  examples.

18         But, you know, frankly, Your Honor, we are not quite

19  sure what the dispute is at this point because they have said

20  that they want the things that are relevant.  We have said,

21  okay, and that just does not seem to be good enough.

22         THE COURT:  So let me tell you that I would agree that

23  the response that you gave is problematic.  In general,

24  discovery disputes, I do not like to see something like we will

25  give you all the relevant information because then that just

1  begs the question.  Well, what did you decide?  Now we are

2  leaving it up to you to decide what is relevant and not

3  relevant.

4       And maybe more importantly what did you withhold.  So

5  if you are going to say we are giving you all the relevant

6  information, you are going to have to be a little more specific

7  about that.

8       Meaning, and I don't know how you do it because you

9  maybe do not want to reveal things just by saying you are

10 turning them over and you are revealing them, but this broad we

11 are not going to give you what is relevant is problematic.

12      May I ask you a question?  I saw the letter from I

13 think it was New Jersey, right?

14      MS. SUKIENNIK:  Yes.

15      THE COURT:  Because I was curious.

16      Now I am very familiar with SEC subpoenas and often

17 those will indicate that they are not to be disclosed to anyone

18 else.  So I was actually looking through the New Jersey one

19 because I was curious if it had any instruction like that.

20      Is there anything with respect to those other

21 investigations where your clients were told not to disclose the

22 actual subpoenas?  Because, I mean, is there another way that

23 the Plaintiffs could get copies of those subpoenas?  I don't

24 know if that is a FOIA request.  I mean, is this protected

25 information?

1          MS. SUKIENNIK:  In the New Jersey statute and

2    regulation there was a request that that not be shared and we

3    also have an SEC investigation with the same requests that that

4    information not be shared.

5          THE COURT:  That information being the actual

6    subpoena?

7          MS. SUKIENNIK:  Correct.  Yes.

8          THE COURT:  And I have definitely seen that before.

9          And I agree with you if the only reason, Mr. Rosen,

10   that you want those subpoenas or those requests, I agree it

11   would make your job a little easier if you could see how

12   regulators and investigators who are, you know, probably a few

13   steps ahead of you in their investigation because of how they

14   formulated their requests because they are working from a lot

15   more knowledge that would certainly be a little more convenient

16   for you.

17         But I just do not see it as a basis for requiring the

18   Defendants to turn those over.  What is relevant is their

19   responses.  I agree and it sounds like they are turning those

20   over to you.  But I do not see the basis for getting around

21   what are probably confidential documents for what really does

22   sound like for your convenience.

23         Tell me why you think you are entitled to the actual

24   requests, or subpoenas, or whatever they are called, from the

25   various agencies.

1      MR. ROSEN:  Yes, Your Honor.

2          I think, at this stage, the reason we want the

3    subpoenas was to help us understand what -- because when they

4    produced these documents, they stripped all the Bates numbers

5    away and we have spreadsheets that are very difficult to

6    identify what the purpose is.

7          So we also asked them could they at least give us a

8    data overlay to help us understand what these documents are

9    responsive to.  And so the main benefit of the subpoenas is so

10   we can understand what these documents are that they gave us

11   because we have to use them and if we cannot figure out what

12   they are it is hard to use them.

13         And there are 830 spreadsheets and that would take

14   about ten days of 30(b)(6) depositions to figure out what they

15   are.  And so it is really if they can give us the data overlays

16   or otherwise provide I think, you know, what these spreadsheets

17   and other documents are, then that is fine.

18         And I think that the main issue that remains is this

19   idea that they would decide what is relevant and what is not

20   relevant to give us.  Because if you look at Judge Altonaga's

21   initial order, she said produce all of the records that

22   Robinhood has produced to the Government regulators.  She said

23   all the records.

24       THE COURT:  Yes, I saw that.

25       MR. ROSEN:  Not all the relevant records.  All the

1  records because these investigations were specifically tailored

2  to this mean stockmarket event.  There is a hundred percent

3  overlap for the most part.  And the plain meaning of the word

4  records is information and knowledge that is preserved in

5  writing.

6         So all of their responses, particularly like from

7  New Jersey where they are asked, you know, why did you

8  implement the restrictions?  What is your legal basis for the

9  restrictions?  You know, that sort of thing.  All of those

10 responses, which they didn't give us, are relevant and the

11 Judge has already ordered for it to be produced and I think

12 that is the main issue for us.

13        THE COURT:  And I reviewed Judge Altonaga's order.  I

14 do get that it was before her in a slightly different context,

15 but I don't --

16        MS. SUKIENNIK:  One thing.

17        THE COURT:  Go ahead.

18        MS. SUKIENNIK:  Your Honor, I apologize for

19 interrupting, but the Plaintiffs -- when Judge Altonaga ordered

20 that the documents be produced, the Plaintiffs actually

21 requested that we produce the documents that were relevant to

22 the allegations in the MDL.  So her order was responding to

23 Plaintiffs' request that we produce the relevant documents and

24 not --

25        THE COURT:  So then we go back to my original point,

1  which is -- I mean, I get the Arkansas request for such a very

2  specific subset of information that may not be relevant.  I

3  don't know.  Maybe the people in Arkansas are relevant, but it

4  sounds like what is not relevant should be the great majority

5  of this universe of documents.

6         Is that accurate?

7         MS. SUKIENNIK:  That is accurate, yes.

8         THE COURT:  So I am not going to revisit or overrule

9  Judge Altonaga's order.  I would then say with respect to the

10 memorandum and the request for relief here that it is granted.

11 And the Defendants do need to produce all of the documents that

12 related to the investigations of these various entities

13 consistent with Judge Altonaga's order.

14        But if the Defendants identify subsets of documents

15 that were produced or that fall within that universe that are

16 not relevant, then the Defendants should identify, they have to

17 describe what that is.  So it is really the opposite of what

18 you would normally do in a production.

19        Instead of saying these are the things that we are

20 producing, which actually should be done, but that is a

21 different topic.  When you are producing all of these documents

22 the Defendants can specify what is being withheld here are the

23 documents that were produced to the State of Arkansas on the

24 grounds that you've got to give a reason why those are not

25 relevant.  Otherwise it all should be produced.

1          That being said, there needs to also be -- and the

2     rules require this, right?  You don't do a document dump.  When

3     you are responding to requests for production, there needs to

4     be some itemization and I think it is also the most efficient

5     thing to do as far as moving litigation forward.

6          So to the extent you can help identify when you are

7     turning over the documents that were produced in response to

8     subpoenas from, you know, the House Committee, that's got to be

9     broken down a little further.  But if that is what Mr. Rosen is

10    looking for -- as far as the data overlay it sounds like that

11    was already resolved, right?  Wasn't that resolved?

12          MS. SUKIENNIK:  Yes, Your Honor.  We agreed to provide

13    the data overlay.

14          THE COURT:  So but it does sound like, Mr. Rosen, is

15    it basically we have all of these responsive documents and we

16    don't know what response to what because we don't have the

17    subpoenas, right?

18          MR. ROSEN:  Yes, Your Honor.

19          THE COURT:  So, you know, I don't know how you -- I

20    mean, I see your objections and all I see is you -- being the

21    Defendants -- all I see is the Defendants saying, you know, all

22    of that aside, we will produce the relevant transcripts and

23    documents.

24          I think that needs to be when the actual production is

25    made that needs to be broken down a little further.  So these

1    are the documents responsive to request number 4 and they need

2    to be broken down by whatever is not completely obvious.

3            It is just hard for me because I am not seeing what

4    was actually produced.  So it is hard for me to give you

5    specific categories or topics, but it does need to be

6    identified.

7            As far as the spreadsheets go, if they are completely

8    untitled, or they have no descriptor on them whatsoever to

9    identify what they are spreadsheets of, those need to be

10   identified in the production.  So we are giving you 20

11   spreadsheets and the first five are and you need to give a

12   description to give some guidance here.

13           MS. SUKIENNIK:  Thank you, Your Honor.

14           And the titles are available in the metadata, which we

15   indicated to Plaintiffs and we also, as I said, agreed to

16   provide them with an explanation of which request each

17   spreadsheet is responsive to.  So that should be forthcoming

18   soon.

19           THE COURT:  All right.  I just think that is the most

20   efficient way to do this.  And hopefully that moves you along a

21   little bit with respect to 4, 5, and 6.

22           So to sum it up, I am not requiring that the

23   Defendants produce the actual subpoenas.  I am requiring that

24   the Defendants comply with Judge Altonaga's order, which really

25   is to produce all relevant documents that fall within request

1    numbers 4, 5, and 6.  But as far as that narrowing down of

2    relevant documents what is deemed not relevant by the

3    Defendants and, therefore, withheld needs to be identified.

4           MS. SUKIENNIK:  Understood, Your Honor.  Thank you.

5           THE COURT:  Okay.  And it sounds like you have already

6    produced most of it or you have access to it.

7           Mr. Rosen, do you want to -- I guess it is the

8    Defendants.  How long do you need in order to comply with that?

9           MS. SUKIENNIK:  I don't think we should need too long,

10   but candidly, I don't have all of the facts in front of me of

11   what is going on, but probably two weeks should be sufficient.

12          THE COURT:  Okay.  That works.  So August 29th?

13          MS. SUKIENNIK:  Yes.  Thank you, Your Honor.

14          THE COURT:  Okay.  Great.

15          MR. ROSEN:  Your Honor, may I ask one question for

16   clarification?

17          So as far as communications from Robinhood back to the

18   regulators, for example, the regulators asked some questions

19   about what happened and their response is that would be

20   included in the production from Defendants now?

21          THE COURT:  I would think so.

22          I think that obviously it falls within the scope of

23   your requests and it is a good point.

24          I was talking about the productions that the

25   Defendants made to the regulators, but to the extent

```
 1  information was provided to regulators through correspondence
 2  so it wasn't technically a production, but it was more of
 3  responses to questions by e-mail or by letter, I view that as
 4  being included within what needs to be produced because that is
 5  still information that was provided to the regulators.
 6              MR. ROSEN:  Thank you, Your Honor.
 7              THE COURT:  Okay.  Anything else from you, Mr. Rosen?
 8              MR. ROSEN:  No, Your Honor.
 9              THE COURT:  Miss Sukiennik?
10        Am I saying that right?  I feel like I asked you this
11  before, too.
12              MS. SUKIENNIK:  And you said it perfectly both times.
13  So thank you.
14              THE COURT:  Okay.  So anything else from the
15  Defendants, then?
16              MS. SUKIENNIK:  No.  Thank you, Your Honor.
17              THE COURT:  All right.  So it was a pleasure seeing
18  everyone and it is definitely an interesting case.  Hopefully
19  you guys can move this along because, you know, March will come
20  fast.
21        Mr. Schulte, are you the one who clerked for Judge
22  Huck?
23              MR. SCHULTE:  I am, Your Honor.
24              THE COURT:  I thought I recognized you.  Nice to see
25  you.  I remember going through the hall because I had Schulte,
```

1  some cousins of yours or something who were neighbors of mine.

2          MR. SCHULTE:  Right.

3          THE COURT:  Nice to see you.  Say hello to Mr. Dannon

4  (phonetic).

5          MR. SCHULTE:  I will.

6          THE COURT:  All right.  Everybody, have a good

7  afternoon.  And we will do a short order that will mostly say

8  for the reasons stated on the record, but at least it will

9  contain the deadlines.

10         All right.  Okay.  We are in recess.  Thank you.

11         MR. ROSEN:  Thank you, Your Honor.

12         MS. SUKIENNIK:  Thank you, Your Honor.

13          (Thereupon, the proceedings concluded.)

14

15

16

17

18

19

20

21

22

23

24

25

1

2                              CERTIFICATE

3

4        I hereby certify that the foregoing transcript is an

5   accurate transcript of the audiotape recorded proceedings in

6   the above-entitled matter.

7

8

9

10
    08/25/23                    Bonnie Joy Lewis,
11                     Registered Professional Reporter
                          CASE LAW REPORTING, INC.
12                       7001 Southwest 13 Street,
                         Pembroke Pines, Florida 33023
13                            954-985-8875

14

15

16

17

18

19

20

21

22

23

24

25