**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-02989-MDL-ALTONAGA/Damian**

In re:

**JANUARY 2021 SHORT SQUEEZE**
**TRADING LITIGATION**
_____/

This Document Relates to the Actions in the Federal Securities Tranche

**ORDER**

       **THIS CAUSE** came before the Court on Maurice Scarborough and Scott Schiller's Motion for Appointment as Lead Plaintiffs for the Options Class and Approval of their Selection of Lead Counsel ("Motion for Appointment") [ECF No. 572], filed on June 9, 2023; and Plaintiffs' Motion to Consolidate and Discontinue the Noticed Lead Plaintiff Process as Moot ("Motion to Consolidate") [ECF No. 565], filed on May 26, 2023.  Maurice Scarborough and Scott Schiller filed a Response to Plaintiffs' Motion to Consolidate [ECF No. 571], to which Plaintiffs filed a Reply [ECF No. 577].  No response to the Motion for Appointment was separately filed.  The Court has carefully considered the parties' written submissions, the record, and applicable law. For the following reasons, the Motion to Consolidate is granted, and the Motion for Appointment is denied as moot.

**I.  BACKGROUND**

       This litigation involves allegations against Defendants, Robinhood Financial LLC, Robinhood Securities LLC, and Robinhood Markets, Inc. (collectively, "Robinhood") for violations of the Securities Exchange Act of 1934.  Robinhood is a brokerage firm that offers self-directed stock trading services to customers via its website and mobile application.  (*See* Amended Consolidated Class Action Complaint ("ACCAC") [ECF No. 527] ¶ 23).  On January 28, 2021, Robinhood restricted trading of certain heavily traded securities on its platform in response to

increased share prices and high collateral demands.  (*See generally id.*).  This caused the value of the affected securities to plummet, generating losses for retail investors.  (*See generally id.*).

Within a few months of the relevant events, Plaintiffs brought ten putative class actions and two individual actions against Robinhood asserting violations of the Securities Exchange Act of 1934.[1]  All were consolidated into this multi-district litigation ("MDL") and administratively grouped into a "tranche" — the Federal Securities Tranche — that included all actions under federal securities laws.  (May 18, 2021 Order [ECF No. 310] 1–2).  Scarborough and Schiller were named Plaintiffs in one such action where they alleged they owned option contracts for affected securities, suffered losses as a result of Robinhood blocking trading on these derivatives, and brought claims on behalf of options traders under section 10(b) of the Securities Exchange Act of 1934.  *See Gossett v. Robinhood Fin., LLC*, No. 21-cv-00837, First Corrected Amended Complaint [ECF No. 24] ¶¶ 21, 79–84, filed February 5, 2021 (C.D. Cal. 2021) ("*Gossett* FAC") (asserting claims on behalf of "[a]ll Robinhood clients and/or users within the United States who held positions and/or were unable to execute any trade(s) of the Securities or the Derivatives on or after January 28, 2021[.]" (alterations added)).

---

[1] These actions are: *Daniels v. Robinhood Financial, LLC, et al.*, No. 21-cv-21261 (filed Jan. 28, 2021); *Days v. Robinhood Markets, Inc., et al.*, No. 21-cv-21310 (filed Jan. 28, 2021); *Gatz v. Robinhood Financial, LLC*, No. 21-cv-21296 (filed Jan. 28, 2021) (individual action); *Diamond v. Robinhood Financial, LLC, et al.*, No. 21-cv-21263 (filed Jan. 29, 2021); *Lagmanson et al. v. Robinhood Markets, Inc., et al.*, No. 21-cv-21298 (filed Jan. 29, 2021); *Gossett et al. v. Robinhood Financial, LLC, et al.*, No. 21-cv-21293 (filed Jan. 29, 2021); *Muncy v. Robinhood Securities, LLC, et al.*, No. 21-cv-21307 (filed Feb. 2, 2021); *Krumenacker v. Robinhood Financial LLC, et al.*, No. 21-cv-21343 (filed Feb. 2, 2021); *Kadin v. Robinhood Financial LLC, et al.*, No. 21-cv-21511 (filed Mar. 25, 2021); *Quat et al. v. Robinhood Financial, LLC, et al.*, No. 21-cv-21404 (filed Apr. 12, 2021); *Best et al. v. Robinhood Financial, LLC, et al.*, No. 21-cv-21534 (filed Apr. 21, 2021); and *Carrasco v. Robinhood Financial LLC, et al.*, No. 21-cv-22702 (filed May 25, 2021) (individual action).

The *Diamond* and *Kadin* actions have since been voluntarily dismissed.  (*See* Apr. 20, 2021 Order [ECF No. 214]; Apr. 28, 2021 Order [ECF No. 272]).  Another suit asserting federal securities claims also consolidated into this MDL does not state any claims against Robinhood.  *See Eisen v. Apex Clearing Corp, et al.*, No. 21-cv-21665 (filed Apr. 30, 2021).

Of the consolidated actions, the Plaintiff in *Muncy* was the first to publish notice to the class under the Private Securities Litigation Reform Act of 1995 ("PSLRA").  (*See* May 17, 2021 Order [ECF No. 307] 3).[2]  The Court found the initial notice insufficient under the PSLRA and caused the *Muncy* Plaintiff to re-publish notice.  (*See generally id.*).  Notice was re-published on May 28, 2021.  (*See* Mot. to Appoint Lead Plaintiff Blue Laine-Beveridge and Approve Selection of Lead Counsel [ECF No. 366] ("Motion to Appoint BLB"), Ex. 2, PSLRA Notice ("*Muncy* Notice") [ECF No. 366-2]).

The re-published *Muncy* Notice announced class action lawsuits "filed on behalf of those who were unable to execute trades, sold, and/or purchased certain securities . . . on or around January 28, 2021." (*Id.* 2 (alteration added)).[3]  The *Muncy* Notice referred to "Affected Securities" throughout; listed the relevant securities actions consolidated into the MDL (including the *Gossett* action); and set a July 27, 2021 deadline to move to be appointed as lead plaintiff.  (*Id.*).

Only two motions to be appointed lead plaintiff(s) — one on behalf of Abe Kurdi and Teodoro Russell Pueyrrdon and another on behalf of Blue Laine-Beveridge — were filed in response to the *Muncy* Notice.  (*See* Oct. 14, 2021 Order [ECF No. 420] 1).  The Court appointed Blue Laine-Beveridge as Lead Plaintiff in the Federal Securities Tranche.  (*See generally id.*).  Lead Plaintiff then selected The Rosen Law Firm as Lead Counsel in accordance with the PSLRA, which vests authority in the lead plaintiff to choose and retain lead counsel to represent the

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

[3] The listed affected securities included American Airlines Group Inc. (NASDAQ: AAL); AMC Entertainment Holdings Inc. (NYSE: AMC); BlackBerry Limited (NYSE: BB), Bed Bath & Beyond Inc. (NASDAQ: BBBY); GameStop Corp. (NYSE: GME); Express (NYSE: EXPR); Koss Corporation (NASDAQ: KOSS); Naked Brand Group (NASDAQ: NAKD); Nokia Corporation (NYSE: NOK); Sundial Growers, Inc. (NASDAQ: SNDL); Tootsie Roll Industries (NYSE: TR); and Trivago NV (NASDAQ: TRVG).  (*See Muncy* Notice 2).

CASE NO. 21-02989-MDL-ALTONAGA/Damian

proposed class. (*See id.* 11–12 (discussing 15 U.S.C. § 78u-4(3)(B)(v))). The Court approved Lead Plaintiff's selection of Lead Counsel and tasked Lead Counsel with coordinating all pretrial proceedings in the Tranche. (*See id.* 11–14). Thereafter, Lead Plaintiff and additional named Plaintiffs filed a Consolidated Class Action Complaint ("CCAC") [ECF No. 446] and the ACCAC, the operative pleading, which brings claims under sections 9(a) and 10(b) of the Securities Exchange Act of 1934 but does not assert claims on behalf of options traders. (*See generally* ACCAC; *see* Mot. Consolidate 5, 8, 12 n.10 ("Lead Plaintiff and Lead Counsel determined not to include class-wide claims on behalf of options traders.")).[4]

On April 6, 2023, Scarborough and Schiller filed a new class action against Robinhood on behalf of persons or entities who held call options to purchase common stock in certain securities. *See Scarborough v. Robinhood Fin., LLC*, No. 2:23-cv-02622, Complaint [ECF No. 1] filed Apr. 6, 2023 (C.D. Cal. 2023) ("*Scarborough* Complaint").[5] Similar to the ACCAC, the *Scarborough* Complaint alleges Robinhood's trading restrictions starting on January 28, 2021 caused class members damages and violated sections 9(a)(2) and 10(b) of the Securities Exchange Act of 1934. *See generally id.*

Plaintiffs in the *Scarborough* action issued a PSLRA notice on April 10, 2023. (*See* Mot. Appointment, Ex. 3, PSLRA Notice [ECF No. 572-3] ("*Scarborough* Notice")). The *Scarborough* Notice is directed at investors who held call options in the relevant securities as of market close on January 27, 2021; and "sold such options or such options expired[] during the period January

---

[4] Scarborough and Schiller are not named Plaintiffs in the consolidated class action. (*See* ACCAC ¶¶ 21–29).

[5] The securities included in the *Scarborough* Complaint are the stocks and derivatives of American Airlines Group Inc. (NASDAQ: AAL), AMC Entertainment Holdings Inc. (NYSE: AMC); BlackBerry Limited (NYSE: BB); Bed Bath & Beyond Inc. (NASDAQ: BBBY); GameStop Corp. (NYSE: GME); and Nokia Corporation (NYSE: NOK). *See Scarborough* Compl. ¶ 1.

CASE NO. 21-02989-MDL-ALTONAGA/Damian

28, 2021 through and including February 19, 2021 . . . , and thereby suffered a loss." (*Id.* 2 (alterations added)).

On April 25, 2023, the *Scarborough* action was transferred to this District for coordinated or consolidated MDL proceedings (*see generally* Conditional Transfer Order [ECF No. 554]), and the Court later entered an Order consolidating the action into the MDL "for all pretrial purposes[,]" *Scarborough v. Robinhood Fin., LLC*, No. 1:23-cv-21572, Order of Consolidation and Administrative Close-Out [ECF No. 16] filed on Apr. 27, 2023 (S.D. Fla. 2023) (alteration added). Thereafter, the parties filed the instant Motions.

Following briefing on the Motions, the Court requested a joint report on the status of consolidation in the Federal Securities Tranche. (*See* Aug. 9, 2023 Order [ECF No. 589]). The parties submitted a Joint Status Report [ECF No. 601] on August 23, 2023 indicating they agree with the Court's characterization of the current status of consolidation in the Federal Securities Tranche, discussed below.

## II. LEGAL STANDARDS

The PSLRA provides that

> [i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the [lead plaintiff] determination . . . until after the decision on the motion to consolidate is rendered.

15 U.S.C. § 78u-4(a)(3)(B)(ii) (alterations added).

Under Federal Rule of Civil Procedure 42(a), a court may consolidate actions that "involve a common question of law or fact." Fed. R. Civ. P. 42(a). The decision to consolidate is committed to the sound discretion of the district court. *See Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1995) (citations omitted). In exercising this discretion, "district courts should consider whether doing so could lead to prejudice or confusion." *Ramsay v. Broward Cty.*

CASE NO. 21-02989-MDL-ALTONAGA/Damian

*Sheriff's Office*, 303 F. App'x 761, 765–66 (11th Cir. 2008) (citing *Hendrix*, 776 F.2d at 1495).

### III. DISCUSSION

Scarborough and Schiller seek to be appointed lead plaintiffs "on behalf of a class consisting of persons or entities who held call options [] to purchase common stock" in certain securities. (Mot. Appointment 4 (alteration added)). Lead Plaintiff Laine-Beveridge opposes the new class, arguing the *Scarborough* action should be consolidated into the existing class asserting claims against Robinhood in the Federal Securities Tranche. (*See generally* Mot. Consolidate). According to Scarborough and Schiller, consolidation is inappropriate because Lead Plaintiff has no authority over options claims, and the Plaintiffs who held options would be prejudiced by consolidation because Lead Plaintiff has failed to assert claims on behalf of options traders. (*See generally* Resp.).

In accordance with the PSLRA, the Court first addresses consolidation before rejecting the *Scarborough* Plaintiffs' request to establish a separate class for options traders.

### A. Current Status of Consolidation of Actions in the Federal Securities Tranche

As explained in the Court's August 9, 2023 Order, the status of consolidation of the actions in the Federal Securities Tranche is complex. Before analyzing the parties' arguments, the Court provides a brief summary.

All the cases the Judicial Panel on Multidistrict Litigation transferred, including the *Scarborough* action, have been consolidated into the MDL for pretrial purposes. (*See* Oct. 14, 2021 Order 2); *Scarborough v. Robinhood Fin., LLC*, No. 1:23-cv-21572, Order of Consolidation and Administrative Close-Out [ECF No. 16] filed on Apr. 27, 2023 (S.D. Fla. 2023) ("The above-styled case is consolidated in MDL proceeding 21-2989-MDL for all pretrial purposes[.]" (alteration added)). In addition, the May 18, 2021 Order established a separate tranche for federal securities claims. (*See id.* 1–2). Therefore, all actions asserting claims under federal securities

6

laws, including the *Scarborough* action, *see generally Scarborough* Compl., necessarily are included in any pretrial proceedings in the Federal Securities Tranche.

The Court's "tranche" structure was initially an administrative device to organize the different categories of actions that did not, by itself, merge the actions grouped in a tranche. *See Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015) ("Cases consolidated for MDL pretrial proceedings ordinarily retain their separate identities[.]" (alteration added; footnote call number omitted)); *cf. In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007) ("MDL courts must be given greater discretion to organize, coordinate and adjudicate [their] proceedings[.]" (alterations added)). But once Lead Plaintiff filed consolidated complaints (*see* CCAC; ACCAC), these master complaints "supersede[d] prior individual pleadings" and "merg[ed] the discrete actions [in the Federal Securities Tranche] for the duration of the MDL pretrial proceedings[,]" *Gelboim*, 574 U.S. at 413 n.3 (alterations added; citing *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 590–92 (6th Cir. 2013)).

The *Scarborough* action was filed and transferred into this MDL after the filing of the ACCAC. Although the Court consolidated the action into the MDL, and the action automatically corresponds to pretrial proceedings in the Federal Securities Tranche, the Court has not clearly addressed whether a later-filed action like *Scarborough* should also be superseded by the ACCAC. It does so now.

**B. Consolidation of the *Scarborough* Action with the ACCAC is Appropriate.**

Lead Plaintiff seeks to consolidate the *Scarborough* action, which he considers to be "nearly a carbon copy of the operative complaint . . . into the existing action under the auspices of the existing Lead Plaintiff and Lead Counsel[.]" (Mot. Consolidate 14 (alteration added)). Both the *Scarborough* Complaint and the ACCAC bring claims under sections 9(a) and 10(b) of the Securities Exchange Act of 1934 that involve the same Defendants, the same events, and the same

CASE NO. 21-02989-MDL-ALTONAGA/Damian

course of conduct. *Compare Scarborough* Compl. *with* (ACCAC). The two complaints plainly "involve a common question of law or fact[,]" Fed. R. Civ. P. 42(a) (alteration added), and assert "substantially the same claim or claims arising under" federal securities laws, 15 U.S.C. § 78u-4(a)(3)(B)(ii).[6]

Nonetheless, as noted, the *Scarborough* Complaint asserts claims on behalf of options traders, whereas the ACCAC pursues claims only on behalf of stockholders. The *Scarborough* Complaint also includes claims related to options on American Airlines (AAL) stock, a security omitted from the ACCAC, and proposes a longer class period. *Compare Scarborough* Compl. ¶ 1 (defining the class period from January 28, 2021 to February 19, 2021) *with* (ACCAC ¶ 1 (defining the class period from January 27, 2021 to February 4, 2021)). Because Lead Plaintiff has not asserted, and does not plan to assert, claims on behalf of options traders (*see* Mot. Consolidate 13 (stating Lead Plaintiff "considered and rejected the inclusion of options traders in the instant consolidated action")), the Court must consider whether these differences make consolidation unduly prejudicial such that the Court should allow a parallel class on behalf of options traders to proceed within the Federal Securities Tranche.

The Court finds that consolidation is appropriate because Lead Plaintiff's appointment included authority over options claims; the differences between the two classes do not merit severance at this juncture; and any prejudice is mitigated by Plaintiffs' ability to file individual claims.

---

[6] Lead Plaintiff cites to the PSLRA in support of the request for consolidation. (*See* Mot. to Consolidate 14). While the PSLRA contemplates consolidation, the Court's authority to consolidate is governed by Rule 42.

### a.  Lead Plaintiff Has Authority Over Options Claims.

Whether a putative options class should proceed separately in part depends on whether options claims properly fell within the scope of Lead Plaintiff's authority to begin with.

The PSLRA was enacted to combat the race-to-the-courthouse phenomenon created by lawyer-driven securities litigation. *See* 7 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 22:23 (6th ed.).  To that end, the PSLRA's provisions regarding notice and lead plaintiff appointment are geared toward selecting the most adequate plaintiff from a broad field of potential candidates to lead the class. *See* 15 U.S.C. § 78u-4(3) (requiring notice in a "widely circulated" publication and setting standard for appointing the "most adequate plaintiff").  Once appointed, "a lead plaintiff is empowered to control the management of the litigation as a whole, and it is within the lead plaintiff's authority to decide what claims to assert on behalf of the class." *In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 09-MDL-2058, 2010 WL 1438980, at *2 (S.D.N.Y. Apr. 9, 2010) ("*BoA I*") (citing *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 n.13 (2d Cir. 2004); other citation omitted); *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, No. 12-cv-4081, 2013 WL 4399215, at *3 (S.D.N.Y. Aug. 13, 2013) (same).

Lead Plaintiff asserts he has "sole discretion to determine the boundaries of the class[,]" including authority to decide not to bring claims on behalf of options traders.  (Mot. 5, 11–13 (alteration added); *see generally* Reply).  While Scarborough and Schiller do not dispute that lead plaintiffs under the PSLRA generally enjoy a broad mandate, they argue Lead Plaintiff's authority here specifically excludes options claims because (1) the *Muncy* Notice provided insufficient notice to options traders; (2) the Court granted Lead Plaintiff authority only over stock-related claims; and (3) Lead Plaintiff and named Plaintiffs lack standing to assert options claims.  (Resp. 15; *see id.* 9–10).  Scarborough and Schiller's arguments fail to persuade.

CASE NO. 21-02989-MDL-ALTONAGA/Damian

i. **The *Muncy* Notice Included Options.**

Scarborough and Schiller first argue that Lead Plaintiff lacks authority over options claims because the *Muncy* Notice did not include options in the definition of the class, and therefore, "[a]ffected [o]ptions holders were not notified of their rights to seek to become Lead Plaintiff[.]" (Resp. 10 (alterations added)).  According to the *Scarborough* Plaintiffs, this flaw in the *Muncy* Notice necessitated the issuance of the *Scarborough* Notice.  (*See* Mot. Appointment 5 ("No prior notice published in accordance with the PSLRA ever advised members of this [o]ptions [c]lass that class claims had been asserted on their behalf or invited them to move to be appointed as lead plaintiff." (alterations added))).  Lead Plaintiff contends "[t]his argument borders on frivolous[,]" and that even if the *Muncy* Notice did not include the word "options," it adequately provided interested options class members enough information regarding the claims and their ability to move to be appointed lead plaintiff.  (Reply 7–9 (alterations added)).

The Court need not consider the *Scarborough* Notice if the *Muncy* Notice provided adequate notice to options traders.  (*See* May 17, 2021 Order 6 n.5 (finding that a later-filed notice in a case asserting substantially similar claims had "no effect on the propriety of the *Muncy* notice or the applicable time period for filing lead plaintiff motions.")).  The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published[.]"  15 U.S.C. § 78u-4(a)(3)(A)(ii) (alterations added).  Scarborough and Schiller do not argue the *Scarborough* action is so dissimilar to the other federal securities actions that it is properly considered the first-filed action for purposes of issuing a PSLRA notice.  (*See generally* Mot. Appointment; Resp.).

Therefore, the issue is whether the *Muncy* Notice was indeed so flawed that re-publication of a PSLRA notice with respect to options traders was necessary.  *See In re Cavanaugh*, 306 F.3d

10

CASE NO. 21-02989-MDL-ALTONAGA/Damian

726, 738 (9th Cir. 2002) ("The notice requirement [is intended to] broaden the number of plaintiffs who get involved and seek lead plaintiff status by assuring potential plaintiffs that they still have a chance to take control of the case, even though they have lost the 'race to the courthouse.'" (alteration added)); (*see also* May 17, 2021 Order 6 ("[A]bsent an adequate notice, the Court cannot confidently say class members had sufficient knowledge or the opportunity to move for appointment as lead plaintiff." (alteration added; footnote call number and citation omitted))).  The *Muncy* Notice was not so flawed; for the reasons explained below, the Notice adequately alerted options traders to the pendency of federal securities claims asserted on their behalf and of the possibility to move for appointment as lead plaintiff.

Under the PSLRA, a notice must advise members of the purported plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class period[.]"  15 U.S.C. § 78u-4(a)(3)(A)(i) (alteration added).  It must also advise potential class members of the time in which to "move the court to serve as lead plaintiff of the purported class." *Id.*  The purpose of the notice requirement is to provide enough information to allow interested class members to directly "contact the [c]ourt and readily obtain a copy of the complaint . . . and/or file a motion to be appointed as lead [plaintiff] in that case." *Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, No. 3:20-cv-1815, 2020 WL 6682531, at *2 (M.D. Pa. Nov. 12, 2020) (alterations added; citations and quotation marks omitted).

The *Muncy* Notice referred to "those who were unable to execute trades, sold, and/or purchased certain securities including" twelve "'Affected Securities'[] on the Robinhood Trading Platform on or around January 28, 2021."  (*Muncy* Notice 2 (alteration added)).[7]  It listed the actions consolidated into the Federal Securities Tranche of the MDL, including the *Gossett* action,

---

[7] The Affected Securities listed in the *Muncy* Notice included all the securities at issue in the *Scarborough* Complaint.  *Compare Scarborough* Compl. ¶ 1 *with* (*Muncy* Notice 2).

and explained that "[t]hese actions assert largely similar allegations but are brought on behalf of *different classes* and include *different securities*." (*Id.* (alteration and emphases added)). It then "urge[d] investors to review the different complaints and classes." (*Id.* (alteration added)). Finally, the Notice stated that any person wishing to serve as lead plaintiff should move the Court to do so by July 27, 2021. (*See id.* 3). This was clearly sufficient to comply with the PSLRA and put options traders on notice.

Scarborough and Schiller nevertheless assert the *Muncy* Notice was limited to "Affected Stocks." (Resp. 10 n.5; *see also id.* 9–10). But while the *Muncy* Notice did not include the word "options," it also did not include the word "stocks" — instead, it referred to "Affected Securities" generally. (*See generally Muncy* Notice). Options are plainly a type of security. *See* 15 U.S.C. § 78c(a)(10) (defining "security" under the Securities Exchange Act of 1934 to include "any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof)").

Further, the *Muncy* Notice directly referenced the *Gossett* action, which asserted options claims. Scarborough and Schiller insist that the Notice needed to refer specifically to options traders and not just include them by reference to an underlying action. (*See* Resp. 10 n.5 (citing *Ravens v. Iftikar*, 174 F.R.D. 651, 656 (N.D. Cal. 1997))). But the authority they cite stands for the proposition that where the notice is already insufficient, it cannot be cured by referencing underlying pleadings "so distended and prolix that an investor who obtained copies of the pleadings would not be able to divine the legal and factual basis of plaintiffs' claim." *Ravens*, 174 F.R.D. at 656 (citations omitted). Here, where Scarborough and Schiller themselves brought the underlying *Gossett* action, any argument that the *Muncy* Notice failed to alert them of the action's nature does indeed seem frivolous.

In sum, the *Muncy* Notice adequately informed potential members of a putative options class of the claims against Robinhood and their ability to move to be appointed lead plaintiff. Neither the *Scarborough* Plaintiffs, nor any other plaintiffs specifically representing options traders, moved to be appointed lead plaintiffs in response to the *Muncy* Notice.

> **ii. The Court Appointed Lead Plaintiff to Manage the Federal Securities Tranche as a Whole.**

Scarborough and Schiller next argue that options traders are not bound by the decisions of Lead Plaintiff because his appointment was circumscribed to claims concerning affected *stocks*, not options. (*See* Resp. 10–13). They contend the Court's appointment is limited by the content of Laine-Beveridge's motion to be appointed lead plaintiff, which Scarborough and Schiller argue sought authority only over a "Stock Class." (*Id.* 10; *see generally* Mot. Appoint BLB).

Scarborough and Schiller's argument is unpersuasive. As Lead Plaintiff notes, he "moved to be appointed lead plaintiff for the entire [F]ederal [S]ecurities [T]ranche — not just a subset thereof[.]" (Reply 10 (alterations added)). The Motion to Appoint BLB made no mention of a "stock class" and sought Laine-Beveridge's appointment "as Lead Plaintiff on behalf of persons or entities who sold any of the Affected Securities[.]" (Mot. Appoint BLB 4 (alteration added)). And the Court unquestionably appointed Laine-Beveridge to lead all federal securities claims asserted against Robinhood. (*See generally* October 14, 2021 Order).

The Court acknowledges it focused on stocks when analyzing the financial interests of competing lead plaintiff candidates in its October 14, 2021 Order, but that was because only stock traders moved to be appointed. (*See id.* 2, 4–5). In fact, the Order corresponds to all claims against Robinhood in the Federal Securities Tranche, as is reflected in the header of the Order (*see id.* 1 ("This Document Relates to the Federal Securities Actions")); the Court's summary of the case (*see id.* ("This litigation involves allegations against . . . Robinhood" (alteration added; internal

CASE NO. 21-02989-MDL-ALTONAGA/Damian

quotation marks omitted))); the Court's listing of the underlying actions, including the *Gossett* action asserting options claims (*see id.* 2 n.4);[8] and the reference to all the "federal securities actions" against Robinhood as constituting one class (*see id.* 3 ("Of the federal securities actions, the plaintiff in *Muncy* was the first to publish notice to the class[.]" (alteration added))).  Therefore, when the Court appointed Laine-Beveridge "to serve as Lead Plaintiff in this action," it gave him authority over all the claims against Robinhood in the Federal Securities Tranche.  (*Id.* 12 (alteration added)); *see also Cave v. Singletary*, 84 F.3d 1350, 1354 (11th Cir. 1996) ("[A] district court's interpretation of its own [prior] order is properly accorded deference . . . when its interpretation is reasonable." (alterations added; citations omitted)).

If any doubt remains, the scope of Lead Counsel's appointment further confirms Lead Plaintiff was appointed to lead claims against Robinhood in the Federal Securities Tranche as a whole.  An MDL court may designate lead or liaison counsel to facilitate the administration of the cases in an MDL independent from any lead plaintiff structure.  *See* Manual for Complex Litigation 4d §§ 10.221, 22.62 (2004).  The Court did so in this MDL — after extensive interviews, the Court selected lead and liaison counsel to administer the Robinhood, Antitrust, and Other Broker tranches.  (*See generally* May 18, 2021 Order).  This process differs from appointment of lead counsel under the PSLRA, which, subject to a court's approval, vests authority in the lead plaintiff to select and retain lead counsel to represent the proposed class.  *See* 15 U.S.C. § 78u-4(3)(B)(v).

---

[8] The Court inadvertently overlooked listing the *Gatz* action, which asserts federal securities claims against Robinhood on an individual basis.  *See Gatz v. Robinhood Fin., LLC*, No. 21-cv-21296, Notice of Removal, Ex. 1, Compl. [ECF No. 1-1] filed Jan. 28, 2021 (C.D. Cal 2021).  As for the *Eisen* action, the Court made reference to it but noted that it did "not state any claims against Robinhood."  (Oct. 14, 2021 Order 2 n.4).  Because the Order analyzed only claims against Robinhood, Lead Plaintiff's appointment did not extend to the claims in the *Eisen* action.  (*See generally id.*).  In any event, the Joint Status Report states "[c]ounsel for all parties in *Eisen* informed Lead Plaintiff's Counsel that the parties to that case anticipate a voluntary dismissal of the action."  (Joint Status Report 4 (alteration added; citation omitted)).

CASE NO. 21-02989-MDL-ALTONAGA/Damian

It follows that when a court approves a lead plaintiff's choice of counsel, the lead counsel's authority would reflect the authority granted to the lead plaintiff.

Here, the Court explicitly approved The Rosen Law Firm as Lead Plaintiff's choice of counsel under the PSLRA. (*See* Oct. 14, 2023 Order 11–12). Further, the Court tasked Lead Counsel with administration of the Federal Securities Tranche as a whole, including responsibility for, among other obligations, preparing and presenting Plaintiffs' position "on all matters arising during pretrial proceedings[,]" coordinating settlement discussions, briefing and arguing motions, and "performing such other duties as may be incidental to the proper coordination of Plaintiffs' pretrial activities in the Federal Securities Tranche." (*Id.* 12–14 (alteration added)). This broad scope reflects Lead Plaintiff's appointment over all claims against Robinhood in the Federal Securities Tranche.

Consequently, Lead Plaintiff's appointment over the Federal Securities Tranche included broad authority over options claims. This is ultimately consistent with the purpose of the PSLRA, which seeks to install the most adequate plaintiff to "control the management of the litigation as a whole[.]" *BoA I*, 2010 WL 1438980, at *2 (alteration added; citations omitted).

### iii. Scarborough and Schiller's Standing Arguments Fail.

Regardless of the scope of Lead Plaintiff's appointment, Scarborough and Schiller contend Lead Plaintiff cannot have authority over options claims because he and the named Plaintiffs lack standing to assert such claims. (*See* Resp. 13–14). This argument confuses the issues.

The record does not reflect that Lead Plaintiff traded options. (*See* ACCAC ¶ 21; *see generally* Mot. to Appoint BLB, Ex. 4, Loss Chart [ECF No. 366-4]). But "[n]othing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action." *Hevesi*, 366 F.3d at 82 (alteration added). In fact, "it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim." *Id.* (citations omitted).

CASE NO. 21-02989-MDL-ALTONAGA/Damian

Instead, named plaintiffs with standing to sue on additional claims may be added "to aid the lead plaintiff in representing a class." *Id.* at 83 (citations omitted); *see also In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 09-MD-2058, 2011 WL 4538428, at *1 (S.D.N.Y. Sept. 29, 2011) ("*BoA II*") ("[W]here a lead plaintiff is without standing to sue on a given claim, the PSLRA allows for a mechanism whereby additional class representatives may be proposed by the lead plaintiff to pursue those claims." (alteration added)). Therefore, Lead Plaintiff's potential lack of standing to sue on behalf of options traders does not divest him of authority over the options claims.

Scarborough and Schiller also take issue with the fact that none of the named Plaintiffs' sworn certifications reflect any of them invested in options. (*See* Resp. 13–14; *see generally* ACCAC, Ex. 1, Certifications [ECF No. 527-1]). This argument expresses Scarborough's and Schiller's disagreement with Lead Plaintiff's litigation strategy rather than a substantive attack on his authority over options claims. For starters, the sworn certifications are not conclusive that all the named Plaintiffs lack standing to assert options claims: named Plaintiffs may very well have standing for such claims, but because the ACCAC does not bring them, named Plaintiffs did not need to demonstrate standing. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) ("[A] plaintiff must demonstrate standing for each claim *he seeks to press* and for each form of relief *that is sought*." (alteration and emphasis added; citations and quotation marks omitted)). But even if the named Plaintiffs do not currently have standing, Lead Plaintiff could have certainly added such named Plaintiffs. *See Hevesi*, 366 F.3d at 83. Ultimately, the absence of claims on behalf of options traders in the ACCAC is irrelevant to whether Lead Plaintiff had authority to assert such claims in the first place.

CASE NO. 21-02989-MDL-ALTONAGA/Damian

      **b.  The Differences Between the Classes Do Not Merit a Parallel Options Class.**

Having confirmed that Lead Plaintiff's appointment included authority over options claims, the Court next considers whether the differences between the two putative classes nonetheless merit severance of an options class at this juncture. As noted, the *Scarborough* Complaint and ACCAC differ on whether they assert claims on behalf of options traders, whether they bring claims connected to AAL stock, and the length of the class period. Moreover, the parties recognize damage calculations for options would be different than for stocks alone. (*See* Mot. Consolidate 5; Resp. 23).

According to the *Scarborough* Plaintiffs, these differences compel treatment as separate and distinct classes. (*See* Resp. 11). They argue the cases affirming lead plaintiffs' broad authority over the claims in a class are "inapposite" because, despite "assert[ing] the same claims[,]" the "Stock Class" and the "Options Class" are "fundamentally different classes arising from distinct financial instruments." (*Id.* (alterations added)). By contrast, Lead Plaintiff characterizes the differences between the classes as aspects falling under his "prerogative to determine class membership[;]" that is, Lead Plaintiff has asserted his authority over the class, and the *Scarborough* Plaintiffs' disagreement with his litigation strategy does not provide a "legal basis for insisting that a separate options class action with its own Lead Plaintiff and Lead Counsel proceed." (Mot. Consolidate 13 (alteration added)).

Lead Plaintiff has the better argument. Lead Plaintiff's authority to "control the management of the litigation as a whole" includes his authority "to decide what claims to assert on behalf of securities holders." *BoA I*, 2010 WL 1438980, at *2. "Lead plaintiffs necessarily make determinations that limit the class of shareholders. Inevitably, any class definition

establishes boundaries as to who may recover as part of the class." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 2013 WL 4399215, at *6 (alterations adopted; citation omitted).

Courts have repeatedly confirmed this authority in various contexts. *See, e.g.*, *In re Barclays Bank PLC Sec. Litig.*, No. 09-Civ-1989, 2016 WL 3235290, at *7 (S.D.N.Y. June 9, 2016) ("[L]ead plaintiff [] is permitted to make tactical decisions to pursue some claims and not others." (alterations added; citation omitted)); *New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 239 (E.D. Mich. 2016) (overruling objection to class settlement and finding that the decision whether to include warrants holders as part of the class fell within the lead plaintiff's discretion), *aff'd sub nom. Marro v. New York State Teachers' Ret. Sys.*, No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017). In fact, one court specifically found that whether to assert claims on behalf of options holders and whether to add named plaintiffs with standing to pursue such claims are "tactical decisions [within] the prerogative of a lead plaintiff." *BoA II*, 2011 WL 4538428, at *1 (alteration added).

Given a lead plaintiff's broad authority, it follows that "variations in class definition do not defeat consolidation or justify a proliferation of overlapping classes." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 2013 WL 4399215, at *6 (citation omitted). This is especially true where there is overlap between class members because "if a parallel class action were to be permitted, both actions would therefore seek recovery for the same absent class members." *Id.* at *5. Here, options Plaintiffs are not wholly distinct from stocks Plaintiffs because some individuals bought both types of securities — in fact, Scarborough owned shares of AMC and GME stocks during the class period. *See Gossett* FAC ¶¶ 79–80. Accordingly, variations in Lead Plaintiff's class definition — including his choice to not assert options claims, drop allegations related to AAL securities, and pursue a shorter class period — do not justify severance of an options class.

In short, Lead Plaintiff had authority over options claims and properly exercised that authority when he and Lead Counsel made the strategic decision not to bring such claims in the ACCAC. The Court sees no impediment to consolidation based on the scope of Lead Plaintiff's authority.

  **c. Consolidating the *Scarborough* Action Would Not Be Unduly Prejudicial.**

Finally, Scarborough and Schiller argue that consolidation would result in "enormous prejudice" due to Lead Plaintiff's decision to "extinguish[]" the options class. (Resp. 22 (alteration added)). The *Scarborough* Plaintiffs analogize their situation to two cases where the respective courts sought to mitigate prejudice by allowing class actions for different types of securities to proceed separately. (*See id.* 20–23 (discussing *In re Cent. Eur. Distrib. Corp. Sec. Litig.*, No. Civ-11-6247, 2012 WL 5465799 (D.N.J. Nov. 8, 2012) ("*CEDC*"), and *In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 293 F.R.D. 483 (S.D.N.Y. 2013) ("*New Oriental*"))).

As Lead Plaintiff points out (*see* Reply 13–14), these cases are distinguishable. In *CEDC*, the court considered whether two newly-transferred actions — the "*Grodko*" action and the "*Puerto Rico*" action — should remain consolidated with an existing securities class. *See generally CEDC*, 2012 WL 5465799. The court set aside the consolidation of the *Grodko* action because, despite significant overlap with the existing class in the type of legal claims, the class period, and discovery needs, there were "stark" differences in the course of conduct alleged in the pleadings. *Id.* at *9 (explaining that due to the differences in the actions, prejudice would result from "subjecting [the *Grodko* plaintiffs] to a lead plaintiff that would reject their claims" (alteration added)). The court then used its discretion to de-consolidate the *Puerto Rico* action because the claims alleged had not arisen during the class period in the existing class. *See id.* at *11–13.

In *New Oriental*, the court severed an action asserting claims on behalf of options traders after the lead plaintiff in the consolidated action indicated it would not pursue such claims. *See*

*New Oriental*, 293 F.R.D. at 487.  But there, the options plaintiff had withdrawn his own motion to be appointed lead plaintiff and stipulated to the appointment of an alternative candidate based on representations that the alternative candidate would pursue claims on behalf of options traders. *See id.* at 485.  The court found severance was appropriate based on the stipulation, the early stage of the litigation, and due to concerns about the statute of limitations running on the abandoned claims.  *See id.* at 487–88.

      *CEDC* and *New Oriental* are factually distinguishable.  Unlike the *Grodko* and *Puerto Rico* actions at issue in *CEDC*, the *Scarborough* action concerns the same course of conduct and largely the same class period as the existing class.  Unlike the action at issue in *New Oriental*, Scarborough and Schiller did not stipulate to the appointment of Laine Beveridge as Lead Plaintiff on the condition that he bring claims on behalf of options traders, and this action is not in the same early stage as *New Oriental*.

      As a last resort, Scarborough and Schiller point out that Lead Plaintiff's decision to abandon options claims "risked the running of the statute of limitations on that class'[s] claims[.]" (Resp. 22 (alterations added)); *see also New Oriental*, 293 F.R.D. at 487 ("[W]hen a consolidated class action complaint redefines a class more narrowly than the prior individual complaints, and no longer asserts claims on behalf of a portion of the consolidated class, the statute of limitations is no longer tolled under *American Pipe* for that 'abandoned' subclass." (alteration added; discussing *Am. Pipe Constr. Co. v. Utah*, 414 U.S. 538 (1974); citations omitted)).  Even so, this is insufficient to prevent consolidation.  Scarborough and Schiller "will not suffer any prejudice if they are not permitted to bring their own separate class action[;] . . . [they] remain free to pursue their claims through an individual action, which would permit them to obtain a ruling on the merits of their claims."  *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 2013 WL 4399215, at *6 (alterations added; citations omitted); (*see also* Mot. Consolidate 11).

CASE NO. 21-02989-MDL-ALTONAGA/Damian

Until now, neither Scarborough, Schiller, nor any other option trader objected to Lead Plaintiff's handling of the case.  Despite being named Plaintiffs in an underlying action in the Federal Securities Tranche that was specifically referenced in the *Muncy* Notice, Scarborough and Schiller did not move to establish an options class or to be appointed lead plaintiffs before the *Muncy* Notice's July 27, 2021 deadline.  They also did not object following the Court's appointment of Lead Plaintiff, after Lead Plaintiff filed the CCAC on November 20, 2021, or after the parties stipulated to filing the ACCAC on January 17, 2023.

A plaintiff in an MDL cannot silently sit on the sidelines for nearly two years, only to spring up on the eve of the Court's determination on class certification demanding a reconfiguration of the class structure and claims.  The Court agrees with Lead Plaintiff that "[h]aving done nothing to protect [options] claims since [first] filing them [in the *Gossett* action] on February 5, 2021, there is no equitable basis to deny consolidation or reward extreme delay with a lead plaintiff appointment[.]"  (Reply 13 (alterations added)).

### C.  Motion for Appointment

Because the Court grants Lead Plaintiff's Motion to Consolidate the *Scarborough* action, it need not consider Scarborough and Schiller's Motion for Appointment as lead plaintiffs of a parallel options class.

### IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion to Consolidate and Discontinue the Noticed Lead Plaintiff Process as Moot **[ECF No. 565]** is **GRANTED**.  The class action claims brought on behalf of options traders in the *Scarborough* Complaint are consolidated and superseded by the ACCAC.  If Scarborough and Schiller wish to assert individual claims that will proceed

CASE NO. 21-02989-MDL-ALTONAGA/Damian

on a coordinated basis during pretrial proceedings in the Federal Securities Tranche,

they shall file an amended complaint by **September 21, 2023**.

2. Maurice Scarborough and Scott Schiller's Motion for Appointment as Lead Plaintiffs

   for the Options Class and Approval of their Selection of Lead Counsel **[ECF No. 572]**

   is **DENIED as moot**.

**DONE AND ORDERED** in Miami, Florida, this 7th day of September, 2023.

_____

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

22