UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-2989-MDL-ALTONAGA/Damian

In re: JANUARY 2021 SHORT SQUEEZE
TRADING LITIGATION

<u>This Document Relates to: All Actions Involving the Federal Securities Laws</u>

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO FILE A RENEWED MOTION IN SUPPORT OF CLASS CERTIFICATION**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ........................................................................................1

II. RELEVANT PROCEDURAL HISTORY.........................................................................2

   A. Production of Customer Trade Evidence Reflecting Robinhood's Restrictions Took More Than 15 Months to Produce ........................................................................2

   B. Neither Side Focused on Price Impact in Its Briefing on the Original Motion............4

   C. The Court's Ruling and the Parties' Negotiations Leading to This Motion ................5

III. APPLICABLE LEGAL STANDARDS ............................................................................5

IV. ARGUMENT......................................................................................................................6

   A. A Renewed Motion is Proper Due to the Existence of Evidence Produced After Plaintiffs' Initial Motion Which is Necessary to Proving Price Impact........................6

   B. A Renewed Motion is Proper Due to the Novel Issues Involved in This Case .............8

   C. A Renewed Motion is Proper Because the Initial Denial of Certification is Without Prejudice ....................................................................................................................10

V. CONCLUSION .................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah v. U.S.*,
  406 U.S. 128 (1972) .................................................................................................................. 8

*Basic Inc. v. Levinson*,
  485 U.S. 224  (1988) ................................................................................................................. 8

*Cabrera v. Gov't Emps. Ins. Co.*,
  No. 12-61390-CIV, 2015 WL 464237 (S.D. Fla. Jan. 16, 2015) ............................................... 9

*Comcast Corp. v. Behrend,*
  569 U.S. 27 (2013) .................................................................................................................... 4

*Culpepper v. Irwin Mortg. Corp.*,
  491 F.3d 1260 (11th Cir. 2011) ................................................................................................. 6

*Desai v. Deutsche Bank Secs. Ltd.*,
  573 F.3d 931  (9th Cir. 2009) .................................................................................................... 9

*Dunbar v. Google, Inc.*,
  No. 5:12-CV-003305, 2012 WL 6202797 (N.D. Cal. Dec. 12, 2012) .................................... 10

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011) .................................................................................................................. 1

*Fezzani v. Bear, Stearns & Co. Inc.*,
  716 F.3d 18 (2d Cir. 2013) ........................................................................................................ 8

*Friend v. Hertz Corp.*,
  No. C-07-5222, 2014 WL 4415988 (N.D. Cal. Sept. 8, 2014) .................................................. 9

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) .................................................................................................................. 1

*Hargrove v. Sleepy's LLC*,
  974 F.3d 467 (3d Cir. 2020) ...................................................................................................... 6

*Hudson v. Delta Air Lines, Inc.*,
  90 F.3d 451 (11th Cir. 1996) ..................................................................................................... 6

*In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*,
  No. 09 CIV. 832, 2012 WL 4435292 (S.D.N.Y. Sept. 26, 2012) .............................................. 9

*Kanawi v. Bechtel Corp.*,
    254 F.R.D. 102 (N.D. Cal. 2008) .................................................................................. 10

*Kennedy v. Tallant*,
    710 F.2d 711 (11th Cir. 1983) ........................................................................................ 8

*Lankford v. Carnival Corp.*,
    No. 12-24408-CIV, 2014 WL 11878384 (S.D. Fla. July 25, 2014) ............................... 6

*Mogel v. UNUM Life Ins. Co. of Am.*,
    677 F. Supp. 2d 362 (D. Mass. 2009) ............................................................................ 9

*O'Neill v. Home Depot U.S.A., Inc.*,
    243 F.R.D. 469 (S.D. Fla. 2006) .................................................................................... 9

*Pinnock-Lee v. Phelan Hallinan, PLC*,
    No. 14-60154-CIV, 2015 WL 12532742 (S.D. Fla. Jan. 29, 2015) ............................... 8

*Remington v. Newbridge Secs. Corp.*,
    No. 13-60384-CIV, 2014 WL 505153 (S.D. Fla. Feb. 7, 2014) ..................................... 6

*Rensel v. Centra Tech, Inc.*,
    No. 17-24500-CIV, 2019 WL 6170221 (S.D. Fla. Nov. 20, 2019) ............................... 9

*Revival Chiropractic LLC v. Allstate Ins. Co.*,
    No. 6:19-CV-445, 2020 WL 8224615 (M.D. Fla. Dec. 8, 2020) ................................. 10

*Shin v. Cobb Cnty. Bd. of Educ.*,
    248 F.3d 1061 (11th Cir. 2001) ..................................................................................... 6

*Signor v. Safeco Ins. Co. of Illinois*,
    No. 19-61937-CIV, 2021 WL 4990312 (S.D. Fla. July 20, 2021) ................................. 9

*Siino v. Foresters Life Ins. & Annuity Co.*,
    No. 20-CV-02904, 2022 WL 20184654 (N.D. Cal. July 26, 2022) ............................... 9

*Terrill v. Electrolux Home Prod., Inc.*,
    274 F.R.D. 698 (S.D. Ga. 2011) .................................................................................... 6

*Torrent v. Yakult U.S.A., Inc.*,
    No. 15-cv-124, 2016 WL 6039188 (C.D. Cal. Mar. 7, 2016) ........................................ 6

*Washington v. Vogel*,
    158 F.R.D. 689 (M.D. Fla. 1994) ................................................................................ 10

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................. 5, 6, 9

**Other Authorities**

Charles R. Korsmo, *Mismatch: The Misuse of Market Efficiency in Market Manipulation Class Actions*, 52 Wm. & Mary L. Rev. 1111 (2011) ............................................................................ 9

**I.       PRELIMINARY STATEMENT**

In its order denying Plaintiffs' motion for class certification without prejudice, the Court ruled that "[a]t this juncture," Plaintiffs had not connected class members' decisions to sell to Robinhood's manipulation. Order at 62-63. However, the Court suggested that a "modified fraud-on-the-market" presumption requiring proof of both: (1) a *bona fide* market for the Affected Stocks, tying the decision to sell to the price, *id.* at 59; **and** (2) price impact caused by Robinhood, tying the price to the misconduct, *id.* at 62-63, might provide an avenue to proving class-wide reliance. Robinhood did not initially oppose this motion to set a briefing schedule. And with good reason: Robinhood's opposition reveals that it has neither a legal nor a factual basis for doing so.

Robinhood's "no second bite at the apple" refrain (ECF 631 at 7, 13, 19)[1] fails because Robinhood can cite no case where the novel modified fraud-on-the-market theory proposed by the Court has been argued by plaintiffs or adopted by any court. The initial motion presented four legal theories of class-wide reliance grounded in precedent, *see* ECF 559 at 18-29, and Plaintiffs cannot be faulted for not proposing a price impact theory articulated in a law review article published in 2011 prior to the decisions in *Halliburton I* and *Halliburton II* – the former holding that plaintiffs need not prove loss causation at class certification, *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 812 (2011), the latter ruling that defendants may, however, present evidence of no price impact to defeat certification. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 284 (2014). Because Robinhood bore the burden of proof had the Court accepted Plaintiffs' market efficiency showing, Robinhood had every reason to submit evidence showing no price impact, if such evidence existed, but did not do so. Instead, both of Robinhood's experts limited their opinions to market efficiency, neither opining on the cause of the Affected Stocks's price declines during the class period. ECF 585 at 12 & n.6. Thus, under existing law, Plaintiffs were not required to argue or prove price impact.

***Second***, although the proposed presumption would be new, the practical effect would be to advance plaintiffs' proof of price impact (required to prevail on the merits) to the class certification stage in manipulation cases. Since September 30, 2022, Plaintiffs have sought evidence of Robinhood's purchase order cancellations, involuntary margin sales, and early close outs of in-the-money call options (RFP Nos. 19, 20, 22 and 23, below), which Plaintiffs seek to

---

[1] Page references to documents described by their docket number are to ECF filed-stamped pages; page references to documents cited by name, *e.g.,* "Opposition" are to internal page numbers.

1

prove harmed stock prices by distorting the free interplay of supply and demand. When the parties sought to amend the Scheduling Order to extend the initial expert reports deadline beyond the fact discovery cut-off, counsel attested to difficulties Robinhood was having querying its databases for this information. ECF 619-2 at ¶¶9-12. Having purportedly completed the production on January 5, 2024 – 15 months after it was requested – Robinhood cannot fault Plaintiffs for not arguing and proving price impact in its class certification reports and briefing prepared February - June 2023.

Robinhood's opposition also ignores that the Court's denial of the initial motion was without prejudice. Because of the overlap of price impact and loss causation,[2] to avoid duplication of effort, Plaintiffs twice proposed to file a renewed motion concurrent with the filing of merits expert reports.[3] Robinhood rejected that economical approach, instead insisting on earlier certification briefing and two sets of expert reports. There is no prejudice to Robinhood, the party who demanded two sets of expert reports.  Moreover, Robinhood produced new evidence critical for price impact hours after it filed its opposition to this motion.[4]

Courts often set forth a path for a party's ultimate success in decisions ruling against that party. Additionally, certification decisions are not final and can be revisited prior to trial. On February 15, Plaintiffs will be prepared to file a renewed motion showing that Robinhood's removal of its customers' demand for the Affected Stocks had a devastating impact on their prices such that class members necessarily relied upon Robinhood's misconduct when they sold shares in a *bona fide* market in reliance on prices being set by the interplay of supply and demand not by manipulation and deception. Plaintiffs respectfully request that they be permitted to do so.

## II.     RELEVANT PROCEDURAL HISTORY

### A.     Production of Customer Trade Evidence Reflecting Robinhood's Restrictions Took More Than 15 Months to Produce

At the outset of discovery, Plaintiffs issued the following document production demands:

---

[2] Price impact demonstrates that, at a minimum, Robinhood's misconduct contributed to observed price declines; loss causation identifies the precise dollar amount of price impact and eliminates the amount of the price decline, if any, not attributable to Robinhood, *e.g.*, other brokers' restrictions, company-specific information, and market factors.

[3] ECF 631-1 at 2 (Nov. 16, 2023 email); ECF 631-2 at 2 (Nov. 20, 2023 email).

[4] Robinhood faults Plaintiffs for not subpoenaing FINRA data its expert intends to use until March 2023, *after* initial class certification expert reports were exchanged on Feb. 16, 2023. ECF 631 at 13 n.5. Robinhood – which also subpoenaed FINRA in January 2023 – knows the data was timely sought for an expert report on loss causation and damages, then due Dec. 18, 2023. ECF 619 at 1.

- REQUEST NO. 19: Documents evidencing cancellation and/or rejection of purchase orders for shares in the Later-Restricted Stocks during the Relevant Period,[5] including the date and time customers received such notifications.

- REQUEST NO. 20: Documents evidencing involuntary sales of all or part of customers' long positions in the Later-Restricted Stocks during the Relevant Period, including the date and time customers received notifications of Robinhood's action, due to, in Robinhood's words, "unreasonable risk in brokering the customer's position," e.g., a margin call.

- REQUEST NO. 22: During the Relevant Period, all Documents evidencing involuntary sales of all or a portion of a customer's long positions in the Later-Restricted Stocks, as well as the date, hour and minute the customer was notified of Robinhood's action.

- REQUEST NO. 23: During the Relevant Period, all Documents evidencing involuntary position closing of customers' call options, including, but not limited to, call positions in the Later-Restricted Stocks, prior to their expiration, as well as the date, hour and minute the customer was notified of Robinhood's action.[6]

Plaintiffs sought those documents because they would allow Plaintiffs' experts to determine the volume of stock affected by Robinhood's various restrictions over time, which, by comparing to movements in the Affected Stock's prices, would establish the price impact of Robinhood's restrictions. Plaintiffs did not receive all documents responsive to this request by the deadline for filing expert reports in support of class certification. Rosen Dec. ¶4. In fact, Robinhood did not even purport to compile and produce the data responsive to these requests until June 30, 2023, the date Plaintiffs' class certification reply brief was due. Rosen Dec. ¶5.

The data produced by Robinhood on June 30, 2023, appeared to be inconsistent with data it provided to various regulators.[7] In response to a motion to compel filed by Plaintiffs on August

---

[5] The agreed-upon Relevant Period is December 1, 2020 through March 5, 2021. *Id.* at ¶3, n. 1.

[6] *See* Declaration of Laurence M. Rosen filed herewith ("Rosen Dec.") at ¶3.

[7] Robinhood produced more than 800 spreadsheets with data previously provided to various regulators while it withheld correspondence with regulators that explained of the scope of the information being depicted in the spreadsheets, such that the spreadsheets were of limited to no use and thus produced in violation of federal and local discovery rules. *See* Letters dated March 24 and June 2, 2023, and July 12, 2023. Rosen Dec. at ¶¶9-11 During a March 3, 2023, meet-and-confer, Robinhood had provided the Bates numbers of several spreadsheets that contained some information responsive to Request Nos. 19, 20, 22 and 23. *Id.* at ¶7. Only by comparing those documents to the data provided on June 30, 2023, did inconsistencies in the data become apparent. Ultimately, Magistrate Judge Damian compelled Robinhood to produce more than 100 letters sent to regulators, FINRA, and Congress, which answered highly-relevant questions concerning class

3

8, 2023, on August 10 and 14, 2023, prior to the hearing before Magistrate Judge Damian, Robinhood agreed to provide more granular data in response to Request Nos. 19, 20, 22 and 23. Robinhood did not send notices of completion of their responses to Request 20 until October 27, 2023, Request 22 until November 9, 2023, and Request 19 until January 5, 2024.[8]

### B. Neither Side Focused on Price Impact in Its Briefing on the Original Motion

Given that proof of price impact is not required in the first instance to establish a presumption of reliance, and that Plaintiffs identified four potential theories that that could give rise to a class-wide presumption of reliance under existing case law, it would have been imprudent *one year ago* to ask to delay class certification briefing until after Robinhood (or third-parties, such as FINRA) produced evidence of price impact Plaintiffs first expected to need for expert reports on loss causation and damages then due on December 18, 2023.

Thus, the opening brief in support of class certification did not attempt to prove Robinhood's price impact, but did mention that Plaintiffs would establish loss causation and damages using a demand-based model at the merits stage. ECF 559 at 32. Robinhood's opposition neither argued lack of price impact, nor criticized Plaintiffs' motion for not showing price impact. Instead, Robinhood argued that all plaintiffs asserting §10(b) claims, "misrepresentation and manipulation claims alike," must prove market efficiency to invoke a presumption of class-wide reliance. ECF 568 at 24.[9] Robinhood also claimed it rebutted the presumption *not* with evidence of lack of price impact, but with evidence of lack of reliance – claiming that the proposed class representatives testified that they knew prices were distorted "by a social media craze and

---

period events and/or described data concurrently produced in spreadsheets. Months after it was first sought, Robinhood provided an overlay matching the unique Bates numbers Robinhood assigned to each of those productions to the Bates numbers assigned to its production in the MDL, enabling Plaintiffs to match documents and descriptions provided to regulators to the spreadsheets interspersed in the production. *See* ECF 587 at n. 3 & 6; ECF 600 at 3; Rosen Dec. at ¶12.

[8] It does not appear that a notice of completion was made with respect to Request No. 23.

[9] The Court rejected this sweeping assertion, noting it "lacks legs." Order at 57. For this reason, Robinhood's argument that Plaintiffs already argued "market efficiency and price impact at length," Opposition at 3-4, is particularly disingenuous as both Supreme Court precedent and the core tenet of Professor Korsmo's article sharply distinguish between the two. *See* Order at 62 (Korsmo "suggest[s] a showing of market impact at class certification as a viable substitute for market efficiency…"). Similarly, Plaintiffs' expert, Dr. Werner, testified generally about the price impact of Robinhood's restrictions only in the context of a class-wide damages model satisfying *Comcast Corp. v. Behrend,* 569 U.S. 27, 36 (2013). ECF 566-1 at 16, 91.

4

attempted short squeezes" at the time of purchase. ECF 568 at 29. But the relevant transaction for the purposes of transaction causation is the stock sale, not the stock purchase.[10] Plaintiffs' reply did not discuss price impact except to point out that neither of Robinhood's experts opined that Robinhood's actions had no impact on the prices of Robinhood's stock, evidence that Defendants are permitted to submit to rebut a presumption of reliance. ECF 585 at 12 & n. 6.

        **C.**       **The Court's Ruling and the Parties' Negotiations Leading to This Motion**

Ultimately, the Court found that none of the presumptions that Plaintiffs advanced fit the fact of this case, but nevertheless noted that "some have suggested that a modified *Basic* presumption is appropriate in cases where a defendant 'directly manipulated [a security's] price.'" Order at 62. Because Plaintiffs argued that Robinhood "block[ed] the mechanism of efficiency," the Court suggested that this "perhaps present[s] the type of case where a modified fraud-on-the-market presumption could apply." *Id.* To prevail, Plaintiffs would have to "adequately connect Robinhood's acts with Plaintiffs' decision to sell their shares in the Affected Stocks." *Id.* The Court denied class certification without prejudice, setting no deadline for a renewed motion. *Id.* at 72.

Promptly after the Court issued its decision, Plaintiffs informed Robinhood of their intent to file such a motion and proposed a briefing schedule that would have class certification briefing coincide with the existing deadlines for filing expert reports to avoid another round of reports. *Compare* ECF No. 631-1 (briefing schedule initially proposed by Plaintiffs) *with* ECF 621 (expert discovery deadlines). Plaintiffs specifically noted: "[t]his also eliminates the need for doubling the number of expert reports and having two depositions of each expert, rather than just one." Robinhood rejected this schedule, wishing to accelerate briefing of class certification and insisting on the right to take two depositions of Plaintiffs' experts. Rosen Dec. ¶12. Plaintiffs agreed to seek the briefing schedule preferred by Robinhood, including new class certification expert reports, without disturbing the existing dates in the Scheduling Order entered November 9, 2023.

### III.   APPLICABLE LEGAL STANDARDS

Fed. R. Civ. P. 23(c)(1)(C) provides: "An order that grants or denies class certification may be altered or amended before final judgment." Although "[t]he Eleventh Circuit has not established an exact standard for determining when to allow parties to revisit the issue of class certification

---

[10] Thus, the Court held: "Plaintiffs' relatively consistent position [is] that Robinhood manipulated the market when it restricted the Affected Stocks while giving a false reason why, meaning the market price Plaintiffs allegedly relied on did not reflect the true situation." Order at 29.

5

after an initial denial thereof," *Terrill v. Electrolux Home Prod., Inc.*, 274 F.R.D. 698, 700 (S.D. Ga. 2011), "a district court may alter or amend its certification order at any time before rendering a decision on the merits." *Culpepper v. Irwin Mortg. Corp.*, 491 F.3d 1260, 1275 (11th Cir. 2011). After a motion for class certification is denied, a "district court remains free to revisit the issue" "if, through further proceedings, the plaintiffs are able to clarify and better support the need for class certification." *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 458 (11th Cir. 1996). In *Remington v. Newbridge Secs. Corp.*, No.13-60384-CIV, 2014 WL 505153, at *12-14 (S.D. Fla. Feb. 7, 2014), a court in this District allowed plaintiff to amend her pleading after the scheduling order deadline *and* renew her certification motion, both in response to the court's initial denial.

In *Shin v. Cobb Cnty. Bd. of Educ.*, 248 F.3d 1061, 1065 (11th Cir. 2001), the Eleventh Circuit denied a Rule 23(f) petition on the grounds that the trial court, in denying certification, suggested a path forward in a renewed motion. Reversing a denial of a renewed certification motion, the Third Circuit similarly reasoned that because certification may be revisited before final judgment, "[d]istrict courts should treat renewed motions for class certification as they would initial motions under Rule 23." *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 470 (3d Cir. 2020). The Third Circuit ruled the trial court incorrectly applied the "heightened motion-for-reconsideration standard," by "requiring that, in addition to satisfying the typical Rule 23 criteria, plaintiffs show there was a change in controlling law, new evidence, or a clear error." *Id. Hargrove* also noted a split on this issue in district courts outside the Third Circuit, contrasting *Remington*, *supra*, which declined to impose a heightened reconsideration standard, with *Torrent v. Yakult U.S.A., Inc.*, No. 15-cv-124, 2016 WL 6039188, at *1 (C.D. Cal. Mar. 7, 2016) (Opposition at 8, cited for the proposition that "courts uniformly apply the stringent law of the case standard"). In *Lankford v. Carnival Corp.*, No. 12-24408-CIV, 2014 WL 11878384 (S.D. Fla. July 25, 2014), although this Court denied a second motion for class certification in a mass tort case on several grounds, there was no mention of the earlier motion and the renewed motion was judged on its own merits.

**IV.     ARGUMENT**

    **A.     A Renewed Motion is Proper Due to the Existence of Evidence Produced After Plaintiffs' Initial Motion Which is Necessary to Proving Price Impact**

As Robinhood acknowledges, a renewed motion for class certification is proper when movants receive new evidence relevant to certification after filing the initial motion. *Terrill v. Electrolux Home Prod., Inc.*, 274 F.R.D. 698, 701 (S.D. Ga. 2011). In a renewed motion, one

6

element of the "modified fraud-on-the-market" presumption Plaintiffs will seek to invoke requires proof of price impact tying Robinhood's misconduct to class members' sales prices. *Id.* at 62-63. To show price impact from Robinhood's restrictions on the Affected Stocks, Plaintiffs intend to proffer expert testimony linking initial declines and continued depressed prices for the Affected Stocks with Robinhood's trading restrictions that removed its customers' demand for those stocks. To make that showing, Plaintiffs required real-time data from Robinhood regarding its actions in customer accounts linked to the various restrictions. In the initial brief on this motion, Plaintiffs noted that in a renewed class certification motion, "Plaintiffs intend to rely on documents that Plaintiffs received in discovery subsequent to Plaintiffs' filing of the initial class certification motion." ECF 624 at 1.

Robinhood is well aware that this data was unavailable to Plaintiffs at the time of filing the initial certification motion because it did not attempt to provide the data, first requested nine months earlier, until June 30, 2023, the day class certification briefing closed. Deficiencies in *that* production, *see* n. 9, *supra*, were ultimately the subject of a motion to compel, filed on August 8, 2023. ECF 587. The Motion to Compel noted that "[i]n addition to §10(b) liability for the PCOs, §9(a)(2) liability arises from Robinhood's forced or 'involuntary' transactions in customer accounts by which Robinhood manipulated demand for and supply of the Affected Stocks – also inducing sales and lowering stock prices." *Id.* at 3. The Motion specifically argued that Plaintiffs needed information evidencing purchase order cancellations to measure "demand reduction, *price impact*, and damages caused by Robinhood's Class Period actions." *Id.* at 4.

Robinhood's August 10, 2023, response conceded the relevance of these documents, with Robinhood agreeing to further produce real-time trading information for Request Nos. 19, 20, 22 and 23. ECF 593 at 3. Five months later, on January 5, 2024, more than *15 months* after the information was first requested, Robinhood produced purchase cancellation evidence needed for Plaintiffs' expert's analysis of price impact. The data was provided hours *after* Robinhood argued, in opposition to this motion, that "Plaintiffs' counsel surely could have asked their expert to present that analysis during the time the Court provided in the Scheduling Order for expert reports in support of class certification [February 16 and March 28, 2023]." Opposition at 12.

Ignoring the documents it failed to produce, Robinhood points to FINRA data, which Plaintiffs intend to use to further support price impact at class certification, to argue it cannot support a renewed motion because Plaintiffs first subpoenaed the data in March 2023, after serving

an expert report in support of class certification. ECF 631 at 18 n. 5. Because this evidence was timely sought in support of a loss causation and damages report due December 18, 2023, in a November 6, 2023, declaration setting out good cause to extend that deadline to March 29, 2024, counsel jointly represented that it took FINRA four months just to agree to the scope of the production and, because of its sheer size, a few more months before it provided the data in late October. ECF 619-2 at ¶¶13-14. *Now* Robinhood absurdly claims the data should have been included in an expert report prepared in mid-February 2023, just 4 ½ months after discovery began.

Moreover, Robinhood provides no support for the proposition that where new evidence initially unavailable for the initial motion becomes available at the time of filing a renewed motion, leave should be denied because the movants did not seek the information before filing the initial motion. To the contrary, *Pinnock-Lee*, which Robinhood cited (ECF 631 at 19) allowed the filing of a renewed motion where, after the initial denial, plaintiffs sought additional discovery to address the deficiency in the renewed motion. *Pinnock-Lee v. Phelan Hallinan, PLC*, No. 14-60154-CIV, 2015 WL 12532742, at *1 (S.D. Fla. Jan. 29, 2015), *report and recommendation adopted sub nom. Lee v. Phelan Hallinan, PLC*, No. 14-60154-CV, 2015 WL 12533008 (S.D. Fla. Feb. 4, 2015).

Robinhood's arguments asking the Court to deny new class certification expert reports under Rule 16(b)'s good cause standard lacks merit. First, as noted in Section II.C above, Robinhood insisted on an additional round of expert reports and depositions, rather than adopting a schedule that would allow class certification to coincide with merits expert discovery. Robinhood cannot now claim to be prejudiced by the proposed schedule. Second, even if Rule 16's good cause standard applies, Robinhood's untimely production provides good cause for renewal of the motion.

**B.     A Renewed Motion is Proper Due to the Novel Issues Involved in This Case**

None of Robinhood's arguments acknowledges the novelty of the theory involved in Plaintiffs' anticipated renewed motion. Plaintiffs first put forward multiple bases to establish class-wide reliance: unified fraudulent scheme, first recognized in *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983); presumption of reliance where manipulative acts are combined with material omissions, under *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 153 (1972); reliance on a *bona fide* market free from manipulation, discussed in *Fezzani v. Bear, Stearns & Co. Inc.*, 716 F.3d 18, 23 n.3 (2d Cir. 2013), and reliance on the fraud-on-the-market presumption announced in *Basic Inc. v. Levinson*, 485 U.S. 224 , 246-47 (1988). The Court found that none of those presumptions apply, but nevertheless noted that "some have suggested that a modified *Basic*

8

presumption is appropriate in cases where a defendant 'directly manipulated [a security's] price.'" Order at 62 (*quoting Desai v. Deutsche Bank Secs. Ltd.*, 573 F.3d 931 945 n.1 (9th Cir. 2009) (O'Scannlain, J. concurring) and Charles R. Korsmo, *Mismatch: The Misuse of Market Efficiency in Market Manipulation Class Actions*, 52 Wm. & Mary L. Rev. 1111 (2011). Shifting the burden of proving price impact from defendants to plaintiffs at the class certification stage is both novel and non-disruptive of the existing schedule. This distinguishes the instant case from the many cases Robinhood cites, where novel issues were not at play, or the renewed motion would have been otherwise disruptive:

*Cabrera v. Gov't Emps. Ins. Co.*, No. 12-61390-CIV, 2015 WL 464237, at *5-6 (S.D. Fla. Jan. 16, 2015): Plaintiff, who filed three certification motions, changed class definitions without amending the complaint, and delayed resolution of the case by seeking numerous extensions, was denied certification based on a standing issue that should have been clear from the outset.

*Siino v. Foresters Life Ins. & Annuity Co.*, No. 20-CV-02904, 2022 WL 20184654, at *1 (N.D. Cal. July 26, 2022). Seeking injunctive relief under Rule 23(b)(2) for a money damages claim is not a basis for amending a scheduling order to accommodate a renewed motion.

*Rensel v. Centra Tech, Inc.*, No. 17-24500-CIV, 2019 WL 6170221, at *2 (S.D. Fla. Nov. 20, 2019). Renewed motion denied due to plaintiffs' failure to address the requirement of ascertainability in their initial motion.

*Signor v. Safeco Ins. Co. of Illinois*, No. 19-61937-CIV, 2021 WL 4990312, at *4 (S.D. Fla. July 20, 2021). Motion to narrow class definition denied when facts, expert reports and theories were available when motion was filed and summary judgment motions were then pending.

*Mogel v. UNUM Life Ins. Co. of Am.*, 677 F. Supp. 2d 362, 366-67 (D. Mass. 2009). Denied renewed motion to allow plaintiffs to advance the non-novel issue of moving for certification under Rule 23(b)(3) instead of 23(b)(2).

*Friend v. Hertz Corp.*, No. C-07-5222, 2014 WL 4415988, at *2 (N.D. Cal. Sept. 8, 2014). Renewed motion seeking to certify a Rule 23(c)(4) issue class is purely tactical and not novel.

*In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*, No. 09 CIV. 832, 2012 WL 4435292, at *1 (S.D.N.Y. Sept. 26, 2012). Poor showing by plaintiffs' market efficiency expert at four-day evidentiary hearing not a basis for a renewed motion with a new expert.

*O'Neill v. Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 482 (S.D. Fla. 2006). Plaintiffs waited for months after briefing and oral argument revealed defects in motion, until after order

denying class certification, to seek to amend the complaint and move to reconsider the denial.

*Revival Chiropractic LLC v. Allstate Ins. Co*., No. 6:19-CV-445, 2020 WL 8224615, at *3 (M.D. Fla. Dec. 8, 2020), *report and recommendation adopted*, No. 6:19-CV-445, 2021 WL 197669 (M.D. Fla. Jan. 6, 2021). Renewed class certification motion on the basis of new evidence denied where the evidence was not actually new to plaintiffs.

*Washington v. Vogel*, 158 F.R.D. 689, 692 (M.D. Fla. 1994). Renewed motion for class certification denied because plaintiffs failed to seek an alternate grounds for certification despite *multiple* opportunities to do so.

### C. A Renewed Motion is Proper Because the Initial Denial of Certification is Without Prejudice

A renewed class certification motion is appropriate because the Court denied the earlier motion without prejudice. In *Dunbar v. Google, Inc.*, No. 5:12-CV-003305, 2012 WL 6202797, at *10-11 (N.D. Cal. Dec. 12, 2012), the third district court judge to handle the matter permitted amendment of the complaint and a renewed motion for class certification based on the fact that the initial judge assigned to the case, prior to transfer, denied the initial motion "without prejudice." Similarly, in *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 106 (N.D. Cal. 2008), the court ruled that a prior denial of class certification without prejudice "indicat[ed] that Plaintiffs could renew their motion" after conducting additional discovery.

Here, the Court's Order expressly denied the initial motion without prejudice. Armed with data from Robinhood and FINRA to inform expert opinions on price impact, good cause exists to grant leave for a renewed motion for class certification based upon a modified fraud-on-the-market presumption of class-wide reliance in accordance with the schedule on which the parties previously agreed.

### V. CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be granted.

Dated: January 12, 2024

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, FBN# 0182877
Robin Bronzaft Howald
By: /s/Laurence M. Rosen
Laurence M. Rosen, Esq.
275 Madison Avenue 40th Floor

10

New York, New York 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com

*Counsel for Lead Plaintiff Blue Laine-Beveridge and Named Plaintiffs Abraham Huacuja, Ava Bernard, Brendan Clarke, Brian Harbison, Cecilia Rivas, Doi Nguyen, Joseph Gurney, Marcel Poirier, Sandy Ng, Santiago Gil Bohórquez, and Thomas Cash*

## CERTIFICATE OF SERVICE

      I hereby certify that on January 12, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Laurence M. Rosen