UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-MD-2989-ALTONAGA/DAMIAN

In re:

**JANUARY 2021 SHORT SQUEEZE**
**TRADING LITIGATION**

_____/

This Document Relates to the Federal Securities Tranche

**<u>DEFENDANTS ROBINHOOD MARKETS, INC., ROBINHOOD FINANCIAL LLC AND ROBINHOOD SECURITIES, LLC'S SUR-REPLY TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A RENEWED MOTION FOR CLASS CERTIFICATION</u>**

Robinhood Markets, Inc., Robinhood Financial LLC and Robinhood Securities, LLC (together, "Robinhood") hereby submit this sur-reply memorandum in response to Plaintiffs' motion for leave to file a renewed motion for class certification (Dkt. No. 624, the "Motion").

## ARGUMENT

In reply, Plaintiffs fail to establish good cause supporting their request to file a second motion for class certification and to reopen class certification expert discovery months *after* the governing scheduling order closed that portion of this litigation. Plaintiffs fail even to engage in the governing standard and case law under Rule 16, wholly ignoring the issue. They also concede the following salient legal principles and facts:

- Courts in this District routinely hold that, "in the absence of materially changed or clarified circumstances, or the occurrence of a condition on which the initial class ruling was expressly contingent, courts should not condone a series of rearguments on the class issues[.]" *Cabrera v. Gov't Emps. Ins. Co.*, No. 12-61390-CIV, 2015 WL 464237, at *5 (S.D. Fla. Jan. 16, 2015) (quoting *Washington v. Vogel*, 158 F.R.D. 689, 692-93 (M.D. Fla. 1994));

- "District Courts look unfavorably on requests to alter or amend a class certification order which rely on factors or theories which were previously available to parties." *Signor v. Safeco Ins. Co. of Ill.*, No. 19-61937-CV, 2021 WL 4990312, at *3 (S.D. Fla. July 20, 2021);

- There has been no change in the law since their prior motion for class certification. Every case that Plaintiffs now identify as supporting their renewed motion for class certification was not only available to them at the time they filed their motion for class certification on the schedule ordered by the Court, but also was cited or discussed extensively in the prior briefing; and

- The law review article that Plaintiffs cite as providing the basis for their renewed motion for class certification was published years before this case was even filed and was available to Plaintiffs when they filed their now-rejected motion for class certification.

Rather than dispute these dispositive legal and factual points, Plaintiffs present two new arguments to support their request to try again at class certification: (1) they now have access to Robinhood's data on cancellation of customer orders, which they argue is critical to their new theory without ever explaining why they need it for the motion, why they never raised

the fact that they might need that data in connection with class certification before the Court denied their timely-filed motion or why they did not seek more time to obtain that data and file a single motion for class certification; and (2) the new argument they want to make is novel, and this somehow excuses their failure to make the argument on the schedule ordered by the Court. Neither argument has merit. And both arguments ignore the substantial prejudice their tactical decisions or lack of diligence will cause to the Court and Robinhood if they are permitted a do-over.

*First*, Plaintiffs seek to justify their need to file a second motion for class certification based on the fact that Robinhood recently produced data concerning customer order cancellations (*i.e.*, proposed customer purchases of the Affected Stocks[1] that were cancelled, internally at Robinhood, when the restrictions at issue in this case were implemented). This is nothing more than a pretext, and is unavailing in any event.

Notably, although Plaintiffs spend pages of their reply discussing this data as the core reason they now should be entitled to file a renewed motion (suggesting that, without it, they could not have moved on their new argument before), that is the first time they have *ever* linked the two issues. In their opening papers requesting a modification to the scheduling order, Plaintiffs argued to the Court that "Plaintiffs request until February 15, 2024 to file their renewed motion for class certification because they only recently received an extraordinarily large data set from FINRA that requires extensive and complicated analyses that cannot be completed before then." (Motion at 1-2.) The FINRA data—data maintained by FINRA, which involve transactions that brokers report to FINRA, and obtained through a third-party subpoena—is separate from the internal Robinhood cancellation data that Plaintiffs now claim is critical.[2]

---

[1] "Affected Stocks" refers to "common stock in AMC Entertainment Holdings, Inc., Bed Bath & Beyond Inc., BlackBerry Ltd., Express Inc., GameStop Corp., Koss Corp., Tootsie Roll Industries Inc., or American Depositary Shares of foreign-issuers Nokia Corp. and trivago N.V." (Dkt. No. 527, Consolidated Class Action Complaint ¶ 1.)

[2] As Defendants pointed out in their Opposition, Plaintiffs can hardly rely on the FINRA data as a justification for a renewed motion for class certification when Plaintiffs did not even seek that data until *after* they filed their initial motion. (Dkt. No. 631 at 13 n.5) Plaintiffs' only response is to say that it would have taken awhile to get the data, so they should not be faulted for moving forward with class certification on the schedule ordered by the Court rather than awaiting that data. (Reply at 7-8.) Once again, that argument concedes either a tactical decision to move forward with the case rather than make the argument they now want to make, or a lack of diligence in waiting more than five months after discovery opened to subpoena the data and a

Plaintiffs also never mentioned the cancellation data in connection with their proposal to move again for class certification in any of the meet and confer discussions or correspondence with Defendants following the Court's denial of the timely motion for class certification.

The Robinhood cancellation data is also a red herring. While Plaintiffs subpoenaed transaction data from FINRA and the other brokers, they did not even ask the other brokers for their internal cancellation data. This alone undermines Plaintiffs' new argument that cancellation data is critical. It also confirms that any effort to use the cancellation data to justify their renewed motion is a subterfuge, as comparing Robinhood cancellation data to market trading volume and analyzing any impact the Robinhood cancellations might purportedly have had on securities prices would be an unreliable, apples to oranges comparison.

Moreover, the total number of shares of the Affected Stocks that were subject to transactions cancelled by Robinhood during the class period is immaterial to any price impact analysis.[3] The total number of such shares was just over 5.6 million shares. In total, the volume of transactions actually executed on Robinhood's platform alone in the Affected Stocks during the putative class period was approximately 242 million shares, meaning the cancelled shares were just over 2 percent of the shares actually transacted in those symbols on Robinhood during the relevant time. And, more importantly, total *market* volume during the putative class period in the Affected Stocks was more than 5.4 *billion* shares, meaning the Robinhood cancellations were less than 1 percent of market trading volume (indeed, less than one-twentieth of 1 percent), which is unsurprising given that overall, transactions in all of the Affected Stocks executed on the Robinhood platform during the week before the putative class period averaged about 4.5% of market volume. (Dkt. No 567-20, Grenadier Rep. ¶¶ 30, 150; 250 ex. 17.) This relatively small number of potential additional trades if these Robinhood customer orders had not been cancelled

---

lack of diligence in raising the issue that this data might be relevant to what they now believe is a key argument for class certification with the Court in the context of a potential modification to the scheduling order. Either eventuality forecloses their motion, as neither provides good cause to modify the scheduling order or permit a renewed motion. (Opp'n at 13 n.5.)

[3] Notably, only some of the transactions in the Affected Stocks that were cancelled by Robinhood during the class period had anything to do with the restrictions at issue in this case. As Robinhood has explained to Plaintiffs, the cancellation data is not stored in a manner that would permit any party to determine the specific reason for any particular cancellation. Thus, some of the cancellations reflected in the produced data are entirely unrelated to any issue in this litigation.

(a small fraction of 1 percent of trades actually executed) could not possibly have moved the market. There is no credible argument that this small number of potential transactions is critical to a price impact argument, and, as noted, without cancellation data from other brokers Plaintiffs cannot even estimate the impact of Robinhood's cancellations relative to the market writ large. This is perhaps why Plaintiffs never raised cancellation data as an issue that is allegedly critical to class certification before their reply brief.

Finally, the only case cited by Plaintiffs to justify a renewed motion for class certification based on the cancellation data is inapposite. In that case, *Pinnock-Lee v. Phelan Hallinan, PLC*, No. 14-60154-CIV, 2015 WL 12532742, at *1 (S.D. Fla. Jan. 29, 2015), *report and recommendation adopted sub nom. Lee v. Phelan Hallinan, PLC*, No. 14-60154-CV, 2015 WL 12533008 (S.D. Fla. Feb. 4, 2015), the Court permitted a second motion for class certification when the first motion had been denied due to a lack of numerosity, in part because the defendants did not contest the renewed motion and had in fact jointly moved with the plaintiffs for preliminary approval of a class settlement agreement. There, the plaintiffs were able to take targeted discovery after the initial denial to address the numerosity issue, and that additional evidence was dispositive on the factual issue that drove the initial denial. Here, as noted, Plaintiffs have failed even to explain how the cancellation data is material to their proposed new argument and, more importantly, have failed to explain why they could not have made their new argument earlier or, with the exercise of any diligence, even once they realized that this data had any relevance to class certification, sought its production on a timeframe that would have allowed for its use on the schedule ordered by the Court or asked the Court for a modification to the original schedule at the appropriate time so as to avoid multiple rounds of class certification expert reports and motions. Again, Plaintiffs either never thought of the issue or made the tactical decision to roll the dice on the arguments they did not make. That approach cannot support a second round of briefing.

*Second*, Plaintiffs argue that the novelty of their new proposed argument justifies their failure to make this argument before. Plaintiffs are, of course, correct that their new proposed argument is novel and has not been adopted by any court to date. But the novelty of Plaintiffs' new proposed argument is irrelevant to the issue currently before the Court: Plaintiffs cite no case suggesting that "novelty" somehow absolves them from their failure to make the argument in the original motion. The argument would have been just as novel if they had made

it on the schedule ordered by the Court, and there has been no change in the case law that changes the likelihood that this proposed departure from existing law will be rejected.

*Tellingly*, Plaintiffs never actually say directly why they failed to make this argument on the schedule ordered by the Court. For example, Plaintiffs never state that they considered making this argument but decided not to because it was novel, although they suggest that possibility by arguing they "should not be faulted" for failing to present the argument when they presented four other arguments that (they claim) were grounded in existing law. (Reply at 1.) To the extent that Plaintiffs *did* make a strategic decision not to pursue their new argument on the schedule proposed by the Court, that provides a reason to *deny* the request, not to *grant* it. *See, e.g.*, *O'Neill v. Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 482 (S.D. Fla. 2006) (Altonaga, J.) (holding that "any arguments the party failed to raise in the earlier motion will be deemed waived"), *dismissed*, No. 05-61931-CIV, 2007 WL 1718931 (S.D. Fla. Jan. 29, 2007); *Washington v. Vogel*, 158 F.R.D. 689, 692-93 (M.D. Fla. 1994) (declining to reconsider denial of class certification, reasoning that decision of plaintiff's counsel to originally seek certification under only Rule 23(b)(2) was a "tactical decision" that did not constitute "changed circumstances" warranting reconsideration).[4] If, on the other hand, Plaintiffs simply did not think of this argument on the schedule ordered by the Court, that lack of diligence also forecloses a second motion. (Dkt. No. 631, Opp'n at 11.)[5]

*Third*, Plaintiffs ignore the prejudice that would result from continued delay and litigation over class certification due to their own tactical decision not to present their new argument on the schedule ordered by the Court or their lack of diligence in identifying the

---

[4] *See also Mogel v. UNUM Life Ins. Co. of Am.*, 677 F. Supp. 2d 362, 365 (D. Mass. 2009) ("[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action.") (quoting *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986)); *Williams v. Baldwin Cnty. Comm'n*, 203 F.R.D. 512, 518 (S.D. Ala. 2001) ("To obtain such an amendment to the scheduling deadlines carefully selected by this Court [to admit additional expert testimony], the Plaintiff bore the burden to show extraordinary circumstances and that he diligently pursued discovery. Plaintiff has failed to meet this burden.").

[5] The fact that the Court denied the timely-filed motion for class certification without prejudice does not change the analysis, as the inquiry as to whether a modification of the scheduling order is appropriate remains subject to the Rule 16 standards and whether a renewed motion is appropriate is subject to the standards set forth above and in Defendants' opposition.

argument previously (whichever was the case, since Plaintiffs still have not explained which it was). Their only argument on this front is the assertion that the prejudice could have been reduced—thereby conceding at least some prejudice—if Defendants agreed to give Plaintiffs yet more time to address class certification by merging their proposed replacement class certification expert report with the upcoming merits reports, and briefing class certification at the same time the parties likely will brief summary judgment. (Reply at 5, 8.) This misses the point; class certification is a threshold issue that the courts have repeatedly held should be decided at an early stage in the case. Fed. R. Civ. P. 23(c)(1) ("As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained."); *see also Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1279 (11th Cir. 2009) ("Rule 23 demands an early consideration of class certification, including its practical implications for case manageability" in order to avoid undue delay in consideration of the class-certification issue that would "introduc[e] needless and avoidable complexity into an already complex case.").

Consistent with this authority, the Court set a schedule that required class certification proceedings at the outset of the case and then expended substantial time in issuing a detailed decision well before fact discovery in this case ended and well before expert merits discovery commenced. Plaintiffs now want to redo the class certification expert work and briefing, and push resolution of that issue out until well after all merits discovery has been completed and summary judgment potentially briefed, all to assert a theory they could have asserted on the schedule originally set by the Court. That fundamentally prejudices all parties and the Court, is directly inconsistent with the case management plan the Court adopted in the scheduling order and ignores the reality that class certification is addressed early in the case—as it was here—for the practical reason that a decision granting or denying class certification often has a significant impact on how, and whether, the case proceeds. *See, e.g.*, *Gustafson v. BAC Home Loans Servicing, LP*, No. SACV 11-915-JLS, 2014 WL 10988335, at *2 (C.D. Cal. Feb. 5, 2014) (denying motion for leave to file renewed motion for class certification where "allowing [the renewed motion] under the present circumstances would promote tactics that waste the limited resources of the Court and unnecessarily protract the litigation"); *Shasta Linen Supply, Inc. v. Applied Underwriters, Inc.*, No. 2:16-cv-158 WBS AC, 2019 WL 3244487, at *2 (E.D. Cal. Apr. 17, 2019) ("Allowing [plaintiffs] leave to bring arguments they could have raised earlier would place an undue burden on defendants and waste the court's limited resources.").

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Defendants' Response to Plaintiffs' Motion for Leave to File a Renewed Motion for Class Certification, Defendants respectfully request that the Court deny Plaintiffs leave to file a renewed motion for class certification and/or any further expert reports in support of class certification.

Dated: January 16, 2024

/s/ Samuel A. Danon

**HUNTON ANDREWS KURTH LLP**
Samuel A. Danon (FBN 892671)
María Castellanos Alvarado (FBN 116545)
Tom K. Schulte (FBN 1025692)
333 S.E. 2 Avenue, Suite 2400
Miami, FL 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460
sdanon@huntonak.com
mcastellanos@huntonak.com
tschulte@huntonak.com

**CRAVATH, SWAINE & MOORE LLP**
Antony L. Ryan
Kevin J. Orsini
Brittany L. Sukiennik
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
aryan@cravath.com
korsini@cravath.com
bsukiennik@cravath.com

*Counsel for Defendants Robinhood Markets, Inc., Robinhood Financial LLC and Robinhood Securities, LLC*