UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-2989-MDL-ALTONAGA/Damian

In re: JANUARY 2021 SHORT SQUEEZE
TRADING LITIGATION

**This Document Relates to: All Actions Involving the Federal Securities Laws**

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS ROBINHOOD MARKETS, INC., ROBINHOOD FINANCIAL LLC AND ROBINHOOD SECURITIES, LLC'S MOTION FOR LEAVE TO FILE A SUR-REPLY TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A RENEWED MOTION FOR CLASS CERTIFICATION**

Plaintiffs respectfully submit the following opposition to Robinhood's motion for leave to file a sur-reply, filed January 16, 2024 ("ECF 638" or "Sur-Reply Motion").

## I. INTRODUCTION

In response to the Court's denial of Plaintiffs' class certification motion without prejudice, Plaintiffs filed a motion to set a briefing schedule for a renewed certification motion that Robinhood did not oppose. ("ECF 624" or "Motion"). Instead, Robinhood would defer arguments opposing Plaintiffs' "right to file a renewed motion for class certification or submit a new expert report in support of that motion," to its brief in opposition. Motion at 2. Thus, other than explaining that Plaintiffs would "rely on documents that Plaintiffs received in discovery subsequent to Plaintiffs' filing of the initial class certification motion," Plaintiffs advanced no substantive legal arguments in the two-page Motion filed on December 13, 2023. ECF 624.

In response to the Court's order requiring Robinhood to raise any objections it has to amending the Scheduling Order to provide for the filing of a renewed class certification motion by January 5, 2024 (ECF 626 at 1), Robinhood filed a 15-page opposition. ("ECF 631" or "Opposition"). Because Plaintiffs' Reply ("ECF 636" or "Reply") only rebutted the arguments made in the Opposition, Robinhood should not be granted leave to file a sur-reply brief.

## II. ARGUMENT

### A. Relevant Legal Standards

A district court need not permit the filing of a sur-reply if the claim that "new" arguments or evidence were first raised on reply is not valid. *See First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 Fed. App'x 777, 788 (11th Cir. 2008). Specifically, "[a] significant difference exists … between new arguments and evidence, on the one hand, and rebuttal arguments and evidence, on the other." *Giglio Sub s.n.c. v. Carnival Corp.*, No. 12-21680-CIV, 2012 WL 4477504 at *2 (S.D. Fla. Sept. 26, 2012), *aff'd.* 523 Fed. App'x. 651, 652 (11th Cir. 2013). In fact, "[n]othing requires a party to submit all evidence known, no matter its relevance to the motion, at the time of filing a motion … [E]vidence constitutes rebuttal where it directly refutes a point raised for the first time in opposition to a motion." *Id.* at *5; *Wright v. GreenSky, Inc.*. No. 20-cv-62441, 2021 WL 2414170, at *4 (S.D. Fla. June 14, 2021) (so holding, citing *Giglio*).

### B. Robinhood Conceded Cancellation Data Is Needed to Prove Price Impact

Citing the Reply at 2-4, Robinhood baldly asserts they are entitled to a sur-reply because "Plaintiffs argue *for the first time* that they now have access to Robinhood's customer cancellation

data, which they claim is critical to their new theory." ECF 638 at 2 (emphasis supplied). Not so. The Motion expressly stated that a renewed class certification motion demonstrating Robinhood's price impact on the Affected Stocks would rely upon "documents that Plaintiffs received in discovery subsequent to Plaintiffs' filing of the initial class certification motion." ECF 624 at 1. (This included both FINRA and Robinhood data.)[1] Notably, Robinhood *did not contest* that newly-obtained evidence would support the motion. *Id.* at 2.

Because Plaintiffs had sought cancellation data from the outset of discovery, Robinhood conceded, in response to a motion to compel, that the evidence it eventually produced on January 5, 2024, was integral to proof of the §9(a)(2) claim.[2] Thus, Plaintiffs had no reason to make any of the arguments set forth in the Reply concerning the inability, for 15 months, to obtain §9(a)(2)

---

[1] The nature and extent of FINRA's *and* Robinhood's data production delays had been discussed in detail in the joint motion to extend the expert discovery deadlines; Robinhood also indicated it complete its production by early November. ECF 619 at 2, 4-5; ECF 619-2 at 2-4. Thus, when the Motion (ECF 624) was filed, as the parties had agreed to a briefing schedule, under *Giglio*, Plaintiffs did not have to call out Robinhood's continued delay in producing cancellation data as a basis for the Motion. The sur-reply's attack on that courtesy is shameless. ECF 638-1 at 2.

[2] On August 10, 2023, Robinhood agreed to produce "transaction-level data for Request Nos. 19, 20 and 22 for the Class Period (which are the transactions *that form the basis for Plaintiffs' Section 9(a)(2) claim*, see MTD Order (ECF 503) at 19-23)…" ECF 593 at 3 (emphasis supplied). On January 16, 2024, only 11 days after Robinhood finally completed production of this data—compiled at great time and expense—it sought to file a sur-reply arguing the figures are "immaterial" to a price impact analysis because they contain "some" cancellations unrelated to its restrictions. ECF 638-1 at 3 & n.3. If that is true, Robinhood should have opposed the motion to compel instead of further agreeing, by letter, to exclude from the data four cancellation types not germane to loss causation and damages. (*See* Ex. A). That Robinhood labored to compile the data even *after* denial of certification belies the claim it is immaterial to price impact.

Further downplaying the effect of its purchase-order cancellations, Robinhood's sur-reply cites total trading volumes over six sessions to support the *ipse dixit*: "There is no credible argument that this small number of potential transactions is critical to a price impact argument." ECF 638-1 at 4-5. Yet Robinhood's two experts eschewed opining that Robinhood's misconduct had no price impact. ECF 585 at 12 & n.6; *see also* ECF 559 at 32 (in the *IPO* case, Fischel relied on research indicating that "a buyer-initiated trade of only 0.16 percent of a company's outstanding stock is associated with a *permanent* price increase of 4.7 percent"). Counsel's bald assertion of no price impact does not replace expert analysis of trading data, which factors in both volume and timing.

All of these efforts to undermine the usefulness of the very data Robinhood worked so hard to produce (so that Robinhood can argue that its production does not support good cause for a renewed class certification motion) are premature attacks on its use in Plaintiffs' expert's price impact report. So is the irrelevant argument that other brokers' "internal cancellation data" was not subpoenaed for the report. ECF 638-1 at 4. (Other brokers named in the MDL were not alleged to have cancelled purchase orders, only Robinhood. *See* ECF 358 at ¶254; ECF 359 at ¶¶69, 230.)

price impact evidence from Robinhood. The argument that Plaintiffs failed to diligently obtain this evidence, not produced until January 5, **2024**, for use in a class certification expert report, due Feb. 16, **2023** (ECF 631 at 12-13 & n.5), is one that Plaintiffs are entitled to rebut.

C.  **The Reply Raised No New Arguments Not Already Addressed by Robinhood**

Robinhood *did not oppose* adding briefing and expert report dates for a renewed class certification motion to the existing schedule. Surely Robinhood recognized that, were the Court to grant the Motion, it would be unfair to the Court and Plaintiffs for Robinhood to argue after the fact, *i.e.,* in its April 15, 2024, opposition brief, that there was no basis for the Court to have added the dates to begin with. Finding it "curious[]" that Robinhood would not timely raise this argument, to avoid an untoward result, the Court told Robinhood to raise such arguments now. ECF 626 at 1. The Reply properly rebuts the 15 pages of arguments belatedly made in opposition to the Motion.

Robinhood argued, in detail, the reasons why Robinhood believes Plaintiffs "could have—and should have—made [the modified fraud-on-the-market] argument on the schedule set forth by the Court. Opposition at 5-6. Specifically, Robinhood claimed that Plaintiffs lacked diligence because they failed to find the law review article cited by the Court, or chose not to argue for the creation of a modified fraud-on-the-market presumption. Opposition at 6-14.[3] Because Plaintiffs would be asserting a novel legal theory, but would use evidence they had already sought for use in a later stage of the litigation, Plaintiffs distinguished the "lack of diligence," "strategic decision," and "schedule-disrupting" cases cited by Robinhood. Reply at 8-10. The claim that this rebuttal argument is "new" because it was purportedly made "without citing any authority" (ECF 638 at 2) is silly: if Robinhood is correct, the Court does not need a sur-reply to deny the Motion.[4]

---

[3] Although a Rule 16(b)(4) motion can be denied when the proposed legal theory to be raised is *not* novel, *see Callahan v. Cnty. of Suffolk*, 602 F. Supp. 3d 399, 413-14 (E.D.N.Y. 2022), because no Court had ever applied a modified fraud-on-the-market presumption in a manipulation case, it is not a failure of diligence to have not argued it last spring or to have not sought an indefinite extension of the certification deadlines until after Plaintiffs obtained Robinhood's and third-party evidence pertaining to price impact (which is not required of plaintiffs under *Halliburton I and II*). *Cf. Oy Ajat, Ltd. v. Vatech Am., Inc.,* No. 10-4875, 2012 WL 1067900, at *11, 22 (D.N.J. Mar. 29, 2012) (patent infringement defendant successfully argued that "[d]iligence...is not a draconian requirement of perfection and clairvoyance" and "does not require that parties perfectly anticipate novel arguments;" invalidity contentions could be supplemented after deadline where defendant was "sufficiently diligent" and would not cause "significant" delay or prejudice, even though new discovery and/or *Markman* re-briefing would result in additional legal expenses).

[4] Plaintiffs' 2-page Motion cited no cases and a 10-page limit on reply briefs precluded a refutation of everything argued by Robinhood. Its 15-page Opposition is longer than the Motion and Reply

### III.     CONCLUSION

For the reasons set forth above, Robinhood's motion to file a sur-reply should be denied.

Dated: January 23, 2024

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, FBN# 0182877
Robin Bronzaft Howald
By: /s/Laurence M. Rosen
Laurence M. Rosen, Esq.
275 Madison Avenue 40th Floor
New York, New York 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com

*Counsel for Lead Plaintiff Blue Laine-Beveridge and Named Plaintiffs Abraham Huacuja, Ava Bernard, Brendan Clarke, Brian Harbison, Cecilia Rivas, Doi Nguyen, Joseph Gurney, Marcel Poirier, Sandy Ng, Santiago Gil Bohórquez, and Thomas Cash*

---

*combined*, yet the nonmoving party seeks to file a 7-page sur-reply which argues that purportedly unrebutted arguments provide a basis to deny the Motion. ECF 638 at 1. Again, it is silly for Robinhood to argue the Court needs a sur-reply to point out what may be missing from the Reply.

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 23, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

<u>/s/Laurence M. Rosen</u>