UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-2989-MDL-ALTONAGA/REID

In re: JANUARY 2021 SHORT SQUEEZE
TRADING LITIGATION

This Document Relates to the Federal Securities Tranche

**PLAINTIFFS' REPLY IN SUPPORT OF THE MOTION TO EXTEND FACT DISCOVERY**

I.       INTRODUCTION

Robinhood's memorandum in opposition to the instant motion (ECF 654) fails to address the inequity posed in the Court's March 7 Order (ECF 653): If Robinhood is permitted to conduct 13 third-party depositions between March 15 and April 15 – all of which could have been taken at any time over the past 18 months -- why should Plaintiffs not be permitted to complete their discovery over the same month? Robinhood cannot show it will be prejudiced by the extension.

Instead, Robinhood asks the Court to ignore critical facts, most notably its glaring failure to "wind down" its document production in early November as represented to Plaintiffs and the Court, and cites a series of inapposite cases, to give the Court the impression that Plaintiffs have taken a lackadaisical approach to discovery. Not so. For the past 18 months, Plaintiffs have assiduously endeavored to obtain discovery, eschewing motion practice in favor of compromise,[1] and ultimately relying upon Robinhood's certification (on January 19) that its document production had finally been completed before commencing depositions. Having blown well past its stated November and January production completion dates, all the way to February 29, Robinhood objects to responding to discovery due a few days after March 15, while it continues to take depositions for up to another month. Fairness requires one cut-off date for both sides.

II.       ARGUMENT

    A.     **Even Robinhood's Selective Recitation of Facts Supports the Requested Relief**

In late November, at a time Plaintiff understood Robinhood's document production to have concluded, Robinhood indicated that it wished to take more than a dozen depositions, including the NSCC/DTCC, other brokers, and a number of the issuers. ECF 654 at 3 n.1. Because these depositions could have been taken at any time after discovery commenced in the fall of 2022 – in fact, Robinhood took five non-party depositions last spring – while Plaintiffs had to wait until document production was complete before commencing depositions of Robinhood employees,

---

[1] Although Plaintiff brought only a single, successful motion to compel last August (*see* ECF 586 & 587), Robinhood's discovery obstruction has been persistent. At a November 28, 2022, meet-and-confer, counsel represented that Robinhood did not have an organization chart; it was ultimately produced and identified as Robinhood's organization chart at a deposition. Even though re-produced documents from prior productions and investigations were supposed to retain their original Bates numbers (ECF 441 at 15), Robinhood removed them and did not produce a requested overlay until many months later, deliberately interfering with Plaintiffs' ability to identify pertinent documents referenced in regulatory correspondence.

Plaintiffs objected to Robinhood's request to cram 29 depositions into the period between late January and March 15. *But that is exactly what Robinhood wanted*. In fact, even though Magistrate Judge Damian granted Robinhood permission to take the depositions of **seven** brokers "identified in the Motion," *see* ECF 644 at 2, ¶3, thus far, its counsel have noticed the depositions of **thirteen** different entities.[2] Moreover, *one entity was noticed for the first time today and served with a subpoena duces tecum for document production on March 28*. This overreach goes well beyond the reasoning for taking depositions over the course of the next month.

To the extent the Court provided the extra month "*sua sponte*" (ECF 654 at 3), this was to prevent Robinhood from obstructing Plaintiffs' ability to prosecute the action by giving priority to party depositions. Robinhood faults Plaintiffs for not requesting its own extension of time at that point, *id.* at 3, but at the time the motion was argued in late January, Robinhood had certified that document production was complete. Had Plaintiffs known another 27,778 pages were to follow – including 23,405 just 15 days before the discovery cut-off, after 10 depositions had been taken – a commensurate extension may well have been sought. Plaintiffs should not be punished for not having a crystal ball to prognosticate Robinhood's four belated productions.

Robinhood next strains to minimize the importance of the documents and metadata produced on February 29. First, it asks the Court to employ some sort of novel *de minimis* rule, pretending that because the 23,405 pages produced amount to only 3% of total pages produced, that alone is a basis to deny Plaintiffs 30 more days of discovery. Knowing the Court would reject

---

[2] On October 4, 2023, Robinhood served five deposition and document subpoenas – on Apex, Axos, Interactive Brokers, Trade Station and MooMoo. After the ruling on its Motion allowed a total of seven broker depositions – the first four above in addition to ETrade, TD/Charles Schwab, and Merrill Edge – on February 8, Robinhood served document and deposition subpoenas on BOFA Securities Inc., Charles Schwab, ETrade Clearing, ETrade Financial, ETrade Securities, Morgan Stanley Domestic Holdings, TD Ameritrade Clearing, and TD Ameritrade, Inc.  On February 22, Robinhood noticed the depositions of the seven entities served on February 8, to be taken on March 19-21 (one of those dates was also scheduled for the Axos deposition). Although counsel indicated that there may be fewer total depositions if related entities designate a single deponent, nothing has been finalized. On March 14, Bank of America Corporation (NC) was subpoenaed for the first time for both a deposition and document production on March 28. How can it be true that Plaintiffs' party discovery served on February 15 is "inexcusable", while Defendants are free to issue novel document requests the day before the discovery cut-off, from a brand-new entity? Robinhood has had 18 months to ascertain the correct entities to serve for documents and testimony and still has not narrowed its broker depositions to the seven requested and allotted by the Court.

2

its quantity argument, Robinhood moves on to content, adding that 30% are duplicates of documents earlier produced and, as to the new documents, "there is strong reason to believe that those documents are largely irrelevant." ECF 654 at 3.[3] If Robinhood's failure to produce hyperlinked documents was inadvertent, why does Robinhood insist upon saddling Plaintiffs with the fallout from its error by objecting to Plaintiffs having a few more weeks to review the untimely-produced materials to determine whether depositions *may* need to be reopened?

Moreover, Robinhood's complete abrogation of the parties' extensively-negotiated stipulation concerning hyperlinked documents and withholding of critical metadata until 15 days before the discovery cut-off constitutes discovery abuse. When Robinhood's vendor indicated that hyperlinked documents – documents that are linked via an embedded URL to an email, Slack message, or other communication, rather than a physical attachment (such as a Word document) – could not be produced in all versions or even the exact iteration existing at the time of the linking communication, because they represented that doing so would be too burdensome, Plaintiffs agreed that hyperlinked documents could be produced in the form in which they existed in Robinhood's Google workspace at the time of collection (which the parties' vendors agreed could accomplished by an automated process).

On October 4, 2023, Robinhood served a spreadsheet—containing just shy of 550 rows—associating each hyperlinked document with the document in which it was linked. At that time, the latest Bates-stamped page was 187,277. Robinhood subsequently produced another 570,000 pages of documents—over the course of more than five months—without providing this associating information until February 29, 2024—15 days before the close of discovery. Given that various Slack chats and email chains could be many pages long, and often contain several Slack and/or Google hyperlinks, unless and until this critical cross-reference was provided, it was impracticable for Plaintiffs to determine which documents corresponded to which hyperlinks. The final set of document demands provided a list of URLs for fewer than 100 documents – the most prominent missing linked documents – and asked whether Robinhood could either produce the document or tell Plaintiffs the Bates number within the production where it could be found. ECF 652-1 at 14-23. This would have been entirely unnecessary, had Robinhood timely produced the information

---

[3] Presumably, Robinhood reviewed the documents prior to production. Why the equivocation?

Plaintiffs were supposed to obtain linking these documents with their referencing hyperlinks, but Robinhood sandbagged this crucial information until 15 days before the close of discovery.

When Robinhood's vendor realized that it had been going about producing hyperlinked documents in *reverse order* to what the parties agreed – producing only those hyperlinked documents that were independently responsive to search terms, then attempting to "back into" the linking parent documents after the fact – Robinhood wrote Plaintiffs on January 28 (minutes before midnight on the day of the first deposition), explaining, *inter alia*:

> In the course of finalizing Robinhood's document productions we identified that there were certain documents hyperlinked from produced documents that were inadvertently not produced because they did not hit on the parties' agreed-upon search terms or were nonresponsive to Plaintiffs' Requests for Production. Because, however, these hyperlinked documents should be produced pursuant to the parties' protocol for the production of hyperlinked documents, as set forth in Robinhood's June 30, 2023 letter, we are working to produce the balance of these hyperlinked documents as soon as possible. Robinhood will also provide additional metadata, pursuant to that protocol, that will associate produced documents with the documents to which they hyperlink.

As explained in the moving papers, this production and another production of documents on February 10 (neither of which contained only inadvertently-omitted, hyperlinked documents) added approximately 3,250 new pages with a promised final installment of the erroneously-omitted hyperlinked documents along with the metadata linking them to their reference documents as soon as practicable. On February 29, just two weeks before the end of fact discovery, 23,405 pages were produced (a tiny fraction of which, about 10 documents, were items removed from the privilege list) along with the metadata that finally linked the hyperlinked documents contained in dozens of productions to their reference documents. Indeed, the overlay of hyperlinked documents to reference documents jumped from 550 document pairs to more than 3,100.

Robinhood's efforts to downplay the damage include claiming the documents could not be relevant if they were dated (presumably, through notoriously unreliable metadata fields) outside the time period, or did not themselves hit on any of the search terms. Search terms may only hit upon the linking document (because the linking document, but not the linked document) contains the name of an identified document custodian, or the text of the linking document (but not the linked document) contains search terms, and the linked document provides context necessary to ascertain that the linked document is responsive). An example would be an email from one identified custodian to another, containing a link to a spreadsheet. The spreadsheet may contain

4

nothing but unlabeled rows of data, or data labeled only in technical shorthand, and therefore not be identified independently through search terms, despite being highly relevant and responsive. The linking document provides the context necessary to establish the relevance and responsiveness of the spreadsheet, *e.g.*, by connecting it to specific custodians, showing that and when certain person(s) interacted with it, and explaining the nature, source, and importance of the data, none of which may be apparent from the face of the spreadsheet analyzed in isolation). Robinhood only produced the information necessary to associate the hyperlinked documents back to their linking documents on February 29. For Plaintiffs to attempt to match each of these 25,000 pages (approximately 2,550 documents) to their parent documents in time to use them at depositions between March 5 and 14, would be nigh impossible. Moreover, some of the documents are highly-relevant to specific information that Plaintiffs have assiduously attempted to obtain for more than a year, *e.g.,* RHMDL00747432. This document, produced on February 29 (with another iteration contained in the January 28 production) is in a family with documents produced in November, including being embedded in a Slack chat in which someone whose deposition was taken prior to the February 29 production was quite an active participant.

For this reason, Robinhood's citation to *Mathis v. Wachovia*, No. 5:05-cv-163, 2006 WL 3747300 (N.D. Fla. Dec. 18, 2006), an alleged race discrimination and retaliation case brought by an employee disciplined for cashing a fraudulent instrument is far from the mark. Although the plaintiff did complete a number of depositions before obtaining an investigation file concerning the incident, the plaintiff took a total of 18 depositions, served four sets of document demands, two sets of interrogatories, and extensively questioned witnesses "ad nauseum" about the investigation, its findings and recommendations and the reasons she was disciplined. Not only did she fail to specify what new information she could obtain with further discovery, she also failed to seek additional depositions during the last three weeks of discovery, before seeking an extension on the very last day. *Id.* at *5. Also unlike the instant case, *Mathis* was on the eve of pre-trial and trial and those dates would be jeopardized by reopening discovery after it had closed. *Id.* at *6.

      **B.**    **Robinhood's Rule 16(b)(4) Argument Ignores The Express Language of the Scheduling Orders**

Robinhood claims that Plaintiffs "fail to provide any argument or authority" to support the extension of the fact discovery cut-off without good cause. As argued in the moving papers, the Scheduling Orders themselves provide such authority: "The parties by agreement, and/or

5

Magistrate Judge Damian, may extend this deadline, so long as such extension does not impact any of the other deadlines contained in this Scheduling Order." ECF 517 at 2 n.2; ECF 621 at 3 n.2.[4] Robinhood completely ignores this language.

Moreover, the cases Robinhood cites bear no resemblance to this one.[5] In *Myhre v. TLFO, LLC*, No. 14-81036-CIV, 2015 WL 1722866, at *4 (S.D. Fla. Apr. 15, 2015), a subpoena served four days before the close of discovery was partially quashed, with document production permitted but a forensic examination of the debtor's computers (purportedly necessitated by "untruthful responses" to interrogatories), denied as a fishing expedition. Moreover, the discovery deadline, which had already been once extended at the creditor's request, *id.*, could not be extended again because of its proximity to the liquidation plan confirmation date. *Id.* at *1. Similarly, in *Fisher v. SP One, Ltd.*, 559 Fed. App'x 873, 878 (11th Cir. 2014), a tenant suing his landlord moved for an extension of the discovery cut-off on the last day of discovery, which would have necessitated extending the summary judgment and trial dates. Here, none of the other dates in the schedule would be affected by the brief extension requested by Plaintiffs to April 15.

Although Robinhood further argues that an even higher bar must be met to establish "good cause" when there has already been a prior amendment to the scheduling order (ECF 654 at 3), this argument fails because the fact discovery deadline has never before been extended – indeed,

---

[4] Plaintiffs anticipated the motion would be heard by then-Magistrate Judge Damian, and thus complied with then-Magistrate Judge Damian's discovery motion rules.

[5] Plaintiffs do not concede that Rule 16(b)(4)'s good cause standard must be satisfied here. That said, Robinhood's last-minute production of critical metadata and more than 52,500 total pages on multiple occasions over the course of 3.5 months after it represented its production was supposed to have wound down, more than half of which were produced after Robinhood certified completion pursuant to Local Rule 26.1(e)(7), constitutes good cause. In *Johnson v. Charter Comm'ns*, No. 5:20-cv-2056, 2022 WL 4285726, at *2 (N.D. Ala. Sept. 14, 2022), the defendant unsuccessfully opposed plaintiffs' motion to extend the discovery cut-off, a motion necessitated by a last-minute production of documents *and* thereafter produced documents relating to an internal investigation with only 14 days remaining in the 90-day extension period, which, in turn, established good cause to amend the pleading. As in *Johnson*, the overall question here is Plaintiffs' diligence. The parties spent many months negotiating a hyperlinked-documents protocol not included in the ESI stipulations in the other tranches of this MDL. *Compare* ECF 341 at 21-22 (no discussion of linked documents), *with* ECF 441 at 22 (agreeing to meet-and-confer at outset of discovery, once PSLRA stay is lifted, with respect to linked documents). Robinhood was supposed to produce hyperlinked documents in conjunction with their referenced documents as a family; it failed to do so. Moreover, without either critical hyperlinked documents or the metadata needed to associate them with their parents, Plaintiffs' deposition efforts were unfairly hamstrung.

it was the only date retained from the initial order (because of Robinhood's representation that it would complete document production in November). *Compare* ECF 517 *with* ECF 621. Thus, *Esys Latin Am., Inc. v. Intel Corp.*, 290 F.R.D. 563, 564 (S.D. Fla. 2013), where the Court declined to extend the non-expert discovery deadline *for a third time*, is inapposite. So is *Thurmond v. Bayer Healthcare, Pharms, Inc.*, 649 Fed. App'x 1003, 1005 (11th Cir. 2016), where the trial court had not only already granted a 60-day extension of the discovery cut-off in an individual product liability action concerning an IUD, but the plaintiff had not even served her first set of document demands until five weeks before the initial fact discovery deadline.

### C. The Discovery at Issue Is Reasonable Given the Scope of the Action

Robinhood mischaracterizes the discovery at issue as "voluminous" and "highly burdensome." ECF 654 at 2. The three interrogatories, attached to the moving papers, ask for the identities of the persons who reviewed and approved three short public statements (a blog post and several tweets) issued by Robinhood on January 28, 2021. As these statements are central to the case, Robinhood's defense necessarily encompasses what it will portray as nonculpable explanations of each statement, including but not limited to the information sought by Plaintiffs – who reviewed and approved the statements for publication.

Similarly, Plaintiffs served requests for admission, in an abundance of caution, to ensure that a fraction of the documents and data compilations produced by Robinhood *from its own files* are admissible at trial. Although Plaintiffs identified each of these documents by Bates range, for the sake of completeness (and so that Robinhood can ensure that Plaintiffs are not asking Robinhood to vouch for third-party documents), if Robinhood entered into a blanket stipulation that Robinhood-created documents can be used at trial, this would obviate the need to respond to the RFAs. *Gerstenfield v. Zale Delaware, Inc.*, No. 6:05-cv-1719, 2006 WL 2375055, at *2 (M.D. Fla. 2006), cited by Robinhood (ECF 654 at 7 n.6), holds that documents produced by a party in discovery are self-authenticating; *see also RGF Env. Grp., Inc. v. Activ Tek Env. Corp.*, No. 08-CIV-80682, 2009 WL 10666940, at *7 (S.D. Fla. Jul. 17, 2009) (plaintiff "does not need to verify the emails and Activ Tek evidence as Defendants produced them during discovery"). Robinhood complains that only 1% of the documents at issue were produced this year. So what? This was a rolling production with 63 sets of documents produced (58 productions and five amended productions) over the course of approximately 18 months. Robinhood could not seriously expect Plaintiffs to serve RFAs with respect to each production – nearly one every week – before seeing

7

the entire production and narrowing down the documents Plaintiffs were most likely to use at trial.

Finally, as explained in detail in the moving papers, the document demands primarily request documents that should already have been produced. These targeted "clean-up" requests are relatively easy to locate and produce.

Indeed, plaintiffs in many of the individual actions cited by Robinhood have served more discovery than Plaintiffs in this blockbuster class action. *See e.g., Mathis, supra* (18 depositions and multiple sets of written discovery)*; Grimsley v. Focus Fin. Servs.*, No. 15-81263, 2016 WL 4920992, at *1 (S.D. Fla. Mar. 25, 2016) (court would not compel defendant to respond to interrogatories served two weeks before close of discovery where plaintiff in a Fair Debt Collection Practices Act case already served seven sets of interrogatories, five sets of document demands and three sets of RFAs).

**D. Equity Favors Extending Discovery for Plaintiffs to Obtain Responses to Discovery Requests Served One Day Late**

Robinhood snidely and incorrectly claims that Plaintiffs illogically blamed leap year for their failure to serve closing discovery on February 14 instead of February 15. ECF 654 at 6-7. That is not what was said. More importantly, the four-pronged inquiry (1) danger of prejudice to the nonmovant, (2) the length of the delay and its impact on proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith, *see Earthcam, Inc. v. OxBlue Corp.*, 703 Fed. App'x. 803, 813 (11th Cir. 2013), looks beyond the error made to determine whether, in certain circumstances, equity dictates that an innocent a calendaring mistake is excusable.

Plaintiffs' counsel have litigated this case with passion and skill for more than two years since being appointed Lead Counsel in October 2021, and have prevailed, at least in part, on every substantive motion in the action. With an extremely tight discovery schedule necessitated by Robinhood's unexplained document production delays, including preparing on February 14 not only for two depositions the next day but also readying papers for a renewed class certification motion – to be filed perhaps as early as February 15, the date initially proposed in the unopposed motion filed in December – Plaintiffs made a one-day error that while within counsel's control was not made in bad faith. Robinhood already has until April 15 to complete depositions and Plaintiffs do not seek to alter the other dates on the schedule. While responding to fact discovery may be inconvenient or tedious, courts extend such deadlines quite often, which results in both sides having to respond to discovery they could have otherwise avoided. That is not prejudice.

8

In *Earthcam,* for example, the parties had more than two full years of discovery and there had been a number of prior discovery extensions. 703 Fed. App'x at 813. Moreover, the movant had the information later determined to be defective for five months before moving to reopen discovery. Here, there has been no extension of the fact discovery cut-off and discovery has proceeded apace for 18 months. Nor is there any suggestion that Plaintiffs' counsel either "refused to read and comprehend the plain language of the federal rules." *Boraks v. Daniels*, No. 10-23095 2011 WL 4566218, at *2 (S.D. Fla. Sept. 29, 2011). Unlike counsel in *Boraks*, who failed to properly file two motions for entry of default judgment and belatedly filed a third, also defective, motion after the deadline set by the Court, *id.* at *1, counsel's mistake was "inadvertent." *Id.* at 2.

### III. CONCLUSION

For all of the reasons stated above and in Plaintiffs' moving papers, Plaintiffs respectfully request that the Court extend their discovery cut-off to April 15, the same deadline Robinhood currently enjoys with respect to third-party discovery.

Dated: March 14, 2024

Respectfully submitted,
THE ROSEN LAW FIRM, P.A.

By: /s/Laurence M. Rosen
Laurence M. Rosen FBN# 0182877
Phillip Kim
Robin Bronzaft Howald
Jonathan Stern
Brent LaPointe
Michael A. Cohen
275 Madison Avenue  40th Floor
New York, New York  10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com

*Counsel for Lead Plaintiff and Named Plaintiffs*

9

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 14, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I further certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by the Court's CM/ECF system.

Dated: March 14, 2024                                                              /s/  Laurence Rosen  
                                                                                    Laurence Rosen (FBN 0182877)