UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-2989-MDL-ALTONAGA/Reid

In re: JANUARY 2021 SHORT SQUEEZE
TRADING LITIGATION

**This Document Relates to: All Actions Involving the Federal Securities Laws**

**PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER
DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. STANDARD OF REVIEW AND BASIS FOR RECONSIDERATION .......................... 3

III. ARGUMENT ........................................................................................................................ 4

    A. The Court Earlier Held That Robinhood's Misstatements and Omissions Constituted Circumstantial Evidence of Scienter Supporting Plaintiffs' Conduct-Based Claims ........................................................................................................................ 4

    B. The Court Held That Affiliated Ute Only Applies in Omissions Cases Where Defendants With a Duty to Disclose Stand Silent .................................................. 5

    C. Macquarie's Gutting of the Premise Underlying the "Huddleston Rule" in Rule 10b-5(b) Cases Requires The Court to Reexamine Its Bases For Denying the Application of Affiliated Ute Here ........................................................................ 6

    D. Macquarie Requires the Court to Revisit Its §9(a)(2) Holding .............................. 9

IV. CONCLUSION ................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A Aventura Chiropractic Ctr., Inc. v. Med Waste Mgmt. LLC,*
 No. 12-21695-CIV, 2013 WL 3463489 (S.D. Fla. July 3, 2013) ................................... 3

*Affiliated Ute Citizens of Utah v. United States,*
 406 U.S. 128 (1972) ............................................................................................ passim

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
 493 F.3d 87 (2d Cir. 2007) ................................................................................... 4, 5

*Cavalier Carpets, Inc. v. Caylor,*
 746 F.2d 749 (11th Cir. 1984) ............................................................................ 5, 6, 9

*Comcast Corp. v. Behrend,*
 569 U.S. 27 (2013) ..................................................................................................... 2

*Culpepper v. Irwin Mortg. Corp.,*
 491 F.3d 1260 (11th Cir. 2007) ................................................................................. 3

*Desai v. Deutsche Bank Sec. Ltd.,*
 573 F.3d 931 (9th Cir. 2009) .................................................................................... 5

*Gruber v. Gilbertson,*
 No. 16-cv-9727, 2019 WL 4439415 (S.D.N.Y Sept. 17, 2019) ................................... 7

*Halliburton Co. v. Erica P. John Fund, Inc.,*
 573 U.S. 258 (2014) .................................................................................................. 2

*Huddleston v. Herman & MacLean,*
 640 F. 2d 534 (5th Cir. 1981) .............................................................................. 2, 6, 9

*In re Barclays Liquidity Cross & High Frequency Trading Litig.,*
 390 F. Supp. 3d 432 (S.D.N.Y. 2019) ..................................................................... 8, 9

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.,*
 144 S. Ct. 885 (Apr. 12, 2024) ............................................................................ passim

*Ocwen Loan Servicing, LLC v. Belcher,*
 No. 18-90011, 2018 WL 3198552 (11th Cir. June 29, 2018) ...................................... 3

*Set Capital LLC v. Credit Suisse Grp. AG,*
 996 F.3d 64 (2d Cir. 2021) ..................................................................................... 5, 6

*Shin v. Cobb Cnty. Bd. of Educ.*,
  248 F.3d 1061 (11th Cir. 2001)......................................................................................... 3

*Spicer v. Chicago Bd. Options Exch., Inc.*, No. 88 C,
  2139, 1990 WL 16983 (N.D. Ill. Jan. 31, 1990) ................................................................ 9

*Underwood v. Lampert*,
  No. 02-21154-CIV, 2005 WL 8155004 (S.D. Fla. Nov. 1, 2005) ..................................... 3

*Waggoner v. Barclays PLC*,
  875 F.3d 79 (2d Cir. 2017) ................................................................................................. 7

**<u>Statutes</u>**

15 U.S.C. §78i(a)(2) ............................................................................................................. 4, 9

15 U.S.C. §78i(a)(4) ................................................................................................................. 4

15 U.S.C. §78j(b) ..................................................................................................................... 4

**<u>Regulations</u>**

17 C.F.R. § 229.303(b)(2)(ii) ................................................................................................... 6

17 C.F.R. § 240.10b-5 ....................................................................................................... *passim*

**<u>Rules</u>**

Fed. R. Civ. P. 23(a)(1)-(4) ..................................................................................................... 3

Fed. R. Civ. P. 23(b) ................................................................................................................. 3

Fed. R. Civ. P. 23(b)(3) ............................................................................................................ 3

Fed. R. Civ. P. 23(c) ................................................................................................................. 3

Fed. R. Civ. P. 23(c)(1)(C) ....................................................................................................... 3

iii

# MOTION

Lead Plaintiff Blue Laine-Beveridge and named plaintiffs Abraham Huacuja, Ava Bernard, Brendan Clarke, Brian Harbison, Cecilia Rivas, Doi Nguyen, Joseph Gurney, Marcel Poirier, Sandy Ng, Santiago Gil Bohórquez, and Thomas Cash ("Plaintiffs") respectfully move this Court to: (1) reconsider its November 13, 2023, Order denying class certification, based upon a change of law; (2) certify the following class:

> All persons or entities who held common stock in AMC Entertainment Holdings, Inc. ("AMC"), Bed Bath & Beyond Inc. ("BBBY"), BlackBerry Ltd. ("BB"), Express Inc. ("EXPR"), GameStop Corp. ("GME"), Koss Corp. ("KOSS"), Tootsie Roll Industries Inc. ("TR"), or American Depositary Shares of foreign-issuers Nokia Corp. ("NOK") and trivago N.V. ("TRVG") (collectively "the Affected Stocks") as of the close of trading on January 27, 2021, and sold any such shares between January 28, 2021, and February 4, 2021 ("Class Period"). Excluded from the class are those who suffered no damages, Defendants,[1] the officers and directors of Defendants, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants or any excluded persons have or had a controlling interest;

(3) appoint Abraham Huacuja, Ava Bernard, Blue Laine-Beveridge, Brendan Clarke, Brian Harbison, Cecilia Rivas, Doi Nguyen, Joseph Gurney, Marcel Poirier, Sandy Ng, Santiago Gil Bohórquez, and Thomas Cash as Class Representatives; and (4) appoint The Rosen Law Firm, P.A., as Counsel.

## I.   INTRODUCTION

Plaintiffs seek reconsideration of the Court's November 13, 2023, Order denying class certification (ECF 622) based upon the Supreme Court's recent decision in *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 144 S. Ct. 885 (Apr. 12, 2024). *Macquarie* held that a defendant who stands silent in the face of a duty to disclose cannot be held liable because "Rule 10b-5(b) does not proscribe pure omissions." *Id.* at 891. Because, in denying class certification, this Court believed it was bound by earlier precedent restricting the *Affiliated Ute*[2] presumption to such cases, the Court refused to afford Plaintiffs a presumption of class-wide reliance. ECF 622 at 45-48. Decades of cases

---

[1] Defendants are Robinhood Markets, Inc. and its two wholly-owned subsidiaries, Robinhood Financial, LLC and Robinhood Securities, LLC (also referred to collectively as "Robinhood").

[2] *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).

1

interpreting *Affiliated Ute* as applying only to cases where defendants are "standing mute," are no longer good law because silence, alone, is not actionable under Rule 10b5-(b). Thus, *Affiliated Ute* must apply to *something else*. It does: this case.

The Supreme Court characterized *Affiliated Ute*, a case that involved *both* misrepresentations as to share value and an undisclosed scheme to resell tribe members' shares at higher prices, as one "involving *primarily* a failure to disclose." *Affiliated Ute*, 406 U.S. at 152-53 (emphasis added); *see also Huddleston v. Herman & MacLean*, 640 F. 2d 534, 548 (5th Cir. 1981), *rev'd on other grounds sub nom Herman & McLean v. Huddleston*, 459 U.S. 375 (1983) (explaining that *Affiliated Ute* applies to Rule 10b-5(a)&(c) cases not to Rule 10b-5(b) cases). Indeed, had Robinhood "stood mute" while its restrictions sent false signals regarding its customers' demand to the market, it would be held liable for market manipulation. ECF 503 at 23, 51 ("federal securities laws do not permit restrictions if they are 'accompanied by manipulative intent'") (citing cases). Just as affirmative misrepresentations of share value did not prevent the Supreme Court in *Affiliated Ute* from finding reliance where defendants' broader scheme was undisclosed, Robinhood's half-truths cannot convert market activity claims into misstatement claims.

Plaintiffs respectfully submit that in light of *Macquarie*'s holding that there are no omissions claims under Rule 10b-5(b), the Court reconsider its earlier decision that *Affiliated Ute* does not apply to "*this* market manipulation claim because Plaintiffs' claims are not based primarily on omissions." ECF 622 at 45 (emphasis in original). Once Plaintiffs are afforded a presumption of class-wide reliance, Robinhood cannot rebut the presumption because its experts did not opine that Robinhood's actions had *no* impact upon the prices of the Affected Stocks, as required by *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 284 (2014). *See* ECF 585 at 12 & n.6.

The two class certification requirements the Court's order did not address are satisfied. First, Plaintiffs' damages model is tailored to their theory of liability, as required by *Comcast Corp. v. Behrend*, 569 U.S. 27, 36-37 (2013), because it isolates price declines caused by the removal of Robinhood's customers' demand from the market.[3] Second,

---

[3] *See* ECF 559 at 30-33; ECF 585 at 25-29. Although *Comcast* does not require a specific damages model be presented for class certification, Plaintiffs provided Robinhood with a merits expert report detailing a per share damages model that isolates price declines

2

Robinhood did not contest Rule 23(b)'s "superiority" requirement in this MDL case. *See* ECF 568 at 2. Plaintiffs respectfully submit that having already satisfied the elements of Rule 23(a)(1)-(4), *see* ECF 622 at 17-36, the Court should grant class certification.

## II.   STANDARD OF REVIEW AND BASIS FOR RECONSIDERATION

Rule 23(c)(1)(C) provides: "An order that grants or denies class certification may be altered or amended before final judgment." The Eleventh Circuit endorses reconsideration of certification decisions under this rule. *See Ocwen Loan Servicing, LLC v. Belcher*, No. 18-90011, 2018 WL 3198552, at *5 (11th Cir. June 29, 2018) (denying Rule 23(f) petition, noting "Ocwen can still raise specific concerns as they come up, and the district court can refine the class as it deems appropriate through the course of litigation"); *Culpepper v. Irwin Mortg. Corp.*, 491 F.3d 1260, 1276 (11th Cir. 2007) (not an abuse of discretion to grant motion to decertify class pursuant to Rule 23(c)(1)); *Shin v. Cobb Cnty. Bd. of Educ.*, 248 F.3d 1061, 1064 (11th Cir. 2001) ("Because the district court retains the ability, and perhaps even a duty, to alter or amend a certification decision, a motion for reconsideration of a class certification order is a better way to correct any errors in the certification order or to recognize the importance of new facts.")

As this Court has explained: "'The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence.' 'Motions for reconsideration are appropriate where, for example, the Court has patently misunderstood a party, where there is an intervening change in controlling law or the facts of a case, or where there is manifest injustice.'" *Underwood v. Lampert*, No. 02-21154-CIV, 2005 WL 8155004, at *1 (S.D. Fla. Nov. 1, 2005) (citations omitted). For example, in *A Aventura Chiropractic Ctr., Inc. v. Med Waste Mgmt. LLC*, No. 12-21695-CIV, 2013 WL 3463489, at *2 (S.D. Fla. July 3, 2013) this Court granted both a motion for reconsideration and class certification after an Eighth Circuit decision clarified interpretation of a TCPA regulation, eliminating hurdles to Rule 23(b)(3) predominance,

---

caused solely by the restrictions' removal of Robinhood's customer demand for the Affected Stocks from the market and a method by which each class member can easily calculate damages for sales of each stock on each day of the Class Period. Declaration of Laurence M. Rosen at ¶4. The report also provides an alternative per share damages model using event studies that disaggregates price declines unrelated to Robinhood's restrictions. *Id.* at ¶5.

and plaintiffs presented new evidence demonstrating violations thereof.

Here, reconsideration is warranted because the Supreme Court's decision in *Macquarie* rejected the very premise upon which the Court's *Affiliated Ute* holding rests.

## III. ARGUMENT

### A. The Court Earlier Held That Robinhood's Misstatements and Omissions Constituted Circumstantial Evidence of Scienter Supporting Plaintiffs' Conduct-Based Claims

Plaintiffs initially asserted three market manipulation claims arising from Robinhood's alleged wrongdoing. ECF 446. The two claims that survived a motion to dismiss, the §9(a)(2) and Rule 10b-5(a)&(c) claims, are based upon deceptive *conduct*. *See* Motion to Dismiss Order (ECF 503) at 16 and 38 (setting forth the elements of the respective claims). The Court contrasted Plaintiffs' Rule 10b-5(a)&(c) claim to a "more quotidian misrepresentation claim [which] requires Plaintiffs to allege … a material misrepresentation or omission." *Id.* at 38. In fact, the Court described the dismissed §9(a)(4) claim as alleging that "Robinhood misstated or omitted material facts to mislead investors into thinking that it did not have a liquidity problem." ECF 503 at 12.

In its analysis of the §9(a)(4) claim, the Court took pains to explain that while Robinhood's alleged misstatements and omissions were not independently actionable, they provided "circumstantial evidence of Robinhood's deception and motivation," elements of the two remaining claims. ECF 503 at 34-35 (referencing the Court's scienter analysis at ECF 503 at 23-32); *see also id.* at 36 ("Sure, Robinhood allegedly acted dishonestly, and that dishonesty serves as circumstantial evidence that its *restrictions* were manipulative.") (emphasis in original); and 47-48 ("Regurgitating 'market volatility' *as the basis for restrictions*, while simultaneously denying any concerns about liquidity despite internal and subsequent statements to the contrary … constitute[s] *manipulative conduct* under section 10(b) and rule 10b-5.") (emphasis added).

As the Court explained, a Rule 10b-5(a)&(c) claim alleges that it is the defendants' "market *activity*, rather than a *misrepresentation*, that injects false information into the market. ECF 503 at 38 (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007) (emphasis in original). Thus, in its scienter analysis, the Court sought to determine whether Robinhood allegedly "intended to deceive investors by artificially affecting the market price of securities." ECF 503 at 24 (quoting *ATSI*, 493 F.3d at 102).

4

Again citing *ATSI*, 493 F.3d at 102, the Court continued: "Scienter is particularly important in market manipulation claims because 'in some cases scienter is the only factor that distinguishes legitimate trading from improper manipulation.'" ECF 503 at 24. Consequently, even if Robinhood's various restrictions – which removed its customers' demand for the Affected Stocks from the market, thereby sending false signals – did not run afoul of its customer contracts, the Court expressly held that the "federal securities laws do not permit restrictions if they are 'accompanied by manipulative intent.'" ECF 503 at 51 (citing *ATSI*, 493 F.3d at 100).

Having found market activity and scienter, the Court concluded: "Robinhood's allegedly opaque and conflicting statements made to hide its lack of capital, coupled with its restrictions, *evince an intent* on the part of Robinhood to artificially depress share prices for its personal benefit." ECF 503 at 51 (emphasis added); *see also id.* at 45 (discussing opinion in *Set Capital LLC v. Credit Suisse Grp. AG*, 996 F.3d 64 (2d Cir. 2021): "The Second Circuit relied on Credit Suisse's disclosure to infer its culpability.").

### B. The Court Held That Affiliated Ute Only Applies in Omissions Cases Where Defendants With a Duty to Disclose Stand Silent

Because the gravamen of the action is not misstatement but *manipulative conduct*, *i.e.*, the restrictions that "of course, impacted the natural state of supply and demand for the Affected Stocks" (ECF 503 at 51), Plaintiffs sought to invoke the *Affiliated Ute* presumption of class-wide reliance. ECF 559 at 19-22; ECF 585 at 15-18. Robinhood made two arguments against *Affiliated Ute*'s application here. The Court expressed skepticism towards Robinhood's argument that the *Affiliated Ute* presumption is only available in Rule 10b-5(b) cases alleging omissions,[4] noting that it would be a "bizarre result" if *Affiliated Ute*, a case that itself included a manipulative scheme, could not be applied to Plaintiffs' claims alleged under Rule 10b5-(a)&(c). ECF 622 at 45.

Robinhood also urged the Court to focus only on misstatements[5] – rather than its manipulative activity, the purchase restrictions at the heart of this case – citing *Cavalier*

---

[4] In support, Robinhood cited the Ninth Circuit's opinion in *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931 (9th Cir. 2009). ECF 568 at 32.

[5] Robinhood relied on misstatements not alleged. *Compare* ECF 568 at 33 ("their central allegations concern Robinhood's purported misrepresentation that its restrictions were attributed 'solely to "market volatility"'), with ECF 527 at ¶¶64-66 (alleging market

5

*Carpets, Inc. v. Caylor*, 746 F.2d 749, 756 (11th Cir. 1984) for the proposition: "This Circuit has recognized the limited reach of the [*Affiliated*] *Ute* presumption, applying it only in primarily omission cases in which a duty to disclose existed." ECF 568 at 32. The Court agreed, holding that the Eleventh Circuit "takes a more restrictive approach when cases involve both misstatements and omissions." ECF 622 at 46-47. Specifically, the Court relied on *Cavalier Carpets*, 746 F.2d at 757-58, and *Huddleston*, 640 F.2d at 548 – both cases involving violations of Rule 10b-5(b) in the context of arms-length business transactions – to hold that Robinhood "did not 'stand mute' in the face of a duty to disclose," but instead made both misstatements and omissions. ECF 622 at 47 (quoting *Huddleston*, 640 F.2d at 548). Applying what it called the "*Huddleston* rule," the Court held that this was a case that "mixed" allegations of omissions and misrepresentations and therefore the *Affiliated Ute* presumption could not apply. ECF 622 at 47-48.

    **C.** **Macquarie's Gutting of the Premise Underlying the "Huddleston Rule" in Rule 10b-5(b) Cases Requires The Court to Reexamine Its Bases For Denying the Application of Affiliated Ute Here**

In *Macquarie*, the Supreme Court overruled decades of precedent by holding that Rule 10b-5(b) liability does not arise when one with a duty to speak says nothing. The question before the Court was whether silence, alone, in the defendant's public offering documents, in the face of a duty to disclose under Item 303,[6] gave rise to liability under Rule 10b-5(b). *Macquarie*, 144 S. Ct. at 889. The Supreme Court held that it did not: "Rule 10b-5(b) does not proscribe pure omissions." 144 S. Ct. at 891. Consequently, the Court's determination that *Affiliated Ute* does not apply because this is a "mixed" case rather than an omissions case (ECF 622 at 45) can no longer stand.

Notably, although the "*Huddleston* rule" may no longer apply, *Huddleston* itself is consistent with *Macquarie*. The Fifth Circuit, in *Huddleston,* refused to apply *Affiliated*

---

volatility blogposts were "hardly a model of [ ] transparency" and "vague communications") *and*  ECF 455 at 17 (Motion to Dismiss reply: "There was nothing false about these communications, and Plaintiffs do not contend otherwise. Instead, Plaintiffs contend that these true statements were 'hardly a model of [ ] transparency'"). Also, the "alleged misstatement that 'Robinhood outright denied having a liquidity issue and blamed market volatility exclusively' (MTD Order at 45)," ECF 568 at 33, quotes *the Court* – and the lead sentence of that paragraph actually stated: "The omissions and half-truths in *Set Capital LLC* are similar to Robinhood's alleged conduct here." ECF 503 at 45.
[6] 17 C.F.R. § 229.303(b)(2)(ii).

6

*Ute* in a Rule 10b5-(b) case that "alleged misstatements and omissions in a prospectus." ECF 622 at 46. Importantly, the court expressly recognized that *Affiliated Ute* applies in Rule 10b-5(a)&(c) manipulation and scheme cases, which are, at bottom, omissions cases:

> It is, therefore, necessary to characterize the facts in a Rule 10b-5 case as involving either primarily a failure to disclose, implicating the first or third subparagraph of the Rule and invoking the *Affiliated Ute* presumption of reliance, or, on the other hand, primarily a misstatement or failure to state a fact necessary to make those statements made not misleading, classified under the second subparagraph of the Rule and as to which no presumption of reliance is applicable.

640 F.2d at 548.

In *Macquarie*, the Supreme Court did not address liability under Rule 10b-5(a)&(c). 144 S. Ct. at 892 n.2. Consequently, the *Affiliated Ute* presumption can still apply in Rule 10b-5(a)&(c) manipulation and scheme cases such as here – where otherwise legitimate market activity is accompanied by manipulative intent to send false signals concerning demand to the market – and such deceptive misconduct is accompanied by half-truths or misstatements.

*Affiliated Ute* itself involved both Rule 10b-5(b) and 10b-5(a)&(c) claims. The defendant bank employees who purchased tribe members' UDC shares for profit through resale and who also facilitated sales between the tribe members and non-tribe members had misrepresented to some plaintiffs that "the prevailing market price of the UDC shares was the figure at which their purchases were made." 406 U.S. at 152.[7] Finding that the case primarily concerned the larger scheme to defraud the plaintiffs by secretly creating

---

[7] The Court held that Plaintiffs cannot turn a mixed case into an omission case when the "omission is the truth the statement misrepresents." ECF 622 at 47-48 (quoting *Waggoner v. Barclays PLC,* 875 F.3d 79, 96 (2d Cir. 2017)). In *Affiliated Ute*, however, the omitted fact – that there was a secondary market at which shares sold for higher value than that paid to plaintiffs – was indeed the inverse of the misrepresentation that plaintiffs received prevailing market value. This did not prevent the Supreme Court from presuming reliance on the omitted fact. Here, moreover, Plaintiffs do not contend that Robinhood's "market volatility" blogpost omitted the fact that there was no market volatility. Rather, Robinhood disclosed half of the truth because it omitted *other* critical information, to wit, its temporary liquidity crunch. *See Gruber v. Gilbertson*, No. 16-cv-9727, 2019 WL 4439415, at *7 (S.D.N.Y Sept. 17, 2019) (scheme case based on omission that defendants hid significant beneficial ownership not transformed into a misstatement case because company also misrepresented that no one held more than a 5% stake).

7

a secondary market and failing to inform plaintiffs that "defendants were in a position to gain financially from their sales and that their shares were selling for a higher price in that market," *id.* at 153, the Supreme Court refused to limit liability to only those plaintiffs to whom affirmative misstatements were made. Rather, reliance can be presumed "where a reasonable investor might have considered [the withheld facts] important in the making of this decision." 406 U.S. at 153–54.

The crux of the Supreme Court's decision was that defendants had a duty to disclose the scheme because they stood to gain undisclosed financial benefits from it, to the sellers' detriment. *Id.* at 153. This case is no different. Robinhood implemented the restrictions for its own financial benefit, causing share prices to tank, while concealing critical information. This is exactly what the Court found: "The omissions consequently deprived Robinhood users of the full picture as they debated whether to hold or sell their Affected Stocks. To them, the Affected Stocks' declining prices reflected the market's concern about volatility, not Robinhood's inadequate capital cushion, and certainly not an intentional scheme on the part of Robinhood to lower the stocks' value." ECF 503 at 46.

In cases where manipulative conduct is alleged, the mere presence of materially misleading statements did not – and now, after *Macquarie*, definitively cannot – defeat a presumption of reliance under *Affiliated Ute*. As the Court acknowledged, "[t]here is no denying the similarity between this case" and *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 390 F. Supp. 3d 432 (S.D.N.Y. 2019). ECF 622 at 46. In both cases the defendants made technically true statements – in *In re Barclays*, describing the products and services offered; here, disclosing the PCO restrictions and tying them to market volatility. But what was missing, and what reasonable class members would want to know before deciding to sell, constitutes the gravamen of the scheme claim – in *In re Barclays*, that the products and services would only be purchased by high-frequency traders who would employ them to detrimentally impact other traders; here, that due to volatility, because Robinhood experienced a liquidity crisis (and would have otherwise have allowed trading to continue), it instead needed to turn its customers from big buyers to big sellers of the Affected Stocks, knowingly tanking prices by imposing the restrictions.

The Court in *In re Barclays* ultimately held that due to what was omitted from the stock exchanges' public statements about the products, "Plaintiffs are entitled to a

8

presumption that they reasonably relied on the Exchanges' alleged manipulative acts." 390 F. Supp. 3d at 449. Here, after discussing the factual similarities between this case and *In re Barclays*, the Court found that the law of this Circuit, to wit, *Cavalier Carpets* and *Huddleston*, precluded the application of *Affiliated Ute* here because "Robinhood did not simply 'stand mute in the face of a duty to disclose[.]'" *See* ECF 622 at 46-48. Whereas those cases are no longer good law to the extent that they limit the invocation of *Affiliated Ute* to pure omissions cases, the Court is no longer bound by these decisions.[8]

### D. Macquarie Requires the Court to Revisit Its §9(a)(2) Holding

The Supreme Court explicitly stated that its ruling that pure omissions are not actionable under Rule 10b-5(b) did not preclude such cases from being brought under Rule 10b-5(a)&(c). *Macquarie*, 144 S. Ct. at 892 n.2. The same must be true for §9(a)(2) claims, which also were not before the Court in *Macquarie*. Here, Robinhood made no public statements concerning its cancellation of accepted purchase orders for the Affected Stocks. Plaintiffs are entitled to the *Affiliated Ute* presumption on this claim. *See Spicer v. Chicago Bd. Options Exch., Inc.*, No. 88 C 2139, 1990 WL 16983, at *15 (N.D. Ill. Jan. 31, 1990) (finding class-wide reliance on §9 claim against Chicago Board of Trade concerning market irregularities the day after Black Monday in 1987 because "the class members may well have been unaware of some or all of those actions").

The Court applied its analysis on the element of reliance to both claims (ECF 622 at 39) and held that the *Affiliated Ute* presumption could not be invoked because this was a "mixed" misrepresentations and omissions case. In light of *Macquarie*, Plaintiffs respectfully request the Court to reevaluate its *Affiliated Ute* analysis with respect to their §9(a)(2) pure omission claim.

---

[8] This does not require a finding that *all* manipulation cases are subject to the *Affiliated Ute* presumption; only that the presence of half-truths and/or misstatements does not preclude application of *Affiliated Ute* to a Rule 10b-5(a)&(c) case grounded in manipulative conduct, *i.e.*, Robinhood's trading restrictions. This is especially true here, where the Court did not find the misstatements and omissions independently actionable. Statements that provide circumstantial evidence of scienter should not transform a misconduct case into a misrepresentation case.

## IV. CONCLUSION

For all the reasons stated above and in Plaintiffs' initial motion papers, Plaintiffs respectfully request that the Court reconsider its decision denying Plaintiffs a class-wide invocation of reliance pursuant to *Affiliated Ute* and, with all other prerequisites having been satisfied, grant class certification.

Dated: May 2, 2024

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, FBN# 0182877
Robin Bronzaft Howald
Michael A. Cohen

By: /s/Laurence M. Rosen
Laurence M. Rosen, Esq.
275 Madison Avenue 40th Floor
New York, New York 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com

*Counsel for Lead Plaintiff Blue Laine-Beveridge and Named Plaintiffs Abraham Huacuja, Ava Bernard, Brendan Clarke, Brian Harbison, Cecilia Rivas, Doi Nguyen, Joseph Gurney, Marcel Poirier, Sandy Ng, Santiago Gil Bohórquez, and Thomas Cash*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on May 2, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Laurence M. Rosen