UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-2989-MDL-ALTONAGA/Reid

In re: JANUARY 2021 SHORT SQUEEZE
TRADING LITIGATION

**This Document Relates to: All Actions Involving the Federal Securities Laws**

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THE
MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DENYING
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................. 1

II. ARGUMENT ........................................................................................................ 3

   A.  This Reconsideration Motion Is Timely and Procedurally Proper ...... 3

      1.  The Court has discretion to reconsider non-final orders ................. 3

      2.  The instant motion is not a renewed certification motion ............... 5

      3.  Local Rule 7.1(a)(3) exempts class certification from the pre-motion meet and confer requirement ......................................................... 6

   B.  *Macquarie* Changed the Law Upon Which The Court Relied .............. 7

      1.  After *Macquarie*, The Court Is No Longer Restricted by the "Mixed Case Rule of *Huddleston*" ............................................................... 7

      2.  *Affiliated Ute* is applied in securities fraud cases in which a fiduciary duty is not alleged ............................................................................ 8

      3.  *Affiliated Ute* is not "premised on pure omissions theories" ........... 9

      4.  Plaintiffs' §9(a)(2) Claim is Susceptible to Class-wide Proof .......... 10

III. CONCLUSION ................................................................................................. 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A Aventura Chiropractic Ctr., Inc. v. Med Waste Mgmt. LLC,*
     No. 12-21695-CIV, 2013 WL 3463489 (S.D. Fla. July 3, 2013) ..................................... 6

*Affiliated Ute Citizens v. United States,*
     406 U.S. 128 (1972) .............................................................................. 1, 2, 6, 7, 8, 9, 10

*Becks v. Emery-Richardson, Inc.,*
     No. 86-6886, 1990 WL 303548 (S.D. Fla. Dec. 21, 1993) .............................................. 8

*Burleigh House Condo., Inc. v. Rockhill Ins. Co.,*
     No. 21-22911-CIV, 2022 WL 17082909 (S.D. Fla. Nov. 18, 2022) ............................... 7

*Cavalier Carpets, Inc. v. Caylor,*
     746 F.2d 749 (11th Cir. 1984) ................................................................................. 1, 8, 9

*Club Madonna, Inc. v. City of Miami Beach,*
     No. 13-23762, 2015 WL 5559894 (S.D. Fla. Sept. 22, 2015) ......................................... 7

*Daniel F. v. Blue Shield of California,*
     No. C 09-2037 PJH, 2015 WL 3866212 (N.D. Cal. June 22, 2015) .............................. 5

*Desai v. Deutsche Bank Sec. Ltd.,*
     573 F.3d 931 (9th Cir. 2009) ..................................................................................... 1, 2

*Dietz v. Bouldin,*
     579 U.S. 40, 136 S. Ct. 1885, 195 L.Ed.2d 161 (2016) ................................................... 3

*Fla. Beauty Flora Inc. v. Pro Intermodal L.L.C.,*
     No. 20-20966-CIV, 2020 WL 12947401 (S.D. Fla. June 2, 2020) ................................ 6

*Great Lakes Ins. SE v. Crabtree,*
     673 F. Supp. 3d 1301 (S.D. Fla. 2023) ........................................................................... 3

*Hamilton Partners, Ltd. v. Sunbeam Corp.,* No. 99-CV-8,
     275, 2001 WL 34556527 (S.D. Fla. July 3, 2001) ......................................................... 8

*Harper v. Lawrence Cty.,*
     592 F.3d 1227 (11th Cir. 2010) ...................................................................................... 3

*Huddleston v. Herman & MacLean,*
     640 F. 2d 534 (5th Cir. 1981) ..................................................................... 1, 2, 7, 8, 9, 10

*In re Amerifirst Sec. Litig.*,
   139 F.R.D. 423 (S.D. Fla. 1991) .................................................................................. 8

*In re Barclays Liquidity Cross & High Frequency Trading Litig.*,
   390 F. Supp. 3d 432 (S.D.N.Y. 2019) ..................................................................... 7, 8

*In re Initial Pub. Offering Sec. Litig.*,
   241 F. Supp. 2d 281 (S.D.N.Y. 2003) ......................................................................... 9

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-MD-02420, 2018 WL 4215573 (N.D. Cal. Sept. 4, 2018) ............................... 5

*In re UBS Auction Rate Sec. Litig.*,
   No. 08 CIV. 2967, 2010 WL 2541166 (S.D.N.Y. June 10, 2010) ................................ 9

*Laird v. Stilwill*,
   982 F. Supp. 1345 (N.D. Iowa 1997) ......................................................................... 4

*Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
   762 F.3d 1248 (11th Cir. 2014) .................................................................................. 8

*M.G. v. Armijo*,
   No. 1:22-cv-00325, 2024 WL 810370 (D.N.M. Feb. 27, 2024) .................................. 4

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
   601 U.S. 257 (2024) ............................................................................... 1, 2, 4, 6, 7, 9, 10

*MAZ Partners LP v. First Choice Healthcare Solutions, Inc.*,
   No. 6:19-cv-619, 2019 WL 5394011 (M.D. Fla. Oct. 16, 2019) .................................. 9

*Medlink Legal Sys., LLC v. QIMA Ltd.*,
   No. 21-22168-CIV, 2023 WL 7129993 (S.D. Fla. June 13, 2023) .............................. 7

*Morales v. Charlotte Corr. Inst.*,
   No. 18-22787-CV, 2023 WL 5593375 (S.D. Fla. May 4, 2023) .................................. 4

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1, 103 S. Ct. 927, 74 L.Ed.2d 765 (1983) .................................................... 3

*Region 8 Forest Serv. Timber Purchasers Council v. Alcock*,
   993 F.2d 800 (11th Cir. 1993) ................................................................................ 3, 4

*S.E.C. v. Santos*,
   355 F. Supp. 2d 917 (N.D. Ill. 2003) .......................................................................... 9

*Silva v. United States Att'y Gen.*,
   No. 18-21521-CIV, 2019 WL 10784381 (S.D. Fla. May 28, 2019) ............................. 4

*SSL, Inc. v. Scottsdale Ins. Co.*,
  No. 4:16-00324-CV-W-HFS, 2017 WL 6383988 (W.D. Mo. Oct. 18, 2017).................... 4

*Walco Invs., Inc. v. Thenen*,
  168 F.R.D. 315 (S.D. Fla. 1996)..................................................................................8

*Wrangen v. Pennsylvania Lumbermans Mut. Ins. Co.*,
  No. 07-61879, 2008 WL 5427785 (S.D. Fla. Dec. 30, 2008).......................................... 6

**<u>Statutes</u>**

15 U.S.C. §78i(a)(2) ............................................................................................................10

15 U.S.C. §78j(b)..................................................................................................................10

**<u>Regulations</u>**

17 C.F.R. § 240.10b-5................................................................................................. *passim*

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 3

Fed. R. Civ. P. 23(c)(1)(C) ........................................................................................... 2, 5, 6

Fed. R. Civ. P. 56 ................................................................................................................. 3

Fed. R. Civ. P. 59(e) ........................................................................................................3, 4

Fed. R. Civ. P. 60(b) ........................................................................................................3, 4

**<u>Local Rules</u>**

Rule 7.1(a)(2)....................................................................................................................... 7

Rule 7.1(a)(3)...................................................................................................................3, 6

Rule 7.1(d) ........................................................................................................................... 7

## I. INTRODUCTION

Conspicuously absent from Robinhood's opposition to the instant motion is any response to the premise underlying Plaintiffs' argument, to wit, the gravamen of Plaintiffs' two market manipulation claims is Robinhood's *actions* – its PCOs and cancellations – not its *statements*. ECF 668 at 4-5. Whether or not an investor read or heard any of Robinhood's statements, when they sold stock after Robinhood removed significant demand from the market, driving down prices, they were injured.[1] Conversely, no Rule 10b-5(b) claim could exist absent the manipulative acts: if Robinhood had not imposed PCOs or cancelled purchase orders for millions of shares, Robinhood would have had no reason to discuss "market volatility" or the state of its liquidity.

Because market manipulation class actions are rare, the Eleventh Circuit has not addressed the application of the *Affiliated Ute* presumption in this context.[2] This Circuit had spoken, however, on its application in Rule 10b-5(b) cases, most notably in *Huddleston v. Herman & MacLean*, 640 F. 2d 534, 539, 543 (5th Cir. 1981) ("The issues that now concern us focus on statements made in the TIS prospectus.") and *Cavalier Carpets, Inc. v. Caylor*, 746 F.2d 749, 753 n.16 (11th Cir. 1984) (setting forth the elements of a Rule 10b-5(b) claim in a case involving a misrepresentations and omissions in the context of a business deal). Because Robinhood had not silently undertaken its manipulative actions, the Court held that it was bound by the "*Huddleston* rule" and refused to apply the *Affiliated Ute* presumption of reliance in a "mixed case" involving both misstatements about Robinhood's liquidity and omissions from its "market volatility" blogpost on the morning of January 28, 2021. ECF 622 at 47-48. Now that

---

[1] Plaintiffs' expert has calculated the per-share damages caused by Robinhood's removal of its customers' demand for each of the Affected Stocks for each day of the class period.

[2] The Court noted that the Eleventh Circuit had not taken a position on whether *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), could only apply in Rule 10b-5(b) cases, as the Ninth Circuit had ruled in *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 940 (9th Cir. 2009). ECF 622 at 44-45. Although the Supreme Court's decision in *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 259-60 (2024), upends *Desai*, Robinhood repeats its *Desai* argument. *Compare* ECF 675 at 15 *with* ECF 568 at 32 (Plaintiffs "'cannot avail themselves of the *Affiliated Ute* presumption' permitted in omissions cases"). The Court's skepticism was warranted. ECF 622 at 45 (it would be "bizarre" if a presumption that arose in a Rule 10b-5(a)&(c) case could not apply in one).

1

*Macquarie* has eliminated the concept of a pure omissions case under Rule 10b-5(b), the distinction upon which the "mixed case" rule is based is no longer viable.

Unable to grapple with this change of law, Robinhood's arguments are hopelessly inconsistent. Asserting that *Macquarie* – a Rule 10b-5(b) case in which the plaintiffs alleged omissions from and misrepresentations in SEC filings – has no application to a Rule 10b-5(a)&(c) market manipulation action, Robinhood argues that Plaintiffs "do not even assert a claim under Rule 10b-5(b)." ECF 675 at 13. Yet Robinhood maintains the applicability of *Huddleston* to this case – even as Robinhood describes *Huddleston* as brought under "'the second subparagraph of the Rule' (*i.e.*, Rule 10b-5(b)), unlike *Affiliated Ute* which involved 'the first or third subparagraph of the Rule' (*i.e.*, Rule 10b-5(a) or (c)). 640 F.2d at 548." ECF 675 at 11 & n.4. Finally, Robinhood contends that *Affiliated Ute* only applies to "pure omissions theories under Rule 10b-5(a) and Rule 10b-5(c)." ECF 675 at 14. This ignores the fact that *Affiliated Ute* expressly affirmed the lower court's finding of a Rule 10b-5(b) violation. 406 U.S. at 152. Thus, *Affiliated Ute* itself instructs that claims under Rule 10b5-(a)&(c) and Rule 10b5-(b) can coexist without the former being transformed into the latter simply because defendants do not remain silent.

Perhaps recognizing the inherent difficulty, after *Macquarie*, of continuing to press application of a Rule 10b-5(b) standard limiting the invocation of the *Affiliate Ute* presumption of class-wide reliance to pure omissions cases, Robinhood relies primarily on inapposite procedural arguments to urge denial of the motion. ECF 675 at 5, 7-10. First, its assertion that the motion is untimely ignores that the Court has broad discretion to reconsider a non-final order at any time before judgment, especially class certification under Rule 23(c)(1)(C). Next, Robinhood mischaracterizes this motion as a new class certification motion filed in violation of the scheduling order. Not so. Plaintiffs sought leave to file a renewed motion with expert analysis of price impact – and, later, loss causation and damages, based upon massive quantities of Robinhood and FINRA data[3] – but on April 19, 2024, the Court denied Plaintiffs permission to file. ECF 665. The instant

---

[3] Because of Robinhood's considerable difficulty querying its data lake for, at that point, more than *18 million* of lines of responsive data, and the many months it took FINRA to compile more than *two trillion* bytes of data, ECF 619-2 at 2-3, ¶¶10-14, the Court granted a 3-month extension of the merits expert report exchange deadlines. ECF 621 at 2. This allowed Plaintiffs' expert to add loss causation and per-share damages analyses.

2

motion contains no new evidence and is limited to asking the Court to reconsider its earlier ruling based upon a Supreme Court decision handed down on April 12, 2024. Finally, because this motion seeks to "permit maintenance of a class action," it is exempt from Local Rule 7.1(a)(3)'s meet and confer requirement, with which Plaintiffs have heretofore complied.[4]

In the interests of justice for investors injured by Robinhood's unprecedented restrictions, Plaintiffs respectfully request the Court permit invocation of a class-wide presumption of reliance on Robinhood's manipulative actions and grant certification.

## II.   ARGUMENT

### A.   This Reconsideration Motion Is Timely and Procedurally Proper

Robinhood's opposition tries to deflect from the substantive strength of Plaintiffs' motion with claims that it violates the scheduling order as well as the Federal and Local Rules. These efforts are for naught because both the law and facts demonstrate the motion is properly before the Court.

#### 1.   The Court has discretion to reconsider non-final orders

"It is permissible for a district court to rescind its own interlocutory order." *Harper v. Lawrence Cty.*, 592 F.3d 1227, 1231 (11th Cir. 2010) (court properly reconsidered its prior conversion of some defendants' Fed. R. Civ. P. ("Rule") 12(b)(6) motion to a Rule 56 motion) (citing cases); *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993) (abuse of discretion standard applies where non-final order is reconsidered). One court in this District recently held:

> [T]he Supreme Court has been clear that "every order short of a final decree is subject to reopening at the discretion of the district judge." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12, 103 S. Ct. 927, 74 L.Ed.2d 765 (1983); *see also Dietz v. Bouldin*, 579 U.S. 40, 46, 136 S. Ct. 1885, 195 L.Ed.2d 161 (2016) ("[T]he Court has recognized that a district court ordinarily has the power to modify or rescind its orders at any point prior to final judgment in a civil case."). Because we think the prior order was wrong, we're well within our discretion to correct it.

*Great Lakes Ins. SE v. Crabtree*, 673 F. Supp. 3d 1301, 1311 n. 20 (S.D. Fla. 2023). Given the Supreme Court's broad mandate of discretion to review non-final orders, Robinhood's assertion that the inapplicability of Rules 59(e) and 60(b) leaves Plaintiffs without a

---

[4] *See, e.g.,* ECF 565 at 15; ECF 587 at 8; ECF 605 at 15; and ECF 624 at 3.

3

remedy has been rejected by courts across the country. Because a higher bar applies to Rule 59(e) and 60(b) motions, to preserve the finality of judgments, "the result of a determination that Rule 59(e) and Rule 60(b) are inapplicable to the present motion … actually means that the court has *more,* not *less,* discretion to alter or amend the ruling," *Laird v. Stilwill*, 982 F. Supp. 1345, 1354 (N.D. Iowa 1997) (emphasis in original); *SSL, Inc. v. Scottsdale Ins. Co.*, No. 4:16-00324-CV-W-HFS, 2017 WL 6383988, at *1 (W.D. Mo. Oct. 18, 2017); *M.G. v. Armijo*, No. 1:22-cv-00325, 2024 WL 810370, at *4 (D.N.M. Feb. 27, 2024) ("no limit or governing standard" on ability to reconsider class certification).

In fact, Robinhood's argument that a motion for reconsideration must comply with either Rule 59(e) or Rule 60(b) (ECF 675 at 7-8) misconstrues the law of this Circuit. The sole authority provided, *Silva v. United States Att'y Gen.*, No. 18-21521-CIV, 2019 WL 10784381, at *1 (S.D. Fla. May 28, 2019) (ECF 675 at 7), cites *Alcock*, 993 F.2d 800 (11th Cir. 1993), for that proposition. However, *Alcock* does not impose such a requirement on motions for reconsideration:

> This Court has never explicitly considered the standard of review to be applied to a district court's grant of a motion for reconsideration of a non-final judgment.[4] However, when reviewing a district court's disposition of a motion for reconsideration after final judgment,[5] we have consistently stated that the decision to grant such relief is committed to the sound discretion of the district judge and will not be overturned on appeal absent an abuse of discretion. [Citation to Rule 59(e) and Rule 60(b) reconsideration cases]. We see no reason to apply a different standard when the party seeks reconsideration of a non-final order.

993 F.2d 800, 805-06 (footnotes in original). In note 4, the court refers to Rule 54(b) as governing motions for reconsideration of non-final orders, to wit, "any order or form of decision, however designated, which … is subject to revision at any time before the entry of judgment." In note 5, the court refers to Rules 59(e) and 60(b) as governing motions for reconsideration "made after final judgment." 993 F.2d at 805-06 nn. 4 and 5. Thus, *Silva* and *Morales v. Charlotte Corr. Inst.*, No. 18-22787-CV, 2023 WL 5593375, at *1-2 (S.D. Fla. May 4, 2023), cases in which motions were made following dismissal, are inapposite.[5]

---

[5] Robinhood's effort to distinguish Plaintiffs' cases (ECF 675 at 9) does not address the import of *Macquarie* being decided months after Rule 59(e)'s 28-day deadline expired.

4

## 2. The instant motion is not a renewed certification motion

Citing two cases, Robinhood argues that the Court cannot revisit its non-final order under Rule 23(c)(1)(C), and that the instant motion is an improper renewed certification motion in violation of the scheduling order. ECF 675 at 8. While *Daniel F. v. Blue Shield of California*, No. C 09-2037 PJH, 2015 WL 3866212 (N.D. Cal. June 22, 2015) and *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420, 2018 WL 4215573 (N.D. Cal. Sept. 4, 2018), are strikingly similar to each other, they bear no resemblance to this case.

In those two cases: (a) many months after the denial of class certification – for the second time in *Lithium Ion* – without notice, plaintiffs filed unauthorized new motions for class certification on the deadline for dispositive motions, even though new scheduling orders had been entered based upon prosecution on behalf of individual plaintiffs (*Daniel F.*, 2015 WL 3866212, at *2; *Lithium Ion*, 2018 WL 4215573 at *1-2); (b) neither motion was justified by changes in law or new evidence (*Daniel F.*, 2015 WL 3866212 at *3-4: "[Plaintiffs] are seeking not reconsideration of the prior order denying class certification, but rather a new ruling on a motion … They concede that there is no material difference in the law, and argue only that the revised class definition and the copies of transcripts of deposition testimony constitute 'new facts.'"; *Lithium Ion*, 2018 WL 4215573 at *3: "IPPs now seek to certify a narrower class, relying upon the same methodologies and same transactional sales data used by their expert in the prior motions …[, they] offer no 'changed circumstances.' The addition of testimony from company representatives that could, with the exercise of reasonable diligence, have been offered earlier, does not alter the analysis."); and (c) motion did not fall within court's discretion under Rule 23(c)(1)(C) to reconsider the prior order based on newly discovered evidence, clear error, or an intervening change in the controlling law. *Lithium Ion*, 2018 WL 4215573 at *4; *Daniel F.*, 2015 WL 3866212, at *3 ("the 'renewed' motion does not mention Rule 23(c)(1)(C) … plaintiffs simply repeat arguments they previously made").

Wholly unlike *Daniel F.* and *Lithium Ion*, Plaintiffs did not ambush defendants and the Court with a last-minute unauthorized certification motion that would upend pre-trial scheduling tailored to individual trials. The chronology of events establishes the exact opposite to be true. Because of difficulties in compiling huge volumes of trading data for expert analysis, the scheduling order was amended on November 9, 2023, to extend expert report deadlines (ECF 621), days *before* the Court denied class certification. ECF

622. In December 2023, interpreting the Court's denial without prejudice to have invited a new motion with proof of price impact caused by Robinhood's PCOs and cancellations, *after consulting with Robinhood*, Plaintiffs filed an *unopposed* motion seeking a briefing schedule to run concurrent with fact and expert discovery, between February 15 and May 15, 2024, which would not require further amendment to the scheduling order. ECF 624 at 1. Plaintiffs drafted papers, including an expert analysis demonstrating price impact (and, after discovery concluded, loss causation and per-share damages for each claim), *but awaited Court approval to file*. After permission to file a renewed motion was denied on April 19, 2024, the instant motion was filed, seeking reconsideration based upon a change of law on April 12, 2024.[6] As authorized by Rule 23(c)(1)(C), the instant motion properly seeks reconsideration based upon *Macquarie* removing the "pure omissions" category of cases underpinning the Court's *Affiliated Ute* analysis.

### 3. Local Rule 7.1(a)(3) exempts class certification from the pre-motion meet and confer requirement

Local Rule 7.1(a)(3) provides: "Prior to filing any motion in a civil case, except a motion … *to permit maintenance of a class action*, counsel for the movant shall confer … with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve by agreement the issues to be raised in the motion." (Emphasis supplied.) Because no Local Rule governs motions for reconsideration, and the relief sought is to "permit maintenance of a class action," Plaintiffs understood Local Rule 7.1(a)(3) to exempt this motion from the conference requirement – with which Plaintiffs have consistently complied. *See* n. 4, *supra* (citing four motions); *see also A Aventura Chiropractic Ctr., Inc. v. Med Waste Mgmt. LLC*, No. 12-21695-CIV, 2013 WL 3463489 (S.D. Fla. July 3, 2013) at ECF 114 (successful motion for reconsideration of a denial of class certification was filed without a certificate of compliance).

None of the cases cited by Robinhood to argue otherwise involved exempt motions. ECF 675 at 9-10. *See Wrangen v. Pennsylvania Lumbermans Mut. Ins. Co.*, No. 07-61879, 2008 WL 5427785, at *1 (S.D. Fla. Dec. 30, 2008) (motion to inspect third-party's property); *Fla. Beauty Flora Inc. v. Pro Intermodal L.L.C.*, No. 20-20966-CIV, 2020 WL 12947401, at *1-2 (S.D. Fla. June 2, 2020) (motion for statutory prevailing-party

---

[6] Had Plaintiffs filed a renewed motion, it would have addressed *Macquarie*.

6

attorneys' fees); *Burleigh House Condo., Inc. v. Rockhill Ins. Co.*, No. 21-22911-CIV, 2022 WL 17082909, at *3, 5-6 (S.D. Fla. Nov. 18, 2022) (motion to strike and/or reply to affirmative defenses, granted in part despite noncompliance). Two cases involved violations of *other* provisions of Rule 7, in whole or in part. *See Club Madonna, Inc. v. City of Miami Beach*, No. 13-23762, 2015 WL 5559894, at *9 (S.D. Fla. Sept. 22, 2015) (party opposing motion for fees and costs failed to follow Rule 7.3(b)'s objection procedure); *Medlink Legal Sys., LLC v. QIMA Ltd.*, No. 21-22168-CIV, 2023 WL 7129993, at *1 (S.D. Fla. June 13, 2023) (failure to follow Rules 7.1(a)(2) and 7.1(d)).

Procedural attacks on reconsideration motions most often argue that the movant is recycling old arguments or merely disagrees with the court. Robinhood does not.[7] The propriety of the motion is underscored by the absence of these common tropes.

### B. *Macquarie* Changed the Law Upon Which The Court Relied

Despite the fact that Robinhood quotes *Huddleston* for the proposition that it is a Rule 10b5-(b) case *and not* a Rule 10b-5(a)&(c) case, ECF 675 at 11 n.4, Robinhood continues to press the Court to apply the "mixed case rule of *Huddleston*" here, even though Robinhood agrees that Plaintiffs have not pled Rule 10b-5(b) claims. ECF 675 at 13. After *Macquarie* held there are no pure omissions cases under Rule 10b5-(b), the "mixed case rule of *Huddleston*" – which formed the analytic framework the Court believed prevented invocation of the *Affiliated Ute* presumption because Robinhood did not remain silent – is no longer valid. Robinhood's arguments do not persuade otherwise.

#### 1. After Macquarie, The Court Is No Longer Restricted by the "Mixed Case Rule of Huddleston"

In its class certification opinion (ECF 622 at 46), the Court noted "there is no denying the similarities between this case" and *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 390 F. Supp. 3d 432 (S.D.N.Y. 2019). In *In re Barclays*, the gravamen of the case was a manipulative scheme by which stock exchanges sold sophisticated products to high-frequency trading firms which enabled them to secretly front-run trades to other investors' detriment. The court held that the *Affiliated Ute* presumption could apply even though the exchanges also made materially misleading public statements which described the products available for purchase while omitting

---

[7] The most Robinhood could muster was a footnote claiming that Plaintiffs (in footnotes) had argued only that the Court had erred. ECF 675 at 12 n.5.

7

their impact on trading. ECF 622 at 46 (citing *In re Barclays*, 390 F. Supp. 3d at 448). Nonetheless, the Court explained, the Eleventh Circuit's holdings in *Cavalier Carpets* and *Huddleston* take "a more restrictive approach when cases involve both misstatements and omissions." ECF 622 at 46. Specifically, where misstatements *and* omissions are alleged, the "'mixed case rule of *Huddleston*' applied and *Affiliated Ute* did not." *Id.* at 47 (quoting *Cavalier Carpets*).[8] The Court concluded: "The Court is bound by these decisions." *Id.* Now that the Supreme Court has ruled there are no pure omissions cases under Rule 10b-5(b), the premise upon which "mixed case rule of *Huddleston*" was based, that limited the application of *Affiliated Ute* to pure omissions cases, no longer binds the Court.

### 2. *Affiliated Ute* is applied in securities fraud cases in which a fiduciary duty is not alleged

*Macquarie* involved nondisclosure in a public company's SEC filings. To argue that *Macquarie* "has no relation to *Affiliated Ute*" and its progeny (ECF 675 at 12), Robinhood claims that the Eleventh Circuit limits the application of *Affiliated Ute* to cases in which someone with a fiduciary duty stood silent. ECF 675 at 12. However, the phrase "fiduciary duty" does not appear in *Affiliated Ute*. In fact, after *Cavalier Carpets*, courts in this Circuit have evaluated whether the "mixed case rule of *Huddleston*" would preclude application of the *Affiliated Ute* presumption in securities fraud cases where no fiduciary duty was alleged. *See Hamilton Partners, Ltd. v. Sunbeam Corp.*, No. 99-CV-8275, 2001 WL 34556527, at *12 (S.D. Fla. July 3, 2001); *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 330-31 (S.D. Fla. 1996); *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 430 n.4 (S.D. Fla. 1991); *see generally Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1248, 1256 (11th Cir. 2014) (praising the "wisdom" of the district court's application of *Affiliated Ute* to analogize a confirmatory misrepresentation with a "traditional omission").

---

[8] *Cavalier Carpets* raised a unique concern in Rule 10b5-(b) cases, not present here: "We also note the practical problems of a dual jury instruction on reliance on a securities fraud case where both alleged misstatements and omissions are present and the probability of jury confusion. A dual instruction would require the jury 'to search for proof of reliance by the plaintiff with regard to the misrepresentations, and to search for proof of nonreliance by the defendant with regard to the omissions.'" 746 F.2d at 757; *see also Becks v. Emery-Richardson, Inc.*, No. 86-6886, 1990 WL 303548, at *20 (S.D. Fla. Dec. 21, 1993) (citing *Cavalier Carpets*). Here, burden-of-proof shifting instructions can be avoided because misrepresentations and omissions are not elements of Plaintiffs' claims.

Robinhood characterizes the premise of Plaintiffs' motion as "absurd" because the Supreme Court would not have *sub silentio* "dramatically altered the meaning of *Affiliated Ute* and overruled … *Cavalier Carpets* and *Huddleston* …" ECF 675 at 13. However, it is Robinhood's argument that rests on the incorrect premise that *Affiliated Ute* has only been applied when a defendant with a fiduciary duty to speak stood silent. For this reason, *Macquarie* has undercut the "mixed case rule of *Huddleston*" which has been applied to limit the application of *Affiliated Ute*.[9]

### 3. *Affiliated Ute* is not "premised on pure omissions theories"[10]

Robinhood makes a straw-man argument that Plaintiffs' reading of *Macquarie* would appear to render *Affiliated Ute* a nullity. ECF 675 at 14. To reconcile *Affiliated Ute* and *Macquarie*, without conceding the former applies to this case, Robinhood asserts that it continues to apply in Rule 10b-5(a)&(c) cases that are "premised on pure omission theories." ECF 675 at 14. Robinhood then contends that it cannot apply here because Plaintiffs' market manipulation claims are premised on "mixed allegations of misstatements and omissions." *Id.* Not so. The claims are based on *actions*, to wit, PCOs and cancellations, and the Court has already held that Robinhood can be held liable for undertaking such actions with scienter even if it said nothing at all. ECF 503 at 24, 51.

Moreover, as Robinhood appears to concede (by its use of the alternative test "purely, or primarily, from omissions") (ECF 675 at 14), the mere presence of misstatements does not deprive class plaintiffs of the ability to invoke *Affiliated Ute*.

---

[9] Apparently uncertain about this Circuit's standard, Robinhood elsewhere argues that a duty to speak must exist, not necessarily a fiduciary duty. ECF 675 at 11. If so, courts have held that engaging in misconduct that amounts to market manipulation under Rule 10b-5(a)&(c) gives rise to a duty to disclose. *See, e.g., MAZ Partners LP v. First Choice Healthcare Solutions, Inc.*, No. 6:19-cv-619, 2019 WL 5394011, at * 6, 11 (M.D. Fla. Oct. 16, 2019), *report and recommendation adopted*, 2020 WL 1072582, at *5 (M.D. Fla. Feb. 14, 2020) (Rule 10-5(b) claim stated where manipulative scheme under Rule 10b-5(a)&(c) not disclosed); *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 381 (S.D.N.Y. 2003); *In re UBS Auction Rate Sec. Litig.*, No. 08 CIV. 2967, 2010 WL 2541166, at *27 (S.D.N.Y. June 10, 2010) (citing *IPO*); *S.E.C. v. Santos*, 355 F. Supp. 2d 917, 920 (N.D. Ill. 2003) (same). As in *Affiliated Ute*, where the bank employees should have disclosed their financial interest in creating a market to resell tribe members' shares for a profit, Robinhood's manipulative actions for its own financial interest created a duty to disclose critical facts the Court found Robinhood to have omitted. ECF 503 at 45-46.

[10] *See* ECF 675 at 14.

Indeed, in *Affiliated Ute* itself, the Supreme Court found Rule 10b-5(a)&(c) violations while also upholding a finding that the bank employees had violated Rule 10b5-(b): "Clearly, the Court of Appeals was right to the extent that it held that the two employees had violated Rule 10b-5 … the record reveals a misstatement of a material fact, within the proscription of Rule 10b-5(2), namely, that the prevailing market price of the UDC shares was the figure at which their purchases were made." 406 U.S. at 152. As Rule 10b-5(b) claims are not even alleged here, Robinhood's misstatements and omissions cannot preclude the application of *Affiliated Ute* to its manipulative actions.

### 4. Plaintiffs' §9(a)(2) Claim is Susceptible to Class-wide Proof

Robinhood's argument concerning the continued application of *Affiliated Ute* in cases arising "purely, or primarily, from omissions," ECF 675 at 14, supports certification of the §9(a)(2) claim. In particular, Robinhood does not dispute that it was silent with respect to its cancellation of purchase orders for millions of shares of the Affected Stocks. ECF 675 at 15.

Robinhood instead asserts that because *Macquarie* did not involve a §9(a)(2) claim, a motion for reconsideration based upon that decision cannot lie. ECF 675 at 15. Having held that reliance was an element of both claims alleged, the Court determined it could "apply the principles of reliance under section 10(b) to the section 9(a)(2) claim." ECF 622 at 39. While the legal principles may be the same, the facts with respect to the two claims are not. Because *Macquarie* knocked the legs out from under the analytic framework supporting the "mixed case *Huddleston* rule" that the Court had applied to both claims, Plaintiffs respectfully submit that Robinhood's silence with respect to its purchase order cancellations allows Plaintiffs to invoke the *Affiliated Ute* presumption with respect to their §9(a)(2) claim.

### III. CONCLUSION

For the reasons stated above and in the opening memorandum of law, Plaintiffs respectfully request that the Court reconsider its original ruling and grant class certification of both of Plaintiffs' claims.

10

Dated: May 23, 2024

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, FBN# 0182877
Robin Bronzaft Howald
Michael A. Cohen

By: /s/Laurence M. Rosen
Laurence M. Rosen, Esq.
275 Madison Avenue 40th Floor
New York, New York 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com

*Counsel for Lead Plaintiff Blue Laine-Beveridge and Named Plaintiffs Abraham Huacuja, Ava Bernard, Brendan Clarke, Brian Harbison, Cecilia Rivas, Doi Nguyen, Joseph Gurney, Marcel Poirier, Sandy Ng, Santiago Gil Bohórquez, and Thomas Cash*

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 23, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Laurence M. Rosen