**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-MD-02989-ALTONAGA**

In re:

**JANUARY 2021 SHORT SQUEEZE**
**TRADING LITIGATION**
                                          /

This Document Relates to All Actions

**MOTION TO COMPEL ARBITRATION AND FOR STAY PENDING ARBITRATION**

      Defendants Robinhood Markets, Inc., Robinhood Financial LLC, and Robinhood Securities, LLC (collectively, "Robinhood") respectfully request the Court to enter an order (1) compelling arbitration of the remaining individual actions in this multidistrict litigation ("MDL") and (2) staying those actions pending arbitration. Each plaintiff a remaining individual claim is a Robinhood customer who, before opening their respective brokerage account, entered into a customer agreement that contained a mandatory arbitration clause providing for pre-dispute arbitration before Financial Industry Regulatory Authority Dispute Resolution ("FINRA DR"). Accordingly, all the remaining claims against Robinhood in this MDL must proceed in arbitration before FINRA DR.

**BACKGROUND**

      Robinhood's mission is to democratize finance by providing access to financial markets through zero-commission trades in stocks, options, and ETFs; no account minimums; and a trading platform available on a mobile device or computer. At the time relevant to this MDL, Robinhood's securities business involved two entities: Robinhood Financial LLC ("Robinhood Financial"), the customer-facing introducing broker, and Robinhood Securities, LLC ("Robinhood Securities"), the clearing broker. Both brokers are wholly owned by Robinhood Markets, Inc. ("Robinhood

Markets"). Customer trading on Robinhood is largely self-directed. As set forth below, customers opening a brokerage account with Robinhood Financial must submit an application and enter a customer agreement that contains an arbitration clause.

1. *The January 28, 2021 Restrictions and the Instant Litigation*

On January 28, 2021, in response to extreme market volatility spurred by retail investors purchasing so-called "meme stocks,"[1] Robinhood took a number of steps, including modifying initial and maintenance margin requirements and imposing a temporary position closing only ("PCO") status for certain of the meme stocks. *See In re Jan. 2021 Short Squeeze Trading Litig.*, 584 F. Supp. 3d 1161, 1168, 1175 (S.D. Fla. 2022). When a stock is in PCO status, a customer may sell the stock, but they may not purchase new shares. *Id.* at 1175. The PCO helped Robinhood manage the risk posed by the unprecedented amount of meme-stock trading and the rollercoaster ride of price movements. *See In re Jan. 2021 Short Squeeze Trading Litig.*, 76 F.4th 1335, 1343–44 (11th Cir. 2023).

Robinhood's decision to implement the PCO resulted in immediate litigation. *Id.* at 1344. Scores of individual plaintiffs brought claims against Robinhood and others in federal courts, asserting causes of action for antitrust violations, a variety of state law claims including breach of contract and torts, and violations of the federal securities laws. *See id.* On April 1, 2021, the Judicial Panel on Multi-District Litigation consolidated all these individual claims into this MDL. *See* Transfer Order [ECF No. 1]. This Court established four tranches of claims: (1) Antitrust Tranche, (2) Robinhood Tranche, (3) Other Broker Tranche, and (4) Federal Securities Tranche.

---

[1] The "meme stocks" included AMC Entertainment Holdings, Inc. (AMC), Bed Bath & Beyond Inc. (BBBY), BlackBerry Ltd. (BB), Express Inc. (EXPR), GameStop Corp. (GME), Koss Corp. (KOSS), Tootsie Roll Industries Inc. (TR), Nokia Corp. (NOK) and trivago N.V. (TRVG). *See, e.g.*, Consolidated Class Action Compl. [ECF No. 446] ¶ 1.

*See* Order [ECF No. 310] at 1–2.[2] As their names imply, the Antitrust Tranche and Federal Securities Tranche involved claims against Robinhood arising from antitrust statutes and federal securities statutes, respectively. *Id.* at 1–2. The Other Broker Tranche involved state-law claims against other broker-dealers arising from trading restrictions that those broker-dealers implemented, but did not involve claims against Robinhood. *Id.* at 1. Finally, the Robinhood Tranche encompassed all "state-law claims against the Robinhood entities or other Robinhood-related Defendants." *Id.*

The Court ordered the filing of a Master Complaint for each tranche, which would "supersede the individual complaints filed to date and will constitute the operative pleadings with respect to those claims pursuant to Fed. R. Civ. P. 8." *In re Jan. 2021 Short Squeeze*, 584 F. Supp. 3d at 1177 (quoting Joint Status Report [ECF No. 322] at 2). After lead plaintiffs' counsel for each tranche filed Master Complaints, and the parties completed briefing on Robinhood's motions to dismiss, this Court ultimately dismissed with prejudice the Robinhood, Antitrust, and Other Broker Tranches. *See* Orders [ECF Nos. 453, 470, 525]. The Eleventh Circuit has affirmed each of these dismissals. *See* 76 F.4th 1335 (11th Cir. 2023); 105 F.4th 1346 (11th Cir. 2024); 2024 WL 4440230 (11th Cir. Oct. 8, 2024). As for the Federal Securities Tranche, this Court granted Robinhood's motion to dismiss in part. *See* Order [ECF No. 503]. Accordingly, the Federal Securities Tranche proceeded to discovery on class certification and the merits. *See* Scheduling Order [ECF No. 517] at 1.

On April 28, 2023, the lead plaintiffs for the Federal Securities Tranche filed their Motion for Class Certification [ECF No. 559]. After the parties fully briefed the issue, *see* [ECF Nos. 568, 585], the Court denied class certification. *See* Order [ECF No. 622]. The lead plaintiffs moved

---

[2] Citations to page numbers refer to the page number displayed in the CM/ECF header.

3

for leave to file a renewed motion for class certification, *see* [ECF No. 624], which Robinhood opposed, *see* [ECF No. 631]. The Court denied the lead plaintiffs' request for renewed class-certification briefing on April 19, 2024. *See* Order [ECF No. 665]. On May 2, 2024, the lead plaintiffs filed a Motion for Reconsideration [ECF No. 668]. After Robinhood filed its Opposition to Reconsideration [ECF No. 675] and the lead plaintiffs filed their Reply [ECF No. 676]—but before the Court entered an order—Robinhood and the lead plaintiffs settled the lead plaintiffs' claims on an individual basis, and stipulated to the dismissal of those claims. *See* Joint Stipulation of Voluntary Dismissal [ECF No. 691]. The Court dismissed the claims of the lead plaintiffs in the Federal Securities Tranche on August 14, 2024. *See* Order [ECF No. 692].

With the Antitrust, Robinhood, and Other Broker Tranches dismissed with prejudice, and class certification denied in the Federal Securities Tranche, there remains only one category of claims in this MDL: individual, federal securities claims brought by plaintiffs who—though their claims were consolidated into the MDL—were not one of the settling named plaintiffs in the Federal Securities Tranche. At the September 18, 2024 Status Conference, Robinhood informed the Court that Robinhood would seek to compel arbitration of these remaining individual claims (at that time, ten cases brought by twenty-one plaintiffs), pursuant to the terms of Robinhood's customer agreement. Robinhood has been conferring with counsel for the remaining individual plaintiffs to (1) confirm their clients' consent or opposition to Robinhood's forthcoming motion to compel arbitration and (2) explore the potential for resolution without the need for arbitration. Robinhood has been successful in resolving three of the remaining cases. *See* Joint Stipulations of Dismissal with Prejudice [ECF Nos. 703, 707, 710]. Now, there remain the following seven individual actions (the "Remaining Actions"), which are the subject of this Motion:

- *Daniels v. Robinhood Financial, LLC*, No. 21-cv-21261;

4

- *Days v. Robinhood Markets, Inc.*, No. 21-cv-21310;

- *Gatz v. Robinhood Financial, LLC*, No. 21-cv-21296;

- *Gossett v. Robinhood Financial, LLC*, No. 21-cv-21293;

- *Scarborough v. Robinhood Financial LLC*, No. 23-cv-21572;

- *Krumenacker v. Robinhood Financial, LLC*, No. 21-cv-21343; and

- *Quat v. Robinhood Financial, LLC*, No. 21-cv-21404.[3]

2. *The Remaining Plaintiffs' Agreement to Arbitrate*

Each of the plaintiffs in the Remaining Actions were Robinhood customers in January 2021. Prior to opening their individual Robinhood brokerage accounts, each plaintiff assented to Robinhood's customer agreement. See Ex. B, Decl. of Marc O'Such ("O'Such Decl.") ¶ 7. As part of the account-opening process (either through the Robinhood mobile application or website), each plaintiff acknowledged that the customer agreement contained a pre-dispute arbitration clause. *Id.* ¶ 8. Each plaintiff also represented that they carefully reviewed, understood, and agreed to the customer agreement in effect at the time, a copy of which was available via hyperlink during the sign-up process. *Id.* ¶¶ 3–6.

Although the plaintiffs signed up for Robinhood accounts at different times, each version of the customer agreement that was in effect when the plaintiffs signed up contained a mandatory arbitration clause. *Id.* ¶ 8. The earliest relevant version of the customer agreement, agreed to by plaintiff Mike Ross in December 2014, contained the following arbitration clause:

---

[3] Not included in the Remaining Actions is *Lagmanson v. Robinhood Markets, Inc.*, No. 21-cv-21298 (S.D. Fla.), which was consolidated into this MDL from the Northern District of Illinois. *See* MDL Transfer In Case Receipt [ECF No. 33]. Robinhood does not seek to compel arbitration of the *Lagmanson* claims because the plaintiffs in that case are not Robinhood customers. The JPML has since remanded the *Lagmanson* action to the Northern District of Illinois. *See* Conditional Remand Order [ECF No. 709].

5

> **A. This Agreement contains a pre-dispute arbitration clause. By signing an arbitration agreement, the parties agree as follows:**
> **(1) All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.**
>
> . . .
>
> **B. Any controversy or claim arising out of or relating to this Agreement shall be settled by arbitration in accordance with the rules of FINRA Dispute Resolution, Inc. ("FINRA DR"). I agree to arbitrate any controversy or claim before FINRA DR . . . .**

*See* O'Such Decl., Ex. 13 § 29 (bold text in original). Each later version of the customer agreement contained substantially the same arbitration clause—in pertinent part, each plaintiff agreed to arbitrate before FINRA DR any claim arising out of or relating to the customer agreement. *See* O'Such Decl. ¶ 8; *see also* O'Such Decl., Exs. 3–17.

The version of the customer agreement in effect when the plaintiffs filed the Remaining Actions is attached as Exhibit A ("Customer Agreement").[4] This operative Customer Agreement contains several references to its arbitration clause. The Customer Agreement begins by acknowledging the arbitration clause on the first page. *See* Customer Agreement at 2 ("**I UNDERSTAND THAT THE TERMS AND CONDITIONS OF THIS AGREEMENT GOVERN ALL ASPECTS OF MY RELATIONSHIP WITH ROBINHOOD REGARDING MY ACCOUNTS. . . . I ALSO UNDERSTAND THAT BY CLICKING 'SUBMIT APPLICATION' I HAVE ACKNOWLEDGED THAT THIS AGREEMENT CONTAINS A**

---

[4] Each version of the customer agreement also provided that the agreement could be amended by Robinhood; the plaintiffs accepted responsibility to check Robinhood's publicly available website for periodic updates to the agreement. *See* O'Such Decl. ¶ 9. The plaintiffs agreed that, by continuing to maintain their brokerage accounts, they were accepting the terms of any updated version of the customer agreement. *Id.* Thus, the Customer Agreement attached as Exhibit A is the operative customer agreement. And in any event, the arbitration clauses in the earlier versions of the customer agreement are materially the same as the arbitration clause in the Customer Agreement.

**PREDISPUTE ARBITRATION CLAUSE IN SECTION 38 HEREIN.**") (bold text and capitalization in original). The Customer Agreement then sets forth the arbitration clause itself:

> 38. Arbitration
>
> **A. This Agreement contains a pre-dispute arbitration clause. By signing an arbitration agreement, the parties agree as follows: (1) All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.**
>
> . . .
>
> **B. Any controversy or claim arising out of or relating to this Agreement, any other agreement between Me and Robinhood,[5] any Account(s) established hereunder, any transaction therein, shall be settled by arbitration in accordance with the rules of FINRA Dispute Resolution, Inc. ("FINRA DR").**

*Id.* at 30 (bold text in original). The Customer Agreement concludes by re-acknowledging the arbitration clause. *See id.* ("**I ALSO UNDERSTAND THAT BY ACCEPTING THIS AGREEMENT I HAVE ACKNOWLEDGED THAT THIS AGREEMENT CONTAINS A**

---

[5] The Customer Agreement defines "Robinhood" as "Robinhood Financial LLC, Robinhood Securities, LLC, and their agents and assigns." *See* Ex. 1 at 1. Robinhood Markets, however, may enforce the arbitration clause because "relevant state contract law allows [it] to enforce the agreement." *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009). Under California law, a nonsignatory to an agreement may invoke the agreement's arbitration clause when the signatory plaintiff's claims are closely related to the underlying agreement. *See Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*, 186 Cal. App. 4th 696, 706 (2010); *see also Bridgetown Trucking, Inc. v. Acatech Sols., Inc.*, 197 F. Supp. 3d 1248, 1261 (D. Or. 2016) ("A nonsignatory to an agreement, however, can be compelled to arbitrate . . . where a preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to compel the nonsignatory to also be bound to arbitrate his or her claim.") (applying California law). Here, each of the plaintiffs in the Remaining Actions brings claims against Robinhood Markets relating to securities transactions in their Robinhood accounts, which were created by virtue of the Customer Agreement. Moreover, Robinhood Markets, as the parent Robinhood entity, had a preexisting relationship with Robinhood Financial and Robinhood Securities. Thus, Robinhood Markets may compel arbitration of the Remaining Actions just as Robinhood Financial and Robinhood Securities can. *Cf. also* Order [ECF No. 453] at 34 n.17 (treating Robinhood Markets the same as Robinhood Financial and Robinhood Securities when determining what duties arose under the Customer Agreement).

**PREDISPUTE ARBITRATION CLAUSE IN SECTION 38 HEREIN.**") (bold text and capitalization in original).

Consistent with FINRA arbitration rules, the Customer Agreement provided that Robinhood could not seek to arbitrate a putative class member's claims until class certification was denied, the class was decertified, or the customer was excluded from the class by a court. *Id.*; *see also* FINRA R. 12204. Now that the Court has denied class certification in the Federal Securities Tranche, *see* [ECF No. 622], Robinhood seeks to arbitrate the Remaining Actions in accordance with the parties' agreement to mandatory arbitration.

## **LEGAL STANDARD**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, establishes a strong federal policy in favor of arbitration. *See, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (describing the FAA as "a congressional declaration of a liberal federal policy favoring arbitration agreements"). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4) (alteration added; emphasis in original). "[A]rbitration clauses are to be generously construed and all doubts are to be resolved in favor of arbitration." *Ruby-Collins, Inc. v. City of Huntsville, Ala.*, 748 F.2d 573, 576 (11th Cir. 1984). Consequently, "the burden is on the party opposing arbitration to prove to the court that arbitration is improper." *D.A.M. Prods., Inc. v. Acosta Resituyo*, 2018 WL 11372106, at *4 (S.D. Fla. Feb. 12, 2018).

Courts treat a motion to compel arbitration "as a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction." *Babcock v. Neutron Holdings, Inc.*, 454 F. Supp. 3d 1222, 1228

(S.D. Fla. 2020). As such, "the Court may consider matters outside the four corners of the Complaint," such as Robinhood's Customer Agreement and the O'Such Declaration. *See id.* at 1227–28. Courts consider three issues in reviewing a motion to compel arbitration: "(1) Whether there is a valid, written agreement to arbitrate; (2) Whether there is an arbitrable issue; and (3) Whether the right to arbitrate was waived." *Dimattina Holdings, LLC v. Steri-Clean, Inc.*, 195 F. Supp. 3d 1285, 1288 (S.D. Fla. 2016).[6]

## ARGUMENT

**A. The Remaining Actions must be compelled to arbitration.**

The plaintiffs in the Remaining Actions must arbitrate their claims because (1) each plaintiff entered into an enforceable, written agreement to arbitrate; (2) the plaintiffs' claims fall squarely within the scope of arbitral issues under the arbitration clause; and (3) Robinhood has not waived its right to arbitrate.

1. <u>*There is a valid, written agreement to arbitrate.*</u>

Whether the parties entered into an agreement to arbitrate is a matter of contract to which the Court applies "ordinary state-law principles that govern the formation of contracts." *Babcock*, 454 F. Supp. 3d at 1229 (quoting *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014)). Here, California law governs the contract formation between the parties. *See* Customer Agreement at 30 (providing that the Customer Agreement and all transactions in a customer's account "shall be governed by the laws of the State of California"). Under California law, "[t]he

---

[6] Courts have also considered, citing Section 2 of the FAA, whether there is a "nexus to interstate commerce." *E.g.*, *Steele v. Santander Consumer USA, Inc.*, 2014 WL 4049963, at *2 (S.D. Fla. Aug. 15, 2014). Here, that element is easily satisfied because the Remaining Actions arise from securities trading. *See Herrera Cedeno v. Morgan Stanley Smith Barney, LLC*, 154 F. Supp. 3d 1318, 1324 n.2 (S.D. Fla. 2016) ("Where agreements to arbitrate are found in written agreements pertaining to securities accounts . . . such agreements are per se evidence of transactions in interstate commerce and are accordingly subject to the Federal Arbitration Act.").

9

essential elements of a contract are: [1] parties capable of contracting; [2] the parties' consent; [3] a lawful object; and [4] sufficient cause or consideration." *Johnson v. Altamirano*, 418 F. Supp. 3d 530, 550 (S.D. Cal. 2019) (quoting *Lopez v. Charles Schwab & Co.*, 118 Cal. App. 4th 1224, 1230 (2004)); *see also Babcock*, 454 F. Supp. 3d at 1229 ("A touchstone of California contract law is mutual manifestation of assent, whether by written or spoken word or by conduct.").

Each of the plaintiffs in the Remaining Actions is capable of contracting, as is Robinhood. *See* Customer Agreement at 2 (confirming the customer's capacity to enter a contract). Moreover, the Customer Agreement concerned a lawful object: the purchase and sale of securities. There was also sufficient consideration underlying the Customer Agreement. *See id.* (providing that Robinhood would open accounts for the customer in exchange for the customer agreeing to terms of Customer Agreement).

Finally, each plaintiff consented to the terms of the Customer Agreement. Each customer, when signing up for a Robinhood account, must accept the terms of the Customer Agreement by clicking "Submit Application" or electronically signing the application. *See* O'Such Decl. ¶¶ 3–5. Robinhood informs customers that, by clicking "Submit Application," the customer "agree[s] to the terms of the Robinhood Terms and Conditions and Robinhood Financial Customer Agreement." *Id.* ¶ 4. This type of agreement—where a website presents users with contractual terms, which the users must accept by clicking "I agree" or "Submit"—generally is "valid and enforceable because the user must affirmatively acknowledge receipt of the terms of the contract." *McLellan v. Fitbit, Inc.*, 2018 WL 1913832, at *2 (N.D. Cal. Jan. 24, 2018) (citing cases). Here, each of the plaintiffs in the Remaining Actions clicked a button or checked a box to "Submit Application" when signing up for a Robinhood account. *See* O'Such Decl. ¶ 7. Moreover, each plaintiff not only had the opportunity to review the terms of the Customer Agreement via

hyperlink, they also had actual notice that there was an arbitration clause because they would have scrolled past a disclosure that the Customer Agreement contained a pre-dispute arbitration clause, prior to submitting the application. *Id.* ¶¶ 6, 8; *see, e.g.*, *id.* ¶ 23 ("I HAVE READ THE RHF-RHS CUSTOMER ACCOUNT AGREEMENT WHICH CONTAINS A PREDISPUTE ARBITRATION CLAUSE (SECTION 28 ON PAGES 20 AND 21) AND AGREE IN ADVANCE TO ARBITRATE ANY CONTROVERSIES WHICH MAY ARISE BETWEEN OR AMONG ME, YOU, AND/OR ROBINHOOD SECURITIES IN ACCORDANCE WITH SUCH SECTION 28.") (capitalization in original). Each plaintiff therefore affirmatively acknowledged receipt of the Customer Agreement and agreed to be bound by its terms, including the arbitration clause.[7]

Further bolstering the enforceability of the arbitration clause is the conspicuous nature of the clause within the Customer Agreement. *See Keebaugh v. Warner Bros. Entmt. Inc.*, 100 F.4th 1005, 1019–21 (9th Cir. 2024) (applying California law and finding that an arbitration provision was sufficiently conspicuous to be enforceable). The Customer Agreement references the arbitration clause at the beginning of the agreement in bold and capitalized letters. *See* Customer Agreement at 2. The Customer Agreement then sets forth the arbitration clause in a separate

---

[7] Courts applying California law have consistently enforced arbitration clauses in similar scenarios. *See, e.g.*, *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75–80 (2d Cir. 2017) (compelling arbitration where defendant's terms and conditions were hyperlinked below the button to register for an account); *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) (affirming grant of motion to compel arbitration and finding that the defendant's website provided sufficient notice of its terms by hyperlinking the terms directly below the sign-in button); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 586–87 (N.D. Cal. 2020) (finding that plaintiffs were on inquiry notice of terms and conditions where a hyperlink to the terms was in a different color from the surrounding text, "plainly readable," "wholly visible" and located close to the sign-up button); *Dickey v. Ticketmaster LLC*, 2019 WL 9096443, at *7 (C.D. Cal. Mar. 12, 2019) (granting motion to compel arbitration and holding that plaintiff assented to the terms of use where the terms were provided in a blue hyperlink located above the sign-up button).

11

section titled "Arbitration," in all bold letters. *Id.* at 30. Finally, the Customer Agreement re-acknowledges the arbitration clause in bold and capitalized letters at the end of the agreement. *Id.* These several, conspicuous references to the arbitration clause sufficiently placed each of the plaintiffs on notice that they were agreeing to arbitrate claims arising from the Customer Agreement. *Cf. Baggaley v. Wells Fargo Bank, N.A.*, 2018 WL 8804574, at *4 (C.D. Cal. Aug. 21, 2018) (finding arbitration clause enforceable where clause was "set off under its own, bolded heading, and contain[ed] numerous conspicuous bold and capitalized terms"); *Babcock*, 454 F. Supp. 3d at 1332–34 (enforcing arbitration clause under California law because plaintiff had sufficient notice of the terms of the defendant's online agreement).

In sum, the Customer Agreement meets all the elements of a valid contract under California law. Thus, the Customer Agreement's arbitration clause constitutes a valid, written agreement for the plaintiffs in the Remaining Actions to arbitrate their individual claims.

2. *There is an arbitrable issue.*

The Customer Agreement contains a broad arbitration clause that covers all the remaining plaintiffs' claims, which relate to the securities held in their Robinhood brokerage accounts. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone*, 460 U.S. at 24–25.

The plaintiffs in the Remaining Actions agreed to arbitrate "[a]ny controversy or claim arising out of or relating to this Agreement, . . . any Account(s) established hereunder, [or] any transaction therein." Customer Agreement at 30. Nothing in the Customer Agreement limits the type of claims that can be arbitrated. *See generally id.* Indeed, the only restriction on arbitration in the Customer Agreement is that class treatment must be denied (which it has been) before Robinhood can seek to compel arbitration. *See id.* at 30. Here, citing the restrictions that

Robinhood placed on the "meme stocks," each plaintiff in the Remaining Actions asserts causes of action for federal securities violations relating to securities they held in their Robinhood accounts.[8] Thus, each plaintiff in the Remaining Actions has asserted claims (1) "arising out of" the Customer Agreement; (2) "relating to" the accounts that the plaintiffs established through the Customer Agreement; and (3) "relating to" transactions conducted in those accounts. Accordingly, there is an arbitrable issue with respect to the plaintiffs' claims.

This Court has compelled arbitration under similar circumstances. In *Sims v. Clarendon Nat'l Ins. Co.*, the arbitration agreement at issue provided that "any dispute" arising under the parties' insurance policy "must be arbitrated." 336 F. Supp. 2d 1311, 1314 (S.D. Fla. 2004). The Court reasoned that "the all-encompassing '*any disputes*' language of the Arbitration Agreement," coupled with the fact that there were "no other provisions of the Policy that specifically exclude any particular disputes from arbitration or show an intent by the parties to exclude certain claims from [the] scope of their Arbitration Agreement," meant an arbitrable issue existed. *Id.* at 1326 (emphasis in original). As such, arbitration was appropriate. *See id.*

On a broader level, courts routinely find that claims relating to securities transactions present arbitrable issues. *See, e.g.*, *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 238 (1987) (rejecting argument that pre-dispute arbitration agreements are categorically unenforceable in securities claims); *Herrera Cedeno*, 154 F. Supp. 3d at 1327 (compelling arbitration where plaintiff agreed to arbitrate "all claims or controversies . . . concerning or arising" from plaintiff's securities account with defendant); *Park v. E*TRADE Fin. Corp. Servs., Inc.*, 2023 WL 11779917, at *2, *10 (N.D. Ga. July 25, 2023) (compelling arbitration by FINRA of plaintiff's 10b-5 claims).

---

[8] Any of the remaining plaintiffs' state law or antitrust claims against Robinhood have already been dismissed with prejudice. *See* Orders [ECF Nos. 453, 470].

13

And courts have compelled arbitration when the arbitration clause at issue is similar to Robinhood's in this case. *Compare Clark v. Colo. Div. of Sec.*, 2024 WL 1719450, at *2–3 (D. Colo. Apr. 22, 2024) (compelling arbitration of plaintiff's claims where the investment agreement provided for arbitration of "any controversy or claim arising out of or relating to" (1) the agreement, (2) any account that plaintiff maintained with defendant, and (3) transactions in any account that plaintiff maintained with defendant), *with* Customer Agreement at 30 (requiring arbitration of "any controversy or claim arising out of or relating to" the Customer Agreement, plaintiffs' accounts maintained with Robinhood, or transactions in any of the accounts that plaintiffs maintained with Robinhood).

The plaintiffs in the Remaining Actions broadly agreed to arbitrate any claims arising from the Customer Agreement, their accounts with Robinhood, and any transaction in those accounts. Because each of the plaintiffs' individual causes of action falls within that scope, each plaintiff's claims present arbitrable issues.

3. *There has been no waiver of the right to arbitrate.*

Finally, Robinhood has not waived its right to arbitrate. When considering the issue of waiver, the Eleventh Circuit is "mindful of the Supreme Court's admonition that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Pinnacle Constr. Grp. LLC v. SSC Tuscaloosa Apts. LLC*, 2024 WL 3042536, at *1 (11th Cir. June 18, 2024) (quotations omitted). A party does not waive its right to arbitrate unless "under the totality of the circumstances, the party has acted inconsistently with the arbitration right . . . ." *Id.* (quoting *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990), *abrogated on other grounds by Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022)).

Robinhood has not acted inconsistently with its right to arbitrate the Remaining Actions. Under both the Customer Agreement and FINRA Rule 12204, Robinhood was prohibited from seeking to compel arbitration until "(1) the class certification is denied; or (2) the class is decertified; or (3) the customer is excluded from the class by the court." Customer Agreement at 30; *see also* FINRA R. 12204(a), (d). Thus, Robinhood could not compel arbitration until the issue of class certification was resolved. And the parties agreed that Robinhood's "forbearance to enforce [the] agreement to arbitrate shall not constitute a waiver of any rights under this Agreement except to the extent stated herein." Customer Agreement at 30. Accordingly, Robinhood's participation in class-certification litigation in the Federal Securities Tranche was not inconsistent with Robinhood's right to arbitrate—if anything, it was *consistent* with Robinhood's right to arbitrate, as Robinhood needed to resolve class certification as a precondition to seeking arbitration. Once class treatment was denied, Robinhood promptly shifted to compelling arbitration of the Remaining Actions.

In sum, Robinhood has not waived its right to arbitrate the Remaining Actions.

### B. This Court should stay the Remaining Actions pending arbitration.

Once the Court is satisfied that a case "is referable to arbitration," the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . ." 9 U.S.C. § 3; *see also Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) ("Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration."). As demonstrated above, the claims in the Remaining Actions are subject to arbitration under the Customer Agreement. As such, this Court should stay the Remaining Actions until arbitration is complete. *Cf., e.g., Sims*, 336 F. Supp. 3d at 1326 (compelling arbitration and staying the case until arbitration was complete); *Davis*, 2024 WL

15

278293, at *4 (same); *Isanto v. Royal Caribbean Cruises, Ltd.*, 497 F. Supp. 3d 1237, 1251–52 (S.D. Fla. 2020) (same); *see also Smith v. Spizzirri*, 601 U.S. 472, 477 (2024) (instructing that a stay, rather than dismissal, is appropriate when a district court compels arbitration).

## CONCLUSION

For the foregoing reasons, Robinhood respectfully requests this Court to enter an order (1) compelling arbitration of the Remaining Actions and (2) staying the Remaining Actions pending arbitration.

## CERTIFICATE OF CONFERRAL

In accordance with Local Rule 7.1(a)(3), counsel for Robinhood certifies that they have conferred with counsel for each of the plaintiffs in the Remaining Actions regarding the relief requested in this Motion. The plaintiffs in the Remaining Actions did not consent to the relief requested in this Motion.

Dated: December 9, 2024            Respectfully submitted,

*/s/ Samuel A. Danon*
**HUNTON ANDREWS KURTH LLP**
Samuel A. Danon (FBN 892671)
María Castellanos Alvarado (FBN 116545)
Tom K. Schulte (FBN 1025692)
333 S.E. 2nd Avenue, Suite 2400
Miami, Florida 33131
Tel.: (305) 810-2500
Fax: (305) 810-2460
sdanon@huntonak.com
mcastellanos@huntonak.com
tschulte@huntonak.com

**CRAVATH, SWAINE & MOORE LLP**
Antony L. Ryan (*pro hac vice*)
Kevin J. Orsini (*pro hac vice*)
Brittany L. Sukiennik (*pro hac vice*)
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel.: (212) 474-1000
Fax: (212) 474-3700
aryan@cravath.com
korsini@cravath.com
bsukiennik@cravath.com

*Counsel for Robinhood Financial LLC, Robinhood Securities, LLC, and Robinhood Markets, Inc.*

## CERTIFICATE OF SERVICE

I certify that on December 9, 2024, I electronically filed a true and correct copy of the foregoing via CM/ECF, which will send notice to all counsel of record.

*/s/ Samuel A. Danon*