UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 21-MD-2989

In re:

**JANUARY 2021 SHORT SQUEEZE
TRADING LITIGATION**
_____/

This Document Relates to the Federal Securities Tranche

**PLAINTIFFS JORDAN KRUMENACKER, ERIC QUAT, AARON FASSINGER, MIKE ROSS, IGOR KRAVCHENKO, MICHAEL McFADDEN, AND TENZIN WOISER'S OPPOSITION TO DEFENDANTS ROBINHOOD MARKETS, INC., ROBINHOOD FINANCIAL LLC, AND ROBINHOOD SECURITIES, LLC'S MOTION TO COMPEL ARBITRATION AND FOR STAY PENDING ARBITRATION**

Plaintiffs Jordan Krumenacker, Eric Quat, Aaron Fassinger, Mike Ross, Igor Kravchenko, Michael McFadden, and Tenzin Woiser (collectively "Plaintiffs") respectfully submit this opposition to Defendants Robinhood Markets, Inc., Robinhood Financial LLC, and Robinhood Securities, LLC (collectively, "Robinhood" or "Defendants") Motion to Compel Arbitration and for Stay Pending Arbitration ("MTC") (ECF No. 713).

## INTRODUCTION

Robinhood's MTC must be denied because it cannot meet its burden to prove by a preponderance of the evidence that an agreement to arbitrate exists or, alternatively, even if such an agreement did exist, that it is enforceable. *First*, Defendants fail to establish mutual assent to the arbitration clause contained in Robinhood's customer agreement (the "customer agreement"). Specifically, Robinhood has failed to carry its burden to establish that 1) Plaintiffs had actual notice of the arbitration agreement contained in the customer agreement, or 2) that the notice of the same was sufficiently conspicuous to put Plaintiffs on reasonable notice of the existence of the arbitration agreement. Therefore, mutual assent is lacking. *Second*, even if the Court were to find

1

that there was mutual assent to the arbitration agreement (there is not), it is unconscionable because it is a contract of adhesion (procedurally unconscionable) with one-sided and onerous terms, such as requiring Plaintiffs (often from other states and in some cases across the country) to travel to California to litigate low-value claims at their expense (substantive unconscionability). As the customer agreement is unconscionable, it is unenforceable. *Third,* as to Plaintiffs Ross and Woiser, the claims in this case (alleged violations of federal securities laws) fall outside the scope of the arbitration agreement that existed when they registered for their accounts (which are the only potentially enforceable terms). *Fourth*, Robinhood Markets, Inc. is not entitled to compel arbitration because it is not a party to the customer agreement (or the arbitration agreement embedded therein), and it has provided no reason for the Court to permit it to enforce the terms of a contract of which it is not a party. For these reasons, and the reasons stated in further detail below, the MTC should be denied in full.

## LEGAL STANDARD

The "first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate the dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). The court must determine: (1) whether there exists a valid agreement to arbitrate; and (2) if there is a valid agreement, whether the dispute falls within its terms. *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000).[1]

"In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Berman v. Freedom Fin. Network, LLC*,

---

[1] Robinhood concedes California law applies (MTC at 9), and therefore Plaintiffs analyze the issue of arbitration under California law, as other courts in this District have done. *Mochan v. Madison Reed, Inc.*, 2023 WL 5266322, at *2 n.1 (S.D. Fla. July 19, 2023) (applying California law where the "parties have stipulated that California law applies to the present dispute").

30 F.4th 849, 855 (9th Cir. 2022). "The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence that an agreement to arbitrate a dispute exists." *Vazquez v. SaniSure, Inc.*, 101 Cal. App. 5th 139, 143 (2024) (cleaned up).

## ARGUMENT

I. **THERE IS NO MUTUAL ASSENT TO THE ARBITRATION AGREEMENT BECAUSE PLAINTIFFS LACKED ACTUAL NOTICE OF THE ARBITRATION AGREEMENT AND REFERENCE TO THE SAME WAS TOO INCONSPICUOUS TO PUT PLAINTIFFS ON REASONABLE NOTICE**

"To form a contract under … California law, the parties must manifest their mutual assent to the terms of the agreement." *Berman*, 30 F.4th at 855. "Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print." *Id.* at 857. Thus, "[t]o avoid the unfairness of enforcing contractual terms that consumers never intended to accept, courts confronted with online agreements such as those at issue here have devised rules to determine whether meaningful assent has been given." *Id.* at 856. "Unless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; *and* (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* Accordingly, when a hyperlink to an agreement is "not conspicuous enough to put [plaintiffs] on inquiry notice," then the agreement is not binding. *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 765 (N.D. Cal. 2019).

"[T]he onus must be on website owners to put users on notice of the terms to which they wish to bind consumers" as "consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1100 (9th Cir. 2023). Thus, the burden is on the party "seeking arbitration to

3

show that it provided notice … and that there was mutual assent to the contractual agreement to arbitrate." *Id.* at 1099.  Defendant cannot meet its burden to show Plaintiffs were on notice of Robinhood's Customer Agreement and embedded arbitration agreement.

Two cases should guide this Court's analysis.  *First*, in *Berman*, the Ninth Circuit evaluated the exact question before the Court here: "[u]nder what circumstances can the use of a website bind a consumer to a set of hyperlinked 'terms and conditions' that the consumer never saw or read?"  *Berman*, 30 F.4th at 853.  The webpages in *Berman* containing the hyperlinks at issue looked like this:



*Id.* at 859 (Appendix A).



*Id.* at 861 (Appendix B).

In *Berman*, like here, the defendants argued that "by clicking on the 'continue' buttons, [the plaintiffs] had agreed to the hyperlinked terms and conditions, including the mandatory arbitration provision." *Id.* at 854. The Ninth Circuit disagreed, holding "the design and content of the webpages [the plaintiffs] visited did not adequately call to their attention [] the existence of the terms and conditions…." *Id.* at 858. Specifically:

> [t]he text disclosing the existence of the terms and conditions … is printed in a tiny gray font considerably smaller than the font used in the surrounding website elements, and indeed in a font so small that it is barely legible to the naked eye. The comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else. And the textual notice is further

5

> deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text.

*Id.* at 856-57 (cleaned up); *see also id.* at 857 ("Simply underscoring words or phrases, as in the webpages at issue here, will often be insufficient to alert a reasonably prudent user that a clickable link exists.").

*Second*, the district court in *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *10 (N.D. Cal. July 31, 2023) evaluated a hyperlink based on analogous circumstances to here and found the sign-up screen "failed to provide reasonably conspicuous notice of the Subscriber Agreement." The sign-up screen in *Sadlock* appeared as follows:



6

*Sadlock*, 2023 WL 4869245, at *9. Applying *Berman*, the court found the aforementioned screen failed to provide sufficient notice because:

- The Subscriber Agreement is not mentioned at all until, in essence, the bottom of the screen.

- The paragraph that contains the reference to the Subscriber Agreement is in small font. Furthermore, comparatively, that font size is smaller than that used for other text in the payment webpage.

…

- The hyperlink to the "Subscriber Agreement" is buried in six lines of text and is located five lines away from the "Agree and Subscribe" button.

- There are a number of other elements on the screen that distract from the reference to the Subscriber Agreement … Notably, these elements are all in larger size font and employ design elements such as bolding to catch the eye. Furthermore, the bulk of the remaining screen is devoted to payment for the service being purchased.

*Id.*, at *9-10.

Here, like the defendants in *Berman* and *Sadlock*, Robinhood has fallen far short of establishing that Plaintiffs had actual notice of the customer agreement (and embedded arbitration agreement) or that it provided sufficiently conspicuous notice to bind Plaintiffs to the arbitration agreement. *First*, Defendants have proffered no evidence establishing that Plaintiffs had actual notice of the arbitration agreement. *Mochan*, 2023 WL 5266322, at *2 ("Here, Defendant has not offered, and the Court is not aware, of any evidence that shows Plaintiff actually saw Defendant's terms, including the arbitration agreement.").

*Second*, Defendants fail to establish that the hyperlinked text is sufficiently conspicuous because they failed to proffer evidence establishing what the application screen on the Robinhood

Application (the "App.") actually looked like when presented to Plaintiffs. *Jackson*, 65 F.4th at 1100 (the burden is on the party "seeking arbitration to show that it provided notice … and that there was mutual assent to the contractual agreement to arbitrate"). Instead of providing evidence of mutual assent, Robinhood instead submits a Declaration from Marc O'Such (ECF No. 713-2) ("O'Such Dec."), a paralegal, which appends only various versions of Robinhood's form customer agreement. But those form agreements do not speak to the issue of mutual assent, which requires Robinhood to submit the sign-up screen to allow the Court to determine whether it provided conspicuous disclosures regarding the customer agreement, which Defendants failed to do.

Mr. O'Such states that when a user registers for an account through the App, he or she clicks a "Submit Application" button which, on its own, says nothing about agreeing to any specific terms. O'Such Dec. ¶ 4. Also on the page (it is unspecified where) is a statement: "'By clicking the "Submit Application" button, . . . I also agree to the terms of the Robinhood Terms and Conditions [and] Robinhood Financial Customer Agreement' or some substantially similar language." *Id.* Mr. O'Such does not specify where on the page that text appears, or how conspicuously it appears to consumers. Importantly, Mr. O'Such does *not* state that the user must affirmatively click a check box or otherwise specifically affirm that they have read or reviewed the customer agreement. In fact, Mr. O'Such suggests the opposite, namely that the user need only click the "Submit Application" button without affirmatively agreeing to or acknowledging the hyperlinked agreements. *Id.* ¶ 6 (explaining "a new customer **may** click on a hyperlink to the customer agreement") (emphasis added). Therefore, this is a browsewrap agreement. *Goldstein v. Fandango Media, LLC*, 2021 WL 6617447, at *2 (S.D. Fla. July 27, 2021) ("A browsewrap agreement occurs when a website provides a link to the terms and conditions but does not require the user to click a separate acknowledgement checkbox before continuing.").

8

The non-conspicuous nature of the disclosure is reinforced by the allegations related to each specific Plaintiff. For Plaintiffs Fassinger (*id.* ¶¶ 23-24), Kravchenko (*id.* ¶¶ 35-36), Krumenacker (*id.* ¶¶ 39-40), McFadden (*id.* ¶¶ 47-48), Ross (*id.* ¶¶ 55-56), Quat (*id.* ¶¶ 59-60), and Woiser (*id.* ¶¶ 71-72), Defendants provide boilerplate allegations regarding a large block of text which was allegedly presented "before the applicant could click the 'Submit Application' button." That large block of text appears to be truncated in the O'Such Declaration because portions of text appear to be omitted through use of ellipses, suggesting that the block of text was actually much larger. *Id.* Regardless, just looking at it as it appears in the O'Such Declaration, it is by no means clear and conspicuous to someone submitting an application for a Robinhood account that he or she was agreeing to arbitration. Mr. O'Such did not state that any Plaintiff had to specifically check a box or otherwise affirmatively agree to the customer agreement before clicking the button to "Submit Application." O'Such states that "the underlined words above provided hyperlinks to a webpage where the applicant could review the relevant agreement," but did not state that the hyperlinked text was of a different color or otherwise stood out such as to provide notice to the user. *See, e.g., Tejon v. Zeus Networks, LLC*, 725 F. Supp. 3d 1351, 1356 (S.D. Fla. 2024) ("Merely underlining the hyperlinks, without more, does not provide sufficient contrast from the other gray font of identical size and capitalization on the webpage and black background.").

Further, for some Plaintiffs, the large block of text refers to an arbitration agreement with another entity altogether (Apex – a clearing broker for Robinhood) and only afterwards mention a Robinhood agreement purportedly containing an arbitration agreement. *Id.* ¶ 35 (Kravchenko), ¶ 55 (Ross), ¶ 59 (Quat), ¶ 71 (Woiser). But the block of text (within a larger block of text) shows that there is significant clutter on the webpage which prevents a finding of mutual assent based on

9

a conspicuous disclosure. For some Plaintiffs, like Mike Ross (*id.* ¶ 55), only the Apex agreement is mentioned and there is no capitalized disclosure regarding the Robinhood Customer Agreement at all, which is even more inconspicuous.

Looking "holistically" at the disclosures, Robinhood has failed to meet its burden to establish that "a reasonably prudent user would have inquiry notice of a browsewrap agreement." *Valiente v. Nexgen Glob., LLC*, 2023 WL 6213583, at *7 (S.D. Fla. Sept. 25, 2023); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014).

## II.   ROBINHOOD'S CUSTUMER AGREEMENT IS UNCONSCIONABLE

In the alternative, if the Court does find there was mutual assent to the customer agreement (there was not), the customer agreement cannot be enforced because it is unconscionable. "Under the Federal Arbitration Act, generally applicable contract defenses, including unconscionability, may invalidate an arbitration agreement." *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089 (9th Cir. 2024). "A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree ["procedural unconscionability"] and the contract contains terms that are unreasonably favorable to the other party ["substantive unconscionability"]." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125 (2019). "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 912 (2015).

As to procedural unconscionability, contracts exist on a spectrum between contracts that are freely negotiated (no procedural unconscionability) to "[c]ontracts of adhesion that involve surprise or other sharp practices [which] lie on the other end of the spectrum." *Ronderos*, 114 F.4th at 1089 (quoting *Baltazar v. Forever 21, Inc.*, 62 Cal.4th 1237 (2016)). Therefore, the first question in determining procedural unconscionability is whether the contract is one of adhesion. *Id.* A contract of adhesion is "a standardized contract, which, imposed and drafted by the party of

superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Neal v. State Farm Ins. Companies*, 188 Cal. App. 2d 690, 694 (Ct. App. 1961).

Here, there is no question that Robinhood's customer agreement was a contract of adhesion that users had the choice of either accepting or rejecting in full, and that Robinhood had superior bargaining position because of Defendants' market dominance as a securities broker. *See Heckman v. Live Nation Ent., Inc.*, 686 F. Supp. 3d 939, 952–53 (C.D. Cal. 2023), *aff'd*, 120 F.4th 670 (9th Cir. 2024) ("As to unequal bargaining power, it is hard to imagine a relationship with a greater power imbalance than that between Defendants and its consumers, given Defendants' market dominance in the ticket services industries.").

Indeed, Robinhood concedes that "[i]f the customer does not click 'Submit Application,' Robinhood will not open an account for the customer and will not permit the customer to conduct any trading through Robinhood's platform." O'Such Declaration ¶ 5; *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (finding "procedural unconscionability [is] satisfied by a finding that the arbitration provision was presented on a take-it-or-leave-it basis and that it was oppressive due to" an inequality of bargaining power that resulted in no real negotiation and an absence of meaningful choice).

The next question is "whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required." *OTO, L.L.C.*, 8 Cal. 5th at 126. "The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and

11

experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney." *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1348 (2015), *as modified on denial of reh'g* (Feb. 9, 2015). Here, each factor points towards oppression.

    *First*, Plaintiffs were given little if any time to consider the customer agreement because it was presented to them right at the end of the application process to open an account. O'Such Declaration ¶¶ 4, 6. *Second*, Plaintiffs were subject to pressure because if they wanted to have a Robinhood account, they were forced to accept the terms of the customer agreement in full, otherwise Robinhood would "not open an account for the customer" and would not "permit the customer to conduct any trading through Robinhood's platform." *Id.* ¶ 5. *Third*, the customer agreement is an extremely long and intricate document, with the arbitration provision located deep in the document -- pages 28-29 (O'Such Dec., Ex. 5 – Fassinger), page 22 (O'Such Dec., Ex. 8 – Kravchenko), page 38 (O'Such Dec., Ex. 9 – Krumenacker), page 29 (O'Such Dec., Ex. 11 – McFadden), page 15-16 (O'Such Dec., Ex. 13 – Ross), page 22 (O'Such Dec., Ex. 14 – Quat), page 17-18 (O'Such Dec., Ex. 17 – Woiser). In short, the arbitration provision was buried deep in the document after numerous pages of single-spaced text and complicated terms. *Fourth*, Plaintiffs are retail investors (regular people). Indeed, Robinhood's "mission is to democratize finance by providing access to financial markets through zero-commission trades in stocks, options, and ETFs" (MTC at 1), and therefore appeals to people, like Plaintiffs, who are not sophisticated investors or legally trained. *Fifth*, the customer agreement was offered to Plaintiffs on a take-it-or-leave-it basis as part of a hyperlink disclosure at the end of the application process, and therefore Plaintiffs did not review the agreement with legal counsel. Given the above, Robinhood's customer agreement is oppressive and suffers from a high degree of procedural unconscionability.

Case 1:21-md-02989-CMA   Document 718   Entered on FLSD Docket 01/13/2025   Page 13 of 18

As to substantive unconscionability, "California law seeks to ensure that contracts, particularly contracts of adhesion, do not impose terms that are overly harsh, unduly oppressive, or unfairly one-sided." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1002 (9th Cir. 2021). Where, as here, there is a high degree of procedural unconscionability, "less substantive unfairness is required" for a finding of substantive unconscionability. *OTO, L.L.C.*, 8 Cal. 5th at 126.

Here, the terms of the customer agreement are substantively unconscionable because they require Plaintiffs to arbitrate their claims "in the State of California." *See, e.g.,* Ex. 5 at 29; Ex. 8 p. 22; Ex. 9 p. 38; Ex. 11 p. 29; Ex. 13 p. 15; Ex. 14 p. 22; Ex. 17 p. 18. Plaintiffs Fassinger, Krumenacker, and Ross are from Florida, Plaintiff Kravchenko is from Illinois, and Plaintiff Woiser is from New York. Under Robinhood's terms, they would be required to travel across the country (or approximately 2,000 miles for Plaintiff Kravchenko) to arbitrate relatively small claims. Not only that, but they would also be required to pay for counsel to travel to California, stay in California, and litigate the arbitration in California. All of that is on top of paying fees associated with the arbitration, such as filing fees and arbitrator fees. These terms are patently unfair and unconscionable because the cost of the arbitration would quickly usurp any potential recovery, by Robinhood's design. *Twilleager v. RDO Vermeer, LLC*, 2011 WL 1637469, at *9 (D. Or. Apr. 1, 2011), *report and recommendation adopted*, 2011 WL 1630353 (D. Or. Apr. 28, 2011) (finding arbitration provision unconscionable where "it require[d] arbitration in North Dakota, a considerable distance from Portland. That distance imposes commensurate unnecessary expense on an Oregon employee who chooses to arbitrate: the employee must travel to North Dakota to arbitrate, must pay for food and lodging while there, must also pay for his or her attorney to travel to and stay in North Dakota, and must pay for Portland-based witnesses to do the same").

13

The customer agreement is both procedurally and substantively unconscionable, and therefore cannot be enforced.

## III. THE ARBITRATION AGREEMENT DOES NOT ENCOMPASS THE CLAIMS AT ISSUE AS TO PLAINTIFFS ROSS AND WOISER

The purported arbitration clauses in the customer agreements of Plaintiff Michael Ross and Tenzin Woiser are narrow.[2] Ex. 13 p. 15 (Ross); Ex. 17, p. 18 (Woiser). Both state: "Any controversy or claim arising out of or relating to this Agreement shall be settled by arbitration in accordance with the rules of FINRA Dispute Resolution, Inc." *Id.* Compare this narrow language to Robinhood's most recent version, which is broader: "Any controversy or claim arising out of or relating to this Agreement, any other agreement between Me and Robinhood, **any Account(s) established hereunder, any transaction therein**, shall be settled by arbitration in accordance with the rules of FINRA Dispute Resolution, Inc." Ex. A (ECF No. 713-1), p. 29 (emphasis added). The claims of Plaintiffs Ross and Woiser arise under Robinhood's violations of the federal securities laws, they do not arise out of alleged violations of the terms of the customer agreements, and therefore their claims are outside the scope of the customer agreements (assuming they were bound in the first place, which is incorrect for the reasons set forth in Section I., above).

---

[2] Robinhood assumes that the most recent customer agreement applies to all Plaintiffs, not so. The updated customer agreement was a browsewrap agreement that, by Robinhood's admission, was not actually provided to Plaintiffs, but instead was just made available on Robinhood's website. O'Such Declaration ¶ 9; MTC at 6 n. 4. However, this does not establish either actual notice nor does it establish that the user had "actual or constructive knowledge of a website's terms and conditions." *Nguyen*, 763 F.3d at 1176. At best, the specific customer agreements that existed at the time each Plaintiff enrolled for Robinhood's services applies (Plaintiffs argue there is no mutual assent to any customer agreement). Further, "[t]he new Restatement of the Law on Consumer Contracts now makes clear that a consumer must receive a 'reasonable notice of the proposed modified term" and a "reasonable opportunity to reject the proposed modified term.'" *Jackson*, 65 F.4th at 1100–01 (quoting Restatement of the Law Consumer Contracts § 3 (Am. L. Inst., Tentative Draft No. 2, June 2022). "It is not sufficient to provide '[a] general notice of the possibility of future modifications[,]'" *id.*, as Robinhood did here. O'Such Declaration ¶ 9; MTC at 6 n. 4.

14

It is axiomatic that to "be arbitrable, the dispute must relate to the contract." *Jackson*, 65 F.4th at 1101. To determine whether the dispute relates to the contract, the Court will "look at the nature of the dispute" including "the factual allegations raised in the complaint." *Id.* Here, the claims relate to Robinhood's violation of federal securities laws resulting from Robinhood's actions in prohibiting Plaintiffs from buying certain publicly traded securities, resulting in a loss to Plaintiffs. *See Quat, et al. v. Robinhood Financial, LLC, et al.*, Case No. 1:21-cv-21404 (S.D. Fl.), Class Action Complaint (ECF No. 1), ¶ 1. Plaintiffs bring one count for violation of the federal securities laws, but do not bring claims related to the customer agreement. *Id.* ¶¶ 75-83. Therefore, the claims of Plaintiff Ross and Woiser are outside the scope of the arbitration agreement, as buttressed by the fact that Robinhood later amended the arbitration agreement to expand its scope beyond just those claims arising under the customer agreement itself.

### IV. PLAINTIFFS CANNOT BE COMPELLED TO ARBITRATE THEIR CLAIMS AGAINST ROBINHOOD MARKETS, INC.

As Robinhood concedes, Robinhood Markets, Inc. is not a party to the alleged arbitration agreement, and therefore is not entitled to compel claims against it to arbitration. MTC at 7 n. 5. "Generally speaking, one must be a party to an arbitration agreement to be bound by it or invoke it." *Westra v. Marcus & Millichap Real Est. Inv. Brokerage Co.*, 129 Cal. App. 4th 759, 763 (2005). The Ninth Circuit has stated that non-signatories of an arbitration clause may be bound in the following circumstances: "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing or alter ego; and (5) estoppel." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). As a parent company, Robinhood Markets is not an agent of either Robinhood Financial LLC or Robinhood Securities, LLC, as Robinhood itself concedes. MTC at 7 n. 5. The law is clear that a mere overlap in factual claims against a signatory and non-signatory to an arbitration agreement does not permit the non-signatory to compel arbitration. *See Moss v. McLucas*, 2013 WL

1680483, at *4 (S.D. Cal. Apr. 16, 2013) ("Charitable Trust Administrators does not cite any authority for the proposition that it should be allowed to compel arbitration against Moss because Moss's claims against Charitable Trust Administrators are founded upon an identical set of facts as those alleged against McLucas. Accordingly, Charitable Trust Administrators' motion to compel arbitration is **DENIED.**").

If anything, Robinhood Markets is more akin to a co-conspirator with Robinhood Financial LLC and Robinhood Securities, LLC, and the law is clear that co-conspirators are not entitled to the benefit of an arbitration clause even where another co-conspirator has entered into an arbitration agreement. *See id.* ("Defendant has not cited any authority holding that a third party may compel arbitration when it has been alleged to be a co-conspirator with a signatory to an agreement to arbitrate. Accordingly, Defendant's motion to compel arbitration as to Mahrt is **DENIED.**").

In short, Robinhood has not provided any evidence whatsoever of a "preexisting relationship" between Plaintiffs and Robinhood Markets sufficient to support a finding that Robinhood Markets should be able to enforce an arbitration agreement that it is not a party to.[3]

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration and Stay Pending Arbitration should be denied.

---

[3] Robinhood's argument that Robinhood Markets has a pre-existing relationship with Robinhood Financial LLC and Robinhood Securities, LLC completely misses the mark because the inquiry is whether the arbitration agreement can be enforced against the counterparty, as *Moss* makes clear. 2013 WL 1680483, at *4.

Dated: January 13, 2025                           Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Sarah N. Westcot*
     Sarah N. Westcot

Sarah N. Westcot
Stephen Beck
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: 305-330-5512
Facsimile: 925-407-2700
E-Mail: swestcot@bursor.com


**BURSOR & FISHER, P.A.**
Andrew J. Obergfell
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: 646-837-7150
Facsimile: 925-407-2700
E-Mail: aobergfell@bursor.com

*Attorneys for Plaintiffs in the Quat Matter*


## CERTIFICATE OF SERVICE

I certify that on January 13, 2025, I electronically filed a true and correct copy of the foregoing via CM/ECF, which will send notice to all counsel of record.


**BURSOR & FISHER, P.A.**

By: */s/ Sarah N. Westcot*
     Sarah N. Westcot

Sarah N. Westcot
Stephen Beck
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: 305-330-5512

Facsimile: 925-407-2700
E-Mail: swestcot@bursor.com

**BURSOR & FISHER, P.A.**
Andrew J. Obergfell
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: 646-837-7150
Facsimile: 925-407-2700
E-Mail: aobergfell@bursor.com

*Attorneys for Plaintiffs in the Quat Matter*